James Taylor-Copeland (284743)
james@taylorcopelandlaw.com
Max Ambrose (320964)
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: 619-734-8770
Facsimilie: 619-566-4341

*Counsel for Plaintiff John Cress*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

|  |  |
|---|---|
| JOHN CRESS,<br><br>         Plaintiff,<br><br>         v.<br><br>NEXO FINANCIAL LLC, NEXO FINANCIAL SERVICES LTD., NEXO AG, NEXO CAPITAL INC., and ANTONI TRENCHEV,<br><br>         Defendants. | Case No. 3:23-CV-00882-TSH<br><br>**OPPOSITION TO MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF PROCEDURE 12(b)**<br><br>Hearing Date:  September 7, 2023<br>Hearing Time:  10:00 a.m.<br><br>Courtroom:     San Francisco Courthouse<br>                 Courtroom E – 15th Floor<br>                 450 Golden Gate Avenue<br>                 San Francisco, CA 94102 |

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND....................................................................................................2

ARGUMENT ............................................................................................................................3

I.      THE COURT HAS PERSONAL JURISDICTION ........................................................3

        A.      The Court Has Specific Jurisdiction Over the Corporate Defendants ....................3

        B.      The Court Also Has Alter Ego/Single-Enterprise Jurisdiction ..............................5

                1.      There Is A Unity Of Interest ........................................................................5

                2.      Plaintiff Adequately Pleads Inequitable Results..........................................7

        C.      The Court Has Specific Jurisdiction Over Trenchev ..............................................8

        D.      In the Alternative, Plaintiff is Entitled to Jurisdictional Discovery........................9

II.     PLAINTIFF SUFFICIENTLY STATES HIS FRAUDULENT INDUCEMENT
        CLAIM.......................................................................................................................10

        A.      Nexo's Misrepresentations Are Actionable ..........................................................10

        B.      Nexo Knew The Statements Were False When It Made Them ..............................14

        C.      Plaintiff Relied on Nexo's Statements..................................................................15

                1.      Plaintiff Relied on Nexo's Misrepresentations...........................................16

                2.      Plaintiff's Reliance was Justifiable............................................................17

III.    PLAINTIFF SUFFICIENTLY STATES HIS UCL CLAIMS .......................................18

        A.      Plaintiff's Pleadings Need Not Establish An Inadequate Remedy at Law ............18

        B.      The UCL Claim Is Not Barred Because Cress Also Brings Securities
                Claims...................................................................................................................19

        C.      Plaintiff Sufficiently Alleges Predicate Acts .......................................................20

IV.     PLAINIFF SUFFICIENTLY STATES CALIFORNIA SECURITIES CLAIMS ............20

        A.      Plaintiff's Properly Pleads His Securities Claims.................................................20

                1.      Plaintiff Was Harmed By His Purchase of Earn Account Securities........20

i

2.    NEXO Tokens Are Not "Covered Securities"...........................................21

3.    The "Leveraged Investment Instrument" Is a Security.............................22

4.    All Defendants are in privity with Plaintiff ...............................................24

B.    Plaintiff's Securities Fraud Claim is Properly Pled ................................................24

1.    Plaintiff's Claim Has No Threshold Defects .............................................24

2.    The Alleged Misrepresentations Are All Actionable.................................24

3.    Plaintiff's Securities Claims Against Trenchev Are Well Pled .................25

V.    CONCLUSION.......................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abrams v. Blackburne & Sons Realty Capital Corp.*,
2019 U.S. Dist. LEXIS 230853 (C.D. Cal. Dec. 2, 2019). ....................................................... 17

*Advanced Targeting Sys. v. Advanced Pain Remedies, Inc.*,
2013 U.S. Dist. LEXIS 77779 (S.D. Cal. June 3, 2013).......................................................... 10

*Allstar Mktg. Group, LLC v. Your Store Online, LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009) .................................................................................. 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................. 21

*Aton Ctr., Inc. v. Regence Blue Shield of Wash.*,
2021 U.S. Dist. LEXIS 29055 (S.D. Cal. Feb. 16, 2021). ....................................................... 15

*Bowen v. Ziasun Techs., Inc.*,
116 Cal. App. 4th 777 (Cal. Ct. App. 2004) ............................................................................ 19

*Brodt v. Bache & Co.*,
595 F.2d 459 (9th Cir. 1978) .................................................................................................. 23

*Brown v. Earthboard Sports USA, Inc.*,
481 F.3d 901 (6th Cir. 2007) .................................................................................................. 21

*Calder v. Jones,*
465 U.S. 783 (1984).................................................................................................................. 8

*Cellars v. Pac. Coast Packaging, Inc.*,
189 F.R.D. 575 (N.D. Cal. 1999)............................................................................................ 19

*Cel-Tech Comm'c'ns, Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal. 4th 163 (Cal. 1999)..................................................................................................... 19

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
491 F. Supp. 3d 610 (N.D. Cal. 2020). .................................................................................. 6

*City Sols. v. Clear Channel Communs., Inc.*,
365 F.3d 835 (9th Cir. 2004). ................................................................................................. 15

*Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC*,
501 F. Supp. 3d 886 (E.D. Cal. 2020)..................................................................................... 7

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*,
911 F.2d 242 (9th Cir. 1990) .................................................................................................. 13

*Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.*,
2011 U.S. Dist. LEXIS 73376 (C.D. Cal. July 1, 2011) ......................................................... 9

OPPOSITION TO MOTION TO DISMISS - 3:23-CV-00882-TSH

*Css, Inc. v. Fibernet*,
    2008 U.S. Dist. LEXIS 141875 (S.D. W. Va. July 18, 2008) ................................................. 13

*Cutler v. Rancher Energy Corp.*,
    2014 U.S. Dist. LEXIS 34622 (C.D. Cal. Mar. 11, 2014) ................................................ 24, 25

*Cybersell, Inc. v. Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997) ....................................................................................... 3

*Daewoo Elecs. Am. Inc. v. Opta Corp.*,
    875 F.3d 1241 (9th Cir. 2017). .................................................................................... 7

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018). ..................................................................................... 10

*Davis v. Metro Productions, Inc.*,
    885 F.2d 515 (9th Cir. 1989) ....................................................................................... 8

*Elliott Assocs. v. Porsche Automobil Holding SE,*
    759 F. Supp. 2d 469 (S.D.N.Y. 2010) .......................................................................... 22

*Flaxel v. Johnson*,
    541 F. Supp. 2d 1127 (S.D. Cal. 2008) ......................................................................... 24

*Freeman v. Inochino Apparel, Inc.*,
    443 F.Supp.3d 1107 (N.D. Cal. Mar. 11, 2020) ............................................................. 18

*Hellum v. Breyer*,
    194 Cal.App.4th 1300 (Cal. Ct. App. 2011) .................................................................. 25

*Hudson v. Moore Business Forms,*
    *Inc.*, 609 F.Supp. 467 (N.D. Cal. 1985) ......................................................................... 8

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) ................................................................................. 19

*J. C. Millett Co. v. Distillers Distributing Corp.*,
    258 F.2d 139 (9th Cir. 1955) ....................................................................................... 12

*j2 Global Commc'ns., Inc. v. Vitelity Commc'ns., LLC*,
    2012 U.S. Dist. LEXIS 51793 (C.D. Cal. Apr. 12, 2012) .................................................. 9

*Johnson v. PNC Mortg.*,
    2014 U.S. Dist. LEXIS 111846 (N.D. Cal. Aug. 12, 2014) ............................................... 20

*Junhan Jeong v. Nexo Fin. LLC.  2022 U.S.,*
    Dist. LEXIS 10089 (N.D. Cal. Jan. 19, 2022). ...................................................... 1, 6, 18

*Kalin v. Midas Fund, Ltd.*,
    2022 U.S. Dist. LEXIS 208006 (N.D. Cal. Oct. 12, 2022) .................................................. 9

*Lake v. Lake*,
    817 F.2d 1416 (9th Cir. 1987) ...................................................................................... 4

OPPOSITION TO MOTION TO DISMISS - 3:23-CV-00882-TSH

*Landreth Timber Co. v. Landreth*,
    471 U.S. 681 (1985) ......................................................................................................... 22

*Lazar v. Superior Ct.*,
    12 Cal.4th 631 (1996). ...................................................................................................... 14

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ............................................................................................. 13

*Lopez v. Dean Witter Reynolds, Inc.*,
    805 F.2d 880 (9th Cir. 1986) ............................................................................................. 23

*Maisel v. S.C. Johnson & Son, Inc.*,
    2021 U.S. Dist. LEXIS 86203 (N.D. Cal. May 5, 2021). ................................................. 20

*McLellan v. Fitbit, Inc.*,
    2018 U.S. Dist. LEXIS 94685 (N.D. Cal. June 5, 2018) ................................................... 13

*Md. Cas. Co. v. Reeder*,
    221 Cal. App. 3d 961 (1990) ............................................................................................. 12

*Megafon PJSC v. Hewlett Packard Enter Co.*,
    2019 U.S. Dist. LEXIS 40827 (N.D. Cal. Mar. 12, 2019) ........................................... 11, 17

*Microsoft Corp. v. Hon Hai Precision Indus. Co.*,
    2020 U.S. Dist. LEXIS 158185 (N.D. Cal. Aug. 31, 2020) ............................................... 17

