EVERSHEDS SUTHERLAND (US) LLP
Ian S. Shelton (SBN 264863)
ianshelton@eversheds-sutherland.com
500 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone:    (916) 245-7427
Facsimile:     (916) 241-0501

*Attorneys for Defendants Nexo Financial LLC, Nexo
Financial Services Ltd., Nexo AG, Nexo Capital Inc.,
and Antoni Trenchev*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CRESS, | CASE NO. 3:23-CV-00882-TSH |
| Plaintiff, | The Honorable Thomas S. Hixson |
| vs. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)** |
| NEXO FINANCIAL LLC, NEXO FINANCIAL SERVICES LTD., NEXO AG, NEXO CAPITAL INC., and ANTONI TRENCHEV, | Hearing Date:   September 7, 2023<br>Hearing Time:   10:00 a.m. |
| Defendants. | Courtroom:     San Francisco Courthouse<br>Courtroom E – 15th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

REPLY IN SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 4

    **I.**    ONLY NEXO CAPITAL IS SUBJECT TO PERSONAL JURISDICTION. .......... 4

        **A.**    Cress admits Nexo's website is operated by Nexo Capital. ........................ 4

        **B.**    Cress fails to distinguish *Jeong's* alter ego/single enterprise holding. ......... 5

        **C.**    Trenchev should also be dismissed. ............................................................. 6

        **D.**    Cress fails to show entitlement to jurisdictional discovery. ........................ 7

    **II.**    CRESS FAILS TO PLEAD FRAUDULENT INDUCEMENT. ............................ 7

        **A.**    The Liquidation Relief Program. ................................................................. 8

        **B.**    Nexo's Responsiveness. ............................................................................... 8

        **C.**    Earning Interest on Collateral. .................................................................... 9

        **D.**    The "Obscured Scenarios." ........................................................................... 9

    **III.**    CRESS FAILS TO STATE A UCL CLAIM. ..................................................... 9

        **A.**    Cress misapprehends *Sonner* and *Jeong*. .................................................... 9

        **B.**    Cress's UCL claim is incompatible with his securities claims. .................. 11

    **IV.**    CRESS FAILS TO STATE SECURITIES CLAIMS ........................................... 12

        **A.**    Cress Fails to State An Unregistered Securities Claim. ............................. 12

            **1.**    Cress pleads no damages from the EIP. ......................................... 12

            **2.**    The NEXO Token qualifies as an exempt offering. ....................... 12

            **3.**    The LII is not a derivative security. ............................................... 13

            **4.**    Cress was only in privity with Nexo Capital. ................................. 14

        **B.**    Cress Fails to State a Securities Fraud Claim. ........................................... 14

        **C.**    Trenchev Is Not Liable Under Section 25504. ........................................... 15

CONCLUSION .................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdo v. Fitzsimmons*,
   2021 WL 616324 (N.D. Cal. Feb. 17, 2021).......................................................................... 15

*Betz v. Trainer Wortham & Co., Inc.*,
   829 F. Supp. 2d 860 (N.D. Cal. 2011) .................................................................................. 11

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ................................................................................................ 5

*Brown v. Earthboard Sports USA, Inc.*,
   481 F.3d 901 (6th Cir. 2007) ................................................................................................ 13

*Clark v. Am. Honda Motor Co.*,
   528 F. Supp. 3d 1108 (C.D. Cal. 2021).................................................................................. 9

*Cochran v. Air & Liquid Sys. Corp.*,
   2022 WL 7609937 (C.D. Cal. Oct. 13, 2022) ........................................................................ 7

*Glob. Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020) ................................................................................................ 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)................................................................................................................ 6

*Guthrie v. Transamerica Life Ins. Co.*,
   561 F. Supp. 3d 869 (N.D. Cal. 2021) .................................................................................... 9

*Height St. Skilled Care, LLC v. Liberty Mut. Ins. Co.*,
   2022 WL 1665220 (E.D. Cal. May 25, 2022) ....................................................................... 10

*Jeong v. Nexo Fin. LLC*,
   2022 WL 174236 (N.D. Cal. Jan. 19, 2022)................................................... 1, 3, 4, 5, 7, 9, 10

*Kalin v. Semper Midas Fund, Ltd.*,
   2022 WL 16935782 (N.D. Cal. Oct. 12, 2022) ...................................................................... 7

*In re MacBook Keyboard Litig.*,
   2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ...................................................................... 10

*Mish v. TForce Freight, Inc.*,
   2021 WL 4592124 (N.D. Cal. Oct. 6, 2021) ........................................................................ 10

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 688 (2007)............................................................................................... 11

-iii-

MOTION TO DISMISS

*Park Miller, LLC v. Durham Group, Ltd.*,
    2020 WL 1955652 (N.D. Cal. Apr. 23, 2020)........................................................................ 6

*S.E.C. v. M & A W., Inc.*,
    538 F.3d 1043 (9th Cir. 2008) ............................................................................................ 12

*Safeway Portland Employees' Fed. Credit Union v. C. H. Wagner & Co., Inc.*,
    501 F.2d 1120 (9th Cir. 1974) .......................................................................................13, 14

