EVERSHEDS SUTHERLAND (US) LLP
Ian S. Shelton (SBN 264863)
ianshelton@eversheds-sutherland.com
500 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone: (916) 245-7427
Facsimile: (916) 241-0501

*Attorneys for Defendants Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, Nexo Capital Inc., and Antoni Trenchev*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

JOHN CRESS,

Plaintiff,

vs.

NEXO FINANCIAL LLC, NEXO FINANCIAL SERVICES LTD., NEXO AG, NEXO CAPITAL INC., and ANTONI TRENCHEV,

Defendants.

CASE NO. 3:23-CV-00882-TSH

The Honorable Thomas S. Hixson

**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)**

Hearing Date: March 7, 2024
Hearing Time: 10:00 a.m.

Courtroom: San Francisco Courthouse
Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on March 7, 2024, at 10:00 a.m. Pacific Time, or as soon thereafter as the matter may be heard in the above-entitled Court, located at San Francisco Courthouse, Courtroom E – 15th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, Nexo Capital Inc., and Antoni Trenchev ("Defendants") will move this Court to dismiss the First Amended Complaint (Dkt. 29) filed by Plaintiff John Cress ("Cress") pursuant Federal Rule of Civil Procedure 12(b). In particular, Defendants seek dismissal, *without leave to amend*, of claims 1-4 below that the Court previously dismissed in its October 10, 2023 Order re: Motion to Dismiss (Dkt. 26):

1. Defendants seek dismissal of Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, and Antoni Trenchev for lack of personal jurisdiction, without leave to amend. *See* Dkt. 26 at 33 (dismissing those parties under Rule 12(b)(2)).
2. Defendants seek dismissal of Cress's Unfair Competition Law ("UCL") claim for failure to state a claim to the extent it is based on deceptive conduct in the sale of the NEXO Token and Nexo Earn Account, with prejudice and without leave to amend. *See* Dkt. 26 at 24 (dismissing that claim under Rule 12(b)(6)).
3. Defendants seek dismissal of Cress's UCL claim for failure to state a claim to the extent it is based on Nexo's advertised interest rates being available only to customers who maintain 10% of their portfolio balance in the NEXO Token or on Nexo's failure to provide Cress notice before liquidating his assets, with prejudice and without leave to amend. *See* Dkt. 26 at 25 (dismissing those claims under Rule 12(b)(6)).
4. Defendants seek dismissal of Cress's claims for securities fraud under Cal. Corp. Code §§ 25401 and 25504.1 for failure to state a claim, except as to the alleged misrepresentation that the NEXO Token was registered with the SEC as a security, with prejudice and without leave to amend. *See* Dkt. 26 at 33 (dismissing those claims under Rule 12(b)(6)).

Because the Court's prior order granted leave to amend without limiting that leave to specific claims (Dkt. 26 at 33), Nexo understands that Cress re-pleaded claims 1-4 in his First Amended Complaint for appellate preservation purposes without adding any material allegations to those claims. *See* Dkt. 29-1 (Cress's redline showing his limited amendments to the complaint). The only new material allegations in Cress's First Amended Complaint are contained in Paragraphs 95-114, in a new Section "I" titled "Nexo's Sale of the NEXO Token Did Not Qualify For Any Exemption to Registration," and in Paragraphs 142-143 of his third cause of action for the unregistered offer and sale of securities. *Id.* at 20, 29. The Court should dismiss claims 1-4 without leave to amend because Cress made no material changes that would alter the Court's prior analysis.

Through this Motion, Defendants seek final dismissal of Cress's claims for unregistered securities under Cal. Corp. Code §§ 25110 and 25503 for failure to state a claim, which are the only claims that Cress materially amended in his complaint. The Court previously dismissed those claims because (1) Cress does not plausibly allege he incurred damages related to the Nexo Earn Account; (2) a claim related to the NEXO Token is preempted by the National Securities Markets Improvement Act ("NSMIA"); and (3) the "Leveraged Investment Instrument" (*i.e.*, Cress entire Nexo account) is not a security. The Court should reaffirm its three prior holdings and dismiss the claims for unregistered securities with prejudice and without leave to amend. In particular, Cress's amendments do not provide any reason to revisit the Court's prior preemption ruling as to the NEXO Token, and his amendments are silent regarding the Court's prior conclusion that Cress does not plausibly allege he incurred damages related to the Nexo Earn Account or that his entire Nexo account is not a security.

Finally, for housekeeping purposes and to provide clarity to the Court and the parties as to which claims and allegations remain in the case, Defendants respectfully request that the Court order Cress to file a Second Amended Complaint that omits all parties and claims that the Court dismisses

with prejudice and without leave to amend in its order adjudicating this Motion.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and other papers on file in this action, and such other declarations, evidence and argument as may be presented before or at the hearing.

