UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CRESS,<br><br>        Plaintiff,<br><br>    v.<br><br>NEXO FINANCIAL LLC, et al.,<br><br>        Defendants. | Case No. 23-cv-00882-TSH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 32 |

## I.    INTRODUCTION

Plaintiff John Cress brings this case against Defendants Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, and Nexo Capital, Inc. (collectively "Nexo") and Antoni Trenchev, Nexo's CEO (together with Nexo, "Defendants"), alleging Nexo fraudulently induced him to take out loans collateralized by millions of dollars in digital assets, which were ultimately sold by Nexo. Pending before the Court is Defendants' Motion to Dismiss Cress's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and Rule12(b)(6). ECF No. 32. Cress filed an Opposition (ECF No. 33) and Defendants filed a Reply (ECF No. 34). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.[1]

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 16.

## II. BACKGROUND

**A.  Factual Background**

Cress is a resident of San Francisco, California.  First Am. Compl. "(FAC") ¶ 8, ECF No. 29.  Nexo Financial LLC is a Delaware corporation with a registered agency address in Delaware.  *Id.* ¶ 9.  Nexo Financial Services Ltd. is based in London, England.  *Id.* ¶ 10.  Nexo AG is a Switzerland corporation with a listed address in Switzerland.  *Id.* ¶ 11.  Nexo Capital Inc. is a Cayman Islands corporation with its principal place of business in London, England.  *Id.* ¶ 12.  Nexo Capital is the Nexo entity that issued credit to Cress.  *Id.*  Antoni Trenchev, a resident of the United Kingdom, is the Co-Founder, Managing Partner, and Chief Executive Officer of Nexo.  *Id.* ¶ 13.

Since April 2018, Nexo has maintained a website through which customers can use their digital assets as collateral, held in their "Credit Line Wallet," to borrow fiat currency, such as U.S. Dollars.  *Id.* ¶ 30.  Beginning in October 2020, Nexo also offered customers interest-bearing accounts on deposited digital assets through a "Savings Wallet," which serves as back-up collateral.  *Id.*

A customer can borrow as much cash as they want if they maintain a particular loan-to-value ("LTV") ratio – the ratio between the amount of cash they have borrowed and the value of the collateral in their Credit Line Wallet.  *Id.* ¶ 31.  The value of the collateral fluctuates with the price of the digital assets held as collateral.  *Id.*  If a customer's LTV ratio rises above a certain threshold, to bring the LTV ratio back in line Nexo will transfer assets from the Savings Wallet to the Credit Line Wallet and/or automatically sell (liquidate) the collateral.  *Id.* ¶ 32.  Customers may also use their borrowed fiat currency to purchase additional digital assets, which in turn provide additional collateral for the loan.  *Id.* ¶ 33.

In March 2021, Cress decided to transfer Bitcoin and Ether he had accumulated on Coinbase, a cryptocurrency exchange, to his Nexo Savings Wallet in order to earn passive returns through Nexo's interest-bearing Earn Account.  *Id.* ¶¶ 35-36.

On March 15, 2021, Nexo employee Hristiyan Hristov emailed Cress and told him that he was eligible for Nexo's "VIP Relationship Program."  *Id.* ¶ 38.  Hristov emailed Cress on March

17, attaching a brochure advertising the benefits of the program. *Id.* ¶ 39. In the brochure, Nexo stated that participants in the program: 1) "get a response from the support team in 2 hours, 24/7," receive a "dedicated relationship manager," "direct phone number availability"; and 2) could utilize certain "OTC services," which included Nexo's "Liquidation Relief Program," described as a "service in the event of a market crash to recover your liquidated assets . . . ." *Id.* ¶ 41. On March 24 Cress emailed Hristov asking how much interest the Bitcoin he posted as collateral would "be earning and if all the interest was applied to the monthly loan payment, how short would the payments be and is that ok?" *Id.* ¶¶ 42-43. Hristov responded: "You will be earning 5% annually on the Bitcoin which you used as collateral. Keep in mind that the interest rate will be paid out daily in BTC [Bitcoin], so you will benefit from the potential upside in the Bitcoin price." *Id.* ¶ 43.

