James Taylor-Copeland (284743)
james@taylorcopelandlaw.com
Max Ambrose (320964)
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Phone: (619) 734-8770
Fax: (619) 566-4341

*Counsel for Plaintiff John Cress*

Ian S. Shelton (264863)
ianshelton@bakermckenzie.com
BAKER & MCKENZIE LLP
10250 Constellation Boulevard, Suite 1850
Los Angeles, CA 90067
Phone: (310) 299-8535
Fax: (310) 201-4721

Alexander P. Fuchs (*pro hac vice*)
alexfuchs@eversheds-sutherland.com
EVERSHEDS SUTHERLAND (US) LLP
1114 Avenue of the Americas, 40th Floor New York,
New York 10036
Phone: (212) 389-5082
Fax: (212) 389-5099

Michael Bahar (*pro hac vice*)
michaelbahar@eversheds-sutherland.com
EVERSHEDS SUTHERLAND (US) LLP
700 Sixth Street NW, Suite 700
Washington, DC 20001
Phone: (202) 383-0882
Fax: (202) 637-3593

*Counsel for Defendant Nexo Capital Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN CRESS, <br><br> Plaintiff, <br><br> v. <br><br> NEXO CAPITAL INC., <br><br> Defendant. | Case No. 3:23-CV-00882-TSH <br><br> **JOINT CASE MANAGEMENT STATEMENT** |

Plaintiff John Cress and Defendant Nexo Capital, Inc. ("Nexo" or "Defendant") submit this Joint Case Management Statement.

## 1. JURISDICTION & SERVICE

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiff and Defendant Nexo are citizens of different states or countries. The parties do not object to venue or dispute specific personal jurisdiction for purposes of this matter only.

## 2. FACTS

### A. Plaintiff's Brief Statement of Facts

Plaintiff brings this action against international crypto-lender Nexo to seek redress for the harm resulting from Nexo's fraudulent inducement of him to take out loans collateralized by millions of dollars in digital assets, which were ultimately sold ("liquidated") by Nexo. As described more fully in Plaintiff's First Amended Complaint, to induce Plaintiff to borrow against his deposited digital assets and invest in its own NEXO Token security, Nexo made false promises to Plaintiff regarding its services to "VIP" customers, which Plaintiff relied upon in deciding to borrow against, and thus put at risk of liquidation, his substantial digital asset holdings. Nexo also falsely represented that its NEXO Token was registered with the SEC as a security, when in fact NEXO failed to properly register the NEXO Token with the SEC or the California Commissioner of Financial Products. Plaintiff ultimately suffered substantial losses because of those misrepresentations when he was liquidated of substantially all his digital assets.

### B. Defendant's Response

Plaintiff John Cress is a sophisticated, accredited cryptocurrency investor who invested millions at the market peak using credit, believing prices will continue going up. Cress's investment strategy was incredibly risky—involving concentrated, leveraged bets on a few volatile cryptocurrency assets at an all-time-high price. After the market turned against Cress and his

cryptocurrency collateral was liquidated in 2021, Cress now claims that Nexo should insure his huge investment losses based on manufactured fraud allegations that the fact-finder should not accept.

In 2021, Nexo Capital Inc. was providing cryptocurrency services in the U.S. through the Nexo website and mobile app, including the ability to earn interest (in the form of additional cryptocurrency) on cryptocurrency deposited on the Nexo platform, and the ability to obtain secured credit lines at low interest rates by depositing cryptocurrency collateral. The only reason Nexo's customers could get multi-million dollar credit lines—at low interest rates and without any credit check—was because those credit lines were *secured* and Nexo could *liquidate* the collateral in a market downturn. Indeed, Cress specifically agreed to the terms and conditions ("T&Cs") governing his credit lines and Nexo account—which expressly provided for potential liquidation if the value of his collateral declined by too much.

Cress opened his Nexo account in March 2021. Initially, he transferred Bitcoin and Ether to a Nexo Savings Wallet in order to earn passive returns through Nexo's interest-bearing Earn Account or Earn Interest Product ("EIP"). This EIP product, now phased out of the U.S., paid interest on the depositor's cryptocurrency. Cress, however, had his eyes on a different Nexo product that could potentially earn him higher returns—Nexo's collateralized credit lines that he could use to engage in leveraged cryptocurrency investing. Cress lost no money using the EIP.

