January 24, 2025

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:    *John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH
         SUPPLEMENTAL JOINT DISCOVERY LETTER REGARDING PLAINTIFF'S RFPs

Dear Judge Hixson:

Pursuant to the Court's January 10, 2025 Discovery Order (Dkt. 55), Plaintiff John Cress ("Plaintiff") and Defendant Nexo Capital, Inc. ("Defendant") submit this joint letter regarding. The parties have met and conferred in good faith prior to filing this letter, including by Zoom meeting and the exchange of letters and emails.

**Attestation**

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred telephonically and in good faith to resolve the disputes set forth below.


Dated: January 24, 2025                    TAYLOR-COPELAND LAW

                                           By: /s/ James Taylor-Copeland

                                           Attorneys for Plaintiff


Date: January 24, 2025                     BAKER & MCKENZIE LLP

                                           By: /s/ Ian S. Shelton

                                           Attorneys for Defendant

0

**Plaintiff's Position**

On January 10, 2025, this Court ordered Defendant Nexo Capital Inc. ("Nexo") "to produce an organizational chart and other information that will allow Plaintiff to identify relevant custodians and non-custodial sources." ECF 55. The Court noted that it thought that "many of the RFPs at issue . . . are relevant, but to mitigate burden the Court likely would restrict document searches to a reasonable number of custodians and non-custodial sources." *Id*. A week later, Nexo produced four corporate registers showing Nexo's directors and officers (the "Nexo List"), and one spreadsheet from Nexo's affiliate, NDS EOOD ("NDS") showing an alphabetically ordered list of more than 200 employees (the "NDS List"). Nexo represents that NDS is the corporate entity staffed to run its borrowing and lending platform, and that Nexo itself does not have employees.

Neither the Nexo List nor the NDS List describe the organizational structure of either entity, i.e. reporting lines showing who reports to whom. *Mkt. Lofts Cmty. Assoc. v. Nat'l Union Fire Ins. Co.,* 2016 U.S. Dist. LEXIS 188073, at *20 (C.D. Cal. Mar. 9, 2016) (an organizational chart should show "the chain of command and the company structure by line and level of authority."); *Hicklin v. Hartford Life & Accident Ins. Co.*, 2007 U.S. Dist. LEXIS 96059, at *31 (C.D. Cal. Dec. 11, 2007) (same). The NDS List contains only custodian names, job titles, and departments, leaving Plaintiff in the dark on reporting lines and thus complicating his ability to identify key custodians.

The NDS List is also limited to two days in mid-2021 (March 1, 2021 and June 22, 2021). Plaintiff requested that Nexo provide organizational charts for 2018-2020 to identify key custodians relating to its NEXO token sale, promotion of NEXO, and creation of the VIP Program and LRP. Nexo's own 2018 Whitepaper highlights the insufficiency of the NDS List, as it identifies key employees and officers missing from Nexo's NDS List that were involved in Nexo's $50+ million NEXO Token sale,[1] described as a "US SEC-compliant Dividend-paying Asset-backed Security Token."[2] Despite Plaintiff's requests, Nexo has refused to provide any additional information relating to Nexo or NDS' organizational structure, and has refused to provide any information relating to any NDS custodians before 2021.[3]

Despite these critical deficiencies in Nexo's production, Plaintiff was nevertheless able to identify 32 custodians in nine departments that are highly likely to have documents relevant to Plaintiff's securities and fraud claims. Courts often approve searches of more than 30 custodians, particularly where the amount in controversy is in the millions. *Oracle Corp. v. SAP AG*, 2008 U.S. Dist. LEXIS 88319, at *7 (N.D. Cal. July 3, 2008) (permitting search of 120 custodians); *Tremblay v. Openai, Inc.*, 2024 U.S. Dist. LEXIS 135637, at *4 (N.D. Cal. July 31, 2024) (setting the initial number of custodians at 24 and permitting more on a showing of relevance); *Thomas v. Starz Entm't, LLC*, 2017 U.S. Dist. LEXIS 60808 , at *2 (C.D. Cal. Apr. 5, 2017) (granting search of 20 custodians in a wrongful termination case alleging $150,000 in lost wages); *See also id*. at Dkt. 1 at 12; *United States v. Allergan, Inc.,* 2021 U.S. Dist. LEXIS 51853, at *5 (C.D. Cal. Mar. 1, 2021) (increasing custodian total from 31 to 52).

