UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CRESS,<br><br>        Plaintiff,<br><br>v.<br><br>NEXO CAPITAL INC.,<br><br>        Defendant. | Case No. 23-cv-00882-TSH<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 53, 56 |

The parties have a dispute concerning Plaintiff's interrogatory ("rog") 3, which seeks information concerning "each sale of NEXO." The principal dispute is whether Plaintiff may obtain the requested information concerning all sales of the NEXO Token everywhere in the world, or whether only sales in the United States are discoverable.

Plaintiff offers two primary theories of relevance for global sales. The first is Nexo's affirmative defense of federal preemption. So, let's turn to federal law. "In general, Sections 5(a) and (c) of the Securities Act [of 1933] prohibit the sale of unregistered securities. However, there are certain exemptions from the registration requirement. 15 U.S.C. §§ 77e(a) & 77e(c)." *Esebag v. Whaley*, 2020 WL 7414734, *10 (C.D. Cal. Sept. 8, 2020). For example, Section 4(a)(2) provides that "[t]he provisions of section 77e of this title shall not apply to . . . transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(a)(2). Rule 506 of Securities Regulation D specifies the circumstances for this private offering registration exemption. 17 C.F.R. § 230.506. Pursuant to Rule 506(c), when all purchasers are "accredited investors" and the issuer takes reasonable measures to verify that the purchaser is an accredited investor, the security offering is exempt from the registration requirement. *See* 17 C.F.R. § 230.506(c); *Esebag*, 2020 WL 7414734, *10.

Plaintiff's third claim for relief alleges that NEXO sold the Nexo Token as an unregistered security in violation of California Corporations Code sections 25110 and 25503. This claim is preempted by federal law if the Nexo Token is a "covered security." More specifically, the National Securities Markets Improvement Act ("NSMIA") prohibits states from requiring the registration or qualification of a "covered security," as defined by federal law. 15 U.S.C. § 77r. A "covered security" includes a security in a transaction that is exempt from registration under Security and Exchange Commission ("SEC") rules or regulations. 15 U.S.C. § 77r(b)(4)(D); *see generally Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 910 (6th Cir. 2007) ("offerings" that "actually qualify for a valid federal securities registration exemption . . . enjoy NSMIA preemption"). Thus, if the NEXO Token is exempt from registration under Rule 506(c), Plaintiff's third claim for relief is preempted. In other words, the exemption in Rule 506(c) both exempts the covered security from the reach of Section 5 under federal law and preempts the application of a registration requirement under state law.

Plaintiff argues that because Rule 506(c) says that "all" purchasers of securities must be accredited investors, that means all purchasers in the world. Nexo argues that only domestic sales count. Neither side cites any statute, regulation, or case law squarely addressing this issue.

Let's think about this. Rule 506(c) is an exemption from a prohibition, namely, the prohibition on the sale of unregistered securities. The prohibition is contained in Section 5 of the Securities Act. 15 U.S.C. § 77e. Per SEC regulation, "[f]or the purposes only of section 5 of the Act (15 U.S.C. § 77e), the terms offer, offer to sell, sell, sale, and offer to buy shall be deemed to include offers and sales that occur within the United States and shall be deemed not to include offers and sales that occur outside the United States." 17 C.F.R. § 230.901. So, sales outside the United States don't need the exemption in Rule 506(c) because Section 5 doesn't apply to them in the first place. *See Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 268-69 (2010) (Securities Act of 1933 does not apply to sales outside the United States). The Court therefore thinks "all" purchasers in Rule 506(c) means purchasers in the United States. It would be strange to think that the applicability of an exemption to Section 5 would turn on foreign sales that are

2

none of Section 5's concern in the first place.[1]

So, if sales outside the United States do not affect the outcome of the federal preemption analysis, are they irrelevant? Not necessarily. Often when a company sells something, it is selling the same thing to people everywhere. How likely is it that Nexo sold the Nexo Token in Canada, Europe and Latin America as a public offering, but not as a public offering in the United States? Not very likely. Consider the case of *SEC v. Telegram*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020), in which the Court made clear there were U.S. sales (*id*. at 361), but then looked at Telegram's global conduct in the offering at issue to apply the *Howey* test to determine if Telegram was offering a security, and if so, whether it was exempt. *Id*. at 368-382 (analyzing sales to the 175 initial purchasers, who were mostly foreign). Here, too, the whole of Nexo's offering around the world could be evidence of its offering in the United States.

Now let's turn to Plaintiff's second primary theory of relevance, which is the *Howey* test to determine if the Nexo Token was a security in the first place. Because the referenced provision of the California Corporations Code only applies to offers or sales "in this state," Cal. Corp. Code § 25110, only offers or sales in California can give rise to liability. But that doesn't seem to resolve the discovery dispute either. It's hardly likely that the Nexo Tokens sold in California were any different from the ones sold in any other state or anywhere else in the world. Thus, evidence of what the Nexo Tokens were could be relevant to the *Howey* inquiry no matter where the sales took place.

But at the same time, Rule 26 does not provide for discovery of everything that might be relevant because discovery must also be "proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1).

With these principles in mind, let's turn to rog 3. It asks for eight pieces of information for

---

[1] Plaintiff cites *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 181 (S.D.N.Y. 2020) for the proposition that "all" sales that are part of the same Regulation D offering must meet all of the terms and conditions of Regulation D. Plaintiff then argues that even if certain sales to unaccredited investors outside the U.S. are not relevant to the Rule 506(c) analysis, the Court will still need to determine whether those transactions are integrated with Nexo's U.S. sales. But Plaintiff cites nothing to support the proposition that non-U.S. sales that are outside the scope of the Securities Act should be included in an integration analysis, and as explained above, the word "all" doesn't constitute that explanation.

"each sale of NEXO":

        a. The date and time of the sale;

        b. The quantity of NEXO sold;

        c. The sale price;

        d. The place where the transaction was authorized;

        e. The order number of the sale (if any);

        f. The exchange on which the sale occurred (if any);

        g. The counterparty (if known); and

        h. (By Bates number) the contract pursuant to which the NEXO was sold (if any)

The Court thinks that for this transaction-level information, sales outside the United States are not proportional to the needs of the case. Rog 3 seeks highly detailed information about each particular sale, such as the date and time, price, quantity, order number, and so on. It's hard to see how this type of information for foreign sales would be relevant either to federal preemption or to the *Howey* test. The counterparty for U.S. sales would be relevant to determining if they were all accredited investors. Knowing the counterparty for all foreign sales could shed light on whether Nexo was selling Nexo Tokens only to accredited investors in general, but that would at most be indirect or duplicative evidence of what Nexo was doing in U.S. sales. U.S. sales should be sufficient to show if Nexo's sales come within Rule 506(c). The Court does not want to limit the evidence relevant to the *Howey* inquiry to California, but is also skeptical that transaction-level data for every sale in the world contributes much to the *Howey* analysis. Accordingly, the Court **DENIES** Plaintiff's motion to compel evidence of non-U.S. sales in response to rog 3.[2]

**IT IS SO ORDERED.**

Dated: February 4, 2025

                                                THOMAS S. HIXSON
                                                United States Magistrate Judge

---

[2] Plaintiff also argues that it is entitled to discovery concerning all sales in the world to determine is in fact they were foreign sales. However, the Court does not think that such sweeping discovery is justified by speculation.