February 18, 2025

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:    *John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH
       SUPPLEMENTAL JOINT DISCOVERY LETTER REGARDING PLAINTIFF'S RFPs

Dear Judge Hixson:

Pursuant to the Court's February 3, 2025 Discovery Order (Dkt. 62), Plaintiff John Cress ("Plaintiff") and Defendant Nexo Capital, Inc. ("Defendant") submit this joint letter setting forth each side's view as to who the 14 custodians should be. The parties have met and conferred in good faith prior to filing this letter, including by Zoom meeting and the exchange of letters and emails.

**Attestation**

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred telephonically and in good faith to resolve the disputes set forth below.


Dated: February 18, 2025                TAYLOR-COPELAND LAW

                                        By: /s/ James Taylor-Copeland

                                        Attorneys for Plaintiff


Date: February 18, 2025                 BAKER & MCKENZIE LLP

                                        By: /s/ Ian S. Shelton

                                        Attorneys for Defendant

0

**Plaintiff's Position**. On December 13, 2024, the parties submitted a dispute regarding 51 of Plaintiff's RFPs.  ECF No. 54.  On January 10, 2025, this Court issued an Order stating that, "[f]or many of the RFPs at issue, the Court does think they are relevant, but to mitigate burden the Court likely would restrict document searches to a reasonable number of custodians and non-custodial sources."  ECF No. 55.  The Court ordered Nexo to produce an organizational chart and requested further briefing regarding custodians.  On February 3, 2025, the Court ordered that it would limit Nexo's search to 14 custodians at this time, and ordered further briefing regarding who those custodians should be. ECF No. 62.

The parties have agreed to twelve[1] of the fourteen custodians.  The parties disagree over the remaining two custodians.  Plaintiff requests Nexo search two custodians that co-founded and managed both Nexo and NDS, and spearheaded NEXO token sales from at least 2018-2021: Antoni Trenchev and Kosta Kantchev.  Trenchev and Kantchev are the ***only*** Nexo custodians.  They are thus the only custodians with information dating back to 2018 as NDS was not formed until mid-2018.

While Nexo tries to downplay the significance of pre-2021 events, documents regarding the VIP Relationship Program and the fraudulent representations made therein are relevant regardless of when created.  While Plaintiff does not yet know with certainty when Nexo created its VIP Program and began advertising the Liquidation Relief Program ("LRP"), it is clear that it has been doing so since at least early 2020 as there are a number of posts about the LRP in Nexo's Telegram community beginning in March 2020 and around this same time Nexo publicly stated that it had "offered remediation options to clients affected by the crash."

Documents relating to Nexo's initial offering of the NEXO Token are also relevant to both the *Howey* analysis as well as Nexo's claimed preemption/exemption defense.  *Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009) ("Under *Howey*, courts conduct an objective inquiry into the transaction offered based on what the purchasers were 'led to expect.'").  Nexo now argues that its sale of the NEXO Token to Plaintiff in 2021 was a separate offering from its 2018 sales.  But this directly conflicts with the position Nexo took in its Motion to Dismiss, where it argued that Plaintiff's claims were preempted because "Nexo filed a Form D with the SEC" in 2018. ECF No. 19 at 21.  But even if Nexo now seeks to retreat from that position, whether its 2021 sales were integrated with its earlier offerings will at minimum require a highly factual analysis of Nexo's sales from 2018-2021. The documents and communications of its directors and officers during this timeframe will be crucial to this analysis.

Both Trenchev and Kantchev sit on Nexo's Board and thus made critical NEXO Token related decisions from 2018 onwards, such as voting to approve NEXO Token dividends, including over $20 million in dividends paid to Plaintiff and other NEXO Token holders just days before Plaintiff's liquidations in 2021.[2]  Both Trenchev and Kantchev also played a management role at NDS, overseeing the other key custodians.  NDS lists Kantchev as Manager in 2020 and 2021 and Trenchev as Manager in 2020. However, NDS' public filings with the Republic of Bulgaria Registry Agency appear to show Trenchev managed NDS from at least 2018-2021.  Simply put, Trenchev and Kantchev managed both Nexo and NDS at nearly all relevant times in this case. As the only custodians with positions at Nexo, they will also have unique information regarding the relationship between Nexo and NDS.

