**EXHIBIT 2**

*John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH

SUPPLEMENTAL JOINT DISCOVERY LETTER REGARDING PLAINTIFF'S RFPs

 Outlook

---

**Re: [EXTERNAL] RE: Search Terms**

---

**From** Max Ambrose <maxambrose@taylorcopelandlaw.com>

**Date** Tue 3/11/2025 4:36 PM

**To** Shelton, Ian <Ian.Shelton@bakermckenzie.com>

**Cc** james@taylorcopelandlaw.com <james@taylorcopelandlaw.com>; Rawlinson, Matthew <Matthew.Rawlinson@bakermckenzie.com>; Treat, John <John.Treat@bakermckenzie.com>; Brown, Stephanie <Stephanie.Brown@bakermckenzie.com>

⬙ 1 attachment (5 KB)

image001.png;

Ian,

As you know, we have repeatedly addressed the scope of the Relevant Period and briefed the issue for the Court in ECF 54. Your email only reinforces our position: a final Order on ECF 54 is necessary. Nevertheless, we address the issues below.

To the extent we are willing to agree to any limitation on Nexo's data collection and search, we do so solely in an effort to reach an agreement and avoid further Court intervention. This should not be construed as an admission that the data is unlikely to contain relevant information or that searching it would be unduly burdensome for Nexo.

**The Custodians.**  As an initial matter, your contention that the collection will encompass "more than **8 years** of data for each custodian" is totally false. Based on the employee information provided by Nexo (chart below), it appears that only two custodians (Trenchev and Kantchev) have data going back to 2017. As you know, in briefing whether these two custodians should be included, we both addressed the relevance of information from 2017. The Court agreed with our position and ordered Nexo to search these custodians.

Nexo's records indicate that only one other custodian (Kostadinov) was employed before 2020, while the remaining custodians began their employment in either 2020 or 2021. If this is not accurate, please let us know ASAP. Otherwise, Nexo's contention that searching documents from before this timeframe imposes a significant burden is entirely detached from reality. Nexo's contention that emails from January 1, 2022 onward should be excluded is similarly devoid of merit. As you know, Nexo has already disclosed millions of dollars of sales of NEXO tokens to US purchasers in 2022. Nexo similarly responded to numerous investigations by securities regulators, including the SEC, during the 2022-2023 time period. Nexo advertised these investigations as reaching a "Landmark Resolution with U.S. Regulators" involving "multi-year-long inquiries into Nexo, looking at various aspects of the business." Nexo's custodians, including Trenchev and Kantchev, have publicly commented on these regulatory investigations. Moreover, Nexo's own documents show that it entered into dozens of "Liquidation Relief Agreements" from at least early 2021 through at least December 2022. With respect to the individual custodians, we are nevertheless willing to agree that Nexo may exclude collection of emails after July 25, 2024 (the date Plaintiff served RFPs in this action). This agreement is without prejudice to Plaintiff's ability to seek that data at a later date if discovery reveals it is likely to have relevant information. If you can provide additional details regarding the custodians' roles in 2022-2024—including whether they are no longer employed by Nexo or NDS and their last dates of employment—we will consider whether further limitations are appropriate.

|  | Full Name | Job Title | Dept. | First Employed |
|---|---|---|---|---|

| | Name | Title | Department | Year |
|---|---|---|---|---|
| 1 | Hristiyan Yordanov Hristov | Account Manager | Sales | 2020 |
| 2 | Octavian Dinca | Account Manager | Sales | 2021 |
| 3 | Alexander Nikolaev Rakshiev | Head of Sales | Sales | 2020 |
| 4 | Kaloyan Mariyanov Stanev | Sales Ops Associate | Sales | 2021 |
| 5 | Edward Todorov Tonkov | Trading Operations Manager | Trading | 2020 |
| 6 | Tsvetan Dimitrov Videlov | Sales Trader | Trading | 2021 |
| 7 | Teodora Plamenova Atanasova | SDR | Sales | 2020 |
| 8 | Lyubcho Georgiev Kostadinov | Head of Marketing | Marketing | 2019 |
| 9 | Magdalena Damyanova Hristova | Copywriter | Media/PR | 2020 |
| 10 | Rosen Anatoliev Angelov | Community Manager | Media/PR | 2021 |
| 11 | Yordan Ivaylov Shanov | Direct Marketing Specialist | Marketing | 2021 |
| 12 | Tom Mariyanov Stanev | Head of Trading | Trading | 2020 |
| 13 | Antoni Trenchev | Nexo Director & Managing Partner | Officer/Director (NDS 2020) | 2017 |

| | | | | |
|---|---|---|---|---|
| 14 | Kosta Kantchev | Nexo Director & Managing Partner | Officer/Director (NDS 2020-2021) | 2017 |

