October 2, 2025

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:   *Cress v. Nexo Cap. Inc.*, Case No. 3:23-cv-00882-TSH
      JOINT DISCOVERY LETTER REGARDING PLAINTIFF'S DEFICIENT RESPONSES
      TO DEFENDANT'S REQUESTS FOR PRODUCTION

Dear Judge Hixson:

Pursuant to the Court's Discovery Standing Order, Plaintiff John Cress ("Plaintiff") and Defendant Nexo Capital, Inc. ("Defendant") submit this joint letter regarding the following discovery dispute.

**Issue**

Whether Plaintiff should be required to amend and/or supplement his answers to Defendant's Requests for Production 105, 107, 114, 117, 119, 120, 121, 127, 129, 132, 133, 140, 142, 144, and 145.

**Attestation**

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred telephonically and in good faith to resolve the disputes set forth below. Efforts to resolve the dispute without the Court's assistance were unavailing.

Date: October 2, 2025                    TAYLOR-COPELAND LAW

                                         By: /s/ James Taylor-Copeland

                                         Attorneys for Plaintiff


Date: October 2, 2025                    BAKER & MCKENZIE LLP

                                         By: /s/ Ian S. Shelton

                                         Attorneys for Defendant

1

**NEXO'S POSITION**

Discovery in this case is extremely one-sided. Nexo has been required to review hundreds of thousands of documents from **twenty-three custodial sources** using over 100 agreed search terms. Nexo has produced over 52,000 documents totaling over 220,000 pages. By contrast, Plaintiff has only **one custodial source**—Mr. Cress—yet he still refuses to produce relevant and responsive documents from Mr. Cress's few custodial sources. Indeed, Mr. Cresse has produced only 844 documents total—60x less than Nexo. Although Mr. Cress is asserting an eight-figure damages claim, including a "benefit of the bargain" damages theory that directly implicates his sophistication, assets available as collateral, and crypto trading history, Mr. Cress refuses to produce discovery necessary for Nexo to challenge his damages claims. Accordingly, Nexo seeks to compel responses to RFPs 105, 107, 114, 117, 119, 120, 121, 127, 129, 132, 133, 140, 142, 144, and 145. *See* Chart of RFPs attached as **Exhibit 1**.

Mr. Cress refuses to produce documents on critically relevant issues—crucially, his level of sophistication as an investor, his prior experience with crypto investing, his knowledge of cryptocurrency transactions, his alleged damages, and his assets available for collateral or repayment. Mr. Cress brings a fraud claim, which requires plaintiff's justifiable reliance on allegedly false statements. *See* First Am. Compl. ¶¶ 119-20. Mr. Cress's history of cryptocurrency investing—including the nature, performance, and pattern of those past investments—is relevant to both his sophistication and his claimed damages. *See Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994) ("The doctrine of mitigation of damages holds that '[a] plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided.'").

### A.  Cress Will Not Produce Documents Relevant to his Fraud Claim and Damages

Mr. Cress refuses to produce documents and communications relating to his knowledge of crypto and the risks associated with leveraged investing, the performance of his crypto investments, the history of his crypto transactions, other margin or leveraged transactions, and the tax or accounting treatment of the preceding:

- RFP 105 requests communications Mr. Cress had with an investment advisor, accountant, or tax adviser regarding his crypto investments.
- RFP 107 requests documents regarding any margin or leveraged financial transactions into which Mr. Cress entered, which are relevant to sophistication and Mr. Cress's awareness of the risk of the liquidation of his collateral on the Nexo platform.
- RFP 114 requests documents related to Mr. Cress's CSPR Token holdings, which Mr. Cress considered using as additional collateral to prevent liquidations on the Nexo platform (*see* CRESS-00001940).
- RFP 119 requests communications regarding crypto transactions or holdings referenced in several of Mr. Cress's produced documents.
- RFPs 121 and 133 request documents related to Mr. Cress's other accounts on crypto platforms, including Gemini and KuCoin, which were referenced in his document production.
- RFP 132 requests documents related to the tax treatment of Mr. Cress's NEXO Token transactions in 2021.

2

- RFP 140 requests all documents regarding the compromise of Mr. Cress's Coinbase and KuCoin accounts, which are relevant to Mr. Cress's financial position in 2021 and potential motivations for manufacturing a fraud claim against Nexo.
- RFP 142 requests documents sufficient to substantiate Mr. Cress's alleged assets of $6 million as of September 2021, which was referenced in his document production.
- RFP 144 requests documents which show the profit or loss associated with crypto transactions referenced in Mr. Cress's document production.
- RFP 145 requests documents showing Mr. Cress's crypto assets in 2021, as referenced in his document production.

