Ian S. Shelton (SBN 264863)
BAKER & MCKENZIE LLP
ianshelton@bakermckenzie.com
10250 Constellation Blvd., Suite 1850
Los Angeles, CA 90067
Phone: (310) 299-8535
Fax: (310) 201-4721

*Attorneys for Defendant*
Nexo Capital, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CRESS, | Case No. 3:23-cv-00882-TSH |
| Plaintiff, | The Hon. Thomas S. Hixson |
| vs. | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (DKT. 76)** |
| NEXO CAPITAL INC., | |
| Defendant. | Hearing Date:  November 6, 2025<br>Hearing Time:  10:00 a.m. |
| | Courtroom:  E – 15th Floor<br>Address:  Federal Building<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 |

# <u>TABLE OF CONTENTS</u>

Page No.

INTRODUCTION ..................................................................................................... 9

FACTUAL BACKGROUND ................................................................................... 11

A.    Cress Contemporaneously Was Aware of Nexo's Fees and Execution Costs ................... 11

B.    Nexo Produced Enough Information in March 2025 for Cress to Bring His
New Claims ........................................................................................................ 12

C.    Now, Cress Radically Changes His Theory of the Case and Dramatically
Expands the Scope of the Litigation ................................................................. 13

LEGAL STANDARD ............................................................................................. 13

ARGUMENT .......................................................................................................... 14

I.    LEAVE TO AMEND IS NOT WARRANTED UNDER RULE 16 .............................. 14

    A.    Cress Has not Been Diligent in Pursing Amendment ......................................... 14

    B.    Nexo Will Be Prejudiced if Amendment Is Allowed Near the Close of Discovery
.................................................................................................................. 16

II.    LEAVE TO AMEND IS NOT WARRANTED UNDER RULE 15 .............................. 19

    A.    Cress Has Unduly Delayed Seeking Amendment .............................................. 19

    B.    Nexo Will Be Prejudiced by Amendment Near the Close of Discovery ........... 19

    C.    Cress Acted in Bad Faith ................................................................................... 19

    D.    Cress's Proposed Claims Are Futile .................................................................. 20

        1.    Fraudulent Inducement ............................................................................. 20

        2.    Common Law Fraud .................................................................................. 22

        3.    Civil Theft ................................................................................................. 23

        4.    RICO and RICO Conspiracy .................................................................... 24

            a.    Cress Does not Allege the Existence of a RICO Enterprise ................. 24

            b.    Cress Fails to Plead a Pattern of Racketeering Activity ...................... 28

            c.    Cress's RICO Claim Is Based in His Alleged Securities Fraud ........... 30

            d.    The Conspiracy Claim Falls with the RICO Claim .............................. 31

        5.    Fraudulent Omission ................................................................................. 31

        6.    Breach of Contract .................................................................................... 33

CONCLUSION ....................................................................................................... 33

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re 5-Hour ENERGY Mktg. & Sales Practices Litig.*,
5
    2015 WL 12734796 (C.D. Cal. Jan. 22, 2015) ......................................................... 13

6
*AbCellera Biologics Inc. v. Bruker Cellular Analysis, Inc.*,
    2025 WL 2021885 (N.D. Cal. July 18, 2025) .......................................................... 7
7

8
*Acri v. Int'l Assoc. of Machinists & Aerospace Workers*,
    781 F.2d 1393 (9th Cir. 1986) ............................................................................... 11

9
*AdTrader, Inc. v. Google LLC*,
10
    2018 WL 3428525 (N.D. Cal. July 13, 2018) .......................................................... 15

11
*Alibaba.com Hong Kong Ltd. v. P.S. Prods., Inc.*,
    2012 WL 13060303 (N.D. Cal. Mar. 19, 2012) ......................................................... 9
12

13
*Alsabur v. Autozone, Inc.*,
    2014 WL 1340730 (N.D. Cal. Apr. 3, 2014) ........................................................... 11

14
*Alvarez v. Adtalem Educ. Grp., Inc.*,
15
    2019 WL 13065378 (N.D. Cal. Dec. 16, 2019) ....................................................... 15

16
*Baystar Cap. Mgmt. LLC v. Core Pac. Yamaichi Int'l H.K. Ltd.*,
    2007 WL 9711373 (C.D. Cal. Apr. 16, 2007) ........................................................ 24
17

18
*Bigler-Engler v. Breg, Inc.*,
    7 Cal. App. 5th 277 (2017)..................................................................................... 24

19
*BSA Framing, Inc. v. Applied Underwriters, Inc.*,
20
    2018 WL 11462083 (C.D. Cal. Feb. 27, 2018) ................................................. 16, 19

21
*Cal Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,
    818 F.2d 1466 (9th Cir. 1987)................................................................................ 21
22

23
*Carranza v. City of San Pablo*,
    2022 WL 110647 (N.D. Cal. Jan. 12, 2022) .......................................................... 10

24
*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
    43 Cal.4th 375 (2008)............................................................................................. 24
25

26
*Core Focus Consulting 2, LLC v. RenewAge Energy Sols., Inc.*,
    2024 WL 3403115 (C.D. Cal. July 12, 2024) ........................................................ 15
27

28
*In re Countrywide Fin. Corp. Mort. Mktg. & Sales Practices Litig.*,
    601 F. Supp. 2d 1201 (S.D. Cal. 2009) .................................................................. 17

*Cream v. N. Leasing Sys., Inc.*,
    2015 WL 4606463 (N.D. Cal. July 31, 2015) ................................................................ 12

*Cruz v. FXDirectDealer, LLC*,
    720 F3d 115 (2d Cir. 2013) ......................................................................................... 19

*Ctr. for Biological Diversity v. U.S. Forest Serv.*,
    80 F.4th 943 (9th Cir. 2023) ........................................................................................ 12

*Davies v. GetFugu, Inc.*,
    2010 WL 11597458 (C.D. Cal. Aug. 26, 2010) ............................................................ 22

*DCD Programs, Ltd. v. Leighton*,
    833 F.2d 183 (9th Cir. 1987) ........................................................................................ 10

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
    48 F.3d 1260 (D.C. Cir. 1995) ..................................................................................... 22

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004) ...................................................................................... 16

*Eller v. EquiTrust Life Ins. Co.*,
    778 F.3d 1089 (9th Cir. 2015) ...................................................................................... 21

*Ellis v. J.P. Morgan Chase & Co.*,
    950 F. Supp. 2d 1062 (N.D. Cal. 2013) .............................................................. 17, 18, 19

*Experexchange, Inc. v. Doculex, Inc.*,
    2009 WL 3837275 (N.D. Cal. Nov. 16, 2009) ................................................................ 8

*Focus 15, LLC v. Nico Corp.*,
    2022 WL 267441 (N.D. Cal. Jan. 28, 2022) ................................................................. 21

*Fragle v. Faulkner*,
    110 Cal. App. 4th 229 (2003) ...................................................................................... 24

*Gaines v. Home Loan Ctr., Inc.*,
    2010 WL 11506442 (C.D. Cal. May 24, 2010) .............................................................. 17

*Garcia through AG v. Cnty. of Napa*,
    2024 WL 1734125 (9th Cir. Apr. 23, 2024) .................................................................... 7

*GEC US 1 LLC v. Frontier Renewables, LLC*,
    2016 WL 4677585 (N.D. Cal. Sept. 7, 2016) ................................................................ 15

*Gjovik v. Apple Inc.*,
    2024 WL 2309100 (N.D. Cal. Jan. 30, 2024) ................................................................ 17

*Google LLC v. Sonos, Inc.*,
    2021 WL 4061718 (N.D. Cal. Sept. 7, 2021) .................................................................. 8

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

*Hanson v. Nexo Cap. Inc.*,
No. 2:24-cv-10466-MAR, Dkt. 31 (C.D. Cal. June 30, 2025)..........................................23, 24

*Hayward Prop., LLC v. Commonwealth Land Title Ins. Co.*,
2021 WL 4927012 (N.D. Cal. Sept. 28, 2021)...............................................................5, 6, 11

*Higgins v. Farr Fin. Inc.*,
2009 WL 3517597 (N.D. Cal. Oct. 26, 2009) .............................................................20

*Howard v. Am. Online Inc.*,
208 F.3d 741 (9th Cir. 2000).............................................................23

*iRise v. Axure Software Sols., Inc.*,
2009 WL 3615973 (C.D. Cal. July 30, 2009) .............................................................7

*Jackson v. Bank of Haw.*,
902 F.2d 1385 (9th Cir. 1990) .............................................................11

*Jordan v. Advanced Med. Revs., LLC*,
2021 WL 1962561 (C.D. Cal. May 17, 2021).............................................................11

*Kamal v. Eden Creamery, LLC*,
88 F.4th 1268 (9th Cir. 2023).............................................................5, 6, 7, 8

*Katman v. Victoria's Secret Catalogue*,
167 F.R.D. 649 (S.D.N.Y. 1996).............................................................5

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009).............................................................13

*Kinect Renewable Sols. Ltd. Liab. Co. v. United Am. Transp.*,
2025 WL 2377024 (C.D. Cal. May 28, 2025).............................................................15

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
940 F.2d 397 (9th Cir. 1991).............................................................20

*LD v. United Behavioral Health*,
508 F. Supp. 3d 583 (N.D. Cal. 2020) .............................................................16

*Liberty Mut. Ins. Co. v. Cal. Auto. Assigned Risk Plan*,
2012 WL 3277213 (N.D. Cal. Aug. 9, 2012).............................................................7

*Life Bliss Found. v. Sun TV Network Ltd.*,
2014 WL 12589657 (C.D. Cal. Sept. 17, 2014).............................................................22

