# EXHIBIT 7

# CRYPTOCURRENCY PURCHASE AGREEMENT

This CRYPTOCURRENCY PURCHASE AGREEMENT (this "Agreement"), is made and entered into on <u>March 24, 2021</u>, by and between Nexo (any holding companies, subsidiaries or related entities, all of which are hereinafter referred to as "Nexo"), and <u>JOHN THOMAS CRESS</u>, ("Counterparty", and together with Nexo, the "Parties" and each a "Party").

WHEREAS, the Parties desire to enter into periodic Purchase Orders for the purchase and sale of cryptocurrency as set forth herein and therein.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

ARTICLE I.

SALE AND PURCHASE OF THE PURCHASED CRYPTOCURRENCY

Section 1.1 Purchase Orders. During the term of this Agreement and at such times as mutually agreed by the Parties, the Counterparty or Nexo may submit a Purchase Order to Nexo or the Counterparty via email and the party receiving the Purchase Order shall have ten minutes (the "Review Period") to confirm such Purchase Order via email after which Review Period such Purchase Order shall be deemed to be rejected and expired.

Section 1.2 Purchase and Sale.

(a) On each Settlement Date, Counterparty or Nexo, as the case may be, will sell, transfer and deliver the Nexo Purchased Cryptocurrency or the Counterparty Purchased Cryptocurrency, respectively, as specified in a Purchase Order, to the other party, and such purchaser will purchase all of the other party's right, title and interest in and to such cryptocurrency from the seller.

(b) Promptly following confirmation of each Purchase Order in accordance with Section 1.1 (i) if Counterparty is purchasing the Counterparty Purchased Cryptocurrency from Nexo, then Counterparty shall deliver or shall direct its agents or designees to deliver, the Counterparty Purchase Price to Nexo by transfer of immediately available funds or cryptocurrencies on the applicable Cryptocurrency Network to Nexo's applicable location, wallet, address, account or storage device designated in Exhibit A attached hereto (each a "Nexo Wallet") or (ii) if Nexo is purchasing the Nexo Purchased Cryptocurrency from Counterparty, then Counterparty shall deliver, or shall direct its agents or designees to deliver, the Nexo Purchased Cryptocurrency to Nexo by transfer of immediately available cryptocurrencies on the applicable Cryptocurrency Network to the applicable Nexo Wallet.

(c) Promptly following payment of the Counterparty Purchase Price or transfer of the Nexo Purchased Cryptocurrency by Counterparty, as set forth in Section 1.2(b) herein, (i) if Counterparty is purchasing the Counterparty Purchased Cryptocurrency from Nexo, then Nexo shall deliver, or shall



direct its agents or designees to deliver, the Counterparty Purchased Cryptocurrency to Counterparty by transfer of immediately available cryptocurrencies on the applicable Cryptocurrency Network to Counterparty's applicable location, wallet, address, account or storage device designated in Exhibit B attached hereto (each a "Counterparty Wallet") or (ii) if Nexo is purchasing the Nexo Purchased Cryptocurrency from Counterparty, then Nexo shall deliver or shall direct its agents or designees to deliver, the Nexo Purchase Price to Counterparty by transfer of immediately available funds or cryptocurrencies on the applicable Cryptocurrency Network the applicable Counterparty Wallet.

(d) In the event a Purchase Order is not settled by the Settlement Date, Nexo shall have the right to terminate such Purchase Order in Nexo's sole discretion.

Section 1.3 Term. This Agreement shall remain in effect until terminated in writing by either Party, however, that any termination shall not affect the Parties' obligations with respect to any completed Purchase Orders entered into prior to such termination.

ARTICLE II.

DEFINITIONS

Section 2.1 In addition to the capitalized terms defined elsewhere in this Agreement, the following capitalized terms shall have the meanings specified in this Article II:

"Counterparty Purchased Cryptocurrency" shall mean the number and type of cryptocurrency Counterparty is obligated to purchase from Nexo pursuant to a Purchase Order.

"Counterparty Purchase Price" shall mean the price per applicable cryptocurrency set forth in a Purchase Order multiplied by the number of Counterparty Purchased Cryptocurrency set forth in such Purchase Order.

"Cryptocurrency Network" shall mean the peer-to-peer computer network that governs the transfer of the applicable cryptocurrency.

"Nexo Purchased Cryptocurrency" shall mean the number and type of cryptocurrency Nexo is obligated to purchase from Counterparty pursuant to a Purchase Order.

"Nexo Purchase Price" shall mean the price per applicable cryptocurrency set forth in a Purchase Order multiplied by the number of Nexo Purchased Cryptocurrency set forth in such Purchase Order.

"Foreign Bank" shall mean an organization that (i) is organized under the laws of a foreign country, (ii) engages in the business of banking, (iii) is recognized as a bank by the bank supervisory or monetary authority of the country of its organization or principal banking operations, (iv) receives deposits to a substantial extent in the regular course of its business, and (v) has the power to accept demand deposits, but does not include the U.S. branches or agencies of a foreign bank. "Foreign Shell



Bank" shall mean a Foreign Bank without a Physical Presence in any country, but does not include a regulated affiliate.

"Liens" shall mean security interests, liens, mortgages, hypothecations, pledges, claims (pending or threatened), rights of first refusal, charges, escrows, encumbrances or similar rights.

"Non-Cooperative Jurisdiction" shall mean any country or territory that has been designated as non-cooperative with international anti-money laundering principles or procedures by an intergovernmental group or organization, such as the Financial Action Task Force on Money Laundering ("FATF"), of which the United States is a member and with which designation the United States representative to the group or organization continues to concur. See http://www.fatf- gafi.org for FATF's list of non-cooperative countries and territories.

"OFAC" shall mean the United States Office of Foreign Assets Control. The lists of OFAC prohibited countries, territories, persons and entities can be found on the OFAC website at http://www.treas.gov/offices/enforcement/ofac/.

"Person" shall mean any individual, corporation, partnership, association, limited liability company, trust, estate or other entity, either individually or collectively.

"Physical Presence" shall mean a place of business that is maintained by a Foreign Bank and is located at a fixed address, other than solely a post office box or an electronic address, in a country in which the Foreign Bank is authorized to conduct banking activities, at which location the Foreign Bank (i) employs one or more individuals on a full-time basis, (ii) maintains operating records related to its banking activities, and (iii) is subject to inspection by the banking authority that licensed the Foreign Bank to conduct banking activities.

"Purchase Order" shall mean each email confirmation sent by Counterparty or Nexo, as the case may be, duly confirmed by Counterparty or Nexo, as applicable, before the end of the Review Period as set forth in Section 1.1 herein and incorporated herein by reference, setting forth, among other things, the number of Counterparty Purchased Cryptocurrency or the number of Nexo Purchased Cryptocurrency, the price per applicable cryptocurrency and the Counterparty Purchase Price or the Nexo Purchase Price, in substantially the form attached hereto as Exhibit C.

"Settlement Date" shall mean, with respect to any Purchase, the date designated as such in the Purchase Order relating to such Purchase.

ARTICLE III.

REPRESENTATIONS AND WARRANTIES

Section 3.1 Nexo represents and warrants to Counterparty, as of the date hereof and on each Settlement Date:



(a) Nexo is a limited partnership duly organized, validly existing and in good standing under the laws of the Estonia. Nexo has all necessary limited liability company power and authority to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. The execution and delivery by Nexo of this Agreement, the performance by Nexo of its obligations hereunder and the consummation by Nexo of the transactions contemplated hereby have been duly authorized by all requisite company action on the part of Nexo.

(b) This Agreement has been duly executed and delivered by Nexo and (assuming due authorization, execution and delivery by Counterparty), this Agreement constitutes a valid and legally binding obligation of Nexo, enforceable against Nexo in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, and any other laws of general application affecting enforcement of creditors' rights generally.

(c) Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby, does or will conflict with, violate constitute a default under (i) any of Nexo's organizational documents, (ii) any statute, regulation, rule, judgment, order, decree, ruling, charge or other restriction of any government, governmental agency, or court to which Nexo is subject or by which any of its assets or properties are bound, or (iii) any agreement, debt or other instrument to which Nexo is a party or by which any of its assets or properties are bound.

(d) Neither Nexo, nor any Person who controls Nexo or any Person for whom Nexo is acting as an agent or nominee, as applicable (1) bears a name that appears on the List of Specially Designated Nationals and Blocked Persons maintained by OFAC from time to time; (2) is a Foreign Shell Bank; or (3) resides in or whose subscription funds are transferred from or through an account in a Non-Cooperative Jurisdiction.

(e) With respect to any Counterparty Purchased Cryptocurrency that Nexo sells, transfers and delivers to Counterparty in any Purchase Order, Nexo is the lawful owner of such Counterparty Purchased Cryptocurrency with good and marketable title thereto, free and clear of any and all Liens, and Nexo has the absolute right to sell, assign, convey, transfer and deliver such Counterparty Purchased Cryptocurrency. Upon consummation of such purchase, Counterparty will be vested with good and valid title to such Counterparty Purchased Cryptocurrency free and clear of any and all Liens.

(f) Nexo is the lawful owner of each Nexo Wallet, and has good title thereto. Each Nexo Wallet is owned and operated solely for the benefit of Nexo, and no Person, other than Nexo, has any right, title or interest in any Nexo Wallet.

(g) Nexo agrees, understands and acknowledges that (i) Counterparty engages in the bilateral purchase and sale of cryptocurrencies, including any such transaction contemplated by this Agreement, solely on a proprietary basis for investment purposes for its own account; (ii) if Counterparty transacts with Nexo it does so solely on a bilateral basis; and (iii) Counterparty is not providing and will not provide any fiduciary, advisory, exchange or other similar services with respect to Nexo, any person



NEXO-0000035

related to or affiliated with Nexo, or any transaction subject to this Agreement. Nexo further agrees, represents and warrants that (x) Nexo is solely responsible for any decision to enter into a transaction subject to this Agreement, including the evaluation of any and all risks related to any such transaction; and (y) in entering into any such transaction, Nexo has not relied on any statement or other representation of Counterparty other than as expressly set forth herein.

Section 3.2 Counterparty hereby represents and warrants to Nexo, as of the date hereof and on each Settlement Date:

(a) Counterparty is a natural person or legal entity duly organized, validly existing and in good standing under the laws of its jurisdiction. Counterparty has all necessary power and authority to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. The execution and delivery by Counterparty of this Agreement, the performance by Counterparty of its obligations hereunder and the consummation by Counterparty of the transactions contemplated hereby have been duly authorized by all requisite company action on the part of Counterparty.

(b) This Agreement has been duly executed and delivered by Counterparty and (assuming due authorization, execution and delivery by Nexo), this Agreement constitutes a valid and legally binding obligation of Counterparty, enforceable against Counterparty in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance, and any other laws of general application affecting enforcement of creditors' rights generally.

(c) Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby, does or will conflict with, violate or constitute a default under (i) any of Counterparty's organizational documents, (ii) any statute, regulation, rule, judgment, order, decree, ruling, charge or other restriction of any government, governmental agency, or court to which Counterparty is subject or by which any of its assets or properties are bound, or (iii) under any agreement, debt or other instrument to which Counterparty is a party or by which any of its assets or properties are bound.

(d) Neither Counterparty, nor any Person who controls Counterparty or any Person for whom Counterparty is acting as an agent or nominee, as applicable (1) bears a name that appears on the List of Specially Designated Nationals and Blocked Persons maintained by OFAC from time to time; (2) is a Foreign Shell Bank; or (3) resides in or whose subscription funds are transferred from or through an account in a Non-Cooperative Jurisdiction.

(e) With respect to any Nexo Purchased Cryptocurrency, Counterparty sells, transfers and delivers to Nexo in any Purchase Order, Counterparty is the lawful owner of such Nexo Purchased Cryptocurrency with good and marketable title thereto, free and clear of any and all Liens and Counterparty has the absolute right to sell, assign, convey, transfer and deliver such Nexo Purchased Cryptocurrency. Upon consummation of such purchase, Nexo will be vested with good and valid title to such Nexo Purchased Cryptocurrency is free and clear of any and all Liens.



DocuSign Envelope ID: 3FAEB661-1808-40A7-B104-D309C3D973EE

(f) Counterparty is the lawful owner of each Counterparty Wallet, and has good title thereto. Each Counterparty Wallet is owned and operated solely for the benefit of Counterparty, and no Person, other than Counterparty, has any right, title or interest in any Counterparty Wallet

(g) Counterparty agrees, understands and acknowledges that (i) Nexo engages in the bilateral purchase and sale of cryptocurrencies, including any such transaction contemplated by this Agreement, solely on a proprietary basis for investment purposes for its own account; (ii) if Nexo transacts with Counterparty it does so solely on a bilateral basis; and (iii) Nexo is not providing and will not provide any fiduciary, advisory, exchange or other similar services with respect to Counterparty, any person related to or affiliated with Counterparty, or any transaction subject to this Agreement. Counterparty further agrees, represents and warrants that (x) Counterparty is solely responsible for any decision to enter into a transaction subject to this Agreement, including the evaluation of any and all risks related to any such transaction; and (y) in entering into any such transaction, Counterparty has not relied on any statement or other representation of Nexo other than as expressly set forth herein.

ARTICLE IV.

MISCELLANEOUS

Section 4.1 Amendments; Waivers. The provisions of this Agreement may be amended only if the other Party has consented in writing to such amendment, action or omission. No such consent with respect to any such action or omission shall operate as a consent to, waiver of, or estoppel with respect to, any other or subsequent action or omission. No failure to exercise and no delay in exercising any right, remedy or power hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy or power provided herein or by law or at equity.

Section 4.2 Assignment; Successors and Assigns. This Agreement shall be binding on and inure to the benefit of the Parties and their respective successors, heirs, personal representatives, and permitted assigns. Counterparty may not assign or delegate its rights or obligations hereunder without the prior written consent of Nexo, which may be withheld in Nexo's sole discretion.

Section 4.3 Severability. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be prohibited by or invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of this Agreement.

Section 4.4 Descriptive Headings and Construction. The descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement. Unless otherwise indicated, references to Articles and Sections herein are references to Articles and Sections of this Agreement.

NEXO-0000037

DocuSign Envelope ID: 3FAFB661-1898-40A7-B194-D309C3D973EE

Section 4.5 Governing Law. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of Estonia.

Section 4.6 Confidentiality. Each of Nexo and Counterparty hereby agrees to not disclose, and to otherwise keep confidential, the transactions contemplated hereby, the existence or nature of any relationship between the Parties, the name of the other Party or the fact that the Parties engaged in any transaction ("Confidential Information"), provided, however, that each Party may disclose Confidential Information to its directors, officers, members, employees, agents, affiliates, and professional advisers or to financial institutions providing services to a Party in connection with any applicable anti-money laundering or compliance requirements . If either Party is required by law, rule or regulation, to disclose such information (the "Required Party"), the Required Party will, to the extent legally permissible, provide the other Party (the "Subject Party") with prompt written notice of such requirement so that such Subject Party may seek (at its sole cost and expense) an appropriate protective order or waive compliance with this Section 4.6. The Subject Party shall promptly respond to such request in writing by either authorizing the disclosure or advising of its election to seek such a protective order, or, if such Subject Party fails to respond promptly (or responds promptly but either waives compliance with this Section 4.6, or a protective order is not obtained), then, such disclosure shall be deemed approved, and the Required Party may disclose that portion of the Confidential Information that is required to be disclosed by applicable law. The confidentiality obligations set forth in this Section 4.6 shall survive the termination or expiration of this Agreement.

Section 4.7 Entire Agreement. This Agreement and each Purchase Order executed on or after the date hereof contain the entire agreement among the Parties with respect to the subject matter hereof and supersede all prior agreements and understandings, written or oral, among the Parties with respect thereto.

Section 4.8 Counterparts. This Agreement may be executed in one or more counterparts, each of which when so executed and delivered shall be an original, but all such counterparts taken together shall constitute one and the same instrument. Transmission by telecopy, email or other form of electronic transmission of an executed counterpart of this Agreement shall be deemed to constitute due and sufficient delivery of such counterpart.

Section 4.9 Notices, Consents, etc. Any notices, consents or other communications required or permitted to be sent or given hereunder by either of the Parties shall in every case be in writing and shall be deemed properly served if sent via email, to the Parties, at the email addresses as set forth by the Parties. Date of service of such notice shall be (w) the date such notice is personally delivered or sent by email, (x) three (3) business days after the date of mailing if sent by certified or registered mail, or (y) one (1) business day after date of delivery to the overnight courier if sent by overnight courier.

Section 4.10 No Third Party Beneficiary. The terms and provisions of this Agreement are intended solely for the benefit of each Party and their respective successors or permitted assigns, and it is not the intention of the Parties to confer third-party beneficiary rights upon any other Person.



**IN WITNESS WHEREOF,** the parties to this Agreement have set their respective hands hereto as of the date first written above.

For Nexo:

*Antoni Trenchev*
D7C50E8708A948F...

_____

For Counterparty:

JOHN THOMAS CRESS
8BF7C4B1ACAA46A...

_____