UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CRESS,<br><br>      Plaintiff,<br><br>v.<br><br>NEXO CAPITAL INC.,<br><br>      Defendant. | Case No. 23-cv-00882-TSH<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>Re: Dkt. No. 76 |

## I. INTRODUCTION

Plaintiff John Cress filed this action against Defendants Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, Nexo Capital, Inc., and Antoni Trenchev, Nexo's CEO (collectively, "Defendants"), alleging the Nexo parties fraudulently induced him to take out loans collateralized by millions of dollars in digital assets, which were ultimately sold by the Nexo parties. ECF No. 1. Nexo Capital, Inc. ("Nexo") is the only remaining defendant in the case. ECF No. 37 at 7. Pending before the Court is Cress's Motion For Leave to Amend First Amended Complaint pursuant to Federal Rules of Civil Procedure 15(a) and 16. ECF No. 76 ("Mot."). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the November 6, 2025, hearing. For the reasons stated below, the Court **GRANTS** the motion.[1]

## II. BACKGROUND

The facts of this case are well known to the parties, and the Court has previously summarized this case's background in its order on Defendants' motion to dismiss. ECF No. 37;

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 16.

*see Cress v. Nexo Fin. LLC*, No. 23-cv-00882-TSH, 2024 WL 3187152 (N.D. Cal. June 25, 2024). The Court incorporates by reference the factual background set forth therein.

Overall, Cress argues that amendment is warranted because "newly discovered evidence produced by Nexo only within the last month" shows that (1) "Nexo systematically engaged in a fraudulent scheme to extract undisclosed fees from [Cress] and other customers in connection with over-the-counter ('OTC') transactions and loan liquidations, while actively concealing those fees through fabricated confirmations and misleading statements"; and (2) "that Nexo knowingly misrepresented to [Cress] and numerous other investors that the NEXO Token was 'registered with the SEC as a security,' despite being on notice from the SEC itself that this representation was false." Mot. at 1:14–24.

**A.    Procedural Background**

Cress filed this case on February 27, 2023, alleging five causes of action: (1) Fraudulent Inducement of Contract (against all Nexo Defendants); (2) California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL")) (against all Nexo Defendants); (3) Unregistered Offer and Sale of Securities (Cal. Corp. Code §§ 25110, 25503) (against all Defendants); (4) Unregistered Offer and Sale of Securities (Cal. Corp. Code §§ 25110, 25504) (against Trenchev); and (5) Fraud in the Offer and Sale of Securities (Cal. Corp. Code §§ 25401, 25504.1) (against all Defendants). ECF No. 1.

On May 15, 2023, Defendants moved to dismiss the original Complaint pursuant to Rule 12(b)(2) and Rule 12(b)(6). ECF No. 19. On October 10, 2023, the Court granted in part and denied in part Defendants' motion. ECF No. 26. The Court dismissed all claims against all Defendants, except Nexo, for lack of personal jurisdiction. *Id.* at 7–15. The Court denied Defendants' motion as to Cress's first claim for fraudulent inducement of contract, finding his allegations plausible at the motion to dismiss stage. *Id.* at 15–21. As to the UCL claim, the Court granted Defendants' motion to the extent it was based on Nexo's alleged deceptive conduct in the sale of the NEXO Token and Cress's Nexo Earn Account, and also to the extent it is based on Nexo's advertised interest rates being available only to customers who maintain 10% of their portfolio balance in the NEXO Token or on Nexo's alleged failure to provide Cress notice before

1  liquidating his assets. *Id.* at 24–25.  As to Cress's third claim under California Corporations Code

2  sections 25110 and 25503, the Court granted Defendants' motion, finding Cress had not plausibly

3  alleged the existence of a non-exempt, unregistered security. *Id.* at 31.  The Court also dismissed

4  Cress's state law securities fraud claim, except as to the single alleged misrepresentation that the

5  NEXO Token was registered with the Securities and Exchange Commission ("SEC") as a security.

6  *Id.* at 33.  The Court granted Cress leave to amend. *Id.*

7        On November 10, 2023, Cress filed his First Amended Complaint ("FAC"), re-pleading

8  the same five causes of action. ECF No. 29.  Defendants again moved to dismiss pursuant to Rule

9  12(b)(2) and Rule 12(b)(6). ECF No. 32.  On June 25, 2024, the Court granted in part and denied

10 in part Defendants' motion. ECF No. 37.  The Court granted Defendants' request to dismiss all

11 Defendants, except Nexo, without leave to amend. *Id.* at 7.  The Court granted Defendants'

12 motion as to the UCL claim to the extent and for the same reasons as articulated in the Court's

13 first dismissal order. *Id.* at 8.  As to Cress's claims under California Corporations Code sections

14 25110 and 25503, the Court granted Defendants' motion to the extent it was based on the Earn

15 Account and Leveraged Investment Instrument but denied Defendants' motion to the extent the

16 claim was based on the NEXO Token. *Id.* at 8–13.  The Court also dismissed Cress's state law

17 securities fraud claim, except as to the single alleged misrepresentation that the NEXO Token was

18 registered with the SEC as a security. *Id.* at 13.  The Court denied Cress leave to amend his

19 dismissed claims. *Id.* at 8, 10, 13.

20       On July 23, 2024, Nexo filed an answer to the FAC. ECF No. 45.  Nexo filed an amended

21 answer to the FAC on August 13, 2024. ECF No. 50.

22       On August 13, 2024, the Court issued a Case Management Order, setting the following

23 deadlines relevant here:

24     Deadline to Seek Leave to Amend Pleadings:   12/12/2024
    Close of Fact Discovery:   8/29/2025
25

26 ECF No. 51.  On May 7, 2025, pursuant to the parties' stipulation, the Court amended the

27 scheduling order and set the close of fact discovery as February 27, 2026. ECF No. 71.

28       Cress informed Nexo of his intent to amend his complaint on September 22, 2025, and at

3

1    Nexo's request, held off "on filing the motion to allow the parties additional time to meet and

2    confer." Mot. at 8:16–22 (citing Declaration of James Taylor-Copeland ("Taylor-Copeland

3    Decl.") ¶ 21 (ECF No. 76-1)). "Nexo informed [Cress] on September 29, 2025 that it would not

4    stipulate to amendment, and that no further meet and confer efforts were necessary." *Id.*

5          On September 30, 2025, Cress filed the instant Motion For Leave to Amend First

6    Amended Complaint pursuant to Federal Rules of Civil Procedure 15(a) and 16. ECF No. 76

7    ("Mot."). Cress "seeks leave to add additional misrepresentations as the basis for his fraudulent

8    inducement claim, and add causes of action for fraudulent omission, common law fraud, civil

9    theft, civil RICO, and breach of contract." Mot. at 1:25–2:2; *see generally* Proposed Second

10   Amended Complaint ("PSAC") (ECF No. 76-3). On October 14, 2025, Nexo filed an Opposition.

11   ECF No. 80 ("Opp."). On October 21, 2025, Cress filed a Reply. ECF No. 81 ("Reply").

**B.     Relevant Discovery**

13         Cress served his first set of document requests on July 25, 2024, and moved to compel

14   production in December 2024. Mot. at 3:9–14 (citing Taylor-Copeland Decl. ¶ 20). "From

15   January 2025 to April 2025, this Court issued six discovery orders defining the metes and bounds

16   of permissible discovery." *Id.* (citing ECF Nos. 55, 62, 63, 65, 69, 72).

17         On March 19, 2025, Nexo produced two documents relevant to Cress's Motion, both Nexo

18   internal emails. Opp. at 12:4–21 (citing Taylor-Copeland Decl. ¶¶ 7, 10, Exs. 5, 8); Reply at 5:9–

19   14; *see* Taylor-Copeland Decl., Exs. 5 (Email from Edward Tonkov on October 25, 2021) (ECF

20   No. 75-7), 8 (Email from Octavian Dinca on March 8, 2021) (ECF No. 75-10).[2] Significant

21   portions of both documents are in Bulgarian, and Cress did not obtain certified translations until

22   September 29, 2025. Reply at 5:9–14 (citing Taylor-Copeland Decl. ¶¶ 7, 10). The documents

23   relate to two of Cress's OTC transactions with Nexo, showing the fees charged by Nexo and

24   profits earned by Nexo on the transactions. Opp. at 12:4–21; Reply at 5:15–23. Cress states that

25   the documents demonstrate that Nexo was "selling its own digital assets to its customers." Mot. at

26   5:17–18.

---

[2] Cress filed Exhibits 2 through 17 to the Taylor-Copeland Declaration under seal. *See* ECF No. 75.

In May 2025, Nexo began reviewing documents collected from court ordered custodians; Nexo agreed to "substantially complete document production by August 31, 2025." *Id.* at 3:18–25 (citing ECF No. 71 at 2).

On August 12, 2025, Nexo produced one document relevant to Cress's motion. Taylor-Copeland Decl. ¶ 14. This document is a communication from Nexo to the SEC—Nexo states that "[a] liquidation fee of 5.0% is applied in such cases and these fees represent a significant source of revenue to Nexo." Mot. at 7:12–17 (citing Taylor-Copeland Decl., Ex. 12 (ECF No. 75-14)).

On August 31, 2025, Nexo produced 45,990 documents to Cress—containing internal memos, spreadsheets, and emails—which included documents collected from the court ordered custodians. *Id.* at 4:2–5:4. This production included twelve documents relevant to Cress's Motion. *See* Taylor-Copeland Decl., Exs. 2 (Nexo's Retail OTC Procedures) (ECF No. 75-4), 3 (Nexo's OTC Services) (ECF No. 75-5), 4 (Email from Hristov) (ECF No. 75-6), 6 (Nexo's internal sales data for Cress's purchases) (ECF No. 75-8), 7 (Nexo's Portfolio Booster charge of $102,125 to Cress) (ECF No. 75-9), 9 (Nexo's internal policy document on liquidation taxes) (ECF No. 75-11), 10 (Nexo's revenues) (ECF No. 75-12), 13 (Nexo client flow procedures) (ECF No. 75-15), 14 (Nexo Terms and Conditions of Token Sale) (ECF No. 75-16), 15 (Email from Martin J. Cameron) (ECF No. 75-17), 16 (Nexo communication to Arkansas Securities Dep't) (ECF No. 75-18), 17 (Nexo communication to SEC) (ECF No. 75-19); *see also* Mot. at 4:16–8:15 (discussing documents). One document, relating to OTC transactions, states: "We tell customers Nexo does not charge commission on the transaction, while in fact we do." Taylor-Copeland Decl., Ex. 2. Another document states that for OTC sales, "NEXO token – we price them 3–5% over the spot price." *Id.* at Ex. 3. Several documents show the markup on Cress's transactions, along with Nexo's profits, that Cress asserts were undisclosed to him. *Id.* at Exs. 6–8. The internal policy document on liquidation taxes states, in all capital letters, "Importanta: We should never under any circumstances mention there is a liquidation tax." *Id.* at Ex. 9. The document goes on to explain how "to convince [the customer] there is no mistake." *Id.* And one document shows that Nexo collected millions of dollars in liquidation fees. *Id.* at Ex. 10. Further, Nexo's Terms and Conditions of Token Sale states, "the offer and sale of this security instrument has not

1  been registered under the U.S. Securities Act of 1933 . . . or under the securities laws of certain

2  states." *Id.* at Ex. 14.

3  Following a meet and confer letter sent by Cress, Nexo made an additional production on

4  September 12, 2025, "containing some of its communications with regulators regarding the NEXO

5  Token." Mot. at 4:10–15. This production included one document relevant to Cress's Motion.

6  Taylor-Copeland Decl. ¶ 13. In this document, a communication from Nexo to the SEC, Nexo

7  states that it collects 5.0% liquidation fees. Reply at 7:22 (citing Taylor-Copeland Decl., Ex. 11

8  (ECF No. 75-13)).

9  Cress sent another meet and confer letter to Nexo on September 15, 2025. Mot. at 4:10–

10 15. Cress asserts that Nexo's document production remains deficient.[3] *Id.*

### III.   LEGAL STANDARD

A party seeking to amend a pleading after the date specified in a scheduling order must first show "good cause" for the amendment under Federal Rule of Civil Procedure 16(b) and, second, if good cause is shown, the party must demonstrate that the amendment is proper under Rule 15. *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 608 (9th Cir. 1992). The good cause standard "primarily considers the diligence of the party seeking the amendment." *Id.* at 609. If the moving party fails to show diligence, "the inquiry should end." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (cleaned up). If, however, "the moving party establishes good cause to modify the scheduling order, it must then demonstrate that its motion is also proper under Rule 15." *Calvary Chapel San Jose v. Cody*, No. 20-cv-03794-BLF, 2021 WL 4427384, at *1 (N.D. Cal. Sept. 27, 2021) (cleaned up).

"Generally, Rule 15 advises the court that leave shall be freely given when justice so requires. This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (cleaned up). The Court considers five factors in deciding a motion for leave to amend: (1) bad faith on the part of the movant; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has

---

[3] The parties filed two discovery letters after Cress filed his Motion, one on October 2, 2025, and one on October 23, 2025. *See* ECF Nos. 77, 82.

previously amended his complaint. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013). Generally, a court should determine whether to grant leave indulging "all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

Cress seeks leave to add fraudulent inducement, civil theft, civil RICO, fraudulent omission, and breach of contract claims, "based upon Nexo's misrepresentations and active concealment of its OTC and liquidation fees," and leave to add a common law fraud claim "based upon Nexo's false representation that the Nexo Token was registered with the SEC as a security." Mot. at 8:23–9:5. Cress argues that the Court should grant leave to amend because "[g]ood cause exists under Rule 16 to permit amendment of the scheduling order," and "Rule 15's liberal standard is likewise satisfied, as there has been no undue delay, bad faith, or prejudice to Nexo." *Id.* at 2:8–14. Cress further argues that the additional claims asserted in his PSAC "are timely because (1) they relate back to the filing of [his] original Complaint on February 27, 2023 and (2) are subject to the discovery rule." *Id.* at 23:12–14.

Nexo contends that the Court should deny Cress leave to amend because "Cress fails to meet the Rule 16 'good cause' standard for amendment," and "all four elements of the Rule 15 standard for amendment, including the futility of the new proposed claims, likewise support denial of the motion." Opp. at 10:22–27. Nexo does not dispute that Cress's newly proposed claims "relate back to the filing of his initial complaint in this matter." Reply at 7 n.2; *see generally* Opp.

In sum, the Court concludes that Cress has established good cause to amend the Court's scheduling order under Rule 16 and that the Rule 15 factors weigh in favor of amendment— therefore, leave to amend is warranted.

7

1  **A.     Good Cause Under Rule 16**

2      Cress argues that "good cause exists to relieve him from any deadline to amend the
3  pleadings" because he "exercised diligence in seeking relief," and because "Nexo will not be
4  prejudiced by the amendment." Mot. at 10:11–13:19. Nexo contends that "Cress has not been
5  diligent in pursuing amendment," and that "Nexo will be prejudiced if amendment is allowed near
6  the close of discovery." Opp. at 14:10–18:18.

7      "The pretrial schedule may be modified if it cannot reasonably be met despite the
8  diligence of the party seeking the extension. If the party seeking the modification was not
9  diligent, the inquiry should end and the motion to modify should not be granted." *Zivkovic v. S.*
10 *Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (cleaned up). "The diligence inquiry is not
11 confined to the question of whether the moving party could have met a deadline in the first
12 instance; it also asks whether the moving party acted diligently in seeking to modify the
13 scheduling order once it became apparent that it could not do so." *Hayward Prop., LLC v.*
14 *Commonwealth Land Title Ins. Co.*, No. 17-cv-06177 SBA, 2021 WL 4927012, at *5 (N.D. Cal.
15 Sept. 28, 2021). "Although the existence or degree of prejudice to the party opposing the
16 modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the
17 moving party's reasons for seeking modification." *Johnson,* 975 F.2d at 609.

18     Here, the Court finds that Cress establishes good cause to modify the Court's scheduling
19 order. Because Cress seeks to amend his complaint after the scheduling order's deadline to amend
20 the pleadings, Cress must show good cause for his amendment. *Id.* at 608; *see* ECF No. 51
21 (setting date to amend pleadings as December 12, 2024). It is undisputed that Cress could not
22 have amended his complaint prior to the deadline to amend pleadings set in the scheduling order.
23 *See* Opp. at 16 n.2 ("Nexo does not argue that Cress could have met the scheduling order's
24 deadline to amend the complaint")[4]; Reply at 5:9–12 ("Recognizing that [Cress] could not have

---

[4] Nexo repeatedly argues that Cress could have asserted his newly proposed claims in his original Complaint in 2023. *See, e.g.,* Opp. at 12:5–6 ("This laundry list of admissions from Cress in 2021 show that he could have asserted his 'fee' claims when he filed this lawsuit in 2023."). But Nexo concedes—in a footnote—that Cress could not have asserted his new claims prior to the deadline to amend pleadings on December 12, 2024. *See id.* at 16 n.2.

met the initial deadline to amend, Nexo pivots[.]"). Instead, the good cause dispute turns on whether Cress was diligent in pursuing his OTC-related claims after Nexo's document production in March 2025. Reply at 2:5–24. Nexo argues that Cress was not diligent because he was aware of the facts supporting his "fee claims . . . no later than March 2025 when Nexo produced the two centerpiece documents of the Proposed SAC, yet failed to [seek leave to amend] until mere months before the end of fact discovery." Opp. at 14:18–21. In March 2025, Nexo produced two of the sixteen documents relied upon by Cress in his Motion—these documents, written in Bulgarian, relate to two of Cress's transactions through Nexo's OTC desk. *Id.* at 12:4–21; Reply at 2:6–7. Thus, these documents do not relate to whether Cress was "diligent in bringing his claims based on liquidation fees and its fraudulent statement regarding the NEXO Token." Reply at 2:5–12.

Cress asserts that he was diligent in pursuing his claims because after receiving the two documents in March 2025, he "acted reasonably in obtaining translations [and] seeking clarifications through interrogatories," and sought leave to amend shortly after receiving documents from Nexo in August and September 2025 that demonstrated "a deliberate, systematic fraud by Nexo." *Id.* at 2:13–6:20 (citing Taylor-Copeland Decl., Exs. 5–9). The Court agrees that Cress acted diligently in seeking leave to amend. Importantly, Cress states that he did not have "a good-faith basis to allege fraud, civil theft, or RICO," until he compiled the multiple document productions from March, August, and September 2025. *Id.* at 6:15–19. Cress was also unaware of the "true nature and extent of Nexo's OTC fees" until he received the documents in August 2025. *Id.* at 3:4–5:2. And once Cress received these documents, he filed his Motion within one month. Mot. at 10:20–23. "Indeed, waiting to amend a complaint or answer until a strong evidentiary basis for the amended claims has been developed is preferable to prematurely asserting those claims on the basis of a limited record that may or may not support them." *Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 655 (N.D. Cal. 2025). Therefore, because Cress did not have the facts needed to plead his claims until at least August 2025, and he acted diligently in seeking amendment after discovering those facts, he acted with diligence and good cause exists to permit amendment of the scheduling order under Rule 16. *Cf. id.*

9

1    Moreover, because the Court finds that Cress was diligent in seeking leave to amend, the
2    Court does not address prejudice to Nexo under its Rule 16 analysis; instead, the Court addresses
3    prejudice below in its Rule 15 analysis. *See Johnson,* 975 F.2d at 609 (explaining that prejudice to
4    the nonmoving party is an additional reason to deny leave to amend).

5    Accordingly, the Court concludes that good cause exists to amend the Court's scheduling
6    order under Rule 16.

**B.    Rule 15 Factors**

Nexo argues that the Court should deny Cress leave to amend because (1) "Cress has unduly delayed seeking amendment"; (2) "Nexo will be prejudiced by amendment near the close of discovery"; (3) "Cress acted in bad faith"; and (4) "Cress's proposed claims are futile." Opp. at 19:1–33:25. Cress contends that all *Foman* factors weigh heavily in favor of amendment because there "has been no (a) undue delay, (b) bad faith, or (c) repeated failure to cure, and there will be no (d) undue prejudice to Nexo because of [Cress] adding (e) meritorious claims." Reply at 6:21–24.

As discussed below, the Court finds that each *Foman* factor weighs in favor of amendment. Accordingly, the Court concludes that amendment is warranted under Rule 15.

**1.    Bad Faith And Undue Delay**

Nexo argues that Cress (1) unduly delayed seeking leave to amend because he asserts theories based on facts known to him since the inception of the case; and (2) acted in bad faith by "waiting until near the end of fact discovery to pivot from his original claims to new ones based on new facts[.]" Opp. at 19:2–20:11. Cress responds that (1) he "moved with due diligence upon discovering the facts underpinning the new claims in the SAC"; and (2) "Nexo's accusation of bad faith is baseless and contradicted by the record." Reply at 6:25–7:1, 9:4–7.

Bad faith may be shown when a party seeks to amend late in the litigation process with claims which were, or should have been, apparent early. *Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995). A moving party's inability to sufficiently explain its delay may indicate that the delay was undue. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). Whether the moving party knew or should have known the facts and theories raised in the proposed amendment

10

at the time it filed its original pleadings is a relevant consideration in assessing untimeliness. *Id.*; *see Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."). However, "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981). Rather, undue delay combined with other factors may warrant denial of leave to amend. *See, e.g., Jackson*, 902 F.2d at 1387–89 (holding that prejudice and undue delay are sufficient to deny leave to amend); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) ("[A] delay of nearly two years, while not alone enough to support denial, is nevertheless relevant").

Here, the Court finds the proposed amendment is not sought in bad faith or with undue delay. First, as discussed, Cress was diligent in pursuing amendment. After receiving the March 2025 production, Cress sought translations and pursued additional discovery. Reply at 2:13–6:20. And after receiving the August 31, 2025, production, Cress provided "Nexo of his intent to amend within three weeks," and filed "the present motion less than a month after discovery of the information[.]" Mot. at 10:20–23. Nexo does not dispute these contentions, other than arguing that the delay in seeking translations "is attributable to Cress." Opp. at 12:4–21. But as discussed, even had Cress translated the documents earlier, Cress did not have enough information to amend his complaint until he received documents in August 2025. Reply at 2:13–6:20. As such, Nexo fails to show that Cress unduly delayed seeking leave to amend.

Second, Nexo's argument on bad faith repeats its assertion that Cress sat on facts known to him "before filing the initial complaint." Opp. at 19:20–27. Nexo's argument fails—it cannot successfully argue that Cress "withheld such facts or claims from the complaint" while simultaneously conceding that Cress could not have met the scheduling order's deadline to amend the complaint. *Id.* at 16 n.2, 19:20–27. Given the fragmented and recent discovery productions by Nexo, the Court finds Cress has established good faith reasons for seeking to amend at this stage in the proceedings. *Contra Jackson*, 902 F.2d at 1388 (explaining that a moving party's inability to sufficiently explain its delay may indicate that the delay was undue).

1        Accordingly, these factors weigh in favor of granting leave to amend.

2        **2.      Prejudice To The Opposing Party**

3        Nexo argues that it "will be prejudiced if amendment is granted at this late date" because (1) the new claims greatly alter the nature of the litigation; and (2) "Nexo will need significant additional discovery into the factual basis for Cress's proposed new causes of action." Opp. at 16:12–19:19. Cress responds that (1) "the timing of the amendment—over a year before trial—does not severely prejudice Nexo, especially since the new claims are based on the same general nucleus of facts and transactions already at issue"; (2) "any additional discovery required is manageable"; and (3) "the stage of the case is such that prejudice is minimized." Reply at 7:2–9:3.

"[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052 (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987)). "To overcome Rule 15(a)'s liberal policy with respect to the amendment of pleadings a showing of prejudice must be substantial." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010). "Neither delay resulting from the proposed amendment nor the prospect of additional discovery needed by the non-moving party in itself constitutes a sufficient showing of prejudice." *Id.* "The party opposing amendment bears the burden of showing prejudice." *DCD Programs*, 833 F.2d at 187.

Here, the Court finds that Nexo will not suffer substantial prejudice if the Court permits Cress leave to amend. Nexo's first argument—that "Cress has entirely changed his theory of the case"—is unpersuasive. Opp. at 17:3–13. Nexo does not dispute that Cress's newly proposed claims "relate back to the filing of his initial complaint in this matter." Reply at 7 n.2; *see generally* Opp. The Court agrees with Cress that "having to defend new legal theories is a normal consequence of amendment." Reply at 8:15–23. Further, Nexo's argument that it will be prejudiced by the need for additional discovery does not carry the day. Opp. at 17:14–18:7. While an increase in the scope and time required for discovery are important considerations, they are not sufficient to establish substantial prejudice. *See Yates v. W. Contra Costa Unified Sch. Dist.*, No. 16-cv-01077-MEJ, 2017 WL 57308, at *3 (N.D. Cal. Jan. 5, 2017) (finding defendant's

1    argument that it would need to conduct additional discovery "insufficient to show Defendant will
2    suffer 'substantial' prejudice as a result of the proposed amendment"); *Tyco Thermal Controls*
3    *LLC v. Redwood Indus.*, No. C-06-07164 JF(RS), 2009 WL 4907512, at *3 (N.D. Cal. Dec. 14,
4    2009) ("Neither delay resulting from the proposed amendment nor the prospect of additional
5    discovery needed by the non-moving party in itself constitutes a sufficient showing of
6    prejudice."); *O'Shea v. Epson Am., Inc.*, No. CV-09-8063 PSG(CWx), 2010 WL 4025627, at *5
7    (C.D. Cal. Oct. 12, 2010) ("[G]iven that granting a plaintiff leave to amend usually leads to
8    additional discovery, courts typically require 'something more' to justify denying the motion on
9    grounds of prejudice."); *Nissou-Rabban v. Cap. One Bank (USA), N.A.*, 285 F. Supp. 3d 1136,
10   1145 (S.D. Cal. 2018) (finding that the "expenditure of additional monies or time do not constitute
11   undue prejudice").  Thus, the possibility of additional discovery is not by itself sufficient to
12   demonstrate prejudice.  Finally, as Nexo acknowledges, where there is no undue delay, as is the
13   case here, courts are less likely to find prejudice to the nonmoving party.  *See* Opp. at 18 n.3
14   (citing *DCD Programs*, 833 F.2d at 187–88).  Therefore, Nexo fails to show that it will be
15   substantially prejudiced by Cress's amendment.
16       Accordingly, this factor weighs in favor of granting leave to amend.

### 3.     Futility of Amendment

18   Nexo argues that Cress's proposed amendments are futile as to all his claims for relief and
19   allegations regarding his fraudulent inducement claim.  Opp. at 20:12–33:25.  Cress responds that
20   "Nexo's futility arguments are predicated solely on factual disputes that are improper at this
21   juncture."  Reply at 9:8–16.
22       "A motion for leave to amend may be denied if it appears to be futile or legally
23   insufficient.  However, a proposed amendment is futile only if no set of facts can be proved under
24   the amendment to the pleadings that would constitute a valid and sufficient claim[.]"  *Miller v.*
25   *Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citations omitted).  As the Supreme Court
26   has held, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper
27   subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman*,
28   371 U.S. at 182.

13

Here, Cress seeks leave to add additional misrepresentations as the basis for his fraudulent inducement claim and five new causes of action. Mot. at 1:25–2:2. Nexo argues that "each of Cress's proposed new claims are futile" because it is clear that the PSAC cannot be saved by any amendment. Opp. at 20:12–16. However, "[t]he merits or facts of a controversy are not properly decided in a motion for leave to amend and should instead be attacked by a motion to dismiss for failure to state a claim or for summary judgment." *Allen v. Bayshore Mall*, No. 12-cv-02368–JST, 2013 WL 6441504, at *5 (N.D. Cal. Dec. 9, 2013) (citation omitted). Thus, "denial of a motion for leave to amend on this ground is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *dpiX LLC v. Yieldboost Tech, Inc.*, No. 14-cv–05382–JST, 2015 WL 5158534, at *3 (N.D. Cal. Sept. 2, 2015) (cleaned up). Although Nexo quibbles with the sufficiency of Cress's allegations, it fails to show that "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Miller*, 845 F.2d at 214.

Accordingly, as Nexo's arguments are more appropriately decided in a motion to dismiss, this factor weighs in favor of granting leave to amend.

### 4. Previous Amendments

Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will [its] rulings be disturbed.") (alteration in original) (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (noting district court's discretion is "particularly broad" when it has already granted a plaintiff leave to amend).

Here, Nexo does not raise this factor in arguing against granting leave to amend. *See generally* Opp. Regardless, the Court agrees with Cress that this factor does not weigh against amendment because Cress has only amended the complaint once before. Mot. at 14:12–20; *see* ECF No. 26 (granting Cress leave to amend). Therefore, this is not a case where Cress has unsuccessfully amended his claims several times. *Contra Stearns*, 763 F. Supp. 2d at 1159

(recognizing Defendants' "frustration with litigating Plaintiffs' four failed attempts to state a claim upon which relief may be granted").

Accordingly, this factor weighs in favor of granting leave to amend.

## V.  CONCLUSION

Based on the analysis above, the Court **GRANTS** Cress's motion to amend. Cress shall file the SAC as a separate docket entry by November 10, 2025. Nexo shall file its responsive pleading in compliance with Federal Rule of Civil Procedure 15(a)(3). After the pleadings are resolved, the Court will schedule a further case management conference.

**IT IS SO ORDERED.**

Dated: October 30, 2025

THOMAS S. HIXSON
United States Magistrate Judge

15