Ian S. Shelton (SBN 264863)
BAKER & MCKENZIE LLP
ianshelton@bakermckenzie.com
10250 Constellation Blvd., Suite 1850
Los Angeles, CA 90067
Phone: (713) 427-5029
Fax: (713) 427-5099

*Attorneys for Defendant Nexo Capital Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CRESS, | Case No. 3:23-cv-00882-TSH |
| Plaintiff, | Hon. Thomas S. Hixson |
| vs. | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT (DKT. 88)** |
| NEXO CAPITAL INC., | |
| Defendant. | Hearing Date:  January 29, 2026<br>Hearing Time:  10:00 a.m. |
| | Courtroom:  E – 15th Floor<br>Address:  Federal Courthouse<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

# TABLE OF CONTENTS

**Page No(s).**

NOTICE OF MOTION ................................................................................................................. 7

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 9

INTRODUCTION ........................................................................................................................ 9

FACTUAL BACKGROUND ..................................................................................................... 10

A.      Cress's New Allegations and Claims in his Second Amended Complaint ........................ 10

B.      The "No Fees" Advertisements Supporting Cress's New Claims ...................................... 13

ARGUMENT .............................................................................................................................. 15

A.      Cress Fails to State a Civil RICO Claim .......................................................................... 15

      1.      Cress's RICO Claims Are Statutorily Barred .............................................................. 15

      2.      Cress Does Not Sufficiently Allege the Existence of a RICO Enterprise ................. 17

            a.      Cress Fails to Plead A RICO Defendant Distinct from the Enterprise ............. 17

            b.      Cress Fails to Plead the Members' Involvement in the Enterprise ................... 18

            c.      A Corporation Acting Through Its Agent Is Not an Enterprise ........................ 20

            d.      A Corporation Engaging in Its Primary Business Is Not an Enterprise ............ 21

      3.      Cress Fails to Plead a Valid Pattern of Racketeering Activity ................................. 21

            a.      Non-Disclosure is Not a Racketeering Activity ............................................... 22

            b.      Cress Fails to Plead the Predicate Acts with Specificity ................................. 22

            c.      Cress Fails to Plead the Continuity Requirement ............................................ 23

B.      Cress Fails to State a RICO Conspiracy Claim ................................................................ 24

C.      Cress Fails to State a Civil Theft Claim ........................................................................... 24

D.      Cress Fails to State Fraudulent Inducement and UCL Claims based on "Some of the Best Rates in the Market" or OTC Fees .......................................................................... 26

E.      Cress Fails to State a Fraudulent Omission Claim ........................................................... 28

F.      Cress Fails to State a Breach of Contract Claim .............................................................. 30

G.      Cress Fails to State a Common Law Fraud Claim based on the NEXO Token .................. 31

CONCLUSION .......................................................................................................................... 34

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                    **Page(s)**

*In re 5-Hour ENERGY Mktg. & Sales Practices Litig.*,
  2015 WL 12734796 (C.D. Cal. Jan. 22, 2015)...................................................................... 27

*AdTrader, Inc. v. Google LLC*,
  2018 WL 3428525 (N.D. Cal. July 13, 2018) ....................................................................... 25

*Alvarez v. Adtalem Educ. Grp., Inc.*,
  2019 WL 13065378 (N.D. Cal. Dec. 16, 2019) .................................................................... 25

*Baumer v. Pachl*,
  8 F.3d 1341 (9th Cir. 1993).................................................................................................. 24

*BSA Framing, Inc. v. Applied Underwriters, Inc.*,
  2018 WL 11462083 (C.D. Cal. Feb. 27, 2018) ............................................................. 17, 21

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011)............................................................................................. 26

*Cal Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,
  818 F.2d 1466 (9th Cir. 1987).............................................................................................. 22

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
  43 Cal.4th 375 (2008)........................................................................................................... 29

*Copart, Inc. v. Sparta Consulting, Inc.*,
  277 F. Supp. 3d 1127 (E.D. Cal. 2017)................................................................................ 26

*Core Focus Consulting 2, LLC v. RenewAge Energy Sols., Inc.*,
  2024 WL 3403115 (C.D. Cal. July 12, 2024) ...................................................................... 26

*In re Countrywide Fin. Corp. Mort. Mktg. & Sales Practices Litig.*,
  601 F. Supp. 2d 1201 (S.D. Cal. 2009) ................................................................................ 18

*Cruz v. FXDirectDealer, LLC*,
  720 F3d 115 (2d Cir. 2013)................................................................................................... 21

*Davies v. GetFugu, Inc.*,
  2010 WL 11597458 (C.D. Cal. Aug. 26, 2010)................................................................... 16

*DeSoto v. Condon*,
  2008 WL 11338233 (C.D. Cal. July 18, 2008) .................................................................... 17

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
  48 F.3d 1260 (D.C. Cir. 1995) ............................................................................................. 23

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004).................................................................................................. 15

*Eller v. EquiTrust Life Ins. Co.*,
    778 F.3d 1089 (9th Cir. 2015).................................................................................................. 22

*Ellis v. J.P. Morgan Chase & Co.*,
    950 F. Supp. 2d 1062 (N.D. Cal. 2013) ......................................................................... 18, 19, 21

*Ewing v. Flora*,
    2015 WL 12564225 (S.D. Cal. Mar. 25, 2015)........................................................................ 24

*Focus 15, LLC v. Nico Corp.*,
    2022 WL 267441 (N.D. Cal. Jan. 28, 2022) ........................................................................... 23

*Gaines v. Home Loan Ctr., Inc.*,
    2010 WL 11506442 (C.D. Cal. May 24, 2010)........................................................................ 18

*GEC US 1 LLC v. Frontier Renewables, LLC*,
    2016 WL 4677585 (N.D. Cal. Sept. 7, 2016)........................................................................... 25

*Gjovik v. Apple Inc.*,
    2024 WL 2309100 (N.D. Cal. Jan. 30, 2024) .......................................................................... 19

*Glen Holly Ent., Inc. v. Tektronix, Inc.*,
    100 F. Supp. 2d 1086 (C.D. Cal. 1999).................................................................................... 26

*Grouse River Outfitters Ltd v. NetSuite, Inc.*,
    No. 16-CV-02954-LB, 2016 WL 5930273 (N.D. Cal. Oct. 12, 2016) ............................. 10, 25

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................................................. 30

*Hanson v. Nexo Cap. Inc.*,
    No. 2:24-cv-10466-MAR, Dkt. 31 (C.D. Cal. June 30, 2025)................................................. 29

*Higgins v. Farr Fin. Inc.*,
    2009 WL 3517597 (N.D. Cal. Oct. 26, 2009)........................................................................... 23

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000)................................................................................................... 24

*Katman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996)............................................................................................. 10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).................................................................................................. 27

*Khan v. CitiMortgage, Inc.*,
    975 F. Supp. 2d 1127 (E.D. Cal. 2013).................................................................................... 31

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .................................................................................. 14

*LD v. United Behavioral Health*,
  508 F. Supp. 3d 583 (N.D. Cal. 2020) ................................................................... 15

*Life Bliss Found. v. Sun TV Network Ltd.*,
  2014 WL 12589657 (C.D. Cal. Sept. 17, 2014) ...................................................... 24

*Mehta v. Robinhood Fin. LLC*,
  2021 WL 6882377 (N.D. Cal. May 6, 2021) ........................................................... 13

*Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*,
  6 Cal. App. 4th 603 (1992) ..................................................................................... 28

*Mostowfi v. 12 Telecom Int'l, Inc.*,
  269 Fed. App'x 621 (9th Cir. 2008) ........................................................................ 23

*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*,
  157 Cal. App. 4th 835 ............................................................................................. 33

*Pemberton v. Nationstar Mortg. LLC*,
  331 F. Supp. 3d 1018 (S.D. Cal. 2018) .................................................................. 32

*Powers v. Wells Fargo Bank NA*,
  439 F.3d 1043 (9th Cir. 2006) ......................................................................... 9, 15, 17

*Purchase Real Estate Grp. Inc. v. Jones*,
  2010 WL 3377504 (S.D.N.Y. 2010) ........................................................................ 15

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) .............................................................................. 21

*RJR Nabisco Inc. v. European Cmty.*,
  579 U.S. 325 (2016) ................................................................................................ 24

*Satvati v. Allstate Northbrook Indem. Co.*,
  634 F. Supp. 3d 792 (C.D. Cal. 2022) .................................................................... 30

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393, 1401 (9th Cir. 1986) ...................................................................... 21

*Shahangian v. Bank of Am. Nat'l Ass'n*,
  No. CV15-1919 DMG, 2015 WL 12696038 (C.D. Cal. Dec. 1, 2015) .................... 31

*Siry Inv., L.P. v. Farkhondehpour*,
  13 Cal. 5th 333 (2022) ............................................................................................ 25

*Sun West Mortg. Co. v. First Mariner Bank*,
  2016 WL 11746768 (C.D. Cal. Aug. 25, 2016) ...................................................... 29

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................................................. 17

*Titan Glob. LLC v. Organo Gold Int'l, Inc.*,
    2012 WL 6019285 (N.D. Cal. Dec. 2, 2012) ...................................................................... 23

*In re Toyota Motor Corp. Unintended Accelerated Mktg., Sales Practices, & Prods. Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011) ........................................................................ 20, 21

*U.S. v. Dowling*,
    739 F.2d 1445 (9th Cir. 1984), *rev'd on other grounds*, 473 U.S. 207 (1985) ...................... 22

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................................................... 26

*Wolov v. Duel*,
    2023 WL 2780369 (C.D. Cal. Feb. 28, 2023) .................................................................... 24

*World Surveillance Grp. Inc. v. La Jolla Cove Invs., Inc.*,
    66 F. Supp. 3d 1233 (N.D. Cal. 2014) ............................................................................... 29

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010) ............................................................................. 27

**Statutes**

18 U.S.C. § 1961 ................................................................................................................. 18, 21

18 U.S.C. § 1962 ............................................................................................................. 15, 17, 24

18 U.S.C. § 1964 ....................................................................................................................... *passim*

Cal. Penal Code § 496 ........................................................................................................ 12, 24, 25

**Other Authorities**

Fed. R. Civ. P. 8(a) ....................................................................................................................... 32

Fed. R. Civ. P. 9 .................................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 14

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on January 29, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at the Phillip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom E – 15th Floor, Hon. Thomas S. Hixson presiding, Defendant Nexo Capital Inc. ("Nexo") will move this Court to dismiss all or portions of the first, second, fifth, sixth, seventh, eighth, ninth, and tenth causes of action alleged in the Second Amended Complaint (Dkt. 88) filed by Plaintiff John Cress.

## STATEMENT OF ISSUES TO BE DECIDED

Nexo seeks the following relief:

1. Nexo seeks partial dismissal of the first cause of action for fraudulent inducement and second cause of action for violation of the Unfair Competition Law ("UCL") based on Nexo's alleged representations that it would provide Cress with "some of the best rates on the market" and "did not charge any fees on digital asset purchases or any other hidden fees." The alleged representation regarding "some of the best rates on the market" is unactionable puffery and Cress fails to plausibly allege false representations regarding OTC and liquidation fees with the specificity required by Rule 9.

2. Nexo seeks dismissal of the fifth cause of action for fraud based on Nexo's alleged representation that "The NEXO token is registered with the SEC as a security," which purports to seek recovery of all of his liquidation losses, not just the losses associated with the NEXO token. Cress fails to plausibly allege causation, scienter, and reliance.

3. Nexo seeks dismissal of the sixth cause of action for civil theft because a fee dispute regarding a voluntary commercial transaction does not state a theft claim as a matter of law.

4. Nexo seeks dismissal of the seventh cause of action for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO") because (1) the RICO claim is statutorily barred by the securities fraud exception of 18 U.S.C. § 1964(c); (2) Cress does not plausibly allege the existence of a RICO enterprise; and (3) Cress does not plausibly allege a pattern of racketeering activity.

5.  Nexo seeks dismissal of the eighth cause of action for RICO conspiracy because the underlying substantive RICO claim fails, and Cress fails to allege any agreement or conspiracy between specific members of the purported enterprise beyond the normal business activities of Nexo Capital Inc.

6.  Nexo seeks dismissal of the ninth cause of action for fraudulent omission because Nexo does not have a fiduciary relationship with Cress, and Cress does not plausibly allege a duty to disclose regarding fees for OTC cryptocurrency purchases and forced liquidations.

7.  Nexo seeks dismissal of the tenth cause of action for breach of the Cryptocurrency Purchase Agreement ("CPA") because Cress fails to identify any specific provision of the CPA that Nexo allegedly breached.

The Court granted a stipulated briefing and hearing schedule for the present motion to dismiss. The motion is due December 5, 2025, the opposition is due January 2, 2026, the reply is due January 15, and the hearing is set for January 29. Dkt. 93 at 4.

This Motion is based on this Notice, and accompanying Memorandum of Points and Authorities, the Declaration of Ian S. Shelton and supporting exhibits, the pleadings and other papers on file in this action, and such other declarations, evidence and argument as may be presented before or at the hearing.

DATED: December 5, 2025                 BAKER & MCKENZIE LLP


                                        By /s/ Ian S. Shelton
                                           Ian S. Shelton

                                        *Attorneys for Defendant Nexo Capital Inc.*

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The new allegation underlying Cress's Second Amended Complaint ("SAC") is that Nexo allegedly charged him "undisclosed fees" and earned "undisclosed profits" on a few large cryptocurrency purchases that he made through Nexo's Over-The-Counter ("OTC") desk in March and April 2021, and on the subsequent automatic liquidations of his collateral during market crashes in May and June 2021. Citing to generic advertising that was **not** directed to him, **not** contemporaneous with the events at issue, and **not** concerning the OTC purchases and liquidations at issue in this case, Cress claims that Nexo promised it would never charge him any fees for any services it provides. Cress admits that he was a sophisticated, accredited investor who took out multi-million-dollar credit lines from Nexo, used the proceeds to make multi-million-dollar cryptocurrency purchases through Nexo's OTC desk, and that Nexo provided individualized OTC services to him through a dedicated relationship manager. These large OTC purchases were individually negotiated, facilitated by one-on-one communications with the relationship manager, and manually executed. It is not shocking that provision of bespoke, personalized services would involve some cost to Cress. However, Cress's new causes of action are predicated on the theory that Nexo earning a fee or profit is so nefarious that it constitutes quasi-criminal racketeering activity, or even theft. His new claims have no merit and should be dismissed.

As to his civil RICO claim, it is statutorily barred because it is inseparable from Cress's securities fraud allegations and claims. As the Ninth Circuit stated, "the unambiguous text of the [RICO] statute. . . bars RICO actions alleging securities fraud. . . . This ends [the] inquiry." *Powers v. Wells Fargo Bank NA*, 439 F.3d 1043, 1045 (9th Cir. 2006). The RICO claim also fails because the SAC does not specify the members of the alleged "enterprise," their actions, or the details of their involvement necessary to make the existence of the enterprise plausible or to meet Rule 9(b)'s heightened pleading standard. This Court already found as much when it dismissed several defendants—Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, and Antoni Trenchev (now alleged members of the RICO enterprise)—for lack of personal jurisdiction, because Cress could not point to any personal involvement of those entities in the facts giving rise to the lawsuit.

Dkt. 26 at 8-13. The Court found that Cress's alter ego/single enterprise allegations were conclusory and insufficient. *Id.* at 10-11. For Trenchev, the Court added that Cress had not pleaded more than "conclusory allegations that Trenchev exercised control over Nexo. . . ." *Id.* at 13. Despite this, these same entities and individuals re-appear in the SAC, only now as part of a supposed RICO enterprise—but without any new allegations about their participation in the enterprise or conspiracy. *See* Dkt. 88 ¶ 207. "Civil RICO is an unusually potent weapon"—and Cress's deficient allegations cannot satisfy the standard required to invoke—"the litigation equivalent of a thermonuclear device." *Katman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996).

Cress's civil theft claim fails as a matter of law because the civil theft statute is intended to "eliminat[e] markets for stolen property"—not provide a loophole to obtain treble damages for normal fee disputes about voluntary commercial transactions. *Grouse River Outfitters Ltd v. NetSuite, Inc.*, No. 16-CV-02954-LB, 2016 WL 5930273, at *14 (N.D. Cal. Oct. 12, 2016).

All of Cress's new fraud claims fail because the alleged advertisements about "fees" do not pertain to the OTC cryptocurrency purchases and forced liquidations at issue in this case. Cress's categorical and universal contention that "Nexo publicly advertised that it did not charge any fees for any services on its platform, including transactions" (Dkt. 88 ¶ 53) is directly contradicted by the ads he cites to support the statement, which are targeted to different services not at issue in this matter. *See* Declaration of Ian S. Shelton ("Shelton Decl."), Ex. 1-4.

Finally, Cress's breach of contract claim fails because he does not plead specific terms of the contract that Nexo violated. The Cryptocurrency Purchase Agreement ("CPA") does not refer to fees, much less state that Nexo would never charge fees or earn a profit on OTC cryptocurrency purchase transactions. As to alleged fees charged with respect to automatic collateral liquidations, the CPA on its face was a "purchase" contract that did not address liquidations at all.

## FACTUAL BACKGROUND

### A.    Cress's New Allegations and Claims in his Second Amended Complaint

Plaintiff John Cress filed this action on February 27, 2023. In his First Amended Complaint ("FAC"), Cress asserted five causes of action for (1) fraudulent inducement of contract, (2) violation of the UCL; (3) unregistered offer and sale of securities under California law against Nexo;

-10-

(4) unregistered offer and sale of securities under California law against Trenchev; and (5) fraud in the offer and sale of securities under California law against Nexo. The Court issued orders on Nexo's motions to dismiss that narrowed the scope of certain claims. Dkt. 26, 37. The Court dismissed all claims against Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, and Trenchev for lack of personal jurisdiction. Dkt. 37 at 13.

In his SAC, Cress doubles the number of claims to ten, and adds certain allegations to his pre-existing counts, as reflected in the redline version of the SAC. Dkt. 88-1. The SAC drops all defendants except Nexo Capital Inc.

As to the first and second causes of action for fraudulent inducement and violation of the UCL, Cress adds the allegation that Nexo falsely advertised "some of best rates on the market" on his OTC purchases and that Nexo "did not charge any fees on digital asset purchases or any other hidden fees." Dkt. 88 ¶¶ 117, 140.

The third cause of action remained largely the same and is based on the allegation that the NEXO token is an unregistered security. Cress also continues to allege that Nexo's Earn Interest Product ("EIP") was an unregistered security, but the Court already ruled in its prior motion to dismiss order that the EIP cannot be a predicate for any California registration or securities fraud claims because Cress admittedly lost no money on the EIP. On the contrary, his Nexo account was credited with all the interest to which he was entitled.

As for the fourth cause of action, the SAC strikes the previously dismissed securities fraud claim against Trenchev individually and clarifies that the only statement that is the basis of the securities fraud claim against Nexo is the purported representation that "[t]he NEXO token is registered with the SEC as a security." Dkt. 88 ¶ 177.

The fifth cause of action for common law fraud is a new claim, but it is based on the old factual predicate supporting the securities fraud claim—the purported representation that "[t]he NEXO token is registered with the SEC as a security." Dkt. 88 ¶ 183. However, while count four for securities fraud would only apply to Cress's losses associated with his NEXO Token purchases, count five for common law fraud appears to seek "restitution of the digital assets he lost as a result of this fraud," not just losses associated with the NEXO Token. *Id.* ¶ 190. Thus, Cress appears to

assert the fraud claim to recover all of his liquidation losses—including liquidations of the BTC and ETH that he does not allege are securities—based on a purported misrepresentation about the SEC status of the NEXO token.

The remaining causes of action in the SAC are new claims based on new facts concerning OTC rates and fees—facts that were not alleged in his FAC.

The sixth cause of action for civil theft alleges that Nexo "(a) secretly profiting from OTC transactions, (b) misrepresenting pricing to Plaintiff and other customers, and (c) affirmatively concealing its commissions and profits," constitutes criminal theft of his BTC and ETH under California Penal Code 496(a), which entitles him to "three times the amount of actual damages" under Section 496(c). Dkt. 88-1 ¶¶ 193-198. Cress's damages allegations for civil theft are not limited to alleged losses associated with the OTC fees and pricing, but instead seek recovery of all of his liquidation losses. *Id.* ¶ 199.

The seventh cause of action for civil RICO and the eighth cause of action for RICO conspiracy are based on the contention that the "Nexo Enterprise advertised that it did not charge any hidden fees or commissions, including in connection with OTC purchases, loans and liquidations." *Id.* ¶ 217. As to the RICO conspiracy claim, Cress alleges in conclusory fashion that "Nexo conspired to violate" the RICO statute and "they agreed to participate in it," but he does not plead the identities of the conspirators or identify any agreements they allegedly made in furtherance of the purported conspiracy. *Id.* ¶¶ 235-239.

The ninth cause of action for fraudulent omission is based on the contention that "Nexo failed to disclose to Plaintiff that it would take substantial fees and profits (a) on his OTC transactions and (b) for any liquidations of his assets." *Id.* ¶ 241. Cress alleges that Nexo had a duty to disclose this information based on the existence of a purported fiduciary duty and concealment. *Id.* ¶ 242.

Finally, the tenth cause of action is based on the contention that Nexo breached the CPA "by failing to timely execute Plaintiff's cryptocurrency purchase orders as required" and "charging Plaintiff undisclosed fees." *Id.* ¶¶ 257-258. Cress also claimed that Nexo breached the CPA "by liquidating the digital assets it sold to Cress despite its promise to deliver them free from 'any and

all Liens.'" *Id.* ¶ 260. However, Cress identifies no provisions of the CPA addressing fees, liquidations, or order execution deadlines.

### B. The "No Fees" Advertisements Supporting Cress's New Claims

Cress's new allegations and claims—including his RICO and civil theft claims seeking treble damages—all hinge on the contention that Nexo promised him that it would charge no fees (and earn no profits) on the multi-million-dollar OTC cryptocurrency purchases that he made through Nexo's OTC trading desk. However, in support of the remarkable claim that Nexo promised him it "did not charge any fees for any services on its platform" (Dkt. 88 ¶ 53), Cress does not identify one statement from Nexo stating it would charge no fees and earn no profits on OTC transactions and liquidations. Indeed, Cress admits the opposite—that his OTC trade confirmations "omitted any reference to the profits Nexo took at Plaintiff's expense." *Id.* ¶ 242. Instead, Cress's new fraud theory is based on generic advertising that (1) was not contemporaneous with the events at issue, (2) was not directed to Cress, and/or (3) did not address the fees on the OTC transactions or liquidations at issue. None of the advertising identified by Cress addressed OTC and liquidation fees specifically, and none of them stated that Nexo would earn no "profit" on any of its services.

That advertising is identified in Paragraph 53 of the SAC:[1]

- The 2018 Nexo White Paper discussed "no hidden fees" for Nexo's **Credit Line Product**, not cryptocurrency purchases through the OTC desk.[2] The White Paper was issued three

---

[1] Plaintiff's SAC purports to quote a fifth document (Dkt. 88, ¶ 53(d)): "In March 2021, Nexo's customer account page advertised 'no hidden fees.'" This reference does not satisfy the requirements of Rule 9(b). The Plaintiff has not attached a copy of the alleged advertisement to support this claim. As a result, Nexo is unable to ascertain the nature of the fees to which this statement purportedly refers, or even verify the document's existence.

[2] Nexo White Paper, NEXO-0017900-17949 (Shelton Decl., Ex. 1). Nexo requests that the Court take judicial notice of Exhibits 1-4 because the SAC explicitly cites to them in Paragraph 53 and relies on them as the bases for his claims. "A defendant can seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *2 (N.D. Cal. May 6, 2021) (quoting *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). The Court may treat such documents as part of the complaint, and "'thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" Fed. R. Civ. P. 12 (b)(6). *Id.* at *3 (quoting *Ritchie*, 342 F.3d at 908). Crucially, the "doctrine prevents plaintiff[] from selecting only portions of documents that

(footnote continued)

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

years before the events at issue and before Nexo was operational and offered any services. The White Paper did not discuss fees associated with OTC purchases or liquidations.

- A March 15, 2020 blog post advertised no fees for Nexo's **Credit Line Product**, and it pre-dated Cress's involvement with Nexo by a year.[3] This blog post did not represent that Nexo would charge no fees on OTC cryptocurrency purchases[4] or liquidations. Fees associated with credit lines are distinct from fees associated with cryptocurrency purchases through the OTC desk.

- A June 24, 2020 blog post advertised zero fees for Nexo's **Earn Interest Product**, and it pre-dated Cress's involvement with Nexo by a year.[5] Again, this old advertisement had nothing to do with fees on OTC purchases or liquidations.

- A February 19, 2021 blog post promoted free crypto withdrawals associated with Nexo's **Loyalty Program**.[6] The blog addresses "unlimited free-of-charge fiat withdrawals, crypto and fiat transfers into your Nexo Wallet, and credit line withdrawals," not OTC fees.

None of these generic advertisements represented that Nexo would never charge any fees or earn any profits on OTC transactions, which by their nature were custom transactions individually negotiated and manually processed by the OTC desk. All of these ads addressed **different** Nexo products. Cress is relying on these old ads and blog posts about different products to make the implausible argument that Nexo universally and unconditionally promised it would never earn any fees or profits on any product or service it offered for all time. Nexo never said that. At most, Cress alleges an omission regarding OTC and liquidation fees, not a false statement. For the reasons

---

support [his] claims, while omitting portions of those very documents that weaken—or doom—[his] claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

[3] https://nexo.com/blog/why-nexo-bank-loans-vs-selling-crypto-vs-crypto-backed-credit (Shelton Decl., Ex. 2).

[4] There is a distinction between OTC cryptocurrency purchases that are individually negotiated and manually handled by the OTC desk and normal cryptocurrency purchases that are submitted through Nexo's website or app. That distinction is not relevant here because the 2020 blog post was not addressing any type of cryptocurrency purchases.

[5] https://nexo.com/blog/earn-on-crypto-is-here (Shelton Decl., Ex. 3).

[6] https://medium.com/nexo/nexos-loyalty-program-now-features-free-crypto-withdrawals-9e346cd4b134 (Shelton Decl., Ex. 4).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

explained below, this purported omission cannot support Cress's new, hyper-aggressive claims alleging fraud, quasi-criminal RICO violations, theft, and breach of contract.

## ARGUMENT

### A.    Cress Fails to State a Civil RICO Claim

RICO claims based in fraud must meet the heightened pleading requirements of Rule 9(b). *See Edwards v. Marin Park*, *Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004). Furthermore, given the threat of treble damages, and the seriousness of RICO charges, plaintiffs must meet a rigorous standard to successfully plead such claims. *See, e.g.*, *Purchase Real Estate Grp. Inc. v. Jones*, 2010 WL 3377504, at *6 (S.D.N.Y. 2010) ("Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation."). To state a viable claim under 18 U.S.C. § 1962(c), a plaintiff must plausibly and sufficiently allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *LD v. United Behavioral Health*, 508 F. Supp. 3d 583, 601 (N.D. Cal. 2020) (quoting *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc)). Here, Cress has failed to adequately plead each of these required elements with the requisite specificity, and his RICO claims therefore fail.

### 1.    Cress's RICO Claims Are Statutorily Barred

As a threshold issue, Cress's RICO claims are founded upon allegations of securities fraud and, thus, expressly barred under the Private Securities Litigation Reform Act ("PSLRA") and 18 U.S.C § 1964(c). Specifically, "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]." *Id.* The statutory bar is "unambiguous"—"§ 1964(c) bars RICO actions alleging securities fraud." *Powers*, 439 F.3d at 1045.

Cress's effort to recast securities fraud allegations as RICO violations is unavailing. Although Cress attempts to disclaim that his securities fraud claims underlie his RICO claim with a single sentence (*see* Dkt. 88 ¶ 204), this disclaimer is insufficient. The statutory bar applies to "any conduct that *would have been actionable as fraud*," regardless of whether they were pleaded as such. 18 U.S.C. § 1964 (emphasis added).

-15-

Cress's RICO claims cannot be separated from his securities allegations, and courts consistently refuse to dissect claims in this manner. *See Davies v. GetFugu, Inc.*, 2010 WL 11597458, at *3 (C.D. Cal. Aug. 26, 2010) ("In determining whether the PSLRA bars a civil RICO claim, courts view the complaint in its entirety and reject the invitation to parse the plaintiff's allegations.") (quotation omitted) (collecting cases). The RICO statute "prohibit[s] the dissection of said claims into their offending and non-offending components[. S]o long as some component may legitimately be characterized as in furtherance of, or in connection with, actionable securities fraud[,]"—the claim is barred. *Id.* Here, all of Cress's RICO allegation, at minimum, "sound in securities fraud." *Id.*

In particular, Cress's RICO allegations are that Nexo charged undisclosed fees on OTC purchases and liquidations. *See* Dkt. 88 ¶¶ 217-24; *see also* Dkt. 81 at 14. These transactions, including the purported "hidden fees" that Cress characterizes as racketeering, include the OTC NEXO token transactions that are the subject of his securities registration and fraud claims. *See* Dkt. 88 ¶¶ 217-24; *see als*o *id.* at ¶¶ 160-70.

For example, three of the four OTC transactions alleged in the SAC—and five of six of his transactions overall—involved purchase of the NEXO Token, which Cress contends is an unregistered security and is the basis for his securities fraud claim. Cress alleges that on March 27, 2021, Nexo executed an OTC transaction for him, whereby Nexo purchased 74.441 BTC and 481,878 NEXO Tokens for him. *See id.* ¶¶ 64-66. Cress alleges that on April 2-3, 2021, Nexo executed another OTC transaction, purchasing 47.3227 BTC and 530,190 NEXO Tokens for him. *Id.* ¶¶ 68-71. Cress alleges that on April 16, 2021, Nexo executed a third OTC transaction, purchasing 28.378 BTC and 91,751 NEXO Tokens for him. *Id.* ¶ 75. In each instance, Cress sent a single sum of USDT to Nexo, which was then used to purchase a combination of BTC and NEXO Tokens. *See id.* ¶ 63 ("Please send the $5,400,000 USDT for the purchase of 75 BTC and the rest in NEXO Tokens to Nexo's OTC desk wallet"), ¶ 68 ("Plaintiff sent $4,300,000 USDT to Nexo's OTC desk to purchase 50 Bitcoin and 20 Bitcoin worth of NEXO Tokens.").

Additionally, Cress alleges that at least one of his liquidations was triggered by fluctuations in the price of the NEXO Token. *See id.* ¶¶ 84-89. Specifically, he claims that the decline in NEXO

Token price in May 2021 caused his loan-to-value ratio to rise, ultimately leading to his liquidations. *Id.* ¶¶ 85-86. Thus, not only does Cress allege that his NEXO Token transactions are interwoven into his RICO claim, he also alleges that his liquidation losses were caused by the NEXO Token. Accordingly, Cress's RICO claims are inseparable from his securities fraud allegations. *See DeSoto v. Condon*, 2008 WL 11338233, at *4 (C.D. Cal. July 18, 2008) (dismissing RICO claim where "the securities sales and [] alleged fraudulent practices were not independent events").

Finally, courts have rejected RICO claims based on securities fraud, regardless of the validity of the underlying securities claims. *See, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (affirming dismissal because alleged fraud was in connection with the sale of securities, and the sale of securities was not "incidental" to the fraud). As the Ninth Circuit succinctly stated, "the unambiguous text of the statute. . . bars RICO actions alleging securities fraud. . . . This ends [the] inquiry." *Powers*, 439 F.3d at 1045.

### 2. Cress Does Not Sufficiently Allege the Existence of a RICO Enterprise

To establish liability under Section 1962(c), the plaintiff must allege and prove the existence of two distinct entities: (1) a "person" (which can include business entities under section 1962(3)); and (2) an "enterprise" that "is not simply the same 'person' referred to by a different name." *BSA Framing, Inc. v. Applied Underwriters, Inc.*, 2018 WL 11462083, at *6 (C.D. Cal. Feb. 27, 2018) (quotation omitted). "There must therefore be some 'distinctness' between the 'enterprise' and the individual defendants alleged to be the constituent parts of the enterprise." *Id.* (quotation omitted). "Moreover, while the enterprise need not have a 'separate structure,' it must be alleged separately from the racketeering *activities* it allegedly engaged in, as the enterprise and the activity are 'two separate things.'" *Id.* (quotation omitted; emphasis retained).

### a. Cress Fails to Plead A RICO Defendant Distinct from the Enterprise

Cress's allegations do not distinguish the RICO defendant Nexo Capital Inc. from a separate RICO enterprise. In his pleadings, Cress lists a number of corporate affiliates or officers—including certain corporate affiliates and individuals who the Court previously dismissed for lack of personal

-17-

jurisdiction—as members of the alleged Nexo "enterprise." [7] Dkt. 88 ¶¶ 207-08. Courts in this circuit have held that corporate affiliates generally do not qualify as an "association-in-fact" enterprise. *See Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1088–89 (N.D. Cal. 2013); *see also In re Countrywide Fin. Corp. Mort. Mktg. & Sales Practices Litig.*, 601 F. Supp. 2d 1201, 1213 (S.D. Cal. 2009) ("Although the Ninth Circuit has not decided whether a parent and its subsidiary satisfies this distinctiveness requirement, other circuits have decided that these entities generally are not sufficiently distinct."); *see also Gaines v. Home Loan Ctr., Inc.*, 2010 WL 11506442, at *12 (C.D. Cal. May 24, 2010) (collecting cases) ("'something more' is required to satisfy the distinctiveness requirement when a RICO enterprise consists of a parent corporation and its subsidiaries.").

Ninth Circuit precedent requires that an association-in-fact enterprise have three structural features: "(i) a common purpose of engaging in a course of conduct; (ii) evidence of an ongoing organization, formal or informal; and (iii) evidence that the various associates function as a continuing unit." *Ellis*, 950 F. Supp. 2d 1062, 1088–89 (citing *Odom v. Microsoft Corp.*, 486 F.3d at 541, 552 (9th Cir. 2007) (internal quotations omitted.). Cress's generic and conclusory allegations of an "enterprise"—which do little more than list the names of Nexo corporate affiliates that had no involvement in this matter—fall well short of this requirement.

### b. Cress Fails to Plead the Members' Involvement in the Enterprise

Cress's RICO claims fail because the SAC does not specify the actions or involvement of the members of the alleged enterprise as required by Rule 9(b). Instead, Cress simply groups Nexo, its subsidiaries, affiliates, and one non-Nexo entity referenced cursorily—namely, Credissimo, a

---

[7] The SAC defines the alleged RICO enterprise as follows: "Nexo, including its directors, employees, and agents, along with Nexo Services, LLC, Nexo Inc., Nexo Financial LLC, Nexo Services UAB, Nexo Global Investments LLC, Nexo MENA Holding Ltd., Nexo Services S.r.l., Nexo Payments Limited, Nexo Clearing and Custody Ltd., Nexo Finance Limited, AFS Holding Ltd., AFS Advance Financial Solutions Ltd., Nexo Markets Ltd., Nexo Bank Inc., NPEM Ltd., Nexo AG, NDS EOOD, MIRASTAR EOOD, Nexo Financial Services LTD, Nexo Trading Inc., Nexo Financial Services Inc., Nexo Services Ltd, Nexo Payments, Inc., Antoni Trenchev, and Kosta Kantchev (the "Related Persons") conducted the affairs of an associated-in-fact enterprise, as that term is defined in Title 18 United States Code section 1961(4) (the "Nexo Enterprise"). Dkt. 88 ¶ 207.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

European FinTech group based in Bulgaria—as participants in the "enterprise." Dkt. 88 ¶ 208(a); *see also id.* ¶¶ 207-08. "In other words, the '[Nexo] Enterprise' is only [Nexo] and no one else's conduct makes up the enterprise." *Ellis*, 950 F. Supp. 2d at 1088; *see also Gjovik v. Apple Inc.*, 2024 WL 2309100, at *9–10 (N.D. Cal. Jan. 30, 2024) ("some of the persons/entities above may not be distinct from Apple for purposes of RICO. . . [and] even if the persons/entities were distinct from Apple, it often is not clear from the TAC how they above were involved in the predicate acts (*i.e.*, racketeering activity)").

*Ellis v. J.P. Morgan Chase Co.* is instructive. There, plaintiffs alleged that an "enterprise" consisted of Chase, its subsidiaries and affiliates, and certain non-Chase entities, all purportedly engaged in fraudulent practices by charging excessive or unnecessary fees in home mortgage loan servicing. 950 F. Supp. 2d at 1067, 1088–89. The Court found that "vaguely alleg[ing] that unidentified subsidiaries, affiliated companies, and/or intercompany divisions" engage in some conduct, without "specific factual allegations explain[ing] how this occurs," does not allow the court to "ascertain the structure of the alleged enterprise. Nor can the Court determine whether Defendants have engaged in conduct of the enterprise, as opposed to their own affairs." *Id.* In his Reply in support of his Motion for Leave to Amend, Cress argued that Nexo misread *Ellis*, where the court found that plaintiffs did not sufficiently identify the structure of the enterprise. Dkt. 81 at 12 (citing *Ellis*, 950 F. Supp. 2d at 1088–89). However, the court's issue with the sufficiency of the allegations in *Ellis* was not that plaintiffs did not name the subsidiaries, it was that plaintiffs did not plead "specific factual allegations" to explain how the enterprise operated. Cress's enterprise allegations have the same fatal flaw. Moreover, in *Ellis*, the complaint's assertion of a common purpose—to maximize profits by fraudulently concealing fees— lacked "factual allegations that show that the unidentified enterprise members associated together with Defendants for that alleged common purpose." *Id.*

Cress's allegations suffer from the same defects. He asserts that Nexo as a whole took certain fraudulent actions but does not specify which entities did what and how. The allegations merely assert that the "Nexo Enterprise" acted fraudulently, without particularizing the roles of each entity or individual. *See* Dkt. 88 ¶¶ 207-12. The SAC inconsistently pleads that these entities "do not honor

corporate formalities, do not maintain arm's length relationships, and treat the employees of any particular entity as working for the Nexo Enterprise," while simultaneously claiming that they "have an existence separate and distinctive from the enterprise." *Compare* Dkt. 88 ¶ 209 *and* ¶ 211. Such boilerplate and conclusory pleading are inadequate. "A plaintiff may not simply lump together multiple defendants without specifying the role of each defendant in the fraud." *In re Toyota Motor Corp. Unintended Accelerated Mktg., Sales Practices, & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011).

This Court has already found similarly when it dismissed several defendants—Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, and Antoni Trenchev (now alleged members of the enterprise)—for lack of personal jurisdiction, because Cress could not point to any personal involvement of those entities in the facts giving rise to the lawsuit. Dkt. 26 at 8-13. The Court found that Cress's alter ego/single enterprise allegations were conclusory and insufficient. *Id.* at 10-11. For Trenchev, the Court added that Cress had not pleaded more than "conclusory allegations that Trenchev exercised control over Nexo. . . ." *Id.* at 13. Despite this, these entities and individuals appear again in the SAC, only now as part of a supposed RICO enterprise—but without any further, non-conclusory allegations about their participation in the supposed RICO conspiracy. *See* Dkt. 88 ¶ 207. Cress cannot plead a RICO enterprise by merely listing the corporate affiliates and officers who have already been dismissed from this action, since there are no plausible allegations that any member of the alleged enterprise—other than Nexo Capital, Inc.—had personal involvement in the conduct. The only new allegation is that a Nexo representative who communicated with Cress was employed by a Bulgarian Nexo affiliate (*id.* ¶ 212), but this mundane corporate structuring, which has a variety of legitimate corporate purposes, including compliance with local employment laws, does not suffice to establish a RICO enterprise.

### c.  A Corporation Acting Through Its Agent Is Not an Enterprise

Cress's enterprise allegations boil down to a corporation engaging in its own business and acting through its workers. *See* Dkt. 88 ¶¶ 207-12. Cress's enterprise theory is "apparently that anytime a corporation is alleged to have engaged in fraudulent activity, a plaintiff has a viable RICO claim so long as that plaintiff can also allege that the corporation has officers, directors, employees,

lawyers, accountants, and/or shareholders that, in *some* manner, participated in or benefitted from the alleged fraudulent activity." *BSA Framing*, 2018 WL 11462083, at *8 (emphasis retained). As the court in *BSA Framing* noted, "[t]hat theory would ensnare almost every corporation facing a run-of-the-mill fraud claim in RICO litigation and is, unsurprisingly, not the law." *Id.* (collecting cases); *see also, e.g.*, *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016) ("[A] corporate defendant acting through its officers, agents, and employees is simply a corporation. Labeling it as an enterprise as well would only amount to referring to the corporate 'person' by a different name."); *Cruz v. FXDirectDealer, LLC*, 720 F3d 115, 121 (2d Cir. 2013) ("The requirement of distinctness cannot be evaded by alleging that a corporation has violated the [RICO] statute by conducting an enterprise that consists of itself plus all or some of its officers and employees.")."

### d. A Corporation Engaging in Its Primary Business Is Not an Enterprise

Cress "do[es] nothing more than allege that Defendant [and other related entities] associated in fact to carry on their own primary business purposes, which is insufficient to meet the distinctness requirement." *In re Toyota Motor Corp.*, 826 F. Supp. 2d at 1203. In *In re Toyota Motor Corp.*, the court dismissed a RICO claim that merely alleged that Toyota's "primary business activity—the design, manufacture, and sale or lease of Toyota vehicles—was conducted fraudulently." *Id.* at 1202–03. The same is true here: Cress's allegations focused on fees and liquidation, only show Nexo operating its cryptocurrency platform, *i.e.*, "its primary business purposes." *Id.* at 1203; *see also Ellis*, 950 F. Supp. 2d at 1089 ("Nor can the Court determine whether Defendants have engaged in conduct of the enterprise, as opposed to their own affairs.").

### 3. Cress Fails to Plead a Valid Pattern of Racketeering Activity

A "'pattern of racketeering activity' requires at least two acts of racketeering activity . . . the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). To allege mail or wire fraud predicates for RICO claims, plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the representations," as required by Rule 9(b). *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

-21-

Cress fails to meet this burden.

### a. Non-Disclosure is Not a Racketeering Activity

There can be no viable RICO claim premised on wire fraud because the core of Cress's claim is not an affirmative misrepresentation, but rather an alleged omission—specifically, that Nexo failed to disclose information regarding fees for OTC cryptocurrency purchases and liquidations. As explained above, Cress cannot point to one affirmative representation that Nexo told him it would not charge fees on his OTC transactions and liquidations. Unsurprisingly given the severity of RICO remedies, an omission is not enough for RICO liability. A non-disclosure can support a wire fraud predicate only "when there exists an independent duty that has been breached by the person so charged." *U.S. v. Dowling*, 739 F.2d 1445, 1449 (9th Cir. 1984), *rev'd on other grounds*, 473 U.S. 207 (1985). "Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a fraudulent [RICO] scheme." *Cal Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987); *see also Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) (dismissing a RICO claim and noting "the settled premise that a seller generally has no duty to disclose internal pricing policies or its method for valuing what it sells"). Cress fails to allege wire fraud predicate acts because he identifies no affirmative misrepresentations to him regarding Nexo's OTC and liquidation fees specifically, but instead relies on a non-disclosure theory of liability.

### b. Cress Fails to Plead the Predicate Acts with Specificity

Cress's claims regarding Nexo's alleged pattern of racketeering activity do not withstand scrutiny under Rule 9(b)'s heightened pleading standard. The allegations put forth are entirely conclusory and lack the necessary specificity required to state a claim under RICO.[8]

---

[8] Specifically, Cress alleges that: "All of the predicate acts of racketeering activity described herein are part of the nexus of the affairs and functions of the Nexo Enterprise racketeering enterprise. The racketeering acts committed by the Nexo Enterprise employed a similar method, were related, with a similar purpose, and they involved similar participants, with a similar impact on Plaintiff. Because there are hundreds if not thousands of acts of mail and wire fraud that were used to carry out the scheme, it would be impracticable for Cress to plead all of the details of the scheme with particularity. Plaintiff cannot plead the precise dates of all of the Nexo Enterprise's uses of the mail and wire." Dkt. 88 ¶¶ 230-31.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Rule 9(b)'s requirements are not relaxed simply because "it would be impracticable for Cress to plead all of the details of the scheme with particularity." *Id.* ¶ 231. Courts routinely dismiss similar RICO claims that fail to meet Rule 9(b)'s requirements. *See, e.g.*, *Higgins v. Farr Fin. Inc.*, 2009 WL 3517597, at *3 (N.D. Cal. Oct. 26, 2009) (conclusory allegations that other, unidentified customers were affected by the alleged scheme were insufficient to allege an open-ended pattern of racketeering activity); *Titan Glob. LLC v. Organo Gold Int'l, Inc.*, 2012 WL 6019285, at *7 (N.D. Cal. Dec. 2, 2012) (plaintiffs failed to plead a pattern of racketeering activity where they only pleaded one "adequately alleged act of interstate wire fraud," where the other alleged acts were insufficiently pleaded).

Cress's alleged wire fraud predicate acts also lack the required specificity. *See Mostowfi v. 12 Telecom Int'l, Inc.*, 269 Fed. App'x 621, 624 (9th Cir. 2008) (Rule 9 not satisfied where "[m]ost of the alleged predicate acts are general statements about actions committed by defendants that fail to identify the 'who, what, where and how' of the misconduct charged" and "these problems are exacerbated because the plaintiffs lump together the defendants without identifying the particular acts or omissions that each defendant committed"). Here, Cress's RICO claim improperly groups Nexo and its affiliates without any particularized detail or identification of each entity or individual's role.

### c. Cress Fails to Plead the Continuity Requirement

Cress also fails to plead the "continuity" requirement. Cress's OTC transactions and liquidations on the Nexo platform, and the fees that Nexo allegedly charged Cress, occurred during a narrow, four-month period of time between March 2021 and June 2021. Dkt. 88 ¶¶ 62, 96. "Courts routinely find that alleged racketeering activity lasting less than a year does not constitute a closed-ended pattern." *Focus 15, LLC v. Nico Corp.*, 2022 WL 267441, at *9 (N.D. Cal. Jan. 28, 2022) (quotation omitted). Cress does not allege closed-ended continuity because the alleged predicates did not extend over a substantial period of time. Nor are his conclusory allegations of open-ended continuity sufficient, particularly in light of Nexo's withdrawal from the U.S. market in 2023. Dkt. 80-7 at 130191; *see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995) (acceptance of a "once a RICO violator, always a RICO violator" basis for

continuity "would deprive the pattern requirement of all meaning").

To the extent Cress claims open-ended continuity based on class-action-type allegations that Nexo charges fees to unidentified foreign customers, he does not plead those other transactions with the required specificity, and RICO does not apply to extra-territorial conduct in any event—as is the case with a foreign company transacting with foreign customers. *See RJR Nabisco Inc. v. European Cmty.*, 579 U.S. 325, 354 (2016) ("Section 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury to business or property and does not allow recovery for foreign injuries."); *Life Bliss Found. v. Sun TV Network Ltd.*, 2014 WL 12589657, at *7 (C.D. Cal. Sept. 17, 2014) ("there is a presumption that RICO does not apply extraterritorially").

### B.    Cress Fails to State a RICO Conspiracy Claim

Because Cress's substantive RICO claim fails, his RICO conspiracy claim under § 1962(d) likewise fails. *See, e.g.*, *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (RICO conspiracy claim falls with the substantive RICO claim). Additionally, Cress pleads no non-conclusory allegations of a conspiracy—*i.e.*, an agreement to commit two acts in furtherance of the scheme or an agreement to the overall scheme. *Id.* Conclusory allegations of a conspiracy are inadequate. *See Wolov v. Duel*, 2023 WL 2780369, at *4 (C.D. Cal. Feb. 28, 2023) (citation omitted). Cress does not identify any "agreement," the parties to that agreement, or the "two acts in furtherance." *Baumer v. Pachl*, 8 F.3d 1341, 1346–47 (9th Cir. 1993) (a "RICO conspiracy requires the assent of each defendant who is charged"). As explained above, in connection with the enterprise, there are no allegations regarding what each Nexo affiliate agreed to do or how each furthered the supposed "enterprise." *See, e.g.*, *id.* (complaint's "bare allegations" did not provide a "basis to infer assent to contribute to a common enterprise"); *Ewing v. Flora*, 2015 WL 12564225, at *5 (S.D. Cal. Mar. 25, 2015) (dismissing RICO conspiracy claim where the complaint lacked sufficient facts from which the court could conclude that defendants knew about and agreed to facilitate conduct that violated RICO).

### C.    Cress Fails to State a Civil Theft Claim

Cress's civil theft claim is predicated on the contention that Nexo committed the crime of theft. In particular, Penal Code § 496(a) states that "[e]very person who buys or receives any

-24-

property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment . . . ." Section 496(c) states that "[a]ny person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." Thus, a civil theft claim is focused on "property that has been stolen" in a criminal sense.

First, Cress's civil theft claim fails because a dispute about fees arising from a voluntary commercial transaction is not "theft." *See GEC US 1 LLC v. Frontier Renewables, LLC*, 2016 WL 4677585, at *9 (N.D. Cal. Sept. 7, 2016) (civil theft requires "a specific intent to steal, and cannot be established if a defendant has a good faith claim of right to possession"). "A cause of action for civil theft cannot lie where a plaintiff receives legitimate services based on mutual agreement to pay for those services." *Alvarez v. Adtalem Educ. Grp., Inc.*, 2019 WL 13065378, at *5 (N.D. Cal. Dec. 16, 2019). *AdTrader, Inc. v. Google LLC*, 2018 WL 3428525, at *9 (N.D. Cal. July 13, 2018), is instructive. There, the court dismissed plaintiff's civil theft claim where plaintiff alleged that Google received advertisement fees based on alleged misrepresentations. *Id.* The court found that "Google lawfully received fees under the parties' mutual agreement and thus it did not receive stolen property." *Id.* Allegations of misappropriation and/or fraud cannot amount to receipt of stolen property as a matter of law, as the clear legislative intent of Section 496's enactment was to "'eliminat[e] markets for stolen property.'" *Grouse River Outfitters Ltd v. NetSuite, Inc.*, No. 16-CV-02954-LB, 2016 WL 5930273, at *14 (N.D. Cal. Oct. 12, 2016).

Cress's claim that fees charged on his OTC cryptocurrency purchases and liquidations were too high does not qualify as "theft" under this criminal statute, which requires specific intent to steal. *See GEC US 1*, 2016 WL 46778585, at *9. Cress does not plead that Nexo had intent to "steal" Cress's property—it is merely Cress complaining about the terms of a commercial transaction between contracting parties. If Cress were correct, then every run-of-the-mill fee dispute would devolve into a "theft" or "RICO" dispute seeking treble damages, which the California Supreme Court has cautioned against. *See Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361 (2022)

-25-

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

("we observe that not all commercial or consumer disputes alleging that a defendant obtained money or property through fraud, misrepresentation, or breach of a contractual promise will amount to a theft").

Second, as with his other claims sounding in fraud, Cress must meet the requirements of Rule 9 regarding the allegedly false statements. *See Core Focus Consulting 2, LLC v. RenewAge Energy Sols., Inc.*, 2024 WL 3403115, at *4 (C.D. Cal. July 12, 2024) (where a civil theft claim relies on a "false representation" to fraudulently obtain property, plaintiff must "state the time, place, and specific content of the false representations" and "the identities of the parties to the misrepresentation"). Here, Cress pleads none. The generic advertising identified in the SAC did not discuss OTC fees.

### D.    Cress Fails to State Fraudulent Inducement and UCL Claims based on "Some of the Best Rates in the Market" or OTC Fees

Cress added allegations regarding alleged false statements concerning "some of the best rates" and OTC cryptocurrency purchase fees to his first cause of action for fraudulent inducement, and his second cause of action for breach of the false advertising prong of the UCL. Allegations of fraudulent conduct are subject to the heightened pleading standard of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). To meet Rule 9(b), plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P 9(b). The complaint must identify the "who, what, when, where, and how" of the fraudulent conduct, "as well as what is false or misleading about" it and "why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

First, Cress fails to plead the alleged affirmative misrepresentation with particularity.

The first allegation—that Nexo falsely represented "some of the best rates on the market" (Dkt. 88 ¶¶ 52, 82, 117) — is non-actionable puffery. "[A]ssertions that a particular product is the 'best' or speculative statements about possible profits are non-actionable opinions ('puffing') and a party is not entitled to rely upon them." *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999); *see also Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1149 (E.D. Cal. 2017). The language "some of the best rates" is puffery because it is a qualified

statement of opinion about how "some of" Nexo's rates compare to an undefined "market." Notably, Cress admits to the qualifier "some of," but then deletes it when describing the statement in certain counts. Dkt. 88 ¶¶ 140, 153. "Under any theory of deceit, a misrepresentation is actionable only if it is a representation of fact rather than opinion." *Copart*, 277 F. Supp. 3d at 1149.

The second allegation—that Nexo misrepresented its fees about OTC transactions and liquidations—does not point to any specific statement that Nexo does not charge fees for OTC transactions or liquidations. On the contrary, Cress cites ads, blog posts, or a Whitepaper about different services for which Nexo did not charge fees. *See* Dkt. 76-3 ¶¶ 53, 55. Consequently, Cress's allegations do not establish a misrepresentation sufficient to support a fraudulent inducement claim.

Cress also vaguely claims that "[t]hroughout 2020 and early 2021, Nexo publicly advertised that it did not charge any fees for any services on its platform. . . ." Dkt. 88 ¶ 53; *see also id.* ¶ 111. He alleges that he "relied upon Nexo's representations regarding its OTC Desk and its zero-fee policy in choosing to utilize Nexo's OTC Desk. . . ." *Id.* ¶ 54. However, these statements lack the specificity required by Rule 9(b). Critical details are missing: what advertising is Cress referring to? Did this advertising address fees regarding OTC transactions or liquidations as at issue here? When did Cress see any of the advertisements? In what form? Did he see them before his liquidations? He does not plead this information. Moreover, at least two referenced advertisements are from 2020— about a year before Cress's involvement with Nexo. *See* Dkt. 88 ¶ 53(a), (b). He does not allege that he saw these advertisements at the relevant time, or that they were still applicable in 2021. *See, e.g.*, *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. 2010) (the complaint did not allege that the allegedly fraudulent packaging remained consistent).

Such vague allegations do not satisfy Rule 9(b)'s heightened standard. *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (plaintiff failed to specify when he was exposed to advertisements, which he found material, and which he relied upon before purchasing a car); *In re 5-Hour ENERGY Mktg. & Sales Practices Litig.*, 2015 WL 12734796, at *6–7 (C.D. Cal. Jan. 22, 2015) (plaintiffs' allegations that they saw "numerous advertisements" were too vague under Rule 9); *Yumul*, 733 F. Supp. 2d at 1124 (plaintiff failed to allege when she saw or heard the particular representations upon which her complaint was based).

### E.      <u>Cress Fails to State a Fraudulent Omission Claim</u>

Cress attempts to assert a fraudulent omission claim, again relying on his theory regarding undisclosed fees. He alleges that Nexo failed to disclose its fees and profits on his OTC transactions and during the liquidation of his assets. To successfully assert a fraudulent omission or concealment claim under California law, a plaintiff must demonstrate the following elements: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612–13 (1992).

Cress's claim fails for several reasons. To start, the SAC does not plausibly allege that Nexo concealed or suppressed any material fact, nor does it establish that Nexo was under a duty to disclose such information to Cress. With regard to liquidation fees, Cress has not, and cannot, articulate how knowledge of these fees would have changed his actions.

As previously discussed, while Nexo advertised no fees for some of its services, the advertisements Cress references do not pertain to the specific services he used, nor are they at issue in this case. These advertisements all relate to non-OTC transactions or services. Dkt. 88 ¶ 55. Cress's claims do relate to "minimum contribution requirements" (*id.* ¶ 53(b)), or "unlimited free-of-charge fiat withdrawals, crypto and fiat transfers into your Nexo Wallet, and credit line withdrawals" (*id.* ¶ 53(c)). Nor is most of the generic "fee" advertising contemporaneous with Cress's transactions in March-June 2021 (*id.* ¶¶ 53(a), (b), (e) (identifying the Whitepaper issued in 2018 and two ads from March and June 2020)). Indeed, the "[n]o hidden fees" statement in the 2018 Whitepaper related to Nexo's "Instant Crypto-backed Loan," not multi-million-dollar purchases of cryptocurrency through Nexo's OTC desk. *See* Ex. 1 at 17903 (Whitepaper).

By failing to plead the alleged fraud with the specificity required by Rule 9(b), Cress is able to falsely equivocate and claim that "Nexo publicly advertised that it did not charge any fees for any services on its platform." Dkt. 88 ¶ 53. But the ads that Cress cites show that Nexo did not make

such a broad, categorical, and unconditional statement. Nexo never made any direct representations to Cress that there were no fees on his specific OTC transactions or liquidations, and thus was under no obligation to correct, clarify, or supplement statements about fees that it never made to him.

Cress argued in his Motion to Amend that Nexo was his "agent, and thus his fiduciary," (Dkt. 76 at 18). This is wrong as a matter of law. A court in the Central District of California found that "it does not appear that a fiduciary relationship ever existed between [Nexo] and Plaintiff." *Hanson v. Nexo Cap. Inc.*, No. 2:24-cv-10466-MAR, Dkt. 31, at 26 (C.D. Cal. June 30, 2025). The court in *Hanson* made this finding based on the parties' contract and California law—both of which are applicable here. *Id.* The CPA under which Cress bases his OTC allegations states unambiguously that Cress understands that "Nexo is not providing and will not provide any fiduciary . . . services with respect to" Cress "or any transaction subject to this Agreement." Dkt. 80-8 at 37.

Under California law, "a fiduciary relationship generally does not arise out of ordinary arms-length business dealings," since "[i]n a typical business contract or relationship, one party does not commit to act in the other party's best interest rather than its own." *World Surveillance Grp. Inc. v. La Jolla Cove Invs., Inc.*, 66 F. Supp. 3d 1233, 1235 (N.D. Cal. 2014) (citation omitted); *see also Sun West Mortg. Co. v. First Mariner Bank*, 2016 WL 11746768, at *2 (C.D. Cal. Aug. 25, 2016) (collecting cases). The CPA does not require Nexo to go into the cryptocurrency market and purchase cryptocurrency at a certain price on behalf of Cress. *See City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal.4th 375, 386 (2008) (to state a claim for breach of fiduciary duty, a party must allege its counterparty knowingly agreed "to act on behalf and for the benefit of another"). Instead, upon submission of a purchase order, the CPA requires Nexo to "sell, transfer and deliver the [] Counterparty Purchased Cryptocurrency"—defined as "the number or type of cryptocurrency [Cress] is obligated to purchase from Nexo pursuant to a Purchase Order." Dkt. 80-8 at 32-33. Since Nexo was not acting as Cress's agent and was merely selling Cress cryptocurrency, this was purely an arm's-length transaction which cannot form a fiduciary relationship. This Court should follow the court in *Hanson* and find that Cress's proposed fraudulent omission claim is not well pled.

Nor is there any other basis to impose a duty to disclose on Nexo. Under California law, to plausibly allege a fraudulent omission, the omission must either (1) "be contrary to a representation

actually made by the defendant," or (2) "an omission of a fact the defendant was obliged to disclose." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1084 (N.D. Cal. 2022). Here, the alleged omission was not contrary to a representation actually made by Nexo, and Nexo was under no obligation to disclose its OTC fees in advance of the transactions.

### F.    Cress Fails to State a Breach of Contract Claim

Cress fails to state a breach of contract claim because he fails to allege any specific terms of the CPA that Nexo has breached. Cress alleges that Nexo breached the parties' CPA by "failing to timely execute Plaintiff's Purchase Orders as required." Dkt. 88 ¶ 257. Nothing in the CPA guarantees execution of such manual purchase orders in a specific amount of time, or at a specific price, and without fees or profit.

Instead, he alleges that Nexo breached the CPA by "allowing the Review Period to lapse without timely execution or confirmation." *Id.* However, he does not plead any specifics about the confirmations of his OTC transactions, and certainly nothing in the CPA guarantees execution of such manual purchase orders in a specific amount of time, or at a specific price, and without fees or profit. *See* Dkt. 80-8.

Then, Cress alleges that "Nexo further breached the CPA by charging Plaintiff undisclosed fees in the execution of cryptocurrency purchases." Dkt. 88 ¶ 258. Cress does not specify which provision of the CPA Nexo violated by charging fees on his transactions. He cannot—nothing in the CPA prevents Nexo from charging fees on its OTC transactions. Cress cannot rely on his other allegations regarding Nexo's supposedly false advertisements because Section 3.2(g) of the CPA provides that "in entering into any such transaction [under the CPA], [Cress] has not relied on any statement or other representation of Nexo other than as expressly set forth herein." Dkt. 80-8 at 37. Nexo's alleged generic advertising about fees therefore cannot provide a factual predicate for breach of the CPA, since that advertising was not contained in the CPA. Accordingly, Cress has not—and cannot—plead a breach of the CPA. *See, e.g.*, *Satvati v. Allstate Northbrook Indem. Co.*, 634 F. Supp. 3d 792, 800 (C.D. Cal. 2022) ("Plaintiffs' Complaint cannot be cured because Plaintiffs can[not] identify a contractual provision that has been breached").

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**G.**    **Cress Fails to State a Common Law Fraud Claim based on the NEXO Token**

Finally, Cress has filed a new fraud claim that is based on the same factual predicate as his old securities fraud claim. Cress appears to assert this new claim to seek recovery of his liquidation losses beyond those losses associated with his NEXO token purchases. To plead a fraud claim under California law, Cress must allege "'(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" *Khan v. CitiMortgage, Inc.*, 975 F. Supp. 2d 1127, 1139 (E.D. Cal. 2013) (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 974 (1997)).The Court should dismiss the new fraud claim because Cress fails to plausibly allege causation, scienter, and reasonable reliance.

First, Cress fails to plausibly allege causation because the liquidation damages he seeks are untethered from the alleged false representation regarding the SEC status of the NEXO token. "To state a claim for fraud, a plaintiff must plead facts suggesting that the damages in question were the direct result of the misrepresentation in question." *Shahangian v. Bank of Am. Nat'l Ass'n,* No. CV15-1919 DMG (MRWX), 2015 WL 12696038, at *4 (C.D. Cal. Dec. 1, 2015) (dismissing a complaint for failure to allege damages resulting from the misrepresentation because proximate damages is an essential element of a fraud claim).

The Court previously dismissed that portion of the securities claims based on the EIP. The Court agreed with Nexo's position that "Cress paid nothing for the EIP, and he pleads no losses associated with it. Nor could he, in light of the fact that he earned over $300,000 in cryptocurrency interest over the life of his account." Accordingly, the Court recognized that fraud damages were limited to losses arising from the alleged security, not to unrelated events. Dkt. 26 at 26, 31. Cress's securities fraud claim is based on the contention that the NEXO token is a security, and that the alleged false statement directly related to the SEC status of the NEXO token. Any purported damages would be limited to losses associated with the NEXO token.

The Court also previously dismissed that portion of the securities claims related to the "Leveraged Investment Instrument," which was a euphemism that Cress coined to refer to his entire Nexo account. By mis-characterizing the "security" as his entire account, Cress hoped to recover all

his liquidation losses—including losses associated with his non-security BTC, ETH, and credit lines—through his securities claims. The Court correctly recognized that the only plausible alleged security is the NEXO token, and the only plausible damages associated with those securities claims are the losses on that particular token. Dkt. 26 at 28-31; Dkt. 37 at 9-10.

Seeking to take a second bite at the apple and avoid the impact of the Court's EIP and Leveraged Investment Instrument holdings, Cress is using his new fraud claim to again seek recovery of all his liquidation losses. This new fraud claim is based on the exact same representation Cress is relying on to support his surviving securities fraud claim directed to the NEXO token. In particular, Cress seeks "restitution of the digital assets he lost," out-of-pocket damages, consequential damages, interest he would have earned on those assets, and punitive damages. Dkt. 88 ¶ 190.

The Court should dismiss this new fraud claim because Cress fails to plausibly allege causation, or resulting damage. Because the alleged false representation is limited to the SEC status of the NEXO token, Cress can only establish resulting damage for his losses associated with the NEXO token. Cress alleges that Nexo's statement regarding the SEC status of the NEXO token caused him to purchase the NEXO token, not that it caused him to take out his credit lines, or caused the losses associated with non-security BTC and ETH. Nexo's statement about the SEC status of the NEXO token did not directly result in Cress's liquidation losses on BTC and ETH. On the contrary, the only "direct result" of Nexo's representation would be potential losses associated with the NEXO token.

Second, Cress fails to plausibly allege scienter by Nexo, and reasonable reliance by him. Both are essential elements that must be pled with the plausibility standard required under Rule 8(a). *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1047 (S.D. Cal. 2018) (dismissing fraud claim as implausible where alleged scienter was contradicted by documents in the case) (collecting cases). "'[M]ere conclusory allegations' that representations or omissions 'were intentional and for the purpose of defrauding and deceiving plaintiffs ... are insufficient.'" *id.* (quoting *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal.Rptr.3d 221, 234 (2007)).

Here, Cress's fraud claim solely hinges on one allegation—that Nexo misrepresented that

"The NEXO token is registered with the SEC as a security." Dkt. 88 ¶ 183. In his pleading, Cress omits the crucial context of the statement, which contradicts his assertions regarding Nexo's intent and undermines his purported reliance. As explained by California courts, "'[b]esides actual reliance, a plaintiff must also show justifiable reliance, *i.e.*, circumstances were such to make it *reasonable* for the plaintiff to accept the defendant's statements without an independent inquiry or investigation.'" *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp*., 157 Cal. App. 4th 835, 864, as modified (Dec. 26, 2007) (emphasis in original; quotation omitted).

Specifically, a Nexo representative told Cress: "Additionally, please note that the NEXO token is registered with the SEC as a security, **therefore we are only allowed to facilitate deals for American citizens who are also certified, accredited investors**." Dkt. 88 ¶ 39 (emphasis added). Cress admits that Nexo "did file a Form D Notice of Exempt Offering of Securities with the SEC in 2018," which explains why the Nexo representative clarified that "we are only allowed to facilitate deals for American citizens who are also certified, accredited investors." *Id.* ¶ 39. Together, the full statement suggests that in an abundance of caution, knowing that Nexo had previously filed a Form D with the SEC in 2018, the representative told Cress that he had to be an accredited investor to purchase the Nexo Token. The Nexo representative did not act with intent to deceive Cress, but instead to explain why he was asking for Cress's accredited investor certificate.

The second part of this statement—and the context it provides— renders Cress's claim implausible. This likely explains why, when pleading his fraud causes of action, Cress quotes only the first part of the statement and omits the second. *Id.* ¶¶ 177, 183. The intent and effect of the statement show that it was intended by Nexo, and reasonably understood by Cress, to mean that Nexo was only selling the NEXO token to U.S. accredited investors in an abundance of caution. In fact, Cress relied on the statement exactly as intended by submitting proof of his accredited investor status to Nexo. *See* Dkt. 80-8 at 40. Thus, this allegation does not satisfy the heightened requirements of scienter and reliance for common law fraud claims. The Court's prior ruling on Nexo's earlier motion to dismiss does not alter this analysis, as that ruling addressed only falsity and materiality, not scienter or reliance. Dkt. 26 at 32-33.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**CONCLUSION**

Nexo respectfully requests that the Court grant this motion and dismiss the first cause of action for fraudulent inducement and the second cause of action for violation of the UCL, to the extent they are predicated on the new allegations regarding "some of the best rates on the market" and OTC fees. The Court should dismiss in their entirety the fifth cause of action for fraud, the sixth cause of action for civil theft, the seventh cause of action for civil RICO, the eighth cause of action for RICO conspiracy, the ninth cause of action for fraudulent omission, and the tenth cause of action for breach of the CPA.

DATED:  December 5, 2025                    BAKER & MCKENZIE LLP


                                           By */s/ Ian S. Shelton*
                                              Ian S. Shelton

                                              *Attorneys for Defendant Nexo Capital Inc.*

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT