February 11, 2026

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:   *John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH - JOINT DISCOVERY LETTER REGARDING ALLEGED DEFICIENCIES IN NEXO'S DOCUMENT COLLECTION AND PRODUCTION

Dear Judge Hixson:

The parties submit this joint letter setting forth each side's view as to the sufficiency of Nexo's document collection and production. *See* Dkts. 62, 65, 66-1, 69. The parties have met and conferred in good faith prior to filing this letter, including by Zoom meeting and the exchange of letters and emails.

## Attestation

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred telephonically and in good faith to resolve the disputes set forth below.

| | |
|---|---|
| Dated: February 11, 2026 | TAYLOR-COPELAND LAW |
| | By: /s/ James Taylor-Copeland |
| | Attorneys for Plaintiff |
| | |
| Date: February 11, 2026 | BAKER & MCKENZIE LLP |
| | By: /s/ Ian S. Shelton |
| | Attorneys for Defendant |

**PLAINTIFF'S POSITION**. Cress requests relief following Nexo's admission that it destroyed critically relevant documents after receiving a demand letter in October 2021 and throughout this litigation, in violation of prior court orders (Dkts. 62, 65, 69). Cress seeks the following remedies at Nexo's expense: 1) An order that Nexo provide a certified response to his February 3 letter (**Ex. 6**) by February 20, 2026, 2) Leave to take a Rule 30(b)(6) deposition of Nexo by February 27, 2026 regarding its document collection, retention, search, and production; 3) A forensic examination of Nexo's systems and the custodians' electronic devices; 4) Leave to file for sanctions under F.R.C.P. 37(e).[1]

**Factual Background**. Nexo liquidated millions of dollars of Cress' assets in June 2021. Cress sent demand letters to Nexo on October 26 and November 29, 2021. Nexo retained Eversheds Sutherland—including its current counsel, Ian Shelton—to represent it in connection with those claims. After pre-litigation negotiations broke down, Cress filed his Complaint against Nexo on February 27, 2023. Four days later on March 1, 2023, Nexo began deleting all communications in its Slack Public and Private Channels by implementing automatic deletion protocols. Months earlier, Nexo implemented automatic deletion protocols of all Slack Direct Messages and its Managing Partners' emails. These deletions directly contravene the only data retention policy Nexo has produced in this litigation (from March 27, 2023), which requires Nexo's emails to be retained indefinitely and Slack communications be preserved for at least five years. The policy also requires litigation holds in response government investigations and litigation—precisely the circumstances present here.

Cress served his First Set of RFPs on Nexo on July 25, 2024. The Court ultimately ordered Nexo to produce responsive documents, and identified 14 custodians, 9 non-custodial sources and date ranges to be searched (January 1, 2017 to present). See Dkts. 62, 65, 69. Nexo then agreed that it would "substantially complete" its document production by August 31, 2025. Dkt. 70. It has not.

Cress first raised the issue of Nexo's inadequate document production in a September 9, 2025 letter which raised 17 specific discovery deficiencies, including: zero emails from Nexo's Managing Partners, Antoni Trenchev and Kosta Kantchev, almost no Slack communications, and extreme metadata issues. Despite Cress following up numerous times through email and letters, including on 9/15/25, 10/23/25, 1/14/26, and 2/3/26, Nexo delayed providing any substantive information to Cress for nearly five months, frequently ignoring emails, promising forthcoming responses only to delay weeks at a time, and generally refusing to speak on the phone to resolve any of the issues until late January 2026.[2]

Nexo's January 30 letter finally disclosed that Nexo destroyed <u>all</u> of Trenchev and Kantchev's emails and its Slack Direct Messages through auto-deletion policies implemented on December 4, 2022. Nexo also implemented auto-deletion policies for its Slack Public and Private Channels four days after Cress filed his lawsuit against Nexo. Rather than acknowledge and seek to remediate its destruction of critical documents and communications, Nexo continues its willful abstractions and delays. Cress now moves for relief to understand the exact nature and extent of Nexo's conduct.

**Discovery Deficiencies Requiring Court Intervention**. Nexo 1) deleted all of Trenchev and Kantchev's emails and all Slack Direct Messages in December 2022; 2) began deleting all its remaining Slack communications four days after Cress filed suit against Nexo; 3) refuses to search any of its custodians' electronic devices, despite admitting to deleting nearly all relevant email cloud data (for Trenchev and Kantchev) and Slack data (for all custodians); 4) refuses to describe what it did to search

---

[1] Cress anticipates raising the most serious issues in a single Rule 37 near the close of fact discovery. However, should this Court wish for Cress to raise any of these issues earlier, Cress is prepared to do so.
[2] Cress' meet and confer letters are attached as **Ex. 1** (9/9/25), **Ex. 2** (9/15/25), **Ex. 3** (10/23/25), **Ex. 4** (1/14/25), **Ex. 5** (Nexo's 1/30/26 letter admitting to implementing document-deletion policies) **Ex. 6** (2/3/26). *See also* **Ex. 7** (Email meet and confer correspondence).

1

for the missing data and documents; 5) refuses to identify any litigation holds it issued.[3]

**1. Nexo's Managing Partners' Deleted All Emails**. Nexo initially sought to keep Trenchev and Kantchev out of this litigation as custodians. Dkt. 64. It is now clear why. They deleted all their emails. On December 4, 2022, Trenchev and Kantchev implemented auto deletion policies for their emails older than 30 days, which continued even after the Court ordered Nexo to include them as custodians on February 19, 2025. Dkt. 64. Trenchev and Kantchev are among **the most critical witnesses in this case**, overseeing Nexo's operations and its Token sale. Trenchev signed Cress' OTC purchase agreements and has filed two declarations in this case attesting to relevant factual matters. Dkts. 19-1, 78-1. Kantchev managed NDS (the company that employed Nexo's VIP relationship managers) when Cress entered his loans in 2021. Dkt. 59-1. Trencehv's and Katnchev's deletion of all of their emails is plainly sanctionable conduct. *Apple Inc. v. Samsung Elecs. Co., Ltd*., 881 F.Supp.2d 1132 (2012) (spoliation sanctions appropriate where senior employee custodians failed to produce responsive emails).

**2. Nexo Began Deleting Its Most Important Internal Communications Four Days After Cress Filed His Lawsuit.** Slack was Nexo's primary internal communications channel for discussing the factual issues at the heart of this case, both in organized "channels" and private messages. These channels and private messages discussed Nexo's sale of NEXO Tokens in the US (described in an email referencing Trenchev's participation in a "USA slack channel"), Nexo's VIP customers, its liquidation relief program, and its OTC sales—all of which relate directly to Cress and his claims. Cress has uncovered numerous emails describing these Slack channels wherein Nexo's NEXO Token sales, VIP customers, and OTC sales are discussed, but Nexo has provided essentially no communications from Slack prior to 2023. Most significantly, Nexo has produced documents that expressly reference Slack communications about Cress himself but has deleted the underlying Slack messages. Cress will never know what Nexo said about him while he was a customer because Nexo willfully implemented these deletion policies just days after learning of Cress' lawsuit. This cannot be interpreted any other way—it is intentional destruction of relevant evidence. This is plainly sanctionable conduct. *Red Wolf Energy Trading, LLC v. BIA Capital Mgmt., LLC*, 626 F. Supp. 3d 478, 498 (D. Mass. 2022) (failure to produce Slack messages is sanctionable). Nexo's attempt to highlight its preservation of some of Hristov's emails rings hollow where it deleted *all* his Slack communications, including those involving Cress.

**3. Nexo Refuses to Search Any of Its Custodians Physical Devices.** Despite Nexo admitting to deleting the vast majority of its relevant cloud-data communications, Nexo continues to refuse to search a single physical device, including any of the company issued computers or the custodians' cell phones and personal computers. Rule 34 requires employees to search all devices and databases under their control—even personal devices—for responsive documents. *Oracle Am., Inc. v. ProCore Techs., Inc.*, 2025 U.S. Dist. LEXIS 144299, at *6-7 (N.D. Cal. July 28, 2025).

**4. Nexo Refuses to Identify the Specifics of Its Searches**. Cress requested Nexo specify what it did to search for documents dozens of times over a five-month period beginning in early September 2025. Nexo did not agree to a call to discuss these issues until January 22, 2026. On that call, Nexo agreed to finally provide additional information by January 28, 2025. Nexo waited until 7:33 PM on Friday, January 30, 2025 to first explain the reason for the missing documents: Nexo deleted all Trenchev and Kantchev's emails and nearly all Slack communications from all 14 custodians. Beyond that, Nexo has been unwilling to describe with specificity what it has done to search for these plainly missing documents and communications. Cress has raised these glaring issues repeatedly, including in his February 3, 2026 letter. For example, Cress has requested specifics about Nexo's email, Slack, and Google document systems and searches, and has identified numerous unresolved metadata deficiencies. Nexo refuses to

---

[3] Cress continues to meet and confer with Nexo on other issues raised in his letters, including extreme issues with metadata. He reserves the right to present those issues through a subsequent letter brief.

2

provide any additional specific information in response to Cress' inquiries. Cress thus requests the Court Order (1) Nexo to provide a certified response to the issues raised in Cress' February 3 letter and (2) a forensic examination of Nexo's systems and its custodians' devices, at Nexo's expense.

**5. Nexo Refuses to Provide Any Information About Litigation Holds**. Nexo's contention that it did not have a duty to preserve is further undermined by the fact that it has been under investigation for securities violations and unlawful lending almost constantly from 2020 to 2026. For example, Nexo acknowledges that federal US and California regulators began inquiring into Nexo's "Regulation D token offering" and lending practices as early as April 2020. Nexo was also in contact with the SEC and several other state regulators as early as summer 2021—when Nexo liquidated nearly all of Cress' assets. Nexo was also involved in class action litigation relating to its unlawful lending and liquidation practices even before Cress was liquidated in 2021. *See Jeong v. Nexo Financial LLC et al.*, Case No. 5:21-cv-2392 (Filed April 1, 2021);[4] Despite Cress' October 26, 2021 demand letter putting Nexo on notice of his threat of litigation, and Nexo's near-constant litigations and regulatory investigations from 2020 to present, Nexo has not identified a single litigation hold relating to any of its data, including its admittedly deleted emails and Slack communications. *See Weride Corp. v. Kun Huang*, 2020 U.S. Dist. LEXIS 72738 (N.D. Cal. Apr. 16, 2020) (granting terminating sanctions for destroying critical ESI even when "a party should reasonably know that evidence may be relevant to anticipated litigation.").

Nexo's serious and egregious destruction of the most critically relevant documents in this case warrants immediate Court intervention. Cress thus respectfully requests the relief requested above.

**NEXO'S POSITION**. Cress's premature letter brief was precipitated by a statement in Nexo's January 30, 2026 meet and confer letter concerning *retention periods* on certain categories of internal Nexo communications. Cress's unsubstantiated allegations of intentional "destruction" of evidence are baseless and inflammatory. Cress's letter brief unfairly seeks to impugn Nexo's character and motives without evidence, and to ignore Nexo's tremendous discovery efforts in this matter. Nexo had no reason to think these communications were relevant at the time Nexo received Cress's customer-specific demand letters in October and November 2021, or when he filed his lawsuit in February 2023.

Cress appears to argue that Nexo should have suspended, or never implemented, all retention periods company-wide in response to his demand letter focused on a handful of single-customer OTC transactions and liquidations between March and June 2021. His position misstates Nexo's preservation obligation. "'Document retention policies,' which are created in part to keep certain information from getting into the hands of others, . . . are common in business," and are lawful "under ordinary circumstances." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005). "The duty to preserve evidence does not extend to every bit of ESI in a defendant's possession, but is limited to evidence likely to be relevant to a claim or defense as to which litigation is reasonably foreseeable." *Best Label Co. v. Custom Label & Decal, LLC*, No. 19-CV-03051-SI (VKD), 2022 WL 1525301, at *4 (N.D. Cal. May 13, 2022). Issues related to preservation, relevance, and foreseeability are inherently fact-based, and cannot be decided based on the conclusory and shrill accusations in Cress's 2.5 page letter brief, while discovery regarding the same subject matter is still pending. Nexo's preservation obligation must be determined by the information known to Nexo in 2021 and 2023, not based on the broadened scope of Cress's Second Amended Complaint ("SAC") in 2025.

Nexo has gone to extraordinary lengths to comply with its discovery obligations in this case. Nexo has produced over 58,000 documents in response to Cress's requests and this Court's orders, spanning over

---

[4] Notably, Nexo's counsel in *Jeong*, Baker McKenzie and Eversheds Sutherland, is the same as in this case.

340,000 pages. 52,000 documents, or approximately 90%, were produced by August 31, 2025. Over 1,000 documents hit on Cress-specific identifiers, and over 8,000 documents hit on the name of Cress's relationship manager.[5] Nexo searched the records of 23 custodians and non-custodial sources, applied 100+ search terms selected by Cress, and manually reviewed every document hit because Cress objected to use of widely-accepted technology assisted review (TAR 2.0/CAL). Because Cress's allegations in his demand letters (**Exhibits 8 and 9)** and original complaint (Dkt. 1) were fraud allegations based on a VIP brochure and external communications with Cress's relationship manager, Nexo preserved and produced Cress-specific data, including voluminous Salesforce logs, chats, email correspondence, and transaction histories. Nexo's preservation included the complete email inbox of Cress's relationship manager. When Nexo received Cress's demand letter in October 2021, it gathered and preserved documents responsive to the then-existing allegations—*i.e.*, Cress's claims that he was defrauded based on the VIP brochure sent to Cress, and based on his external communications with Nexo. Cress uses hindsight to evaluate Nexo's document retention policies, but that is not the appropriate analysis. The scope of discovery today is not the same as it was in 2021 or 2023. Nexo is not required to preserve every document within the company, or suspend all retention policies, after being sued.

Cress's 2021 demand letters raised claims specific to *his transactions* and allegedly fraudulent conduct directed towards *him*. See **Exhibits 8 and 9**. Notably absent from his 2021 demand letters were any claims regarding securities fraud, theft, or RICO allegations that now appear in the SAC. Indeed, *the Nexo Token is not referenced at all* in either 2021 demand letter, and Cress's 2021 demand was limited to "payment of the value of his BTC and ETH" that was liquidated. **Exhibit 9** at 3. The letter also failed to identify categories of potentially relevant documents or make any demand for preservation. Based on the letters, Nexo took reasonable steps to identify and preserve documents related to Cress, his transactions, and his interactions with Nexo. Cress does not allege these documents were not preserved.

Nothing about Cress's 2021 demand letters put Nexo on notice that emails sent by Trenchev and Kantchev would be relevant to Cress's individual claims. Cress observes that Nexo applied a 30-day retention period to Trenchev's and Kantchev's emails beginning December 4, 2022. But Trenchev and Kantchev, directors of Nexo, had no personal information related to Cress's transactions in 2021.[6] To the extent that Cress argues Trenchev and Kantchev's communications from 2018 are relevant to the Nexo Token securities claims, Cress did not assert those claims until he filed his original complaint on February 27, 2023—months after the 30-day email retention policy was set. Nexo had no reason to believe, in December 2022, that Trenchev's and Kantchev's emails from the start of the company in 2018 were relevant to Cress's claims about OTC purchases and liquidations of BTC and ETH in March-June 2021. Additionally, Cress sought leave to expand this lawsuit and amend his pleadings to add new theft and RICO claims in September 2025, years after the retention policies were implemented. Dkt. 76.

---

[5] In contrast, Cress has produced only 892 documents, plus 170 documents in a "privilege" production that consist mostly of "withheld for privilege" slipsheets. Nexo's document collection efforts are described in its January 30, 2026 meet and confer letter, **Exhibit 5**. Nexo also sent responsive meet and confer letters to Cress on October 20, 2025 and January 9, 2026, **Exhibits 10 and 11**.

[6] Although Trenchev DocuSigned Cress's Cryptocurrency Purchase Agreement ("CPA"), he did so in his corporate capacity as a director of Nexo Capital. He had no communication with Cress beyond the DocuSign, which was produced. Cress did not allege breach of the CPA until his SAC in 2025. Contrary to Cress's arguments, Trenchev's limited-scope declarations in this case addressed lack of personal jurisdiction, authenticated documents in his corporate capacity, or justified Nexo's sealing or redaction requests. Dkt. 19-1, 78-1. The only relevance Cress identifies for Kantchev is his corporate title. Dkt. 59-1. The Court selected Trenchev and Kantchev as custodians over Nexo's objection on February 19, 2025. Dkt. 59-1, 65. Cress does not explain how their emails *after* this date are relevant to 2021 events.

4

Cress also complains that the default retention period for Slack channels was set to 60 days effective March 1, 2023. However, those Slack channels were internal, not customer-specific, and did not contain external communications with customers. From the beginning, Cress characterized this case as a fraud lawsuit predicated on the VIP brochure and external communications with his relationship manager. Inconsistently, he now claims that the "most critical" documents in the case were not communications to him, and the "most critical" witnesses were people who never spoke to him. Based on the substance of the 2021 demand letters and the February 2022 complaint, the scope of Nexo's preservation obligations was limited to Cress and his transactions—not all of Nexo's back-end communications about every Nexo Token sale, every VIP customer, or every OTC transaction within the entire company.

Regarding company-issued computers, as explained in its January 30 meet and confer letter, Nexo exported and searched all available email, Google Drive, and Slack data for all 23 individual custodians and non-custodial sources. Search of computers connected to the same exported databases would be duplicative and wasteful, particularly given Cress's focus on old data that would not exist on current computers. Nexo does not issue company phones. As for personal phones, computers, or email, Nexo does not have custody or control over them, does not have reason to believe they contain discoverable information, and does not have a legal right, under U.S. or stricter European privacy laws, to demand turnover of personal devices or data. *See Matthew Enter. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF, 2015 U.S. Dist. LEXIS 166553, at *10-14 (N.D. Cal. Dec. 10, 2015) (denying "motion to compel production from employees' personal email accounts" because employer had no "legal right" to data).

Finally, all of this is premature. Cress has served voluminous pending document preservation discovery, including 27 RFPs on February 4. Before serving these RFPs, on January 26, Cress served a 49-topic Rule 30(b)(6) notice, with at least 15 of those topics directed to document preservation. Nexo's responses to these document retention RFPs are not due yet, and the parties have already begun the meet and confer process to set the dates and location for the depositions of Nexo's percipient witnesses and 30(b)(6) designees (including Cress's document preservation topics) within the two-week window of March 23 through April 3.[7] Cress's proposal for "certified" meet and confer responses, or an accelerated, piecemeal 30(b)(6) deposition on document preservation in February—a month before the omnibus 30(b)(6) deposition—is unworkable and will undermine the Court's schedule. Between now and then, the parties are focused on completing discovery (including Cress's new document preservation discovery) and finishing depositions in advance of the expert witness and dispositive motion deadlines. As for Cress's demands for a forensic examination of Nexo's systems and leave to file a sanctions motion, they are based on no evidence beyond Nexo's letter discussing retention policies. If Cress believes there are grounds for sanctions after discovery is completed, and after Nexo's Rule 30(b)(6) deposition occurs in late March or early April, then he can seek appropriate relief at that time. The Court should deny the premature relief requested because Cress presents no evidentiary basis for an expedited deposition, forensic inspections, or sanctions.[8]

---

[7] Nexo disputes Cress's position that Nexo refused to identify the "specifics" of its searches, which Nexo described in three meet and confer letters. **Exhibits 5, 10, and 11.** The parties have not exhausted meet and confer efforts on document disputes. As for Cress's claim that Nexo's email or Slack retention policies between December 2, 2022 and March 1, 2023 "contravene" information in a later March 27, 2023 document, that contention will be addressed in discovery in the normal course.

[8] Cress draws the Court's attention to two unrelated lawsuits in California and the United Kingdom, and regulatory inquiries by the SEC and CDFPI in the United States. All of those disputes voluntarily resolved, many years ago, and none are relevant to Nexo's preservation obligations in this case.