# Exhibit 3

# Exhibit 3

# Taylor-Copeland Law

501 W. Broadway, Suite 800
San Diego, CA 92101
(619) 734-8770
www.taylorcopelandlaw.com

Max Ambrose | 602 570 2656 | maxambrose@taylorcopelandlaw.com

**By Electronic Mail**

**October 23, 2025**
Ian Shelton
Ian.Shelton@bakermckenzie.com
Matthew Rawlinson
Matthew.Rawlinson@bakermckenzie.com
John Treat
John.Treat@bakermckenzie.com
Stephanie Brown
Stephanie.Brown@bakermckenzie.com
Baker Mckenzie
10250 Constellation Blvd.
Los Angeles, CA 90067

    Re:   *John Cress v. Nexo Capital Inc.*, Case No. 3:23-CV-00882-TSH, Meet and Confer Letter Regarding Nexo's Document Search and Production

**Counsel,**

We write in response to your October 20, 2025 letter—received more than a month after our September 9 and 15 meet-and-confer letters. Despite this lengthy delay, your letter offers no substantive progress. It merely repeats Nexo's prior descriptions of its search process and vaguely claims to be "following up" on several categories, without confirming whether Nexo will actually produce the missing materials we identified—or when. Worse still, it entirely ignores multiple specific issues raised in our prior correspondence. While this letter reiterates the most pressing outstanding discovery issues with respect to Nexo's failure to adequately search for and produce documents and communications, we reserve all rights with respect to all issues raised in our earlier meet and confer letters.

This pattern of delay and evasion is obstructing discovery. We therefore demand clear, date-certain commitments—or a reasoned refusal—for each item below. Please confirm your availability to meet and confer this week so that we can finally move discovery forward.

1.    **Communications With Regulators**

Nexo's letter says only that it is "following up" on whether further communications regarding the 2020–2021 SEC investigation of the NEXO token exist and whether any other regulator communications exist.

1

That is not a position. Please confirm, by October 28, 2025, whether Nexo has searched for and produced (i) all communications with U.S. federal and state regulators concerning the NEXO token, Earn, liquidations, VIP/OTC practices, and related topics, and (ii) all productions made to regulators, with complete family integrity and a mapping of each cover letter to its exhibits. If any items are being withheld, identify the specific basis. Your confirmation should identify the Bates ranges for each regulator matter and the sources searched (including shared/legal mailboxes and Google Drive). We also request a date-certain (no later than November 4, 2025) for production of any additional materials related to the 2020–21 SEC investigation, which your own documents reference, and for any materials reflecting the Bulgarian investigation into Nexo, which is not reflected in your production at all.

In addition, we identified letters to regulators that appear to have attached materials about an FTX Grand Jury Subpoena (e.g., NEXO-0223231), but the materials are missing from your production. Your letter does not address this. Please produce those attachments (with complete parent-child families) or state with specificity why they cannot be produced—by October 28, 2025.

Regulatory correspondence in your production repeatedly references exhibits/spreadsheets by Bates, but those Bates references are often absent, disjoined, or do not align with families (e.g., NEXO-0226529). Your letter is silent on this. Please provide a cross-reference list mapping each letter to the specific Bates-labeled exhibit(s), or re-produce with corrected families—by October 28, 2025

2.  **Trenchev and Kantchev**

Your letter "acknowledges" numerous hits referencing emails to/from Antoni Trenchev and Kosta Kantchev, but that is precisely the problem: these emails were not produced from Trenchev or Kantchev's own files—meaning they were deleted or never collected from the accounts those principals actually used. The Court ordered Nexo to search Trenchev's custodial files (i.e., the files he had or has access to), not a single narrow address. That obligation necessarily includes identifying all email addresses he used and searching them. *PlayUp, Inc. v. Mintas* 2024 U.S. Dist. LEXIS 136098, No. 2:21-cv-02129-GMN-NJK, 2024 U.S. Dist. LEXIS 136098 (D. Nev. Aug. 1, 2024) (collecting cases from the 9th Circuit and California District Courts). Your email states you will not search legal@nexo.io despite there being no dispute Mr. Trenchev controlled this email address and used it to send responsive communications. You also do not mention antoni@trenchev.com (or any similar variants), implying you have not and will not search them. Please confirm by October 28, 2025 that you will (1) identify all email addresses used by Trenchev and Kantchev during 2017-2025 (including role accounts), (2) identify mobile devices used by Trencehv and Kantchev, (3) collect and search them for the agreed terms, and (4) produce responsive documents (or certify after a reasonable search what no longer exists and why). If you refuse, we will promptly seek Court intervention, which may include a request for a forensic examination of Trenchev and Kantchev's files.

3.  **Missing Internal Communications (Including Hristov and Dinca)**

Your response asserts you produced "over 50,000" documents and some Slack communications, but volume isn't the issue—missing communications are. Your contention that Plaintiff's pending Motion for Leave to Amend is based on these internal communications merely reinforces that critical documents are missing. For example, the emails reproduced at NEXO-0003645 include Hristov but are absent from Hristov's files; while the email chain at NEXO-0003604 includes Octavian Dinca but does not appear in Dinca's files. Please confirm by October 28, 2025 that you have run a completeness check for these chains across the custodians on the thread and re-produced the full family groups from the custodial source of each participant. If, after a reasonable search, you contend these items are not in the custodians' mail stores, please (a) identify the source from which they were produced, (b) describe any auto-deletion/archiving that would explain the gap, and (c) certify that no additional copies exist in the custodians' mailboxes or archives.

This is a critical issue as Nexo has not produced any internal emails or communications regarding Plaintiff's other two OTC purchases (or any other internal communications regarding Plaintiff). Moreover, as raised in our September 9 email, we are also aware that account managers, such as Hristov, were issued

company MacBooks. NEXO-0137920. You have not provided any response to our request that you confirm that Nexo imaged and searched Hristov's MacBook(s) and any other company-issued devices he used. You have similarly provided no response to our other questions regarding Hristov: Were Mr. Hristov's email accounts and devices fully collected? If so, how is it possible that many relevant emails, including emails directly to, from, or regarding Plaintiff are missing? Also, how did a 2024 litigation document end up in his files? To be clear, we are looking for direct responses to each of these questions.

### 4. Slack/Chat Communications

Your letter also did not address our specific concerns regarding Slack. Stating that "Slack communications were included" and that you produced "at least 207 records" is facially insufficient for 14 custodians and non-custodial sources. Nor do you address our critical point that Nexo has produced ten total Slack communications from 2021 despite evidence suggesting Nexo used Slack as its primary source of communication between employees at this time to discuss VIP customers, OTC transactions, the liquidation relief program, NEXO token sales, policy and procedure communications, and NEXO token marketing-related communications. Nexo's policies also describe that Nexo communicated with them via Slack. We have not seen any of these communications. By October 28, 2025, please provide: (a) Slack plan/export type used and whether DMs and private channels were exported; (b) retention settings during the relevant period; (c) whether WhatsApp/Telegram/Signal or other messaging platforms were used for work communications by executives or VIP/OTC staff, and if so whether they were collected and searched; and (d) confirmation that Slack-linked attachments (Drive/Share links) were collected from the underlying repositories. Provide a date-certain plan to cure any gaps (no later than November 4, 2025).

### 5. Google Drive Documents

Your generic statement that "Google Drive documents were included" does not allow us to tie Drive files to the emails and Slacks that reference them. Please (i) produce a Drive mapping that lists for each produced Drive file: file ID, owner, created/modified timestamps, and original path/folder; (ii) confirm that you captured version history sufficient to reflect contemporaneous content during the relevant period; and (iii) re-produce any email/Slack item with a Drive link as a complete family including the linked file (or a placeholder with the file's Bates ID if produced elsewhere) so the relationship is clear in the load files. Provide this mapping and any supplements by November 4, 2025.

### 6. Metadata (File Names, Types, and Accurate Dates)

Our Sept. 15 letter identified categories of documents with missing or inaccurate metadata (no file name, no file type, and collected-date placeholders instead of creation dates). You appear to have ignored our identification of these categories entirely. We nevertheless attach as **Exhibit A**, a spreadsheet identifying the numerous documents with the most serious metadata issues. Please provide replacements containing proper metadata by October 28, 2025.

### 7. Rubin / Keller communications (Liquidation Relief settlement).

Our Sept. 15 letter identified repeated references to a Liquidation Relief-related settlement with Zachary Rubin and communications with Justin Keller (Rimon Law), yet we have no emails or threads between Nexo and Rubin/Keller beyond a few Hristov communications in June 2021. Your Oct. 20 letter does not mention this at all. Please confirm whether Nexo will: (a) search for and produce all Rubin/Keller communications (including attachments and families), or (b) certify after a reasonable search that none exist—by October 28, 2025.

### 8. Cress support / Salesforce and related logs (including ticket #432896).

Your letter says you are "following up" on ticket #432896 and whether any Salesforce log for Cress exists beyond what has been produced. That is not a position. Nexo has produced Salesforce-type logs for other customers (NEXO-0225988, NEXO-0205773) and internal references showing databases with the

granular fields we requested (NEXO-0140611). Please confirm whether Nexo will produce the full Cress logs (Salesforce and any successor/parallel systems), including fields reflecting LTV before/after liquidations, liquidation approvals, execution price/cost data, and OTC profit/spread fields, or certify that such logs do not exist—by October 28, 2025.

Concerningly, on September 27, 2025 you produced NEXO-0231341 which provides (what appears to be) the #432896 support ticket. However, your October 20, 2025 letter represents you remain unsure if this document produced nearly a month ago even "exists." Your response suggests that you have no idea about even the most basic constructs of your client's document search and production with respect to the most critically relevant documents—communications with Plaintiff about his account.

In addition, the document itself shows it was exported on November 14, 2023—before Nexo even filed its Motion to Dismiss FAC—but that Nexo waited years to produce this critical information. As you might understand, this severely calls into question the integrity of Nexo's document production and whether Nexo is acting in good faith. It is also extremely concerning that this file existed in the "Nexo Corporate Records" custodial database, but was absent in any of the files of the custodians you represented had relevant information to Plaintiff. This conduct is not only grounds for sanctions, but to greatly expand the scope of Plaintiff's discovery requests outside of the initial 14 custodians and 9 non-custodial sources.

9.     **Hristov ↔ Cress emails; missing families.**

Stating "please identify missing documents by Bates" does not resolve that numerous threads appear incomplete and that multiple emails in our Sept. 15 list are missing attachments. Please search Hristov's mail store(s) for complete family groups and confirm family-level re-production by November 4, 2025.

10.    **Cress transactions (OTC & liquidations).**

You state you are "following up" on whether additional responsive documents exist regarding OTC transactions or liquidations for Cress. Please confirm whether Nexo will produce: (i) OTC desk transaction logs showing internal acquisition price, customer price, spread/profit, time-weighted or other execution methodology; (ii) liquidation event logs (including any "liquidation tax/fee" fields); and (iii) oracle calculations showing LTV inputs and price sources used for each liquidation—by November 4, 2025.

11.    **Replacement and completeness issues (illegible pages, blank page, missing attachments).**

Your letter says you are "following up" on items 7–9 from our Sept. 15 letter—i.e., the blank first page (NEXO-0229591), illegible pages (NEXO-0226151–157, NEXO-0229449, NEXO-0229504), and numerous emails with missing attachments (NEXO-0230922, 0229470, 0222932, 0228759, 0222936, 0226541, 0222943, 0222981, 0222987, 0223024, 0223064). Please re-produce complete, legible versions with full families by October 28, 2025, or confirm non-existence after a reasonable search.

In addition, Our September 9 letter identifies many other documents missing attachments or portions, with five specific examples. However, you have not yet done anything to follow up on these, despite our letter listing specific documents. Please confirm you will produce the missing documents described in our September 9 letter regarding NEXO-0217044, NEXO-0179739, and NEXO-0133323. For the missing LRAs, we anticipate sending you a larger list of these documents to ensure an efficient resolution.

12.    **Audits, attestations, and Armanino / other accounting firms.**

You state Nexo is "not aware of" having obtained any third-party audit, and that "Armanino functionality" was a public "real-time attest" site that is no longer available. But Nexo's own documents refer to Armanino as Nexo's accounting firm and auditor and refer to other accounting firms (e.g., NEXO-0229107; 0229094; 0225417). Please reconcile this discrepancy and produce all communications with Armanino and other accounting firms, together with any attest reports/snapshots, instructions, or data

4

exports relied upon—by November 4, 2025. If you contend no audits/attests exist, please explain how the cited documents describe them and identify what you searched to reach that conclusion.

### 13. Analysis of the NEXO Token's Status

You state that our contention that the production is missing some records of NEXO token related analyses of the security-status is false. However, you have failed to cite even a single document showing how this is false. We have provided clear examples of missing documents, e.g., NEXO-0141364. Please let us know where in Nexo's production we can find this missing memo, and please direct us to any other Bates numbers describing Nexo's analyses of whether the NEXO token was a security—particularly with respect to those shared with third parties.

### 14. Nexo Token Sales

We do not understand why *some* documents, communications, or agreements with investors who bought NEXO in 2018 have been produced, while others are missing. For example, for a purchase agreement to have been signed and received by Nexo, there must necessarily be some communications between the parties which contained the document NEXO-0215397, NEXO-0033173. These agreements could not have *magically* appeared in Nexo's files, as you suggest. Other documents, e.g., NEXO-0219542, showing Nexo's initial 2018 ICO had U.S. participants, contain no communications relating to those sales. This is extremely concerning considering Nexo's document production reflects several NEXO token sales **directly to U.S. investors**, both in its 2018 ICO and subsequent OTC transactions (.e.g, NEXO-0214729, NEXO-0028242, NEXO-0026663), that Nexo failed to disclose under oath in its interrogatory responses and your representations to the Court. We implore you to supplement your Interrogatory responses to disclose all direct sales of NEXO tokens to US investors made at any time, yet you ignore this request. Please let us know (1) how Nexo has disclosed purchase agreements without any supporting communications about them, or containing them, (2) whether those communications exist, or have been deleted, (3) what Nexo has done to ensure its Interrogatory responses contain accurate information with respect to its NEXO token sales, and (4) whether Nexo will supplement its Interrogatory responses to contain the factual information reflecting its document production.

### 15. Social Media

We are well-aware Nexo produced some of its social media posts. Your letters ignores every issue we raised with respect to those posts, such as why Nexo has barely produced any documents from Telegram or YouTube, and why Nexo appears to have deleted responsive social media posts. Please let us know (1) which social media databases Nexo has searched, (2) what you have done to search these databases, (3) whether Nexo had a policy with respect to deleting social media posts, and (4) whether Nexo searched for or produced documents relating to whether it has deleted social media posts.

### 16. Privilege log.

You say Nexo is willing to meet and confer on timing. We propose simultaneous exchange of privilege logs by October 31, 2025. Please confirm.

### 17. Additional Issue

We have identified a range of documents with hidden text, including NEXO-0138288, NEXO-0139301, NEXO-0147895, NEXO-0150967, NEXO-0167079, NEXO-0172407, NEXO-0215607. These documents contain text that when viewed in a text file, display text that is unavailable in the image or PDF file. At best, this suggests that Nexo has failed to accurately compile and produce its documents. At worst, this shows a sloppy attempt to hide evidence. Either way, should this conduct not be completely explained and rectified in Nexo's entire document production by November 4, 2025, we will have no choice but to involve the Court.

**18.** **Timing and next steps**

By October 28, 2025: Please provide (a) clear "will/will not produce" positions on Items 1–17; (b) a firm production schedule; and (c) confirmation on the privilege log exchange.

By November 7, 2025: Complete the productions and replacements identified above (or certify after a reasonable search that none exist and explain the steps taken).

Given the substantial deficiencies identified in our previous letter and above, we believe a Rule 30(b)(6) deposition limited to Nexo's efforts to identify, preserve, collect and produce documents in this matter is warranted. Please let us know if you will agree that Plaintiff may take the limited deposition outlined above and continue the remainder of the 30(b)(6) deposition to a mutually agreeable date after any remaining document production issues have been resolved.

If Nexo cannot commit to the above, we will seek Court intervention. We remain available to meet and confer to avoid motion practice.

Best regards,


*/s/Max Ambrose*
Max Ambrose
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101