# Exhibit 4

# Exhibit 4

# Taylor-Copeland Law

501 W. Broadway, Suite 800
San Diego, CA  92101
(619) 734-8770
www.taylorcopelandlaw.com

Max Ambrose | 602 570 2656 | maxambrose@taylorcopelandlaw.com

**By Electronic Mail**

**January 14, 2026**
Ian Shelton
Ian.Shelton@bakermckenzie.com
Matthew Rawlinson
Matthew.Rawlinson@bakermckenzie.com
Kirsten Dooley
Kirsten.Dooley@bakermckenzie.com
Baker Mckenzie
10250 Constellation Blvd.
Los Angeles, CA 90067

Re:   *John Cress v. Nexo Capital Inc.*, Case No. 3:23-CV-00882-TSH, Meet and Confer Letter Regarding Nexo's Document Search and Production

**Counsel,**

We write in response to Nexo's January 9, 2026, letter. While Nexo purports to have "addressed" a number of issues, its response comes only after months of delay and does not meaningfully cure the deficiencies repeatedly identified in Plaintiff's prior meet-and-confer correspondence. Instead, Nexo's letter leaves substantial gaps, avoids multiple dispositive questions we have repeatedly raised, and fails to provide the confirmations or certifications required by the Federal Rules and this Court's discovery orders. We summarize below (1) critical issues Nexo failed to address at all or addressed only evasively, and (2) clarifications required on topics Nexo claims it has agreed to address in part.

This letter is intended to narrow disputes and give Nexo one final opportunity to provide clear, complete, and date-certain positions before Court intervention becomes unavoidable. Given Nexo's dilatory conduct and failure to meaningfully cure these deficiencies despite repeated notice, Plaintiff has no choice but to present these issues to the Court promptly and therefore requests that Nexo provide any response no later than **January 20, 2025**.

1. **Issues Nexo Failed to Address Entirely**

    a. **Custodian Completeness (particularly Trenchev, Kantchev, Hristov, Dinca, and Hristova)**

1

Nexo still has not confirmed:

- Whether it identified and collected all email addresses used by Mr. Trenchev and Mr. Kantchev during the relevant period, including personal, legacy, or role-based accounts.

- Whether it searched legal@nexo.io, despite undisputed evidence that Mr. Trenchev controlled and used that account for responsive communications.

- Whether custodians' devices (including company-issued MacBooks and/or mobile devices used by Hristov and others) were imaged or otherwise searched.

- Why Nexo has produced almost no responsive communications for custodians with records spanning many years and hitting hundreds of thousands of search terms (i.e., far less than 100 communications from each of the custodians identified in Plaintiff's September 9, 2025 letter, including Trenchev, Kantchev, Hristova, Rosen, Shanov, Stanev, Videlov, Tonkov, and Kostadinov).

- What Nexo has done to search its non-custodial sources, and explain why Nexo has produced unbelievably low numbers of documents from these sources. For example, as raised in our initial letter, why Nexo has produced only two responsive documents from non-custodial sources with more than 300,000 search term hits on sources directly involved in providing OTC transactions and liquidation relief to its customers.

These issues also highlight the inconsistencies of your overall position that Plaintiff's October 23 letter "demand that…Nexo review all documents within the Company, without regard to the custodians, search terms, and review protocol that we previously negotiated." We have repeatedly and specifically requested information about documents that are plainly missing from Nexo's custodial records—and for months—Nexo has been unable to explain why or agree to take any action to remedy these critical flaws in Nexo's document search.

Nexo's failure to adequately search for and produce records from its Court-Ordered custodians stymes nearly every other issue we raise. For example, Nexo claims it has produced all of the 2018-2020 NEXO Token sale documents the agreed-upon search terms hit, but we still do not see how this is possible, as we have received nothing from Trenchev or Kantchev—who actively marketed and sold NEXO Tokens during this time. This is only one example of the critical flaws caused by Nexo's refusal to adequately search its Court-Ordered custodians—and to provide any explanation about what it has done to search its custodial records, and why these critical and apparent flaws remain.

In addition, Nexo does not explain how emails involving Trenchev, Kantchev, Hristov, or Dinca appear in other custodians' files but not in their own. Absent a certification or explanation (e.g., deletion, auto-archiving, retention policies), these omissions directly implicate completeness and potential spoliation.

### b. Missing Internal Communications / Thread Completeness

Nexo does not address our request that it:

- Run completeness checks across all participants on shared email chains.

- Re-produce complete family groups from the custodial source of each participant.

- Identify the source from which incomplete chains were produced when not from the relevant custodian.

### c. Slack and Other Internal Messaging Platforms

Nexo's generic statement that Slack communications were produced does not respond to our concerns. Nexo has not stated:

- What service level of Slack was employed to facilitate the export, such as Business+ or Enterprise.

- Were Private Channels, Public Channels, Direct Messages included in the export.

- Were Slack-based attachments subsequently downloaded using the exported JSON files and also subjected to the searches.

- What Slack retention or deletion setting were in place during 2018-2022.

- Whether WhatsApp, Telegram, Signal, or similar platforms were used for business communications and, if so, whether they were collected and searched.

- Why there are no communications from critically relevant slack channels disclosed in discovery discussing sales of NEXO tokens (e.g., the "USA slack channel." NEXO-0103303), Nexo's liquidation relief program, and Nexo's OTC desk trading (e.g., NEXO-0134880; NEXO-0135493).

### d. Google Drive / Cloud Documents

Nexo does not address requests for:

- Confirmation on whether Nexo searched for documents stored in Google Drive, Office 365 online, Confluence pages, or other cloud repositories used by the custodians.

- A Drive mapping identifying file ID, owner, path, and timestamps.

- Confirmation that version history sufficient to reflect contemporaneous content was captured.

- Family-level linkage between emails/Slack messages and referenced Drive files.

### e. Metadata Deficiencies

Nexo ignores our identification of widespread metadata defects, including missing filenames, file types, and creation dates, as well as placeholder "collection dates." It does not commit to re-producing documents with corrected metadata or explain why this cannot be done.

### f. Rubin / Keller Communications (Liquidation Relief)

Although Nexo references producing certain Rubin-related documents, it does not respond to our request that it:

- Search for and produce all Rubin/Keller communications, including attachments and families, or

- Certify after a reasonable search that no such communications exist and explain the steps taken.

### g. Salesforce and Support Logs Beyond Ticket #432896

Nexo does not address whether it will produce:

- Full Salesforce or successor-system logs for Cress.
- Fields reflecting LTV calculations, liquidation approvals, execution prices, or OTC spread/profit.
- An explanation for why Cress's logs appear materially different from logs produced for other customers.
- An explanation on how Nexo exported the Salesforce-based records, such as if they used the Data Export Service or through the creation of specific exports through the native report generation functionality.
- An explanation of how Nexo then subsequently staged and searched the Salesforce-based records, such as within a SQL database.

### h. OTC Transactions, Liquidations, and Oracle Data

Nexo does not substantively respond to requests for:

- Internal OTC desk transaction logs (including acquisition price, customer price, and profit).
- Liquidation event logs or liquidation-fee fields.
- Oracle inputs and calculations used to determine LTV and liquidation triggers.

### i. Hidden Text / Altered Documents

Nexo does not address the identified documents containing hidden or suppressed text, nor does it offer any explanation or remediation plan.

### j. Privilege Log Timing

Nexo does not respond to our proposal for a date-certain, simultaneous exchange of privilege logs. Plaintiff will produce his privilege log by January 15, 2026. Please let us know when we can expect Nexo's log.

## 2. Clarifications Required on Issues Nexo Claims It Has Addressed in Part

For the categories below, Nexo's letter references production or follow-up but lacks the specificity required to resolve the issue. Please provide written clarification on each item:

### a. Communications with Regulators

- Identify the specific regulatory matters affected by encrypted files.

4

- Confirm whether the encrypted files contain documents and communications relating to the SEC's 2020-2021 investigation of the NEXO Token, and if not, an explanation for why Nexo is not producing those documents and communications.

- Provide a date-certain for completion of production.

- Confirm whether full productions made to regulators (with family integrity) will be produced.

### b. "Narrow Requests" Listed in Nexo's Letter

For each listed item, please confirm:

- Whether production has already occurred (with Bates ranges), or

- The expected production date.

### c. Salesforce Export and Support Ticket #432896

- Confirm whether the CSV export represents the entirety of Cress's Salesforce data.

- Identify any parallel or successor systems searched.

### d. Replacement Documents

- Confirm whether Nexo will proactively identify defective documents once Bates numbers are provided.

- Explain how Nexo determined whether "better versions" exist.

### e. Social Media

Identify which platforms were searched, the date ranges, and any deletion or retention policies in effect.

3. **Next Steps**

Please provide written responses to the above issues by **Friday, January 20, 2025**, including clear and unambiguous "will/will not produce" positions and certifications where appropriate. Despite months of meet-and-confer efforts and repeated, detailed notice of specific deficiencies, Nexo has not meaningfully cured the core problems with its document search, collection, and production. These ongoing deficiencies are materially prejudicing Plaintiff's ability to complete discovery within the Court's schedule.

Absent prompt, substantive supplementation and clarification, Plaintiff will seek Court intervention. That relief will include a targeted Rule 30(b)(6) deposition concerning Nexo's document identification, preservation, collection, and production practices, as well as relief under Rule 37, including orders compelling production and appropriate sanctions based on Nexo's failure to comply with its discovery obligations despite extensive meet-and-confer efforts.

Plaintiff remains available to meet and confer promptly; however, given the history of delay and the lack of meaningful remediation to date, further informal discussions alone are unlikely to resolve these issues. Accordingly, Plaintiff intends to provide his portion of a Joint Letter Brief addressing the most pressing issues raised in this letter and Plaintiff's prior meet-and-confer correspondence regarding Nexo's

document search and production. Please provide Nexo's portion of the Joint Letter Brief within seven days of receipt, so the parties may present these issues to the Court in an efficient and orderly manner.

Best regards,

*/s/Max Ambrose*
Max Ambrose
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101