# Exhibit 5

# Exhibit 5



**Baker & McKenzie LLP**

800 Capitol Street, Suite 2100
Houston, TX 77002
United States

Tel: +1 713 427 5000
Fax: +1 713 427 5099
www.bakermckenzie.com

**Asia Pacific**
Bangkok
Beijing
Brisbane
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur*
Manila*
Melbourne
Seoul
Shanghai
Singapore
Sydney
Taipei
Tokyo
Yangon

**Europe, Middle East & Africa**
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dubai
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Jeddah*
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh*
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

**The Americas**
Bogota
Brasilia**
Buenos Aires
Caracas
Chicago
Dallas
Guadalajara
Houston
Juarez
Lima
Los Angeles
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre**
Rio de Janeiro**
San Francisco
Santiago
Sao Paulo**
Tijuana
Toronto
Valencia
Washington, DC

* Associated Firm
** In cooperation with Trench, Rossi e Watanabe Advogados

January 30, 2026

James Taylor-Copeland
james@taylorcopelandlaw.com
Max Ambrose
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101

**Re:** ***Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH (N.D. Cal.)**

Dear Counsel:

We write in response to your draft letter brief and your January 28, 2026 email regarding Nexo's document production, including Nexo's most recent document production on January 27.

**<u>Nexo's Document Collection and Review Protocol.</u>** Given your general challenge to Nexo's document collection efforts, an overview of Nexo's tremendous effort in producing documents is appropriate. Nexo collected the email, Google Drive, and Slack data for the 14 custodial sources, and email for the nine non-custodial sources ordered by the Court, limited to the 2021-2022 date range ordered by the Court for the non-custodial sources, and applied Cress's 100+ search terms. Cress explicitly approved each and every one of those search terms, with the parties not reaching agreement on all search terms until July 1, 2025. Nexo assembled a large document review team at significant expense in summer 2025 to implement the parties' agreed document review and search term protocol. Nexo's document review and production over the summer was based on reviewing the documents that hit on the search terms that Cress selected. After the document hits on the review population were segregated, Nexo reviewed and produced responsive documents consistent with its RFP responses. This protocol was fair, reasonable, and proportional.

As to the 23 custodial and non-custodial sources, the data collected from Nexo include exports from Nexo's Google-based system as reflected in the following chart:

Baker McKenzie.

| Custodian[1] | Date Range Applied to Email and Drive Export | Email | Drive | Slack[2] |
|---|---|---|---|---|
| Angelov, Rosen Anatoliev | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |
| Atanasova, Teodora Plamenova | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |
| bizdev.replies@nexo.io | 1/1/2017 - 3/1/2025 | Yes | | |
| Dinca, Octavian | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |
| Hristov, Hristiyan Yordanov | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |
| Hristova, Magdalena Damyanova | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |
| investors@nexo.io | 1/1/2017 - 3/1/2025 | Yes | | |
| Kantchev, Kosta | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |
| Kostadinov, Lyubcho Georgiev | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |
| kyc@nexo.io | 1/1/2017 - 3/1/2025 | Yes | | |
| ops@nexo.io | 1/1/2017 - 3/1/2025 | Yes | | |
| otc@nexo.io | 1/1/2017 - 3/1/2025 | Yes | | |
| payments@nexo.io | 1/1/2017 - 3/1/2025 | Yes | | |
| Rakshiev, Alexander Nikolaev | 1/1/2017 - 3/1/2025 | Yes | | Yes |
| Salesforce.bcc@nexo.com | 1/1/2017 - 3/1/2025 | Yes | | |
| salesvacationresponder@nexo.com | 1/1/2017 - 3/1/2025 | Yes | | |
| Shanov, Yordan Ivaylov | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |
| Stanev, Kaloyan Mariyanov | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |
| Stanev, Tom Mariyanov | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |
| support@nexo.io | 2021-2022[3] | Yes | | |
| Tonkov, Edward Todorov | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |
| Trenchev, Antoni | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |
| Videlov, Tsvetan Dimitrov | 1/1/2017 - 3/1/2025 | Yes | Yes | Yes |

This raw exported data, without any search term limiters, was loaded into the NUIX Workstation platform for processing. For the individual custodians, the email pulls including all email aliases assigned to the individual within the Google system, including both the .com and .io versions of their emails. The 100+ agreed search terms were run within NUIX, the 2021-2022 date limiter adopted by the Court was applied to the non-custodial hits, and the hits were promoted to Relativity for manual review.

For the email export from the Google system, all available data during the relevant time period was extracted without regard to any retention periods that might have applied to the underlying data.

MacBooks or other company issued physical devices were not imaged or searched because the Google

[1] All exports included both the .io and .com aliases.
[2] Exported Slack data ranged from 8/9/2018 to 3/10/2025.
[3] Due to the huge amount of data at issue, the initial export of the support@nexo non-custodial source was limited to 2021-2022. For all other non-custodial sources, the 2021-2022 limiter adopted by the Court was applied after running search terms in NUIX and before promotion to Relativity.




system maintains the underlying data in the cloud, which can be exported and searched. Nexo does not issue company cell phones. Other than Slack, Nexo does not use messaging apps for company business. Nexo did not export or search the legal@nexo.io account because it was not a non-custodial source ordered by the Court for inclusion, and it was not Trenchev's email account.

During the manual review process over the summer, Nexo proposed using Technology Assisted Review 2.0 (TAR 2.0) and Continuous Active Learning (CAL) to expedite the review process. Because Cress refused, Nexo performed a manual review of every document that hit on the agreed search terms within Relativity.

There are two document review concepts that are relevant to some of your claims of deficiency—deduplication and email threading. Nexo applied both to its production, which is common practice.

We globally de-duplicated the data in NUIX at the family level, preserving all duplicate custodian and file path metadata. If multiple versions of a record exist, only one was promoted to Relativity for review and production.

We also email threaded. Email threading is a process that identifies relationships between emails, such as forwards, replies, and reply-all messages, and organizes them into a single conversation or thread. It extracts and normalizes email metadata to group related emails together, reducing the time and complexity of review. The process also identifies and retains inclusive emails, which contain unique content. Additionally, email threading can identify participants, attachments, and duplicate emails within a conversation. Again, this is a common practice. We note that most litigants complain when deduplication and email threading is *not* applied to the production, as it facilitates the review and production of documents, and it avoids a situation where exact duplicate emails are produced multiple times, or every email in a chain is separately produced, leading to exponentially more documents being produced with no additional substantive content.

Separate from this Relativity document review process, Nexo also searched its corporate records and produced specific documents or categories of "narrow" document requests to identify responsive documents. Thus, as stated in Nexo's prior meet and confer letters, Nexo remains willing to meet and confer regarding any request for a discrete responsive document or category of document that Cress claims to be missing from Nexo's production.

Based on these efforts, Nexo has produced an enormous volume of documents in this matter that far exceeds Cress's production:

1. Cress's Production:
    a. Total number of documents 892 plus 170 from 'Privilege Log' Production
    b. Total number of pages 13,658
    c. Bates ranges CRESS-00000001 - CRESS-00013658; CRESS-PRIV-00000407 - CRESS-PRIV-00000630

2. Nexo's Production:
    a. Total number of documents 54,166
    b. Total number of pages 247,500
    c. Bates ranges NEXO-0000001 - NEXO-0247500

**Communications with Regulators.** Nexo produced responsive documents regarding communications with U.S. regulators on September 12, 2025. In its January 27 production, Nexo's re-produced its communications with U.S. regulators to include encrypted documents where it was able to identify the passwords used to encrypt certain documents sent to the regulators. Nexo ordered that re-production of communications with U.S. regulators in an organized manner. For example, we attempted to order the productions to regulators after the corresponding cover letters. We attempted to group the regulator productions according to the regulator at issue (for example, by state). We also attempted to order the voluminous terms and conditions produced to certain regulators in an organized manner. Some of those documents were PDFs, which we produced as unencrypted TIFF images. Other documents were Excel spreadsheets, which we produced natively. The passwords for the Excel spreadsheets are in the following chart. The password format for encrypted documents is the last name of the recipient of the production cover letter, followed by an underscore, followed by the year the letter was sent.

On January 28, 2028, Nexo provided you with passwords for 20 encrypted regulator correspondence files that were produced in native format in the January 27 production.

You had asked whether any additional regulator correspondence remains unencrypted. Nexo has 10 remaining files that it was unable to open, related to productions served on Ohio, Washington, and Kentucky regulators, and the CFPB. Today, Nexo received passwords to open 9 of them, and Nexo will produce the following documents by early next week:

| Encrypted File Name | Description |
|---|---|
| NEXO 000001.xlsx | Ohio\Money Transmitter |
| NEXO 000002 - NEXO 000005.pdf | Ohio\Money Transmitter |
| NEXO 000020 -NEXO 000088.pdf | Washington\Washington DFI Securities Division\2022-04-29 Submission |
| NEXO 000090-NEXO 000108.pdf | Washington\Washington DFI Securities Division\2022-04-29 Submission |
| NEXO 000109 - NEXO 000123.pdf | Washington\Washington DFI Securities Division\2022-05 Submission |
| NEXO 100124.pdf | Washington\Washington DFI Securities Division\2022-05 Submission |
| NEXO 000013.pdf | Kentucky\2021-09-20 Response |
| NEXO 000090-NEXO 000103.pdf | Kentucky\2021-12-17 Response |
| NEXO 0000001.xlsx | CFPB |

For the single document served in the Kentucky inquiry on April 22, 2022 where we have not identified a working password (NEXO 000104.pdf), the Kentucky cover letter (which we produced) indicates that it is an organizational chart for the Nexo Group. Based on this description, the chart appears to be a duplicate of the organizational chart that Nexo has already produced to other regulators, several copies of which are already included in Nexo's January 27 production.

Baker McKenzie.

As for your inquiry regarding regulator correspondence concerning the 2026 CDFPI consent order, we are in active discussions with counsel who handled that matter for Nexo, and we will produce the regulator correspondence file as soon as we receive it. Initial documents related to that consent order will also be produced with the newly unencrypted files.

**Trenchev, Kantchev, other Individual Custodian Emails.** You raised the issue of low or no emails for certain individual custodians, particularly Trenchev and Kantchev. We confirmed that Trenchev and Kantchev had a 30-day retention period effective December 4, 2022, and all other individual custodians had no retention period while they worked at Nexo. We also confirmed that Nexo preserved Hristov's email after his departure from Nexo.

Regardless of the email retention period, Nexo exported all available emails for the custodial and non-custodial sources as reflected in the chart above and applied the review procedure above to the available data.

Aside from Trenchev and Kantchev, you raised the issue that certain emails appear in the inbox of some custodians but not others. Based on your description, we suspect that this is due to a combination of retention periods, de-duping, and email threading. Under our de-duping protocol, Nexo would only produce one version of an identical email that also appears in other custodian's inboxes. Under our email threading protocol, we would only produce the top email in a chain, unless one of the parties in the chain added new data like attachments mid-chain. This is a standard ESI production practice that is widely recognized as appropriate, not a deficiency.

**Slack Production.** You raised the issue of low or no Slack communications from 2021. We confirmed the following default workspace retention periods for Slack.

Public and Private Channels

| Retention Period | Effective Date |
|---|---|
| 60 days | 03-01-2023 |
| 180 days | 01-23-2024 |

Direct Messages

| Retention Period | Effective Date |
|---|---|
| 4 days | 12-04-2022 |
| 30 days | 12-07-2022 |
| 60 days | 02-09-2023 |
| 180 days | 01-23-2024 |

Slack also allows for channel-specific retention policies that can override default retention periods. Nexo exported all available Slack data for the custodial and non-custodial sources as reflected in the chart above and applied the review procedure above to the available data.

Regarding your inquiry about Slack subscription level, Nexo had a Business+ Plan until Summer 2025, and then it upgraded to Enterprise. The export of the Slack data used the "single user's channels and conversations" export setting.




Baker McKenzie.

**Google Drive.** You complain about the metadata associated with Google Drive documents. Nexo exported the Google Drive documents for each custodian using the export feature that Google provides to perform this function. We reviewed and produced those documents as described above.

Your letter brief refers to "file IDs, ownership, paths, and timestamps." We do not understand what standard metadata fields you claim are missing. Our understanding is that a Google Drive export does not include a full substantive path metadata, *i.e.*, we do not have a folder structure that may have existed in Google Drive. Furthermore, Cress has provided no "path" metadata for any record in his own production.

To our knowledge, there is no metadata specific to Google Drive; it would be standard file-level metadata that exists in all documents, regardless of source. Nexo produced file-level metadata for Google Drive documents.

**Metadata.** Your draft letter brief refers to widespread metadata defects, including missing filenames, file types, and creation dates, as well as placeholder "collection dates." This is inaccurate.

On October 21, 2025, we reproduced the below volumes to include File Name in the metadata load file, as well as branding on the production images.

09-09-2024
03-19-2025
07-09-2025
08-29-2025
09-12-2025
10-16-2025

New documents that Nexo produced on October 21 and 27, 2025 included File Name metadata in load file. To the extent available, Created, Modified, and Sent date metadata has been included in all productions.

In contrast, Cress has produced 1,062 documents, and none have included File Name or File Type metadata in the load file.

In general, Nexo is willing to cure alleged metadata deficiencies if the request is targeted, reasonable, and proportional. Please exercise some discretion in identifying alleged metadata deficiencies that are material to the case, and targeted to specific documents. Cress should be willing to reciprocally produce any metadata overlay that it demands of Nexo.

**January 28 Email.** Your January 28 email claims that Nexo's January 27 production is "disorganized." That is incorrect. Nexo's production is much more organized that Cress's production. The first 67 documents in the January 27 production consist of certain documents that Nexo stated it would produce in its January 9 meet and confer letter. The remainder of the production consists of the re-produced U.S. regulator correspondence including the encrypted files that Nexo was able to open, as described above. Nexo further organized the regulator production in state or regulator order.




You then state that Nexo has an obligation to identify the Bates numbers associated with a list of 12 different categories of documents. Nexo is not aware of any obligation to perform "Bates mapping" of responsive documents for Cress, and we note that Cress has never provided such Bates mapping of his own production to Nexo. Suffice it to say, however, that documents responsive to at least document categories 1, 3, 4, 6, 9, 10, and 11 appear in Nexo's January 27 production. For example, I noted in my January 28 email that item 1 on your list, the ICO investor spreadsheet, is included in the January 27 production as NEXO-0231931. Documents responsive to document categories 2, 5, 7, 8 and 12 appear in Nexo's earlier productions.

**Privilege Log and Completion of Document Production.** Nexo anticipates serving its privilege log by February 13. In connection with the finalization of the privilege log and QC of its production, Nexo anticipates making some final productions in February. We note that Cress recently produced additional documents in connection with the preparation of his own privilege log, and Cress appears to be working to address various deficiencies and produce missing documents identified in Nexo's January 9 meet and confer letter.

***

Because Nexo has addressed the issues raised in you draft letter brief regarding Nexo's document production, Nexo believes those arguments and demands are now moot. Nexo is willing to meet and confer to discuss this letter and any remaining issues.

Regards,

*/s/ Ian S. Shelton*

Ian S. Shelton