# Exhibit 6

# Exhibit 6

# Taylor-Copeland Law

501 W. Broadway, Suite 800
San Diego, CA  92101
(619) 734-8770
www.taylorcopelandlaw.com

Max Ambrose | 602 570 2656 | maxambrose@taylorcopelandlaw.com

**By Electronic Mail**

February 3, 2026
Ian Shelton
Ian.Shelton@bakermckenzie.com
Matthew Rawlinson
Matthew.Rawlinson@bakermckenzie.com
Kirsten Dooley
Kirsten.Dooley@bakermckenzie.com
Baker Mckenzie
10250 Constellation Blvd.
Los Angeles, CA 90067

Re:     *John Cress v. Nexo Capital Inc.*, Case No. 3:23-CV-00882-TSH, Meet and Confer Letter Regarding Nexo's Document Search and Production

**Counsel,**

We are in receipt of your letter dated January 30, 2026. While we are reviewing the production updates and some of the metadata issues, we write immediately to address the alarming admissions regarding Nexo's data retention policies that raise serious spoliation concerns. As you know, we requested information about Nexo's missing documents and document retention policies in our September 9, 2025 letter, less than ten days after receipt of Nexo's court-ordered document production on August 31, 2025.[1] Despite Plaintiff's many emails, letters, and requests for calls, Nexo has unilaterally delayed resolution of these serious discovery issues for nearly five months, refusing to identify the reasons for its missing data or provide any explanation, e.g., through its search practices and data retention policies.

Despite your letter failing to address almost all of our specific requests for more information, you now admit that Nexo implemented aggressive auto-deletion policies for its managing partners, Antoni Trenchev and Kosta Kantchev, as well as aggressive auto-deletion policies for all Slack communications.

---

[1] Plaintiff also requested information about Nexo's document retention policies, and Nexo agreed to produce that information on November 15, 2024. *See RFP 50*: "All documents reflecting your document destruction or retention policy during the Relevant Period, including with respect to email, text messages or other electronic media storage or devices." Nexo's Response: "Nexo will produce non-privileged, responsive documents." We have still not received these documents or an adequate explanation about why they were not produced.

1

Specifically, your letter states that Nexo instituted a 30-day retention period for Trenchev and Kanthev's emails, "no retention period," for the other custodians, a 4-day retention period for Slack Direct Messages, and a 60-day retention period for Slack Public and Private Channels.

We require immediate responses to the following issues to determine the extent of the data loss and to understand the extent of Nexo's sanctionable conduct under Rule 37(e). Plaintiff reserves all rights in connection with all the issues raised in any of his discovery meet and confer letters, including the letters dated September 9, 2025, September 15, 2025, October 23, 2025, January 14, 2026, and this February 3, 2026 letter.

Because of Nexo's serious willful delays in resolving these issues and near-certain spoliation of relevant evidence, Plaintiff will now move forward with seeking Court intervention. We will promptly provide an additional Joint Letter Brief describing Nexo's serious, severe, and sanctionable discovery abuses by Thursday, February 5, 2026. Should Nexo fully resolve any of these issues by fully and completely producing the documents and information sought, we can evaluate whether that narrows the dispute before the Court.

We will provide Nexo with one final chance to provide the court-ordered documents sought, or reasonable explanations for why they are missing, by **Monday, February 9, 2026**. Should Nexo be unwilling to do so, Plaintiff will immediately seek Court intervention on all remaining outstanding issues. Please also provide Nexo's insert to Plaintiff's Joint Letter Brief on **Monday, February 9, 2026**. Should Nexo fail to do so on time, Plaintiff will move forward with filing his brief, noting Nexo's refusal to make a good-faith effort to meet and confer and timely participate in discovery procedures.

**The Mechanics of the 30-Day Retention Period.** Your letter states that Trenchev and Kantchev were placed on a 30-day retention period effective December 4, 2022. We ask for the following clarification:

- Based on your letter we understand that the 30-day retention period placed on Trenchev and Kantchev's emails would result in the automatic deletion of all emails older than 30 days. Is that correct? If not, please describe what part of that understanding is not correct.
- What specific email accounts, databases, and systems were subject to this 30-day deletion policy?
- What retention period was in place for Trenchev and Kantchev's emails before December 4, 2022? For the avoidance of doubt, we are requesting all retention periods effective between January 1, 2017 and present.
- Based on your letter we understand that the 30-day retention policy remained in effect from December 4, 2022, to the present. Is that correct? If not, please identify all retention periods implemented between December 4, 2022 and the present.
- Please produce a single table identifying, for each system (Google Workspace/Gmail, Google Drive, Slack, Salesforce, backups/archives, other systems), the retention rule(s), the *effective date(s)* (including prior policies), whether retention is system-wide or per-custodian/channel, and the administrative change history (who changed the policy and when).
    - Please produce admin logs for Google Workspace and Slack that show: (a) retention policy changes; (b) deletion events attributable to retention; (c) export events (who ran the export, what settings, and when); and (d) any user-initiated deletions during relevant months.
- Did Nexo suspend the automatic deletion of Trenchev and Kantchev's emails at any time before or after December 4, 2022?
- Did Nexo utilize Google Vault? What retention period(s) were in place for Google Vault between January 1, 2017 and the present?

2

- Did Nexo utilize Google Vault or an equivalent preservation tool to place a "Legal Hold" on the accounts of Trenchev and Kantchev? If so, when?
- What techniques or tools did Nexo use to collect Google Workspace/Gmail and Google Drive? Did Nexo use Google Vault to collect Google Workspace/Gmail and Google Drive?
- Does Nexo believe that Trenchev or Kantchev's deleted emails are recoverable or does it believe they have been permanently deleted? What has Nexo done to search for these emails?
    - Please produce admin logs showing attempted restores or a certification that no backups/snapshots exist for a given time range.
- What was the business justification for applying a 30-day deletion policy exclusively to Kantchev and Trenchev?

**"No Retention" Policy for Individual Custodians**. Your letter describes that "all other induvial custodians had no retention period while they worked at Nexo." Can you please confirm that this means that the individual custodian emails would not have been subject to automatic deletion?

**Retention Policy for Non-Custodial Sources**. Your letter does not describe Nexo's document retention policy for its non-custodial sources. Can you please describe Nexo's document retention policies for non-custodial sources from January 1, 2017 to present?

**Slack Retention.** Your letter details the implementation of various retention periods for Slack Public and Private Channel and Direct Messages from December 4, 2022 through January 23, 2024. We ask for the following clarification:

- Based on your letter we understand that any messages older than the retention period in place at a given time would be automatically deleted. For example, on December 4, 2022, all direct messages more than four days old would be deleted? Is that correct? If not, please describe what part of that understanding is not correct.
- What retention period was in place for Slack Public and Private Channels before March 1, 2023? For the avoidance of doubt, we are requesting all retention periods effective between January 1, 2017, and the present. Please also confirm the 180 retention periods remain Nexo's most effective retention periods.
    - Did Nexo suspend the automatic deletion of Slack Public and Private Channels at any time, including after March 1, 2023?
- What retention period was in place for Slack Direct Messages before December 4, 2022? For the avoidance of doubt, we are requesting all retention periods effective between January 1, 2017, and December 4, 2022.
    - Did Nexo suspend the automatic deletion of Slack Direct Messages at any time after December 4, 2022?
- Did Nexo implement a "Legal Hold" feature that overrode any Slack retention settings? If so, when? What tool was used?
- Please produce Slack admin export(s), Slack audit logs, and retention change logs for the workspace(s) for January 1, 2017 to present. Please show if/when channel-level retention overrides were made. If Slack exports were created using a particular export type (e.g., "single user's channels and conversations"), please produce the exact export command/settings and any export logs or manifest files showing the export scope and date.
- Please explain why the export used the "single user's channels and conversations" setting instead of a workspace-level admin/compliance export or enterprise e-discovery export. Please produce a copy of the export settings.

3

**Litigation Hold Notices.** Your letter does not say whether Nexo suspended auto-deletion when it became aware that litigation was foreseeable or when it received regulatory inquiries.

- For each litigation hold or preservation notice issued from January 1, 2017 through the present, please provide:
    - The date(s) on which any litigation hold or preservation notice was first issued to Nexo employees, officers, or agents.
    - A list of recipients (custodians) who received said notice(s).
    - The categories of data and date ranges specified for preservation.
    - The instructions provided regarding the suspension of auto-delete or routine destruction policies for electronic systems.
- Please produce any litigation-hold notices, hold scope, custodian acknowledgments, and IT steps taken to preserve systems (including exceptions for Trenchev & Kantchev or other custodians).
- Please produce logs or admin entries showing that auto-deletion jobs were suspended, modified, or otherwise managed for relevant custodians/systems and the date those steps occurred.

**Deduplication Defense.** You attribute the low document counts for certain custodians to "deduplication and email threading." We find this surprising as the production is packed with duplicative documents. Nevertheless:

- We understand that a document's metadata should show all custodians where the document was located, regardless of de-duplication procedures. Can you please provide us with an overlay including this complete custodial metadata.
    - If your position is that this metadata does not exist, we request you produce the NUIX/processing deduplication map and email threading mapping: for each produced family/document, identify all custodians/paths that were deduped and the custodian chosen as the produced instance; provide thread-IDs and the rules applied for producing top-thread vs. inclusive emails.
- We further request that you identify the source of Nexo's 202 documents and communications regarding Cress (shown in the attached Spreadsheet) which Nexo has produced from its "Nexo Corporate Records" custodian.
- Finally, for all communications hitting on the term "Cress" and "603eec5faed77e2a0a166e27" (Cress' account number) we ask that you produce all duplicates and children.

**Failure to Image Physical Devices.** Your letter states Nexo did not image MacBooks because "the Google system maintains the underlying data in the cloud." Nexo also claims it did not "issue company cell phones," but it is not relevant whether the custodian's cell phones were issued by the company or not. All devices under the possession, custody, and control of the custodians must be searched, particularly where the cloud data was subject to a deletion policy. If the cloud data is gone, it is possible that the *only* surviving copies of emails and other responsive documents would be in the local cache (OST/MBOX files) of the physical devices.

Does Nexo still possess the laptops and phones used by Trenchev, Kantchev, Hristov, and the other custodians in from 2017 to present? As you know, we have previously demanded that Nexo preserve this evidence. We renew our request that Nexo search all electronic devices for responsive documents for all 14 custodians.

**Google Drive Metadata.** Your letter states that "Nexo exported the Google Drive documents for each custodian using the export feature that Google provides to perform this function."

4

- Please describe in detail the export tool/method used and produce the raw export metadata for each Drive document (including Google file ID, parent IDs, owner, mimeType, created/modified timestamps, and any available folder/parent information).
- As we have previously raised, Google Drive stores the date a document was created along with the author, and the dates on which it was edited along with the editor. Our understanding is that this metadata should be easily accessible through an XML file. Your Drive production does not contain this information. If you are unwilling to remedy this, we will take the issue to the Court.

**Next Steps.** We expect a response to these inquiries by this Monday, February 9, 2026. We are also serving formal discovery requests targeting the specific issues concurrently with this letter. In addition to the requests above, please let us know Nexo's position on the following:

- Will Nexo agree to a third-party forensic examination of its systems (Google Workspace/Gmail, Google Drive, Slack, Salesforce, backups/archives, other systems) and electronic devices at Nexo's expense?
- Will Nexo agree to a 30b6 deposition regarding its document collection, retention, search and production by Friday, February 13, 2026?
- Will Nexo agree to identify all email accounts, databases, and devices it searched for each custodian?

If Nexo is unwilling or unable to resolve any of the issues raised here by **Monday, February 9, 2026**, we will seek immediate relief from the Court. We plan to provide you with our portion of a Joint Letter Brief shortly.

Best regards,

*/s/Max Ambrose*
Max Ambrose
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101