EXHIBIT 10



Baker & McKenzie LLP

800 Capitol Street, Suite 2100
Houston, TX 77002
United States

Tel: +1 713 427 5000
Fax: +1 713 427 5099
www.bakermckenzie.com

**Asia Pacific**
Bangkok
Beijing
Brisbane
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur*
Manila*
Melbourne
Seoul
Shanghai
Singapore
Sydney
Taipei
Tokyo
Yangon

**Europe, Middle East & Africa**
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dubai
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Jeddah*
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh*
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

**The Americas**
Bogota
Brasilia**
Buenos Aires
Caracas
Chicago
Dallas
Guadalajara
Houston
Juarez
Lima
Los Angeles
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre**
Rio de Janeiro**
San Francisco
Santiago
Sao Paulo**
Tijuana
Toronto
Valencia
Washington, DC

\* Associated Firm
\*\* In cooperation with
Trench, Rossi e Watanabe
Advogados

October 20, 2025

James Taylor-Copeland
james@taylorcopelandlaw.com
Max Ambrose
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101

Re:     *Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH (N.D. Cal.)

Dear Counsel:

We write in response to your September 9 and 15, 2025 meet and confer letters regarding Nexo's document production.

Cress's position ignores Nexo's substantial efforts to produce documents, the parties' prior agreement regarding search terms, and the asymmetrical nature of document production in this matter. At incredible burden and expense, Nexo has, to date, produced 53,593 documents consisting of over 231,564 pages. Consistent with the document production schedule in the parties' stipulation to modify the scheduling order (Dkt. 71), Nexo's August 29, 2025 production alone was 45,990 documents consisting of over 205,256 pages. In contrast, Cress has produced a paltry 844 documents in total, and he still refuses to produce the documents that are the subject of Nexo's pending letter brief regarding its own RFPs (Dkt. 77).

The parties engaged in lengthy negotiations to arrive at mutually acceptable (but still incredibly burdensome) search terms for Nexo's document review. Nexo collected the email, shared drive, and Slack data for the 14 custodial sources, and email for the 9 non-custodial sources ordered by the Court, limited to the 2021-2022 date range ordered by the Court for the non-custodial sources, and applied Cress's 100+ search terms. **Cress explicitly approved each and every one of those search terms**, with the parties not reaching agreement on all search terms until July 1, 2025. **Nexo's document review and production over the summer was based on reviewing the documents that hit on the search terms that Cress selected.** After the document hits on the review population were segregated, Nexo reviewed and produced responsive documents consistent with its RFP responses.

In responding to the issues raised in your letters, Nexo's general approach is the following: if Cress contends that a discrete and ascertainable category of responsive documents is missing from the production, Nexo is willing to follow up, as explained below. However, particularly as to broad requests seeking "all documents" concerning broad categories of communications, Nexo is not willing to revisit the agreed search terms negotiated by the parties and implemented by Nexo at incredible burden and

Baker & McKenzie LLP is a member of Baker & McKenzie International.



expense over the summer, culminating in the production of 45,990 documents on August 29. Nexo is also not willing to revisit the Court's orders setting the date range limit for non-custodial sources, or to expand beyond the (already burdensome) 23 custodial and non-custodial sources approved by the Court.

Contrary to the apparent position in your letter, the Court did not order the collection and review of every document that has been generated within Nexo since its creation in 2018. On the contrary, for the broad requests, the Court limited the review to 23 custodians and non-custodial sources. The Court further limited the non-custodial sources to a 2021-2022 data set. The parties further limited the review to the agreed-upon search terms. Nexo exported the email, drive data, and Slack of the individual custodians, and the email of the non-custodial sources, and Nexo ran the search terms agreed to by Cress. After segregating the hit population, Nexo reviewed and produced for responsiveness. This protocol was fair, reasonable, and proportional.

Nexo's responses to your inquiries are below. To the extent that Nexo agrees to investigate whether further responsive documents exist, it is not intended to be an acknowledgement that such documents do, in fact, exist.

**Communications with Regulators.** Nexo produced responsive documents regarding communications with regulators on September 12. We are following up regarding whether any further responsive documents regarding a 2020-2021 SEC investigation about the Nexo Token exist. We are also following up to identify whether any further responsive communications with regulators exist.

**Trenchev Emails and Communications.** Cress's argument boils down to speculation that more Trenchev documents should have been produced. Trenchev was one of the 14 custodial sources that was part of the document review, and Nexo exported his email, drive data, and Slack. As explained above, Nexo applied the agreed search terms to the agreed sources and produced responsive documents consistent with its RFP responses. As to your reference to the legal@nexo.io email account, that account was not included as a non-custodial source, and was not approved by the Court. Nexo's production hits on many documents containing Trenchev's email address.

**Kantchev's Emails and Communications.** Like the Trenchev documents, Cress's argument boils down to speculation that more Kantchev documents should have been produced. Kantchev was one of the 14 custodial sources that was part of the document review, and Nexo exported his email, drive data, and Slack. As explained above, Nexo applied the agreed search terms to the agreed sources and produced responsive documents consistent with its RFP responses. You appear to acknowledge that Nexo produced "only about 1,000" documents from Kantchev, which alone exceeds the number of documents from Cress's entire production. Nexo's production hits on many documents containing Kantchev's email address.

**Cress's Communications with Nexo Support.** Cress argues that Nexo has failed to produce any of Mr. Cress's communications via support ticket #432896. We are following up regarding whether further responsive documents exist as to this support ticket, despite Cress's acknowledgment that he is already in possession of, and presumably has already produced, these documents.

**Nexo Internal Communications.** Cress claims that Nexo's production contains almost no internal communications. That is incorrect. Nexo produced over 50,000 documents in this matter, and the sources included Slack data. As to your point about data sources, Nexo collected the email, shared drive, and Slack data of the 14 custodial sources, and the email of the 9 non-custodial sources.

**Nexo's Analysis of the Nexo Token's Status.** Cress's contention that Nexo has not produced documents regarding the security status of the Nexo Token is false. Please review Nexo's production. Regarding your point about a privilege log, Nexo is willing to meet and confer concerning a mutually agreeable date for simultaneous exchange of logs.

**Audit Reports, Attestations, and Financial Attestations.** We are not aware of Nexo having obtained any third-party audit from an accounting firm, including from Armanino. As for attestations, the Armanino functionality was a real-time attest service that was provided on-demand through a public website that is no longer available. In general, Nexo applied the agreed search terms to the agreed custodians and produced responsive documents consistent with its RFP responses. If Cress is seeking a specific type of internal financial document, please identify what you are looking for (subject matter and time period) with specificity. We are willing to meet and confer regarding targeted requests for internal financial documents that are relevant.

**Hristov Emails.** Hristov's email, shared drive, and Slack was included in the document collection and review. The only specific identified deficiency is that certain emails between Hristov and Cress are allegedly missing. Cress presumably produced these emails. However, we are willing to follow up if you identify the alleged missing documents by Bates number. We are also confused by your contention that you don't see emails where Hristov internally discussed matters related to Cress; those emails are the basis of your current motion for leave to amend.

**Slack/Chat Communications.** Slack communications for the individual custodians were included in the document collection. Nexo applied the agreed search terms to the agreed custodians and produced responsive documents consistent with its RFP responses. Nexo produced at least 207 records from its Slack collection.

**2018-2020 Nexo Token Sales.** Nexo applied the agreed search terms to the agreed custodians and produced responsive documents consistent with its RFP responses. Your cite a large number of documents in your letter showing that Nexo produced responsive documents regarding 2018-2020 Nexo Token Sales. Your claims of deficiency appear based on the contention that the 23 custodial and non-custodial sources approved by the Court, in reality, include every document generated within Nexo since its creation. That is not what this Court ordered. If you have follow up requests for specific documents, please identify them.

**Alleged Missing Documents.** You claim that "more than sixty" documents out of Nexo's 50,000+ document production are missing portions. Please provide a targeted list of any such documents by Bates number, and we are willing to follow up.

**Social Media.** Nexo made a large production of its social media posts, which were extracted by third-party service provider "Page Vault." You can identify those documents by searching the term "Page Vault" in Nexo's production.

**Google Documents.** Google Drive documents for each individual custodian were included in the document collection.

**Cress's Transactions.** Nexo has produced documents regarding Cress's transactions. We are following up regarding whether we can identify any further responsive documents related to Cress's OTC transactions or liquidations.

**Alleged "Low Number of Emails" from Custodians or Non-Custodial Sources.** Despite Nexo having produced over 50,000 documents, and Cress producing less than 1,000, you generally claim that there are a "low number" of emails from individual custodians and non-custodial sources. Nexo applied the agreed search terms to the agreed custodians and produced responsive documents consistent with its RFP responses.

**Metadata.** Your generic reference to metadata issues is unhelpful. We note that Cress's metadata for many documents also appears incomplete. If the metadata of a particular document is relevant to some material point, please identify the document by Bates number and we can follow up.

**Salesforce Log.** We are following up to determine whether any Salesforce log for Cress exists that has not been produced already.

**Replacement Documents.** Items 7, 8 and 9 in your September 15 letter ask for complete, legible, or missing documents. We are following up to determine whether we have better or complete copies for the documents you identify by Bates number.

Nexo remains willing to meet and confer regarding these issues.

Regards,

Ian S. Shelton

4