EXHIBIT 11



Baker & McKenzie LLP

800 Capitol Street, Suite 2100
Houston, TX 77002
United States

Tel: +1 713 427 5000
Fax: +1 713 427 5099
www.bakermckenzie.com

**Asia Pacific**
Bangkok
Beijing
Brisbane
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur*
Manila*
Melbourne
Seoul
Shanghai
Singapore
Sydney
Taipei
Tokyo
Yangon

**Europe, Middle East & Africa**
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dubai
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Jeddah*
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh*
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

**The Americas**
Bogota
Brasilia**
Buenos Aires
Caracas
Chicago
Dallas
Guadalajara
Houston
Juarez
Lima
Los Angeles
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre**
Rio de Janeiro**
San Francisco
Santiago
Sao Paulo**
Tijuana
Toronto
Valencia
Washington, DC

\* Associated Firm
\*\* In cooperation with Trench, Rossi e Watanabe Advogados

January 9, 2026

James Taylor-Copeland
james@taylorcopelandlaw.com
Max Ambrose
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101

Re:     *Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH (N.D. Cal.)

Dear Counsel:

We write in response to your September 9 and 15, and October 23, 2025 meet and confer letters regarding Nexo's document production. We also write to meet and confer regarding the sufficiency of Cress's document production. It would be most efficient for us to meet and confer to resolve outstanding issues with respect to the productions of both sides.

## NEXO'S DOCUMENT PRODUCTION

As Nexo explained in its October 23 letter, the parties engaged in lengthy negotiations to arrive at mutually acceptable search terms for Nexo's document review. Nexo collected the email, shared drive, and Slack data for the 14 custodial sources, and email for the 9 non-custodial sources ordered by the Court, limited to the 2021-2022 date range ordered by the Court for the non-custodial sources, and applied Cress's 100+ search terms. Cress explicitly approved each and every one of those search terms, with the parties not reaching agreement on all search terms until July 1, 2025. Nexo assembled a large document review team at significant expense over the summer to implement the parties' agreed document review and search term protocol. Nexo's document review and production over the summer was based on reviewing the documents that hit on the search terms that Cress selected. After the document hits on the review population were segregated, Nexo reviewed and produced responsive documents consistent with its RFP responses. This protocol was fair, reasonable, and proportional.

Nexo generally adheres to the distinction made in its October 23 letter, which is relevant to proportionality and burden. Cress's RFPs generally fall into one of two categories— narrow requests and broad requests. Narrow requests seek a discrete and ascertainable category of targeted documents that Nexo can reasonably search for and produce from Nexo's general corporate records without search terms or unreasonable burden. In other words, it's a narrow request for a specific document or subset of similar documents that Nexo can identify without a document search and review process. In contrast, broad requests seek "all documents" concerning broad categories of communications. Broad

Case 3:23-cv-00882-TSH    Document 99-11    Filed 02/11/26    Page 3 of 7



requests require custodians, search terms, document review teams, and the search protocol that the parties laboriously negotiated over last summer.

Your October 23 letter does not acknowledge or address this critical distinction between narrow and broad requests. In particular, your October 23 letter treats all Cress RFPs as equivalent and appears to demand that, for broad requests, Nexo review all documents within the Company, without regard to the custodians, search terms, and review protocol that we previously negotiated. As a general matter, for narrow requests, Nexo is willing to follow up and look for specific documents or categories of documents that Cress claims to be missing. However, for the broad requests, with the exceptions noted below, Nexo is not willing revisit the Court's orders setting the date range limit for non-custodial sources, to expand beyond the 23 custodial and non-custodial sources approved by the Court, or to expand beyond the 100+ search terms the parties already negotiated and agreed upon other the summer.

Nexo's responses to your inquiries are below. To the extent that Nexo agrees to investigate whether further responsive documents exist, it is not intended to be an acknowledgement that such documents do, in fact, exist.

### Cress's Narrow Requests

We have worked with Nexo to follow up regarding your narrow requests for documents. Nexo agrees to produce, or has already produced, the documents listed in the chart below. To the extent you wish to meet and confer about obtaining additional documents, please consider whether those requests can be formulated as narrow requests. Thank you for your patience while we followed up on these issues.

| | |
|---|---|
| 1 | Nexo will produce a spreadsheet of Nexo Token ICO sales including the purchase information and the identities and nationalities of the purchasers |
| 2 | Nexo will produce policies, practices, and procedures with respect to identifying the location of its customers, including Cress |
| 3 | Nexo will produce documents sufficient to show all wallet addresses which sent or received BTC, ETH, NEXO, USDC, USDT related to Cress transactions |
| 4 | Nexo will produce documents sufficient to show how Nexo accounted for Nexo Token ICO proceeds in comparison to post-ICO proceeds |
| 5 | Nexo will produce third party exchange transaction information for Cress's OTC purchases and liquidations |
| 6 | Nexo will produce documents sufficient to show any incentive policies applicable to Hristov |
| 7 | Nexo will produce Hristov's employment contract |
| 8 | Nexo will produce date-relevant versions of responsive Nexo website articles |
| 9 | Nexo will produce correspondence with regulators concerning the FTX subpoena |
| 10 | Nexo will produce non-privileged communications regarding the Zachary Rubin settlement |
| 11 | Nexo will produce a full export of Cress's Salesforce records in native CSV format and a screenshot of Cress's Nexo account bio page |
| 12 | Nexo will produce communications regarding support ticket #432896 |

**Communications with Regulators.** Nexo produced responsive documents regarding communications with regulators on September 12. You raised concerns that Nexo's production of correspondence with regulators is incomplete and does not contain the full document productions

2

provided to regulators. We have determined that certain documents in this category were encrypted and were not included in the September 12 production because we did not have the passwords for the files necessary to open and process the documents. We believe that we have now identified the relevant passwords and are working with our ESI team to complete the production of this document category.

**2018-2020 Nexo Token Sales.** Nexo has produced documents regarding 2018-2020 Nexo Token Sales through the protocol of applying the agreed search terms to the 23 custodial and non-custodial sources approved by the Court. If you have a narrow request for a certain type of additional data related to 2018-2020 Nexo Token Sales, Nexo is willing to further inquire into whether production is possible.

**Audit Reports, Attestations, and Financial Attestations.** Similarly, with respect to audit reports, Nexo applied the agreed search terms to the agreed custodians and produced responsive documents consistent with its RFP responses. We seem to have a difference of opinion as to the meaning of the term "audit" – Nexo understands it to be a formal report by a third-party auditor, while Cress appears to define it as any internal financial report, including those prepared by Nexo itself. Nexo wishes to avoid disputes regarding this category. If Cress is seeking a specific type of internal financial document, please identify what you are looking for (subject matter and time period) with specificity. We are willing to meet and confer regarding targeted requests for internal financial documents that are relevant. Please let us know what you want as far as internal Nexo financial reports, in the form of a narrow request, and we can further inquire into whether production is possible.

**Social Media.** Nexo made a large production of its social media posts, which were extracted by third-party service provider "Page Vault." You can identify those documents by searching the term "Page Vault" in Nexo's production. Nexo is willing to meet and confer about the production of additional social media posts that you claim to be missing. However, most if not all of Nexo's social media posts or videos should be publicly available on the platforms and equally accessible to Cress.

**Replacement Documents.** You raise issue with the quality of certain documents in the production. Nexo is willing to produce better quality documents if better versions are available to Nexo. To expedite the process, please send a complete list of Bates numbers of documents where you want Nexo to replace the document. Nexo will replace them or explain why it is unable to do so.

## Cress's Broad Requests

As to your broad requests for "all documents" related to various subject matters, Nexo's general position is that Nexo applied the agreed search terms to the agreed custodians and produced responsive documents consistent with its RFP responses. Nexo has produced over 50,000 documents in this matter, and has agreed above to produce even more. Cress's generic contention that there should be more documents from Trenchev, Kantchev, Hristov, Slack, and Nexo internal communications appears to incorrectly assume that Nexo had an obligation to search beyond the terms agreed by the parties and beyond the 23 custodians and non-custodial sources approved by the Court.

In an effort to avoid further disputes regarding this issue, Nexo is willing to meet and confer to apply new and very targeted search terms to identify any discrete documents that Cress claims to be missing from the production. Those search terms would be applied to the existing database of 23 custodians and non-custodial sources. Regarding your inquiry about the document collection, Nexo collected both

3



the .io and .com versions of the email addresses of the individual custodians. As to your reference to the legal@nexo.io email account, that account was not included as a non-custodial source, and was not approved by the Court. Nexo remains willing to meet and confer regarding these issues.

## CRESS'S DOCUMENT PRODUCTION

Nexo's document requests seek discrete categories of documents from one custodian. Cress has produced only approximately 844 documents. Nexo seeks to meet and confer regarding the following deficiencies in Cress's document production.

1. **Communications To/From Nexo**

It does not appear that Cress has produced his full set of communications with Nexo. For example, Nexo produced NEXO-0003613, an email chain between Cress and Hristiyan Hristov dated August 10-17, 2021, that does not appear to be in Cress's production. Please confirm that Cress has produced each and every document in his personal email, social media, messaging apps, or other repositories that hit on the term "Nexo."

2. **Cress's Communications re: Nexo and Cryptocurrency**

Cress has agreed to produce, his texts, Telegrams, emails, and other messages that relate to Nexo and his cryptocurrency investments. A review of Cress's production reveals holes and missing documents. *See* CRESS-00013155 at 13165 (Cress did not produce the chat message where he was supposedly removed from the "whale chat"); CRESS-00012453 at 12455 (Cress sent an unproduced "bad review" on Telegram); CRESS-00012489 at 12492 (Cress posted a link to an article in the "Nexo telegram" that does not appear to have been produced). Please confirm that Cress will produce these communications.

Cress has admitted that, at times, he was a member of a "whale chat," which may or may not be different from a "Nexo Telegram chat," of which he was also a member. Nexo has identified two different multi-member chats as produced by Cress: Group Name 1127480027 and Group Name 1264305535. Please confirm that these are the "whale chat" and the "Nexo Telegram chat," or if not, what they are.

Nexo's review of Cress's production indicates that there are many types of chats or communications that Nexo cannot determine whether Cress has produced from the face of the document:

- In CRESS-00001910, Cress was invited to join a private Discord chat. Did he join this chat? If so, was it produced?
- CRESS-00002426 and CRESS-00002429 appear to be a partial Telegram chat with GSR. Please produce the entire chat with GSR, and all communications with GSR related to Cress's sale of his Nexo Tokens.
- In CRESS-00012520, Cress notes that he sent a video to David Lindenbaum "in telegram." Please produce the full set of Cress's Telegram messages with Mr. Lindenbaum and all other Telegram messages that are responsive to Nexo's RFPs.

4

- In CRESS-00012838, Cress relays a text he received from a "Nexo user." Please produce the full set of text messages that are responsive to Nexo's RFPs.
- In CRESS-00012850, Cress discusses an "Advanced Crypto Asset Trading Group" Facebook group that he joined. None of the messages or posts from this group have been produced.
- In CRESS-00012908, Cress mentions another Nexo user "advocating his one good will favor" with Nexo on Cress's behalf. These messages were not produced.
- In CRESS-00013103 and CRESS-00013118, Cress mentions that he sent emails regarding Nexo to "Ace." These emails do not appear to have been produced.

Please confirm that Cress produced these documents, and if not, what steps Cress will take to ensure that all responsive documents are produced.

### 3. Tax Documents and Communications

The Court's October 31, 2025 discovery order compelled Cress to respond to Nexo RFP 132, which seeks "All documents related to your tax treatment of your NEXO Token transactions in 2021." Cress repeatedly mentioned his use of Token Tax, including uploading his data from Nexo onto Token Tax. *See, e.g.*, CRESS-00001197, CRESS-00001335, CRESS-00001703, CRESS-00002154, CRESS-00002198, CRESS-00012649. Please confirm when Cress will make a complete production responsive to RFP 132.

### 4. Missing Documents

Several of Cress's documents indicate on their face that other responsive documents exist but do not appear to have been produced by Cress, which indicates an incomplete collection effort:
- CRESS-00000052 and CRESS-00001386 refer to the Source of Funds Declaration that Cress submitted to Nexo. It does not appear that Cress produced this document.
- CRESS-00000001, CRESS-00000027, CRESS-00000034, CRESS-00000077, CRESS-00000254, and CRESS-00001760 refer to Cress's OTC transactions, where Cress sent USDT to Nexo's OTC Vault. It does not appear that Cress has produced all of the automated confirmation emails that he received from Nexo. *See, e.g.*, CRESS-00000692, at 703 ("I sent my tokens to Nexo's deposit address").
- In CRESS-00012486 and CRESS-00012489, Cress discussed chats regarding cryptocurrency investments with "BitcoLoan support" (12486) and "[t]he founder of Vectorspace" (12489). These chats were not produced.

### 5. Missing Attachments

Many of Cress's documents are missing attachments, since the document has no "family." *See, e.g.*, CRESS-00000025, CRESS-00000050, CRESS-00001189, CRESS-00001366, CRESS-00001368.

### 6. Incomplete Documents & Metadata

Nearly all of Cress's documents are missing key information and/or metadata that impair Nexo's review of the production. CRESS-00001385 and CRESS-00001389 appear to be empty documents. CRESS-00002698, CRESS-00002699, CRESS-00002700, CRESS-00002701, and CRESS-00002702

5



say that they were produced in native format, but there is no native document. Of these, CRESS-00001385 and CRESS-00001389 are of particular importance, because they appear to be Cress's Accredited Investor Certificate and the CSV download from Coinbase that Cress sent to Nexo. Please reproduce these documents.

Many of the text and Telegram messages as produced do not include the recipient's name and/or phone number. For example, CRESS-00013175 appears to be some type of message, but with no recipient name or phone number. Similarly, many of Cress's messages—for example, CRESS-00012407, CRESS-00012420, CRESS-00012445, CRESS-00012475, and CRESS-00012481, among many more—are all missing the recipient's phone number. Please reproduce all text and other messages with full information and metadata, including the recipient's name and phone number.

Please promptly let us know Cress's positions on these issues.

                                              Regards,

                                              */s/ Ian S. Shelton*

                                              Ian S. Shelton