February 20, 2026

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:   *John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH
      JOINT DISCOVERY LETTER REGARDING DEPOSITION LOCATION AND DURATION

Dear Judge Hixson:

The parties submit this joint letter regarding two disputes concerning the depositions of three witnesses of Defendant Nexo Capital Inc. ("Nexo"): (1) whether the depositions of Octavian Dinca, Edward Tonkov, and Lyubcho Kostadinov should take place (a) in person in London, (b) fully remote (including the translator and all counsel), or (c) partially remote with the witnesses, Nexo's counsel, and the translator located together in Sofia, Bulgaria while Plaintiff's counsel remains in California; and (2) whether depositions conducted with a Bulgarian-language interpreter should be extended to fourteen (14) hours over two days. The parties have met and conferred in good faith prior to filing this letter, including by telephone and the exchange of emails.

## Attestation

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred telephonically and in good faith to resolve the disputes set forth below.

| | |
|---|---|
| Dated: February 20, 2026 | TAYLOR-COPELAND LAW |
| | By: /s/ James Taylor-Copeland |
| | Attorneys for Plaintiff |
| | |
| Date: February 20, 2026 | BAKER & MCKENZIE LLP |
| | By: /s/ Ian S. Shelton |
| | Attorneys for Defendant |

0

**PLAINTIFF'S POSITION**. Plaintiff John Cress seeks an order requiring (a) Nexo to produce Octavian Dinca, Edward Tonkov, and Lyubcho Kostadinov for deposition in London or (b) that all counsel and translators appear remotely. Cress further requests that the Court extend the time limit for any deposition conducted with a Bulgarian-language interpreter to fourteen (14) hours over two days, consistent with the advisory committee notes to Federal Rule of Civil Procedure 30(d)(1). London is a reasonable, neutral location that Nexo itself proposed, that Baker & McKenzie's London office can accommodate, and that avoids the serious safety, legal, and fairness concerns associated with proceeding in Sofia.[1]

**Nexo Proposed London and Should Not Be Permitted to Renege on Its Agreement.** Nexo's current position is the product of serial reversals that have delayed these proceedings and prejudiced Cress. Plaintiff first reached out to schedule depositions in October 2025. Ex. 1 (meet and confer correspondence). Nexo did not provide any response for weeks. Finally, in December, Nexo agreed to produce Dinca, Tonkov, Kostadinov, Hristov, and Trenchev, but asked Plaintiff to provide a proposed schedule and stated they planned to be physically present with witnesses whether Plaintiff's counsel was present in person or not. In January 2026, Plaintiff proposed conducting the depositions in Dublin, Ireland as a neutral location which Nexo's deponents could easily access. Plaintiff's counsel noted a willingness to conduct some of the depositions remotely, but expressly objected to Nexo's proposal that its counsel be present in the same room and asked Nexo its willingness to reevaluate this position.

On January 9, Nexo's counsel responded that he was "anticipating that Nexo will prefer London over Dublin" because his firm's "large office in London [] should make life easier for all of us." Ex. 1. During a January 23 meet and confer call, Nexo's counsel reiterated Nexo's willingness to proceed in London with all deponents. Plaintiff accepted London as a reasonable compromise and began preparing accordingly. Then, on February 3, 2026, Nexo reversed course entirely, demanding that all depositions take place in its offices in Sofia, Bulgaria, all with translators. Now, Nexo has agreed to produce two of the five witnesses—Hristov and Trenchev—in London and conceded they do not need translators. However, Nexo, insists that the remaining three witnesses be deposed in Sofia with translators.

Having proposed London in the first instance, Nexo should not now be allowed to argue that sending these three employees to London—a roughly three-hour, $200 roundtrip flight from Sofia—constitutes an "undue burden," particularly where this litigation is pending in California and Cress' counsel will make a ten-hour journey from California. *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2017 U.S. Dist. LEXIS 224140, at *15-16 (C.D. Cal. Aug. 12, 2017) (denying request for remote deposition because $1,400 airfare was not an undue burden). Conducting all five depositions in a single location will promote efficiency, minimize logistical complications, and ensure a consistent and fair process.

**In-Person Depositions in Sofia Present Serious Safety Concerns for Plaintiff's Counsel.** In prior litigation—the *Shulev* matter—Nexo's officers were accused of making explicit threats toward adverse parties and their families, arranging surveillance of litigants, involving Bulgarian law enforcement to pressure former employees, and threatening physical violence. The allegations describe threats by Trenchev and Kantchev, directed at former employees and their families because they were pursuing legal claims against Nexo. Amended Defence and Counterclaim ¶ 57.1 (alleging Trenchev called Mr. Shulev and stated: "we know that Boryana [Mr Shulev's fiancé] is pregnant. As you know she already has problems...and this is only the beginning. We will not give up. You know Kosta [Kantchev] very well. You know who we are and that we have the money. You know how things are done in Bulgaria. Our patience is already over, so if you do not agree to sign the agreement I would not be very calm about your family and yourself."); 57.2 (Trenchev sent an email stating: "Watch after your baby and woman . . . Do the right thing, it's now or never."); ¶57.5.1 (Threatening an ex-Nexo employee with physical

---

[1] Despite this Court's Order that joint letters "shall not be accompanied by exhibits or affidavits other than [limited exceptions]," Nexo attaches a declaration and a legal brief to this letter brief over Plaintiff's objections. Exs. 2, 5.

violence to force him to sign documents and agree not to take legal action).

Given these well-documented allegations, requiring Plaintiff's counsel to travel to Sofia to conduct depositions in Nexo's own offices is neither reasonable nor appropriate.

**Remote Depositions Are Neither Practical Nor Fair Given Nexo's Conditions.** Nexo's proposed alternative—that Plaintiff take the depositions remotely—is unworkable given Nexo's insistence that both its counsel and a Bulgarian-language interpreter must be physically present in the room with the witness during each deposition. This arrangement would place Nexo's counsel in the same room as the witness while Plaintiff's counsel is relegated to a video screen. The resulting asymmetry is fundamentally unfair and undermines the integrity of the deposition process, specifically where the credibility of witnesses is at issue, as they are here in a fraud case. *Pruco Life Ins. Co. v. Cal. Energy Dev. Inc.*, 2021 U.S. Dist. LEXIS 209840, at *10-11 (S.D. Cal. Oct. 29, 2021) (collecting cases denying requests for remote depositions where the credibility of key witnesses is at issue). Nexo's deletion of critical documents as addressed in Dkt. 99 further underscores these witness credibility issues.

When defense counsel is physically present and the examining attorney is not, the remote attorney is at a significant disadvantage because they cannot effectively observe the witness's demeanor monitor off-camera communications between the witness and defending counsel. If the depositions are to be conducted in person for Nexo's counsel, they must be conducted in person for Plaintiff's counsel as well. London, where two of the five depositions are already scheduled to take place in person, is the obvious and most efficient location. *Sunstate Equip. Co., Ltd. Liab. Co. v. Equipmentshare*, 2020 U.S. Dist. LEXIS 238668, at *3-4 (D. Utah Dec. 16, 2020) (requiring all counsel to be present, or all counsel to use remote technology to prevent "creating advantages for one party over another in holding remote depositions"); *JUUL Labs Inc. v. Chou, ,* 2022 U.S. Dist. LEXIS 25460, at *11-19 (C.D. Cal. Feb. 11, 2022) (remote depositions prejudicial "due to witness credibility issues" and "the importance of the witnesses").

Dinca (one of Cress' VIP Relationship Managers and Nexo's Head of Private Client Services), Kostadinov (Nexo's Head of Marketing), and Tonkov (Trading Operations Manager) are all key witnesses in this case. Notably, Nexo has reserved its rights to designate any of these witnesses as 30(b)(6) witnesses on specific topics. Nexo argues that Dinca, Tonkov, and Kostadinov are "not similarly situated" to Hristov and Trenchev because they reside in Sofia. But the relevant question is not where the witnesses live—it is whether the proposed deposition arrangement is fair and workable. It is not.

**The Court Should Extend the Deposition Time Limit to Fourteen Hours for Interpreted Depositions.** Regardless of where the depositions take place, the Court should grant Plaintiff leave to conduct each interpreted deposition for up to fourteen (14) hours over two days. F.R.C.P. 30(d)(1) expressly provides that "[t]he court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." The advisory committee notes to Rule 30(d)(1) specifically identify the use of an interpreter as a circumstance warranting additional time: "if the witness needs an interpreter, that may prolong the examination." "[N]umerous courts in [the Ninth] circuit have made clear that the presence of an interpreter can slow down a deposition and may warrant the granting of additional time." *Maluf v. Bergelectric Corp.*, 2024 U.S. Dist. LEXIS 202674, at *7 (D. Nev. Nov. 6, 2024) (extending deposition by five hours); *Hsin Lin v. Solta Med., Inc.*, 2024 U.S. Dist. LEXIS 100197, at *3 (N.D. Cal. June 5, 2024) (extending deposition by four hours); *In re Actos Antitrust Litig.*, 639 F. Supp. 3d 453 (S.D.N.Y. 2022) (12-hour duration on "Depositions requiring an interpreter").

Nexo has insisted that all three Sofia-based witnesses require a Bulgarian-language interpreter because English is not their native language. Plaintiff is skeptical that interpretation is necessary given these witnesses' apparent command of English—Dinca has a Bachelor's Degree from American University in

2

Bulgaria (AUBG), where all classes at AUBG are taught entirely in English. Dinca and Tonkov both represent on LinkedIn they have either native or full professional proficiency with English. However, if Nexo insists on proceeding with interpreters, the reality is that interpretation substantially reduces the amount of substantive examination that can occur within any given time period. "Every single question and answer needs to be spoken twice, first in the language of the speaker, and second in the language of either the witness or the questioning attorney," effectively doubling the time required. *See Synology Inc. v. Via Licensing Corp. Synology Inc. v. Via Licensing Corp.*, 2023 U.S. Dist. LEXIS 90062, at *4 (N.D. Cal. May 23, 2023). Fourteen hours over two days is a reasonable accommodation that will allow Plaintiff to fairly examine the witnesses while accounting for the time consumed by interpretation.

Nexo's reliance on *Synology* is misplaced. The Court declined to grant time beyond 7 hours due to the parties' explicit agreement, not a blanket prohibition on additional time for translation. *Id*. at *4. Rather, the Court noted that "[a]nyone with common sense understands the significant impact a translator has on a deposition." *Id.* ("You can't say with a straight face that you didn't know that using a translator would significantly slow down a deposition because of course you knew that; everyone knows that.").

Despite previously telling Plaintiff it would "meet and confer . . . about timing issues associated with combined percipient/30b6 depos," Nexo now asks that depositions be limited to 7 hours "**including any Rule 30(b)(6) topics covered by the witness**." This would effectively deprive Plaintiff of a meaningful 30(b)(6) deposition. Plaintiff is amenable to combined testimony, but if Nexo elects to proceed in that manner, fundamental fairness requires sufficient additional time to examine the designated Rule 30(b)(6) topics. Limiting the deposition to seven total hours would collapse two distinct examinations into one and undermine Rule 30(b)(6)'s purpose. A Rule 30(b)(6) deposition is "substantially different from a witness's deposition as an individual." *Ins. Servs. Network v. Balboa Life & Cas.*, 2004 U.S. Dist. LEXIS 34041, at *5-6 (C.D. Cal. Dec. 6, 2004) (ordering two separate full-length depositions of the same witness); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2019 U.S. Dist. LEXIS 252621, at *7 (N.D. Cal. Mar. 18, 2019) ("Plaintiffs are entitled to two seven-hour depositions of [witness], one in his individual capacity and one in his capacity as [the] corporate representative").

**NEXO'S POSITION**. This dispute involves the deposition location for three witnesses of Nexo Capital Inc. ("Nexo") who work and reside in Sofia, Bulgaria. The three witnesses are Octavian Dinca, Edward Tonkov, and Lyubcho Kostadinov. Dinca is the Head of Private Client Services; Tonkov is a Trading Operations Manager; and Kostadinov is the Head of Marketing.

Cress demands that Nexo produce all three witnesses for deposition in London at Nexo's expense. Nexo has already agreed to bring two witnesses—Antoni Trenchev and Hristiyan Hristov—to London. The three witnesses in dispute are lower-level Nexo employees who, unlike Trenchev and Hristov, work and reside in Bulgaria. Nexo seeks a protective order from the Court regarding the location of these depositions to protect it from undue burden and expense. Fed. R. Civ. P. 26(c). Nexo requests that the Court order either (1) that the witnesses be deposed in Sofia, Bulgaria, either remotely or in-person, with Nexo's attorneys having the right to be physically present with the witnesses in Sofia; or (2) that Cress bear all expenses associated with the three witnesses if ordered to appear in London.

**Factual Background.** Nexo is a Cayman Islands corporation with its principal place of business in the Cayman Islands. **Ex. 2**, Declaration of Antoni Trenchev, ¶ 5. Nexo's affiliate, NDS EOOD, is a Bulgarian limited liability company with its principal place of business in Bulgaria. *Id.*, ¶ 6. NDS's employees, including the three witnesses in dispute, reside and work in Sofia, Bulgaria and perform services for Nexo. *Id.*, ¶ 7. Cress originally proposed taking the depositions of Dinca, Tonkov, and Kostadinov remotely, and requested Hristov and Trenchev in person in Dublin, Ireland. **Ex. 3**. Hristov is a former employee and the former relationship manager for Cress. **Ex. 2**, ¶ 9. Trenchev is a director of Nexo. *Id.*, ¶ 2. Trenchev and Hristov both reside in the UAE. *Id.*, ¶¶ 4, 9.

After receiving Cress's request, the parties began discussing deposition logistics. Nexo proposed that all depositions occur remotely from Nexo's offices in Bulgaria, or alternatively, in-person in Bulgaria. **Ex. 4**, pp. 5-6. Nexo also noted the need for a translator for the witnesses. *Id.*, p. 6. Cress then took the position that all witness depositions must occur in-person in London, that Nexo must bear all the expenses, and that if any witness required a translator the length of the deposition should be doubled to 14 hours per deponent. *Id.*, pp. 1, 5. Cress further argued that Bulgarian law did not allow for voluntary depositions in Bulgaria. *Id.*, p. 5.

Nexo proposed a compromise that the UAE residents (Trenchev and Hristov), appear in-person in London at Nexo's expense without a translator. *Id.* pp. 1-2. Hristov is a former employee who does not currently reside in Bulgaria, and Trenchev is the most-senior director of Nexo. **Ex. 2**, ¶¶ 2, 9. The three employees in dispute, however, are not similarly situated to Trenchev and Hristov. All three currently reside in Sofia and occupy lower-level, operational positions at Nexo, such that their departure for an extended period of time would be expensive and disruptive to Nexo's business. *Id.* ¶¶ 10-11. As to those three employees, Nexo offered to make them available for deposition at their place of residence in Sofia, either remotely or in-person. **Ex. 4**, pp. 1-2. Nexo anticipates that Trenchev, Hristov, Dinca, Tonkov, and Kostadinov will cover the majority, if not all, of Cress's 49 Rule 30(b)(6) deposition topics.

**The Three Depositions Should Proceed Remotely or In-Person from Sofia, Bulgaria.** Nexo has obtained a legal opinion from Bulgarian counsel that voluntary remote or in-person depositions are allowed in Bulgaria. **Ex. 5**. Nexo is willing to enter into any reasonable stipulation or accommodation to make remote depositions from Bulgaria workable. Forcing Nexo to bring each deponent to London will likely require 3-4 days away from their job duties and family as they travel, prepare for their depositions, and sit for examinations. **Ex. 2**, ¶ 13. This will also include substantial airfare, incidental, and hotel costs in an expensive city that is not the home of the three witnesses. *Id.*

The Court should order the depositions of Dinca, Tonkov, and Kostadinov to proceed (at Cress's election) either remotely or in-person from Sofia, Bulgaria, where the witnesses reside and work. As a threshold matter, it is unclear whether the Court has the power to compel these depositions to occur in a foreign country on an involuntary basis. The three witnesses have agreed to voluntarily be deposed in Bulgaria with a translator. Individuals who are not officers, directors, or "managing agents" of a party must be served with a subpoena through the Hague Convention and deposed in their home jurisdiction. *In re Transpacific Passenger Air Transportation. Antitrust Litigation*, No. C-07-05634 CRB (DMR), 2013 WL 6730165, at *2 (N.D. Cal. Dec. 20, 2013). The three witnesses are not directors or officers of Nexo. If they are not "managing agents" of Nexo (which is Cress's burden to prove), the only proper location for their deposition would be their place of residence—Bulgaria—and Cress would be required to comply with the "procedures of the Hague Convention." *Id.* at *2.

Even if they are managing agents, however, the result is the same. The general rule for corporate depositions is that they should occur at the entity's principal place of business. *See Transpacific,* 2013 WL 6730165, at *2 (applying rule to specific employees of corporate party noticed for deposition and ordering depositions at headquarters in Taiwan); *Kelora Sys., LLC v. Target Corp.*, No. C 11-01548 CW (LB), 2011 WL 3895303, at *3 (N.D. Cal. Aug. 29, 2011) (ordering Rule 30(b)(6) deposition of Dell at headquarters in Texas). Here, the witnesses are employed by NDS, a Bulgarian affiliate of Nexo with its principal place of business in Sofia, Bulgaria. **Ex. 2**, ¶¶ 6-7.

Thus, the presumptive location for the depositions is Bulgaria. Courts have held, however, that this presumption can be overcome depending on various factors, including: (1) the location of counsel in the forum district, (2) the number of representatives a party seeks to depose, (3) the likelihood of significant discovery disputes, (4) whether the parties to be deposed often engage in travel for business purposes,

4

and (5) the equities with regard to the nature of the claim and the parties' relationship. *Kelora,* 2011 WL 3895303, at *1. These factors do not justify overcoming the presumption.

As to the first four factors, Cress's counsel is located in California. Nexo's counsel is located in Texas. Neither counsel is located in the forum district. It is much easier for Cress's attorneys to take the depositions remotely, or travel to Bulgaria, than for three witnesses to travel to London. Any discovery disputes can be addressed through the Court's normal process whether the depositions occur in London or Sofia. The deponents reside in Sofia and do not travel to London regularly for business. **Ex. 2**, ¶¶ 8, 12. The equities favor deposing the witnesses in their home city. Nexo is facilitating these depositions on a voluntary basis, and the witnesses are voluntarily agreeing to appear for deposition in Sofia. Cress's concerns can be addressed by taking the depositions remotely, and through the stipulations discussed below. In order for the witnesses to appear for deposition in London, Nexo will have to pay substantial airfare, hotel, and incidental expenses for 3-4 days for each witness. **Ex. 2**, ¶ 13. Those witnesses will be away from their work responsibilities during this time. *Id.* They will also be inconvenienced by being away from their families. This is a significant imposition on both Nexo and the employees.

In response, Plaintiff has alleged that voluntary depositions are not allowed under Bulgarian law. That is not true. Nexo retained a Bulgarian law firm, Kambourov & Partners, which confirmed that voluntary depositions are permissible in Bulgaria, whether in-person or remote. **Ex. 5**. The Court may consider the Kambourov opinion under Federal Rule of Civil Procedure 44.1.

Plaintiff also makes vague "safety" allegations, which are unfounded. Bulgaria is part of the European Union, and there are no travel warnings regarding Bulgaria from the U.S State Department. Cress's attorneys base their alleged concerns on unsubstantiated *allegations* by an adverse litigant in a foreign matter. In any event, proceeding remotely will render this purported safety issue moot. Cress has also asserted certain logistical hurdles to Bulgarian depositions. Nexo's counsel will be present with the witnesses when they are deposed. Nexo is willing to agree to reasonable stipulations or accommodations to alleviate Cress's concerns, including stipulating that the court reporter and videographer be located in the U.S., and that the depositions will be admissible in this action. *See Transpacific,* 2013 WL 6730165, at *2 (noting the "parties' agreement that the depositions will have the same force and effect as if taken in the United States").

If Cress wants to minimize burden and cost, he can elect to take the depositions remotely, as he originally proposed. While Cress's attorneys can elect to take the depositions remotely, they have identified no legal basis for barring Nexo's attorneys from being physically present with their own witnesses in Sofia. If Cress's attorneys wish to be physically present for the depositions, they can travel to Sofia. In the unlikely event, however, the Court orders these three witnesses to fly to a foreign country to testify involuntarily, Nexo requests in the strict alternative that Cress bear the costs of transporting these three witnesses to London. Fed. R. Civ. P. 26(c)(1)(B); *S.E.C. v. Banc de Binary*, No. 2:13-CV-993-FCJ-VCF, 2014 WL 1030862, at *10-11 (D. Nev. Mar. 14, 2014) (collecting cases ordering examining party to cover costs of deposition).

Finally, the Court should reject Cress's demand for a 14-hour deposition if these Bulgarian witnesses exercise their right to use a translator. Any deposition of a single witness should be limited to 7 hours, including any Rule 30(b)(6) topics covered by that witness. *See Synology Inc. v. Via Licensing Corp.*, No. 22-cv-01405-TLT (TSH), 2023 WL 3598468, at *2 (N.D. Cal. May 23, 2023) (J. Hixson declining to grant additional time beyond 7 hours for Mandarin-translated deposition). In no event should the deposition time extend beyond a single day for any witness. This is particularly appropriate where the parties are negotiating "multiple depositions on successive days in a foreign country." *Id.* at *2. Cress's demand for **42 hours** of testimony from 3 witnesses is outrageous. Cress has made no showing that he actually needs more than 7 hours with any of these witnesses.

5