March 20, 2026

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:    *John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH - JOINT DISCOVERY
       LETTER REGARDING PLAINTIFF'S SIXTH SET OF RFPS

Dear Judge Hixson:

The parties submit this joint letter setting forth each side's view as to Plaintiff Cress' Sixth Set of RFPs (274, 275, 280, 282, 284, 285, 292, 293, 294 295). The parties have met and conferred in good faith prior to filing this letter, including by Zoom meeting and the exchange of letters and emails.

**Attestation**

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred telephonically and in good faith to resolve the disputes set forth below.


Dated: March 20, 2026               TAYLOR-COPELAND LAW

                                    By: /s/ James Taylor-Copeland

                                    Attorneys for Plaintiff


Dated: March 20, 2026               BAKER & MCKENZIE LLP

                                    By: /s/ Ian S. Shelton

                                    Attorneys for Defendant

**PLAINTIFF'S POSITION**. Cress respectfully requests an order compelling Nexo to produce documents responsive to Cress' Sixth Set of RFPs (274, 275, 280, 282, 284, 285, 292, 293, 294 295). Cress served these RFPs on February 4, 2026, following Nexo's January 30, 2026 disclosure that it had destroyed essentially all emails belonging to its Managing Partners, Antoni Trenchev and Kosta Kantchev, and all Slack Direct Messages, through auto-deletion policies implemented on December 4, 2022. *See* Dkt. 99 at 2–3; Dkt. 99-5 at 6 (January 30, 2026 Meet and Confer Letter). Nexo also admitted that it began deleting Slack communications in its Public and Private Channels on March 1, 2023—including those used to specifically discuss Cress' transactions—four days after Cress filed this lawsuit. Nexo has now produced limited documentation in response to Plaintiff's other RFP Set Six requests showing Nexo's destruction of documents is even more extreme than Nexo previously conceded. Nexo implemented company-wide deletion policies for court-ordered custodians during this litigation and implemented dozens of targeted deletions of Hristiyan Hristov's (Cress's VIP Relationship Manager) emails during this litigation.

Cress's remaining RFPs narrowly target the scope of Nexo's evidence destruction and its preservation practices. The information sought—litigation hold notices, retention policies, system configurations, and data recovery efforts—is the type of information that parties routinely provide voluntarily during the meet-and-confer process when questions arise about document preservation. Indeed, courts expect parties to be transparent about their preservation and collection efforts as a matter of course. *See, e.g., The Sedona Conference, Commentary on Legal Holds*, Second Edition, 20 Sedona Conf. J. 341, n.87 (2019) ("The Federal Rules… recognize the value of conferring with opposing parties about the preservation and production of ESI."). Rather than engage in good-faith dialogue about its preservation practices, Nexo has stonewalled Cress for years.

In July 2024, Plaintiff proposed an ESI stipulation, Nexo responded by asserting that it would only agree to preserve ESI from January 2021 onward. However, by September 2024, Nexo unexpectedly changed course and refused to sign an ESI agreement entirely—presumably (and unbeknownst to Plaintiff at the time), because Nexo's attorneys had discovered Nexo could not comply with its own preservation position, having deleted years of critically relevant documents. Nexo's records show that it even added new deletion rules for Trenchev and Kantchev in August 2024 and performed targeted deletions of many of Mr. Hristov's emails in September 2024—during the parties' ESI related meet and confers.

When Nexo failed to produce critical documents by the August 2025 deadline, Plaintiff raised the issue immediately. Nexo ignored Plaintiff for months, prompting Plaintiff to file a letter brief. Dkt. 99. Nexo conceded it had deleted the communications but argued Cress could seek additional information through RFPs and a 30(b)(6) deposition. Dkt. 99. When Cress did so, Nexo served blanket objections to nearly all RFPs, initially refusing production on 22 of 27 requests. On March 13, 2026, Nexo served amended responses producing some documents (RFPs 271, 276–279) and asserting for the first time that "no documents" exist for eight others (RFPs 269, 270, 272, 273, 281, 283, 290, 291).[1] Nexo continues to refuse production entirely for eight requests (RFPs 274, 275, 280, 282, 284, 285, 292, 293). Nexo's refusal to provide basic information about its deletion of documents necessitates this Court's intervention.

---

[1] Nexo's claim that no litigation hold notices or preservation memoranda exist is itself a stunning admission, itself suggestive of both Nexo's mal intent and the scope of spoliation.

**1. Nexo Must Produce Retention Policy Change Documentation (RFP 274) and Admin Logs (RFP 275).** Nexo's response to RFP 274 agrees to produce "Retention Policy Changes, to the extent they exist," but refuses to produce the underlying communications, IT tickets, and change logs (RFP 274) or Admin Logs (RFP 275) that authorized and implemented those changes.

The importance of these documents is underscored by the Retention Policy Changes it has produced, which reveal a systematic campaign of targeted document destruction. On December 4, 2022, Nexo created eight separate 30-day auto-deletion rules targeting all emails to and from four email addresses belonging to Trenchev and Kantchev. Ten days after Cress filed suit, on March 9, 2023, Nexo expanded the deletion campaign to Kantchev and Trenchev's personal email addresses. Nexo once again expanded its deletion campaign in 2024—including additional rules for Kantchev's, Trenchev's and Hristov's emails—shortly after Cress served his initial discovery requests on Nexo. The internal communications, IT tickets, and change logs authorizing these changes are precisely what RFP 274 seeks, and Nexo's refusal to produce them is indefensible. *Astellas U.S. LLC v. AnazaoHealth Corp.,* 2009 U.S. Dist. LEXIS 140933 (C.D. Cal. Feb. 24, 2009) ("The manner in which a document retention policy was implemented is also a proper subject for discovery. Obviously, such information is relevant to understanding the context in which such information and/or documents may have been deleted or destroyed.").

Nexo also deleted Google Drive documents with specific Google Workspace labels in August 2024 and February 2025—just as this Court was addressing which custodians' files should be searched in this matter. Google Workspace maintains audit logs of label application events. These logs—which Nexo can easily generate—are key to showing which documents Nexo applied certain labels to and thus targeted for deletion amid ongoing litigation. *Morehead v. City of Oxnard*, 2023 U.S. Dist. LEXIS 213903, at *34-35 (C.D. Cal. Oct. 4, 2023) (Relevant factors of intent to deprive include "the timing of the destruction, the method of deletion (e.g., automatic deletion vs. affirmative steps of erasure), selective preservation, the reason some evidence was preserved, and, where relevant, the existence of institutional policies on preservation.").

**2. Nexo Must Disclose Device Information (RFP 292).** Nexo admits that it destroyed emails and Slack data, that no backups exist, and that it has no documents reflecting any efforts to recover this data. It nevertheless refuses to even produce a device inventory—much less search any devices. This position is untenable as locally stored copies on devices may be the only surviving source of critical evidence. *Oracle Am., Inc. v. ProCore Techs., Inc.*, 2025 U.S. Dist. LEXIS 144299, at *6–7 (N.D. Cal. July 28, 2025). The Court should order Nexo to produce documents sufficient to identify all devices in its possession, custody, or control related to the 14 Court ordered custodians.

**3. Nexo Must Provide Basic Collection and Processing Transparency (RFPs 280, 282, 284, 293, 294).** Nexo refuses to produce raw hit counts (RFP 280), a list of locations searched (RFP 282), deduplication mapping (RFP 284), the source of "Nexo Corporate Records" (RFP 293), or communications about Cress removed through deduplication (RFP 294). These requests seek basic e-discovery process information that is routinely produced in litigation and is not privileged. While litigation strategy may be protected, the *factual results* of collection and processing—what was searched, how many hits were found, and what happened during deduplication—are not work product. *Arnett v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 200878, at *12 (D. Or. Dec. 17, 2012) ("To the extent that Plaintiffs seek additional factual information from Defendants regarding such things as which specific electronic systems or files were searched or how they were searched, that type of information is discoverable."). Given the extensive deficiencies already identified in

Nexo's production, basic process transparency is essential for the Court and Plaintiff to assess the adequacy of Nexo's search and collection efforts.

Plaintiff attempted to resolve these disputes through compromise. During this litigation, Nexo produced inbox metadata spreadsheets for two custodians—automatically generated Google Workspace exports cataloging email metadata and drive links for two custodians' inboxes. Where emails have been deleted, these reports provide one of the few ways to recover some limited information about the deleted material. On March 12, 2026, Plaintiff proposed that Nexo produce these same exports for all 14 Court-ordered custodians, which would have resolved RFPs 280, 284, and 293, and 294 with essentially no burden and significantly narrowed issues relating to RFPs 275, 281, 282, 285, and 291.

Nexo rejected this proposal, calling the spreadsheets "non-responsive documents" produced "in error." This is untenable—the spreadsheets Nexo already produced contain email subjects directly relevant to this litigation, including emails about Cress himself. The Court should order Nexo to produce the inbox metadata and Google Drive link exports for all 14 custodians.

**7. Nexo Must Produce Expanded Metadata for Key Documents (RFP 295).** Nexo's production of metadata is also missing key information regarding the authorship and creation date of thousands of documents. Cress asked Nexo to produce 35 key documents in their native, authentic forms, including any enhanced or expanded metadata, such as access logs, tracked changes, version histories, notes, and comments. Nexo attempts to sidestep this request by agreeing to produce the native versions as they exist in Nexo's document review platform, but refusing to produce further documents. This is insufficient. These are documents maintained in Nexo's GoogleDrive which tracks when documents are created, edited, and any changes made. Since Nexo's collection failed to capture this key information, a production from its review platform will not provide any additional information.

**NEXO'S POSITION:** Cress continues to advance a false document destruction and spoliation narrative in an effort to justify excessive "discovery-into-discovery." That narrative is not true. When Nexo was notified of Cress's claims—challenging a handful of specific customer transactions over a 4-month period in March through June 2021—it took reasonable and appropriate steps to preserve documents relating to Cress and his transactions—the defined scope of the dispute at that time. Nexo has produced emails and spreadsheets regarding all of Cress's OTC transactions and liquidations, which were part and parcel of a 60,000+ document production regarding the litany of issues raised by Cress's hundreds of RFPs. Cress does not contend that any of his transaction records, account documents, or correspondence were deleted or destroyed, nor has he identified any missing evidence bearing on the merits of his claims. The bulk of Cress's letter brief is a conclusory and premature attack accusing Nexo of spoliation, without any supporting evidence, and untethered to any specific request for discovery. The letter brief process is designed to resolve actual discovery disputes, not to disparage an opposing party or test-drive arguments that can only be raised in a properly noticed sanctions motion supported by actual evidence, not accusations or mischaracterizations of documents.

Cress attempts to recast routine, company-wide document retention protocols carried out in the ordinary course of business as evidence of spoliation. That accusation is improper. The document retention policies Plaintiff challenges were implemented as part of normal business operations, were not targeted at Cress, and were unrelated to this litigation or any claim asserted in it. The fact that the scope of the case later expanded—most recently on October 30, 2025, when Plaintiff added

3

RICO and other claims—does not retroactively transform lawful retention practices adopted in 2022 and 2023 into litigation misconduct.

Unable to identify any lost evidence tied to his claims, Cress now seeks to leverage these routine document retention policies as a pretext to impose extraordinary discovery burdens on Nexo. Cress demands internal IT communications, administrative logs, device inventories, and outside counsel discovery information in a fishing expedition to support sanctions. The Federal Rules do not permit this approach. Nexo has already produced its retention policies, explained their application, and explained the fact that certain categories of documents no longer exist. Additional discovery about discovery will only multiply proceedings and impose disproportionate burden. Rule 37(e) governs when sanctions may be imposed for the loss of ESI; it is not a freestanding authorization into abusive discovery about every facet of a party's document preservation and production.

### 1. Retention Policy Communications, IT Tickets, and Change Logs (RFPs 274–275)

Nexo has produced all applicable document retention policies. That disclosure satisfies its discovery obligations. Cress nonetheless demands more—all internal communications, IT tickets, and change logs "authorizing" those policies. But any such materials—if they exist—would merely confirm what Nexo has already disclosed: that it implemented routine retention policies as part of ordinary business operations. Cress's requests also expressly seek documents "regarding the decision to authorize or implement the Retention Policy Changes." Any documents reflecting such "decisions" would necessarily implicate legal advice, compliance assessments, or counsel-directed considerations and are therefore privileged and protected work product. Nor is Nexo required to generate administrative logs, forensic audits, or bespoke reports simply because such data might theoretically exist within Google Workspace. Rule 34 requires production of existing documents as kept in the ordinary course of business—not the creation of new materials to support speculative sanctions theories.

### 2. Device Inventories (RFP 292)

Nexo has explained that data in old computers replaced in the ordinary course of business are not maintained or preserved by the company. As such, there is no justification for producing a log of old computers for every custodian. Rule 26 does not require parties to inventory every device used by a custodian simply because a requesting party refuses to accept that obsolete computers replaced in the ordinary course of business do not contain responsive material. Nexo preserved and produced responsive documents from its cloud-based repositories for all relevant data types, including email and Google Drive.

### 3. "Collection and Processing" Documents (RFPs 280, 282, 284, 293, 294)

These requests are not directed at Nexo. Cress wants discovery from Baker McKenzie. To comply with its discovery obligations, Nexo's outside counsel gathered a massive amount of data from Nexo, including from 23 custodial and non-custodial email boxes as well as other targeted sources. Baker McKenzie then used common ESI tools to sort the data, applied over 100 search terms demanded by Cress, applied common de-duplication and de-threading processes, manually reviewed over 200,000 documents, and finally produced over 63,000 documents in this case.

In short, Cress wants discovery about discovery from Nexo's outside counsel. Cress's demands for raw hit counts, deduplication mapping, search-location inventories, and explanations of

4

processing decisions improperly seek protected litigation process information and work product.[2] Courts consistently distinguish between discoverable facts and counsel's collection strategies, processing decisions, and quality-control judgments. The latter are protected work product.

The discovering party must generally "rely on the representations of the producing party or its representative that it is producing all responsive, relevant, and non-privileged discovery.... That is the way our 'good faith' discovery system works." *Han v. Futurewei Techs., Inc.*, No. 11-cv-831-JM (JMA), 2011 WL 4344301, at *5 (S.D. Cal. Sept. 15, 2011) (internal citation omitted). "Responding parties are best situated to evaluate the procedures, methodologies, and technologies as to their own electronically stored information." *Ashcraft v. Experian Info. Sols., Inc.*, No. 2:16-cv-02978-JAD-NJK, 2018 WL 6171772, at *2 n.2 (D. Nev. Nov. 26, 2018).

Cress claims that Nexo could have resolved RFPs 280, 284, and 293, and 294, and "significantly narrowed" issues relating to RFPs 275, 281, 282, 285, and 291, by producing "email metadata and drive links" for all 14 Court-ordered custodians. To be clear, these vague terms are euphemisms for comprehensive logs of **every** email and Google drive link contained in a custodian's inbox, without regard to the relevance of the email or drive link. Nexo has already produced responsive emails in this matter. For two custodians, Nexo inadvertently produced logs listing all emails in an inbox, including non-responsive ones, and now Cress is claiming those logs are responsive and must be produced for all individual custodians, despite the fact that Nexo has already produced all responsive documents from those custodians. Tellingly, Cress has not produced a log of every email he has ever sent, which would include reams of non-responsive and privileged communications with his own attorneys. Under Cress's logic, however, such a log would be necessary for Nexo to confirm whether all responsive documents have been produced and not deleted. Cress is not entitled to a list of every email that all of Nexo's custodians have ever sent.

### 4. "Enhanced" and "Expanded Metadata" for Google Drive Documents (RFP 295)

Finally, Plaintiff has identified certain Google Drive documents and demanded "expanded metadata" regarding the documents. This is not a document request, and it is not proportionate to the needs of the case. Plaintiff are not even demanding "metadata," as that term is ordinarily understood, but instead a forensic reconstruction of all Google Drive artifacts associated with a given document, including "access logs, tracked changes, version histories, notes, and comments" that are allegedly contained in the Google Drive system, not the document itself. Nexo produced documents in native format as they exist in its review platform after a standard export from Google Drive. Plaintiff cannot obtain the equivalent of a forensic examination of Google Drive through a Rule 34 document request.

---

[2] These requests are designed to burden Nexo and invade the privilege, not to generate usable discovery. Nexo provided some hit count spreadsheets to Cress when negotiating the 100+ agreed search terms applied to Nexo's custodians. Nexo is not sure what "deduplication mapping" is or why Cress would need to see duplicates of produced documents. "Search-location inventories" is equally vague. Finally, producing documents describing every stage of the document production process necessarily implicates attorney work product and internal Baker McKenzie communications. Cress has not produced documents explaining his own document collection methodology.