EXHIBIT D



**Baker & McKenzie LLP**

10250 Constellation Blvd.
Suite 1850
Los Angeles, CA 90067

Tel: +1 310 299 8535
Fax: +1 310 201 4721
www.bakermckenzie.com

**VIA ELECTRONIC MAIL**

March 11, 2026

James Taylor-Copeland
james@taylorcopelandlaw.com
Max Ambrose
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101

**Re:    *Cress v. Nexo Capital, Inc.*, Case No. 3:23-cv-00882-TSH (N.D. Cal.) – March 10, 2026 Meet and Confer Letter regarding 30(b)(6) Designations**

Counsel:

We write in response to your March 10, 2026 letter regarding Nexo Capital, Inc.'s Rule 30(b)(6) designations and objections.

As an initial matter, we agree with the time limitations set forth in your email, but note that you have not requested any additional time with Edward Tonkov. Please confirm the agreement to the following time limits or reallocate your proposed time: Dinca (3 additional hours, total 10 hours), Hristov (1 additional hour, total 8 hours), and Trenchev (3 additional hours, total 10 hours).

As for the substance of your letter, your arguments regarding the objectionable Topics are addressed below, but it is clear that Plaintiff wants to go well beyond the facts of the case and get into the mechanics (i.e., work product) of Nexo's efforts to produce documents or respond to discovery, which explicitly invades the work product privilege.

**I. Topic 4(17): Plaintiff's OTC Transactions**

It appears you have misread our designations. Nexo did not make a "blanket refusal" to designate a witness. Mr. Dinca is designated on this topic, as is reflected in Nexo's designations. As we understand the topic, Mr. Dinca will be able to cover this issue, subject to our objections and any privilege issues. I do not believe we need a meet and confer to narrow this point.

Mr. Dinca will testify, consistent with Rule 30(b)(6), regarding his knowledge of OTC digital asset purchases, pricing inputs, and execution processes applicable to Plaintiff's transactions. That designation fully satisfies Nexo's obligations under the Rules.



At the same time, Nexo properly objects to Topic 4(17) as drafted to the extent it seeks testimony regarding undefined or amorphous "mechanics," or invites testimony concerning legal conclusions, disputed factual premises, or privileged material. The topic, as framed, collapses multiple disputed allegations into a single notice and presupposes misconduct that Nexo squarely disputes. Rule 30(b)(6) does not require a responding party to adopt an adversary's narrative or to prepare a witness to testify to assumed facts.

Plaintiff's suggestion that Nexo's objections are improper because they "go to the heart of the case" misses the point. Relevance does not override privilege, nor does it cure vagueness. Nor does Rule 30(b)(6) permit Plaintiff to force testimony accepting allegations of "undisclosed markups," "hidden profits," or improper principal trading simply by embedding those characterizations into a deposition topic. Nexo does not accept Plaintiff's factual premises, and its corporate witness will testify consistent with Nexo's understanding of the facts—not Plaintiff's advocacy.

## II. Topics 8(40)–8(47): ESI Methodology and Production Processes

Plaintiff's letter again overstates the law and ignores the distinction between factual discovery and privileged attorney work product. Nexo has objected to these topics because, as drafted, they are expressly aimed at probing counsel-directed discovery strategy, legal judgment, and post-litigation decision-making. Contrary to your position, the objectionable requests are not directed at facts, but instead are directed at the mechanics of document production, which is clearly attorney work product.

The cases you cite are inapposite.[1] Those cases deal with depositions that occur prior to agreements on ESI protocols and production of documents. As you know, we spent many months negotiating with you, and seeking court intervention when needed, regarding the number of custodians, the applicable date ranges, and the over 100 search terms applied to the extracted data. *See, e.g.*, e-mail thread between counsel dated 6/18/2025 (reaching agreement on custodians and terms). There is no reason to have a corporate representative testify to agreements between counsel, or testify to work performed by counsel.

We have already agreed to provide a witness on data retention policies (Topic 8(33)); document preservation (Topic 8(34) and (35); alleged deletion or loss of documents (Topic 8(36)); the collection and search of documents and ESI from custodians (Topic 8(37)); the data sources and

---

[1] *See Hassid v. Alex & Ani, LLC*, No. 2:25-cv-00679-FMO-JC, 2026 U.S. Dist. LEXIS 22555 (C.D. Cal. Jan. 30, 2026) (noting that a 30(b)(6) deponent had to educate itself from sources available to it, including past employees, not that those sources were obligated to be discussed during the deposition); *Alutiiq Int'l Sols., LLC v. Lyon,* No. 2:11-cv-01104-GMN-PAL, 2012 U.S. Dist. LEXIS 71558 (D. Nev. May 22, 2012) (addressing *counsel* for defendant's inability to address questions raised *by the court* related to discovery protocols); *Baranco v. Ford Motor Co.*, No. 17-cv-03580-EMC, 2018 U.S. Dist. LEXIS 60978, at *2 (N.D. Cal. Apr. 10, 2018) (addressing *counsel's* failure to disclose search terms and custodians; here, search terms and hit reports were provided in addition to court ordered custodians).



systems at Nexo containing documents (Topic 8(38)); and the data sources and systems actually searched for responsive documents (Topic 8(39)). In other words, Nexo agreed to produce a witness (Trenchev) on the "***factual information***" underlying Nexo's document collection procedures.

Topics 8(40) through (47) go well beyond facts and get into the ***mechanics*** of document production, attorney-client communications, and work product. Topics 8(40) and (41) ask about the "methods and tools" used to produce responsive documents, including "the role of counsel or vendors" and any limitations. Your letter asks for the "search terms used, date ranges applied, and platforms included." You have much of this information as part of discussions with counsel, and can ask about facts encompassed within Topics 8(33) through (39). But Nexo does not have an obligation to produce a corporate representative to discuss the "methods and tools" our firm used to produce documents.

Similarly, Topic 8(45) asks about alleged "missing attachments, exhibits, or linked files." As noted, this request is hopelessly vague as none of the allegedly missing documents are identified with particularity, so Nexo could not even begin to prepare a witness. If you have questions about allegedly missing documents, you should raise those with counsel, not during a 30(b)(6) deposition.

Topic 8(47) clearly seeks work product information as it asks about compliance with court orders. To be clear, Nexo has complied with all Court orders, but this topic, seeking counsel-directed litigation strategy and legal analysis, is out of bounds.

Finally, it appears even you agree that Topics 8(42), (43), and (44) are objectionable. Again (42) seeks information regarding the mechanics of counsel's document collection procedures. Topic (43) actually seeks a witness on "deduplication, filtering, and other culling methods," which were performed by our firm. And (44) seeks the mental impressions and opinions of counsel's determination of whether a document was produced, withheld, or deemed non-responsive. These Topics are not proper for a 30(b)(6) witness.

While we appreciate your proposed compromise, as explained above, Nexo will not produce a witness on Topics 8(40), (41), (45), or (47).

### III. Topic 8(49): Interrogatory Responses

Nexo has designated a witness to testify regarding the factual bases for its interrogatory responses to the extent those facts are not addressed elsewhere. This is as far as the law allows. Plaintiff's demand for testimony concerning the internal preparation, review, impressions and approval of interrogatory responses is transparently aimed at invading attorney work product. *See United States Sec. & Exch. Comm'n v. Volkswagen Aktiengesellschaft*, No. 19CV01391CRBAGT, 2023 WL 1793870, at \*2 (N.D. Cal. Feb. 7, 2023) (citing *Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 279 n.1 (D. Neb. 1989) ("It is important to distinguish



between facts learned by a lawyer ... and the lawyer's mental impressions of the facts. The facts are discoverable if relevant.... Mental impressions of the lawyer regarding the facts enjoy nearly absolute immunity....")).

Courts consistently reject attempts to use Rule 30(b)(6) to depose a party about the drafting of discovery responses and objections. *In Smithkline Beecham Corp. v. Apotex Corp.*, 2000 U.S. Dist. LEXIS 667, 2000 WL 116082, *9 (N.D. Ill. 2000) ("As Defendants are aware, answering requests for production and interrogatories customarily is performed with the assistance of counsel. Thus, the proposed area of inquiry improperly trespasses into areas of work product and attorney-client privilege."); *Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 661 (D. Or. 2015) (topics… involv[ing] legal issues that require the assistance of an attorney, the interrogatory is the preferred device").

Notably, you have not complained about the substance or completeness of the interrogatory responses. And, as you note, Nexo fully complied with Rule 33 by furnishing all information available to respond and verifying those responses. Somehow, you want to bootstrap Nexo's obligations under Rule 33 into an obligation to provide more information than required under the interrogatories in response to a 30(b)(6) notice.[2]

Like above, this Topic seeks to discover the mechanics of Nexo's interrogatory response—i.e., attorney work product—and not the underlying facts in dispute in this case. You implicitly acknowledge this by withdrawing subparts (d) and (e), but subparts (b) and (c) suffer from the same problems. Plaintiff's proposed "compromise" does not cure the defect and is therefore rejected.

In conclusion, Nexo has agreed to provide a corporate representative to testify regarding the vast majority of Plaintiffs' 30b6 topics. As explained above, Nexo objected only to those handful of topics that clearly invaded the privilege. The parties should focus on preparing for these depositions and not burden the Court with another letter brief taking overly aggressive positions on clearly objectionable and privileged topics.

Regards,

*/s/* Ian S. Shelton

---

[2] Your reference to *Kilroy v. L.A. Unified Sch. Dist. Bd. of Educ.*, No. CV 16-09068-DMG (JDE), 2018 U.S. Dist. LEXIS 237344, at *15 (C.D. Cal. May 29, 2018) is unpersuasive. Kilroy notes that attorney-client privilege does not protect underlying facts addressed in interrogatories. This is consistent with Nexo designating a witness on the underlying facts related to the interrogatories.