EXHIBIT A

CONFIDENTIAL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOHN CRESS,

        Plaintiff,

   v.                  No. 3:23-CV-00882-TSH

NEXO CAPITAL, INC.,

        Defendant.

C O N F I D E N T I A L

VIDEO DEPOSITION OF JOHN CRESS

FRIDAY, APRIL 10, 2026

SAN FRANCISCO, CALIFORNIA

Reported by:  Marilynn Hoover, RPR

               California CSR No. 8841

Page 1

CONFIDENTIAL

MR. TAYLOR-COPELAND:  Objection.  Calls for speculation.

THE WITNESS:  Yeah, I don't want to speculate.  I don't want to guess.

Q.   BY MR. RAWLINSON:  So you can't testify that you've had any dealings with Nexo Services LLC?

A.   I -- I believe I have.

Q.   What did you do?

A.   I'm still untangling -- We're still untangling that right now.

Q.   So you don't know?

A.   We're learning right now.  We're in the middle of litigation.

Q.   Understand.  We're asking as of today.  You may find out something different tomorrow.

Sitting here today, did you have any dealings with Nexo Services LLC?

A.   I don't recall.

Q.   Okay.  Did you have any dealings with Nexo Inc.?

A.   I don't recall.

Q.   You mentioned Nexo Financial LLC.  Did you have any dealings with that entity?

A.   I don't recall.

Q.   Okay.  Have you ever spoken to Antoni

Page 345

CONFIDENTIAL

Trenchev?

A.   I received an email from him, but I've never spoken to him on the phone.

Q.   The email you received, did that have to do with signing the cryptocurrency purchase agreement?

A.   Um-hum.  Yes.

Q.   Beyond that email, have you ever had any dealings or contact with Antoni Trenchev?

A.   No, not directly.

Q.   Have you had any dealings or contact with Kosta Kantchev?

A.   No, not directly.

Q.   Okay.  Never received an email, communication, anything else, from Kosta Kantchev?

A.   Yeah, not -- not directly.  Right.

Q.   Look at paragraph 205, please.

You say in here that you could not have discovered facts giving rise to this RICO claim until at least August 31, 2025; that you were genuinely ignorant of the facts before that date.

A.   Where does it say -- Oh, yeah.  Um-hum.

Q.   What didn't you know prior to August 31, 2025?

MR. TAYLOR-COPELAND:  Objection.  Vague.

THE WITNESS:  Well, after Nexo and their

Page 346

CONFIDENTIAL

lawyers stonewalled us until that date, we didn't have the information until -- we had to go through that in a very short time frame to find what was -- what was -- what was in there, because we were -- we were deprived of the information.

Q.    BY MR. RAWLINSON:    What did you learn after that day?

A.    Enough to bring these allegations.

Q.    What did you learn?

A.    That's a lot of information.

MR. TAYLOR-COPELAND:    And I'm also going to object and instruct you not to answer based on communications you've had with your attorneys.

THE WITNESS:    Right.

MR. TAYLOR-COPELAND:    But you can otherwise answer.

Q.    BY MR. RAWLINSON:    Look at paragraph 215, please.

A.    215.  Paragraph 215.  Oh, okay.

Q.    It's under the heading "the predicate acts." Do you see that?

A.    Yeah.

Q.    Okay.  And 215 says:  "The predicate acts are a systematic scheme to fraudulently charge and conceal substantial fees."

Page 347