*Mohebbi v. Khazen*,
    50 F.Supp. 3d 1234 (N.D. Cal. 2014). ............................................................................... 21

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020). ........................................................................................... 16

*OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*,
    157 Cal. App. 4th 835 (2007) ............................................................................................. 16

*Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014). ............................................................................................. 11

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal. App. 4th 688 (Cal. Ct. App. 2007) ...................................................................... 19

*Pac. Bell Tel. Co. v. 88 Connection Corp.*,
    2016 U.S. Dist. LEXIS 77345 (N.D. Cal. June 14, 2016) ................................................... 8

*Parvizi v. Create Music Grp.*,
    2021 U.S. Dist. LEXIS 171186 (C.D. Cal. May 25, 2021) ................................................. 15

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015). ............................................................................................. 5

*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*,
    32 Cal.App. 4th 985 (1995) ............................................................................................... 17

v

*Rose v. Bank of Am., N.A.*, 57 Cal. 4th 390,
    (Cal. 2013) .......................................................................................................... 19

*Rose v. Chrysler Motors Corp.*,
    212 Cal.App.2d 755 (1963) ................................................................................ 12

*Roskind v. Morgan Stanley Dean Witter & Co.*,
    80 Cal. App. 4th 345 (Cal. Ct. App. 2000) ........................................................ 19

*Roth v. Goldman Sachs Grp., Inc.*,
    873 F. Supp. 2d 524 (S.D.N.Y. 2012)................................................................. 22

*Rubenstein v. Neiman Marcus Grp. Ltd. Liab. Co.*,
    687 F. App'x 564 (9th Cir. 2017)........................................................................ 10

*Safeway Portland Employees' Fed. Credit Union v. C. H. Wagner & Co.*,
    501 F.2d 1120 (9th Cir. 1974). ........................................................................... 23

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004). ........................................................................... 3, 5

*SEC v. Kik Interactive Inc.*,
    492 F. Supp. 3d 169 (S.D.N.Y. 2020)................................................................. 22

*SEC v. Telegram Grp. Inc.*,
    448 F. Supp. 3d 352 (S.D.N.Y. 2020)................................................................. 22

*SEC v. W. J. Howey Co.*,
    328 U.S. 293 (1946)....................................................................................... 22, 23

*Siano Mobile Silicon, Inc. v. Mavcom, Inc.*,
    No., 2011 U.S. Dist. LEXIS 44434 (N.D. Cal. Apr. 19, 2011) ............................ 9

*Smith-Victor Corp. v. Sylvania Elec. Prods.*,
    242 F.Supp. 302 (N.D. Il. 1965) ......................................................................... 13

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) .............................................................................. 18

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ............................................................................ 11

*Sterling v. City of Antioch*,
    No. 22-cv-07558-TSH, 2023 U.S. Dist. LEXIS 47656 (N.D. Cal. Mar. 21, 2023)............... 25

*Stewart v. Screen Gems-EMI Music, Inc.*,
    81 F. Supp. 3d 938 (N.D. Cal. 2015). ................................................................... 8

*Stomp, Inc. v. Neato*,
    61 F. Supp. 2d 1074 (C.D. Cal. 1999) ................................................................... 4

*Strigliabotti v. Franklin Res., Inc.*,
    2005 U.S. Dist. LEXIS 9625 (N.D. Cal. Mar. 7, 2005)....................................... 19

OPPOSITION TO MOTION TO DISMISS - 3:23-CV-00882-TSH

*Sweeney v. Gastelo*,
    2019 U.S. Dist. LEXIS 231657 (C.D. Cal. Mar. 14, 2019). ................................................ 22

*Tan v. Quick Box, LLC*,
    2021 U.S. Dist. LEXIS 67791 (S.D. Cal. Apr. 7, 2021). ..................................................... 7

*Taylor-Rush v. Multitech Corp.*,
    217 Cal.App.3d 103 (1990). ............................................................................................ 8

*Tenzer v. Superscope*,
    39 Cal.3d 18 (1985) ......................................................................................................... 15

*Teva Pharm. Indus. v. United States Dist. Court*,
    2020 U.S. App. LEXIS 41195 (9th Cir. Dec. 22, 2020). .................................................... 7

*Tevra Brands LLC v. Bayer HealthCare LLC*,
    2020 U.S. Dist. LEXIS 194539 (N.D. Cal. Oct. 20, 2020). ................................................ 9

*Twentieth Century Fox Intern. Corp. v Scriba*,
    385 F. App'x 651 (9th Cir. 2010) ..................................................................................... 9

*U.S. v. Franco-Lopez*,
    312 F.3d 984 (9th Cir. 2002) ........................................................................................... 12

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*,
    117 F.Supp.3d (C.D. Cal. 2015) ....................................................................................... 14

*Updateme Inc. v. Axel Springer SE*,
    2018 U.S. Dist. LEXIS 37592 (N.D. Cal. Mar. 7, 2018) .................................................... 7

*Wickam v. Ivar (In re Werner)*,
    817 F. App'x 432 (9th Cir. 2020) ..................................................................................... 14

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemisme*,
    433 F.3d 1199 (9th Cir. 2006). .................................................................................... 3, 4

*Yinou Pure Furniture v. United States Pride Furniture Corp.*,
    2021 U.S. Dist. LEXIS 253704 (C.D. Cal. Nov. 17, 2021) ................................................ 15

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997). ................................................................................ 4

**Statutes**

15 U.S.C. § 77r ...................................................................................................................... 21

Cal. Bus. & Prof. Code § 17200 ........................................................................................... 19

Cal. Bus. & Prof. Code § 17205 ........................................................................................... 18

Cal. Civ. Code § 1752 ........................................................................................................... 18

Cal. Civ. Code § 1780(a) ....................................................................................................... 18

OPPOSITION TO MOTION TO DISMISS - 3:23-CV-00882-TSH

Cal. Corp. Code § 25019......................................................................................................... 22

Cal. Corp. Code § 25401.................................................................................................... 24, 25

Cal. Corp. Code § 25504......................................................................................................... 25

Cal. Fin. Code §§ 22100 ......................................................................................................... 20

**Other Authorities**

Ownership Reports and Trading by Officers, Directors and Principal Security Holders,
    Exchange Act Release No. 34-28869, Investment Company Act Release No. 35-25254, 56
    Fed. Reg. 7242-01, 7248 (Feb. 21, 1991) ................................................................... 22

RESTATEMENT (SECOND) OF CONTRACTS § 203(a) (1981) ...................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................................ 14

Fed. R. Civ. P. 9(b) ........................................................................................................ 1, 10, 14

**Regulations**

17 C.F.R. § 230.152(b)(1)........................................................................................................ 21

17 C.F.R. § 230.502(a)............................................................................................................. 21

17 C.F.R. § 230.506(c)............................................................................................................. 21

**INTRODUCTION**

Defendants' Motion to Dismiss seeks premature adjudication of numerous highly factual matters. In so doing, Defendants grossly mischaracterize Plaintiff's allegations and improperly rely upon documents not attached to, or even referenced, in Plaintiff's Complaint. The Court should deny Defendants' Motion in its entirety.

Defendants Nexo Capital, Inc., Nexo Financial, LLC, Nexo Financial Services Ltd. and Nexo AG (collectively, "Nexo") do not dispute that they jointly operate the highly interactive website through which they sell the NEXO Token and allow customers, including Plaintiff, to use their crypto assets as collateral to borrow money. Defendants nevertheless claim that this Court lacks personal jurisdiction, ignoring that both purported contracts identified in Nexo's Motion are between Plaintiff and **all Nexo entities**. Defendant Trenchev is the signatory to one of these agreements, which—contrary to his sworn declaration—he emailed to Plaintiff for signature in California.

Defendants' attacks on the substance of Plaintiff's claims fare no better. While Defendants argue that Plaintiff's "fraud and securities fraud claims fail because Cress does not plead the alleged fraud with particularity," MTD at 2, Defendants do not actually contend that Plaintiff failed to properly allege the who, what, when, and how of the fraudulent statements. Rather, they argue that (a) that misrepresentations are not actionable, (b) Plaintiff fails to plead that Nexo knew the statements were false, and (c) Plaintiff fails to plead reliance. *See* MTD at 12-16. However, each of these factors may be "alleged generally" and is more than sufficiently alleged by Plaintiff. *See* Fed. R. Civ. P. 9(b).

Defendants' challenge to Plaintiff's UCL claim simply regurgitates an argument which was squarely rejected just last year when Defendants raised it in *Junhan Jeong v. Nexo Fin. LLC.*, 2022 U.S. Dist. LEXIS 10089, at *92-94 (N.D. Cal. Jan. 19, 2022).

Finally, Defendants mischaracterize Plaintiff's securities claims. Plaintiff nowhere pleads that the NEXO token is an exempt security. In fact, Plaintiff sets forth facts showing just the opposite. It is impossible for the NEXO token to qualify for a Rule 506 exemption because it was offered and sold to Plaintiff by NEXO over two years after Defendants' purported Rule 506 offering had concluded. Nexo required Plaintiff to hold the NEXO token in his index of crypto assets in order to obtain

favorable lending rates. The economic realities of the leveraged securities instrument ("Leveraged Investment Instrument" or "LII") they sold to Plaintiff is thus that it was dependent upon the NEXO security. Defendants' attempts to portray this Leveraged Investment Instrument as a discretionary commodity trading account thus misses the mark entirely.

## FACTUAL BACKGROUND

In March 2021, Plaintiff decided to transfer his accumulated BTC and ETH to Nexo to earn passive returns on his assets through Nexo's interest-bearing Earn Account Securities, depositing a total of 250.33 BTC and 250 ETH on the Nexo Platform. ¶ 37.

Nexo repeatedly reached out directly to Plaintiff, informing him that he was eligible for its "VIP Relationship Program" and attaching a brochure regarding the VIP program. ¶¶ 40-41. Nexo promised that as a participant in the VIP Program, Plaintiff (1) would "get a response from the support team in 2 hours, 24/7," receive a "dedicated relationship manager," "direct phone number availability," and (2) could utilize certain "OTC services including, Nexo's "[l]iquidation relief program," which Nexo specifically represented was a "service in the event of a market crash to recover your liquidated assets . . . ." Plaintiff reasonably understood that these representations to mean that, as a VIP, (1) he would receive prompt responses from a dedicated relationship manager, at any time, and (2) in the event of a market crash that his digital assets would receive protection from liquidation. ¶ 42.

Although Plaintiff requested additional documentation regarding the terms, Nexo did not provide any such documentation. ¶ 43. However, Nexo assured Plaintiff that he "will be earning 5% annually on the Bitcoin which you used as collateral." Plaintiff relied upon these representations in borrowing against his digital assets. ¶¶ 44-46. Each of these representations was false. ¶¶ 84-95.

In order to obtain more favorable interest rates, Nexo required Plaintiff to purchase its NEXO Token securities and maintain ten percent of his portfolio balance in these securities. Nexo also falsely represented to Plaintiff that the "Nexo token is registered with the SEC as a security." ¶ 55. The economic reality of these transactions is that Nexo was selling Plaintiff a complex and highly risky leveraged long bundle of digital assets, including its NEXO Token security. ¶ 62. As the success or failure of this Leveraged Investment Instrument depended on the value of the underlying NEXO Token

Security, it too constituted a security.  ¶¶ 62-64.

Ultimately, the poor performance of the NEXO Token contributed substantially to the total loss of Plaintiff's digital assets.  ¶ 65. While Nexo sold its NEXO Token to Plaintiff between prices of $2.51 and $3.87, in June 2021 the price of the NEXO Token dropped to $1.16, resulting in the liquidation of nearly all of Plaintiff's digital assets.  ¶ 66.  During these liquidations, Nexo managed the order of asset liquidation in the Leveraged Financial Instrument, liquidating Plaintiff's most stable assets (USDC and Bitcoin) first, which greatly increased the likelihood of future liquidations.  ¶ 61.

## ARGUMENT

## I.    THE COURT HAS PERSONAL JURISDICTION

"Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "[U]ncontroverted allegations in the complaint must be taken as true." *Id.*  Under the applicable "three-prong test," below, Plaintiff alleges more than sufficient facts to confer specific jurisdiction.  *Id.* at 802.

### A.    The Court Has Specific Jurisdiction Over the Corporate Defendants

**Nexo availed itself of the privilege of conducting business in California.**  The first prong of the minimum contacts test "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).  Here, Nexo  repeatedly  availed itself of the privilege of doing business in California and directed its activities at California by "collectively operating and maintaining the Nexo website and offering the Nexo services advertised through that website" to Plaintiff in California.  ¶ 15.

The Ninth Circuit has endorsed the "sliding scale" approach set forth in *Zippo* to determine whether the operation of a website supports the exercise of personal jurisdiction. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997). Under the "sliding scale" approach, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." *Id.* at 419 (*citing Zippo*). An

interactive website through which "the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files" will establish personal jurisdiction. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

Here, Nexo does not dispute that it designed, maintained, and operated an interactive website and used it to induce Plaintiff's investments in California. ¶ 15. The exercise of jurisdiction is thus warranted. *See Stomp, Inc. v. Neato*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (holding that, "[b]y maintaining a commercial website through which it markets and sells its goods, NeatO has reached out beyond its home state of Connecticut to avail itself of the benefits of the California forum."); *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109 (C.D. Cal. 2009) ("the [defendants] have purposefully availed themselves of the benefits of doing business in this district" by operating "a highly commercial website").

**Plaintiff's claims arise from Nexo's California contacts.** In addition to purposeful availment, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Yahoo!*, 433 F.3d at 1205-6. "In a specific jurisdiction inquiry, [the Ninth Circuit] consider[s] the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts. A strong showing on one axis will permit a lesser showing on the other." *Id.* at 1210. Thus, even a "a single forum state contact can support jurisdiction if 'the cause of action . . . arise[s] out of that particular purposeful contact of the defendant with the forum state.'" *Id.* (*citing Lake v. Lake*, 817 F.2d 1416 (9th Cir. 1987)).

Here, the second prong is easily satisfied. The numerous contacts between Nexo and California (including making numerous material misrepresentations to Plaintiff to induce him to make investments on an interactive website they maintained) all directly led to Plaintiff's fraudulent inducement, securities, and unfair competition claims. *See Stomp*, 61 F. Supp. 2d at 1077 ("[t]here is little question in the present case that the alleged contacts, [Defendants'] Internet sales of [infringing products], is closely related to the present action.").

**The exercise of personal jurisdiction is reasonable.** Plaintiff has shifted to Nexo the burden

to "present a compelling case that the exercise of jurisdiction would be unreasonable." *Schwarzenegger*, 374 F.3d at 802. Nexo cannot and does not attempt to meet this burden. There is nothing unjust in having California courts adjudicate the conduct of companies that are—and that publicly tout that they are—licensed to do business in California; that target California residents and facilitate the residents' use of the companies' services through a highly interactive website; and thereby solicit millions of dollars in investment from a California resident.

### B.   The Court Also Has Alter Ego/Single-Enterprise Jurisdiction

Defendants do not contest that they operated an interactive website through which Plaintiff invested and ultimately lost millions of dollars' worth of digital assets. And Defendants themselves contend that they entered into two separate agreements with Cress that specifically identified them as a single entity. *See* 19-2 (Crypto Credit Terms) (identifying agreement as between Plaintiff "and any holding company, subsidiary or entity belonging to the Nexo group of companies ('Nexo')"); 19-5 (CPA) (describing the contract as between Cress and "Nexo (any holding companies, subsidiaries or related entities, all of which are hereinafter referred to as 'Nexo')").[1] They nevertheless assert that jurisdiction over all Nexo entities other than Nexo Capital is not warranted. They are wrong.

The Court's personal jurisdiction extends to related entities where a plaintiff "make[s] out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015).

### 1.   There Is A Unity Of Interest

Certain facts (the "*Daewoo* factors") indicate "that two entities have a unity of interest and ownership," including "(1) inadequate capitalization, (2) commingling of funds and other assets, (3) disregard of corporate formalities and failure to maintain an arm's length relationship, (4) holding out by one entity that is liable to the debts of the other, (5) identical equitable ownership, (6) use of the same offices and employees, (7) lack of segregation of corporate records, (8) manipulating assets

---

[1] The Crypto Credit Agreement which Defendants also rely upon similarly states that it is between Cress and "any holding company, subsidiary or entity belonging to the Nexo group of companies."

between entities so as to concentrate the assets in one and the liabilities in another, and (9) identical directors and officers." *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 635 (N.D. Cal. 2020). Where "several of the factors" are implicated, a unity of interest may be found. *Id*. at 637 (finding satisfaction of three factors sufficient to establish prima facie case of unity of interest). Plaintiff's allegations implicate several *Daewoo* factors. Nexo does *not* dispute that (1) Nexo principals Kantchev, Shulev, and Trenchev identify themselves as "co-founders" and "managing partners" of "Nexo," without distinguishing among the Nexo corporate entities, ¶ 16(b); the Nexo entities share similar if not effectively identical supervision and management, in that some combination of Kantchev, Shulev, and Trenchev is responsible for such oversight for each of the entities, ¶ 16(f); the Nexo entities share similar equitable ownership, in that Nexo co-founders Kantchev, Shulev, and Trenchev collectively hold most of the equity in each entity, ¶ 16(e); Nexo Capital and Nexo Financial Services share the same principal place of business, ¶¶ 10, 13; and the Nexo Entities "treat the employees of any particular entity as working for 'Nexo' as a whole," ¶ 16(h).

Nexo argues that "[n]early identical jurisdictional arguments were made and rejected last year in *Jeong v. Nexo Financial LLC*." MTD at 6. But Nexo simply ignores the significant additional jurisdictional allegations in the Complaint here. In particular, the CPA that Plaintiff entered into was with "Nexo (any holding companies, subsidiaries or related entities which are hereafter referred to as Nexo,)" and was signed by Defendant Trenchev on behalf of all Nexo entities. ¶ 17. The CPA further states that "Nexo is a limited partnership duly organized, validly existing and in good standing under the laws of the Estonia." CPA § 3.1(a). However, Nexo Capital—the sole entity which Defendants claim Plaintiff engaged—is a Cayman Islands company. Throughout its relationship with Plaintiff, Nexo always presented itself as a single enterprise, never suggesting that certain products were offered by distinct Nexo entities. ¶ 17. In particular, Nexo never suggested that Plaintiff was purchasing digital assets from a different entity than he was borrowing from." *Id.*

Nexo also publicly advertises itself as a single entity. ¶ 24. For example, a Nexo blog post from November 2022, boasts that its "core services complement each other and make the enterprise profitable." *Id.* Nexo identifies these core services as "Crypto-backed loans, margin lending and

6

institutional OTC loans made on a collateralized basis, Earn interest products and staking, [and] Trading services (spot, futures, options, otc, etc.)." ¶ 25. This post does not make any effort to differentiate between the various Nexo entities and Nexo's product offerings. Rather, Nexo highlights the interconnected nature of its borrowing, trading, and earn products. *Id.* Indeed, Nexo cites to the Crypto Credit General Terms and Conditions which also lump all Nexo entities together as "any holding company subsidiary or entity belonging to the Nexo group of companies." MTD Ex. 1.

### 2. Plaintiff Adequately Pleads Inequitable Results

A plaintiff identifies inequitable results by alleging "some evidence of bad faith conduct on the part of defendants." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1250 (9th Cir. 2017). Plaintiff alleges such conduct in at least four main ways.

*First*, Nexo acted in bad faith. It carried out a scheme to fraudulently induce Plaintiff to make substantial investments on its platform and thereby sold unregistered securities to Plaintiff. In so doing, Nexo disregarded California's securities and lending laws and made numerous material misrepresentations to Plaintiff in California. These allegations are more than sufficient to establish the requisite inequitable results. *See Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC*, 501 F. Supp. 3d 886, 897 (E.D. Cal. 2020) (a "willful" breach of contract alone is sufficient to establish inequitable result for purposes of an alter ego claim).

*Second*, because Plaintiff alleges that multiple Defendants participated in the operation of the Nexo Platform, ¶¶ 15-22, 24-25, the dismissal of some of those entities could frustrate meritorious claims against Defendants and would thus enable them to escape liability for the above-referenced bad-faith conduct. *See Updateme Inc. v. Axel Springer SE*, 2018 U.S. Dist. LEXIS 37592, at *29-30 (N.D. Cal. Mar. 7, 2018); *Teva Pharm. Indus. v. United States Dist. Court*, 2020 U.S. App. LEXIS 41195, at *10 (9th Cir. Dec. 22, 2020). Dismissal of those entities could also frustrate, delay, and impede discovery. *Tan v. Quick Box, LLC*, 2021 U.S. Dist. LEXIS 67791 (S.D. Cal. Apr. 7, 2021).

*Third*, the Nexo entities would be unjustly enriched from their misconduct. *See, e.g.*, ¶¶ 1, 4, 82-83, 109. The moving Defendants' prospective retention of this ill-gotten gain, as a result of evading jurisdiction, qualifies as an inequitable result for purposes of the alter ego analysis. *See Stewart v.*

7

*Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 963 (N.D. Cal. 2015).

*Fourth*, Nexo has repeatedly represented that it is a single entity.  ¶¶ 17-25. Indeed, *none* of the relevant agreements specify *which Nexo entity* contracted with Plaintiff.  *See* MTD Exs. 1, 4.  It would be unjust for these entities thus to represent themselves as a single entity but, at the same time, to have this Court to treat those same entities separately.  *See Pac. Bell Tel. Co. v. 88 Connection Corp.*, 2016 U.S. Dist. LEXIS 77345, at *17 (N.D. Cal. June 14, 2016) (listing "misrepresentation of the corporate structure" as an example of an "inequitable result").

### C.    The Court Has Specific Jurisdiction Over Trenchev

Trenchev contends that he is not subject to jurisdiction because the acts directed at California were all undertaken in his role as a corporate officer. He is wrong. Where a corporate officer aims tortious conduct at the jurisdiction they are not immune merely because they acted on behalf of the corporation. *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 522-23 (9th Cir. 1989) (company's "officers and directors, purposefully directed their activities toward Arizona when [company] solicited investments from Arizona residents.").

"[A]n unreasonable and anomalous result would occur if a nonresident individual, acting in his capacity as a corporate officer or director, committed a tort for which he may be personally liable and could shield himself from jurisdiction when he could not interpose the same shield as a defense to substantive liability." *Taylor-Rush v. Multitech Corp.*, 217 Cal.App.3d 103, 118 (1990).  California law provides that corporate officers or directors may be liable if they authorize or actively participate in securities fraud or the sale of unregistered securities as Plaintiff alleges that Trenchev did.  Trenchev is not a "mere employee," but rather is the "primary participant in an alleged wrongdoing intentionally directed at" California residents, including Plaintiff.  *Id.* at 118 *quoting Calder v. Jones,* 465 U.S. 783, 790 (1984); *see also Hudson v. Moore Business Forms, Inc.*, 609 F.Supp. 467 (N.D. Cal. 1985) (Rejecting argument that defendant cannot be subject to jurisdiction in California because they "have no contacts with the state other than in their corporate capacities").

Trenchev contends that he "had no way to know that Cress lived in California," and that he "never emailed Cress."  Both representations are untrue.  Cress provided Nexo with detailed personal

information, including his home address in California.[2]  Nexo and Trenchev were thus aware that Cress resided in California before executing the CPA.  In addition, Trenchev sent the CPA to Cress' email address and Cress electronically signed the agreement from his home in California.  MTD, Ex. 4, Cress Decl. ¶ 4.  As Trenchev directly solicited Cress' securities investments with full knowledge he would be harmed in California, Trenchev's' reliance on *Kalin v. Midas Fund, Ltd.*, 2022 U.S. Dist. LEXIS 208006 (N.D. Cal. Oct. 12, 2022), where there were no direct contacts with the forum state, is misplaced.

### D.  In the Alternative, Plaintiff is Entitled to Jurisdictional Discovery

Even if the Court were to find that Plaintiff has not established a *prima facie* showing of personal jurisdiction, Plaintiff respectfully requests leave to conduct jurisdictional discovery.  *See*, *e.g.*, *Siano Mobile Silicon, Inc. v. Mavcom, Inc.*, No., 2011 U.S. Dist. LEXIS 44434, at *7-8 (N.D. Cal. Apr. 19, 2011) (noting "the broad scope of discovery applicable to claims of alter ego and agency" in granting plaintiff's motion to compel documents from defendants).  Plaintiff has alleged more than a "colorable basis" for personal jurisdiction over the Nexo entities.  *Tevra Brands LLC v. Bayer HealthCare LLC*, 2020 U.S. Dist. LEXIS 194539, at *3 (N.D. Cal. Oct. 20, 2020).  To do so, the plaintiff need only allege "'some evidence' tending to establish personal jurisdiction over the defendant." *Id*.; *see also Twentieth Century Fox Intern. Corp. v Scriba*,  385 F. App'x 651, 653 (9th Cir. 2010) (vacating and remanding district court's decision to deny jurisdictional discovery when plaintiff's "alter ego allegations, if supported by some evidence, would provide a strong argument for the exercise of jurisdiction").  Applying this liberal standard, courts in the Ninth Circuit routinely permit jurisdictional discovery.[3]

---

[2] During his correspondence with Nexo, Cress repeatedly informed them that he was in California. For example on March 17, 2021, Cress informs Hristov, "I live in San Francisco," and on March 18, 2021, Cress informs Hristov, "I'm in San Francisco and I don't know where you are, so please translate your available hours to California time – PST."  Cress Decl., Ex. A.
[3] *See j2 Global Commc'ns., Inc. v. Vitelity Commc'ns., LLC*, 2012 U.S. Dist. LEXIS 51793, at *9-10 (C.D. Cal. Apr. 12, 2012) (denying defendant's motion to dismiss and granting plaintiff's request for limited jurisdictional discovery, holding that plaintiffs "have made a colorable claim as to jurisdiction and are therefore entitled to this additional discovery"); *Crystal Cruises, Inc. v. Moteurs Leroy-Somer S.A.*, 2011 U.S. Dist. LEXIS 73376, at *13-14 (C.D. Cal. July 1, 2011) (permitting plaintiffs to conduct

## II.    PLAINTIFF SUFFICIENTLY STATES HIS FRAUDULENT INDUCEMENT CLAIM

"Rule 9(b) only requires that plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access." *Rubenstein v. Neiman Marcus Grp. Ltd. Liab. Co.*, 687 F. App'x 564 (9th Cir. 2017). The court "relax[es] pleading requirements where the relevant facts are known only to the defendant." *Id*. "[A] pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so a defendant can prepare an adequate answer from the allegations." *Id*. Whereas a plaintiff must "state with particularity the circumstances constituting fraud . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b).

While Nexo argues that "Cress fails to plead his fraudulent inducement claim to Rule 9(b)'s exacting standard," it does not dispute that Plaintiff has adequately alleged with particularity the circumstances constituting fraud including "the who, what, when, where, and how of the misconduct charged." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). Rather, Defendants argue (a) that the alleged misrepresentations are not actionable, (b) that Plaintiff fails to plead that Nexo knew the statements were false, and (c) that Plaintiff fails to plead reliance. *See* MTD at 12-16. Defendants are wrong. Each of these factors may be "alleged generally" and are more than sufficiently alleged by Plaintiff.

### A.    Nexo's Misrepresentations Are Actionable

Nexo solicited Plaintiff's investments by promising him that as a participant in its VIP program, he would (1) "get a response from the support team in 2 hours, 24/7," and (2) could utilize certain OTC services including Nexo's "[l]iquidation relief program," which Nexo advertised as a "service in the event of a market crash to recover your liquidated assets." ¶¶ 42, 97-99. Nexo also represented that Plaintiff would earn interest on his cryptocurrency collateral. ¶ 94. Each of these "statements are objectively verifiable and therefore not puffery." *Megafon PJSC v. Hewlett Packard*

discovery consisting of "10 interrogatories or requests for production, and two depositions."); *Advanced Targeting Sys. v. Advanced Pain Remedies, Inc*., 2013 U.S. Dist. LEXIS 77779, at *15-16 (S.D. Cal. June 3, 2013) (denying defendant's motion to dismiss and granting plaintiff jurisdictional discovery where plaintiff made a colorable showing).

*Enter Co.*, 2019 U.S. Dist. LEXIS 40827 (N.D. Cal. Mar. 12, 2019) (citing *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014). Nexo's contention that these statements are not actionable thus fails. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (descriptions of "specific or absolute characteristics of a product are actionable").

**The Non-Existent Liquidation Relief Program.**    Defendants do not dispute that they promised Mr. Cress that as a VIP he would be able to utilize Nexo's "liquidation relief program . . . in the event of a market crash to recover [his] liquidated assets."  ¶¶ 42, 85.  Defendants nevertheless contend that this representation is not actionable because Defendants "offered him a service . . . '*to recover*' his '*liquidated assets*'" by repurchasing them from Nexo.  MTD at 12, ¶ 87.  This beggars belief.  Plaintiff did not, and no reasonable consumer would, understand that a VIP "liquidation relief program" would merely entail repurchasing the liquidated assets on the open market as any other market participant could do at any time. ¶ 88.

In a desperate attempt to sidestep the fact that their advertised liquidation relief program did not exist, Defendants grossly mischaracterize Plaintiff's allegations.   Plaintiff believed that his collateral "would be protected in the event of a liquidation" through the ability to re-enter his positions without posting additional collateral and thereby recover his assets following a flash crash.  ¶ 88. Plaintiff does not contend that he believed the liquidation relief program meant his collateral "*would never be liquidated at all*."  *See* MTD at 12.

Defendants' argument that the "word 'recover' unambiguously contemplates that the consumer has been separated from his collateral," thus falls flat.  MTD at 12.  Moreover, recover means "to get back or regain in full or in equivalence," Recover, Black's Law Dictionary (10th ed. 2014), and relief means the "removal or lightening of something oppressive, painful, or distressing." Meriam-Webster. Nexo's promise that its "liquidation relief program" program would allow Plaintiff to recover his liquidated assets in the event of a market crash thus specifically encompasses a promise to return Plaintiff to the status quo (i.e. to allow Plaintiff to reenter his position).  What Nexo ultimately offered Plaintiff was the option to **repurchase** cryptocurrency as any other market participant could do on Nexo or any number of cryptocurrency exchanges.  Nexo offered him nothing.

Nexo's proposed interpretation renders its promise illusory and must thus be rejected. *Rose v. Chrysler Motors Corp.*, 212 Cal.App.2d 755, 759 (1963) (Rejecting "interpretation that would provide only 'illusory' protection, and … would be tantamount to a fraudulent defeat of the natural understanding of the purchaser."); *J. C. Millett Co. v. Distillers Distributing Corp.*, 258 F.2d 139, 142 (9th Cir. 1955) ("A construction making a contract illusory is not favored and we will not accept it if there is a reasonable alternative."); RESTATEMENT (SECOND) OF CONTRACTS § 203(a) (1981), quoted in *U.S. v. Franco-Lopez*, 312 F.3d 984, 991 (9th Cir. 2002) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."); *Md. Cas. Co. v. Reeder*, 221 Cal. App. 3d 961, 978 (1990) (Insurance coverage is illusory when the insured "receives no benefit" under the policy.).

Nexo's contention that Cress' emails with Nexo regarding his liquidation price evidence that he knew the illusory nature of the liquidation relief program is untrue and invites a factual inquiry that is not appropriate for resolution on a Motion to Dismiss. There are a myriad of reasons why Plaintiff would want to avoid having to avail himself of the protection he believed the liquidation relief program provided by avoiding liquidation entirely. First, Plaintiff understood that availing himself of the liquidation relief program may not be entirely without cost. Second, the liquidation of Plaintiff's assets could trigger significant tax liability.

**Lack of Responsiveness.** Plaintiff specifically alleges that Plaintiff's relationship manager was "frequently unavailable, and Plaintiff did not receive a direct phone line to Hristov." Defendants once again seek premature adjudication of factual issues by arguing that Hristov's signature block displayed his direct line. MTD at 12. But Plaintiff was unable to directly reach Hristov using the number in his signature block. ¶¶ 89-90; Cress Decl. ¶ 3.

Defendants also argue that the promise of an email reply was "plainly limited to 'business hours." Not so. Nexo explicitly promised that VIP customers would receive a response from its support team "**in 2 hours, 24/7**." ¶ 42 (emphasis added). This is not generalized puffery regarding responsiveness. Rather, it is a specific representation that VIP customers would receive a response from the support team within two hours regardless of the time or day. It is well established that

12

representations regarding 24/7 availability are "actionable." *McLellan v. Fitbit, Inc.*, 2018 U.S. Dist. LEXIS 94685, at \*6-7 (N.D. Cal. June 5, 2018); *see also Css, Inc. v. Fibernet*, 2008 U.S. Dist. LEXIS 141875, at \*6, \*11 (S.D. W. Va. July 18, 2008) (Defendant's marketing of services as "24 hours a day, 7 days a week, when in fact they were not" are actionable under Rule 9(b)).[4]

**Interest on Collateral.**  Defendants argue that "Cress conflates Nexo's two different products." MTD at 13.  But that is not the case.  It is Defendants who conflated the two products and falsely represented to Cress that he would earn interest on all collateral by stating that: "**You will be earning 5% annually on the Bitcoin which is you used as collateral**." ¶ 44.

Defendants contend that because Cress previously asked about interest on the 82 BTC described as "BTC Earn interest and protect Collateral," he should have inferred that Defendants statement that he would receive interest "on the Bitcoin which you used **as collateral**," referred only to this 82 BTC and not to the additional 168 BTC described as "**BTC Collateral**."  But that is not the case.  Cress did, and a reasonable consumer would, understand Defendants' statement to be referring to all collateral since it was not qualified in any way.

Defendants once again ask this court to prematurely adjudicate a factual dispute regarding a statement which is false on its face.  In doing so they attach a chat between Cress and Nexo support on June 11, 2021, in which Cress asks whether USDC or USDT will earn interest and Nexo customer support states that they will not earn interest if they are in the Credit Line wallet.  This chat should not be considered by the Court because it is not attached to, or referenced in, the Complaint.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, a district court may not consider

---

[4] Defendants own case law is in accord.  In *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, the Ninth Circuit noted that "misdescriptions of specific or absolute characteristics of a product are actionable." 911 F.2d 242, 246 (9th Cir. 1990) (*quoting Smith-Victor Corp. v. Sylvania Elec. Prods.*, 242 F.Supp. 302 (N.D. Il. 1965) (Advertiser's statement that lamps were "far brighter than any lamp ever before offered for home movies" ruled puffery. "However, **when the advertiser quantified numerically** the alleged superior brightness with statements such as '35,000 candle power and 10-hour life,' **statements were actionable"**) (emphasis added). Defendants' reliance on *Elias v. Hewlett-Packard Co.* is similarly misplaced.  950 F.Supp.2d 1123, 1133 (recognizing that "consumer reliance will be induced by specific rather than general assertions" and that representations that consumers would receive 50 channels and view schedules seven days in advance were factual).

any material beyond the pleadings in a Rule 12(b)(6) motion").[5]   However, the chat merely shows that in June 2021—3 months after being fraudulently induced into the borrowing transactions—Cress did not know one way or the other whether different assets would earn interest.[6]  It has no bearing on Cress' understanding of Nexo's representations at the time he relied upon them. *Wickam v. Ivar (In re Werner)*, 817 F. App'x 432, 437 (9th Cir. 2020) ("Seeing documents four months later suggesting otherwise would not retroactively affect [plaintiff's] reliance at the time of [his] initial investment").

## B.    Nexo Knew The Statements Were False When It Made Them

Defendants complain that Plaintiff "fails to plead with specificity how (or even if) Nexo had an intent not to perform its promises." MTD at 14.  Not only is this untrue, but Rule 9(b) does not require that Plaintiff plead Nexo's intent with specificity.  "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Once again, Defendants' own case law is in accord.  *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F.Supp.3d 1092, 1109-10 (C.D. Cal. 2015) ("intent can be averred generally under Rule 9(b)").

Plaintiff has easily met this standard, pleading that "Nexo had no intention of honoring these false promises when it made them, but rather that they were provided to Plaintiff with the purpose of convincing him to take out loans that put his collateral at risk of liquidation, and for Nexo's benefit." ¶ 98.  "A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." *Lazar v. Superior Ct.*, 12 Cal.4th 631, 638 (1996).  In the cases on which Nexo relies, the only allegations "that could give rise to an inference that a promise was made with no intention of performing is Plaintiff's allegation that Defendant failed to honor the promise." *See Aton Ctr., Inc. v.*

---

[5] Several of Nexo's Exhibits are not referred to in Plaintiff's complaint and cannot be considered on a Rule 12(b)(6) motion to dismiss.  Exhibit 3 is an accredited investor verification not referred to in Plaintiff's Complaint.  Exhibit 5 contains emails with Nexo's account manager as well as chat conversations with Nexo support that were not referenced in the Complaint.  Exhibit 6 is entirely made up of chats not referenced in Plaintiff's complaint.  Plaintiff has not had an opportunity to verify the authenticity of these documents.

[6] The Complaint alleges that Nexo represented that Cress would earn 5% annually "on the Bitcoin which [he] used as collateral," which is entirely different than whether USDC or USDT would earn interest.  ¶44.  In fact, Nexo itself concedes that some assets—namely the NEXO security—would earn interest regardless of which wallet they were in.

*Regence Blue Shield of Wash.*, 2021 U.S. Dist. LEXIS 29055, at \*30 (S.D. Cal. Feb. 16, 2021).  Cress has alleged far more here.

Nexo's cases all rely on *Tenzer v. Superscope*, 39 Cal.3d 18, 30 (1985), where the California Supreme Court held that while "something more than nonperformance is required to prove the defendant's intent not to perform his promise… fraudulent intent **must often be established by circumstantial evidence**."  *Id*. ("We conclude that Tenzer's papers were sufficient to raise triable issues of fact on a cause of action for fraudulent misrepresentation") (emphasis added).  Intent is adequately pled where the "alleged communications to Plaintiff… can reasonably be interpreted as part of a purposeful effort to conceal from Plaintiff that Defendant would be unable to perform its promise[]."  *Parvizi v. Create Music Grp.*, 2021 U.S. Dist. LEXIS 171186, at \*25 (C.D. Cal. May 25, 2021) ("This alleged pattern of behavior was more than mere nonperformance.  Instead, **it is consistent with an alleged scheme to induce Plaintiff**") (emphasis added).  Cress' Complaint is replete with allegations of Nexo's intent to both conceal the nature of, and carry out its unlawful scheme.

Cress alleges that, "**the Nexo VIP Program was an unlawful scheme** to steer customers with large accounts, such as Plaintiff, into loans and programs that were lucrative to Nexo with the promise of special benefits, when in fact, Nexo provided sub-standard service and a false sense of security conveyed by its advertising that increased the likelihood of customer liquidations, and did not provide the benefits Nexo represented that Plaintiff would receive.  *See* ¶¶ 47, 76, 81, 84, 93, 101.  Significantly, Defendants concede that they had no intention of providing any liquidation relief program, instead acknowledging that the program merely allowed Cress to repurchase lost assets.

## C.    Plaintiff Relied on Nexo's Statements

"Except in the *rare* case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *City Sols. v. Clear Channel Communs., Inc.*, 365 F.3d 835, 840 (9th Cir. 2004).  Whether Plaintiff justifiably relied on Defendants misrepresentations is thus a "factual question that is premature for the Court to decide" on a Motion to dismiss." *Yinou Pure Furniture v. United States Pride Furniture Corp.*, 2021 U.S. Dist. LEXIS 253704, at \*13 (C.D. Cal. Nov. 17, 2021); *see also OCM Principal Opportunities*

*Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 858 (2007) ("We are not persuaded that these disclaimers precluded reasonable reliance as a matter of law," and holding inapposite "*Resolution Tr. Corp. v. Rowe*, Case, 1993 U.S. Dist. LEXIS 6436, at *7-8 (N.D. Cal. Apr. 28, 1993)). Nexo's reliance on *Resolution* is inapposite here for two reasons: (1) it was decided on summary judgment; and (2) the disclaimer language was in the same document as the fraudulent statement at issue, whereas here there is no such disclaimer in the VIP Program Brochure or emails. *Id.*; *see* Nexo's Ex. 2 (no disclaimer language).

### 1. Plaintiff Relied on Nexo's Misrepresentations

"[A]t the motion to dismiss stage, actual reliance is inferred from the misrepresentation of a material fact." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020). "Whether a misrepresentation is sufficiently material to allow for an inference of reliance is generally a question of fact that cannot be decided at the motion to dismiss stage." *Id.* Nexo argues there could be no actual reliance because Cress was not aware of the liquidation relief program or its terms until *after* he was liquidated.[7] MTD at 15. Not so. Nexo sent Cress the VIP Program Brochure promising a "liquidation relief program" in March 2021 and Plaintiff relied on this representation at the time. ¶ 45. Hristov subsequently confirmed Cress' common sense understanding of the liquidation relief program over the phone.

On May 23, 2021, Cress requested a call to discuss liquidation relief in a "flash crash scenario." ¶ 47. When no additional information was forthcoming, Cress followed up multiple times to explore how to utilize the liquidation relief program. However, Nexo consistently refused to provide additional details regarding the program. ¶ 47, 101. With his collateral nearing liquidation, Cress was desperate for details on how to utilize the liquidation relief program.[8] Against this backdrop, Cress' June 2021 email that he didn't "know what the liquidation relief program is," was in fact a desperate plea for more information regarding the program he had relied on in making his initial investment and

---

[7] Nexo does not challenge that Cress has adequately alleged actual reliance upon its representations regarding responsiveness and interest on collateral. *See* MTD at 15.

[8] Plaintiff had gone twelve days without a response when inquiring about how to best protect his assets nearing liquidation. ¶ 91, MTD Ex. 5 at 18 (p. 1/5).

now wanted to avail himself of.  The June 2021 email thus does not reflect that Cress was "unaware" of the program prior to liquidation.  Rather, Nexo's use of this email also highlights the impropriety of introducing evidence outside of the pleadings in support of a Motion to Dismiss as Nexo selectively ignores earlier communications in which Cress specifically references the liquidation relief program.

### 2.  Plaintiff's Reliance was Justifiable

"[M]ere general disclaimers are insufficient to defeat reasonable reliance on material misrepresentations as a matter of law, even by a sophisticated party." *Abrams v. Blackburne & Sons Realty Capital Corp.*, 2019 U.S. Dist. LEXIS 230853, at *38 (C.D. Cal. Dec. 2, 2019).  Nexo nevertheless argues that Plaintiff has "failed to plead justifiable reliance because in the CPA he expressly accepted the risk of his transaction, disclaimed reliance on any prior statements from Nexo, and entered into an integrated agreement."  MTD at 16

This argument is entirely without merit. To establish that reliance was not justifiable, Nexo must show that "express language in the contract contradicted any particular alleged pre-contract statements." *Megafon PJSC v. Hewlett Packard Enter. Co.*, 2019 U.S. Dist. LEXIS 40827, at *19-20 (N.D. Cal. Mar. 12, 2019) ("integration clause itself does not automatically render . . . reliance on . . . pre-contract statements unreasonable").  Nexo's "per se" arguments "that a party claiming fraud did not reasonably rely on representations not contained in the contract" are "inconsistent with California law." *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 32 Cal.App. 4th 985, 987 (1995); *c.f. Microsoft Corp. v. Hon Hai Precision Indus. Co.*, 2020 U.S. Dist. LEXIS 158185, at *39 ("[T]he inclusion of an integration clause in the PLA is not determinative or conclusive in any regard.").[9]  Nexo's argument that its CPA integration clause somehow bears on Cress' reasonable reliance is thus inconsistent with California law.

Moreover, the CPA was entered into for "periodic Purchase Orders for the purchase and sale

---

[9] In *Microsoft*, unlike here, the case involved sophisticated **corporate entities who were represented by counsel and negotiated the PLA over the course of many months**." 2020 U.S. Dist. LEXIS 158185, at * 39-40.  Although the reasonableness of a party's reliance is ordinarily a question of fact, the issue may be decided as a matter of law "where sophisticated parties represented by counsel allegedly rely on misrepresentations made by an adversary during the negotiation of a contract." *Id.* at *41.  Nothing of the sort happened here.

of cryptocurrency [the NEXO token securities] as set forth herein and therein." Nexo Ex. 4 at 1. The CPA does not ever mention lending or loans, which is the heart of Cress' Fraudulent Inducement claim. ¶¶ 98-101. In fact, Nexo argues that Cress' loan and the liquidation of that loan is governed by the separate Crypto Credit Terms.[10] It defies logic for Nexo to seek to undermine Plaintiff's reliance by claiming that the CPA is a complete integrated writing that guides Cress' entire relationship with Nexo, but then point to the separate Crypto Credit Terms when it benefits them.

## III.    PLAINTIFF SUFFICIENTLY STATES HIS UCL CLAIMS

### A.    Plaintiff's Pleadings Need Not Establish An Inadequate Remedy at Law

Nexo's argument that Plaintiff's UCL claim fails because his pleadings have not established an inadequate remedy at law was squarely rejected by the court when raised just last year by Nexo in *Junhan Jeong v. Nexo Fin. LLC*, 2022 U.S. Dist. LEXIS 10089, at *92-94 (N.D. Cal. Jan. 19, 2022). Nexo relies upon *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), to argue that Plaintiff's pleadings must establish an inadequate remedy at law in the pleadings. The *Jeong* Court rejected this argument, holding "*Sonner* does not hold that plaintiffs may not seek alternative remedies at the pleading stage." 2022 U.S. Dist. LEXIS 10089, at *92-94

The *Jeong* Court held "that *Sonner* has limited applicability to the pleading stage," and that "in light of *Sonner*'s limited applicability to the pleading stage, there is no binding precedent that holds that pleading equitable restitution in the alternative is improper." *Id*. at 92-94. Indeed, a plain reading of the California Business & Profession Code § 17205 and California Civil Code §§ 1752 and 1780(a) state that UCL remedies "shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other law." Cal. Civ. Code § 1752; *Freeman v. Inochino Apparel, Inc.*, 443 F.Supp.3d 1107, 1114 (N.D. Cal. Mar. 11, 2020) ("Plaintiff may allege claims in the alternative at the pleading stage. The equitable remedies afforded by the UCL and CLRA are expressly stated to

---

[10] Trenchev represents that Exhibit 1 to his declaration is the "Crypto Credit General Terms and Conditions, effective as of the date when Mr. Cress opened his Nexo account on March 3, 2021." This is almost certainly untrue as those terms reference a web domain (nexo.com) that Nexo first launched two years later. *See Nexo.com is Here*, March 14, 2023, available at https://nexo.com/blog/nexo-com-is-here ("It's official – we have outgrown our .io domain and moved to nexo.com"), accessed Jul. 11, 2023. Plaintiff exclusively accessed Nexo through the nexo.io domain. Cress Decl., ¶ 5.

be in addition to other available remedies at law"). In any event, Cress does lack an adequate remedy at law for his UCL claims because they arise from losses caused by Nexo's unlicensed and unfair lending practices and Nexo obscuring the true cost of borrowing. ¶¶ 108-113.

### B.    The UCL Claim Is Not Barred Because Cress Also Brings Securities Claims

There is a split of authority in California over the UCL's application to securities transactions. Defendants cite *Bowen v. Ziasun Techs., Inc*., 116 Cal. App. 4th 777, 788 (Cal. Ct. App. 2004), for the proposition that California's UCL does not apply to securities transactions. The reach of that ruling, however, is far from certain as a later-decided case by the Court of Appeal, *Overstock.com, Inc. v. Gradient Analytics, Inc*., 151 Cal. App. 4th 688 (Cal. Ct. App. 2007), distinguishes *Bowen* as it applies to UCL claims that can be said to "not arise from any stock transactions between the parties," but rather, arise from something else. *Id.* at 715. The Court of Appeal held that the "UCL contains no language supporting an exclusion for securities." *Id*. at 715–16 (citing *Roskind v. Morgan Stanley Dean Witter & Co*., 80 Cal. App. 4th 345, 355 (Cal. Ct. App. 2000)). The court concluded that "the sweeping language of the UCL is intended to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur." *Id.* at 716 (citing *Cel-Tech Comm'c'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 181 (Cal. 1999)).

Other courts, including those in this district, agree with *Overstock.com* and have since interpreted *Bowen* narrowly. *See In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009) (denying motion to dismiss section 17200 claim based on *Bowen* because "[t]he reach of the [*Bowen*] ruling . . . is far from certain."); *Rose v. Bank of Am., N.A*., 57 Cal. 4th 390, 399 n.8 (Cal. 2013) (questioning "the scope and merits" of the holding in *Bowen*); *Strigliabotti v. Franklin Res., Inc.*, 2005 U.S. Dist. LEXIS 9625, at *29 (N.D. Cal. Mar. 7, 2005) ("securities laws do not preempt Section 17200 generally."). Moreover, a plaintiff is, of course, entitled to "plead alternative theories of liability, even if those theories are inconsistent or independently sufficient." *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999). "Further, a party may allege inconsistent factual allegations." *Id.*

Although Defendants have denied that the LII is a security, MTD at 21-23, they nonetheless

ask this court to dismiss Plaintiff's UCL claims with prejudice because they say it does not apply to "securities transactions." *Id.* at 17. Defendants cannot have it both ways. Not only is pleading in the alternative specifically allowed, but if the Court (or a jury) were to agree with Defendants that the LII is not a "security," then the argument for dismissing the Plaintiff's UCL claims evaporates.

### C.      Plaintiff Sufficiently Alleges Predicate Acts

Virtually any law—federal, state or local—can serve as a predicate for an action under the UCL. *Johnson v. PNC Mortg.*, 2014 U.S. Dist. LEXIS 111846, at *33 (N.D. Cal. Aug. 12, 2014). "An unlawful business practice or act within the meaning of the UCL is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." *Id*. Here, Plaintiff adequately alleges Nexo's conduct was unlawful because it violated California Finance Code, §§ 22100 et seq., prohibiting engaging in the business of a finance lender or broker without obtaining a license. ¶¶ 110-113. Nexo concedes that none of the entities directly transacting with Plaintiff were licensed. MTD at 7. Plaintiff also adequately alleges that Nexo obscured the true cost of borrowing by understating the riskiness of the loans and obscuring the LTV and liquidation thresholds. ¶¶ 52, 108, 110.

Plaintiff also sufficiently pleads his UCL claim under the other, "unfair," "misleading," and "deceptive" prongs of the UCL. Nexo's "unfair," "misleading," and "deceptive" business acts are "grounded in fraud" are subject to the pleading standard of Rule 9(b). *Maisel v. S.C. Johnson & Son, Inc.*, 2021 U.S. Dist. LEXIS 86203, at *24 (N.D. Cal. May 5, 2021). Plaintiff meets this standard, as described above in Section II.

## IV.      PLAINIFF SUFFICIENTLY STATES CALIFORNIA SECURITIES CLAIMS

### A.      Plaintiff's Properly Pleads His Securities Claims

#### 1.  Plaintiff Was Harmed By His Purchase of Earn Account Securities

Nexo argues that Plaintiff fails to allege any losses associated with the Earn Account Securities. MTD at 19. Not so. Plaintiff alleged that the Nexo Earn Account securities were included in the basket of digital assets that comprised the LII. ¶¶ 118-119. Nexo ultimately liquidated the LII, which included the Earn Account Securities, causing millions of dollars of losses to Plaintiff. ¶¶ 4, 67. Nexo itself acknowledged that Plaintiff's "liquidation price … would depend on the movement of the

different assets in your account," which included the Earn Account Securities.  ¶ 119.

### 2.  NEXO Tokens Are Not "Covered Securities"

Defendants contend that the NEXO Token is a "covered security" because it is exempt from registration pursuant to the Rule 506(c) Exemption.  15 U.S.C. § 77r; 17 C.F.R. § 230.506(c); MTD at 20-21.  However, Defendants' own case law recognizes that to qualify for a Rule 506 exemption a security **must** meet certain conditions.  Most relevant here, the offers or sales must be integrated as a part of a single exempt offering, and so no offers or sales may be made more than 30 days before or 30 days after the offering itself.  17 C.F.R. § 230.502(a); 17 C.F.R. § 230.152(b)(1); *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 913-914 (6th Cir. 2007) (Defendants failed to show securities "were 'covered securities' warranting NSMIA preemption from state law" where it did not meet conditions of Rule 506 exemption).  In addition, the offeror "cannot violate the antifraud provisions of the federal securities laws in the information it provides to investors."  *Mohebbi v. Khazen*, 50 F.Supp. 3d 1234, 1248 (N.D. Cal. 2014).  Here, Plaintiff has alleged both that (1) the offering was not a single exempt offering and that (2) Nexo provided fraudulent information regarding the NEXO token to Plaintiff.

The Plaintiff must simply plead facts that suggest "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 1244 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This standard is easily met here, where Plaintiff alleges that "Nexo has never registered the NEXO Token with the SEC," and that "[w]hile Nexo Capital did file a Form D Notice of Exempt Offering of Securities with the SEC in 2018, **that Notice indicated that its token offering would be complete within a year**, and in any event does not constitute registration with the SEC."  ¶ 55 (emphasis added).  Like here, the *Brown* Defendants asserted that they qualified for Rule 506 exemption, but the Court denied summary judgment because Defendants could not explain "**how a sale of securities three years after the filing nevertheless remains integrated with the original filing**."  *Brown*, 481 F.3d 901 at 914.  Just as in *Brown,* Nexo filed a Form D in 2018 indicating that its exempt offering would be complete within a year, yet Nexo sold Cress the NEXO Token Securities in May and June 2021—**at least two years after Nexo's purported Rule 506 offering had already concluded**; *See also* MTD

Ex. 8 at 4.  As set forth in greater detail in Section IV.B.2, Nexo's claim that the NEXO Token was registered with the SEC was also false.

Unsurprisingly, courts have squarely rejected nearly identical defenses raised by token issuers. *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 181 (S.D.N.Y. 2020) (token issuer did not qualify for Rule 506(c) exemption because private sale was improperly integrated with public offering); *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 379 (S.D.N.Y. 2020) (same).

### 3.    The "Leveraged Investment Instrument" Is a Security

The Corporate Securities Law defines the term "security" broadly, to include any "put, call, straddle, option, or privilege on any . . . group or index of securities (including any interest therein or based on the value thereof)."[11]  Cal. Corp. Code § 25019.  The LII meets this definition.  Plaintiff alleges that the LII is a derivative security because it derives its value from the NEXO Token and Earn Account securities.  ¶¶ 62-67.  The SEC has long noted that "holding derivative securities is functionally equivalent to holding the underlying . . . securities . . . since the value of the derivative securities is a function of or related to the value of the underlying security.*" Roth v. Goldman Sachs Grp., Inc.*, 873 F. Supp. 2d 524, 530-31 (S.D.N.Y. 2012) (citing Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 34-28869, Investment Company Act Release No. 35-25254, 56 Fed. Reg. 7242-01, 7248 (Feb. 21, 1991); *see also Elliott Assocs. v. Porsche Automobil Holding SE,* 759 F. Supp. 2d 469, 475-76 (S.D.N.Y. 2010) (swaps of VW shares "were functional equivalent of trading the underlying VW shares.").

Because investment packages containing securities are themselves securities, the Court need not conduct a detailed analysis under the *Howey* or risk-capital tests.  *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 691-92 (1985) ("[A]pplying the *Howey* test to traditional stock **and all other types of instruments listed in the statutory definition** would make the Acts' enumeration of many types of instruments superfluous."  *Id*. (emphasis added).  However, the LII does satisfy both tests.[12]

---

[11] Nexo concedes the NEXO Token is a security underlying the value of the Leveraged Investment Instrument.  MTD at 6, 24. ¶ 119.

[12] Under California law, a transaction will be treated as a security if it satisfies either the risk-capital or *Howey* test.  *Sweeney v. Gastelo*, 2019 U.S. Dist. LEXIS 231657, at *19 (C.D. Cal. Mar. 14, 2019).

22
OPPOSITION TO MOTION TO DISMISS - 3:23-CV-00882-TSH

Nexo argues that the LII, *i.e.*, a basket of both commodities and securities, is not a security because it is not an "investment contract" under *Howey*. Nexo's argument relies on cases that analyze investment instruments that contain **only commodities**. *Brodt v. Bache & Co.*, 595 F.2d 459, 461-62 (9th Cir. 1978) ("investor's return" is "**specifically determined by the commodities market**.") (emphasis added); *See also Lopez v. Dean Witter Reynolds, Inc.*, 805 F.2d 880, 885 (9th Cir. 1986) ("[D]iscretionary commodities trading accounts are not common enterprises"). But that is not the case here, where "the NEXO Token securities and Nexo Earn account securities [were] included in the basket of digital assets" and Plaintiff's "liquidation price … depend[ed] on the movement of the different assets in [his] account," including those securities. ¶¶ 34, 60, 80, 118-119

The Ninth Circuit has held that investment packages like the Leveraged Investment Instrument are securities when they contain both securities and non-securities, because "all elements of an investment contract do not have to be securities in order for the entire package to so qualify." *Safeway Portland Employees' Fed. Credit Union v. C. H. Wagner & Co.*, 501 F.2d 1120, 1123 (9th Cir. 1974). ("The combination of the two created an **integrated investment package which must be viewed in its entirety in determining whether it is within or without the Act**.") *Id.* at 1123-24. So too here. Plaintiff did not arbitrarily decide to include the NEXO Token as part of his leveraged position. Rather, Defendants informed Plaintiff that at least 10% of his holdings must be the NEXO token in order to obtain favorable interest rates. ¶¶ 50-51. This case is thus on all fours with *Safeway*.

Defendants' own cases are also illustrative. The *Brodt* court examined a discretionary commodity trading account and found that it satisfied all the elements of *Howey* except commonality. The Court found vertical commonality lacking because the success or failure of Defendants did "not correlate with individual investor profit or loss." 595 F.2d at 461. Not so here, where Defendants themselves concede that the success or failure of the LII was correlated with the movement of all the underlying assets, including the NEXO Token issued by Defendants. ¶¶ 34, 60, 80, 118-119. In addition, Nexo managed the order of asset liquidation in the LII, liquidating Plaintiff's most stable assets (USDC and Bitcoin) first, thus increasing the relative weight of the NEXO Token and thereby greatly increasing the likelihood of future liquidations. In addition to being a derivative security, the

23
OPPOSITION TO MOTION TO DISMISS - 3:23-CV-00882-TSH

LII is thus also an investment contract.  ¶ 61.

### 4.    All Defendants are in privity with Plaintiff

As set forth in Section I, Nexo operated as a single enterprise in offering and selling securities to Plaintiff.  In particular the CPA, pursuant to which Nexo sold Cress the Nexo Token securities is between Plaintiff and "Nexo (any holding companies, subsidiaries or related entities, all of which are hereinafter referred to as 'Nexo')."  The CPA was emailed to Plaintiff for signature by Defendant Trenchev and ultimately signed by Trenchev.  Cress Decl., ¶ 4.

### B.    Plaintiff's Securities Fraud Claim is Properly Pled

### 1.    Plaintiff's Claim Has No Threshold Defects

As set forth in Section IV.A above, Plaintiff has been damaged by Defendants sale of Earn Account, NEXO Token, and LII securities and is in privity with all Defendants.

### 2.    The Alleged Misrepresentations Are All Actionable

Reliance and causation are not elements of a Section 25401 claim, and Plaintiff thus need not plead reliance or causation.  Cal. Corp. Code § 25401; *Cutler v. Rancher Energy Corp.*, 2014 U.S. Dist. LEXIS 34622, at *26 (C.D. Cal. Mar. 11, 2014) (Under Section 25401, "proof of reliance is not required… [and] no proof of causation is required").  Thus, Nexo advances no credible arguments as to how Nexo's alleged misrepresentations are not actionable under Section 25401.

**The NEXO Token is NOT Registered with the SEC as a Security**.  Nexo cites its Form D filings to claim that the "NEXO Token is registered with the SEC as an exempt security."  MTD at 24. In so doing, Nexo makes the same misrepresentation of fact to the Court that it made to Cress.  The NEXO Token is not, and never was, registered with the SEC.  ¶ 55.  "**The Form D is not a 'registration statement**,'" but, instead, a form that exempts a company from registering its securities." *Flaxel v. Johnson*, 541 F. Supp. 2d 1127, 1143 (S.D. Cal. 2008) (emphasis added).  A Form D is used "by companies that have sold securities **without registration under the Securities Act of 1933**[.]"[13] Moreover, as set forth in section IV.A.2 above, the NEXO Token was not exempt from registration.

**NEXO's Liquidation Relief Program and Earning Interest on Collateral.**  Although

---

[13] U.S. S.E.C., https://www.sec.gov/education/smallbusiness/exemptofferings/formd, (April 6, 2023).

Plaintiff need not plead reliance under Section 25401, as detailed in Section II.C, Plaintiff has adequately alleged that he relied on Nexo's false representations regarding the liquidation relief program and interest on collateral. *Cutler*, 2014 U.S. Dist. LEXIS 34622, at *26.

**Nexo's Misrepresentations re Liquidation Price.** Plaintiff specifically alleges that "despite requiring Plaintiff to purchase 25 Bitcoin worth of NEXO Tokens, the additional cost of the NEXO Token was not reflected in the LTV and liquidation numbers provided by Hristov, thus understating the riskiness of loans and obscuring from Plaintiff that both the LTV and liquidation threshold would be dependent on the price of the NEXO Tokens as well as the price of BTC." ¶ 52. Nexo nevertheless buries its head in the sand and argues Plaintiff has "failed to plead what exactly was hidden from him, and how the obscured facts induced him into transactions." MTD at 25. While proof of reliance and causation are not required under Section 25401, Plaintiff has in fact identified a specific communication that misrepresented a critical fact regarding the riskiness of the investments and alleges that this representation induced him to act. *Cutler*, 2014 U.S. Dist. LEXIS 34622, at *26.

### 3. Plaintiff's Securities Claims Against Trenchev Are Well Pled

Section 25504 expressly subjects all the principal executive officers and directors of a corporation to collateral liability based solely on status without requiring any proof of control. Marsh & Volk, Practice Under the California Securities Laws, § 14.03[4][c] (citing *Hellum v. Breyer*, 194 Cal.App.4th 1300, 1310-14 (Cal. Ct. App. 2011)). There is thus no requirement that Cress allege that Trenchev participated in the issuance of the securities. Plaintiff nevertheless does just that, alleging that Trenchev was actively involved in soliciting his investments, emailing him the CPA and signing the CPA on behalf of Nexo. Cress Decl., ¶ 4.

## V.    CONCLUSION

Defendants' motion to dismiss should be denied. Should the Court grant the motion, however, dismissal should be without prejudice and Plaintiff given leave to amend. *Sterling v. City of Antioch*, No. 22-cv-07558-TSH, 2023 U.S. Dist. LEXIS 47656 (N.D. Cal. Mar. 21, 2023). Not only is leave to amend freely given under Rule 15, but Defendants have not argued, much less shown, that Plaintiff cannot make appropriate and material amendments to cure any issues raised in their motion.

Dated: July 14, 2023

Respectfully submitted,


/s/ *Max Ambrose*
Max Ambrose (320964)
maxambrose@taylorcopelandlaw.com
James Taylor-Copeland (284743)
james@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: 619-734-8770
Facsimilie: 619-566-4341

*Counsel for Plaintiff John Cress*

26
OPPOSITION TO MOTION TO DISMISS - 3:23-CV-00882-TSH