*Shay v. Apple Inc.*,
    2021 WL 1733385 (S.D. Cal. May 3, 2021) ....................................................................... 10

*Siegal v. Gamble*,
    2015 WL 4734741 (N.D. Cal. Aug. 10, 2015) .................................................................... 14

*Sussex Fin. Enterprises, Inc. v. Bayerische Hypo-Und Vereinsbank AG*,
    460 Fed. Appx. 709 (9th Cir. 2011) ..................................................................................... 9

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .............................................................................................. 15

*U.S. Sec. & Exch. Comm'n v. Kik Interactive Inc.*,
    492 F. Supp. 3d 169 (S.D.N.Y. 2020).................................................................................. 13

*Yokell v. Draper*,
    2018 WL 3417514 (N.D. Cal. July 13, 2018) ..................................................................... 14

**Statutes**

Cal. Corp. Code § 25401........................................................................................................... 14

Cal. Corp. Code § 25503............................................................................................................ 3, 12

**Regulations**

17 C.F.R. § 230.152.................................................................................................................12, 13

17 C.F.R. § 230.508.................................................................................................................... 13

MOTION TO DISMISS

**INTRODUCTION**

Cress is an accredited investor who look out multi-million-dollar credit lines from Nexo, and then used the proceeds to make concentrated, ill-timed, and leveraged bets on cryptocurrency prices. Cress hoped his $30 million bet would result in windfall profits—that he would keep. Unfortunately, when the market crashed instead, Cress's collateral was liquidated. Nexo's contractual right to liquidate that collateral was undisputed then and now, as reflected by the fact that Cress asserts no claim for beach of Nexo's Crypto Credit Terms. After Nexo settled with the SEC with respect to a product that earned Cress over $300,000 in profits (the EIP), Cress spied an opportunity to claw back his separate margin trading losses by relying on *post hoc*, manufactured allegations of wrongdoing. This lawsuit based on imagined securities and non-existent misrepresentations should be dismissed. Nexo is not the insurer of Cress's enormous investment losses.

First, except for Nexo Capital, Inc., all defendants should be dismissed for lack of personal jurisdiction. Cress's sole basis for distinguishing this case from *Jeong* is the Crypto Purchase Agreement ("CPA").  But none of Cress's claims are based on the CPA, and Cress does not assert any claim for breach of the CPA.  Cress's allegations are virtually identical—some *verbatim*—to those considered and rejected in *Jeong*, and the CPA does not change the outcome. Indeed, Judge Freeman found no personal jurisdiction notwithstanding the fact that Jeong asserted a claim for breach of the Crypto Credit Terms, which contains prefatory language regarding Nexo affiliates that is similar to the CPA. *Compare* Dkt. 19-2, *with* Dkt. 19-5. Like Judge Freeman, the Court should grant the motion to dismiss for lack of personal jurisdiction and deny jurisdictional discovery.

Second, none of the substantive claims against Nexo Capital are plausibly pled.

**Fraudulent Inducement.** Cress's fraud claim boils down to four representations. All of them are made-up, after-the-fact excuses to avoid the consequences of his bad investment decisions.

*LRP.* The only representation that Nexo made in its brochure regarding the "liquidation relief program" ("LRP") was: "use the service in the event of a market crash to recover your liquidated assets." Dkt. 19-2. That statement is true. Cress expressly pleads that Nexo offered him that service on June 22, 2021, which "would allow him to take out a new loan from Nexo to repurchase his liquidated assets from Nexo, subject to his ability to provide millions of dollars'

-1-

REPLY IN SUPPORT OF MOTION TO DISMISS

worth of additional collateral." Dkt. 1 ¶ 87 (italics removed). While Cress did not like the terms of LRP, he fails to identify any misrepresentation that Nexo made about the terms of that service—either in the brochure or when Cress first inquired about the terms *after* he was liquidated. Cress's claim is based on the ridiculous premise that Nexo committed fraud because the LRP did not have the terms *that Cress* subjectively hoped it would have. But fraud must be based on false statements by the defendant, not unreasonable speculation by the plaintiff. Cress's cannot plead what he *subjectively* imagined the LRP to be; his claim must be assessed *objectively* based on Nexo's actual statements. Furthermore, Cress's contention that "Nexo offered him nothing" is belied by his own pleading. Dkt. 23 at 11. Nexo did not just offer "the option to repurchase cryptocurrency," as Cress contends; it offered him a *new and additional credit line* to recover and repurchase his liquidated assets—just like the brochure said. *See id.* (emphasis removed).

*Interest-on-Collateral.* Cress's fraud claim based on interest-on-collateral asks this Court to find fraud by ignoring Cress's question that generated the alleged false statement. Cress asked if collateral in his savings wallet would earn interest. Dkt. 19-6 at 4. Nexo correctly responded that it would. *Id.* at 5. Cress identifies no false statement by Nexo regarding the accrual of interest in the credit line wallet, which is consistent with the multiple disclosures on Nexo's website explaining that interest accrues on collateral in the savings wallet but not in the credit line wallet. Dkt. 19-8.

*Responsiveness.* Cress's fraud claim based on responsiveness argues that Nexo must insure his multi-million-dollar losses because Nexo did not return his emails and phone calls quickly enough. Nexo's VIP brochure said that Cress would have a "Dedicated Relationship Manager," that he could "expect a reply" via email during "business hours" in a "matter of hours, no more than 24h, weekends excluded." Dkt. 19-3 at 5. It also referenced direct phone number "availability" during "UTC" business hours (the time zone in England), but "[o]ut of business hours calls—schedule in advance." *Id.* These generalized statements about expected response times and availability are not specific, actionable promises tied to any claimed damages. There is no plausible allegation that Nexo had no intent to perform when these statements were made. Cress pleads that he had a dedicated relationship manager who corresponded with him frequently and repeatedly. Cress's frustration that

he did not receive immediate responses from his European relationship manager on occasion does no state a claim for fraud.

*Obscured Scenarios.* Finally, Cress's fraud claim based on "obscured scenarios" is itself obscure and difficult to understand, meaning the alleged fraud has not been pled with particularity. It appears based on the contention that Hristov's chart summarizing three scenarios for purchasing Bitcoin omitted that "the additional cost of the NEXO Token was not reflected in the LTV and liquidation numbers." Dkt. 1 ¶ 52. But the chart did refer to the cost of the NEXO Token—it specifically referenced 25 Bitcoin as the "Amount of BTC for NEXO Platinum." Dkt. 19-6 at 4. Cress knew from the chart that he would buy NEXO Tokens comprising 10% of his portfolio value (25 BTC out of 250 total) to get the Platinum benefit, and he knew that those NEXO Tokens would perform and be valued differently than BTC. The chart did not purport to address the LTV and liquidation numbers for the 10% of the portfolio that was NEXO Tokens, but instead addressed those numbers for the 90% of the portfolio that was BTC. If Cress wanted more information regarding the impact of the NEXO Token on his portfolio, he could have asked. But he did not. Instead, after losing millions, he claims Nexo committed fraud by failing to volunteer information regarding the various ways that the performance of the NEXO Token could impact his investment strategy. Weighing these risks and benefits is Cress's job as an investor, not Nexo's. The claim fails because Cress points to nothing that Nexo said that was false.

**UCL.** The Court should dismiss the UCL claim under *Sonner* because Cress seeks multiple remedies at law for his alleged harm, including fraud and securities claims. Courts deferring a *Sonner* analysis do so when the plaintiff has actually pled the lack of a legal remedy. Cress fails to do so. Unlike *Jeong*, Cress only seeks monetary damages, not equitable relief. The Court should also dismiss the UCL claim under *Bowen* because Cress has pled that every transaction at issue was a securities transaction and every alleged misrepresentation was in furtherance of securities fraud.

**Securities Claims.** Cress does not salvage his EIP securities theory because he does not plead the requisite damages under Section 25503. He pleads that his collateral was liquidated, but liquidation does not establish that he lost money on EIP. His NEXO Token theory is now based on a purported 30-day deadline for the offering, which only applies to a scenario in which the SEC will

-3-

treat multiple *offerings* as an integrated offering. This regulation has no application here, where there is only a single offering. Cress has no securities claim based on the purchase of the NEXO Token because he was an accredited investor who purchased the token in an exempt offering.[1] Cress also reimagines the LII as a "derivative security," but his cited authority is inapplicable. Cress's attempt to make his entire account an "investment package" fails because the price performance of his NEXO Tokens is independent of the performance of his BTC and ETH. The fact that Cress bought additional NEXO Tokens, BTC, and ETH using leverage does not convert his entire account into a unitary "security."

## ARGUMENT

### I.    ONLY NEXO CAPITAL IS SUBJECT TO PERSONAL JURISDICTION.

Cress's jurisdictional allegations are centered around Nexo Capital, Inc.: he pleads Nexo Capital operates the Nexo website, extended the credit line to him, and issued the NEXO Token. Cress fails to allege sufficient facts to establish jurisdiction over the remaining defendants.

### A.    Cress admits Nexo's website is operated by Nexo Capital.

Cress claims Nexo's "interactive" website establishes personal jurisdiction over all Nexo entities. Dkt. 23 at 4. Whether Nexo's website creates personal jurisdiction is irrelevant since Cress admits that Nexo Capital "operates Nexo's website" and "issued credit to Plaintiff." Dkt. 1 ¶ 13. Nexo Capital concedes personal jurisdiction. Cress's same argument—that all Nexo entities are subject to personal jurisdiction in California based on Nexo's website—has already been rejected. *See Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *10 (N.D. Cal. Jan. 19, 2022) ("[T]he Court finds that Plaintiff has not alleged sufficient facts to meet its burden for showing that the European Nexo Entities or Nexo Financial LLC purposefully availed themselves of the privilege of conducting business in California through the Nexo website.").

---

[1] Contrary to Cress's assertion (Dkt. 23 at 22 n.11), Nexo **does not concede** that the NEXO Token is a security. That is a disputed factual question. For purposes of this motion to dismiss, Nexo contends that the securities claim based on the NEXO Token fails as a matter of law because Cress's purchase of the NEXO Token qualifies as an exempt offering *even assuming for purposes of argument that the NEXO Token is a security.*

-4-

REPLY IN SUPPORT OF MOTION TO DISMISS

### B.    Cress fails to distinguish *Jeong's* alter ego/single enterprise holding.

Cress does not challenge general jurisdiction, and focuses his specific jurisdiction argument on meeting the very high bar of single enterprise liability. This requires that Cress plead the *Daewoo* factors for "unity of interest" and that a failure to disregard corporate separateness would result in "fraud or injustice." *Jeong*, 2022 WL 174236, at \*11. Cress's argument has already been rejected in *Jeong*, and he fails to provide any basis to distinguish that result.

Cress copied-and-pasted Jeong's eight alter ego allegations into his Complaint. *Compare* Jeong Complaint, Dkt. 1 ¶ 23(a)–(h), *with* Dkt. 1 ¶ 16(a)–(h). As in *Jeong*, Cress does not address the first, fourth, and eighth *Daewoo* factors. *See Jeong*, 2022 WL 174236, at \*12.  Similarly, the second, third, and seventh *Daewoo* factors are conclusory and controverted by Trenchev. *Id.* And, Cress's minimal allegations supporting the fifth, sixth, and ninth *Daewoo* factors are "insufficient to support a showing of unity of interest." *Id.* at \*15.

Cress plainly loses under *Jeong*. To avoid this result, Cress claims that he pled "significant additional jurisdictional allegations"—that the Crypto Credit Terms and the Crypto Purchase Agreement ("CPA") define the Nexo defendants as a "single entity." Cress is factually wrong and his point is immaterial to the analysis.

First, in both the Crypto Credit Terms and CPA, "Nexo" is defined to *encompass* all entities in the Nexo "group of companies," including "holding companies, subsidiaries or related entities." Not only is this *not* unusual in contracting, it *acknowledges* that there are, in fact, separate Nexo corporate entities. Even Judge Freeman acknowledged that shorthand references to "Nexo" have no bearing on the Nexo entities' corporate relationship. *See id.* at \*14 (noting that "shorthand references to 'Nexo' as if it were a single entity "are not especially supportive or suggestive of a unity of interest" . . . . "The Court adopts the shorthand 'Nexo' to refer to Defendants throughout this order, but that does not have any bearing on the details of Defendants' relationship.").

Second, regardless of how Nexo is defined, neither the CPA nor the Crypto Credit Terms automatically establish jurisdiction in California. *See Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) ("As the Supreme Court has expressly cautioned, a contract alone does not automatically establish minimum contacts in the plaintiff's home forum."). Here, Cress's tort claims

-5-

are not predicated on the CPA or the Crypto Credit Terms. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (explaining that "specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction'").

Finally, this outcome does not lead to inequitable results. Cress claims that "Nexo disregarded California's securities and lending laws and made numerous material misrepresentations to Plaintiff in California." But his Complaint clearly alleges that his loan was from Nexo Capital and the NEXO Tokens were issued by Nexo Capital. Dkt. 1, ¶¶ 2, 13, 55. Indeed, it is inequitable to subject foreign entities—which Cress admits did not operate the website, issue the credit lines, or offer the NEXO Token—to protracted litigation when those entities have no connection to Cress's claims.

### C.    Trenchev should also be dismissed.

Cress claims that Trenchev is the "primary participant in an alleged wrongdoing intentionally directed at" him. Dkt. 23 at 8. But Cress alleges only a single fact to establish jurisdiction over Trenchev: Trenchev signed the CPA on behalf of Nexo, which was sent to Cress through DocuSign. Dkt. 1 ¶ 29. None of Cress's claims relate to the CPA, Trenchev never solicited Cress, did not send him the brochure, and did not make any of the alleged fraudulent representations.

Cress accuses Trenchev of being untruthful in his declaration by claiming that he never emailed Cress. Trenchev specifically carved out that "[e]xcept for my signing the Cryptocurrency agreement . . . I have never . . . communicated with [Cress] via . . . email." Dkt. 19-1 ¶ 24. Cress presents no evidence contradicting Trenchev's declaration. Similarly, Cress claims that Trenchev knew that Cress lived in California simply because Cress provided his address to *Nexo*. Cress never alleges that this information was actually provided *to Trenchev*. Rather, Trenchev is a Bulgarian citizen who executed the CPA consistent with Nexo's policy. Merely emailing the CPA to Cress does not subject Trenchev to California jurisdiction. *See Park Miller, LLC v. Durham Group, Ltd.*, 2020 WL 1955652, at \*11 (N.D. Cal. Apr. 23, 2020) (being copied on an email with inaccurate financial statements was not sufficient to establish jurisdiction over corporate officer); *see also Glob. Commodities Trading Group, Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1110 (9th Cir. 2020) ("we suggested that signing a single contract with a forum resident on behalf of a

-6-
REPLY IN SUPPORT OF MOTION TO DISMISS

corporation would not subject a corporate officer to personal jurisdiction in a claim for breach of that contract.")

Cress's attempt to distinguish *Kalin* also misses the mark. *Kalin* holds that director and control liability under California's securities law does not establish jurisdiction; instead, the individual "must have sufficient contacts with the forum in order for personal jurisdiction to exist." *Kalin v. Semper Midas Fund, Ltd.*, 2022 WL 16935782, at \*2 (N.D. Cal. Oct. 12, 2022). Cress's uncited implication that Trenchev is subject to jurisdiction merely by virtue of "authorizing" or "actively participating" in the alleged "securities fraud or the sale of unregistered securities" is untrue. Cress must still plead jurisdictional facts for Trenchev and has not done so.

### D.   Cress fails to show entitlement to jurisdictional discovery.

Requests for jurisdictional discovery must be denied "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Cochran v. Air & Liquid Sys. Corp.*, 2022 WL 7609937, at \*11 (C.D. Cal. Oct. 13, 2022) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006)).

To obtain jurisdictional discovery, Cress must specify *what* information his is seeking and *how* the information will be helpful to the court's jurisdiction analysis. *Cochran*, 2022 WL 7609937, at \*11. Trenchev's Declaration controverts Cress's jurisdictional allegations. Cress has offered no specifics regarding what he intends to request in jurisdictional discovery and how such information will assist the Court. As Judge Freeman concluded under the same circumstances, he is not entitled to jurisdictional discovery. *See Jeong*, 2022 WL 174236, at \*16 (rejecting jurisdictional discovery because Plaintiff "is seeking jurisdictional discovery based on a mere 'hunch'").

## II.   CRESS FAILS TO PLEAD FRAUDULENT INDUCEMENT.

To avoid dismissal, Cress attempts to lower the pleading standard and asks the Court to ignore his own written communications. Rule 9(b) provides that Cress must plead with specificity those items in his purview. This is the core of Nexo's motion—Cress failed to plead any actionable representations, failed to plead that he relied on them, and his own contemporaneous communications contradict his allegations.

-7-
REPLY IN SUPPORT OF MOTION TO DISMISS

### A.    The Liquidation Relief Program.

Cress received the VIP Brochure stating, in broad terms, "Liquidation relief program – use the service in the event of a market crash to recover your liquidated assets." Cress did not inquire further and did not know that the program existed until months later. He now claims that, from the moment he received the brochure, *he believed* that under the LRP he could "re-enter his positions without posting additional collateral and thereby recover his assets following a flash crash." Dkt. 23 at 11. Nowhere in his Complaint does Cress plead this. More to the point, nothing in the brochure supports this statement. These are terms that Cress imagined, not words that Nexo said. There is no false statement by Nexo to support a fraud claim. Moreover, Cress's explanation that be believed that the LRP "encompasse[d] a promise to return Plaintiff to the status quo" is extraordinary. *Id.* In Cress's telling, the LRP made Nexo a complete insurer of Cress's losses: that Cress could lose all of his money in a market and then start all over. That is a radical view that no reasonable person would believe. Finally, Cress, citing a series of contract cases, argues that Nexo's "proposed interpretation" renders its promise illusory. *Id.* at 12. These cases are inapplicable since the LRP does not form the basis of any contract claim. Further, Nexo fulfilled its promise by providing Cress a means to repurchase his liquidated collateral with a new credit line, which he decided to reject.

### B.    Nexo's Responsiveness.

Cress's allegations that Nexo was not responsive enough has three issues. First, the representation is not tied to any specific transactions or losses. Second, he conflates Nexo's statements regarding customer service availability with technical support availability. *Compare* Dkt. 19-3 at 5, 13. Cress does not plead that he was seeking technical support relating to his account; his claims relate to transaction delays, and the VIP Brochure contains no quantifiable representations for those delays. Third, the cases he relies on are distinguishable: *McLellan v. Fitbit* relates to around-the-clock heart monitoring representations and *Css, Inc. v. Fibernet* relates to the around-the-clock up-time for telecommunications and internet services. These are quantifiable promises relating to a product or a system and do not relate to promised response times.

REPLY IN SUPPORT OF MOTION TO DISMISS

### C.     Earning Interest on Collateral.

Cress's persistence that Nexo misrepresented interest on his collateral is perplexing. The chain of communication is crystal clear: Cress asked Nexo about earning interest on his 82 BTC <u>in his savings wallet</u> and Nexo answered truthfully. Cress claims that he believed that he would be earning interest on *all* collateral, even collateral <u>in his credit line wallet</u> he did not ask about—and which Nexo never advertised that it would. But if this were the case, why wasn't Cress upset on the first *day* that Nexo didn't pay interest on the 168 BTC? Months elapsed and Cress never complained once—because he always understood that interest did not accrue on assets in his credit line wallet.

### D.     The "Obscured Scenarios."

Nexo made no false representations in the summary chart that is the basis of the "obscured scenarios" claim. Cress's claim seems to be that Nexo committed fraud by not volunteering additional information regarding how the NEXO Token would impact the performance of his portfolio, his LTV, and his liquidation thresholds. Nexo was not asked to perform this analysis and had no obligation to do so. Cress is sophisticated, and the reasonableness of his reliance is held to a higher standard. *See Sussex Fin. Enterprises, Inc. v. Bayerische Hypo-Und Vereinsbank AG*, 460 Fed. Appx. 709, 712 (9th Cir. 2011). Nexo is not liable for fraud because it did not provide Cress with detailed analyses of all the various risks of his investment strategy.

## III.     CRESS FAILS TO STATE A UCL CLAIM.

Cress's UCL claim must be dismissed for two independent reasons: (1) under *Sonner,* his claim may not proceed because he failed to plead the lack of an adequate remedy at law; and (2) under *Bowen*, his claim may not proceed because his expansively pled securities claims cover all the transactions and alleged misrepresentations in his complaint.

### A.     Cress misapprehends *Sonner* and *Jeong*.

Nearly all courts applying *Sonner* require a plaintiff to ***plead*** an inadequate remedy at law. *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869 (N.D. Cal. 2021) (emphasis in original) ("at a minimum, a plaintiff *plead* that she lacks an adequate remedy at law.") (emphasis in original); *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021) (collecting cases);

*Shay v. Apple Inc.*, 2021 WL 1733385, at \*3 (S.D. Cal. May 3, 2021) (interpreting *Sonner* to require a plaintiff to allege that she lacks an adequate remedy at law).

Cress notes that some courts allow parties to plead in the alternative to avoid *Sonner* dismissal at the pleading stage—but Cress ignores the fact that he has not done so. He never pleads an inadequate remedy at law in his Complaint, and admits he seeks only monetary damages for legal claims, namely fraud and securities violations.[2] *See* Dkt. 1 ¶ 103. For this reason, Cress's invocation of *Jeong* is misplaced. Jeong pled injunctive relief for a putative class. *Jeong*, 2022 WL 174236, at \*26 ("[U]nder the UCL . . . Plaintiff seeks an injunction . . . . Plaintiff alleges that without an injunction, UCL and CLRA Subclass members will suffer irreparable injury and lack an adequate legal remedy[.]"). In contrast, Cress does not.

The failure to plead no adequate remedy at law is ***the*** distinguishing factor for evaluating a dismissal under *Sonner. See Height St. Skilled Care, LLC v. Liberty Mut. Ins. Co.*, 2022 WL 1665220, at \*8 (E.D. Cal. May 25, 2022) (expressly rejecting the argument that dismissal for failure to plead an adequate remedy at law is not appropriate at the pleading stage because the plaintiff "did not plead alternative remedies" and the "sole issue is whether [plaintiff] has sufficiently pled its claim, which is not a premature issue."); *see also In re MacBook Keyboard Litig.*, 2020 WL 6047253, at \*2 (N.D. Cal. Oct. 13, 2020) ("The question is not whether or when Plaintiffs are required to choose between two available inconsistent remedies, it is whether equitable remedies are available to Plaintiffs at all. In other words, the question is whether Plaintiffs have adequately pled their claims for equitable relief, and that question is not premature on a motion to dismiss."). Since Cress's Complaint "contains no demonstration, explanation, or even allegation that legal remedies would be inadequate as to its claim" against Nexo, "it cannot survive dismissal." *See Height St.*, 2022 WL 1665220, at \*8. Since the availability of an adequate remedy is clear from Cress's complaint, amendment is futile. *See MacBook Keyboard Litig.*, 2020 WL 6047253, at \*4.

---

[2] Cress refers to "restitution" twice in his Complaint, but to state a UCL claim for "restitution" he must still sufficiently plead that he lacks an adequate remedy at law. *See Mish v. TForce Freight, Inc.*, No. 21-CV-04094-EMC, 2021 WL 4592124, at \*6 (N.D. Cal. Oct. 6, 2021).

-10-

REPLY IN SUPPORT OF MOTION TO DISMISS

**B.      Cress's UCL claim is incompatible with his securities claims.**

Cress imagines a "split of authority" over the UCL's application to securities transactions. *Overstock.com* was not a securities lawsuit. *See Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 714–15 (2007) ("Overstock's claims do ***not*** arise from any stock transactions between the parties. Rather, they arise from the allegedly defamatory reports . . . and business practices in producing such reports") (emphasis added). *Overstock.com*, without taking a position on *Bowen*, acknowledged *Bowen's* holding that "securities transactions are not covered under the UCL bars lawsuits based on deceptive conduct in the sale and purchase of securities." *Id.*

Cress cites a series of cases purportedly narrowing *Bowen*, but the cases all reach the same conclusion that *Overstock.com* did: *Bowen* applies to alleged securities transactions. *See Betz v. Trainer Wortham & Co., Inc.*, 829 F. Supp. 2d 860, 866–67 (N.D. Cal. 2011). *Betz* explains *Bowen's* evolution:

> **No court, however, has allowed Section 17200 claims to proceed where, as here, the predicate acts are securities transactions.** As Judge Seeborg recently noted in dismissing a 17200 claim based directly on the sale and purchase of securities, "[i]t appears that federal cases refusing to apply *Bowen* to the UCL all involved claims that did not target a securities transaction. These courts refused to rely on *Bowen* to foreclose any UCL claim, merely because the case involved securities in a general sense. This is a well-reasoned application of *Bowen,* and were the facts in this case similar, this Court would follow suit. Here, however, plaintiffs' theory unavoidably focuses on the purchase of securities, and *Bowen* is determinative." *See San Francisco Residence Club, Inc. v. Amado,* 773 F.Supp.2d 822, 834 (Seeborg, J.) (N.D. Cal. 2011).

Cress attempts to avoid *Bowen* by claiming that he has pled the "LII" in the alternative. That does not matter. Cress is the master of his complaint, and he has pled expansive securities claims that cover every transaction and every alleged misrepresentation referenced in his complaint. His UCL claim must be dismissed under *Bowen* because there is no distinction between the facts supporting his UCL and securities claims, or the relief sought.

REPLY IN SUPPORT OF MOTION TO DISMISS

**IV.    CRESS FAILS TO STATE SECURITIES CLAIMS.**

    **A.    Cress Fails to State An Unregistered Securities Claim.**

        **1.    Cress pleads no damages from the EIP.**

Cress fails to plead an unregistered securities claim for the EIP because he does not allege the requisite damages under Cal. Corp. Code § 25503. Cress glosses over Section 25503 and argues that the contractually authorized liquidation of his collateral suffices. Not so. Section 25503 only allows a plaintiff to bring a claim when the security lost value between the time of acquisition and the time of purchase. Cress, however, wishes he had kept all of his funds in his savings wallet because he gained interest on the EIP. *See* Dkt. 1 ¶ 100. Section 25503 has a specific damages formula; Cress was not damaged by the EIP and has made no effort to plead the statutory damages.

        **2.    The NEXO Token qualifies as an exempt offering.**

Cress claims that the NEXO Token lost its status as an exempt security because "offers or sales must be integrated as a part of a single exempt offering, and so no offers or sales may be made more than 30 days before or 30 days after the offering itself." Dkt. 23 at 21. This is inaccurate.

Cress is relying on one of the safe harbor provisions of the "Integration Rule" in 17 C.F.R. § 230.152(b)(1), in which the SEC analyzes whether *two or more offerings* should be integrated into a *single offering*. *See* 17 C.F.R. § 230.152 (Explaining that the rule is used for "determining whether two or more *offerings* are to be treated as one for the purpose of registration or qualifying for an exemption from registration"). The Integration Rule applies when an issuer is attempting to circumvent registration rules with two or more purportedly non-exempt offerings, which the SEC will consider a single offering. *See S.E.C. v. M & A W., Inc.*, 538 F.3d 1043, 1052–53 (9th Cir. 2008); *see also* Louis Loss & Joel Seligman, *Fundamentals of Securities Regulation* § 3–C–1, at 278 (3d ed. 1995) ("The concept of 'integrating' offerings is intended to prevent an issuer from avoiding registration by structuring a transaction in two or more apparently exempt offerings (or one exempt and one nonexempt offering) when they actually should be considered a single nonexempt transaction."). Here, there was only a single offering of NEXO Tokens.  Nexo Capital filed a single Form D. Section 230.152's Integration Rule has no application.

Cress's own cases show his misunderstanding. Both cases involve two separate offerings—a public one and a private one—that the courts found were not exempt because they were integrated. *U.S. Sec. & Exch. Comm'n v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 181 (S.D.N.Y. 2020) (Finding the public sale and the private sale are "are considered part of the same offering, the [private sale] does not qualify for an exemption under Regulation D."). There is no 30-day limit for completing the offering under the Form D. Form D itself asks whether the issuer "intend[s] this offering to last more than one year?" Dkt. 19-9. Cress's contention that "no offers or sales may be made more than 30 days before or 30 days after the offering" is contradicted by Form D itself.

*Brown v. Earthboard* is inapposite because it relies on an obsolete version of 17 C.F.R. § 230.152, which provided that "Offers and sales that are made more than six months before the start of a Regulation D offering or are made more than six months after completion of a Regulation D offering will not be considered part of that Regulation D offering." *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, n.7 (6th Cir. 2007). This rule is not in effect. Even if the old version of 17 C.F.R. § 230.152 applied, however, the result would be the same since the NEXO Token offering had "not completed" at the time of Cress's purchase. Finally, Cress's insistence on strict, technical compliance is misplaced. *See* 17 C.F.R. § 230.508 (noting that an "insignificant" "failure to comply with a term, condition or requirement" of the Form D regulations generally "will not result in the loss of the exemption").

### 3.     The LII is not a derivative security.

Cress ignores Nexo's primary argument: a collateralized credit line used for margin trading of commodities like BTC is not a security. Cress also ignores that the LII is not an investment in a common enterprise where Cress's fortunes are linked to those of Nexo as required by the *Howey* Test, and it is not part of an effort to raise capital in which Cress was a passive participant.

As both of the cases that Cress relies upon (*Roth* and *Elliot Assocs.*) explain, a classic derivative security is a swap or option, which may be subject to SEC regulation. Nothing in Cress's Complaint suggests that the LII is a swap or option. Instead, Cress claims that the LII is a derivative because his account included the NEXO Token which transforms his entire account into a derivative security. To make this leap, Cress invokes *Safeway* to claim that "investment packages" consisting

-13-

of securities and non-securities can be packaged together to create a security. Cress overstates *Safeway* significantly.  The *Safeway* "investment package" involved a fixed-rate CD and a "bonus" interest rate paid on top of CD paid by a different entity, so that the purchaser received a fixed interest rate of return. *Safeway Portland Employees' Fed. Credit Union v. C. H. Wagner & Co., Inc.*, 501 F.2d 1120, 1122 (9th Cir. 1974). Unsurprisingly, this product was an "investment package" since the purchaser was set to receive a fixed amount "on its entire investment, without any further effort on its part." *Id.* at 1123. Cress's purchase of NEXO Tokens, on the one hand, and BTC and ETH, on the other hand, have no connection and do not form an "investment package."

Finally, Nexo attempts to distinguish *Brodt* and *Lopez* on the grounds that those cases involved discretionary commodities accounts. In doing so, he misses the fundamental holding that an entire account is not a security when the individual controls the allocation of assets. Cress controlled ***all of his separate cryptocurrency holdings and none were dictated by Nexo.*** An account that is a solitary enterprise where the individual does not share in the profits and losses with his broker is *not* a security as a matter of law. The LII fails the *Howey* and Risk Capital Tests.

### 4.    Cress was only in privity with Nexo Capital.

Cress can only be in privity with Nexo Capital, the entity *he admits* issued him the NEXO Token. The CPA's definition of "Nexo" does not mean that every single Nexo-related company sold him the NEXO Token—the CPA simply covers all Nexo entities. Moreover, Cress incorrectly insists that he is in privity with Trenchev even though Trenchev plainly is not party to the CPA. *See Siegal v. Gamble*, 2015 WL 4734741, at *4 (N.D. Cal. Aug. 10, 2015) ("section 25401 liability thus extends only to the 'actual seller' with whom the purchaser has privity").

### B.    Cress Fails to State a Securities Fraud Claim.

To state a claim for securities fraud, Cress must allege that his purchase of the NEXO Token was procured by virtue of "fraudulent untrue statements or by omitting material facts that would by omission make the statements misleading." *Yokell v. Draper*, 2018 WL 3417514, at *7 (N.D. Cal. July 13, 2018). Cress's pleadings must satisfy Rule 9(b)'s particularity requirement. *Id.* Critically, the statute requires a consideration of materiality "in light of the circumstances under which the statements were made." Cal. Corp. Code § 25401. And, Cress must tie his fraud allegations to

-14-

specific defendants. *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together").

**NEXO Token.** With respect to NEXO Token, there is only one representation from a Nexo customer service representative: "The NEXO token is registered with the SEC as a security therefore we are only allowed to facilitate deals with American citizens who are also certified, accredited investors." This is not a materially untrue statement. The NEXO Token qualifies as an exempt security pursuant to the Form D, and it can only be sold to accredited investors under Rule 506(c).

**LII.** The LRP, interest on collateral, and "obscured scenarios" all relate to Cress's margin trading of BTC and ETH, *i.e.*, to Cress's supposed "LII." If the Court determines that LII is not a security, these issues are moot. Even if LII were a security, however, there were no materially false statements of fact. Nexo gave a one-sentence description of the LRP; Cress asked no follow-up questions about it, and received an opportunity to repurchase his liquidated collateral with a new credit line. Similarly, Nexo made a truthful representation about which collateral would earn interest and which would not. Finally, the chart with the three purchase scenarios did not make any misrepresentation. Cress did not ask, and Nexo made no representation about, how the performance of the NEXO Token would impact Cress's investment strategy.

### C.     Trenchev Is Not Liable Under Section 25504.

Cress describes Section 25504 as a strict liability scheme for executive officers and directors. This is not accurate. *See Abdo v. Fitzsimmons*, 2021 WL 616324, at \*23 (N.D. Cal. Feb. 17, 2021) ("But it's not enough for purposes of liability under § 25504 that a defendant knew of the material facts which were omitted from an investor; ***the defendant must also have known or had reason to know that the facts were withheld from the party so defrauded***.") (emphasis added).  The bare allegations against Trenchev do not satisfy this pleading requirement.

### CONCLUSION

The Court should dismiss Antoni Trenchev, Nexo Financial Services Ltd., Nexo AG, and Nexo Financial LLC for lack of personal jurisdiction under Rule 12(b)(2) and dismiss Cress's claims against Nexo Capital Inc. for failure to state a claim under Rule 12(b)(6).

-15-
REPLY IN SUPPORT OF MOTION TO DISMISS

DATED: August 14, 2023                    EVERSHEDS SUTHERLAND (US) LLP


                                          By: */s/ Ian S. Shelton*
                                              Ian S. Shelton

                                          *Attorneys for Defendants Nexo Financial LLC,
                                          Nexo Financial Services Ltd., Nexo AG, Nexo
                                          Capital Inc., and Antoni Trenchev*

-16-
REPLY IN SUPPORT OF MOTION TO DISMISS