DATED: January 12, 2024

EVERSHEDS SUTHERLAND (US) LLP

By */s/ Ian S. Shelton*
Ian S. Shelton

*Attorneys for Defendants Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, Nexo Capital Inc., and Antoni Trenchev*

**TABLE OF CONTENTS**


INTRODUCTION .......... 1

ARGUMENT .......... 4

I. THE COURT SHOULD DISMISS CRESS'S UNAMENDED CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND .......... 4

II. THE COURT SHOULD DISMISS CRESS'S UNREGISTERED SECURITIES CLAIM WITH PREJUDICE AND WITHOUT LEAVE TO AMEND .......... 6

A. The Rule 506(c) exemption applies to Cress's unregistered securities claim based on Nexo's sale of the NEXO Token. .......... 6

B. None of Cress's new allegations undermine the Court's prior conclusion that the Rule 506(c) exemption applies. .......... 7

1. The alleged timing of the sale does not affect the exemption. .......... 7

2. The alleged integrated nature of the sale does not affect the exemption. .......... 9

3. The allegation that Nexo failed to exercise reasonable care that the purchasers of the NEXO Token were not "statutory underwriters" does not affect the exemption. .......... 11

C. CRESS'S NEW ALLEGATIONS SUPPORTING HIS POSITION THAT THE NEXO TOKEN IS A SECURITY ARE IRRELEVANT TO THIS MOTION. .......... 12

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angel v. Brazelton*,
No. 1:12-CV-00272-AWI, 2013 WL 4854484 (E.D. Cal. Sept. 10, 2013) ... 4

*Bristol Capital Investors, LLC v. Cannapharmarx Inc.*,
No. 221CV03808SBJCX, 2021 WL 2633155 (C.D. Cal. June 24, 2021) ... 8

*Brown v. Earthboard Sports USA, Inc.*,
481 F.3d 901 (6th Cir. 2007) ... 6

*Chanana's Corp. v. Gilmore*,
539 F. Supp. 2d 1299 (W.D. Wash. 2003) ... 8

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
No. 2:11-CV-07166-MRP, 2012 WL 1097244 (C.D. Cal. Mar. 9, 2012) ... 5

*Eshelman v. Orthoclear Holdings, Inc.*,
No. C 07-1429 JSW, 2009 WL 506864 (N.D. Cal. Feb. 27, 2009) ... 11

*Lacey v. Maricopa County*,
693 F.3d 896 (9th Cir. 2012) ... 4

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) ... 7

*Mohebbi v. Khazen*,
50 F. Supp. 3d 1234 (N.D. Cal. 2014) ... 6, 7

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010) ... 10

*In re Ressler Hardwoods & Flooring, Inc.*,
No. 1:08-BK-01878MDF, 2009 WL 975155 (Bankr. M.D. Pa. Apr. 1, 2009) ... 8

*S.E.C. v. Murphy*,
626 F.2d 633 (9th Cr. 1980) ... 10

*Securities and Exchange Commission v. Ripple Labs, Inc.*,
No. 20 CIV. 10832 (AT), 2023 WL 4507900 (S.D.N.Y. July 13, 2023) ... 13

*Securities and Exchange Commission v. Telegram Group Inc.*,
448 F.Supp.3d 352 (S.D.N.Y. 2020) ... 12

**Statutes**

15 U.S.C. § 77b(a)(11) ..... 12

15 U.S.C. § 77r ..... 6

15 U.S.C. § 77r(b)(4)(D) ..... 6

Cal. Corp. Code § 25019 ..... 2

Cal. Corp. Code § 25110 ..... 1, 4, 5, 6, 11

Cal. Corp. Code § 25401 ..... 5

Cal. Corp. Code § 25503 ..... 1, 4, 5, 6, 11

Cal. Corp. Code § 25504.1 ..... 5

**Other Authorities**

17 C.F.R. § 230.501(a)(5) ..... 3

17 C.F.R. § 230.502(d) ..... 12

17 C.F.R. § 230.503(a)(1) ..... 8

17 C.F.R. § 230.506(b)(1) ..... 11

17 C.F.R. § 230.506(c) ..... 6

**INTRODUCTION**

This Court's prior order directed to Cress's original complaint correctly dismissed several parties and claims. Dkt. 26. After engaging in a detailed analysis, the Court previously dismissed all claims against Nexo Financial LLC, Nexo Financial Services LLC, Nexo Financial Services Ltd., Nexo AG, and Antoni Trenchev for lack of personal jurisdiction and denied jurisdictional discovery. *Id.* at 7-15, 33. The Court's personal jurisdiction dismissals left Nexo Capital Inc.—the only entity that "issued credit to Cress"—as the sole remaining defendant in this action. *Id.* at 2. As to the UCL claim, the Court dismissed for failure to state a claim to the extent the UCL claim is based on Nexo's alleged deceptive conduct in the sale of the NEXO Token and his Nexo Earn Account, and also to the extent it is based on Nexo's advertised interest rates being available only to customers who maintain 10% of their portfolio balance in the NEXO Token or on Nexo's alleged failure to provide Cress notice before liquidating his assets. *Id.* at 24-25. The Court dismissed Cress's state law securities fraud claim entirely, except as to the single alleged misrepresentation that the NEXO Token was registered with the SEC as a security. *Id.* at 33.

While Cress has re-pleaded <u>all</u> of the aforementioned parties and claims in his First Amended Complaint, he has added <u>no</u> material allegations regarding those claims. Nexo understands that Cress is alleging identical claims that the Court previously dismissed because the Court granted leave to amend without limitation as to specific parties and claims, and Cress is concerned that that failure to re-plead would be viewed as a voluntary dismissal and deprive him of appellate review of the Court's prior dismissal order. Because he made no material amendments to those claims, the Court should reaffirm the well-reasoned analysis in its October 10, 2023 order and dismiss the aforementioned parties and claims, this time without leave to amend.

All of Cress's amendments are directed to rehabilitating a small portion of his third cause of action *against Nexo Capital Inc.* for the unregistered offer and sale of securities under Cal. Corp. Code §§ 25110 and 25503 *based only on the sale of the NEXO Token*—which comprised only about 10% of Cress's Nexo account.

The Court previously dismissed the unregistered securities claim entirely on three grounds—the first two of which are unaffected by Cress's amendments. First, the Court concluded that the

claim cannot extend to Cress's Nexo Earn Account because Cress did not plausibly allege statutory damages associated with that "earn interest" product. Dkt. 26 at 25-26. On the contrary, Cress pleads the opposite—that he made money on the "earn interest" product and wished he had kept his cryptocurrency assets in that product. *Id.* at 26. Nothing in Cress's amendments is material to the first basis of dismissal of the unregistered securities claim, which the Court should affirm again.

Second, the Court concluded that the unregistered securities claim cannot extend to the "Leveraged Investment Instrument"—a euphemism that Cress concocted as a shorthand to refer to his entire Nexo account—because his entire Nexo account is not a "security" within the meaning of California Corporations Code § 25019. *See* Cal. Corp. Code § 25019. The Court previously and correctly concluded that Cress's entire Nexo account does not qualify as a "derivative security" or "investment contract" and also fails the *Howey* test. Dkt. 26 at 28-31. Again, nothing in Cress's amendments is material to the second basis of dismissal of the unregistered securities claim.

Finally, the Court concluded that the unregistered securities claim cannot extend to Nexo's sale of the NEXO Token to Cress because that portion of the third cause of action is preempted by NSMIA. *Id.* at 26-28. All of Cress's amendments are directed to the Court's prior preemption ruling. Cress's only additions to the complaint are found in Paragraphs 54, 95-114, and 142-143. *See* Dkt. 29-1 (Cress's redline First Amended Complaint). Paragraph 54 cross-references new Section I of the First Amended Complaint and states that "Nexo's offer and sale of the NEXO Token to Plaintiff did not qualify for any exemption to registration." Section I, in turn, which is comprised of Paragraphs 95-114, contains the heading "Nexo's Sale of the NEXO Token Did Not Qualify for Any Exemption to Registration." Paragraphs 142-143 amend the unregistered securities claim by cross-referencing Section I.

Nothing in Cress's amendments undermines the Court's prior dismissal—assuming for purposes of argument the NEXO Token is a security[1]—it was exempt from registration because it

[1] Nexo **<u>does not concede</u>** that the NEXO Token is, in fact, a security, and reserves the right to challenge that contention at the appropriate time. The issue of whether the NEXO Token is a security is irrelevant to the present Motion because the unregistered securities claim must be dismissed as preempted even assuming for purposes of argument it is a security.

involved the sale of a "covered security" to an accredited investor. The Court has already ruled the two elements of Rule 506(c) exemption are satisfied: Cress was an accredited investor and Nexo took reasonable steps to confirm that status. Dkt. 26 at 27. Indeed, Cress's multi-million dollar cryptocurrency deposits onto the Nexo platform, on their face, established his accredited investor status.[2] Dkt. 29 ¶ 76. Nothing in Cress's First Amended Complaint changes this conclusion.

First, Cress adds a temporal element to the Rule 506(c) analysis where none exists. He argues that Nexo sold him the NEXO Token three years after Nexo's Form D filing in 2018. The Court previously considered and rejected this same argument because Cress failed to point to "any regulatory requirements or caselaw indicating that failure to sell a security within the timeline provided in the Form D filing" strips Nexo of the exemption. Dkt. 26 at 27. None of Cress's newly added factual allegations undermine that conclusion.

Second, Cress argues that Nexo's offerings of the NEXO Token were not exempt because "they were part of a single offering of NEXO to the general public." Dkt. 29 ¶ 143. This bald contention is not tethered to any plausibly alleged facts. The only purported securities transactions alleged by Cress are the transactions he initiated on the Nexo platform. Cress does not identify one alleged sale by Nexo of the NEXO Token to unaccredited investors in the United States. Cress claims "[o]n information and belief" that Nexo sold the NEXO Token to "tens of thousands of non-accredited investors" because the Ethereum blockchain shows "78,975 holders of the NEXO Token." *Id.* ¶ 105. This argument is unsupported. The only relevant allegations in the First Amended Complaint are that Cress was an accredited investor and Nexo told him that "we are only allowed to facilitate deals with American citizens who are also certified, accredited investors." *Id.* ¶ 54.

Third, Cress claims Nexo did not "exercise reasonable care to assure that the purchasers of NEXO via its purported Regulation D offering were not statutory underwriters of NEXO." *Id.* ¶ 143.

[2] An "accredited investor" includes "[a]ny natural person whose individual net worth, or joint net worth with that person's spouse or spousal equivalent, exceeds $1,000,000," subject to certain inapplicable exclusions. 17 C.F.R. § 230.501(a)(5). Cress pleads that Nexo recognized him as an accredited investor and that he deposited and/or purchased over $16 million in cryptocurrency on the Nexo platform, net of any credit lines, well over the $1 million threshold. Dkt. 29 ¶¶ 54, 76. Cress did not dispute his accredited investor status in his Original Complaint, his First Amended Complaint, or his opposition to Defendants' first motion to dismiss.

He offers no plausible factual allegations to support this conclusory contention. Cress does not allege that he was a statutory underwriter of the NEXO Token or identify any other statutory underwriter that allegedly purchased the NEXO Token in the United States.

Cress then adds a dozen paragraphs to buttress his contention that the NEXO Token is a security. Specifically, Cress added twelve paragraphs to his First Amended Complaint (Dkt. 29 ¶¶ 103-114) that mirror allegations a recent SEC Complaint against Coinbase.[3] While the security status of the NEXO Token is disputed, these new allegations are immaterial to the resolution of this Motion. Even assuming the NEXO Token is a security (a point that Nexo disputes), pleading that the NEXO Token is a security is irrelevant to whether it is an *exempt* "covered security," and it is irrelevant to whether Cress's unregistered securities claim directed to the NEXO Token is preempted by NSMIA. Consequently, Cress's third cause of action premised on the sale of the NEXO Token should be dismissed again, this time with prejudice and without leave to amend.

**ARGUMENT**

## I. THE COURT SHOULD DISMISS CRESS'S UNAMENDED CLAIMS WITH PREJUDICE AND WITHOUT LEAVE TO AMEND.

This Motion asks the Court to dismiss the claims it previously dismissed, this time without leave to amend. To avoid further confusion, the Court should also instruct Cress to file a Second Amended Complaint that omits all parties and claims that are dismissed in the Court's order adjudicating this Motion. In his First Amended Complaint, Cress pleads additional facts relating only to his unregistered securities claim under Cal. Corp. Code §§ 25110 and 25503, and his new facts are limited to whether the small portion of his unregistered securities claim directed to the NEXO Token is preempted by NSMIA.[4] Thus, with respect to the parties and claims that were previously dismissed—and which are not supported by any newly pleaded allegations—the Court should dismiss them again without leave to amend. *See Angel v. Brazelton*, No. 1:12-CV-00272-

[3] *See SEC v. Coinbase, Inc.*, 23 Civ. 4738 (S.D.N.Y.). Complaint is available at https://www.sec.gov/files/litigation/complaints/2023/comp-pr2023-102.pdf.

[4] Nexo understands that Cress re-pled the dismissed parties and claims without amendment to preserve those claims for appeal. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that "for any claims voluntarily dismissed, we will consider those claims to be waived if not repled").

AWI, 2013 WL 4854484, at *3 (E.D. Cal. Sept. 10, 2013) (noting that dismissal without leave to amend appropriate where the amended complaint "does not allege any new or different facts that address the deficiencies previously identified"). While Cress adds the allegation that Trenchev signed Nexo's Form D filings (Dkt. 29 ¶ 101), this allegation does not affect the Court's prior conclusion dismissing Trenchev for lack of personal jurisdiction in California for alleged violations of state securities laws. *See In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig*., No. 2:11-CV-07166-MRP, 2012 WL 1097244, at *14 (C.D. Cal. Mar. 9, 2012) (dismissing claims against individual defendants for lack of personal jurisdiction despite allegation of "signing a registration statement").

Based on the Court's order on Nexo's first motion to dismiss, the Court should dispose of Cress's claims as follows:

- dismiss Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, and Antoni Trenchev for lack of personal jurisdiction, without leave to amend.
- dismiss Cress's UCL claim for failure to state a claim to the extent it is based on alleged deceptive conduct in the sale of the NEXO Token and Nexo Earn Account, Nexo's advertised interest rates being available only to customers who maintain 10% of their portfolio balance in the NEXO Token, or Nexo's alleged failure to provide Cress notice before liquidating his assets, with prejudice and without leave to amend.
- dismiss Cress's claims under Cal. Corp. Code §§ 25110 and 25503 for failure to state a claim to the extent it is based on his Earn Interest Account or the "Leveraged Investment Instrument" (*i.e.*, his entire Nexo account), with prejudice and without leave to amend.
- dismiss Cress's claims under Cal. Corp. Code §§ 25401 and 25504.1, except as to the alleged misrepresentation that the NEXO Token was registered with the SEC as a security, with prejudice and without leave to amend.

While Nexo does not seek reconsideration of the Court's previous denial of its motion to dismiss certain claims, it reserves the right to seek dismissal of those claims at summary judgment based on a fully developed evidentiary record.

## II. THE COURT SHOULD DISMISS CRESS'S UNREGISTERED SECURITIES CLAIM WITH PREJUDICE AND WITHOUT LEAVE TO AMEND.

Federal law preempts state regulation of a "covered security." 15 U.S.C. § 77r. A "covered security"—including an exempt security—is not subject to state registration and review, including registration requirements under Cal. Corp. Code §§ 25503, 25110. *Mohebbi v. Khazen*, 50 F. Supp. 3d 1234, 1249 (N.D. Cal. 2014). A "covered security" includes, among other things, a security in a transaction that is exempt from registration under SEC rules or regulations. 15 U.S.C. § 77r(b)(4)(D); *see Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 910-12 (6th Cir. 2007) ("[Offerings that] actually qualify for a federal securities registration exemption . . . enjoy NSMIA preemption."). Relevant here is the Rule 506(c) exemption, which allows an exemption if the purchasers of securities are accredited investors, and the company takes reasonable steps to verify that the investors are accredited investors. *See* 17 C.F.R. § 230.506(c).

As this Court previously held, the NEXO Token falls within the Rule 506(c) exemption because Nexo sold it to accredited investors in the United States and took steps to verify that the investors were, in fact, accredited. Cress argues that the exemption was lost due to alleged non-compliance with several technical regulatory requirements. None of these arguments have merit.

### A. The Rule 506(c) exemption applies to Cress's unregistered securities claim based on Nexo's sale of the NEXO Token.

Cress adds new and unsupported elements to the Rule 506(c) exemption analysis. This Court described the elements of the exemption when previously dismissing Cress's unregistered securities claim: "Rule 506(c) when all purchasers are 'accredited investors' and the issuer takes reasonable measures to verify that the purchaser is an accredited investor, the security offering is exempt from the registration requirement." Dkt. 26 at 27.

The first two elements are admitted: Cress easily satisfied the net worth requirements to be an accredited investor, and his status was verified by an independent California-licensed attorney. *See* Dkt. 19-4 (Cress's Accredited Investor Certificate).[5] Cress's First Amended Complaint makes

[5] The Court's prior order correctly recognized that Cress's status as an accredited investor was undisputed and, indeed, admitted. Dkt. 26 at 32. Although cumulative of the net worth allegations

three arguments why Nexo is not entitled to an exemption: (1) Nexo sold the NEXO Token to Cress three years after Nexo filed its Form D; (2) Nexo allegedly sold other the NEXO Token to the "general public," presumably meaning unaccredited investors, in the United States (Cress does not identify any such sales in his First Amended Complaint); and, (3) Nexo did not reasonably ensure that the NEXO Token was not offered to "statutory underwriters." Dkt. 29 ¶ 143.

None are valid, as discussed below. Although Nexo has the burden to establish the affirmative defense of preemption, Cress's allegations continue to "suggest on their face federal preemption" such that the NEXO Token remains exempt. *See Mohebbi*, 50 F. Supp. 3d at 1249 ("Plaintiff has not pled sufficient facts to support his conclusion that the securities are not 'covered securities' that were subject to registration requirements or exemptions under the Securities Act.").

**B. None of Cress's new allegations undermine the Court's prior conclusion that the Rule 506(c) exemption applies.**

**1. The alleged timing of the sale does not affect the exemption.**

Cress adds new allegations about the timing of Nexo's Form D filings, but these facts are irrelevant to the Rule 506(c) exemption. Specifically, Cress has failed to cure the pleading defect that the Court identified in its prior order:

> Cress argues that Nexo's failure to sell the NEXO Token within the timeline it indicated in its Form D filing renders the sale to Cress ineligible for exemption. ECF No. 23 at 21-22. **Cress does not cite to any regulatory requirements or caselaw indicating that failure to sell a security within the timeline provided in the Form D filing is failure to comply with 17 C.F.R. § 230.506.**

Dkt. 26 at 27 (emphasis added).

In his First Amended Complaint, Cress alleges that:

> Nexo filed three Form Ds with the SEC with respect to NEXO Tokens offered and sold in 2018; however, Nexo's sale to Plaintiff in 2021 were not noticed in those Form Ds. The federal securities laws require the notice to be filed by companies that have sold securities without registration under the Securities Act of 1933 in an offering made under Rule 504 or 506 of Regulation D or Section 4(a)(5) of the Securities Act.

---

in the First Amended Complaint that establish Cress's accredited status (Dkt. 29 ¶ 76), the Court may also consider the Accredited Investor Certificate because the complaint refers to Nexo's verification of Cress's accredited status and the document's authenticity should be undisputed. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); Dkt. 19-1 ¶ 3; Dkt. 29 ¶ 54.

Dkt. 29 ¶ 143.

Cress's new allegations leave the deficiency identified by the Court uncorrected. Cress refers generically to "federal securities laws" which he claims require Nexo to file a "notice" under "Rule 504 or 506 of Regulation D." *Id.* But this requirement is not a new allegation at all; the Court's prior opinion acknowledges the 15-day "timeline" imposed by 17 C.F.R. § 230.506, which merely requires the filing of a Form D filing within 15 days of the *first sale of securities in the offering*. 17 C.F.R. § 230.503(a)(1); *Chanana's Corp. v. Gilmore*, 539 F. Supp. 2d 1299, 1303 (W.D. Wash. 2003) (explaining that "federal law required [the issuer] to file a Form D no later than 15 days after the first sale of securities"). Cress admits that Nexo did this. He pleads that Nexo first began selling the NEXO Token on February 14, 2018, and that Nexo filed its Form D six days later on February 20, 2018. Dkt. 29 ¶ 98. Cress notes that Nexo stated that the offering was not "intended" to last more than a year, but he cites no authority supporting his claim that an offering lasting longer than its "intended" end date voids a Rule 506(c) exemption.

Next, Cress claims that Nexo's offering concluded in May 2018 when it filed an amended Form D showing that it had sold all of its offer to 129 investors (which did not include Cress). *Id.* ¶ 100. Cress's point here is unclear. If he is arguing that Nexo was supposed to file a new or amended Form D when it sold him the NEXO Token, he cites no authority for this position. Cress identifies no federal law imposing a time limit on when Nexo must stop selling the NEXO Token to accredited investors in the United States. Moreover, filing a Form D is not even a condition precedent to receiving an exemption in the first instance. *Bristol Capital Investors, LLC v. Cannapharmarx Inc.*, No. 221CV03808SBJCX, 2021 WL 2633155, at *2 (C.D. Cal. June 24, 2021); *In re Ressler Hardwoods & Flooring, Inc.*, No. 1:08-BK-01878MDF, 2009 WL 975155, at *8 (Bankr. M.D. Pa. Apr. 1, 2009). As *Ressler* explains, state law registration requirements are preempted because the security is a "federal covered security" even though an issuer might have failed to file a Form D. 2009 WL 975155, at *8. Even assuming Nexo was supposed to file a new or amended Form D before it sold the NEXO Token to Cress (a point Nexo disputes), that fact would not defeat the exemption because Nexo only sold the NEXO Token to accredited investors (including Cress) in

the United States.

**2. The alleged integrated nature of the sale does not affect the exemption.**

Cress claims that "Nexo's sale of NEXO Tokens to Plaintiff in 2021 were not made pursuant to SEC Rule 506(c), but rather were part of Nexo's non-exempt public offering of the NEXO Token." Dkt. 29 ¶ 96. Cress now alleges on "information and belief" that "Nexo has offered and sold the NEXO Token to tens of thousands of investors, including tens of thousands of non-accredited investors." *Id.* ¶ 105. In support of his rank speculation, Cress points to the Ethereum blockchain, which allegedly reflects "78,975 holders of the NEXO Token." *Id.* Based on the alleged number of "holders" of the NEXO Token in the world, Cress asks the Court to assume—without any supporting facts—that Nexo must have sold the NEXO Token to unaccredited investors in the United States.

The problem with this argument starts with Cress's own allegations about the transactions at issue and Nexo's representations to him. Cress alleges that Nexo told him that, with respect to "American citizens," the NEXO Token could only be purchased by "certified, accredited investors." *Id.*¶ 54. Nexo sold the NEXO Token to Cress only after an attorney verified Cress's accredited investor status. *See* Dkt. 19-1 ¶ 6 (Trenchev Declaration); Dkt. 19-4 (Cress's Accredited Investor Certificate).

Cress's theory that Nexo sold the NEXO Token to non-accredited investors in the United States is based on his allegation that the Ethereum blockchain shows 78,975 "holders" of the NEXO Token. However, Cress does not identify even one specific sale to a non-accredited investor in the United States. The total number of global "holders"[6] of the NEXO Token says nothing about the nationality of each holder, whether that holder is a business or individual, the number of addresses/wallets owned by that holder, how that holder received or purchased the tokens, who sold that holder the NEXO Token (or if the transaction even involved a sale), or whether each holder is an accredited investor. The number of "holders" is irrelevant to whether Nexo actually sold the NEXO Token to unaccredited investors (*i.e.*, the general public) in the United States. To the extent

[6] Nexo assumes that Cress's reference to 78,975 "holders" of the NEXO Token means there are 78,975 distinct wallet addresses containing one or more NEXO Tokens.

Cress contends that Nexo Capital Inc. sold the NEXO Token to unaccredited investors *outside the United States*, this alleged extra-territorial conduct is irrelevant. *See Morrison v. Nat'l Australia Bank Ltd*., 561 U.S. 247, 269 (2010) ("[W]e reject the notion that the Exchange Act reaches conduct in this country affecting exchanges or transactions abroad.").

Cress further alleges that "all of Nexo's sales of the NEXO Token should be treated as one offering, because Nexo sold the NEXO as part of a single plan of financing, for the same general purpose, and without creating different classes of NEXO." Dkt. 29 ¶ 97. These conclusory paragraphs appear to invoke the integration doctrine. *See, e.g., S.E.C. v. Murphy*, 626 F.2d 633, 645 (9th Cr. 1980) (explaining that the factors for an integration analysis are: "(a) whether the offerings are part of a single plan of financing; (b) whether the offerings involve issuance of the same class of securities; (c) whether the offerings are made at or about the same time; (d) whether the same kind of consideration is to be received; and (e) whether the offerings are made for the same general purposes"). This Court previously explained that the doctrine is "intended to guide a determination of when multiple offers or sales constitute essentially one transaction, as in when they are integrated, such that the transaction must meet the exemption requirements as a whole." Dkt. 26 at 27. While the Court previously explained why the integration doctrine has no applicability here, it does not matter whether the Court views Nexo's 2018 and 2021 sales of the NEXO Token as integrated or not. Even assuming the integration doctrine applies, its only effect is that the integrated offering "must meet the exemption requirements as a whole." *Id.* There is no identification in Cress's First Amended Complaint of any sale by Nexo to an unaccredited investor in the United States in 2018 or 2021. The only transactions identified by Cress—his own transactions—show that Nexo sold to an accredited investor and that Nexo specifically informed Cress of its policy on the issue.

Aside from the total number of "holders" of the NEXO Token globally, Cress adds the following two allegations to support his argument—(1) Cress was not one of the 129 investors identified in the 2018 Form Ds filed by Nexo, and (2) the NEXO Token has been available for buying, selling, and trading on digital asset trading platforms, "including on Nexo's own exchange," since at least March 2019. Dkt. 29 ¶¶ 100, 104. Even assuming for purposes of argument that these allegations are true, they do nothing to contradict the fact that Nexo only sold the NEXO Token to

accredited investors in the United States. The allegation that Cress was not one of the original 129 investors in 2018 is irrelevant to whether he or anyone else purchased the NEXO Token as an accredited investor at a later time. *Id.* ¶ 100. The allegation that customers could purchase the NEXO Token on *third-party* exchanges like Bitfinex and Bitstamp is irrelevant because Nexo did not make those sales. *Id.* ¶ 107. And the allegation that Nexo's customers could purchase the NEXO Token on "Nexo's own exchange" after 2019 is irrelevant to whether those sales were limited to accredited investors in the United States. *Id.* ¶ 104. Cress's conclusory and generic allegation that Nexo made unidentified sales of the NEXO Token to "tens of thousands of non-accredited investors" is not confined to sales in the United States and is thus irrelevant. Dkt. 29 ¶ 105. The First Amended Complaint's only allegation about sales of the NEXO Token in the United States is that Nexo is "only allowed to facilitate deals with American citizens who are also certified, accredited investors." *Id.* ¶ 54.

Finally, the viability of Cress's claim requires him to plausibly plead that his specific transactions violated state registration laws. *Eshelman v. Orthoclear Holdings, Inc.*, No. C 07-1429 JSW, 2009 WL 506864, at *11 (N.D. Cal. Feb. 27, 2009) (explaining that a plaintiff "must allege that they personally were offered or bought securities that, at the time of such offer or sale, should have been registered and were not"). His allegations uniformly confirm that with respect to the NEXO Token transactions between him personally and Nexo, Nexo required him to be independently confirmed as an accredited investor in satisfaction of Rule 506(c). Cress's rank speculation about other unidentified transactions with "non-accredited investors" is not plausible and not supported by any pleaded facts, and his claims under Sections 25110 and 25503 fail as a matter of law. Dkt. 29 ¶ 105.

**3. The allegation that Nexo failed to exercise reasonable care that the purchasers of the NEXO Token were not "statutory underwriters" does not affect the exemption.**

Cress adds the conclusory claim that "Nexo did not exercise reasonable care to assure that the purchasers of NEXO via its purported Regulation D offering were not statutory underwriters of NEXO within the meaning of Section 2(a)(11) of the Securities Act." Dkt. 29 ¶ 143. This sentence

was added to the Third Cause of Action in the First Amended Complaint, but it is not supported by new factual allegations in Paragraphs 95-114.

A Rule 506(c) exemption must satisfy certain conditions in 17 C.F.R. § 230.506(b)(1) ("To qualify for an exemption . . . offers and sales must satisfy all the terms and conditions of 230.502."). Section 230.502 requires, among other things, that Nexo "exercise reasonable care to assure that the purchasers of the securities are not underwriters." 17 C.F.R. § 230.502(d). In turn, an "underwriter" is defined as "any person who has purchased from an issuer with a view to . . . the distribution of any security." 15 U.S.C. § 77b(a)(11). Cress offers no factual predicate as to *how* Nexo failed to exercise reasonable care to ensure that the purchasers of the NEXO Token were not "underwriters." Cress does not claim he is an "underwriter" and does not identify any other "underwriters" to whom Nexo allegedly sold the NEXO Token in the United States.

This conclusory underwriter allegation is irrelevant unless Cress plausibly alleges that Nexo sold the NEXO Token to accredited investors "with the purpose and intent that [the NEXO Token] then be distributed by the Initial Purchasers into a secondary public market." *See Securities and Exchange Commission v. Telegram Group Inc.*, 448 F.Supp.3d 352, 379 (S.D.N.Y. 2020). Cress's pleadings fail to do so. Cress does not allege he sold any the NEXO Token into a secondary public market, and affirmatively pleads he was purchasing the NEXO Token to *hold* in his account so that he could get better interest rates on his credit lines. Dkt. 29 ¶¶ 50, 51, 56. Similarly, Cress affirmatively alleges that none of Nexo's managers has "sold a single NEXO Token." *Id.* ¶ 109. Cress's allegation that Nexo did not exercise reasonable care to assure that the purchasers of the NEXO Token were not statutory underwriters has no plausible basis.

**C. CRESS'S NEW ALLEGATIONS SUPPORTING HIS POSITION THAT THE NEXO TOKEN IS A SECURITY ARE IRRELEVANT TO THIS MOTION.**

Cress added 19 paragraphs to his "Factual Allegations" section. Twelve of those paragraphs were borrowed from an SEC Complaint filed in June 2023 against Coinbase. *Compare* Coinbase Complaint, 23 Civ. 4738 (S.D.N.Y.) (Dkt. 1 ¶¶ 294-305), *with* Cress First Amended Complaint (Dkt. 29 ¶¶ 103–114). Cress makes these new allegations to support his contention that the NEXO Token is a security. The Court need not address this issue to adjudicate the present Motion because

the unregistered securities claims should be dismissed on preemption grounds even assuming for purposes of argument that the NEXO Token is a security.

Cress is likely adding these "security" allegations to counter the argument that the NEXO Token is not a security under the rationale of the recent *SEC v. Ripple Labs, Inc.* decision. *Securities and Exchange Commission v. Ripple Labs, Inc.*, No. 20 CIV. 10832 (AT), 2023 WL 4507900 (S.D.N.Y. July 13, 2023), *motion to certify appeal denied*, No. 20 CIV. 10832 (AT), 2023 WL 6445969 (S.D.N.Y. Oct. 3, 2023). *Ripple* considered whether the XRP Token was a security. The *Ripple* court divided the XRP Token transactions at issue into three categories: (1) institutional sales; (2) programmatic sales; and (3) other distributions. *Id.* at *2-3. The *Ripple* court held that the programmatic sales at issue in that case—sales to individual buyers—were not securities transactions. *Id.* at *12. Nexo contends that none of the specific transactions at issue, including its sale of the NEXO Token to Cress, were securities transactions and will litigate the "security" issue, including the relevance of the *Ripple* decision, with the benefit of a fully developed factual record. These new "security" allegations are irrelevant to the disposition of the present Motion, and the Court need not and should not opine on whether the NEXO Token is, in fact, a security when adjudicating this Motion.

**CONCLUSION**

Nexo respectfully requests that the Court grant the present Motion, dismiss the parties and claims the Court previously dismissed without leave to amend, including the unregistered securities claim based on Nexo's sale of the NEXO Token to Cress, and order Cress to file a Second Amended Complaint that omits all dismissed parties and claims.

DATED: January 12, 2024 EVERSHEDS SUTHERLAND (US) LLP

By */s/ Ian S. Shelton*
Ian S. Shelton

*Attorneys for Defendants Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, Nexo Capital Inc., and Antoni Trenchev*