On March 26, 2021, Cress took out an approximately $5.4 million loan collateralized by his digital assets. *Id.* ¶ 47. Cress then borrowed $7.45 million more through loans in March and April 2021. *Id.* In taking out the collateralized loans, Cress relied upon Nexo's representations regarding its responsiveness and Liquidation Relief Program because the digital asset market is highly volatile and he believed these benefits reduced the risk of losing his digital assets to liquidation. *Id.* ¶ 44. Cress also relied upon Nexo's representation that his collateral would earn interest because it helped to offset any interest he would pay on his loans. *Id.* ¶ 45.

Cress also emailed Hristov to request options for purchasing additional Bitcoin with a Nexo loan secured by digital assets. *Id.* ¶ 51. To receive more favorable interest rates on borrowing as well as the Earn Account, Nexo requires customers to purchase "NEXO Tokens" and maintain 10% of their portfolio balance in NEXO Token securities. *Id.* ¶ 49. Hristov responded by sending Cress options for purchasing Bitcoin. *Id.* ¶ 51. These options all included that Cress purchase NEXO Tokens but did not reflect the cost of the NEXO Tokens in the LTV ratio and liquidation numbers provided by Hristov. *Id.* By not accounting for the NEXO Tokens, Hristov understated the riskiness of the potential loans. *Id.* Hristov also represented to Cress that "the NEXO token is registered with the SEC as a security therefore we are only allowed to facilitate deals with American citizens who are also certified, accredited investors." *Id.* ¶ 54.

3

1    Cress's purchase of NEXO Tokens dramatically increased the likelihood that Cress's
2    assets would be liquidated as NEXO Tokens are far more volatile than Bitcoin. *Id.* ¶ 59. As a
3    result, when the crypto market experienced downside volatility, the value of Cress's collateral
4    decreased more sharply than it would have if he had only been holding Bitcoin. *Id.* This, in turn,
5    increased Cress's LTV more rapidly, resulting in the liquidation of his assets. *Id.* In essence,
6    Nexo sold Cress a complex and highly risky leveraged loan of a bundle of digital assets, including
7    NEXO Token security (the "Leveraged Investment Instrument"). *Id.* ¶ 61.

8    By May 23, 2021, the price of NEXO Tokens sank, causing the partial liquidation of
9    Cress's digital assets. *Id.* ¶ 65. Nexo's terms explicitly state that it will provide customers notice
10   and opportunity to furnish additional collateral prior to liquidating the assets, but Nexo provided
11   Cress no warnings. *Id.* ¶ 78. On June 21 and 22, 2021, the price of NEXO Tokens plunged,
12   resulting in the liquidation of nearly all of Cress's digital assets. *Id.* ¶ 65. Nexo again failed to
13   warn Cress prior to beginning the liquidation of his assets. *Id.* ¶ 80.

14   On June 22, 2021, Cress emailed Hristov regarding the Liquidation Relief Program. *Id.* ¶
15   86. Nexo informed him that under the program he could take out a new loan from Nexo to
16   repurchase his liquidated assets from Nexo. *Id.*

17   **B.    Procedural Background**

18   Cress filed this case on February 27, 2023, alleging five causes of action: 1) Fraudulent
19   Inducement of Contract (against all Nexo Defendants); 2) California Unfair Competition Law,
20   Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL") (against all Nexo Defendants); 3) Unregistered
21   Offer and Sale of Securities, Cal. Corp. Code §§ 25110, 25503 (against all Defendants); 4)
22   Unregistered Offer and Sale of Securities, Cal. Corp. Code §§ 25110, 25504 (against Trenchev);
23   and 5) Fraud in the Offer and Sale of Securities, Cal. Corp. Code §§ 25401, 25504.1 (against all
24   Defendants). ECF No. 1. On May 15, 2023, Defendants moved to dismiss pursuant to Rule
25   12(b)(2) and Rule 12(b)(6). ECF No. 19. Defendants sought dismissal under Rule 12(b)(2) as to
26   all Defendants except Nexo Capital, arguing Cress had not established either general or specific
27   jurisdiction over them. Defendants sought dismissal of the fraudulent inducement of contract
28   claim, arguing Cress failed to plead with the requisite particularity that Defendants made an

1   actionable misrepresentation, that Defendants made the alleged misrepresentations with the
2   requisite knowledge of falsity (scienter), or that he reasonably or justifiably relied on any such
3   alleged misrepresentation.  Defendants sought dismissal of the equitable UCL claim, arguing
4   Cress plead he had adequate remedies at law, because the UCL does not apply to securities
5   transactions, and because he failed to adequately plead predicate acts.  Defendants sought
6   dismissal of the claim for the unregistered offer and sale of securities, arguing it is preempted by
7   federal law, Cress did not purchase unregistered securities, he was not in privity with certain
8   Defendants, and he failed to plead that he suffered any harm from the purchase of unregistered
9   securities.  Defendants sought dismissal of the claim for fraud in the offer and sale of securities,
10  arguing Cress failed to plead with the requisite particularity that Defendants made an actionable
11  misrepresentation or that he reasonably relied on any such alleged misrepresentation, Cress was
12  not in privity with certain Defendants, and he failed to plead that he suffered any harm from the
13  alleged fraud.  Finally, Defendants sought dismissal of the securities claims against Trenchev
14  individually, arguing there were no viable predicate securities violations and because Cress failed
15  to plead with the requisite particularity that Trenchev personally and materially aided the alleged
16  fraud.
17         On October 10, 2023, the Court granted in part and denied in part Defendants' motion.
18  ECF No. 26 ("Order"); *Cress v. Nexo Fin. LLC*, 2023 WL 6609352 (N.D. Cal. Oct. 10, 2023).
19  The Court dismissed all claims against all Defendants, except Nexo Capital, for lack of personal
20  jurisdiction.  Order at 7-15.  The Court denied Defendants' motion as to Cress's first claim for
21  fraudulent inducement of contract, finding his allegations plausible at the motion to dismiss stage.
22  *Id.* at 15-21.  As to the UCL claim, the Court granted Defendants' motion to the extent it was
23  based on Nexo's alleged deceptive conduct in the sale of the NEXO Token and Cress's Nexo Earn
24  Account, and also to the extent it is based on Nexo's advertised interest rates being available only
25  to customers who maintain 10% of their portfolio balance in the NEXO Token or on Nexo's
26  alleged failure to provide Cress notice before liquidating his assets.  *Id.* at 24-25.  As to Cress's
27  third claim under California Corporations Code sections 25110 and 25503, the Court granted
28  Defendants' motion, finding Cress had not plausibly alleged the existence of a non-exempt,

5

1   unregistered security. *Id.* at 31.  The Court also dismissed Cress's state law securities fraud claim,

2   except as to the single alleged misrepresentation that the NEXO Token was registered with the

3   SEC as a security. *Id.* at 33.  The Court granted Cress leave to amend. *Id.*

4         On November 10, 2023, Cress filed his FAC, re-pleading the same five causes of action.

5   Defendants filed the present motion on January 12, 2024.  Defendants state they do not seek

6   reconsideration of the Court's previous denial of their motion to dismiss certain claims, but they

7   reserve the right to seek dismissal of those claims at summary judgment. *Id*. at 4.  However, as to

8   the claims the Court previously dismissed, Defendants argue Cress has added no new allegations,

9   and the Court should therefore dismiss those claims, this time without leave to amend.  Thus,

10  Defendants request the Court:

- dismiss Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, and Antoni Trenchev for lack of personal jurisdiction.
- dismiss Cress's UCL claim for failure to state a claim to the extent it is based on alleged deceptive conduct in the sale of the NEXO Token and Nexo Earn Account, Nexo's advertised interest rates being available only to customers who maintain 10% of their portfolio balance in the NEXO Token, or Nexo's alleged failure to provide Cress notice before liquidating his assets, with prejudice and without leave to amend.
- dismiss Cress's claims under Corporations Code sections 25110 and 25503 for failure to state a claim to the extent it is based on his Earn Interest Account or the "Leveraged Investment Instrument" (i.e., his entire Nexo account), with prejudice and without leave to amend.
- dismiss Cress's claims under Cal. Corp. Code §§ 25401 and 25504.1, except as to the alleged misrepresentation that the NEXO Token was registered with the SEC as a security, with prejudice and without leave to amend.

*Id.* at 4-5.  Defendants also request the Court instruct Cress to file a second amended complaint that omits all parties and claims that are dismissed as a result of the present motion. *Id.* at 4.

### III.   PERSONAL JURISDICTION

As noted above, in its previous order, the Court found personal jurisdiction lacking over all

1  Defendants, except Nexo Capital. Order at 7-15. Defendants argue that in his FAC, Cress pleads
2  additional facts relating only to his unregistered securities claim under Corporations Code sections
3  25110 and 25503, and his new facts are limited to whether the portion of his unregistered
4  securities claim directed to the NEXO Token is preempted by the National Securities Markets
5  Improvement Act ("NSMIA"). Mot. at 4. Thus, with respect to the parties and claims that were
6  previously dismissed, Defendants request the Court dismiss them again, this time without leave to
7  amend. Cress does not address Defendants' personal jurisdiction argument in his opposition.
8  Cress recognizes "Nexo . . . requests that for 'housekeeping' purposes, the Court should order
9  Plaintiff to file a Second Amended Complaint that omits all dismissed parties and claims. Plaintiff
10 does not believe that this is necessary or efficient. The parties are capable of interpreting the
11 Court's earlier Order as well as its Order on this Motion and determining what claims and parties
12 remain." Opp'n at 24. As such, Cress appears to recognize that all Defendants except Nexo
13 Capital have been dismissed, but he does not think it is necessary to file an amended complaint
14 that omits them. Accordingly, the Court **GRANTS** Defendants' motion to dismiss all Defendants
15 except Nexo Capital for lack of personal jurisdiction. Dismissal is without leave to amend.

### IV.   DISMISSAL UNDER RULE 12(B)(6)

#### A.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B.     UCL Claim**

As to Cress's UCL claim, Defendants request the Court dismiss it on the same grounds as stated in its previous order. Cress does not address this in his opposition, other than to say he does not believe it is necessary to file an amended complaint that omits all dismissed claims. Opp'n at 24. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Cress's UCL claim to the extent it is based on Nexo's alleged deceptive conduct in the sale of the NEXO Token and Cress's Nexo Earn Account, and also to the extent it is based on Nexo's advertised interest rates being available only to customers who maintain 10% of their portfolio balance in the NEXO Token or on Nexo's alleged failure to provide Cress notice before liquidating his assets. Dismissal is without leave to amend.

**C.     California Securities Claims under Sections 25110 and 25503**

Under Corporations Code section 25110, "[i]t is unlawful for any person to offer or sell in this state any security in an issuer transaction (other than in a transaction subject to Section 25120)" unless the sale meets certain qualifications. Pursuant to sections 25110 and 25503, a

8

plaintiff alleging failure to register securities may sue for damages, if they no longer own the security, or if the consideration given for the security is not capable of being returned. Damages, if the plaintiff no longer owns the security, shall be equal to the difference between (a) the purchase price plus interest at the legal rate from the date of purchase, plus reasonable attorney's fees, and (b) the value of the security at the time it was disposed of by the plaintiff plus the amount of any income received therefrom by the plaintiff." Cal. Corp. Code § 25503.

In his original complaint, Cress alleged NEXO Tokens, Nexo Earn Accounts, and the "Leveraged Investment Instrument" financial product are securities within the meaning of the California Corporations Code, he purchased all three from Defendants, and, as a result of Defendants' unregistered sale of securities, Defendants violated sections 25110 and 25503. Compl. ¶¶ 115-22, 123-26.

### 1. Earn Account and "Leveraged Investment Instrument" Product

As to the Earn Account, Cress argued in opposition to Defendants' previous motion to dismiss that he had been harmed because his Earn Account was liquidated, which caused him to lose millions of dollars. ECF No. 23 at 20-21. However, the Court found "that this is not a harm or loss for which there is a remedy available under Cal. Corp. Code § 25503." Order at 26. The Court noted "Cress fails to allege that he suffered damages within the meaning of § 25503 concerning the value of the Earn Account, and paragraph 100 of the Complaint basically alleges the opposite." *Id.* Thus, as "Cal. Corp. Code § 25503 and § 25110 do not appear to provide a remedy for this type of loss, and Cress does not argue or allege loss within the parameters of the statutory remedy," the Court granted Defendants' motion to dismiss Cress's third cause of action as to the Earn Account. *Id.*

As to the "Leveraged Investment Instrument" product, the Court noted it "appears likely Cress intended as broad a definition as possible, . . . encompass[ing] all of the assets Cress leveraged as collateral and potential collateral in order to receive credit from Nexo for investing." *Id.* at 29 (citing Compl. ¶ 62 ("Nexo was selling Plaintiff a complex and highly risky leverage long of a bundle of digital assets, including its NEXO Token security (the 'Leveraged Investment Instrument.'")). "As such, it includes the NEXO Tokens, as well as the Bitcoin and Ether that

Cress invested in his Credit Wallet to serve as collateral for his borrowing. It also includes any NEXO Tokens and Bitcoin and Ether that Cress deposited in his Earn Account, as those assets served as back-up collateral for his borrowing." *Id.* The Court also noted the "parties do not dispute that Bitcoin and Ether are not securities, nor do they dispute (at the pleading stage) that the NEXO Tokens and Earn Account are securities. Cress's argument to consider all of his assets with Nexo collectively as a security rests primarily on the fact that the Leveraged Investment Instrument includes some securities, namely NEXO Tokens and his Earn Account, and thus the Leveraged Investment Instrument as a whole constitutes a derivative security." *Id.* at 29-30. The Court declined to take such an expansive view of derivative securities and apply it broadly to collateral which draws value from both securities and commodities, noting "Cress provides virtually no argument as to how the instrument as a whole is an investment contract other than to point to the presence of NEXO Tokens." *Id.* at 30. As such, the Court found "there is no vertical commonality between Nexo and Cress . . . because there is no indication that Nexo and Cress's fortunes were linked by the Leveraged Investment Instrument." *Id.* at 31. Accordingly, the Court granted Defendants' motion to dismiss Cress's third cause of action as to the "Leveraged Investment Instrument." *Id.*

In his FAC, Cress has re-pleaded his claims as to the Earn Account and Leveraged Investment Instrument product, but he has added no material allegations regarding those claims. As such, Defendants argue his third cause of action should be dismissed for the same reasons stated in the previous order but without leave to amend. Cress again does not address this in his opposition, other than to say he does not believe it is necessary to file an amended complaint that omits all dismissed claims. Opp'n at 24. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Cress's third cause of action to the extent it is based on the Earn Account and Leveraged Investment Instrument product. Dismissal is without leave to amend.

**2.   NEXO Tokens**

In their first motion to dismiss, Defendants argued that a claim based on the NEXO Token pursuant to Corporations Code section 25110 is preempted by federal law because the NEXO Token is a "covered security." ECF No. 19 at 20-21. Cress argued the NEXO Token is not a

"covered security" because it does not meet the Rule 506(c) exemption requirements. ECF No. 23 at 21-22. The Court concluded that the unregistered securities claim cannot extend to Nexo's sale of the NEXO Token to Cress because that portion of the third cause of action is preempted by NSMIA. Order at 26-28.

All of Cress's amendments are directed to this prior preemption ruling. In his FAC Cress adds a new section entitled "Nexo's Sale of the NEXO Token Did Not Qualify for Any Exemption to Registration." FAC ¶¶ 95-114. Paragraphs 142-143 amend the unregistered securities claim by cross-referencing this section and allege

> 142. Nexo's sale of the NEXO Token to Plaintiff did not qualify for any exemption to registration from the federal or state securities laws. Nexo's sale of NEXO Tokens to Plaintiff did not involve the sale of a "covered security" because, as detailed in Section I, it was not exempt from registration under the federal securities laws or SEC rules or regulations.
>
> 143. Nexo filed three Form Ds with the SEC with respect to NEXO Tokens offered and sold in 2018; however, Nexo's sale to Plaintiff in 2021 were not noticed in those Form Ds. The federal securities laws require the notice to be filed by companies that have sold securities without registration under the Securities Act of 1933 in an offering made under Rule 504 or 506 of Regulation D or Section 4(a)(5) of the Securities Act. Moreover, even Nexo's 2018 offers and sales were not exempt from registration under Regulation D because they were part of a single offering of NEXO to the general public. In addition, Nexo did not exercise reasonable care to assure that the purchasers of NEXO via its purported Regulation D offering were not statutory underwriters of NEXO within the meaning of Section 2(a)(11) of the Securities Act.

*Id.* ¶¶ 142-43.

Defendants argue that nothing in Cress's amendments undermines the Court's prior dismissal. First, while Cress alleges that Nexo sold him the NEXO Token three years after Nexo's Form D filing in 2018, Defendants argue the Court previously considered and rejected this same argument because Cress failed to point to "any regulatory requirements or caselaw indicating that failure to sell a security within the timeline provided in the Form D filing" strips Nexo of the exemption. Mot. at 3 (quoting Order at 27). Defendants argue that none of Cress's newly added factual allegations undermine that conclusion. Second, Defendants note that Cress alleges that Nexo's offerings of the NEXO Token were not exempt because "they were part of a single

offering of NEXO to the general public." Mot. at 3 (quoting FAC ¶ 143). But they argue "[t]his bald contention is not tethered to any plausibly alleged facts. The only purported securities transactions alleged by Cress are the transactions he initiated on the Nexo platform. Cress does not identify one alleged sale by Nexo of the NEXO Token to unaccredited investors in the United States." *Id.* Third, while Cress alleges Nexo did not "exercise reasonable care to assure that the purchasers of NEXO via its purported Regulation D offering were not statutory underwriters of NEXO," FAC ¶ 143, Defendants argue "[h]e offers no plausible factual allegations to support this conclusory contention. Cress does not allege that he was a statutory underwriter of the NEXO Token or identify any other statutory underwriter that allegedly purchased the NEXO Token in the United States." *Id.* at 4.

Cress "agrees with Nexo that the FAC's amendments relate to his Third Cause of Action for unregistered offer and sale of securities in violation of Sections 25110 and 25503." Opp'n at 2 n.1. He argues Defendants cannot establish NSMIA preemption because the facts on the face of the FAC do not show that the sale of the NEXO Token to Cress qualified for an exemption. Opp'n at 23.

"Federal preemption is an affirmative defense that a defendant must plead and prove. Unless the complaint itself establishes the applicability of a federal-preemption defense—in which case the issue may properly be the subject of a Rule 12(b)(6) motion." *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012). The NSMIA prohibits states from requiring the registration or qualification of a "covered security," as defined by federal law. 15 U.S.C. § 77r. A "covered security" includes a security in a transaction that is exempt from registration under Security and Exchange Commission ("SEC") rules or regulations. 15 U.S.C. § 77r(b)(4)(D). Federal law exempts from registration a transaction not involving any public offering, and Rule 506 of Securities Act Regulation D specifies the circumstances for this private offering registration exemption. 15 U.S.C. § 77d(a)(2); 17 C.F.R. § 230.506. Pursuant to Securities Act Regulation D, Rule 506(c), when all purchasers are "accredited investors" and the issuer takes reasonable measures to verify that the purchaser is an accredited investor, the security offering is exempt from the registration requirement. *See* 17 C.F.R. § 230.506(c); *Esebag v. Whaley*, 2020 WL 7414734,

at *10 (C.D. Cal. Sept. 8, 2020).

Based on the new allegations in the FAC, the Court no longer concludes that Defendants' federal preemption defense is established by the allegations in the complaint. For example, the new allegations in paragraphs 95-114 and 142-43 plausibly allege that Nexo sold the NEXO Token to non-accredited investors, failed to take reasonable measures to verify that the purchasers were accredited investors, and failed to take reasonable care to assure that the purchasers of the NEXO Token were not statutory underwriters. Defendants quibble with the sufficiency of Cress's allegations, but their argument gets the burden of proof backwards. Federal preemption is a defense, and Defendants must plead and prove it. *See SEC v. Torchia*, 183 F. Supp. 3d 1291, 1310 (N.D. Ga. 2016) ("The SEC . . . does not have the burden to prove that the promissory notes are not exempt from registration. It is Defendants' burden to show the promissory notes are, in fact, exempt."). Here, the existence of federal preemption cannot fairly be inferred from the allegations in the FAC, and therefore questions of fact preclude dismissal of this claim on the pleadings. Accordingly, the Court **DENIES** Defendants' motion to dismiss Cress's third claim for relief to the extent it is based on the NEXO Token.

**D.      Securities Fraud Claims Under Corporations Code Sections 25401 and 25504.1**

As to Cress's claims for securities fraud under California Corporations Code sections 25401 and 25504.1, Defendants request the Court dismiss it on the same grounds as stated in its previous order. Cress does not address this in his opposition, other than to say he does not believe it is necessary to file an amended complaint that omits all dismissed claims. Opp'n at 24. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Cress's claims for securities fraud under California Corporations Code sections 25401 and 25504.1, except as to the alleged misrepresentation that the NEXO Token was registered with the SEC as a security. Dismissal is without leave to amend.

## V.      CONCLUSION

For the reasons stated above, the Court **ORDERS** as follows:

1) The Court **GRANTS** dismissal of all claims against Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, and Trenchev for lack of personal jurisdiction;

2) The Court **GRANTS** dismissal of Cress's UCL claim to the extent it is based on Nexo's alleged deceptive conduct in the sale of the NEXO Token and Cress's Nexo Earn Account, and also to the extent it is based on Nexo's advertised interest rates being available only to customers who maintain 10% of their portfolio balance in the NEXO Token or on Nexo's alleged failure to provide Cress notice before liquidating his assets;

3) The Court **GRANTS** dismissal of Cress's claims under California Corporations Code sections 25110 and 25503 to the extent it is based on the Earn Account and Leveraged Investment Instrument but **DENIES** dismissal of the claim to the extent it is based on the NEXO Token; and

4) The Court **GRANTS** dismissal of Cress's claims for securities fraud under California Corporations Code sections 25401 and 25504.1, except as to the alleged misrepresentation that the NEXO Token was registered with the SEC as a security.

Dismissal of these claims is **WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated: June 25, 2024

_____
THOMAS S. HIXSON
United States Magistrate Judge