In early 2021, Cress took out multi-million dollar credit lines collateralized by his digital assets held on the Nexo platform. He used the proceeds of those credit lines to buy more cryptocurrency, hoping the price would continue to rise. Between the time Cress first joined the Nexo platform in March 2021 and when the majority of his assets were liquidated in June 2021, he had months to familiarize himself with Nexo's platform. He knew that his cryptocurrency assets used as collateral for his credit lines did not earn interest. He knew the responsiveness of his Nexo relationship manger based in Europe and corresponded with him frequently. He knew that he was getting lower interest rates on his credit lines because he held a certain percentage of Nexo Tokens in his portfolio. And, most importantly, he knew his collateral would be liquidated if his collateral precipitously declined in

value. Cress was willing to take this risk because he thought his holdings would continue increasing in value and that his returns would be amplified with leverage.

Cress "maxed out" his credit lines, buying cryptocurrency on Nexo's platform in March and April 2021. In May and June 2021, the price of Bitcoin plummeted by nearly 50%. Cress got upside down on his credit lines and his collateral was liquidated as the T&Cs stated. Those contractually authorized liquidations are the losses he seeks to recover in this lawsuit. Cress does not contest that Nexo had the contractual right to liquidate his collateral (he does not bring a breach of contract claim). Instead, unbelievable fraud allegations underlie all of his causes of action. Cress was a sophisticated, accredited cryptocurrency investor whose leveraged investment strategy failed due to bad market timing (investing using leverage at the peak of the market), not fraud by Nexo. Cress's fraud theory— based primarily on the idea that Nexo promised his collateral will never be liquidated despite the fact that the T&Cs state the opposite—should be rejected by the fact-finder. The facts will show that the other purported "false promises" that Cress relies upon are not actionable and have nothing to do with his decision to engage in leveraged cryptocurrency investing. The question for the fact-finder is whether Cress will be allowed to keep the upside of his risky investment strategy while forcing Nexo to insure the downside.

### 3. LEGAL ISSUES

The primary legal issues in dispute are as follows:

- Whether Defendants' alleged advertisements and statements regarding the NEXO Token, its services to "VIP" customers, and the terms of its lending and sales transactions with Plaintiff were false and/or misleading, whether such statements are otherwise actionable, and whether such claims are barred by Defendant's defenses.

- Whether certain transactions involving the NEXO Token qualify as securities transactions for purposes of California's securities laws, whether such transactions are actionable under those statutes, whether Plaintiff suffered any damages recoverable under those statutes, whether such claims are preempted by federal law, and whether such claims are barred by Defendant's defenses.

JOINT CASE MANAGEMENT STATEMENT - Case No. 3:23-CV-00882-TSH

- Whether Cress's UCL claim is barred because Cress has an adequate remedy at law, and whether his UCL claim is barred by Defendant's defenses.

- The parties reserve their rights to raise other legal issues at summary judgment or trial, including issues that might come to light during discovery.

## 4. MOTIONS

On October 10, 2023, this Court granted in part and denied in part Defendants' motion to dismiss (ECF No. 26). That order granted Plaintiff leave to amend, and he filed a First Amended Complaint (ECF No. 29), which Nexo moved to dismiss (ECF No. 32). The Court granted in part and denied in part Nexo's motion to dismiss the First Amended Complaint (ECF No. 37). Defendants answered the First Amended Complaint on July 23, 2024. There are no motions pending now, though both parties anticipate filing motions for summary judgment.

## 5. AMENDMENT OF PLEADINGS.

Plaintiff filed an Amended Complaint on November 10, 2023. Presently, he does not expect to add or dismiss parties or claims. Nexo filed its Answer to the Amended Complaint on July 23, 2024, and Nexo reserves the right to amend its answer as of right and without leave of Court by August 13, 2024, as authorized by Rule 15(a)(1). Aside from that potential amendment of its Answer, Nexo does not anticipate further amendment to add or dismiss parties or claims.

## 6. EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred during the parties' Rule 26(f) conference regarding reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

## 7. DISCLOSURES

The parties have agreed that they will serve their respective initial disclosures by August 19, 2024. The parties have agreed that Fed. R. Civ. P. 37(c)(1) sanctions will not be sought and should not be imposed if initial disclosures are supplemented in a timely fashion under Fed. R. Civ. P. 26(e).

## 8. DISCOVERY

### A. Discovery Taken to Date

As of this date, the parties have served requests for production of documents and interrogatories on each other, but the deadline to respond to that discovery is in the future.

### B. Scope and Phasing of Anticipated Discovery

#### 1. Plaintiff's Position

Plaintiff intends to conduct discovery concerning Nexo's creation, promotion, and sales of the NEXO Token, and Nexo's communications concerning the same. Plaintiff additionally plans to conduct discovery concerning Nexo's lending platform, Nexo's "VIP" program, and all transactions entered into between Nexo and Plaintiff, and Nexo's communications concerning the same.

#### 2. Defendants' Position

Defendant anticipates the scope of discovery should be narrow, as the case involves discrete communications, events and transactions between Defendant and Plaintiff, a single individual, over the course of 3 months in 2021. Defendant intends to conduct discovery concerning Plaintiff's status as an accredited investor, his investment experience, and his decisions associated with his investments on the Nexo platform. Defendant also anticipates conducing discovery concerning Plaintiff's knowledge and understanding of various topics including, but not limited to, the services offered by Defendant, and the risks associated with the transactions he conducted on the Nexo platform.

### C. Protective Order

The parties are submitting a stipulated Protective Order concurrently with this statement, which is based on the model two-tier protective order available on the Court's website. The parties respectfully request that the Court enter the attached stipulated Protective Order at its earliest convenience.

### D. Proposed Limitations or Modifications to Discovery Rules.

*Depositions*. The parties do not currently foresee the need for relief from the limitation on the number of depositions as set forth in Rule 30(a)(2), but reserve the right to seek relief from the limitation should discovery so warrant. The parties do not propose any modifications or limitations to the other discovery rules at this time.

JOINT CASE MANAGEMENT STATEMENT - Case No. 3:23-CV-00882-TSH

*Document Subpoenas to Non-Parties*. The parties agree as follows with respect to nonparties producing materials in response to Fed. R. Civ. P. 45 document subpoenas in this action. The issuing party shall request that non-parties simultaneously produce materials to both Plaintiff and Defendant. If, notwithstanding such request, the non-party does not produce the materials to both sides or production to both sides by the non-party would create a potential issue in enforcing compliance with the subpoena, the issuing party shall provide a copy of all materials to the other side within three business days after receipt of the materials from the non-party, subject to any limitations in the Protective Order. If a party modifies or extends the time to respond to a Fed. R. Civ. P. 45 document subpoena (whether orally or in writing), it shall simultaneously notify the other party of that that extension, modification, or explanation, including providing copies of any written agreements regarding modification or extension.

*Authenticity Presumptions*. Documents produced by Plaintiff and Defendant in this action shall be presumed to be authentic within the meaning of Fed. R. Evid. 901. If a party serves a specific good-faith written objection to the authenticity of a document that it did not produce from its files, the presumption of authenticity will no longer apply to that document. Any objection to a document's authenticity must be provided with (or prior to) the exchange of objections to trial exhibits. The parties will promptly meet and confer to attempt to resolve any objections. The Court will resolve any objections that are not resolved through this means or through the discovery process.

*Service*. Service of any documents not filed via ECF, including pleadings, discovery requests, subpoenas for testimony or documents, expert disclosure, and delivery of all correspondence, whether under seal or otherwise, shall be by email to all attorneys of record for the receiving party; the parties will provide each with "service lists" that can be used to serve documents. In the event the volume of served materials is too large for email and requires electronic data transfer by file transfer protocol or a similar technology, or overnight delivery, the serving party will telephone or email the other side's principal designee when the materials are sent to provide notice that the materials are being served. For purposes of calculating discovery response times under the Federal Rules of Civil Procedure, electronic delivery shall be treated the same as hand delivery.

JOINT CASE MANAGEMENT STATEMENT - Case No. 3:23-CV-00882-TSH

### E. Stipulated E-Discovery Order

The parties have not filed a stipulated E-Discovery Order yet, but anticipate that they will submit a stipulated E-Discovery Order for the Court's entry in the near future. Plaintiff provided a draft E-Discovery Order to Defendant on July 30, 2024. If Plaintiff and Defendant are not able to agree to a stipulated E-Discovery Order by the time of the Case Management Conference, the parties propose that any dispute regarding the E-Discovery Order be resolved by submitting a joint statement of not more than five pages setting forth each party's position and each party's final proposed compromise in compliance with this Court's Discovery Standing Order. The parties agree that any such joint statement shall be submitted no later than August 22, 2024.

### F. Proposed Discovery Plan

The parties' proposals concerning discovery timing are set forth in Section 17 (Proposed Case Schedule) below.

### G. Current Discovery Disputes

There are no discovery disputes at this time.

### 9. CLASS ACTIONS

Plaintiff does not intend to seek to proceed as a class action at this time. Defendant maintains that this action is not a class action and oppose any future amendment to add class claims.

### 10. RELATED CASES

The parties are currently unaware of any related cases.

### 11. RELIEF

Plaintiff seeks damages to the maximum extent authorized by applicable federal and state law, including punitive damages.  He also seeks injunctive, other equitable relief as the Court may deem just and proper, and costs and attorney's fees.

Defendants do not presently claim any damages or relief in this action, and dispute that Plaintiff is entitled to any form of damages or relief.

### 12. SETTLEMENT AND ADR

JOINT CASE MANAGEMENT STATEMENT - Case No. 3:23-CV-00882-TSH

The parties previously attended mediation on December 6, 2023, with the Honorable William McCurine, Jr., Retired Federal Magistrate Judge for the United States District Court for the Southern District of California.  The parties were unable to resolve the case. Further private mediation may be useful following additional discovery. The Parties filed ADR certifications pursuant to ADR L.R. 3-5 on May 16, 2023 (ECF Nos. 20, 22).

### 13. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties previously consented to a magistrate judge conducting all further proceedings in this case.

### 14. OTHER REFERENCES

The parties do not believe this case is suitable for reference to binding arbitration or a special master.

### 15. NARROWING OF ISSUES

The parties will consider issues that can be narrowed by agreement or by motion, as well as potential means to expedite the presentation of evidence at trial.

### 16. EXPEDITED TRIAL PROCEDURE

The parties agree that this case is not suitable for handling under the Expedited Trial Procedure of General Order No. 64.

### 17. PROPOSED CASE SCHEDULE

The parties have agreed upon the following proposed case schedule below. Nexo proposes that the final pretrial conference and trial be scheduled following resolution of summary judgment, which could dispose of the entire case or substantially narrow the issues that would be decided at trial.

| Event | Proposal Deadline |
| --- | --- |
| Initial Disclosures | August 19, 2024 |
| Initial Case Management Conference | August 15, 2024 |
| Close of Fact Discovery | August 29, 2025 |
| Opening Expert Reports | June 30, 2025 |
| Rebuttal Expert Reports | July 31, 2025 |

JOINT CASE MANAGEMENT STATEMENT - Case No. 3:23-CV-00882-TSH

| Close of Expert Discovery | August 29, 2025 |
|---|---|
| Last Day to File Dispositive Motions | October 3, 2025 |
| Summary Judgment Oppositions | November 3, 2025 |
| Summary Judgment Replies | December 3, 2025 |
| Hearing on Dispositive Motions | December 18, 2025 at 10:00 a.m. |
| Final Pretrial Conference | Plaintiff's Proposal: April 16, 2026 at 10:00 a.m. Defendant's Proposal: To Be Scheduled Following Resolution of Summary Judgment |
| Trial | Plaintiff's Proposal: May 18, 2026 Defendant's Proposal: To Be Scheduled Following Resolution of Summary Judgment |

## 18. TRIAL

The case will be decided by a jury trial.  Plaintiff currently estimates the trial in this case to last 10-14 days.  Defendants position is that the trial will last 5-10 days depending on the issues remaining after summary judgment.

## 19. DISCLOSURE OF NON-PARTY INTEREST ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-15, Plaintiff filed a Certification of Interested Entities or Persons. (ECF No. 41). Pursuant to Civil L.R. 3-15, the undersigned counsel for Defendant certifies that as of this date, there is no conflict or interest (other than the named parties) to report.

## 20. PROFESSIONAL CONDUCT

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Dated: August 8, 2024

By: /s/ Max Ambrose
Max Ambrose (320964)
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Phone: (619) 734-8770
Fax: (619) 566-4341

Counsel for Plaintiff John Cress

By: /s/ Ian S. Shelton
Ian S. Shelton (264863)
ianshelton@bakermckenzie.com
BAKER & MCKENZIE LLP
10250 Constellation Boulevard, Suite 1850
Los Angeles, CA 90067
Phone: (310) 299-8535
Fax: (310) 201-4721

Counsel for Defendant Nexo Capital Inc.

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

DATED: August 8, 2024                                        /s/Max Ambrose
                                                             Max Ambrose

10
JOINT CASE MANAGEMENT STATEMENT - Case No. 3:23-CV-00882-TSH