Nexo has acknowledged that custodians in the following departments have information relating directly to Plaintiff: Sales, Trading, Risk & Payments, and Legal, and agreed to search ten custodians within these departments and eight non-custodial sources.[4] Additionally, as set forth below, custodians in Nexo's marketing, media/PR, and management departments are also nearly certain to possess critical

---

[1] https://www.securities.io/wp-content/uploads/2022/04/NEXO.pdf at 47-50.
[2] https://github.com/Cryptorating/whitepapers/blob/master/Nexo/NEXO-Token-Terms.pdf.
[3] The critical importance of documents and communications from the 2018-2020 timeframe is set forth more fully in the initial Joint Letter. ECF 54 at 2-4.
[4] Plaintiff communicated directly with nearly ten people in Nexo's Customer Support Department. However, given Nexo's agreement to search noncustodial sources reflecting its customer service communications, Plaintiff is willing to forego search of any specific custodians in Customer Service, without prejudice to his right to later seek to add specific custodians if Nexo's production suggests they are likely to possess unique relevant documents.

1

documents. Plaintiff has identified 22 additional custodians and two additional non-custodial sources highly likely to possess documents relevant to Plaintiff's claims, and Nexo's defenses. Nexo refuses to search any of them.[5]   The attached **Exhibit 1** shows each of the custodians at issue in further detail. Plaintiff lists the custodians by department, and within each department, in the order that he believes are most critically relevant to his claims based on the limited information provided by Nexo.

**Sales.** Nexo's Sales team runs Nexo's VIP program. Each member of Nexo's nine-person Sales team is thus highly likely to have documents relevant to that VIP program and LRP.  Nexo acknowledges that half of its sales department has information directly related to Plaintiff (**Hristov, Dinca, Rakshiev, and Stanev**). It has agreed to include these custodians. However, it has refused to include other members of the sales team, even though several of them signed purported "Liquidation Relief Agreements" on behalf of Nexo (**Paladino, Vatkov, and Mrozinski**). It has also refused to include **Atanasova** who is publicly identified as Nexo's co-founder[6] and a "VIP Relations Manager."

**Marketing; Media/PR.** Nexo's Marketing and Media/PR departments are very likely to have documents relevant to both marketing of Nexo's VIP Relationship Program, LRP, and its offers and sales of the NEXO Token. Marketing communications are critical to Plaintiff's fraudulent inducement claims (e.g., Nexo's marketing tactics meant to induce Plaintiff and others into taking out loans with Nexo), and to the *Howey* and Risk Capital analyses, which focus on Nexo's marketing efforts of the NEXO Token.  *Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009) ("courts conduct an objective inquiry" focused "on what the purchasers were 'led to expect.'"). Nexo has refused to search a single custodian from Marketing or Media/PR despite these departments clearly having highly relevant documents (i.e. it is these departments that are likely responsible for creating the VIP Brochure, the LRP, and the NEXO Whitepaper and other NEXO Token marketing materials).  Plaintiff seeks to include **Dimitrova** (Marketing Project Manager), **Shanov** (Direct Marketing Specialist), **Lazarov** (Content Marketing Specialist), **Kostadinov** (Head of Marketing), **Hristova** (Copywriter and Nexo's current PR manager), **Agova** (Head of PR), **Marinov** (Social Media Manager), and **Angelov** (Community Manager) as custodians likely to have critical documents.

**Officers and Directors.**  **Kosta Kantchev, Atoni Trenchev**, and **Georgi Shulev** were Directors of Nexo during its 2018 Token sale.  Trenchev signed Nexo's Form D Notices, solicited investments and responded to investment inquiries of the NEXO Token directly through his Nexo email account,[7] and signed the agreement whereby Nexo sold millions of dollars of NEXO Token securities to Plaintiff.[8] Trenchev along with **Kalin Metodiev** were also officers of Nexo during the 2021. Similarly, Kosta Kantchev, **Badezhda Ivanova**, and **Vasil Petrov** served as officers of both Nexo Capital Inc. and of NDS in 2021.[9]  *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946-47 (directors and officers have "access to information not generally available to others" in the issuance of securities.).

Nexo's Whitepaper, published around the time of the NEXO Token sale, described Trenchev, Kantchev, and Shulev as Nexo's Managing Partners, described Petrov as Nexo's CTO, and described Metodiev as

---

[5] Nexo also argues that Plaintiff's search terms would impose undue burden.  In response, Plaintiff has significantly narrowed those terms, and has offered to further meet and confer to further narrow search terms when Nexo can provide hard data regarding the number of hits on terms within the custodians' files.

[6] https://nexo.com/blog/people-fundamentals-7-teodora-atanasova-on-chain-activism-choosing-nexo-over-vienna

[7] https://medium.com/nexo/update-on-the-nexo-token-sale-995e9c21e22b.

[8] While Nexo argues it has agreed to search all custodians which communicated directly with Plaintiff, this is simply untrue. In a March 25, 2021 email, Trenchev writes to Plaintiff, "Dear Client, Please find attached the Cryptocurrency Purchase Agreement and sign it at your earliest convenience. Best regards, Antoni Trenchev[,] Managing Partner | Nexo[.]" Trenchev personally signed this agreement.

[9] NDS' Management is also relevant to Plaintiff's fraud and securities claims, because Management presumably runs the business and oversees other relevant departments.  **Trayan Nikolov** (COO) of NDS is thus likely to have relevant documents.

working in Nexo's Corporate Finance department.[10]  In addition, Nexo advertises that its periodic issuance of dividends to NEXO Token holders is done with board approval.[11]

**Trading.** Nexo's trading department is highly likely to have documents and communications showing how Nexo handled Plaintiff's OTC Desk purchases of NEXO, BTC, and ETH. These documents are relevant to both Plaintiff's fraud and securities claims.  Nexo has identified four custodians in its trading department with information directly relevant to Plaintiff **(Edward Tonkov, Martin Pavlov, Ognyan Pankov, and Tvetan Videlov).**  However, Nexo has refused to include **Tom Stanev**, despite the fact that he was "Head of Trading," i.e., ran the trading department.

**Risk and Payments; Legal.** Nexo has admitted that Mustafa Aliev (payments specialist) and Bozhdar Dobrev (Compliance) have information relevant to Plaintiff's claims. Nexo has refused to provide additional detail regarding reporting lines in its Risk and Payments and Legal departments. Plaintiff requests that Nexo be ordered to provide these lines and identify which custodians, if any, are attorneys so that Plaintiff can properly evaluate whether additional custodians are likely to have key documents.

Nexo should be ordered to search the sources identified on Ex. 1 for responsive documents and communications. It should also be ordered to produce at least one organizational chart showing reporting lines for 2018, 2019, 2020, and 2021.

**Defendant's Position**

The Court ordered: (1) production of an org chart for Nexo Capital Inc. ("Nexo"); and (2) a meet and confer between the parties to identify a reasonable number of custodians and non-custodial sources. Dkt. 55. Nexo has complied with the Court's Order and proposed a reasonable number of 18 custodians.

## 1.  Organizational Chart

On January 17, 2025, Nexo produced org charts for Nexo and NDS EOOD ("NDS"). NDS is a Bulgarian affiliate that provided certain outsourced services to Nexo. The produced NDS chart shows the full names, job titles, and department of all individuals who worked at NDS in March 2021 (when Cress created his account) and June 2021 (his last liquidation)—the relevant time period for this litigation. Nexo also produced a Nexo org chart showing officers and directors in 2018, 2021, and 2023.[12]

Plaintiff raised two complaints about the org charts. First, Plaintiff argued the charts did not provide enough detail regarding reporting structure. Second, he claimed that they were incomplete because they did not include people employed at different times. First, Nexo is not required to create an org chart in the specific format demanded by Plaintiff.[13] Instead, Nexo extracted the NDS list from its historical HR records in the manner they are maintained by the business. Second, an org chart is a snapshot in time. Nexo provided org charts covering two relevant time periods for NDS, and three periods for itself.

---

[10] https://www.securities.io/wp-content/uploads/2022/04/NEXO.pdf .

[11] https://nexo.com/blog/interim-dividend-for-nexo-token-holders-approved.

[12] Nexo does not have its own employees beyond its officers and directors.

[13] *See, e.g.*, *Ujhelyi v. Vilsack*, 2014 U.S. Dist. LEXIS 142087, at *12 (N.D. Cal. Oct. 6, 2014) ("A party, however, is not required to create a document where none exists."). Plaintiff cites *Symantec Corp. v. Zscaler, Inc*, 2019 U.S. Dist. LEXIS 120152 (N.D. Cal. July 18, 2019) (Hixson, J.), but nothing in that opinion held that a party must create a custom org chart to the other party's specifications. Plaintiff also cites *Mkt. Lofts Cmty. Assoc. v. Nat'l Union Fire Ins. Co*, 2016 U.S. Dist. LEXIS 188073 (C.D. Cal. Mar. 9, 2016), for the proposition that an org chart must show "the chain of command and the company structure by line and level of authority." However, that quote was from the request for production issued by a party and was not a statement from the court.

3

### 2.  Relevant Custodians

Nexo has worked diligently to identify relevant custodians for discovery. But at every turn, Plaintiff's only response is "more." After a diligent search, Nexo has identified **18 custodians** likely to have relevant information regarding Cress. Never satisfied, Plaintiff instead requested **42 custodians**, including every officer and director of Nexo and the C-suite of NDS, and further requested a meet and confer regarding the demanded inclusion of **102 additional custodians**. This is a case involving a single plaintiff—Cress—and alleged misrepresentations made to him. The allegations do not justify such an excessive number of custodians.

#### a.  Nexo's Proposal

After a reasonable investigation, Nexo identified 18 custodians who may have relevant information relating to Plaintiff's claims.[14] Nexo's proposed custodian list includes four persons from Sales, including the Head of Sales; four persons from Trading, including the Trading Operations Manager; the Senior Payments Specialist from Risk & Payments; and a person from Compliance. In addition, Nexo agreed to produce documents from the general emails for Business Development, Risk & Payments, KYC, Operations, OTC, Customer Support, and Sales. Nexo believes the documents from these custodians will cover all of the claims and defenses in this litigation.

#### b.  Cress's Response

In response, Plaintiff used Nexo's org charts and identified 42 custodians, adding 24 additional custodians to Nexo's proposed 18. Plaintiff's stated justifications for the 24 additions were speculative, cumulative, and premature. Seven additional custodians are the five officers and directors of Nexo, plus the CFO and COO of NDS. None have a direct connection to Cress, and there is no reason at this stage of discovery to add apex custodians. The remainder are cumulative to what Nexo has already offered— Plaintiff wants five more custodians from marketing, four more custodians from media/PR, four more custodians from sales, and one more custodian from trading, without any showing that these custodians have non-cumulative information. Nothing prevents Plaintiff from re-approaching Nexo with reasonable requests to add targeted custodians beyond the proposed 18 if discovery indicates they have relevance, connection to the dispute, and non-cumulative information. But **starting** with 42 custodians (let alone 144) is premature and, given the amount of data involved, will **hinder** the production of responsive information. Nexo's counsel can attest from recent experience that pulling the custodial files of 42 custodians could easily involve processing of over four terabytes of data.

#### c.  Proportionality

Not only does Plaintiff want between 42 and 144 custodians, he has also identified **over 100 search terms** to be applied to these custodians. And Plaintiff wants the search to extend for **seven years**—from 2018 to the present. As the Court knows, each additional custodian, search term, and year of data serves to exponentially increase the costs of discovery.[15] "[T]he parties and the court have a collective

---

[14] In addition, Nexo identified proposed non-custodial sources in its October 29, 2024 meet and confer letter: (1) custodian-specific email; (2) custodian-specific cloud storage; (3) Slack or other company-approved methods of communication; (4) Nexo's sales and support ticketing systems; and (5) Nexo's website and blogs.

[15] In a recent case handled by Nexo's counsel, there were thirty custodians and targeted search terms for a nine-figure dispute. The client was required to gather and process over 3.5 terabytes of data and approximately 200,000 documents were manually reviewed. Even with a large contract review team, just this portion of discovery took months and cost over $1 million. Nexo contends that Plaintiff's alleged

responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Kovalenko v. Kirkland & Ellis LLP*, 2024 U.S. Dist. LEXIS 27632, at *5 (N.D. Cal. Feb. 16, 2024). This proportionality analysis applies to whether to add a document custodian or limit custodians. *See In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2021 U.S. Dist. LEXIS 264066, at *31 (N.D. Cal. Nov. 14, 2021).[16] Plaintiff's requests fail to uphold his requirements under Rule 26.

### 3. Nexo's Position

The Court should order discovery to proceed based on the 18 custodians proposed by Nexo who have some connection to Cress. If Plaintiff identifies during the course of discovery that a reasonable number of additional custodians should be added, the parties will meet and confer regarding potential additions based on an **actual showing** of need and non-cumulative relevance, as Rule 26 requires.

The overbreadth of Plaintiff's proposed custodians matches the overbreadth of his proposed RFPs, as reflected in Appendix 1 of the Joint Discovery Letter (Dkt. 54-1). While Cress claims that every Nexo Token transaction from 2018 to present is relevant, Cress did not participate in the 2018 ICO, and the "investment contract" securities status of the Nexo Token is based on his specific Nexo Token transactions at issue, which occurred between March and June 2021.[17] Further, communications with other customers are irrelevant to whether statements made to Cress were fraudulent.[18] On the contrary, the relevant facts are those related **to Cress**, his specific interactions with Nexo, and his transactions on the Nexo platform. And even assuming these ancillary matters are marginally relevant, they are not proportional to the needs of the case. Nexo asks the Court to order Plaintiff to substantially narrow the scope of his RFPs in Appendix 1, and to meet and confer to narrow the scope of Plaintiff's search terms and date ranges to create a manageable number of hits for review.

---

damages from his securities claims is at most in the very low seven figures, yet those low-value securities claims drive Plaintiff's overbroad discovery demands.

[16] Plaintiff's citations in his January 22, 2025 letter are inapposite. Plaintiff asserts that in *Oracle Corp. v. SAG AG*, 2008 U.S. Dist. LEXIS 88319, at *3 (N.D. Cal. July 3, 2008), the court permitted the search of 120 custodians, but Plaintiff fails to mention that defendant agreed to 115 custodians. In *Tremblay v. OpenAI, Inc.*, 2024 U.S. Dist. LEXIS 135637, at *1 (N.D. Cal. July 31, 2024), plaintiffs only requested 28 custodians, although they identified 43 potential custodians. Moreover, the court in *Tremblay* referred to "non-cumulative, unique documents or information that would justify enlarging the list of custodians"—these do not exist here. *Id.* In *Thomas v. Starz Ent'mt, LLC*, 2017 U.S. Dist. LEXIS 60808, at *2 (C.D. Cal. Apr. 5, 2017), the court ordered production from 20 custodians. While Plaintiff claims that case only involved $150,000, that is inaccurate. *See id.* at Dkt. 1, at 12 (emotional distress damages in the millions). Finally, in *U.S. v. Allergan, Inc.*, 2021 U.S. Dist. LEXIS 51853, at *2-5 (C.D. Cal. Mar. 1, 2021), the court ordered between 31-52 additional custodians based on a showing of need, but limited the search terms for the newly added custodians. None of these resemble Plaintiff's demanded, unreasonable additional discovery.

[17] *See SEC v. Binance Holdings Ltd.*, 2024 U.S. Dist. LEXIS 114924, at *23-24, *46 (D.D.C. June 28, 2024) ("investment contract" inquiry of crypto token is based on the facts and circumstances of the specific transactions at issue and "what motivated the reasonable purchaser at the time").

[18] *See Russell v. Maman*, 2020 U.S. Dist. LEXIS 258215, at *15-16 (N.D. Cal. Apr. 10, 2020) ("Embedded in the concept of causation in a fraud claim is the requirement of actual reliance *by plaintiff* on the misrepresentation . . . Here, TP Plaintiffs allege that TP Defendants told lies to Russell, who in turn relied on them. This is different than actual reliance by TP Plaintiffs, which is required to state a claim for fraud under California law.").