Nexo proposes instead that it search the files of Pankov (an operations trading analyst), Pavlov (a

---

[1] The list of agreed custodians is attached hereto as Exhibit 1.  Only one custodian (Kostadinov, Head of Marketing) was employed by NDS in 2019.  Nexo has thus only agreed to search one custodian with relevant information from before 2020.

[2] NEXO Token Holders Receive US$2,409,574.87 in Dividends, Aug. 14, 2019, https://nexo.com/blog/nexo-token-holders-receive-us-2-409-574-87-in-dividends; Dividend Details, Nexo, June 11, 2021, https://nexo.com/blog/dividend-details.

customer support representative), and Dobrev (a help center representative). Plaintiff asked Nexo to identify the relevant information it believed to be in their possession. Nexo was able to say only that Pankov and Pavlov were "copied on communication related to Cress transaction," and that Dobrev "corresponded with Mr. Cress." Plaintiff has already produced his limited correspondence with Dobrev to Nexo. These custodians are very unlikely to have *any* non-cumulative information.

**Antoni Trenchev**. Trenchev is a co-founder and director of Nexo. Nexo refuses to search his files for documents responsive to Plaintiff's RFPs, despite already producing documents and testimony *directly from* him. Trenchev signed Nexo's Form Ds which were filed with the SEC disclosing details of sales of NEXO tokens to US investors in 2018. Nexo has already placed these Form Ds at issue, arguing they support its preemption defense. ECF No. 19-9. Trenchev also communicated directly with investors participating in the NEXO Token sale through his personal email address.

Trenchev has also publicly marketed the Nexo Token. For example, in 2019, he bragged that "the NEXO Dividend Token is a Security Token and is a top 100 coin, and we are the largest security token [by] market cap today," and that Nexo is the "largest security token issuer by market cap."[3] In February 2021, he stated that Nexo's target price for the NEXO token was "double digits, definitely double digits" and that the price of the NEXO token was headed "much, much higher.[4]

Trenchev has also spoken publicly regarding the LRP. For example, in a blog post published just days after Plaintiff's liquidation, Trenchev stated that Nexo was "working on custom products that will be rolled out first to larger clients for testing and then for all users," that would help them "avoid liquidation during a highly volatile market."[5]

Trenchev has also submitted a declaration in support of Nexo's MTD, stating that he has direct knowledge of Nexo's defenses, including Nexo's Crypto Credit General Terms and Conditions, which he claims "Mr. Cress agreed to be bound by." ECF No. 19-1 (Declaration of Antoni Trenchev) at 2. Trenchev also attests that he has information relating to Nexo's policies and that the Cryptocurrency Purchase Agreement with Plaintiff was "executed by senior Nexo representatives, such as myself." Nexo should not be permitted to use Trenchev's testimony, documents, communications, and unique knowledge of the facts at issue in this case for its own defense but shield his documents from Plaintiff.

**Kosta Kantchev**. Kantchev is a co-founder and director of Nexo. He was also the manager of NDS in from 2020-2021 when Nexo fraudulently induced Plaintiff to take out loans and purchase the NEXO Token. Kantchev thus managed all NDS departments that interacted directly with Plaintiff, including departments responsible for Nexo's VIP Relationship Program, OTC Desk, Liquidation Relief Program, NEXO Token sale, and the marketing of Nexo's VIP products and NEXO token.

**The Apex Doctrine is Inapplicable.** Recognizing that these custodians do have highly relevant documents, Nexo seeks to justify its refusal to search their files based on the apex doctrine. But it is well established that "[t]he apex doctrine does not apply to this dispute, which concerns whether senior executives . . . should be added as document custodians." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. MDL No. 2843, 2021 U.S. Dist. LEXIS 264066, at *46-47 (N.D. Cal. Oct. 21, 2021); *Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 749 (E.D.N.C. 2017) ("In no case of which the court is aware has the apex doctrine successfully been invoked to shield an executive from a request for production of documents."); *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST (SK), 2018 U.S. Dist.

---

[3]Nexo's Antoni Trenchev at Delta Summit Malta, YouTube, Jan. 3, 2019, https://www.youtube.com/watch?v=q7-fHOOmJ5Y at 4:17.

[4] Monthly AMA February 2021 - #AskAntoni, YouTube, https://www.youtube.com/live/l9ccyPsN5aU.

[5] AMA Recap: Your June Edition of Ask-Antoni-Anything, Jul. 1, 2021, https://nexo.com/blog/ama-recap-your-june-edition-of-ask-antoni-anything.

LEXIS 22676, at *5-6 (N.D. Cal. Feb. 7, 2018) (Ordering Twitter CEO as a custodian and holding the "idea that responsive documents will necessarily be found in other custodians' records is not sufficient to defeat a search of his files."). Moreover, particularly in securities cases, senior executives are likely to have unique knowledge and information not generally available to others. *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946-47 (directors and officers have "access to information not generally available to others" in the issuance of securities.).

**Nexo Should Search its investors@nexo.io and investors@nexo.com Emails.** Nexo used these email addresses to solicit NEXO token investments and answer inquiries from investors and prospective investors. These emails contain unique information relevant to the *Howey* analysis for example, information relating to Nexo's NEXO tokens sales or its dividend distributions. These emails are also likely to bear on Nexo's preemption defense (i.e. whether all investments were made by accredited investors and whether Nexo took reasonable measures to ensure investors were not underwriters). Nexo does not dispute it used its investors@nexo.com/.io email addresses to communicate with NEXO Token investors. Rather, Nexo's position is that "the last Nexo email *sent from* that address was from August 2019. So Nexo's position is those emails are not relevant to the securities status of Cress's specific transaction two years later." However, as discussed above, communications about the NEXO token, whether from 2019 otherwise, are relevant to the *Howey* analysis of whether the NEXO token is a security. In addition, whether Nexo's 2021 token sales are integrated with its earlier offering is at issue in this case, and thus Nexo's direct communications with investors and prospective investors are relevant to whether Nexo's sales are a single offering or separate offerings. Nexo should thus search these non-custodial sources.

**NEXO'S POSITION**

### 1. The Parties Agree to 12 of 14 Custodians, and 8 of 9 Non-Custodial Email Accounts

Nexo proposed 10 custodians that, based on Nexo's investigation and targeted searches, have some connection to Cress or his transactions on the Nexo platform. Surprisingly, Plaintiff agreed to include only 6 of those Cress-related custodians and proposed 8 others without a specific connection to Cress. Those 8 custodians include the heads or supervisors of Nexo's Sales, Marketing, PR, and Trading departments, in addition to the two highest-level (or apex) executives at Nexo—Antoni Trechev and Kosta Kantchev. Trenchev and Kantchev are directors of Nexo Capital. Kantchev is also the Co-Founder and CEO of Nexo Capital, and Trenchev is the Co-Founder and Chief Legal Officer. Nexo has agreed to all of Cress's proposed custodians except Trenchev and Kantchev. To summarize, Nexo has agreed to 12 of the 14 custodians proposed by Cress: (1) **6 of the previously offered Cress-related custodians**, including Hristiyan Hristov (Cress's Relationship Manager); Octavian Dinca (Sales Account Manager); Alexander Rakshiev (Head of Sales); Kaloyan Stanev (Sales Ops Associates); Edward Tonkov (Trading Operations Manager); and Tsvetan Videlov (Sales Trader); and (2) **6 non-Cress-related custodians**, including Teodora Atanasova (VIP Relations Manager); Lyubcho Kostadinov (Head of Marketing); Magdalena Hristova (Copywriter); Rosen Angelov (Community Manager); Yordan Shanov (Direct Marketing Specialist); and Tom Stanev (Head of Trading).

### 2. The Court Should Decline to Include Nexo's Two Highest-Level Executives As Custodians

Cress has made no showing that discovery from the 12 custodians proposed by Nexo would be inadequate, including the heads, supervisors, or senior members of key Nexo departments—Sales, Marketing, PR, and Trading. The Court may limit discovery, including custodians, where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i). Additionally, the Court must always consider if the discovery is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Courts decline to add highest-level-executive or apex custodians where a plaintiff fails to show that those apex custodians have personal and unique knowledge *of the specific facts in dispute*, or have non-cumulative information *about relevant matters* that could not be obtained from other custodians. *See Handloser v. HCL Am., Inc.*, 2020 WL 7405686, at *2 (N.D. Cal. Dec. 17, 2020) (declining to add two "executive" custodians where plaintiffs failed to demonstrate the requests were not duplicative and had previously obtained discovery from the "U.S. heads of the relevant departments"). In *Lauris v. Novartis AG*, 2016 WL 7178602 (E.D. Cal. Dec. 8, 2016), the Court declined to add four apex custodians after concluding that nine other custodians were sufficient. *Id.* at *4. The *Lauris* court concluded that the factors identified in Rule 26(b)(1), coupled with the single-plaintiff nature of the case, counseled against inclusion of apex custodians. *Id.* The same reasoning applies here.

Here, the parties already agreed to 6 non-Cress custodians, including the Head of Marketing, the Head of Trading, and other senior employees. Plaintiff has failed to explain why these custodians are not sufficient for the needs of the case. Nexo agreed to produce documents from various managers, sales associates, and traders, some of which interacted with Plaintiff on a daily basis. For example, Nexo agreed to produce documents from Hristov, Cress's Relationship Manager who extensively interacted with Plaintiff. The 6 non-Cress-related custodians proposed by Cress—and accepted by Nexo—can provide the same non-Cress-specific discovery regarding the alleged securities and VIP brochure misrepresentation claims that Cress seeks from Trenchev and Kantchev.

Plaintiff points out that Trenchev and Kantchev were Directors of Nexo during its first 2018 NEXO Token sale, and Trenchev signed the 2018 Form Ds. But Trenchev's personal connection to the facts in dispute is tangential and *de minimis*, and Kantchev's connection is non-existent. Although Trenchev docusigned Cress's Cryptocurrency Purchase Agreement, he did so in his corporate capacity as a director of Nexo Capital, and he had no personal interaction or communications with Cress beyond a remote DocuSign that was facilitated by Hristov. *See Affinity Credit Union v. Apple Inc.*, 2024 WL 3859802, at *2-3 (N.D. Cal. Aug. 16, 2024) (excluding Apple CEO because, despite "weak showing that Mr. Cook may possess some responsive documents," the court found it "unlikely that Mr. Cook has non-cumulative documents in his possession which warrants the expense of adding Mr. Cook as a custodian").

Plaintiff's citation to *Dreiling v. Am. Express Co.*, 458 F.3d 942, 946-47 (9th Cir. 2006) for the proposition that apex custodians have "access to information not generally available to others" is misplaced. That quote relates to insider trading prohibitions, not discovery. Generic articles or public statements by high-level executives about corporate endeavors do not merit inclusion of apex custodians under Rule 26(b)(1)'s proportionality test. *See BlackBerry Ltd. v. Facebook, Inc.*, 2019 WL 4544425, at *6 (C.D. Cal. Aug. 19, 2019) (finding that an article authored by Mark Zuckerberg, which was a "very generic statement for public consumption regarding the company's advertising methods," did not suggest that Zuckerberg had "personal knowledge" that merited his inclusion as a custodian).

Moreover, Kantchev lacks any personal involvement in this dispute, and Nexo has identified 10 custodians who do have such knowledge. Cress's speculation that Kantchev might have relevant information is inadequate to justify his inclusion as an apex custodian. *See Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 5507176, at *3 (N.D. Cal. Aug. 25, 2023) ("Here, because plaintiffs only speculate that [the company President] must have relevant information, the Court does not find good cause to grant their request.").

Cress's relevance arguments regarding Trenchev and Kantchev focus on their alleged involvement in the NEXO Token initial coin offering ("ICO") in 2018. However, even assuming they have knowledge of 2018 facts, this information is not relevant to the securities status of Cress's NEXO Token Transactions over three years later in April-June 2021. The Court has already reached the correct conclusion that non-U.S. NEXO Token sales are not discoverable, and it should reach the same

4

conclusion that old offerings of the NEXO Token in 2018 are not discoverable either. This Court previously recognized that under the safe-harbor provision of 17 C.F.R. § 230.152(b)(1), "no integration analysis is required if an offer is made more than 30 calendar days after the termination or completion of any other offering." *Cress v. Nexo Fin. LLC*, 2023 WL 6609352, at *16 (N.D. Cal. Oct. 10, 2023). Given the safe harbor, the 2018 ICO has no relevance to Nexo's accredited investor defense. Yet Cress is seeking to reach back over 1,000 days in claiming that a February-May 2018 offering is relevant to his April-June 2021 securities claims. Setting aside the integration issue, Cress has made no showing that the facts of the 2018 offering have any relevance to the securities status of his specific NEXO Token purchases years later. Cress did not participate in the 2018 ICO, and he purchased the NEXO Token as a customer—not an investor—to get an interest rate discount on his credit line (and other platform perks). Cress has made no showing that his 2021 token purchases as a Nexo customer seeking utility-token benefits have any factual similarity to the 2018 ICO. *See SEC v. Binance Holdings Ltd.*, 738 F. Supp. 3d 20, 43-44 & 50 (D.D.C. June 28, 2024) ("investment contract" inquiry of crypto token is based on the facts and circumstances of the specific transactions at issue and "what motivated the reasonable purchaser at the time"). The relevance and proportionality considerations that counsel against discovery as to non-U.S. NEXO Token sales apply equally to 2018 ICO discovery. Nexo has agreed to provide discovery regarding direct sales of the NEXO Token in the United States to accredited investors, which occurred in 2021-2022.

Suppose, for example, that an accredited investor asserts securities claims against a venture capital firm that has engaged in 5 separate funding rounds—each of which involved different investors, terms, circumstances, and expectations—and the dispute is based solely on the investor's purchases in round 5. Under Cress's limitless understanding of relevance (unbounded by proportionality concerns), he could obtain burdensome discovery as to all 5 rounds, and he could add multiple apex custodians (in addition to custodians with actual knowledge of the facts in dispute) based on the mere contention that the apex custodians might know facts about round 1. Accepting Cress's theory would create burdensome satellite litigation regarding old offerings that have no relevance to, and could not be integrated with, the newer offering in dispute. And even assuming the plaintiff could muster some attenuated relevance argument, discovery about old offerings would not be proportional. This case simply is not about Nexo's 2018 sales.

In lieu of Trenchev and Kantchev, Plaintiff should select from the list of 4 remaining custodians that Nexo has identified as having documents related to Cress—Ognyan Pankov, Martin Pavlov, Bozhidar Dobrev, or Mustafa Aliev. Plaintiff should not be allowed to fish around in apex custodian mailboxes, particularly when Nexo has identified additional custodians with some personal connection to the dispute.

### 3.  The Court Should Decline to Include the Old "Investors" Non-Custodial Email Account

Finally, while Nexo has agreed to inclusion of 8 non-custodial email accounts with some connection to Cress, Nexo objects to inclusion of the investors@nexo.io account. The last Nexo email sent from this account was in August 2019, years before the 2021 transactions at issue. There were no emails sent to Cress from this account, so those communications are irrelevant to his fraud claims. And Cress did not participate in any 2018-2019 NEXO Token offering, so the content of this inbox cannot be relevant to his securities claims or proportional to the needs of the case.