**Non-Custodial Sources.** With respect to the non-custodial sources, we understand that Nexo did not use the investors@nexo.io/com address significantly after 2019. We thus see no basis for imposing any time limitation on collection from that source. For the remainder of the non-custodial sources we are willing to agree to a February 27, 2023 cutoff (the date of the filing of the Complaint in this action). Once again, this agreement is without prejudice to Plaintiff's ability to seek that data at a later date if discovery reveals it is likely to have relevant information. If you can provide us with additional information regarding when Nexo has used these emails and what each one is generally used for, we can evaluate whether any additional limitations are warranted.

| | | Plaintiff's Position |
|---|---|---|
| 15 | investors@nexo.io; investors@nexo.com | Based on Nexo's representations, we understand that these emails were not used regularly after 2019. We thus see no basis for imposing any time limitation. |
| 16 | bizdev.replies@nexo.io; bizdev.replies@nexo.com | February 27, 2023 cutoff |
| 17 | payments@nexo.io; payments@nexo.com | February 27, 2023 cutoff |
| 18 | kyc@nexo.io; kyc@nexo.com | February 27, 2023 cutoff |
| 19 | ops@nexo.io; ops@nexo.com | February 27, 2023 cutoff |
| 20 | support@nexo.io; support@nexo.com | February 27, 2023 cutoff |
| 21 | otc@nexo.io; otc@nexo.com | February 27, 2023 cutoff |
| 22 | salesvacationresponder@nexo.com; salesvacationresponder@nexo.io | February 27, 2023 cutoff |
| 23 | Salesforce.bcc@nexo.com; Salesforce.bcc@nexo.io | February 27, 2023 cutoff |

Best regards,

Max

On Mon, Mar 10, 2025 at 7:23 PM Shelton, Ian <Ian.Shelton@bakermckenzie.com> wrote:

James,

Your client is causing the delay because, from the beginning of discovery, you have refused to make any reasonable compromises regarding (1) date collection date ranges, (2) custodians, and (3) RFP scope. Now you appear to want to exacerbate the issue by adding (4) more data repositories, with physical computer imaging requests untethered to a showing of need, relevance, or proportionality. The Court largely agreed with us on (2), and resolved the custodian issue only 19 days ago, on February 19. We have been collecting data expeditiously—there is a lot of it.

Your refusal to compromise on item (1) – the date collection date ranges – is causing the delay in data collection and finalization of search term hit counts. Your First Set of RFPs defines the relevant period as January 1, 2017 through the present. To my knowledge, you have refused to compromise on that range for any custodians. That is more than **8 years** of data for each custodian. Multiplied by 23 custodial sources, that is, theoretically, up to 184 years of emails alone. Given your refusal to add any date limiters, we were just informed that one email inbox of one custodian is over 1TB in size. We have not been able to give you a hit count report yet because the volume of data you have asked us to collect and process is enormous. And that is before we add new repositories beyond the reasonable Gmail, Gdrive, Slack, and Calendar datasets we are collecting. Before you accuse us of delaying and evading discovery obligations, consider how your own positions undermine our progress.

If your client persists in a complete unwillingness to compromise on discovery scope, we plan to bring a cost shifting motion so that Mr. Cress can share the expense of collecting and reviewing what is shaping up to be terabytes of data, without date limiters, and with grossly overbroad search terms.

In advance of our letter brief, and to expedite our data processing, we again request that you agree to limit date collection ranges for the 23 sources. For example, we see no justification for including emails from January 1, 2022 to the present. The relevant events ended in June 2021. Similarly, we see no justification for including emails from January 1, 2017 through December 31, 2020. Your client didn't join the platform until March 2021. In our view, each of the custodians should be limited to 2021 data. In any event, please send us a list that limits the date ranges for each of the 23 custodial sources. The post-2022 limiter is obvious. If you are unwilling to limit the ranges for some, give us limits on the others.

If you refuse to agree to any date limits and contend that we need to collect 8 years of data across multiple repositories for 23 sources, then you need to be patient so we can get a size for the total data set and the search term hit count. Note that your refusal to limit the date ranges will undermine any narrowing of search terms because the underlying data set will be enormous without date limiters.

I will follow up with responses to your other questions. I look forward to receiving your list of date limiters – this is in our mutual interest to narrow the scope of collection.

Finally, I asked for 2 extra days beyond your unilaterally imposed deadline to prepare the letter brief. I noted my scheduling conflicts today. To call that proposal "gamesmanship" is over the top. Let's please cooperate rather than resorting to such rhetoric.

Best,

Ian

**Ian Shelton**

Partner, Litigation

Baker & McKenzie LLP

800 Capitol, Suite 2100

Houston, Texas 77002

United States

Dir: +1 713 427 5029

Tel: +1 713 427 5000

ian.shelton@bakermckenzie.com



bakermckenzie.com | Facebook | LinkedIn | X

---

**From:** james@taylorcopelandlaw.com <james@taylorcopelandlaw.com>
**Sent:** Monday, March 10, 2025 3:31 PM
**To:** Shelton, Ian <Ian.Shelton@bakermckenzie.com>; 'Max Ambrose' <maxambrose@taylorcopelandlaw.com>
**Cc:** Rawlinson, Matthew <Matthew.Rawlinson@bakermckenzie.com>; Treat, John <John.Treat@bakermckenzie.com>; Brown, Stephanie <Stephanie.Brown@bakermckenzie.com>
**Subject:** RE: [EXTERNAL] RE: Search Terms

Hi Ian,

Your response is deeply concerning and suggests that Nexo is once again seeking to delay and evade its discovery obligations. The Court has explicitly ordered Nexo to search the 23 sources (see ECF 62 and 64). Nexo has had complete clarity on these sources since February 19 and had agreed to search most of these sources several months ago in October 2024. Your email indicates that Nexo has yet to even collect this data, let alone begin running search terms.

Despite this, you insist that Plaintiff wait an indeterminate amount of time for Nexo to provide a hit count report before seeking a final ruling from the Court on Plaintiff's RFPs. This is entirely unreasonable. Moreover, Nexo continues to delay the submission of this dispute. As you know, we suggested calling the Court two weeks ago, on February 24, yet you refused, insisted on submitting a joint letter, and now claim additional time is needed to prepare it. We are confident that the Court will recognize this for what it is—gamesmanship and delay. Nonetheless, we will accommodate your request and hold off until Wednesday to exchange and file the Joint Brief.

Could you clarify whether your representations apply equally to Nexo and to NDS? Do both companies have the same data retention policies that you have described? If not, could you please describe the relevant differences?

Regarding Nexo's search of phones and devices, as you know, Nexo advertised that VIPs like Mr. Cress would have "direct phone number availability" to their dedicated relationship managers. Given your representation that "Nexo does not issue company cell phones to its workers," please clarify what phone number was provided to Mr. Cress and who controls that phone number—was it a landline? Does Nexo maintain recordings of customer calls and/or voicemails? Do employees, including Hristov, solely use personal phones to communicate with customers? Further, is it Nexo's position that it is unable to obtain cell phone data, or merely unwilling to do so?

Regarding your representation that Nexo uses a Google platform and maintains all its business records on its company servers and/or the cloud. Could you confirm you are searching both the cloud servers and company servers? It is also not clear what devices Nexo was using to do business and why those would not have responsive documents. Nor is there any evidence that suggests its employees or agents saved and maintained every work related document on a cloud server from 2018 onwards. Could you please describe the work devices used by Nexo's employees and agents and let us know the concrete basis for why these devices would not have responsive documents?

We do not believe Nexo's refusal to search devices and phones is reasonable and reserve all rights in this regard. Please let us know your availability to meet and confer on this issue in the coming days.

With respect to the search of Mr. Cress' files, we can confirm that we did a complete export of his Gmail account.

Best regards

James

---

**From:** Shelton, Ian <Ian.Shelton@bakermckenzie.com>
**Sent:** Friday, March 7, 2025 7:41 PM
**To:** Max Ambrose <maxambrose@taylorcopelandlaw.com>
**Cc:** james@taylorcopelandlaw.com; Rawlinson, Matthew <Matthew.Rawlinson@bakermckenzie.com>; Treat, John <John.Treat@bakermckenzie.com>; Brown, Stephanie <Stephanie.Brown@bakermckenzie.com>
**Subject:** RE: [EXTERNAL] RE: Search Terms

James,

I'm following up on the rest of your March 6 email.

As we previously stated, Nexo is collecting Gmail, Gdrive, and Slack data for each of the 23 sources. We anticipate that this will be a huge amount of data. We will confirm the exact amount when we have finished processing the data and running hit counts. Because we are still collecting the data from the 23 sources, we are not able to give you an ETA on the hit count report yet. We will let you know as soon as we can. Nexo uses a Google platform and maintains all its business records on its company servers and/or the cloud, so we are not imaging physical computers. We are exporting the relevant data, which is a common method of collection for businesses. Regarding cell phones, Nexo does not issue company cell phones to its workers. We believe that our collection methodology is a reasonable and proportional manner of obtaining and searching for responsive information. The fact that you made images of the phone and laptop of your individual client, who is a party suing in his personal capacity, does not mean that it would be reasonable to do so for a business, particularly one that maintains its records as described above.

Regarding specific questions about your collection from Mr. Cress, would you please confirm that you did full exports and searches of all his data repositories on servers or in the cloud, such as a complete Gmail export? If you only searched information that was downloaded to his two physical devices that you imaged, those devices might not contain complete sets of data.

Regarding the joint letter brief concerning the RFPs that you want to file on Monday, we are not able to file a joint brief on such an unreasonably short, unilateral deadline. We all have busy schedules and other matters to balance. I have multiple commitments on Monday. We could do it by Wednesday, however.

We look forward to discussing the hit count report as soon as it's available.

Best,

Ian


**Ian Shelton**

Partner, Litigation

Baker & McKenzie LLP

800 Capitol, Suite 2100

Houston, Texas 77002

United States

Dir: +1 713 427 5029

Tel: +1 713 427 5000

ian.shelton@bakermckenzie.com



bakermckenzie.com | Facebook | LinkedIn | X

---

**From:** Shelton, Ian <Ian.Shelton@bakermckenzie.com>
**Sent:** Thursday, March 6, 2025 8:59 PM
**To:** Max Ambrose <maxambrose@taylorcopelandlaw.com>
**Cc:** james@taylorcopelandlaw.com; Rawlinson, Matthew <Matthew.Rawlinson@bakermckenzie.com>; Treat, John <John.Treat@bakermckenzie.com>; Brown, Stephanie <Stephanie.Brown@bakermckenzie.com>
**Subject:** RE: [EXTERNAL] RE: Search Terms


Max,


Confirmed that your list below is accurate.


**Ian Shelton**

Partner, Litigation

Baker & McKenzie LLP

800 Capitol, Suite 2100

Houston, Texas 77002

United States

Dir: +1 713 427 5029

Tel: +1 713 427 5000

ian.shelton@bakermckenzie.com



bakermckenzie.com | Facebook | LinkedIn | X

**From:** Max Ambrose <maxambrose@taylorcopelandlaw.com>
**Sent:** Thursday, March 6, 2025 2:44 PM
**To:** Shelton, Ian <Ian.Shelton@bakermckenzie.com>
**Cc:** james@taylorcopelandlaw.com; Rawlinson, Matthew <Matthew.Rawlinson@bakermckenzie.com>; Treat, John <John.Treat@bakermckenzie.com>; Brown, Stephanie <Stephanie.Brown@bakermckenzie.com>
**Subject:** Re: [EXTERNAL] RE: Search Terms

Ian,

Regarding the custodians and sources, you are correct that there are 14 custodians and 9 email addresses, provided both nexo domains, e.g., @nexo.com and @nexo.io, are being treated as one email address. To avoid any confusion, we are attaching the Exhibit 1s attached to our joint letter briefs regarding our agreements, which include everything on the list below, except Trenchev, Kantchev, and investors@nexo.io/.com (which have been ordered by the Court).

I have included all of the @nexo.com/.io domains to the list below, where some of these were omitted from the table in your last email.  Please confirm the list directly below accurately reflects the custodians and sources Nexo will search.

| | Full Name | Job Title | Dept. |
|---|---|---|---|
| 1 | Hristiyan Yordanov Hristov | Account Manager | Sales |
| 2 | Octavian Dinca | Account Manager | Sales |
| 3 | Alexander Nikolaev Rakshiev | Head of Sales | Sales |
| 4 | Kaloyan Mariyanov Stanev | Sales Ops Associate | Sales |
| 5 | Edward Todorov Tonkov | Trading Operations Manager | Trading |
| 6 | Tsvetan Dimitrov Videlov | Sales Trader | Trading |
| 7 | Teodora Plamenova Atanasova | SDR | Sales |
| 8 | Lyubcho Georgiev Kostadinov | Head of Marketing | Marketing |

| | | | |
|---|---|---|---|
| 9 | Magdalena Damyanova Hristova | Copywriter | Media/PR |
| 10 | Rosen Anatoliev Angelov | Community Manager | Media/PR |
| 11 | Yordan Ivaylov Shanov | Direct Marketing Specialist | Marketing |
| 12 | Tom Mariyanov Stanev | Head of Trading | Trading |
| 13 | Antoni Trenchev | Nexo Director & Managing Partner | Officer/Director (NDS 2020) |
| 14 | Kosta Kantchev | Nexo Director & Managing Partner | Officer/Director (NDS 2020-2021) |
| 15 | investors@nexo.io; investors@nexo.com | | |
| 16 | bizdev.replies@nexo.io; bizdev.replies@nexo.com | | |
| 17 | payments@nexo.io; payments@nexo.com | | |
| 18 | kyc@nexo.io; kyc@nexo.com | | |
| 19 | ops@nexo.io; ops@nexo.com | | |
| 20 | support@nexo.io; support@nexo.com | | |
| 21 | otc@nexo.io; otc@nexo.com | | |
| 22 | salesvacationresponder@nexo.com; salesvacationresponder@nexo.io | | |
| 23 | Salesforce.bcc@nexo.com; Salesforce.bcc@nexo.io | | |

Best regards,

Max

On Thu, Mar 6, 2025 at 10:26 AM Shelton, Ian <Ian.Shelton@bakermckenzie.com> wrote:

James,

We will get back to you on your other points, but with respect to the 23 sources, our list is below. These are the 12 "agreed custodians" listed in Dkt. 64-1, Trenchev and Kantchev as ordered by the Court, and the 9 non-custodial email addresses including investors (both .io and .com). This is consistent with the court's orders, including the 14 custodian limit. We don't understand your reference to "10 additional email addresses." Please confirm whether you agree with our list.

|  | Full Name | Job Title | Dept. |
|---|---|---|---|
| 1 | Hristiyan Yordanov Hristov | Account Manager | Sales |
| 2 | Octavian Dinca | Account Manager | Sales |
| 3 | Alexander Nikolaev Rakshiev | Head of Sales | Sales |
| 4 | Kaloyan Mariyanov Stanev | Sales Ops Associate | Sales |
| 5 | Edward Todorov Tonkov | Trading Operations Manager | Trading |
| 6 | Tsvetan Dimitrov Videlov | Sales Trader | Trading |
| 7 | Teodora Plamenova Atanasova | SDR | Sales |
| 8 | Lyubcho Georgiev Kostadinov | Head of Marketing | Marketing |
| 9 | Magdalena Damyanova Hristova | Copywriter | Media/PR |
| 10 | Rosen Anatoliev Angelov | Community Manager | Media/PR |
| 11 | Yordan Ivaylov Shanov | Direct Marketing Specialist | Marketing |
| 12 | Tom Mariyanov Stanev | Head of Trading | Trading |

| 13 | Antoni Trenchev | Nexo Director & Managing Partner | Officer/Director (NDS 2020) |
|---|---|---|---|
| 14 | Kosta Kantchev | Nexo Director & Managing Partner | Officer/Director (NDS 2020-2021) |
| 15 | investors@nexo.io | | |
| 16 | bizdev.replies@nexo.io | | |
| 17 | payments@nexo.io | | |
| 18 | kyc@nexo.io | | |
| 19 | ops@nexo.io | | |
| 20 | support@nexo.io | | |
| 21 | otc@nexo.io | | |
| 22 | salesvacationresponder@nexo.com | | |
| 23 | Salesforce.bcc@nexo.com | | |

**Ian Shelton**
Partner, Litigation
Baker & McKenzie LLP
800 Capitol, Suite 2100
Houston, Texas 77002
United States

Dir: +1 713 427 5029
Tel: +1 713 427 5000
ian.shelton@bakermckenzie.com



bakermckenzie.com | Facebook | LinkedIn | X

**From:** james@taylorcopelandlaw.com <james@taylorcopelandlaw.com>
**Sent:** Thursday, March 6, 2025 11:47 AM
**To:** Shelton, Ian <Ian.Shelton@bakermckenzie.com>; Rawlinson, Matthew <Matthew.Rawlinson@bakermckenzie.com>;
'Max Ambrose' <maxambrose@taylorcopelandlaw.com>
**Cc:** Treat, John <John.Treat@bakermckenzie.com>; Brown, Stephanie <Stephanie.Brown@bakermckenzie.com>
**Subject:** RE: [EXTERNAL] RE: Search Terms

Hi Ian,

As an initial matter, isn't Nexo searching 10 additional email addresses (the 8 initially agreed and the investors@nexo.io and investors@nexo.com as ordered by the Court)? Can you please let us know when you anticipate being able to provide the hit count report? As discussed on our call, we are ready and willing to discuss search terms further upon receipt of the hit count.

Has Nexo collected any data from the cell phones or computers of any custodians? As you know, we imaged both Mr. Cress' cell phone and his laptop. Our methodology for collection of Mr. Cress' files has been thoroughly detailed in our previous meet and confer correspondence and Nexo agreed to Plaintiff's Proposed Search Terms for Plaintiff's Data, which identifies the sources collected and the search terms applied to that data. If you have any specific questions, please let us know.

Since you remain unwilling to call the Court with us regarding ECF 54, we have no choice but to submit a supplemental Joint Letter Brief. We propose that the parties exchange their respective portions of the Joint Letter Brief on Monday to be filed later that same day. While your email suggests we further meet and confer "on whether we can reach further compromises on your RFPs," Nexo's position lays bare that it has no interest in compromise. We have asked you repeatedly, whether Nexo is willing to revise its responses to any RFPs in light of the Court's Order that for "many of the RFPs' at issue, the Court does think they are relevant." Nexo has not agreed to revise its position on even a single RFP.

Best regards

James

---

**From:** Shelton, Ian <Ian.Shelton@bakermckenzie.com>
**Sent:** Wednesday, March 5, 2025 7:53 PM
**To:** james@taylorcopelandlaw.com; Rawlinson, Matthew <Matthew.Rawlinson@bakermckenzie.com>; 'Max Ambrose'
<maxambrose@taylorcopelandlaw.com>
**Cc:** Treat, John <John.Treat@bakermckenzie.com>; Brown, Stephanie <Stephanie.Brown@bakermckenzie.com>
**Subject:** RE: [EXTERNAL] RE: Search Terms

James,

It was our hope that you would make a greater attempt to narrow the proposed search terms. Of the 96 proposed searches, you modified only 2 searches, disregarding our suggestions that some of the searches could be addressed through direct document requests and some are simply overbroad. Nevertheless, in order to move matters forward, we will run the proposed search terms

across the 14 custodians and 9 additional email addresses (23 sources total) to generate a hit report. This will not be done by the end of the week due to the number of custodians and terms and the amount of data involved. We will provide the report when available.

Regarding our search methodology, for each of the 23 sources, Nexo is extracting the Gmail, Google Drive, and Slack communications (if any) associated with each source. We will apply the search terms to these data sets and segregate the hits for responsiveness review. Could you please provide us with information on your search methodology from Mr. Cress?

Finally, as to ECF 54, the Court has already ruled. The Court decided, in light of the numerous disputes, that Nexo should produce an organizational chart (which it has done), and the parties should meet and confer on custodians (which are now set). ECF 55. There is no additional ruling needed at this time, and any other dispute is not ripe. We believe it was the Court's expectation that, after the custodians were identified, the parties would meet and confer regarding search terms and RFPs, which has not been completed. In addition, after ECF 54 was submitted by the parties, the Court ruled that non-US sales are not discoverable, necessitating a further narrowing of your RFPs. If the parties can focus on the search terms, it is likely that our remaining disputes over the RFPs can be mooted or at least narrowed.

We object to you unilaterally contacting the Court regarding ECF 54 (or any other issue) and, if you insist on pushing forward at this time, believe a supplemental letter brief would be appropriate. Alternatively, we believe it would be much more productive for the parties to work together to narrow the search terms and the RFPs. We again invite you to meet and confer to discuss whether we can reach any further compromises on your RFPs. At this time, without further negotiations, we must stand on our RFP positions in ECF 54-1 should you choose to move forward.

We hope to have a productive discussion to narrow the search terms when we get the hit counts. In the meantime, please let us know your availability to meet and confer on whether we can reach further compromises on your RFPs.

Best,

Ian

**Ian Shelton**
Partner, Litigation
Baker & McKenzie LLP
800 Capitol, Suite 2100
Houston, Texas 77002
United States

Dir: +1 713 427 5029
Tel: +1 713 427 5000
ian.shelton@bakermckenzie.com



bakermckenzie.com | Facebook | LinkedIn | X

**From:** james@taylorcopelandlaw.com <james@taylorcopelandlaw.com>
**Sent:** Monday, March 3, 2025 3:38 PM
**To:** Rawlinson, Matthew <Matthew.Rawlinson@bakermckenzie.com>; 'Max Ambrose' <maxambrose@taylorcopelandlaw.com>
**Cc:** Shelton, Ian <Ian.Shelton@bakermckenzie.com>; Treat, John <John.Treat@bakermckenzie.com>; Brown, Stephanie <Stephanie.Brown@bakermckenzie.com>
**Subject:** RE: [EXTERNAL] RE: Search Terms

Hi Matthew and Ian,

Thanks for taking the time to speak with us today.

Regarding the terms, we understand that Nexo will run the terms and provide hit counts to Plaintiff by the end of the week. Based on your confirmation that Nexo is unable to perform case sensitive searches, we are willing to place tighter limiters around some of the terms including "NEXO" as shown in the attached PDF. As set forth in my earlier email, we believe that further discussion regarding the terms will be most productive if you can provide counts for each term by each custodial and non-custodial source. During our call, we also asked Nexo to provide information regarding its collection and search of documents (i.e. what sources are being reviewed, what data is being collected). You told us you would get back to us on this.

With respect to the substance of Plaintiff's RFPs, it is our view that a final order on ECF 54 is needed. As you know, Plaintiff's RFPs were served last August.  We subsequently met and conferred extensively regarding these RFPs over several months before submitting the dispute to the Court in December. Plaintiff's final proposed compromise was laid out in ECF 54 and the Court indicated that it agrees many of the RFPs are relevant and essentially adopted Plaintiff's proposed compromise (a limitation on custodians).

We understand that Nexo's position is that further discussion of the RFPs or a final ruling on ECF 54 should only take place after we have reached agreement (or obtained a court ruling) regarding the search terms. We do not believe that this makes sense and have serious concerns regarding further delay. However, if Nexo believes that further meet and confer regarding **a limited number of specific RFPs** following the identification of search terms would be helpful we are willing to consider that. We thus ask that Nexo let us know by COB Wednesday (1) all RFPs which Nexo will agree to produce documents responsive to, (2) all RFPs which Nexo proposes we meet and confer about further in connection with our discussion about search terms, and (3) all RFPs where Nexo intends to stand on its objections. If Nexo is unwilling to provide this information, then we will contact the Court regarding ECF 54 by the end of the week.

Thanks

James

**From:** james@taylorcopelandlaw.com <james@taylorcopelandlaw.com>
**Sent:** Wednesday, February 26, 2025 9:53 AM
**To:** 'Rawlinson, Matthew' <Matthew.Rawlinson@bakermckenzie.com>; 'Max Ambrose' <maxambrose@taylorcopelandlaw.com>
**Cc:** 'Shelton, Ian' <Ian.Shelton@bakermckenzie.com>; 'Treat, John' <John.Treat@bakermckenzie.com>; 'Brown,

Stephanie' <Stephanie.Brown@bakermckenzie.com>
**Subject:** RE: [EXTERNAL] RE: Search Terms

Hi Matthew,

Please let us know your availability for a meet and confer call this afternoon.

Regarding the search terms, there does not appear to be any dispute regarding the terms that you did not highlight. We believe the correct approach is for Nexo to (a) run those terms and begin reviewing them and (b) run the remaining disputed terms and provide a hit count for those terms so that we can have an informed discussion regarding the potential burden of any terms. I think this will be most productive if Nexo provides the additional hit count (i.e. unique documents not identified through search of the undisputed terms) for each search term by custodian. To be candid, I do not believe that there are going to be that many hits on most of these terms, but having this granular data will be very helpful in exploring options for limiting the burden on Nexo if that is not the case.

With respect to searches involving the term "NEXO." We believe that the majority of those searches are already significantly limited by proximity to other terms such that the searches will not be unduly burdensome regardless of whether you can run a case sensitive search or not. Moreover, while we are willing to meet and confer regarding these terms, we would first like to have a better understanding of the review tools you are using. Am I right that you are using NUIX's Ringtail software to search and review?

With respect to a final order on ECF 54, is it your position that the Court has ordered Nexo to produce documents responsive to all requests identified in that briefing subject to the limitation on custodians? If not, please let us know which RFPs Nexo is now willing to produce documents responsive to. As you know, we met and conferred extensively regarding these RFPs over several months. Our final proposed compromise was laid out in ECF 54 and the Court indicated that it agrees many of the RFPs are relevant and essentially adopted our proposed compromise (a limitation on custodians). If Nexo is now willing to produce documents responsive to certain RFPs, please let us know and we can update the Court. Otherwise, we do need a final ruling on ECF 54. While we are willing to wait until we have had a chance to discuss this with you, we do plan to contact the Court by the end of the week.

Thanks

James

---

**From:** Rawlinson, Matthew <Matthew.Rawlinson@bakermckenzie.com>
**Sent:** Wednesday, February 26, 2025 9:23 AM
**To:** james@taylorcopelandlaw.com; 'Max Ambrose' <maxambrose@taylorcopelandlaw.com>
**Cc:** Shelton, Ian <Ian.Shelton@bakermckenzie.com>; Treat, John <John.Treat@bakermckenzie.com>; Brown, Stephanie <Stephanie.Brown@bakermckenzie.com>
**Subject:** RE: [EXTERNAL] RE: Search Terms

James,

Thanks for your email and sorry for the delay. On question 1, the tools we use to process and run searches are NUIX and/or Google Vault. I am told case insensitivity is a normal feature of those tools, thus a "P" is searched as a "p", or "NEXO" is searched as "nexo."

On question 2, there is nothing to prompt. The court has responded to the letter briefs by ordering a limit to custodians. We need to confer on search terms and the scope of your RFPs. Our discussion should take into account the Court's order that non-US Nexo token sales are not discoverable. The general tenor of the Court's discovery orders has been to ensure a thorough meet and confer effort before submission of supplemental letter briefs. Thus, we see no need to contact the court and are opposed to you doing so unilaterally.

Please let us know your availability for a meet and confer on search terms and your RFPs. In advance of that meet and confer, to make it productive, we would appreciate a response to our email proposing ways to narrow the search terms.

**Matthew Rawlinson**

Partner, Litigation

Baker & McKenzie LLP

800 Capitol, Suite 2100

Houston, Texas 77002

United States

Tel: +1 713 427 5000

Dir: +1 713 427 5067

matthew.rawlinson@bakermckenzie.com



bakermckenzie.com | Facebook | LinkedIn | X | vcard

---

**From:** james@taylorcopelandlaw.com <james@taylorcopelandlaw.com>
**Sent:** Wednesday, February 26, 2025 11:19 AM
**To:** Rawlinson, Matthew <Matthew.Rawlinson@bakermckenzie.com>; 'Max Ambrose' <maxambrose@taylorcopelandlaw.com>
**Cc:** Shelton, Ian <Ian.Shelton@bakermckenzie.com>; Treat, John <John.Treat@bakermckenzie.com>; Brown, Stephanie <Stephanie.Brown@bakermckenzie.com>
**Subject:** [EXTERNAL] RE: Search Terms

Hi Matthew,

Following up on the items below. We plan to call the clerk this afternoon to inquire about the status of a final ruling on ECF 54. Please let us know if you would like to join the call.

Thanks

James

---

**From:** james@taylorcopelandlaw.com <james@taylorcopelandlaw.com>
**Sent:** Monday, February 24, 2025 12:04 PM
**To:** 'Rawlinson, Matthew' <Matthew.Rawlinson@bakermckenzie.com>; 'Max Ambrose' <maxambrose@taylorcopelandlaw.com>
**Cc:** 'Shelton, Ian' <Ian.Shelton@bakermckenzie.com>; 'Treat, John' <John.Treat@bakermckenzie.com>; 'Brown, Stephanie' <Stephanie.Brown@bakermckenzie.com>
**Subject:** RE: Search Terms

Thanks, Matthew. We will work get you our response in the next couple of days. However, we have a couple of questions.

1. With respect to your representation that "search terms are not case sensitive," can you please let us know what document review software you are using?
2. As you know, we are still waiting on a final ruling on our Joint Letter regarding Plaintiff's RFPs. ECF 54. The Court has indicated that for "many of the RFPs' at issue, the Court does think they are relevant." ECF No. 55. While we believe the Court has thus indicated that it intends to grant Plaintiff's Motion to Compel all or nearly all of the RFPs at issue in ECF No. 54 subject to the custodial limitations it imposed, if we do not receive a ruling by tomorrow, we would like to call the clerk on Wednesday to check in on the status of a final ruling on ECF 54. Can you please let us know if you are available to call the clerk with us (anytime in the afternoon works on our end), or if you consent to us calling the clerk without you? Essentially, we just want to make sure that this hasn't gotten lost in the shuffle of all our related discover filings.

Thanks

James

---

**From:** Rawlinson, Matthew <Matthew.Rawlinson@bakermckenzie.com>
**Sent:** Friday, February 21, 2025 2:18 PM
**To:** Max Ambrose <maxambrose@taylorcopelandlaw.com>; James Taylor-Copeland <james@taylorcopelandlaw.com>
**Cc:** Shelton, Ian <Ian.Shelton@bakermckenzie.com>; Treat, John <John.Treat@bakermckenzie.com>; Brown, Stephanie <Stephanie.Brown@bakermckenzie.com>
**Subject:** Search Terms

James and Max,

Now that it appears the custodian issue is resolved, we believe the parties should focus on narrowing the proposed search terms. I believe our last correspondence on this issue was a list provided by Max (1/24/2025 email) wherein you eliminated a minimal number of search terms. Even with that effort, there are still over 100 proposed terms. Nexo requests that you make another effort to narrow the search terms with the following caveats in mind. Please note, by providing this list of issues, we are not conceding the applicability or relevance of any document or search term and reserve the right to further review and discuss proposed search terms once you have had the chance to narrow your request. Also, the parties will need to have further discussions regarding the potential relevance of any term and consider the potentially high hit count on various terms. With that said, there are four overarching issues with your proposed terms as currently constructed:

•         It is our understanding that search terms are not case sensitive. Thus, we cannot search based on "Nexo" or "NEXO." And, as you have likely seen, every Nexo email contains the term "Nexo" in some form or fashion, either in the email address, the signature, or elsewhere. Thus, any proposed search term with "Nexo" as a limiter is no limit at all. Please review and revise the terms in blue in the attached and revise any proposed search term with the word "nexo" in it.

•         In the attached document, we have highlighted certain searches in yellow. These terms appear to be directed to certain specific documents or categories of documents and are not appropriate search terms for an email search. For example, you include the generalized term "balance sheet" and "audit." We believe we can have a discussion regarding the possible production of certain financial statements, to the extent they exist, without running these terms over 20 custodians. Similarly, you wish to search for "board /5 minutes". This does not appear to be a reasonable search term, but we could discuss the production of board minutes that touch on relevant issues in the case without running that term as a search term. In other words, if there are specific documents you believe you are entitled to, lets address those requests rather than an overbroad search. Please consider withdrawing the terms in yellow.

•         Items highlighted in red appear to be overbroad, generic, or inappropriate. For example, "recover" or "relief" are not specific to the case and are likely to generate numerous, irrelevant hits. Please consider withdrawing or revising the items in red. Further, the entire category of "Communications with law enforcement or regulators" is irrelevant and filed with overbroad terms. While it is unlikely we can agree to search terms in this category, we request that you make an effort to narrow the searches for our consideration.

We would like to begin working with our client soon to develop a hit count for the parties consideration but need your assistance to first narrow the categories. We are available to discuss these issues, or we look forward to a revised proposal. Have a nice weekend.

**Matthew Rawlinson**

Partner, Litigation

Baker & McKenzie LLP

800 Capitol, Suite 2100

Houston, Texas 77002

United States

Tel: +1 713 427 5000

Dir: +1 713 427 5067

matthew.rawlinson@bakermckenzie.com



bakermckenzie.com | Facebook | LinkedIn | X | vcard

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Please visit www.bakermckenzie.com/disclaimers for other important information concerning this message.

--

Taylor-Copeland Law

maxambrose@taylorcopelandlaw.com

501 W. Broadway Suite 800

San Diego, CA 92101

Phone: (602) 570-2656

www.taylorcopelandlaw.com


--

Taylor-Copeland Law

maxambrose@taylorcopelandlaw.com

501 W. Broadway Suite 800

San Diego, CA 92101

Phone: (602) 570-2656

www.taylorcopelandlaw.com