Each of these requests goes to his sophistication as an investor, his reliance on Nexo's alleged statements, his alleged damages, as well as his ability to mitigate his damages. For example, Mr. Cress's history of buying and selling crypto—including average hold times—is relevant to Mr. Cress's "benefit of the bargain" damages position that he would have never sold the BTC and ETH he purchased in 2021 using Nexo's credit lines. *See* Mr. Cress's Feb. 14, 2025 Resp. to Nexo's ROG 1 (claiming "benefit of the bargain damages" for fraud in the amount of 400 BTC and 562 ETH—68% more than the 238 BTC and 120% more than the 250 ETH than Mr. Cress claims he deposited on the Nexo platform). An excerpt of Mr. Cress's Response to ROG 1 is in **Exhibit 2** and shows why the requested discovery is necessary to rebut his damages claim. The performance of his crypto and non-crypto investments, and the availability of assets to use as additional collateral or for repayment, is also relevant to his position that he would have held until today the crypto he purchased in 2021 using over $13 million in leverage, notwithstanding the fact that multiple market crashes occurred between the time of his liquidations in May/June 2021 and the present date. Mr. Cress wishes to hide this information to prevent Nexo from challenging his ultra-aggressive and speculative "benefit of the bargain" damages theory, which directly implicates his sophistication, historical trading patterns, additional assets available for collateral, investment performance, and crypto investment history. If Mr. Cress is going to maintain that he is entitled to 168% of the BTC and 220% of the ETH he initially deposited on the Nexo platform, he must produce all documents relevant to that position. Nexo's damages expert needs this information to assess and rebut the damages theories in Mr. Cress's own interrogatory response.

Mr. Cress's burden and proportionality objections are overblown, particularly in light of the meager 844 documents he has produced so far. Unlike Nexo, Mr. Cress is an individual plaintiff with a small set of email accounts, devices, and personal crypto and financial accounts. The requested communications can be collected and reviewed through targeted search terms, like Nexo has already done for hundreds of thousands of documents across 23x the number of custodians. Phone records, transaction histories, and financial records can typically be downloaded with ease from personal accounts, and many of those financial records or summaries were likely already prepared by Mr. Cress's financial advisors and for tax purposes. Mr. Cress purports to seek nearly $50 million (at current market prices) in fraud damages from Nexo. Nexo's RFPs are proportional to the amount in controversy, and Nexo is entitled to basic information to defend itself.

### B. Cress Will Not Produce the Full Set of His Relevant Communications

In the communications Mr. Cress produced, he discussed his investments with Nexo, the liquidations of his assets, his knowledge of crypto, and his crypto assets generally—all of which are relevant to the issues in this case. Yet he refuses to produce all relevant communications:

- RFP 117 requests all communications Mr. Cress had regarding crypto with a discrete number of persons in his crypto investor discussion group, all of whom were identified in by name or email in documents that Mr. Cress already produced.
- RFP 120 requests all communications Mr. Cress had with third parties regarding cryptocurrency in 2020-21, which relates to his sophistication and covers the critical time period leading up to his liquidations in 2021.
- RFP 127 seeks his complete cell phone records between March – October 2021, after Mr. Cress produced documents discussing calls with Nexo during this time period (*see, e.g.*, CRESS-00000090 ("Can you give me a call on Monday morning, which would be Sunday at night for me. I want to do a little planning and run a quick scenario by you.")).
- RFP 129 seeks documents relating to Mr. Cress's Telegram conversations regarding crypto in 2020 and 2021 (*see, e.g.*, CRESS-00000024 ( "People in the Nexo telegram chat are talking about a recent Reddit post that Nexo has a program now which allows loans of 2x, so that if you have $1,000,000, you can borrow $2,000,000.")).

All of these requests are relevant to the issues in this case. Mr. Cress's objection to production of his phone records between March and October 2021 is meritless; his fraud claims implicate purported communications and conversations that he allegedly had over the phone with his Relationship Manager, Mr. Hristov, during that narrow time period. The Court should compel production of the RFPs in the chart attached as **Exhibit 1**.

**PLAINTIFF'S POSITION**. At the outset of this case, Nexo served 100 expansive RFPs on Cress. Cress agreed to search for documents responsive to 86 of these RFPs. Included in Nexo's RFPs were breathtakingly broad requests for documents showing all crypto and non-crypto assets owned from 2021 to the present. RFPs 92, 93. To avoid burdening the Court, Cress proposed as a compromise to produce  spreadsheets showing all cryptocurrency transactions during 2021, his tax returns for 2021-2023, quarterly crypto account statements and transactions histories (where available),[1] and non-cryptocurrency financial records showing assets available to avoid liquidation between March and June 2021 (*See* **Exhibit 3,** Meet and Confer Letter from I. Shelton at 5-6). Nexo agreed to this compromise. The parties subsequently agreed to search terms and Cress produced substantially all of these documents by May 12, 2025.

Nexo has since served 46 additional RFPs seeking the same overbroad information it previously agreed to forego. Nexo seeks to compel an all-encompassing rummage through Mr. Cress's personal financial records, tax documents, phone records, and communications unrelated to Nexo, on the theory that such information might relate to his sophistication as an investor or efforts to mitigate damages. But Rule 26(b)(1) requires that discovery be not only relevant, but also proportional. Nexo's requests—which include, for example, every communication Mr. Cress had about cryptocurrency with anyone for a two-year period, and his complete cell phone records over seven months—are patently overbroad. Only one of the 13 RFPs Nexo seeks to compel involves Nexo or the NEXO Token at all (RFP 132). The Federal Rules do not permit such a fishing expedition. Indeed, courts now recognize that privacy concerns and undue intrusiveness must be considered in the proportionality analysis. *Lineberry v. AddShoppers, Inc.*, No. 23-cv-01996-VC (PHK), 2024 U.S. Dist. LEXIS 202375, at *23-24 (N.D. Cal. Nov. 6, 2024) (denying nonproportional discovery requests for years of data including "information relating to personal

---

[1] Cress also agreed not to oppose Nexo subpoenaing this information and it has since subpoenaed records from Coinbase and Binance.

relationships, [and] financial and tax-related information" that are "considered highly sensitive or of a personal nature."). Nexo's RFPs violate these principles and should be rejected under Rule 26.

**A. Nexo Seeks Irrelevant Information About Unrelated Investments and Transactions**

Nexo argues that virtually anything touching Mr. Cress's finances or crypto-related communications is "obviously relevant" because he alleges fraud (requiring justifiable reliance) and Nexo raises a mitigation-of-damages defense. But Nexo's sweeping requests go far beyond the matters at issue in this case. For example, RFP 120 demands "all communications [Mr. Cress] had with third parties regarding cryptocurrency in 2020-21," regardless of whether those communications had anything to do with Nexo or the events in dispute. This would encompass casual discussions with friends about market trends, wholly unrelated investments, or general news – none of which bears on whether Nexo misled Mr. Cress or whether his reliance was justified. Similarly, RFP 105 seeks "communications [Mr. Cress] had with an investment advisor, accountant, or tax adviser regarding his crypto investments," and RFP 107 seeks "documents reflecting any margin or leveraged financial transactions [he] entered, as well as the results". These requests are not tethered to the Nexo platform or the specific misrepresentations alleged. Rather, they reach into unrelated investment activities and personal financial planning occurring years before and after Nexo defrauded Plaintiff in 2021. A broad audit of every one of Mr. Cress's crypto trades or tax discussions is not necessary to resolve whether he was defrauded by Nexo. Even if some limited information about Mr. Cress's background or experience could be relevant to justifiable reliance, Nexo must tailor its discovery narrowly to that issue. It has not done so. Moreover, Cress has already produced his tax returns for 2021-2023, and ten spreadsheets which identify every cryptocurrency transaction Cress engaged in during 2021 and substantially all transactions he engaged in from 2014-2021. In response to Nexo's Rogs 12, 13, and 14, Cress has also produced information identifying all of Cress's substantial assets in March, May, and June 2021. In short, Nexo already has more than enough information to assess Cress' sophistication as a cryptocurrency investor.

Nexo's other RFPs are similarly overbroad. For example, RFPs 144 and 145 seek documents showing the profit or loss on all Mr. Cress's crypto transactions referenced in his production, and all his crypto asset holdings in 2021. This encompasses entirely unrelated trades and assets unrelated to Nexo. Such expansive discovery into a plaintiff's financial history is not justified here, especially given the highly confidential and sensitive nature of the information. At bottom, Nexo is attempting to put Mr. Cress's entire financial life on trial. The Court should not permit this intrusion when a far more limited discovery would suffice.

- RFPs 105, 107, 144, and 145 are discussed above.
- RFP 114 requests documents related to Mr. Cress's CSPR Token holdings. Cress has agreed to search for and produce documents reflecting Plaintiff's CSPR holdings or sales from March 1, 2021 to August 31, 2021. It is unclear how additional documents post-dating Plaintiff's liquidation would be relevant or proportional.
- RFP 119 requests communications regarding unrelated crypto transactions or holdings.
- RFPs 121, 133, and 140 seek documents related to Mr. Cress's accounts on other crypto platforms, including years of transactional data before and after the events at issue in 2021.
- RFP 132 seeks documents related to the tax treatment of Cress's NEXO Token transactions in 2021. Cress has already produced his 2021 and 2022 tax returns reflecting the tax

treatment of those transactions. It is unclear how additional documents like communications with Cress' CPA in 2022 or onward could be relevant or proportional.

- RFP 142 seeks documents showing Mr. Cress's total assets in September 2021. It is impossible that Cress' financial position **months after** Nexo liquidated his account in June 2021 could be of any relevance to his efforts to mitigate his losses months earlier. Moreover, Cress has already provided detailed answers to Nexo's interrogatories requesting Cress' "net worth as of March 1, 2021" including all his assets, and his substantial cryptocurrency assets in May and July 2021. *See* Cress Response to Rog Nos. 12, 13, 14.

### B. Nexo Seeks Communications Entirely Unrelated to Nexo or this Case

Nexo's RFPs would also force Mr. Cress to divulge highly personal communications with no benefit to the case. For instance, RFP 127 demands Mr. Cress's complete phone records for March–October 2021. This is a staggeringly intrusive request. Mr. Cress's phone records would show every call he placed or received in a seven-month span regardless of subject matter. At most, Nexo might be entitled to details of specific calls related to the Nexo platform or the liquidation events. Yet Nexo did not tailor RFP 127 to such calls; it wants everything. The vast majority of entries in a full phone record would be irrelevant and private, and their disclosure would raise significant privacy concerns for both Mr. Cress and the third parties on the other end of the line. Courts in this District have flatly rejected similar "any and all" data grabs. For example, in *Henson v. Turn, Inc*., the defendant sought unfettered access to the plaintiffs' personal mobile devices and browsing history. *Henson v. Turn, Inc.*, No. 15-cv-01497-JSW (LB), 2018 U.S. Dist. LEXIS 181037, at *14-15 (N.D. Cal. Oct. 22, 2018). The court denied those overbroad requests, noting they "would likely sweep in numerous private and irrelevant" materials and were "disproportional to the needs of the case." *Id.* So too here. Nexo's demand for complete phone records (and broad communications) "flies in the face of Rule 26(b)'s relevancy and proportional requirements." *See id.* at *10.

Nexo's other RFPs also seek communications with no nexus to this case. RFP 117 seeks all communications Mr. Cress had regarding cryptocurrency with a number of persons, including years of communications after the events at issue. RFP 120 seeks all communications Mr. Cress had with third parties regarding cryptocurrency in 2020-21, and RFP 129 seeks all Telegram communications regarding cryptocurrency in 2020-21. But Cress has already produced all nonprivileged communications regarding Nexo and the NEXO Token. It is unclear how communications regarding unrelated investments are relevant or proportional.

Finally, Nexo's complaints about Mr. Cress's production volume and its claims of "one-sided" discovery are unfounded. Nexo asserts that because it has collected and reviewed hundreds of thousands of its own documents, it is unfair that Mr. Cress has produced under 1,000. But this disparity is a function of the parties' differing roles and the claims at stake, not any obstruction by Plaintiff. Nexo is a large business entity; the alleged fraud and wrongful conduct occurred through Nexo's platform and employees, necessitating searches of Nexo's emails, records, and communications. Mr. Cress, by contrast, is an individual whose relevant documents are naturally limited to a comparatively small set: his communications with Nexo (which Nexo already possesses as well), communications with a few third parties about the Nexo platform or liquidation events, and documents evidencing his Nexo account activity and losses. He has produced those core materials and more. It is neither surprising nor suspicious that an individual plaintiff would have fewer discoverable documents than a corporate defendant. That is the norm, not an aberration.