*McEvoy v. ChanceLight Educ.*,
2024 WL 3957207 (N.D. Cal. Aug. 27, 2024).............................................................10

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990).............................................................9

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

*Mostowfi v. 12 Telecom Int'l, Inc.*,
    269 Fed. App'x 621 (9th Cir. 2008) ...................................................................... 21

*Nichols v. Mahoney*,
    608 F. Supp. 2d 526 (S.D.N.Y. 2009) .................................................................. 12

*Norton v. LVNV Funding LLC*,
    2020 WL 2557003 (N.D. Cal. May 19, 2020) ........................................................ 8

*OCM Principal Opportunities Fund v. CIBC World Mkts. Corp.*,
    157 Cal. App. 4th 835 (2007) .......................................................................... 13, 14

*Powers v. Wells Fargo Bank NA*,
    439 F.3d 1043 (9th Cir. 2006) ........................................................................... 22

*Purchase Real Estate Grp. Inc. v. Jones*,
    2010 WL 3377504 (S.D.N.Y. 2010) ................................................................. 5, 16

*Ray v. Spirit Airlines, Inc.*,
    836 F.3d 1340 (11th Cir. 2016) ......................................................................... 19

*Regents of Univ. of Cal. v. Affymetrix, Inc.*,
    2018 WL 4053318 (S.D. Cal. Aug. 24, 2018) ....................................................... 8

*Royce Int'l Broad. Corp. v. Field*,
    No. C 99-4169 SI, 2000 U.S. Dist. LEXIS 2369 (N.D. Cal. Feb. 22, 2000) ......... 16

*Salahutdin v. Valley of Cal., Inc.*,
    24 Cal. App. 4th 555 (1994) .............................................................................. 24

*Satvati v. Allstate Northbrook Indem. Co.*,
    634 F. Supp. 3d 792 (C.D. Cal. 2022) ............................................................... 25

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ...................................................................... 19, 20

*Schwerdt v. Int'l Fid. Ins. Co.*,
    28 Fed. 715 (9th Cir. 2002) ................................................................................ 8

*Spiteri v. Russo*,
    2013 WL 4806960 (E.D.N.Y. 2013) ................................................................... 16

*Srigley v. Monterey Peninsula Yacht Club, Inc.*,
    748 F. Supp. 3d 801 (N.D. Cal. 2024) ............................................................... 10

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) ............................................................. 10

*Sun West Mortg. Co. v. First Mariner Bank*,
    2016 WL 11746768 (C.D. Cal. Aug. 25, 2016) ................................................... 24

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)..................................................................................22

*Thao v. Swarthout*,
    2024 WL 3904874 (E.D. Cal. Aug. 22, 2024) .........................................................8

*Titan Glob. LLC v. Organo Gold Int'l, Inc.*,
    2012 WL 6019285 (N.D. Cal. Dec. 2, 2012) .........................................................20

*Townsend v. Nat'l Arb. Forum, Inc.*,
    2012 WL 12736 (C.D. Cal. Jan. 4, 2012)..............................................................19

*In re Toyota Motor Corp. Unintended Accelerated Mktg., Sales Practices, & Prods.*
    *Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011)...........................................................18, 19

*TrustLabs, Inc. v. Jaiyong*,
    2024 WL 1354486 (N.D. Cal. Mar. 30, 2024)......................................................10

*Tyco Thermal Controls LLC v. Redwood Indus.*,
    2009 WL 4907512 (N.D. Cal. Dec. 14, 2009) ......................................................11

*U.S. v. $17,980.00 in U.S. Currency*,
    2014 WL 4924866 (D. Or. Sept. 30, 2014) ..........................................................11

*U.S. v. Dowling*,
    739 F.2d 1445 (9th Cir. 1984)..............................................................................21

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)..............................................................................12

*Wagner v. S. Cal. Edison Co.*,
    2017 WL 10543557 (C.D. Cal. July 28, 2017) .......................................................8

*Wolov v. Duel*,
    2023 WL 2780369 (C.D. Cal. Feb. 28, 2023)......................................................23

*World Surveillance Grp. Inc. v. La Jolla Cove Invs., Inc.*,
    66 F. Supp. 3d 1233 (N.D. Cal. 2014) .................................................................24

*Wynes v. Kaiser Permanente Hosps.*,
    2012 WL 2339245 (E.D. Cal. June 19, 2012) ........................................................8

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010).................................................................13

*Zivokovic v. S. Cal. Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002)................................................................................8

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

**Statutes**

18 U.S.C. § 1961 ................................................................................................ 20

18 U.S.C. § 1962 ........................................................................................... 16, 20

PSLRA ............................................................................................................... 22

RICO ........................................................................................................... *passim*

**Other Authorities**

Rule 9 ......................................................................................................... *passim*

Rule 15 ....................................................................................................... *passim*

Rule 16 ....................................................................................................... *passim*

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

**<u>INTRODUCTION</u>**

Plaintiff John Cress seeks to double the number of claims and triple the amount in controversy—months after the expiration of the amended pleading deadline in December 2024 and near the close of discovery—based on information that he has known since filing this lawsuit in 2023. He originally asserted five causes of action in his First Amended Complaint ("FAC"). His fraudulent inducement and UCL claims were originally based on alleged false statements in a "VIP Relationship Program" brochure. The securities claims were based on registration of the Nexo Token with the SEC and a representation regarding the token's SEC status. The parties' discovery efforts have focused on the allegations supporting the five claims in the FAC.

Now Cress wants to change all that. A few months prior to the close of discovery, Cress seeks to radically expand this lawsuit—his causes of action, his theory of the case, and the potential liability of Nexo—based on information he supposedly learned after Nexo produced documents in late August and early September 2025. He now feigns ignorance that Nexo charged him "fees" on his transactions, and tries to assert **<u>six</u>** new causes of action—for fraud, civil theft, RICO, RICO conspiracy, fraudulent omission, and breach of the Cryptocurrency Purchase Agreement ("CPA"). He purports to seek **<u>treble damages</u>** for civil theft and RICO, and claims that a business charging fees or making a profit is a criminal RICO enterprise. He also seeks to amend his pre-existing causes of action for fraudulent inducement and UCL violations to add his new "fee" allegations. However, Cress knew the facts underlying his proposed amendment well before he filed this case. Cress extensively discussed Nexo's fees with his friends in 2021, and Nexo discussed those fees with him.

Cress tries to excuse his tardiness by claiming that he is relying on Nexo's August and September document productions. This argument ignores his own contemporaneous knowledge of the "fee" issue disclosed in his own document production, and it hides Cress's own admission that the primary documents underlying Cress's new "fee" theory were produced by Nexo in March 2025—**<u>six months</u>** before he filed this motion. Cress's attorney admits in his declaration that Nexo produced these documents in March 2025, but notes that he did obtain a "certified translation" for these two documents until six months later in September 2025 (the day before he filed the present motion on September 30). Taylor-Copeland Decl. (Dkt. 76-1) ¶¶ 7, 10. Cress's attorneys obviously

1  knew about these documents much earlier, and did not need a "certified translation" to seek

2  amendment, as they quoted the documents in English in the Proposed Second Amended Complaint

3  that they served on Nexo's counsel on September 22. *Id.* ¶ 21. Cress cannot excuse his delay by

4  waiting months to obtain "certified translations" of documents he had since March 19, 2025. The

5  other documents cited in Cress's attorney declaration are cumulative documents about the same fee

6  issues that Cress has known about since 2021.

7          What actually occurred here is clear: Cress pursued his earlier theory of the case—regarding

8  supposed misrepresentations in the VIP Brochure and alleged violations of California securities

9  laws—from 2023 until now. When his original liability theory fell apart near the end of discovery

10  (his original claims are based on the preposterous contention that Nexo promised that collateral

11  securing a $13 million credit line would never be liquidated), he pivoted to his new "fee" theory,

12  now seeking treble damages for "theft" and RICO. Factually, these new claims open a complicated

13  and technical new area of discovery regarding Nexo's fees, profits, pricing, trading operations,

14  systems, and crypto market mechanics, all of which would require an enormous volume of new

15  discovery and expert testimony. Declaration of Ian S. Shelton ("Shelton Decl."), ¶¶ 7-8. Legally,

16  these new claims—including the "thermonuclear weapon" of litigation, civil RICO—have entirely

17  different legal elements for which Nexo has zero discovery. As icing on the cake, Cress seeks leave

18  to file a new common law fraud claim with the exact same factual predicate as the old California

19  securities fraud claim he alleged back in 2023. While the facts are the same, the legal elements and

20  potential damages are different. Asserting brand new legal theories based on old facts months after

21  the amended pleading deadline, by definition, does not meet the "good cause" standard of Rule 16.

22          Because Cress fails to meet the Rule 16 "good cause" standard for amendment, the inquiry

23  is over and the motion should be denied. If there were any doubt, all four elements of the Rule 15

24  standard for amendment, including the futility of the new proposed claims, likewise support denial

25  of the motion. The Court should not allow Cress to completely change the factual and legal basis of

26  this lawsuit on the eve of the discovery cutoff. Cress should not be allowed to bring an entirely new

27  lawsuit through a belated amendment and deprive Nexo of the ability to defend itself.

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

# FACTUAL BACKGROUND

### A.    Cress Contemporaneously Was Aware of Nexo's Fees and Execution Costs

Cress's contention that he did not know about Nexo's supposed "secret fees" until Nexo's August 2025 document production is contradicted by multiple admissions in Cress's own document production. Mot. (Dkt. 76) at 4. Contemporaneously with his transactions in 2021, Cress told his friends, and Nexo told him, that Nexo charged fees and made profits on his transactions:

- On March 25, 2021, Cress wrote to Hristov: "I don't want to try to withdraw back to Coinbase Pro at a very busy time if I can just *sell through the Nexo OTC desk with the same fees*." Shelton Decl., Ex. 1 (emphasis added).

- On April 6, 2021, Cress wrote to a friend that Nexo's "fees are not better" than Coinbase's, but Nexo "*can have the fee* ha ha" because Nexo "allowed me to make more money in a short amount of time than I ever thought I could." Shelton Decl., Ex. 9 at 699 (emphasis added). Cress added: "I go through their OTC desk, *so it's not even fees really* – they execute my order over a 24 hour period and use a weighted average for my price and [e]very time the execution price is magically at the very high end of the 24 hour price, so they basically front run my order and *take a big slippage as their profit*[.] I'm ok with it though[.]" *Id.* (emphasis added).

- On May 3, 2021, Cress wrote to a friend that Nexo "rips me off worse than" 1.5% in fees "every time but it doesn't matter." Shelton Decl., Ex. 10 at 12664-65.

- On May 4, 2021, after executing an OTC transaction for Cress, Octavian Dinca of Nexo wrote to Cress: "The cost per unit above includes the *0.5% cost of execution* through the N[exo] OTC desk and what the partner OTC desk charged for the transaction which is estimated around ~0.5% as well." Shelton Decl., Ex. 8 at 34 (emphasis added).

- Between June 30 – July 4, 2021, Cress and Hristov emailed regarding paired OTC transactions. Hristov told Cress that the first "deal will be subject to a *2.7% execution cost*." Shelton Decl., Ex. 3 at 3592 (emphasis added). Cress asked if this 2.7% fee "will be the total fee all the way around, including price slippage etc," and Hristov told him it would be "the *total cost for the sell execution*." *Id.* at 3591(emphasis added). After executing the first transaction, Hristov stated that "2.7% was the fee for the sell order as we agreed," and he would try to "get the best possible execution price for the [second] purchase," which he guessed would "not exceed 1.9%." *Id.* at 3590. In the end, Hristov offered Cress a subsidized execution cost of "*~1% instead of 1.9%*," which Cress confirmed. *Id.* at 3588-89 (emphasis added).

- Between July 3–5, 2021, Cress texted a friend named "Ace" about the fees for these same paired OTC transactions. Shelton Decl., Ex. 11. Cress wrote that the "*whole transaction cost me about $104,000*," and Nexo "*charg[ed] me a 5% execution fee* instead of 2.7%[.]" *Id.* at 13122 (emphasis added). Cress further wrote: "Now I'm

upset with myself that I didn't ask him to spread it across BTC, ETH, and N[EXO] because that's what I want, but doing it now *will kill me in fees again*. The whole reason I hurried to do it all in N[EXO] was *based on their empty promise that it would not cost me*!!!!!!" *Id.* at 13123 (emphasis added).

**B.    Nexo Produced Enough Information in March 2025 for Cress to Bring His New Claims**

This laundry list of admissions from Cress in 2021 show that he could have asserted his "fee" claims when he filed this lawsuit in 2023. But there is more. Cress's own attorney admits that Nexo produced **the two key documents** on which Cress's new claims rely (Exhibits 5 and 8) **on March 19, 2025**—over six months before filing this motion. *See* Taylor-Copeland Decl. (Dkt. 76-1) ¶¶ 7, 10. All of the new "fee" claims in the Proposed SAC rely on a Nexo internal email in which a Nexo employee explained the fees and profits for one of Cress's OTC transactions, including the difference between the amount of Bitcoin Nexo bought and the amount credited to Cress, the differences in prices between what Nexo purchased the crypto and what it credited to Cress, the profit for the OTC desk, and the total profit for Nexo. *See* Dkt. 76-7 (NEXO-0003645). This email, along with a similar email for another of Cress's OTC transactions that was also produced on March 19, 2025 (*see* Dkt. 76-10 (NEXO-0003604)), clearly put Cress on notice of his "fee" claims. Yet, Cress did nothing with this information for six months until it was advantageous for him to do so. Cress's attorney tries to obscure this fact in his declaration by stating that he did not obtain "certified translations" of the documents until the day before he filed this motion, but that delay is attributable to Cress. In any event, Cress had already translated the two documents and knew what they meant well before September 29, as shown by his September 22 draft of the Proposed SAC that contained a translation. Taylor-Copeland Decl. ¶ 21.

Based on his own knowledge in 2021 and documents that Nexo produced in March 2025, Cress knew of the factual basis for his claims. His discovery requests further reveal his knowledge. On June 5, 2025, he served Interrogatory Nos. 13-14, which request Nexo to "[i]dentify all instances where [it] informed Cress that [it] charged any fees, received any commissions, or otherwise profited from or derived any financial benefit from Cress's OTC purchases through Nexo [Interrogatory No. 13] / liquidations on the Nexo Platform [Interrogatory No. 14], including the date, form, and content

-12-

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

of the communication."

### C.   Now, Cress Radically Changes His Theory of the Case and Dramatically Expands the Scope of the Litigation

Cress's claim that he is "slightly expand[ing] the scope of the case" is absurd. Mot. (Dkt. 76) at 14. Cress seeks to add **six new causes of action**, including civil theft and RICO claims and allegations of criminal behavior. *See Purchase Real Estate Grp. Inc. v. Jones*, 2010 WL 3377504, at *6 (S.D.N.Y. 2010) ("In considering civil RICO claims, a court must be mindful of the devastating effect such claims may have on defendants."); *Katman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) ("Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device."). Cress now seeks treble damages, which raises the potential liability in this case from eight to nine figures. The facts of his new claims are entirely different. The gravamen of Cress's FAC is alleged fraud in Nexo's VIP Brochure and misrepresentations regarding the securities status of the Nexo Token. *See* FAC (Dkt. 29) ¶¶ 38-47, 83-94, 115-23, 127 (allegations regarding fraud in the VIP Brochure). Now, Cress's Proposed SAC is now focused on Nexo's fees and profits, as well the technical mechanics of Nexo's trading operations, and changing his securities fraud allegations to a far broader common law fraud claim. *See id.* ¶¶ 67-75. This is not a "slight" expansion of the case. It is a new case entirely. It is impossible to properly litigate this case and complete discovery regarding new claims within the current schedule—with initial expert reports due December 12, rebuttal reports January 30, and close of discovery on February 27. Dkt. 71.

### LEGAL STANDARD

The deadline to amend pleadings expired in December 2024 (Dkt. 51), triggering the "good cause" standard of Rule 16. It is only after the Court decides Cress met his burden of establishing good cause under Rule 16 that the Court turns to Rule 15. *Hayward Prop., LLC v. Commonwealth Land Title Ins. Co.*, 2021 WL 4927012, at *3 (N.D. Cal. Sept. 28, 2021). "The good cause standard primarily considers the diligence of the party seeking the amendment." *Kamal v. Eden Creamery, LLC*, 88 F.4th 1268, 1277 (9th Cir. 2023) (quotation omitted). The "existence or degree of prejudice to the party opposing the modification" adds an additional reason to deny a motion for leave to amend, but "the focus of the inquiry is upon the moving party's reasons for seeking modification. .

1    . .” *Id.* (quotation omitted). Because Cress was not diligent in seeking amendment, the Rule 16

2    inquiry "should end" and his motion should be denied. *Id.* If Cress can show good cause under Rule

3    16(b)—and he cannot—he must then demonstrate that leave to amend is warranted under Rule 15(a).

4    *Hayward Prop.*, 2021 WL 4927012, at *3. Courts consider five factors in determining whether to

5    grant leave to amend: (1) undue delay; (2) bad faith or dilatory motive; (3) prejudice to the opposing

6    party; (4) futility of amendment; and (5) repeated failure to cure deficiencies by amendments

7    previously allowed. *Id.* "Of these factors, prejudice carries the greatest weight." *Id.* (quotation

8    omitted). The first four factors weigh strongly against amendment under Rule 15.

9    **ARGUMENT**

10   **I.      LEAVE TO AMEND IS NOT WARRANTED UNDER RULE 16**

11       **A.      Cress Has not Been Diligent in Pursing Amendment**

12       While "[n]ewly discovered facts may constitute good cause to modify a pretrial scheduling

13   order to allow amendment to the pleadings," that is not what occurred here. *Hayward Prop.*, 2021

14   WL 4927012, at *4. "The diligence inquiry is not confined to the question of whether the moving

15   party could have met a deadline in the first instance; it also asks whether the moving party acted

16   diligently in seeking to modify the scheduling order once it became apparent that it could not do

17   so." *Id.* at *5 (citation omitted).

18       As explained above, Cress admits to knowing of these "fee" claims when the transactions

19   occurred in 2021, and certainly no later than March 2025 when Nexo produced the two centerpiece

20   documents of the Proposed SAC, yet failed to do so until mere months before the end of fact

21   discovery. *Hayward Prop.* is instructive. There, the court found that plaintiff did not act with

22   diligence in seeking to amend where "Plaintiff would have been aware of the need for discovery on

23   this issue from the inception of the action" and that "the essential facts underlying Plaintiff's

24   proposed bad faith claim were available to Plaintiff 'months or years' before it filed the instant

25   motion." *Id.* at *4. This situation is no different: Cress was indisputably aware of Nexo's fees

26   contemporaneously in 2021, and the key documents on which Cress relies were produced six months

27   ago in March 2025. *See* Dkt. 76-1 ¶¶ 7, 10; Dkt. 76-7; Dkt. 76-10.

28       Courts in this Circuit have consistently denied similar motions to amend where the moving

-14-

party was, or should have been aware, of the facts underlying its proposed amendment. *See, e.g.,* *Garcia through AG v. Cnty. of Napa*, 2024 WL 1734125, at *2 (9th Cir. Apr. 23, 2024) (plaintiffs did not show good cause because they "should have been aware of the facts alleged in the proposed amended complaint well before they filed their motion"); *Kamal*, 88 F.4th at 1278 (defendants produced the "key documents" plaintiffs cited as the basis for their new theory five months before plaintiffs sought leave to amend their complaint);[1] *AbCellera Biologics Inc. v. Bruker Cellular Analysis, Inc.*, 2025 WL 2021885, at *2–3 (N.D. Cal. July 18, 2025) (no good cause where plaintiffs produced the relevant documents eight months before defendant argues it could first have discovered the factual basis for the amendment); *Liberty Mut. Ins. Co. v. Cal. Auto. Assigned Risk Plan*, 2012 WL 3277213, at *4 (N.D. Cal. Aug. 9, 2012) (moving party would have been aware of discovery on the issue on which it allegedly discovered new information "from the start of the litigation").

The documents Nexo produced in March 2025 (in addition to the information Cress already possessed in 2021) gave Cress sufficient notice to seek discovery on the issues of Nexo's fees and profits, yet Cress did not do so, despite propounding significant amounts of discovery since then. Shelton Decl. ¶ 6. This fact alone is a sufficient reason for the Court to deny leave to amend. *See, e.g., Liberty Mut. Ins. Co.*, 2012 WL 3277213, at *4 (moving party did not demonstrate that it "diligently sought discovery" where it had knowledge of the issue from the start of the litigation and did not explain "why it could not have obtained 'confirmation'" through any discovery means); *see also AbCellera Biologics Inc.*, 2025 WL 2021885, at *2 (in the eight months between production of the key documents and the motion to amend, defendant "served numerous discovery requests" but sought no discovery on the key documents); *iRise v. Axure Software Sols., Inc.*, 2009 WL 3615973, at *3 (C.D. Cal. July 30, 2009) (moving party's argument asserting "recently discovered" facts was insufficient to show good cause where party "was not diligent in seeking discovery" on those issues).

Cress argues that he did not learn of the facts regarding Nexo's fees until Nexo's August and September document productions. Mot. (Dkt. 76) at 10. He adds that this constitutes diligence

---

[1] The court in *Kamal* recognized that "document review takes time," but Nexo's March 19, 2025 production was only 126 documents constituting 555 pages. Shelton Decl. ¶ 3. Cress has not attempted to explain why he could not have reviewed these 126 documents before September 2025.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

because he filed the Motion less than a month after receiving these productions. *Id.* As explained, this contention is contrary to the record here. Even considering the newly produced information in Nexo's recent productions, Cress cannot argue that he was unaware of these issues and had no ability to discover them until August 2025. Cress's awareness of Nexo's fees and profits at least six months before filing this Motion is sufficient delay to warrant denial of the Motion. Even by itself, courts have found that a delay of as little as two months in seeking leave to amend after discovering the facts underlying the proposed amendment is sufficient to warrant denial of the motion. *See, e.g.*, *Schwerdt v. Int'l Fid. Ins. Co.*, 28 Fed. App'x 715, 719–20 (9th Cir. 2002) (affirming denial of leave to amend based on delay of one to three months); *Experexchange, Inc. v. Doculex, Inc.*, 2009 WL 3837275, at \*29 (N.D. Cal. Nov. 16, 2009) (denying untimely motion for leave to amend where moving party waited two months after discovering the facts underlying the proposed amendment).[2]

**B.**       <u>**Nexo Will Be Prejudiced if Amendment Is Allowed Near the Close of Discovery**</u>

As part of the Rule 16 analysis, the Court may consider the prejudice to Nexo of Cress's late attempt at amendment. *See Kamal*, 88 F.4th at 1277 (the "existence or degree of prejudice to the party opposing the modification" adds an additional reason to deny leave to amend). Here, if the Court grants the Motion, Nexo will be prejudiced because "[t]he new claims set forth in the [second] amended complaint would have greatly altered the nature of the litigation and would have required

---

[2] Cress's Rule 16 cases do not compel a different result. *Zivokovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) is inapplicable, because Nexo does not argue that Cress could have met the scheduling order's deadline to amend the complaint. The others are all distinguishable because they involve parties moving to amend within a couple of months after ***first learning*** of the new information, unlike here, where Cress did nothing for six months after Nexo's March 2025 document production and knew the underlying facts before filing his complaint. *See Thao v. Swarthout*, 2024 WL 3904874, at \*3 (E.D. Cal. Aug. 22, 2024) (good cause where plaintiff moved within two months after first discovery of the information); *Google LLC v. Sonos, Inc.*, 2021 WL 4061718, at \*5 (N.D. Cal. Sept. 7, 2021) (same); *Regents of Univ. of Cal. v. Affymetrix, Inc.*, 2018 WL 4053318, at \*3 (S.D. Cal. Aug. 24, 2018) (same); *Wagner v. S. Cal. Edison Co.*, 2017 WL 10543557, at \*2 (C.D. Cal. July 28, 2017) (same). In *Norton v. LVNV Funding LLC*, 2020 WL 2557003, at \*3 (N.D. Cal. May 19, 2020), not only did the moving party learn the information for the first time within a couple of months before moving, but it moved only three-and-a-half months after the deadline to amend. And in *Wynes v. Kaiser Permanente Hosps.*, 2012 WL 2339245, at \*2 (E.D. Cal. June 19, 2012), the moving party received the evidence shortly before making the motion, and the nonmoving party did not raise diligence arguments.

1  defendant[] to have undertaken, at a late hour, an entirely new course of defense." *Morongo Band*

2  *of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

3        Cress claims that the SAC will not prejudice Nexo because the claims are closely related to

4  his existing claims, he does not seek any changes to the case deadlines, and he does not need any

5  more discovery on the new claims. Mot. (Dkt. 76) at 12. None of those contentions are accurate.

6  Cress has entirely changed his theory of the case—from a case regarding alleged inaccuracies in the

7  VIP Brochure into a technical examination of the fees and profits related to Nexo's OTC transactions

8  and crypto markets. Cress has added **six new causes of action**, including civil RICO claims,

9  substantially raising the amount in controversy in this case. *See Morengo*, 893 F.2d at 1079 ("In

10  light of the radical shift in direction posed by these [new RICO] claims, their tenuous nature, and

11  the inordinate delay, we conclude that the district court did not clearly abuse its discretion in denying

12  leave to amend."). Cress claims that **he does not need** additional discovery for his new claims, but

13  **Nexo clearly will,** which is not possible to complete by the rapidly approaching deadlines.

14        Nexo will need significant additional discovery into the factual basis for Cress's proposed

15  new causes of action—including Cress's pre-suit awareness of the new claims, his reliance on

16  Nexo's allegedly fraudulent statements, a technical analysis of the fees associated with his

17  transactions, his performance of his obligations under the CPA, and a laundry list of discovery

18  focused on the new elements of his new claims, particularly the notoriously complex RICO claims.

19  Shelton Decl. ¶¶ 7-8. Nexo will also need an expert to analyze the technical nature of Cress's

20  proposed new claims regarding the functioning of the OTC desk and cryptocurrency markets more

21  broadly. *Id.* ¶ 8. Nexo will need discovery into the newly alleged damages, including additional

22  experts. This case has been on file for approaching three years and should be tried based on the

23  claims in the FAC and the discovery regarding those claims. This motion effectively seeks leave to

24  prosecute an entirely new case based on new facts and without a meaningful opportunity for

25  discovery. Cress wants to have his cake and eat it too—he wants to change his theory of the case,

26  add six new causes of action, and dramatically increase the amount in controversy, yet avoid

27  discovery on any of these changes. *See Alibaba.com Hong Kong Ltd. v. P.S. Prods., Inc.*, 2012 WL

28  13060303, at *2 (N.D. Cal. Mar. 19, 2012) (defendants "rightfully point out" that they would require

additional discovery, and finding that they "are within their rights to do so, regardless of whether plaintiffs believe this to be unnecessary"). Courts in this Circuit routinely find that nonmoving parties will be prejudiced where the moving party seeks to amend late in the discovery process and where the nonmoving party will need to conduct additional discovery into the proposed amendment.[3] *See, e.g.*, *TrustLabs, Inc. v. Jaiyong*, 2024 WL 1354486, at *7 (N.D. Cal. Mar. 30, 2024) (nonmoving party met its burden of showing it would suffer prejudice where it "would have to conduct substantial additional discovery in the face of new theories").

Finally, while almost all of Cress's new claims and amendments are based on his new "fee" theory, his new fraud claim is based on the exact same factual predicate as the California securities fraud claim in his FAC—the alleged statement by Nexo that "[t]he NEXO token is registered with the SEC as a security." *Compare* Dkt. 76-3 ¶ 183 (common law fraud claim) *and* ¶ 177 (securities fraud claim based on the same statement). While the facts are old, the legal issues raised by the fraud claim are new—implicating different elements and damages, and moving beyond the Nexo Token transactions that are the focus on the securities fraud claim. Indeed, the common law fraud claim seeks "restitution of the digital assets he lost as a result of this fraud," rather than just the losses associated with the Nexo Token he claims to be a security. *Id.* ¶ 190. The "good cause" standard is not met when a party seeks leave to assert new claims near the discovery cutoff based on old facts, particularly when those new claims have different elements and proof.

---

[3] Cress's cases on this issue do not compel a different result. In *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187–88 (9th Cir. 1987), the court found no prejudice where there was no undue delay. In *Srigley v. Monterey Peninsula Yacht Club, Inc.*, 748 F. Supp. 3d 801, 804 (N.D. Cal. 2024), the court found no prejudice where the new claim would depend "primarily, and likely entirely, on judicially noticeable documents and legal argument." In *McEvoy v. ChanceLight Educ.*, 2024 WL 3957207, at *1 (N.D. Cal. Aug. 27, 2024), there was no prejudice because the case was still in "its early stages," where plaintiff sought leave to amend only a few months after exchanging initial disclosures. In *Carranza v. City of San Pablo*, 2022 WL 110647, at *6 (N.D. Cal. Jan. 12, 2022), the court found that the additional claim would not greatly alter the nature of the litigation or substantially expand the scope of discovery. And in *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010), the factor weighed only slightly in plaintiff's favor because plaintiff had made four failed attempts to state a valid claim and the court acknowledged it would be expensive for defendants to defend the action.

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

1

## II.     LEAVE TO AMEND IS NOT WARRANTED UNDER RULE 15

2

### A.     Cress Has Unduly Delayed Seeking Amendment

3

Because Cress does not show good cause under Rule 16(b) for amendment at this late date,

4

the Court need not reach the Rule 15 analysis. *See Hayward Prop.*, 2021 WL 4927012, at *7.

5

Nevertheless, Cress does not satisfy Rule 15 either. *See Acri v. Int'l Assoc. of Machinists &*

6

*Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (even under Rule 15's standard, "late

7

amendments to assert new theories are not reviewed favorably when the facts and theory have been

8

known to the party seeking amendment since the inception of the cause of action").

9

### B.     Nexo Will Be Prejudiced by Amendment Near the Close of Discovery

10

Nexo will be prejudiced if amendment is granted at this late date. *See, e.g.*, *Jackson v. Bank*

11

*of Haw.*, 902 F.2d 1385, 1387–88 (9th Cir. 1990) (finding prejudice where additional discovery

12

would have to be undertaken on new claims, since the new claims "advance[d] different legal

13

theories and require[d] proof of different facts"); *Alsabur v. Autozone, Inc.*, 2014 WL 1340730, at

14

*4–5 (N.D. Cal. Apr. 3, 2014) (same, "combined with a looming fact discovery cut-off"); *Tyco*

15

*Thermal Controls LLC v. Redwood Indus.*, 2009 WL 4907512, at *3 (N.D. Cal. Dec. 14, 2009)

16

(proposed additional claims would require additional discovery because they involved elements not

17

present in previous claims, but "[e]ven if Plaintiff were to limit its presentation to facts already

18

discovered, Defendants would still suffer prejudice as they would have no opportunity to discover

19

facts that might give rise to potential defenses to the new claims").

20

### C.     Cress Acted in Bad Faith

21

"In the context of a motion for leave to amend, 'bad faith' means acting with intent to

22

deceive, harass, mislead, delay, or disrupt." *Jordan v. Advanced Med. Revs., LLC*, 2021 WL

23

1962561, at *3 (C.D. Cal. May 17, 2021) (quotation omitted). A trial court may infer bad faith where

24

movant possessed relevant information concerning his new facts or claims before filing the initial

25

complaint but, without any satisfactory explanation, withheld such facts or claims from the

26

complaint and instead seeks leave to amend to add such claims after the litigation is well underway

27

and the parties are deep into discovery. *See, e.g.*, *U.S. v. $17,980.00 in U.S. Currency*, 2014 WL

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

4924866, at *4 (D. Or. Sept. 30, 2014) (finding bad faith where the factual basis of the new claim was "unquestionably" known by movant before filing the original claim, thus "it is difficult to conceive of any purpose other than gamesmanship" for the late amendment).

That is precisely what Cress has done here. Cress knew that Nexo charged fees and took profits on certain actions on its platform in 2021. Cress admits to receiving the two key documents supporting his new claims six months before filing this Motion. By waiting until near the end of fact discovery to pivot from his original claims to new ones based on new facts, and then asserting the most aggressive "theft" and RICO claims possible, the facts support a strong inference of bad faith. *See Nichols v. Mahoney*, 608 F. Supp. 2d 526, 536 (S.D.N.Y. 2009) ("A civil RICO lawsuit has vast implications for the defendants because of the specter of treble damages and the possibility of permanent reputational injury to defendants from the allegation that they are 'racketeers.'").

### D.    Cress's Proposed Claims Are Futile

#### 1.    Fraudulent Inducement

"Amendment is futile when it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) (citations omitted). Under this standard, each of Cress's proposed new claims are futile.

Cress attempts to amend his first cause of action for fraudulent inducement to add new allegations regarding his OTC transactions and Nexo's supposedly concealed fees and profits. *See* Dkt. 76-3 ¶¶ 140, 142-44. But in so doing, he cannot meet the elements of fraudulent inducement regarding these new allegations. *See Cream v. N. Leasing Sys., Inc.*, 2015 WL 4606463, at *5 (N.D. Cal. July 31, 2015). Cress's fraud allegations must meet the "heightened pleading requirements" of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quotation omitted) (to satisfy Rule 9(b), plaintiff must plead the "who, what, when, where, and how of the misconduct charged").

This Cress cannot do. He alleges that "[t]hroughout 2020 and early 2021, Nexo publicly advertised that it did not charge any fees for any services on its platform. . . ." Dkt. 76-3 ¶ 53; *see also id.* ¶¶ 55, 111. Cress alleges that he "relied upon Nexo's representations regarding its OTC Desk and its zero-fee policy in choosing to utilize Nexo's OTC Desk. . . ." *Id.* ¶ 54. What advertising

is Cress referring to? Did this advertising address fees regarding OTC transactions or liquidations? When did Cress see any of the advertisements? In what form? Did he see them before his liquidations? He does not plead this information.[4] This is insufficient to meet Rule 9(b). *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (plaintiff failed to specify when he was exposed to advertisements, which he found material, and which he relied upon before purchasing a car); *In re 5-Hour ENERGY Mktg. & Sales Practices Litig.*, 2015 WL 12734796, at *6–7 (C.D. Cal. Jan. 22, 2015) (plaintiffs' allegations that they saw "numerous advertisements" were too vague under Rule 9); *Yumul*, 733 F. Supp. 2d at 1124 (plaintiff failed to allege when she saw or heard the particular representations upon which her complaint was based).

Cress cannot show justifiable reliance, since "[t]o establish this element of fraud, plaintiff[] must show (1) that [he] actually relied on the defendant's misrepresentations, and (2) that they were reasonable in doing so." *OCM Principal Opportunities Fund v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 863 (2007). The reasonableness of a plaintiff's reliance is "judged by reference to the plaintiff's knowledge and experience." *Id.* at 864. Cress therefore cannot show justifiable reliance where **he plainly knew** about Nexo's fees for OTC services in 2021. *See, e.g.*, Shelton Decl., Ex. 1 ("if I can just sell through the Nexo OTC desk with the same fees"); Shelton Decl., Ex. 9 at 699 (Nexo "can have the fee ha ha").

Further, Cress cannot show a misrepresentation regarding Nexo's advertisements specifically in the context of Nexo's OTC fees. None of the advertisements Cress identifies specifically state that Nexo does not charge fees on its OTC transactions or liquidations—instead, they are generic advertising statements regarding the multitude of platform services for which Nexo did not charge fees. *See* Dkt. 76-3 ¶¶ 53, 55. These advertisements were not even false since there were indeed services and transactions for which Nexo did not charge fees. *See, e.g.*, Shelton Decl.,

---

[4] At least two of the advertisements on which Cress claims to have relied are from 2020—approximately a year before any of his actions involving Nexo. *See* Dkt. 76-3 ¶ 53(a), (b). Cress does not allege that he viewed either of these advertisements around the time of his investment with Nexo or his OTC transactions with Nexo in 2021—or even that these advertisements were still applicable in 2021. *See, e.g.*, *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010) (the complaint did not allege that the allegedly fraudulent packaging remained consistent).

1  Ex. 5 (Nexo allowed "unlimited free-of-charge fiat withdrawals, crypto and fiat transfers [] and

2  credit withdrawals"); Shelton Decl., Ex. 4 (Nexo performed loan repayment transactions "without

3  any additional fees" beyond those charged by other exchanges). Thus, his allegations cannot

4  establish a misrepresentation sufficient to show fraudulent inducement.

5                    **2.    Common Law Fraud**

6          Cress attempts to turn his narrow state law securities claim into a sweeping common law

7  fraud claim, but his attempt fails. In pleading this claim, Cress omits the context surrounding the

8  alleged statement, which undermines his allegations regarding Nexo's intent and his reliance. "A

9  plaintiff asserting fraud by misrepresentation is obliged to plead and prove actual reliance, that is,

10 to establish a complete causal relationship between the alleged misrepresentations and the harm

11 claimed to have resulted therefrom." *OCM Principal Opportunities Fund, L.P.*, 157 Cal. App. 4th

12 at 864 (quotation omitted). "'Besides actual reliance, a plaintiff must also show justifiable reliance,

13 i.e., circumstances were such to make it ***reasonable*** for the plaintiff to accept the defendant's

14 statements without an independent inquiry or investigation.'" *Id.* (emphasis in original; quotation

15 omitted).

16         Cress alleges that a Nexo representative told him: "Additionally, please note that the NEXO

17 token is registered with the SEC as a security, **therefore we are only allowed to facilitate deals**

18 **for American citizens who are also certified, accredited investors**." Dkt. 76-3 ¶ 39 (emphasis

19 added). In support of his securities fraud and common law fraud claims, Cress quotes the first

20 portion of the sentence but strikes the second. *Id.* ¶¶ 177, 183. Cress then admits that Nexo "did file

21 a Form D Notice of Exempt Offering of Securities with the SEC in 2018," which is why the Nexo

22 representative qualified his statement by saying "we are only allowed to facilitate deals for

23 American citizens who are also certified, accredited investors." *Id.* ¶ 39. Cress cannot show Nexo's

24 intent to defraud or reliance based on this partially-quoted statement. In an abundance of caution,

25 knowing that Nexo had previously filed a Form D with the SEC in 2018, the representative told

26 Cress that he had to be an accredited investor to purchase the Nexo Token. This allegation does not

27 meet the heightened elements of falsity, scienter, and reliance applicable to common law fraud

28 claims.

1

2

### 3.    Civil Theft

Cress seeks to amend his complaint to add a cause of action for civil theft. Cress's claim fails for two reasons. First, as with Cress's other claims based in fraud, Cress must meet the requirements of Rule 9 regarding the allegedly false statements. *See Core Focus Consulting 2, LLC v. RenewAge Energy Sols., Inc.*, 2024 WL 3403115, at *4 (C.D. Cal. July 12, 2024) (where a civil theft claim relies on a "false representation" to fraudulently obtain property, plaintiff must "state the time, place, and specific content of the false representations" and "the identities of the parties to the misrepresentation"). As stated above, the proposed SAC plainly fails to meet the requirements of Rule 9, and this claim therefore fails as well. *See id.* (dismissing civil theft claim where plaintiff failed to meet Rule 9).

Cress's civil theft claim fails because a dispute about fees regarding a commercial transaction is not "theft." *See GEC US 1 LLC v. Frontier Renewables, LLC*, 2016 WL 4677585, at *9 (N.D. Cal. Sept. 7, 2016) (civil theft requires "a specific intent to steal, and cannot be established if a defendant has a good faith claim of right to possession"). "A cause of action for civil theft cannot lie where a plaintiff receives legitimate services based on mutual agreement to pay for those services." *Alvarez v. Adtalem Educ. Grp., Inc.*, 2019 WL 13065378, at *5 (N.D. Cal. Dec. 16, 2019). *AdTrader, Inc. v. Google LLC*, 2018 WL 3428525, at *9 (N.D. Cal. July 13, 2018), is instructive. There, the court dismissed plaintiff's civil theft claim where plaintiff alleged that Google received advertisement fees based on alleged misrepresentations. *Id.* The court found that "Google lawfully received fees under the parties' mutual agreement and thus it did not receive stolen property." *Id.* That is precisely what happened here. Cress paid for crypto and received that crypto deposited into his account. The fact that he claims his fees were too high does not qualify as "theft" under the statute, which was enacted to address true theft where the defendant has no plausible claim to entitlement. This is not intent to "steal" Cress's property—it is merely Cress complaining about the terms of a commercial transaction between contracting parties.[5] If Cress were correct, then every

---

[5] Cress's citation is clearly distinguishable. In *Kinect Renewable Sols. Ltd. Liab. Co. v. United Am. Transp.*, 2025 WL 2377024, at *3 (C.D. Cal. May 28, 2025), defendants stole a chassis that plaintiff stored on their lot without plaintiff's permission.

1  run-of-the-mill fee dispute would devolve into a "theft" or "RICO" dispute seeking treble damages.

2  ### 4.    RICO and RICO Conspiracy

3  Courts recognize the seriousness of civil RICO claims, and thus Cress must reach a high bar

4  to successfully plead a civil RICO claim. *See, e.g.*, *Spiteri v. Russo*, 2013 WL 4806960, at *45

5  (E.D.N.Y. 2013) ("Plaintiff's burden is high when pleading RICO allegations."); *Purchase Real*

6  *Estate Grp.*, 2010 WL 3377504, at *6 ("Because the mere assertion of a RICO claim has an almost

7  inevitable stigmatizing effect on those named as defendants, courts should strive to flush out

8  frivolous RICO allegations at an early stage of the litigation."). Cress is "trying to fit a square peg

9  in a round hole by squeezing garden-variety business disputes into civil RICO actions." *Royce Int'l*

10  *Broad. Corp. v. Field*, No. C 99-4169 SI, 2000 U.S. Dist. LEXIS 2369, at *10 (N.D. Cal. Feb. 22,

11  2000) (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016 (7th Cir. 1999)). RICO was not

12  intended to provide a federal remedy to "every state common law cause of action available to remedy

13  business deals gone sour." *Id.*

14  To state a claim under the civil RICO statute (18 U.S.C. § 1962(c)), Cress must allege "(1)

15  conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *LD v. United*

16  *Behavioral Health*, 508 F. Supp. 3d 583, 601 (N.D. Cal. 2020). Because Cress's RICO claim is

17  based in fraud, he must meet the requirements of Rule 9 for this claim as well. *Edwards v. Marin*

18  *Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004). Cress fails to meet these elements.

19  ### a.    Cress Does not Allege the Existence of a RICO Enterprise

20  "'To establish liability under § 1962(c) one must allege and prove the existence of two

21  distinct entities: (1) a 'person' [which includes business entities under section 1962(3)]; and (2) an

22  'enterprise' that is not simply the same 'person' referred to by a different name." *BSA Framing, Inc.*

23  *v. Applied Underwriters, Inc.*, 2018 WL 11462083, at *6 (C.D. Cal. Feb. 27, 2018) (quotation

24  omitted). "There must therefore be some 'distinctness' between the 'enterprise' and the individual

25  defendants alleged to be the constituent parts of the enterprise." *Id.* (quotation omitted). "Moreover,

26  while the enterprise need not have a 'separate structure,' it must be alleged separately from the

27  racketeering ***activities*** it allegedly engaged in, as the enterprise and the activity are 'two separate

28  things.'" *Id.* (quotation omitted; emphasis retained).

Cress's allegations fail to establish an enterprise that is distinct from Nexo itself. Cress lists a series of entities and individuals that are supposedly the Nexo "enterprise" (Dkt. 76-3 ¶¶ 207-08), but these cannot constitute an association-in-fact enterprise for two reasons. First, the subsidiaries and affiliates of a corporation generally do not constitute an "enterprise." *See, e.g.*, *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1088–89 (N.D. Cal. 2013) (plaintiffs did not identify the structure of an enterprise distinct from defendant bank and its subsidiaries and affiliates); *see also Gaines v. Home Loan Ctr., Inc.*, 2010 WL 11506442, at *12 (C.D. Cal. May 24, 2010) (collecting cases); *In re Countrywide Fin. Corp. Mort. Mktg. & Sales Practices Litig.*, 601 F. Supp. 2d 1201, 1213 (S.D. Cal. 2009) ("Although the Ninth Circuit has not decided whether a parent and its subsidiary satisfies this distinctiveness requirement, other circuits have decided that these entities generally are not sufficiently distinct.").

*Ellis* is instructive to Cress's deficient enterprise allegations. There, plaintiffs—similarly—alleged an "enterprise" consisting of Chase and its subsidiaries and affiliates, along with non-Chase members of the enterprise, but failed to allege that any non-Chase entity took any specific actions in support of the purported enterprise. *Ellis*, 950 F. Supp. 2d at 1088–89. Here, Cress's allegations have the same flaw. The only non-Nexo entity mentioned, cursorily, is that "Nexo was founded and is, in Nexo's words, 'powered' by Credissimo, a European Financial/Technological (or 'FinTech') Group based in Bulgaria." Dkt. 76-3 ¶ 208(a); *see also id.* ¶¶ 207-08. "In other words, the '[Nexo] Enterprise' is only [Nexo] and no one else's conduct makes up the enterprise." *Ellis*, 950 F. Supp. 2d at 1088; *see also Gjovik v. Apple Inc.*, 2024 WL 2309100, at *9–10 (N.D. Cal. Jan. 30, 2024) ("some of the persons/entities above may not be distinct from Apple for purposes of RICO. . . [and] even if the persons/entities were distinct from Apple, it often is not clear from the TAC how they above were involved in the predicate acts (*i.e.*, racketeering activity)").

As in *Ellis*, Cress's allegations do not meet the Rule 9 standard. There, plaintiffs' allegations failed because they did not "provide any factual allegations to detail [the subsidiaries', affiliates', or intercompany divisions'] involvement or make their involvement in the enterprise plausible." 950 F. Supp. 2d at 1089. Moreover, plaintiffs in *Ellis* only vaguely alleged how the supposed fraud occurred, "and without this information, the Court cannot ascertain the structure of the alleged

-25-

enterprise." *Id.* Here, Cress merely alleges that Nexo as a whole took certain supposedly fraudulent actions, but without specifying which entities did what and how—his allegations are merely that the "Nexo Enterprise" acted fraudulently. *See* Dkt. 76-3 ¶¶ 207-12. Indeed, Cress inconsistently pleads that these entities "do not honor corporate formalities, do not maintain arm's length relationships, and treat the employees of any particular entity as working for the Nexo Enterprise," while inconsistently claiming they "have an existence separate and distinctive from the enterprise." *Compare* Dkt. 76-3 ¶ 209 *and* ¶ 211. This type of conclusory pleading does not meet Rule 9's requirements. "A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp. Unintended Accelerated Mktg., Sales Practices, & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011).

Highlighting the failure to allege an enterprise, several members of the alleged enterprise were previously dismissed for lack of personal jurisdiction because Cress could not point to any personal involvement of those entities in the facts giving rise to the lawsuit. The Proposed SAC shows these entities struck off in redline in the caption—Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, and Antoni Trenchev. Dkt. 76-3 at p. 1; SAC ¶ 207 (identifying those entities as members of the enterprise). Cress cannot plead a RICO enterprise by merely listing the corporate affiliates and officers who have already been dismissed from this action. Cress still does not plausibly allege that any member of the alleged enterprise beyond Nexo Capital, Inc., had any personal involvement in the alleged racketeering activity. The only new fact alleged by Cress is that a Nexo representative who communicated with Cress was employed by a Bulgarian Nexo affiliate. *Id.* ¶ 212. This mundane corporate structuring, which has a variety of legitimate corporate purposes, including compliance with local employment laws, is hardly the stuff of a RICO enterprise.

Second, after omitting Cress's nonexistent allegations against Nexo's various affiliates in the supposed "enterprise," all that is left is a corporation acting through its owners, managers, employees, and agents. *See* Dkt. 76-3 ¶¶ 207-12. Cress's position is "apparently that anytime a corporation is alleged to have engaged in fraudulent activity, a plaintiff has a viable RICO claim so long as that plaintiff can also allege that the corporation has officers, directors, employees, lawyers, accountants, and/or shareholders that, in **some** manner, participated in or benefitted from the alleged

1   fraudulent activity." *BSA Framing*, 2018 WL 11462083, at *8 (emphasis retained). As the court in

2   *BSA Framing* noted, "[t]hat theory would ensnare almost every corporation facing a run-of-the-mill

3   fraud claim in RICO litigation and is, unsurprisingly, not the law." *Id.* (collecting cases); *see also,*

4   *e.g.*, *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016) ("[A] corporate defendant

5   acting through its officers, agents, and employees is simply a corporation. Labeling it as an

6   enterprise as well would only amount to referring to the corporate 'person' by a different name.");

7   *Cruz v. FXDirectDealer, LLC*, 720 F3d 115, 121 (2d Cir. 2013) ("The requirement of distinctness

8   cannot be evaded by alleging that a corporation has violated the [RICO] statute by conducting an

9   enterprise that consists of itself plus all or some of its officers and employees.").

10       Further, Cress "do[es] nothing more than allege that Defendant[ and other related entities]

11   associated in fact to carry on their own primary business purposes, which is insufficient to meet the

12   distinctness requirement." *In re Toyota Motor Corp.*, 826 F. Supp. 2d at 1203. In *In re Toyota Motor*

13   *Corp.*, the court dismissed a RICO claim that merely alleged that Toyota's "primary business

14   activity—the design, manufacture, and sale or lease of Toyota vehicles—was conducted

15   fraudulently." *Id.* at 1202–03. This is all Cress does here. Cress reiterates his fees and liquidation

16   allegations—all these show is Nexo operating its cryptocurrency platform, *i.e.*, "its primary business

17   purposes." *Id.* at 1203; *see also Ellis*, 950 F. Supp. 2d at 1089 ("Nor can the Court determine whether

18   Defendants have engaged in conduct of the enterprise, as opposed to their own affairs.").

19       Because Cress has not alleged a decision-making structure for the "Nexo Enterprise" beyond

20   that which was inherent in the alleged racketeering activities of collecting supposedly "undisclosed

21   fees" (Dkt. 76-3 ¶ 214), he fails to allege a RICO enterprise. *See Townsend v. Nat'l Arb. Forum,*

22   *Inc.*, 2012 WL 12736, at *7 (C.D. Cal. Jan. 4, 2012) (the enterprise must be "an entity separate and

23   apart from the pattern of activity in which it engages"). As stated, Nexo charging fees for its own

24   services to its own customers is merely a description of Nexo's own business, not a supposed RICO

25   enterprise. *See Cruz*, 720 F.3d at 121 (the required person/enterprise distinction "cannot be evaded

26   by alleging that a corporation has violated the statute by conducting the enterprise that consists of

27   itself plus all or some of its officers or employees); *Schreiber Distrib. Co. v. Serv-Well Furniture*

28   *Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (a RICO defendant cannot be both the "person" and the

1  "enterprise"). Cress's allegations merely show that Nexo is operating its own business, not a

2  separate enterprise as required by § 1962(c). Cress therefore fails to plead that Nexo and its affiliated

3  entities and persons forms a RICO enterprise.

4              **b.        Cress Fails to Plead a Pattern of Racketeering Activity**

5       A "'pattern of racketeering activity' requires at least two acts of racketeering activity . . . the

6  last of which occurred within ten years (excluding any period of imprisonment) after the commission

7  of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "The Ninth Circuit has repeatedly

8  insisted that [Rule 9] be followed in RICO actions alleging the predicate act of mail fraud."

9  *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (collecting

10  cases); *see also Schreiber Distrib. Co.*, 806 F.2d at 1401  (to allege mail or wire fraud predicates for

11  RICO claims, plaintiff "must state the time, place, and specific content of the false representations

12  as well as the identities of the parties to the representations," as required by Rule 9(b)).

13       Cress fails to meet this burden. His allegations regarding Nexo's supposed pattern of

14  racketeering activity are entirely conclusory and vague: "All of the predicate acts of racketeering

15  activity described herein are part of the nexus of the affairs and functions of the Nexo Enterprise

16  racketeering enterprise. The racketeering acts committed by the Nexo Enterprise employed a similar

17  method, were related, with a similar purpose, and they involved similar participants, with a similar

18  impact on Plaintiff. Because there are hundreds if not thousands of acts of mail and wire fraud that

19  were used to carry out the scheme, it would be impracticable for Cress to plead all of the details of

20  the scheme with particularity. Plaintiff cannot plead the precise dates of all of the Nexo Enterprise's

21  uses of the mail and wire." Dkt. 76-3 ¶¶ 230-31. Rule 9(b)'s requirements are not relaxed simply

22  because "it would be impracticable for Cress to plead all of the details of the scheme with

23  particularity." *Id.* ¶ 231. Courts routinely dismiss RICO claims that fail to meet Rule 9(b)'s

24  requirements to plead a pattern of racketeering activity with specificity. *See, e.g.*, *Higgins v. Farr*

25  *Fin. Inc.*, 2009 WL 3517597, at *3 (N.D. Cal. Oct. 26, 2009) (conclusory allegations that other,

26  unidentified customers were affected by the alleged scheme were insufficient to allege an open-

27  ended pattern of racketeering activity); *Titan Glob. LLC v. Organo Gold Int'l, Inc.*, 2012 WL

28  6019285, at *7 (N.D. Cal. Dec. 2, 2012) (plaintiffs failed to plead a pattern of racketeering activity

1    where they only pleaded one "adequately alleged act of interstate wire fraud," where the other

2    alleged acts were insufficiently pleaded).

3        In addition, Cress's alleged wire fraud predicate acts fail for lack of specificity. *See Mostowfi*

4    *v. 12 Telecom Int'l, Inc.*, 269 Fed. App'x 621, 624 (9th Cir. 2008) (Rule 9 not satisfied where "[m]ost

5    of the alleged predicate acts are general statements about actions committed by defendants that fail

6    to identify the 'who, what, where and how' of the misconduct charged" and "these problems are

7    exacerbated because the plaintiffs lump together the defendants without identifying the particular

8    acts or omissions that each defendant committed"). As stated, Cress's RICO claim lumps together

9    Nexo and its affiliates without any specificity. And there can be no viable RICO claim premised on

10   wire fraud here because, in reality, as reflected by Cress's fraudulent omission claim, the true

11   predicate for his RICO and other fee-based claims is that Nexo omitted disclosures regarding fees.

12   This is not enough for RICO liability—a non-disclosure can support a wire fraud predicate only

13   "when there exists an independent duty that has been breached by the person so charged." *U.S. v.*

14   *Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984), *rev'd on other grounds*, 473 U.S. 207 (1985).

15   "Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose

16   cannot be the basis of a fraudulent [RICO] scheme." *Cal Architectural Bldg. Prods., Inc. v.*

17   *Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987); *see also Eller v. EquiTrust Life*

18   *Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) (dismissing a RICO claim and noting "the settled

19   premise that a seller generally has no duty to disclose internal pricing policies or its method for

20   valuing what it sells"). Cress fails to allege wire fraud predicate acts because he identifies no

21   **affirmative misrepresentations to him regarding Nexo's OTC and liquidation fees specifically**,

22   but instead relies on a non-disclosure theory of liability.

23       Cress also fails to plead the "continuity" requirement. Cress's OTC transactions and

24   liquidations on the Nexo platform, and the fees that Nexo allegedly charged Cress, occurred during

25   a narrow, four-month period of time between March 2021 and June 2021. "Courts routinely find

26   that alleged racketeering activity lasting less than a year does not constitute a closed-ended pattern."

27   *Focus 15, LLC v. Nico Corp.*, 2022 WL 267441, at *9 (N.D. Cal. Jan. 28, 2022) (quotation omitted).

28   Cress does not allege closed-ended continuity because the alleged predicates did not extend over a

1    substantial period of time. Nor are his conclusory allegations of open-ended continuity sufficient,

2    particularly in light of Nexo's withdrawal from the U.S. market in 2023. *See* Shelton Decl., Ex. 6 at

3    130191. To the extent Cress claims open-ended continuity based on broad allegations that Nexo

4    charges fees to unidentified foreign customers, Cress has no standing to assert such a claim, and in

5    any event, RICO does not apply to purely extra-territorial conduct. *Life Bliss Found. v. Sun TV*

6    *Network Ltd.*, 2014 WL 12589657, at *7 (C.D. Cal. Sept. 17, 2014) (RICO does not apply

7    extraterritorially); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264

8    (D.C. Cir. 1995) (acceptance of a "once a RICO violator, always a RICO violator" basis for

9    continuity "would deprive the pattern requirement of all meaning").

10                    **c.    Cress's RICO Claim Is Based in His Alleged Securities Fraud**

11           It is axiomatic that Cress may not use his securities fraud allegations to establish a RICO

12    violation. *See Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1045 (9th Cir. 2006). Cress attempts

13    to disclaim that his securities fraud claims underlie his RICO claim (Dkt. 76-3 ¶ 204), but his efforts

14    cannot hide that his RICO claim cannot exist without Cress's securities allegations. "Courts have

15    construed the PSLRA bar in Section 1964(c) to prohibit the dissection of said claims into their

16    offending and non-offending components, so long as some component may legitimately be

17    characterized as in furtherance of, or in connection with, actionable securities fraud." *Davies v.*

18    *GetFugu, Inc.*, 2010 WL 11597458, at *3 (C.D. Cal. Aug. 26, 2010). "In determining whether the

19    PSLRA bars a civil RICO claim, courts view the complaint in its entirety and reject the invitation

20    to parse the plaintiff's allegations." *Id.* (quotation omitted). In addition, courts have rejected

21    securities-based RICO claims regardless of the label attached or the validity of the underlying

22    securities claim. *See, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (affirming

23    dismissal because alleged fraud was in connection with the sale of securities, and the sale of

24    securities was not "incidental" to the fraud).

25           Regardless of what Cress states, his RICO allegations are steeped in and inseparable from

26    his securities allegations. Cress's RICO allegations are premised on his theory regarding Nexo's

27    supposedly secret fees on OTC transactions and liquidations. *See* Dkt. 76-3 ¶¶ 210-24. Cress cannot

28    separate his OTC transactions and liquidations from his securities allegations. Five of Cress's six

1  OTC transactions executed by Nexo included the NEXO Token, which Cress claims is an

2  unregistered security. *See, e.g.*, *id.* ¶¶ 64-65, 71-72, 74-75 (Cress's OTC transactions included

3  NEXO Tokens). Moreover, Cress alleges that at least one of his liquidations was caused by price

4  fluctuation in the NEXO Token. *See id.* ¶¶ 84-89. Accordingly, his RICO claim inextricably relies

5  on his securities fraud allegations and must be dismissed.

**d.    The Conspiracy Claim Falls with the RICO Claim**

7         Finally, because Cress's substantive RICO claim fails, his RICO conspiracy claim under §

8  1962(d) likewise fails. *See, e.g.*, *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)

9  (RICO conspiracy claim falls with the substantive RICO claim). Additionally, Cress pleads no non-

10  conclusory allegations of a conspiracy—*e.g.*, an agreement to commit two acts in furtherance of the

11  scheme or an agreement to the overall scheme. *Id.* Cress does not identify who Nexo Capital, Inc.

12  allegedly agreed to commit a crime with. As explained above, in connection with the enterprise,

13  there are no allegations regarding what each Nexo affiliate agreed to do or how each furthered the

14  supposed "enterprise." Conclusory allegations of a conspiracy are inadequate to allege a § 1962(d)

15  claim. *See Wolov v. Duel*, 2023 WL 2780369, at *4 (C.D. Cal. Feb. 28, 2023) (citation omitted).

**5.    Fraudulent Omission**

17         Cress seeks to amend his complaint to add a cause of action for fraudulent omission,

18  arguing—without authority—that Nexo was "Plaintiff's agent, and thus his fiduciary. . . ." Mot.

19  (Dkt. 76) at 18. This statement is inaccurate. In a recent case also involving Nexo, a court in the

20  Central District of California found that "it does not appear that a fiduciary relationship ever existed

21  between [Nexo] and Plaintiff." *Hanson v. Nexo Cap. Inc.*, No. 2:24-cv-10466-MAR, Dkt. 31, at 26

22  (C.D. Cal. June 30, 2025). The court in *Hanson* made this finding based on the parties' contract and

23  California law—both of which are applicable here. *Id.* The CPA under which Cress bases his OTC

24  allegations states unambiguously that Cress understands that "Nexo is not providing and will not

25  provide any fiduciary . . . services with respect to" Cress "or any transaction subject to this

26  Agreement." Shelton Decl., Ex. 7 at 37.

27         Under California law, "a fiduciary relationship generally does not arise out of ordinary arms-

28  length business dealings," since "[i]n a typical business contract or relationship, one party does not

-31-

1   commit to act in the other party's best interest rather than its own." *World Surveillance Grp. Inc. v.*

2   *La Jolla Cove Invs., Inc.*, 66 F. Supp. 3d 1233, 1235 (N.D. Cal. 2014) (citation omitted); *see also*

3   *Sun West Mortg. Co. v. First Mariner Bank*, 2016 WL 11746768, at *2 (C.D. Cal. Aug. 25, 2016)

4   (collecting cases). That is all that the CPA is. The CPA does not require Nexo to go into the

5   cryptocurrency market and purchase cryptocurrency at a certain price on behalf of Cress. *See City*

6   *of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 386 (2008) (to state a claim for breach

7   of fiduciary duty, a party must allege its counterparty knowingly agreed "to act on behalf and for

8   the benefit of another"). Instead, upon submission of a purchase order, the CPA requires Nexo to

9   "sell, transfer and deliver the [] Counterparty Purchased Cryptocurrency"—defined as "the number

10   or type of cryptocurrency [Cress] is obligated to purchase from Nexo pursuant to a Purchase Order."

11   Shelton Decl., Ex. 7 at 32-33. Since Nexo was not acting as Cress's agent and was merely selling

12   Cress cryptocurrency, this was purely an arm's-length transaction which cannot form a fiduciary

13   relationship. This Court should follow the court in *Hanson* and find that Cress's proposed fraudulent

14   omission claim is futile.[6]

15       Because Nexo did not make any direct representations to Cress that there were no fees on

16   his specific OTC transactions or liquidations, it was under no obligation to correct or supplement

17   statements regarding fees that it never made to Cress. None of the alleged advertisements in

18   Paragraph 53 of the Proposed SAC refer to OTC transactions or liquidation fees. They all relate to

19   non-OTC transactions or services that are not at issue in this case. Cress did not use the "Nexo

20   Exchange"; he used the OTC desk. SAC ¶ 55. Nor does Cress's fee claim relate to "minimum

21   contribution requirements" (¶ 53(b)), or "unlimited free-of-charge fiat withdrawals, crypto and fiat

22   transfers into your Nexo Wallet, and credit line withdrawals" (¶ 53(c)). Nor is most of the generic

---

24   [6] Cress's cases do not change the result. In *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 277,
314–15 (2017), the Court of Appeal reversed a jury verdict in plaintiff's favor after failing to find
25   the existence of a duty to disclose. In *Baystar Cap. Mgmt. LLC v. Core Pac. Yamaichi Int'l H.K.*
*Ltd.*, 2007 WL 9711373, at *5 (C.D. Cal. Apr. 16, 2007), the court found no evidence of false or
26   misleading statements or omissions by defendants. Then, both *Fragle v. Faulkner*, 110 Cal. App.
4th 229, 239 n.9 (2003); and *Salahutdin v. Valley of Cal., Inc.*, 24 Cal. App. 4th 555, 561–63 (1994),
27   are distinguishable because both involve real estate broker—a textbook example of a fiduciary—
and because there was no fraudulent omission claim in either case.
28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

1    "fee" advertising contemporaneous with Cress's transactions in March-June 2021 (¶ 53(a), (b), (e)
2    (identifying the Whitepaper issued in 2018 and two ads from March and June 2020)). Indeed, the
3    "[n]o hidden fees" statement in the 2018 Whitepaper related to Nexo's "Instant Crypto-backed
4    Loan," not multi-million-dollar purchases of cryptocurrency through Nexo's OTC desk. By failing
5    to plead the alleged fraud with the specificity required by Rule 9, Cress is able to falsely claim that
6    the ads addressed his transactions when they did not.

7                            **6.        Breach of Contract**

8         Cress fails to state a breach of contract claim because he fails to allege any specific terms of
9    the CPA that Nexo has breached. Cress argues that Nexo breached the CPA by "failing to timely
10   execute Plaintiff's Purchase Orders by executing the orders days later. . . ." Mot. (Dkt. 76) at 22.
11   But he does not cite any provision of the CPA that requires execution in a certain period of time.
12   *See* Dkt. 76-3 ¶¶ 251-64. Nothing in the CPA guarantees execution of such manual purchase orders
13   in a specific amount of time, or at a specific price, and without fees or profit.

14        Cress argues that "Nexo further breached the CPA by charging Plaintiff undisclosed fees in
15   the execution of the CPA." Mot. (Dkt. 76) at 22. Cress does not specify which provision of the CPA
16   Nexo violated by charging fees on his transactions. He cannot—nothing in the CPA prevents Nexo
17   from charging fees on its OTC transactions. Cress cannot rely on his other allegations regarding
18   Nexo's supposedly false advertisements because Section 3.2(g) of the CPA provides that "in
19   entering into any such transaction [under the CPA], [Cress] has not relied on any statement or other
20   representation of Nexo other than as expressly set forth herein." Shelton Decl., Ex. 7 at 37. Nexo's
21   alleged generic advertising about fees cannot provide a factual predicate for breach of the CPA. That
22   advertising was not contained in the CPA. Accordingly, Cress has not—and cannot—plead a breach
23   of the CPA. *See, e.g.*, *Satvati v. Allstate Northbrook Indem. Co.*, 634 F. Supp. 3d 792, 800 (C.D.
24   Cal. 2022) ("Plaintiffs' Complaint cannot be cured because Plaintiffs can[not] identify a contractual
25   provision that has been breached").

26                              **CONCLUSION**

27        The Court should deny the motion for leave to amend.

28

---

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND

1    DATED:  October 14, 2025              BAKER & MCKENZIE LLP

2

3                                          By /s/ Ian S. Shelton
                                              Ian S. Shelton
4
                                              Attorneys for Defendant Nexo Capital Inc.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND