EXHIBIT C

Ian S. Shelton (SBN 264863)
BAKER & MCKENZIE LLP
ian.shelton@bakermckenzie.com
10250 Constellation Boulevard, Suite 1850
Los Angeles, CA 90067
Phone: (310) 299-8535
Fax: (310) 201-4721

Matthew C. Rawlinson (admitted *pro hac vice*)
BAKER & MCKENZIE LLP
matthew.rawlinson@bakermckenzie.com
800 Capitol, Suite 2100
Houston, Texas 77002
Phone: (713) 427-5000
Fax: (713) 427-5067

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN CRESS,<br><br>      Plaintiff,<br><br>   vs.<br><br>NEXO CAPITAL, INC.<br><br>      Defendant. | CASE NO. 3:23-cv-00882-TSH<br><br>**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION OF NEXO CAPITAL, INC.** |

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant Nexo Capital, Inc. ("Defendant" or "Nexo"), by and through its attorneys, hereby serves its amended objections and responses to Plaintiff's Notice of 30(b)(6) Deposition, dated January 26, 2026, as set forth below. Nexo is willing to meet and confer with Plaintiff concerning these objections.

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
30(b)(6) DEPOSITION NOTICE**

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1. "Plaintiff" or "Cress" means Plaintiff John Cress.

No objection.

2. "Complaint" means the Second Amended Complaint (ECF No. 88), filed by the Plaintiff in this action on October 30, 2025.

No objection.

3. The terms "You," "Your," "Defendant," or "Nexo" means Defendant Nexo Capital Inc., and its subsidiaries, affiliates, divisions, successors or assignees, and their respective directors, employees, consultants, representatives and agents.

Nexo objects to this definition because it is overly broad, vague, and seeks to expand the scope of discovery far beyond what is relevant or proportional to the needs of the case under Rule 26(b)(1). By defining "You," "Your," "Defendant," or "Nexo" to include not only Nexo Capital Inc. but also an undefined and open-ended set of "subsidiaries, affiliates, divisions, successors or assignees," as well as "their respective directors, employees, consultants, representatives and agents," the definition improperly attempts to sweep in individuals and entities with no connection to the claims or defenses and with no demonstrated relevance to Plaintiff's allegations. Nexo will understand these terms to refer to the Defendant Nexo Capital Inc.

4. "Exchange" means any website, platform, or service that allows users to buy or trade digital assets, such as NEXO. For the avoidance of doubt, EXCHANGE includes both centralized and decentralized exchanges.

Nexo objects to this definition to the extent that it includes any exchange where it was not a party to the transaction at issue.

5. "Liquidation Relief Program" or "LRP" includes any program, manual, policy, or practice described in marketing materials, the VIP Brochure, or internal materials as providing partial or full relief from liquidation, collateral swaps, or any other mitigation of customer liquidation risk; it includes all internal names and synonyms used in Nexo communications.

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

2

Nexo objects to this definition because it is overly broad, vague, and improperly seeks to expand the scope of discovery far beyond what is relevant or proportional to the needs of the case under Rule 26(b)(1). The definition purports to sweep into "Liquidation Relief Program" or "LRP" any "program, manual, policy, or practice" described not only in marketing materials or the VIP Brochure but also in any "internal materials" that in any way relate to partial or full liquidation relief, collateral swaps, or "any other" mitigation of customer liquidation risk, and further attempts to include "all internal names and synonyms used in Nexo communications." This open-ended construction is vague and ambiguous, provides no clarity as to which documents or practices Plaintiff contends qualify, and improperly attempts to recast numerous unrelated operational features, tools, and internal discussions as part of a single "program" regardless of whether they were ever designed, marketed, or understood to constitute a unified or formalized offering. The definition also assumes facts not in evidence, including that Nexo maintained a program matching Plaintiff's broad characterization or that any internal terminology referenced the same concept. To the extent the definition seeks to encompass internal materials reflecting risk-management assessments, liquidation-engine logic, operational tools, or internal deliberations about customer communications, it intrudes upon attorney-client privilege and work-product-protected analyses. The definition is further improper because it imposes obligations on the Defendant to identify and produce materials under an artificially and retroactively expansive label crafted by Plaintiff, rather than the actual terminology and program structures used by Nexo. Finally, the definition is disproportionate and unduly burdensome because it would require Nexo to search for and interpret any internal discussion touching broadly on liquidation mitigation, collateral adjustments, or risk features—regardless of relevance—across multiple years, systems, and departments. Subject to and without waiving these objections, Nexo construes "Liquidation Relief Program" or "LRP" to mean only the specific program described in the VIP Brochure.

6. The "Oracle" means the proprietary automated system, algorithm, or third-party data feed aggregators used by Nexo to determine asset pricing, monitor LTV, and trigger liquidations.

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

No objection.

7. "OTC Desk" means Nexo's over-the-counter trading desk (including any internal trading desk, market making desk, or external entity acting as counterparty on behalf of Nexo) and includes the managers, traders, operations and settlement personnel, and any aliases or alternative departmental names (for example, "Over-the-Counter Desk," "OTC Trading," or "Institutional Desk").

No objection.

8. The "SEC" means the United States Securities and Exchange Commission.

No objection.

9. The term "Communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

Nexo objects to this definition because it is overly broad, vague, and improperly expands the scope of discovery beyond what is relevant or proportional to the needs of the case under Rule 26(b)(1). By defining "Communications" to include any "transmittal of information (in the form of facts, ideas, inquiries, or otherwise)," the definition sweeps in virtually every conceivable interaction or exchange of information, regardless of form, medium, context, or relevance—including informal conversations, internal brainstorming, ephemeral discussions, automated system notifications, and communications that have no connection to the claims or defenses. The definition is vague and ambiguous because it does not identify which forms of communication are intended to be covered—such as written, oral, electronic, encrypted, system-generated, or metadata-based communications—and therefore imposes an unreasonable and unbounded obligation on Nexo to locate and produce materials that may not even constitute discoverable "documents" or "communications" under the Federal Rules. The definition also assumes facts not in evidence, including the existence and relevance of broad categories of informal or non-documented exchanges. Further, to the extent the definition purports to include internal privileged communications or counsel-directed inquiries, it impermissibly seeks to encompass attorney-client

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

4

communications and work-product-protected materials. Finally, the breadth of the definition is disproportionate and unduly burdensome because it would require Nexo to interpret and collect an unreasonably expansive universe of information, far exceeding any appropriately tailored discovery request. Subject to and without waiving these objections, Nexo construes "Communications" to mean non-privileged written or recorded communications reasonably related to the claims and defenses in this action.

10. "Person" means any natural person, public or private corporation, whether or not organized for profit, governmental entity, partnership, association, cooperative, joint venture, sole proprietorship or other legal entity. With respect to a business entity, the term "person" includes any natural person acting formally or informally as a director, trustee, officer, agent, attorney or other representative.

Nexo objects to this definition because it is overly broad, vague, and seeks to expand the scope of discovery far beyond what is relevant or proportional to the needs of the case under Rule 26(b)(1). By defining "Person" to include not only natural persons and legal entities but also any natural person "acting formally or informally" as a director, trustee, officer, agent, attorney, or other representative of any business entity, the definition attempts to sweep in an indeterminate and potentially limitless range of individuals and entities, including persons whose connection to Nexo Capital Inc. is attenuated or nonexistent and whose activities have no bearing on the claims or defenses. The definition is vague and ambiguous because it does not specify what constitutes acting "informally" as a representative, leaving Nexo to guess at the scope of its discovery obligations and potentially requiring it to identify or collect information regarding persons who have never been authorized to act on its behalf. The definition further assumes facts not in evidence, including that such informal representatives exist or that their actions are relevant to Plaintiff's allegations. Additionally, to the extent the definition is intended to encompass attorneys or agents acting in privileged capacities, it improperly implicates attorney-client communications and work-product-protected materials. The breadth of the definition is disproportionate and unduly

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

burdensome because it would require Nexo to search for and produce information related to a wide array of individuals or entities unconnected to the conduct at issue, far exceeding the permissible scope of discovery. Subject to and without waiving these objections, Nexo construes "Person" to mean natural persons or legal entities directly relevant to the claims and defenses in this action.

14. [*sic*] The relevant time period is 2017 to the present unless otherwise specified.

Nexo objects to this request because Nexo did not start operations until 2018. Nexo further objects to this request because it includes events that post-date the filing of the complaint in February 2023, events that occurred in foreign countries, events after Nexo withdrew from the U.S. market, and events with no relevance to the subject matter of this lawsuit.

## RESPONSES TO 30(B)(6) TOPICS

**TOPIC NO. 1(1)**: The structure, benefits, and operation of the "VIP Relationship Program" referenced in the Complaint, including: (a) the drafting, content, and approval of the VIP Brochure sent to Plaintiff on or about March 17, 2021; (b) the specific benefits promised to VIP clients, including "Liquidation Relief," "24/7 support," and "dedicated relationship managers"; and (c) the training, supervision, and authority of Relationship Managers, including Hristiyan Hristov, regarding Communications with VIP clients.

**Objections:** This Topic violates the requirement that corporate deposition matters "must describe with reasonable particularity the matters for examination" in that the request encompasses the entire structure, benefits, and operation of a multicomponent program. Furthermore, the request is vague and ambiguous in that terms such as "benefits promised," "operation," "authority," and "supervision" lack sufficient clarity to enable Defendant to determine what specific knowledge the deponent must be prepared to testify about.

**Response:** Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic.

**TOPIC NO. 1(2)**:  The existence, terms, and mechanics of the "Liquidation Relief Program" advertised to

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
30(b)(6) DEPOSITION NOTICE**

6

Plaintiff, including: (a) how the program was intended to function; (b) internal criteria for offering "liquidation relief" or collateral swaps to customers; and (c) why Plaintiff was not offered protection from liquidation under this program.

**Objections:** This request is not stated with reasonable particularity. The Topic impermissibly lumps multiple broad areas together—existence of the program, all "terms," all "mechanics," all "internal criteria," and individualized determinations regarding Plaintiff— without specifying the particular aspects relevant to the claims and defenses. The Topic demands testimony about broad, program-level internal policies and all "mechanics" of the program, regardless of whether those aspects relate to Plaintiff's transactions, communications, or alleged damages. The portion of the Topic requesting "why Plaintiff was not offered protection" improperly demands subjective intent of individual employees, mental impressions, decision-making rationale, and potential litigation-related information. To the extent the Topic seeks the reasoning or state of mind of any individual employee regarding Plaintiff, that information is not necessarily "known or reasonably available to the organization." Furthermore, phrases such as "mechanics," "internal criteria," and "intended function" are undefined and susceptible to multiple interpretations, making it impossible to determine what specific preparation is required.

**Response:** Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic.

**TOPIC NO. 1(3)** Nexo's representations in the VIP Brochure regarding the Liquidation Relief Program, including:

a. The factual basis for the statement in the VIP Relationship Program brochure that the Liquidation Relief Program could be used "in the event of a market crash to recover your liquidated assets;"

b. Nexo's knowledge at the time the brochure was drafted and sent to Plaintiff about whether the Liquidation Relief Program would allow him to recover his liquidated assets; and

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

7

c. Nexo's intent in advertising the Liquidation Relief Program and whether the terminology used in its advertising was designed to induce customers to maintain higher LTV ratios by creating a false sense of security.

**Objections:** The Topic demands testimony regarding all factual bases for statements made in marketing materials, all knowledge "at the time" across multiple departments, and subjective intent behind advertising language making it overbroad and unduly burdensome. Preparing a witness on all marketing, product, compliance, and legal considerations that may have existed at the time the brochure was drafted would impose a burden disproportionate to the needs of the case. Further, subparts (b) and (c) ask for corporate intent, subjective motivations, knowledge at a specific point in time, and purpose of particular language in advertising. A Rule 30(b)(6) deposition is not the proper vehicle to probe state-of-mind, psychological rationale, or subjective intent—especially where such matters are intertwined with privileged legal communications. Further, determining "Nexo's knowledge" or "intent" at a historical moment would improperly require speculation or legal conclusions. The Topic seeks testimony not tied to Plaintiff's individual circumstances, any specific communications to Plaintiff, or the specific alleged liquidation event. Instead, it requests broad, program-wide historical marketing rationale far beyond the scope of the operative claims and defenses. The Topic requires Nexo to reconstruct all historical knowledge of unnamed employees, all internal decision-making regarding brochure language, intent and mental state of individuals involved in drafting, and subjective reasoning for marketing terminology. Such information is not necessarily "known or reasonably available" to the organization, particularly where decisions involved multiple departments or individuals who may no longer be employed. Additionally, terms such as "factual basis," "knowledge," "intent," "false sense of security," "designed to induce, are undefined and susceptible to numerous interpretations, making it impossible to identify the exact testimony requested or prepare a designee. Finally, this Topic is objectionable because it assumes the truth of disputed facts that have not been established in this litigation, including (but not limited to) that the Liquidation Relief Program promised recovery of liquidated assets, that Nexo "knew"

the program would not allow Plaintiff to recover assets, and that Nexo intended to "create a false sense of security" to induce customers to maintain higher LTV ratios. FRCP 30(b)(6) does not require a corporation to prepare a witness to testify based on an adversary's unproven factual assertions or to adopt a narrative that presupposes wrongdoing. A Rule 30(b)(6) deposition cannot compel a corporation to speculate, guess, reconstruct hypothetical knowledge or mental states, or testify to assumed facts not supported by evidence To the extent the Topic asks the corporation to explain or justify allegations that are not established facts, it is improper.

**Response:** Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic.

**REQUEST NO. 1(4)**: Nexo's representations in the VIP Brochure regarding responsiveness and access, including:

    a. The factual basis for the statements that VIP customers would receive a "response from the support team in   hours, 24/7", a "dedicated relationship manager," that would reply to their emails "in a matter of hours, no more than 24h," and "direct phone number availability;"

    b. Nexo's knowledge regarding the actual workloads of its Relationship Managers (including Hristov) and its support staffing levels, including awareness of its ability or inability to respond to customers within two hours, or no more than 24 hours; and

    c. Nexo's intent in making these representations regarding responsiveness and access.

**Objections:** Nexo objects to this Request in that subparts (b) and (c) expressly seek Nexo's "knowledge" of internal workloads and capacities at a particular point in time; and Nexo's "intent" behind specific marketing language; whether Nexo sought to induce customer behavior. Corporate "intent," purpose, and subjective motivations are not appropriate subjects for a 30(b)(6) witness. Producing a designee on these topics would require speculation and potential disclosure of privileged internal reasoning. Furthermore, the Topic presupposes the truth of disputed allegations, including that: Nexo lacked sufficient staffing to meet the response-time commitments; Nexo knew

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

it could not meet those response times; Nexo intended to create a misleading impression of responsiveness. Rule 30(b)(6) does not permit requiring a corporation to adopt an adversary's unproven narrative or testify to hypothetical facts. Additionally, the Topic seeks reconstruction of historical staffing levels and workloads, individualized performance metrics for Relationship Managers (including Hristov), historical capacity assessments, subjective assessments of the support team's ability to meet certain timelines. Much of this information is neither centrally tracked nor necessarily available to the organization in the form requested. Finally, terms such as "factual basis," "actual workloads," "ability or inability," "intent," and "responsiveness" are undefined and subject to multiple interpretations, making it unclear what testimony is being sought.

**Response:** Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic.

**REQUEST NO. 1(5)**: Nexo's policies, practices, and representations regarding whether digital assets posted as collateral for loans continue to earn interest, including the factual basis for the representation made to Plaintiff on March 23, 2021, that he would "be earning 5% annually on the Bitcoin which you used as collateral.

**Objections:** Defendant objects to this Topic because it is overly broad, vague, and not described with reasonable particularity as required by Rule 30(b)(6). The Topic improperly combines multiple distinct issues—company-wide policies, historical practices, marketing representations, individualized customer communications, and the "factual basis" for a single statement allegedly made to Plaintiff on March 23, 2021—into a single sweeping category that would require preparation on every aspect of Nexo's collateral, interest-earning, and lending operations. To the extent the Topic seeks testimony regarding Nexo's supposed "policies" or "practices," it is vague and ambiguous, leaving unclear which written policies, operational practices, program features, personnel, timeframes, or product variations are at issue. The Topic also demands information that is not relevant or proportional to the needs of the case under Rule 26(b)(1), particularly insofar as it seeks broad program-level testimony untethered to any specific claim or defense. Finally, the Topic

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

10

requires information that may not be "known or reasonably available" to the organization, including reconstruction of the context and subjective state of mind surrounding an isolated communication from March 23, 2021.

**Response:** Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic.

**REQUEST NO. 1(6)**: Nexo's representations regarding interest on collateral, including:

    a. The factual basis for the statement made by Hristov to Plaintiff on or about March 23, 2021, that: "You will be earning 5% annually on the Bitcoin which you used as collateral;"

    b. Nexo's knowledge that under its own systems and Terms, assets moved to the Credit Line Wallet ceased earning interest, and whether Relationship Managers were aware of this fact; and

    c. Nexo's intent in making this representation.

**Objections:** Defendant objects to this Topic because it is overly broad, vague, and not described with reasonable particularity as required by Rule 30(b)(6). The Topic improperly combines multiple distinct subject areas—including company-wide representations about interest on collateral, the factual basis for a single communication attributed to Hristov on or about March 23, 2021, Nexo's supposed "knowledge" regarding the operation of its systems and Terms of Use, the awareness of individual Relationship Managers, and Nexo's alleged intent in making such statements—into one undifferentiated request. The Topic also demands testimony that would invade attorney-client privilege and work-product protections by calling for disclosure of internal reasoning, legal review, and drafting deliberations concerning customer-facing statements about the Credit Line Wallet and interest features. It further assumes facts not in evidence, including that the statement at issue was made as characterized by Plaintiff, that Nexo "knew" assets moved to the Credit Line Wallet ceased earning interest in the manner alleged, and that Nexo or its employees intended to mislead Plaintiff; a corporate representative cannot be compelled to adopt Plaintiff's disputed factual premises or legal theories. In addition, the request seeks corporate intent, subjective motivations, and historical mental

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

impressions, which are not proper subjects for Rule 30(b)(6) testimony. The Topic is also vague and ambiguous as to what "representations," "knowledge," "awareness," or "intent" are encompassed, and as to the relevant time period. Moreover, much of the information requested—particularly regarding the specific awareness or state of mind of Relationship Managers—may not be "known or reasonably available" to the organization, as required by Rule 30(b)(6). Finally, the breadth of the Topic renders it disproportionate to the needs of the case under Rule 26(b)(1), as it seeks wide-ranging operational, legal, and marketing information far beyond any discrete factual issues relevant to Plaintiff's claims.

**Response:** Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic.

**REQUEST NO. 2(7)**: Nexo's representations regarding its fees, including:

a. The factual basis for the following representations:

i. Nexo's March 2020 blog post: "No fees: Banks also tend to charge all sorts of fees for their services, whereas Nexo adheres to a #ZeroFees policy. There are no additional costs associated with our services."

ii. Nexo's June 2020 blog post: "No minimum contribution requirements and transactions at #ZeroFees."

iii. Nexo's February 2021 blog post: "Under our #ZeroFees policy you can make unlimited free-of-charge fiat withdrawals, crypto and fiat transfers into your Nexo Wallet, and credit line withdrawals. Nexo does not charge any credit line, origination, forex, and exchange fees."

iv. Nexo's March 2021 customer account page: "No hidden fees."

v. Nexo's Whitepaper: ""Whereas other providers charge membership, application and/or funding fees on top of the interest rates, Nexo has no fees whatsoever, apart from a very competitive annual interest rate."; "No Hidden Fees"; no "Additional Fees"; and no "Exchange Fees"

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

12

vi. March 2021 Ask Me Anything with Trenchev: "There is no concept of hidden fees at Nexo. We pioneered #ZeroFees and we are proud to be transparent about all charges we make . . . There is no hidden fee like, you know, percentage wise. If we're going to implement one we're going to do an announcement well ahead of time so that people don't see some random transactions in their transaction history which they're without an explanation."

b. The fees charged by Nexo at these times.

c. Nexo's intent in making these statements and omitting any reference to fees from its public advertising and terms of service.

d. Nexo's statements regarding fees disclosed in its response to Plaintiff's Interrogatory Nos. 13 and 14.

**Objections:** Defendant objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic improperly aggregates a wide array of distinct subjects—including numerous public statements across multiple years, drawn from blog posts, whitepapers, marketing materials, customer webpages, and live interviews; the "factual basis" for each of those statements; the fees actually charged during multiple time periods; Nexo's alleged intent or motives in making or omitting references to fees; and additional statements referenced in Nexo's interrogatory responses—into a single sweeping category that lacks any delimiting parameters as to time, product lines, document iterations, or the specific business units involved. The Topic also seeks to probe internal knowledge, mental impressions, marketing strategy, and corporate intent regarding representations about fees, all of which are improper subjects for Rule 30(b)(6) testimony and would require disclosure of attorney-client privileged communications and work-product-protected materials, including legal review of public statements, regulatory evaluations, and internal assessments of fee structures. Further, the Topic assumes facts not in evidence, including that the referenced statements were inaccurate, that Nexo knowingly omitted material information, and that

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

13

the company intended to mislead customers; a corporate representative cannot be compelled to adopt Plaintiff's disputed factual premises or legal theories. The Topic is also vague and ambiguous insofar as it requests testimony on "fees" without identifying which types of fees, which services, which jurisdictions, or which time periods are at issue, despite the fact that the cited materials span at least a year and encompass multiple Nexo products. Much of the information sought—particularly regarding historical fee practices, the subjective awareness of individuals, and intent behind public communications—may not be "known or reasonably available" to the organization as Rule 30(b)(6) requires. Finally, the breadth of the Topic renders it disproportionate to the needs of the case under Rule 26(b)(1), as it seeks wide-ranging marketing, legal, operational, and fee-related information far beyond any discrete factual issue relevant to Plaintiff's claims.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**REQUEST NO. 2(8)**: Nexo's representations regarding OTC Rates, including:

> a. The factual basis for the promise that VIP clients would receive "OTC services with some of the best rates no the market" and "institutional rates for amounts larger than $100,000;"
>
> b. The methodology used to price Plaintiff's BTC, ETH, and NEXO purchases, including Nexo's knowledge of the variance between the prices charged to Plaintiff and the prevailing spot market rates (or weighted average pricing) at the time of execution
>
> c. Nexo's intent in making these representations and its intent to markup assets sold to customers.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, and insufficiently specific to satisfy Rule 30(b)(6)'s requirement that matters for examination be described with reasonable particularity. The Topic improperly consolidates distinct and far-reaching issues—including the factual basis for general marketing statements about OTC rates, detailed pricing methodology for Plaintiff's individual BTC, ETH, and NEXO purchases, Nexo's historical knowledge of any price variances relative to market rates, and Nexo's supposed intent to "markup"

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

14

assets or induce customers—into a single vague request. It further demands testimony about corporate intent, mental impressions, and subjective motivations, which are not proper subjects for a Rule 30(b)(6) deposition. The Topic assumes facts not in evidence, including that Nexo promised "the best rates," charged non-market rates, or knowingly marked up assets, and a corporate representative cannot be compelled to adopt Plaintiff's disputed factual characterizations or legal theories. Additionally, the request is vague and ambiguous in its use of terms such as "best rates," "institutional rates," "variance," and "markup," none of which are defined or anchored to specific market metrics, pricing dates, exchanges, or calculation methodologies. Much of the information sought—particularly regarding Plaintiff's individual transactions and the subjective awareness of pricing personnel at given moments—may not be "known or reasonably available" to the organization as contemplated by Rule 30(b)(6). Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks expansive and multi-departmental testimony untethered to any narrow factual issue.

**Response:** Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic.

**REQUEST NO. 2(9)**: Nexo's "#ZeroFees" marketing policy and its application to Plaintiff's account, including: (a)  the existence of any internal policies to conceal fees, spreads, or markups from customers; and (b) the factual basis for the allegations in the Complaint that Nexo charged spreads/markups on OTC trades while advertising "no hidden fees" and "no exchange fees."

**Objection:** Nexo objects to this Topic because it is overly broad, vague, unduly burdensome, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic improperly conflates broad company-wide marketing themes, the origins and application of the "#ZeroFees" messaging, alleged internal policies concerning fee disclosure, and the factual basis for Plaintiff's allegations regarding supposed spreads or markups on OTC trades, into one sweeping subject without defining any relevant timeframe, departments, systems, or specific versions of public materials. The Topic also improperly seeks testimony concerning internal

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
30(b)(6) DEPOSITION NOTICE**

15

deliberations, strategic considerations, legal review, regulatory guidance, and mental impressions regarding Nexo's marketing and pricing practices, all of which are protected by the attorney-client privilege and work-product doctrine. The request further assumes facts not in evidence, including the existence of any "internal policies to conceal fees," the imposition of hidden spreads or markups, and the inaccuracy of Nexo's public statements, and a corporate representative cannot be compelled to adopt Plaintiff's disputed characterizations or legal theories. The Topic is vague and ambiguous insofar as it does not identify which "fees," "spreads," "markups," or pricing mechanisms are at issue, or how they relate to Plaintiff's account or to specific OTC transactions. Moreover, the information sought—particularly regarding alleged concealed pricing practices and corporate intent in marketing—may not be "known or reasonably available" to the organization within the meaning of Rule 30(b)(6). Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1) because it seeks expansive, multi-year, multi-departmental testimony unrelated to any discrete factual issue.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC NO. 2(10)**: The fees, taxes, commissions, profits, and revenues Nexo took on each of Plaintiff's transactions, including his OTC transactions, forced liquidations, and manual liquidations.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, and insufficiently specific to satisfy Rule 30(b)(6)'s requirement that the matters for examination be described with reasonable particularity. The request improperly demands granular financial and transactional analyses that would require extensive reconstruction of historical pricing, spreads, internal cost structures, and revenue attribution models, many of which may not have been tracked or maintained in the form the Topic presumes, and therefore may not be "known or reasonably available" to the organization as required by Rule 30(b)(6). The Topic further assumes facts not in evidence, including that Nexo took undisclosed fees, taxes, commissions, or profits on Plaintiff's

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

transactions, and improperly seeks a corporate admission adopting Plaintiff's disputed characterizations of those transactions. To the extent the Topic also calls for disclosure of internal methodologies, financial modeling, margin calculations, or revenue analytics, it intrudes upon confidential commercial information and, where intertwined with legal review or strategic considerations, attorney-client privileged and work-product-protected material. The Topic is vague and ambiguous in its use of terms such as "profits," "revenues," and "commissions," which can have multiple meanings depending on the context and internal accounting treatment, and it provides no guidance as to the level of detail sought. Finally, the breadth of the Topic renders it disproportionate to the needs of the case under Rule 26(b)(1), as it would require Nexo to undertake a burdensome, transaction-by-transaction forensic accounting far beyond any reasonably necessary factual inquiry.

**Response:** Notwithstanding the foregoing objections, Hristiyan Hristov will be designated on this topic regarding Plaintiffs' OTC transactions. Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic regarding liquidations.

**TOPIC NO. 3(11)**: Nexo's representations regarding the regulatory status of the NEXO Token, including the statement made to Plaintiff (and other customers) that "the NEXO token is registered with the SEC as a security."

      a. The factual basis for Nexo's statement that "the NEXO Token is registered with the SEC as a security."

      b. Nexo's knowledge of the distinction between a Form D Notice of Exempt Offering and SEC registration.

      c. Nexo's intent in representing that "the NEXO Token is registered with the SEC as a security," including the decision to instruct or allow employees to use this language in Communications with US customers.

**Objections:** Nexo objects to this Topic because it is overly broad, vague, unduly burdensome, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic improperly collapses multiple distinct and wide-ranging issues—including all

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

17

of Nexo's historical representations regarding the regulatory status of the NEXO Token; the factual basis for a specific statement allegedly made to Plaintiff and others that the token "is registered with the SEC as a security"; Nexo's knowledge of the differences between SEC registration and a Form D notice of exempt offering; and Nexo's alleged intent in making such representations or in instructing employees to use particular language with U.S. customers—into a single sweeping request with no limitations. The Topic also seeks testimony that would necessarily intrude upon attorney-client privileged communications and work-product-protected materials, including internal legal reviews, analyses of the NEXO Token's regulatory classification, communications with counsel, and compliance assessments regarding U.S. securities laws. The Topic further assumes facts not in evidence, including that Nexo made the statement as characterized by Plaintiff, that the statement was inaccurate, or that Nexo intended to mislead customers, and a corporate representative cannot be required to adopt Plaintiff's disputed factual assertions or legal theories. Additionally, the Topic improperly seeks corporate intent, subjective motivations, internal reasoning, and legal conclusions, none of which are proper subjects for Rule 30(b)(6) testimony. The request is also vague and ambiguous in its use of terms such as "regulatory status," "knowledge," "intent," and "decision to instruct or allow employees," providing no clarity as to the specific timeframes, jurisdictions, communications channels, or policy iterations at issue. Moreover, certain information sought—particularly regarding the state of mind or knowledge of individual employees—may not be "known or reasonably available" to the organization within the meaning of Rule 30(b)(6). Finally, the breadth and scope of the Topic render it disproportionate to the needs of the case under Rule 26(b)(1), as it demands expansive testimony spanning legal, compliance, marketing, and customer-support functions far beyond any discrete factual issue relevant to Plaintiff's claims.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC NO. 3(12)**: The factual basis for Nexo's 2018 Form D filings and the "End Date" of that offering indicated in those filings

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

18

**Objections:** Nexo objects to this Topic because it is overly broad, vague, and not described with reasonable particularity as required by Rule 30(b)(6). The Topic seeks "the factual basis for Nexo's 2018 Form D filings and the 'End Date' of that offering," but it does not identify which portions of the Form D notices are at issue, which factual assertions Plaintiff believes require explanation, or what specific information related to the "End Date" Plaintiff intends to explore. The Topic also improperly seeks to compel testimony that would invade attorney-client privilege and work-product protections, as Nexo's Form D filings necessarily involved legal review, assessment of applicable exemptions, and communications with counsel concerning the structure, duration, and reporting requirements of the offering. The request further assumes facts not in evidence, including the implication that the "End Date" reported in the Form D filings was inaccurate or misleading, and a 30(b)(6) witness cannot be required to adopt Plaintiff's disputed characterizations or legal theories. Moreover, the Topic calls for legal conclusions regarding the nature, scope, and termination of a securities offering, which are not appropriate subjects for corporate representative testimony. The Topic is vague in its failure to define the relevant time period, the aspects of the offering at issue, or the specific factual information Plaintiff seeks, and it is overbroad in that it appears to require testimony spanning securities law compliance, corporate finance, and regulatory reporting, far beyond any discrete factual issue in dispute. Additionally, much of the information sought— particularly the subjective considerations underlying the designation of an "End Date"—may not be "known or reasonably available" to the organization in the form the Topic presumes. Finally, the sweeping and undifferentiated nature of the Topic renders it disproportionate to the needs of the case under Rule 26(b)(1).

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC NO. 3(13)**: Nexo's requirement for customers to hold 10% of their portfolio in NEXO Tokens to receive "Platinum" interest rates.

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

19

**Objections:** Nexo objects to this Topic because it assumes facts not in evidence, including that Nexo imposed such a requirement in the manner Plaintiff characterizes or that the program operated as Plaintiff alleges, and a corporate representative cannot be compelled to adopt Plaintiff's disputed characterizations or legal theories. In addition, the request is vague and ambiguous in its reference to "portfolio" and "Platinum interest rates," terms that have evolved over time and may differ across product offerings, jurisdictions, and program iterations. Certain information sought—particularly any subjective considerations underlying the design or adjustment of loyalty tiers—is not an appropriate subject for a Rule 30(b)(6) deposition and may not be "known or reasonably available" to the organization. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1) insofar as it seeks sweeping testimony regarding the design and rationale of an entire rewards structure rather than any discrete factual information relevant to Plaintiff's claims.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC NO. 3(14)**: Nexo's Communications with the SEC regarding the NEXO Token or Nexo's "SEC compliant" marketing language.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning all of Nexo's communications with the SEC regarding either the NEXO Token or Nexo's "SEC-compliant" marketing language, without identifying the specific communications at issue, the particular regulatory inquiries or correspondence Plaintiff is referencing, or whether the request concerns formal submissions, informal outreach, or privileged regulatory-compliance consultations. The Topic also improperly seeks disclosure of attorney-client communications and work-product-protected material because Nexo's interactions with the SEC—including discussions concerning the regulatory status of the NEXO Token, marketing language, or compliance positions—necessarily involve legal advice and counsel-directed strategy. The request further assumes facts not in evidence, including that Nexo

engaged in communications with the SEC concerning the precise marketing language Plaintiff identifies or that the SEC took a particular interest in the statements alleged; a corporate representative cannot be compelled to adopt Plaintiff's disputed factual premises or legal theories. Moreover, the Topic calls for testimony on legal conclusions, regulatory interpretations, and Nexo's internal reasoning or intent regarding whether certain language was considered "SEC-compliant," all of which are improper subjects for a Rule 30(b)(6) deposition. The request is vague and ambiguous insofar as it fails to define which SEC offices or personnel are implicated, or whether the Topic encompasses privileged drafts, attorney-directed regulatory analyses, or internal discussions about potential regulatory risks. Much of the information sought—particularly the content or purpose of communications with securities regulators—may not be "known or reasonably available" to the organization in a non-privileged form. Finally, the breadth of the Topic renders it disproportionate to the needs of the case under Rule 26(b)(1) because it calls for expansive, multi-year, multi-channel regulatory testimony far beyond any discrete factual issue relevant to Plaintiff's claims. Subject to and without waiving these objections, Nexo remains willing to meet and confer in good faith regarding a properly narrowed and non-privileged topic concerning any publicly available or non-privileged SEC communications, if any, relating to the NEXO Token during the relevant period.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC NO. 3(15)**: Nexo's sales of the NEXO Token on Exchanges.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6), even with the stated temporal limitation beginning in 2017. Much of the information requested—particularly transaction-level activity across multiple exchanges over a nine-period—may not be "known or reasonably available" to the organization in the comprehensive form the Topic presumes, especially where activity is conducted through third-party platforms. Finally, the Topic is

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
30(b)(6) DEPOSITION NOTICE**

21

disproportionate to the needs of the case under Rule 26(b)(1), as it demands expansive, multi-year, multi-exchange testimony unrelated to any discrete factual issue relevant to Plaintiff's claims.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC NO. 3(16)**: Nexo's sales of the NEXO Token to U.S. Persons, including: (a) Nexo's policies, practices, and procedures for collecting information about accredited investors from 2018-2022; (b) Nexo's sales of NEXO Tokens to non-accredited investors; (c) Nexo's sale of NEXO Tokens to U.S. residents disclosed in Plaintiff's Interrogatory No. 3 to Nexo; (d) Nexo's sale of NEXO Tokens to U.S. residents that were not disclosed in Plaintiff's Interrogatory No. 3 to Nexo; (e) Nexo's referrals of non-accredited U.S. investors to purchase NEXO Tokens on Exchanges such as Uniswap, Huobi, Changelly, HitBTC; (f) the creation of, and information in the spreadsheet NEXO-0139872; (g) how the information in Plaintiff's Interrogatory No. 3 was compiled by Nexo.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required by Rule 30(b)(6). The Topic seeks testimony concerning all "sales of the NEXO Token to U.S. Persons," and then adds multiple subtopics spanning accredited-investor verification procedures, alleged sales to non-accredited investors, disclosures and purported non-disclosures in response to Plaintiff's Interrogatory No. 3, purported referrals of customers to various centralized and decentralized exchanges, the creation and contents of spreadsheet NEXO-0139872, and Nexo's internal process for compiling interrogatory responses. These issues are legally and operationally distinct, lack any articulated limitation to the specific claims and defenses in this case, and improperly require Nexo to prepare a witness on matters far beyond any discrete factual dispute. The Topic also improperly seeks testimony about information disclosed or not disclosed in Nexo's response to Interrogatory No. 3, which itself sought attorney-client privileged and work-product-protected information concerning how Nexo assessed, categorized, or analyzed potential U.S. person exposure in consultation with counsel; a Rule 30(b)(6) witness cannot be compelled to disclose privileged legal

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

22

analysis or internal attorney-directed processes. The request further assumes facts not in evidence, including that Nexo sold NEXO Tokens to U.S. residents or non-accredited investors in the manner alleged, and a corporate representative cannot be required to adopt Plaintiff's disputed factual premises or legal theories. In addition, the Topic is vague and ambiguous in its use of the terms "sales," "referrals," "non-accredited investors," and "U.S. Persons," which have legally significant and context-specific definitions that vary across jurisdictions, platforms, and time periods; the Topic provides no guidance as to which definitions Plaintiff intends to apply. Moreover, sweeping testimony regarding all "U.S. Persons" is itself not relevant or proportional to the needs of this case under Rule 26(b)(1), as Plaintiff asserts individual claims that do not turn on Nexo's alleged conduct toward the entire U.S. market or any broader category of customers. Certain information requested—especially the internal processes for compiling interrogatory answers and historical assessments of investor status—may also not be "known or reasonably available" to the organization in the form Plaintiff presumes. Finally, the Topic, taken as a whole, is disproportionate to the needs of the litigation because it demands multi-year, multi-exchange, multi-jurisdictional testimony that sweeps in privileged legal work and matters unrelated to Plaintiff's specific claims.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC 4(17)**: The mechanics of Plaintiff's digital asset purchases through the Nexo OTC Desk, including: (a) how execution prices were calculated (e.g., spot price vs. markup) for Plaintiff's trades; (b) the "Portfolio Booster" transaction on or about April 14, 2021, specifically the allegation that Nexo took a $102,125 undisclosed profit/fee; (c) the internal email referenced in Complaint ¶64 detailing "Profit for the OTC Desk" and "Hedge" profits; (d) the discrepancy between the execution prices provided to Plaintiff and the time-weighted average prices (TWAP) on the market; and (e) whether Nexo acted as a principal (selling from its own inventory) or agent in these transactions.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, and not described with reasonable particularity as required under Rule 30(b)(6). The Topic improperly

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
30(b)(6) DEPOSITION NOTICE**

aggregates numerous distinct and complicated issues—including the mechanics of all of Plaintiff's OTC Desk purchases, the pricing methodology for each transaction, the calculation of any alleged "markup," the specifics of an April 14, 2021 "Portfolio Booster" transaction, alleged undisclosed profits or fees, an internal email cited in paragraph 64 of the Complaint concerning "Profit for the OTC Desk" and "Hedge" profits, purported discrepancies between Plaintiff's execution prices and unspecified time-weighted average prices, and whether Nexo acted as principal or agent on each transaction—into a single sweeping request without defining parameters such as which pricing models, data sources, time windows, or internal systems Plaintiff seeks to have addressed. The Topic further assumes facts not in evidence, including that Nexo applied undisclosed markups, that the "Portfolio Booster" transaction generated a $102,125 hidden profit, or that Nexo acted as a principal in a manner inconsistent with disclosures, and a 30(b)(6) witness cannot be compelled to adopt Plaintiff's disputed factual characterizations or legal theories. The request also risks intruding on attorney-client privilege and work-product protections by implicitly requiring testimony regarding internal deliberations, compliance review of the OTC Desk, legal guidance on trade execution structures, and counsel-directed assessments of principal versus agent treatment. The Topic is vague and ambiguous in its references to "spot price," "markup," "TWAP," and "discrepancies," without identifying which benchmarks, exchanges, time intervals, or calculation methodologies Plaintiff contends apply, making it impossible to determine the scope of required preparation. Moreover, reconstructing the detailed pricing mechanics, hedge activity, or profit attribution for historical OTC transactions may not be "known or reasonably available" to the organization in the granular form the Topic presumes. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1) insofar as it demands forensic, transaction-by-transaction financial analysis far exceeding any targeted factual inquiry relevant to Plaintiff's claims. Subject to and without waiving these objections, Nexo remains willing to meet and confer regarding a narrowly framed topic limited to non-privileged, factual information about the general pricing mechanics applicable to Plaintiff's OTC transactions during the relevant period.

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

**Response:** Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic.

**TOPIC 4(18)**: The policies and technical systems governing the liquidation of customer collateral, including: (a) the calculation of the Loan-to-Value (LTV) ratio and the 83.33% liquidation threshold; (b) the existence, calculation, and application of a "liquidation tax" or liquidation fee and the policy regarding disclosing this fee to customers (referencing Complaint ¶92: "WE SHOULD NEVER... MENTION THERE IS A LIQUIDATION TAX"); (c) the specific liquidations of Plaintiff's assets in May and June 2021, including where those assets were sold, the time of sale, and the sale prices obtained by Nexo versus the prices credited to Plaintiff's loan balance; and (d) the logic/algorithm determining the order of assets sold (e.g., USDC/BTC vs. NEXO Token).

**Objection:** Nexo objects to this Topic because it is overly broad, unduly burdensome, and not described with reasonable particularity as required by Rule 30(b)(6). The Topic improperly sweeps together numerous legally and operationally distinct subjects—including all policies and technical systems governing collateral liquidations; the methodology for calculating LTV ratios and the 83.33% liquidation threshold; the alleged existence, calculation, and disclosure of a "liquidation tax" or liquidation fee; the interpretation of a single internal communication excerpted in paragraph 92 of the Complaint; the detailed mechanics of Plaintiff's individual liquidations in May and June 2021; the timing, location, and pricing of asset sales; the comparison between prices Nexo obtained versus prices credited to Plaintiff; and the logic governing asset-sale sequencing—into a single broad topic with no bounds, leaving Nexo unable to determine what information must be prepared. The Topic also assumes facts not in evidence, including that Nexo imposed a "liquidation tax," that any such fee was concealed, that Plaintiff's assets were liquidated improperly or at disadvantageous prices, or that Nexo used an undisclosed algorithmic priority, and a 30(b)(6) witness cannot be compelled to adopt Plaintiff's disputed factual characterizations or legal theories. Moreover, the request intrudes upon attorney-client privilege and work-product protections because the design and review of liquidation processes, thresholds, fee structures, and customer disclosures

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

25

necessarily involve legal review, regulatory considerations, and counsel-directed assessments. The Topic is further vague and ambiguous in its references to "liquidation tax," "where those assets were sold," "sale prices obtained," and "logic/algorithm," which could refer to different systems, timeframes, liquidity sources, or trading venues, and it does not specify which precise data, systems, or engineering features Plaintiff intends to examine. Reconstruction of detailed, transaction-by-transaction liquidation mechanics—and any hedge, routing, or inventory management associated with those liquidations—may not be "known or reasonably available" to the organization in the highly granular form the Topic presumes. Finally, the breadth of the Topic renders it disproportionate to the needs of the case under Rule 26(b)(1), as it demands wide-ranging, multi-system technical, financial, operational, and privileged information far beyond any narrowly-framed factual issue.

**Response:** Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic.

**TOPIC NO. 4(19)**: The operation of the Oracle between March 1, 2021 and June 30, 2021, including data sources used for pricing, the frequency of updates, and any latency between a market drop and a liquidation trigger.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, and insufficiently specific to satisfy Rule 30(b)(6)'s requirement that matters for examination be described with reasonable particularity. Although the Topic identifies a date range, it nonetheless seeks sweeping testimony concerning "the operation of the Oracle" across multiple systems and functions, including the data sources used for pricing, the frequency of pricing updates, and any latency between market movements and liquidation triggers, without identifying which Oracle components or specific products Plaintiff believes are implicated. The Topic also assumes facts not in evidence, including that there was measurable or relevant "latency" or that any latency caused or contributed to Plaintiff's liquidations, and a corporate representative cannot be compelled to adopt Plaintiff's disputed economic or technical premises. The request risks intruding on attorney-client

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

privilege and work-product protections insofar as the design, configuration, monitoring, and legal review of the Oracle, liquidation triggers, pricing sources, and risk-engine thresholds necessarily involve counsel-directed evaluations, regulatory considerations, and privileged internal analyses. The Topic is further vague and ambiguous in its references to "data sources," "frequency," and "latency," which could refer to a wide range of potential inputs, vendors, aggregated feeds, computational intervals, or market-data normalization processes, leaving Nexo unable to determine what information must be prepared. Moreover, reconstructing the detailed technical operation of a complex, dynamic pricing and risk-management engine over a four-month period may not be "known or reasonably available" to the organization in the precise, system-by-system detail the Topic presumes, particularly where historical technical logs may not have been preserved in that format. Finally, the breadth and technical depth of the Topic renders it disproportionate to the needs of the case under Rule 26(b)(1) because it demands granular engineering, data-science, and market-structure testimony far beyond any targeted factual inquiry.

**Response:** Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic.

**TOPIC NO. 4(20)**: Nexo's drafting, interpretation, and performance of the Cryptocurrency Purchase Agreement entered into with Plaintiff, including: (a) The "Review Period" clause requiring confirmation within ten minutes; (b) The "Free of Liens" clause; (c) Nexo's performance of the specific Purchase Orders submitted by Plaintiff; (d) any fees associated with the Purchase Orders. a. Nexo's technical capability and practice regarding the "ten minute" confirmation window mandated by the Cryptocurrency Purchase Agreement, and the reasons for the delays in executing Plaintiff's purchase orders.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic improperly combines a wide range of distinct issues—including the drafting, meaning, and legal interpretation of the Cryptocurrency Purchase Agreement; the "Review Period"

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

clause requiring confirmation within ten minutes; the "Free of Liens" clause; Nexo's performance of every individual Purchase Order submitted by Plaintiff; and the existence of any fees associated with those orders—into a single undifferentiated subject. It further seeks testimony regarding "technical capability" and internal "reasons for delays" in executing Plaintiff's purchase orders, without identifying the specific transactions, timestamps, systems, or operational processes Plaintiff intends to explore. The Topic also intrudes upon attorney-client privilege and work-product protections because the drafting, interpretation, and legal review of the Purchase Agreement, including requirements relating to confirmation windows and title representations, necessarily involve privileged communications and counsel-directed analyses. The Topic additionally assumes facts not in evidence, including that Nexo failed to comply with the ten-minute confirmation window, that "delays" occurred, or that any fees were associated with Plaintiff's orders beyond those disclosed, and a corporate representative cannot be compelled to adopt Plaintiff's disputed characterizations or legal theories. The request is also vague and ambiguous in its references to "performance," "delays," "technical capability," and "fees," none of which are defined or tied to specific transactions or systems and which may vary depending on network conditions, market dynamics, and operational workflows. Further, the detailed reconstruction of historical execution timing, internal routing logic, blockchain confirmation intervals, and backend processing mechanics may not be "known or reasonably available" to the organization in the detailed transactional granularity the Topic presumes. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks expansive testimony spanning legal drafting, contractual interpretation, engineering systems, operational execution, and individualized transaction-level analyses far beyond any focused factual inquiry relevant to Plaintiff's claims.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC NO. 5(21)**: Nexo Capital Inc.'s status as a licensed finance lender in the State of California during the relevant period from 2020-2022, any efforts taken to obtain such licensure or comply

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

with the California Finance Law (e.g., Cal. Fin. Code § 22000 et seq.) and the California Consumer Financial Protection Law (Cal. Fin. Code § 90000 et seq.), and Nexo's internal analysis regarding whether it lending activities, including providing loans to Plaintiff, constituted "finance lending" requiring a license under California law.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required by Rule 30(b)(6). The Topic improperly combines multiple distinct subjects—including Nexo Capital Inc.'s licensing status in California between 2020 and 2022, any efforts to obtain licensure, any actions taken to comply with the California Finance Law and California Consumer Financial Protection Law, and Nexo's internal analysis of whether its lending activities constituted "finance lending"—into a single, expansive request lacking meaningful limitations. The Topic also squarely intrudes upon attorney-client privileged communications and work-product-protected materials because any analysis of whether lending activity required licensure under California law, any assessment of exposure, any review of statutory obligations, and any decisions or deliberations regarding licensure or compliance necessarily involved legal counsel and cannot be the subject of compelled testimony under Rule 30(b)(6). The request further assumes facts not in evidence, including that Nexo conducted lending activities requiring licensure under California law, that Nexo undertook licensing efforts in the manner Plaintiff suggests, or that Nexo performed internal analyses of the type Plaintiff presumes; a corporate representative cannot be compelled to adopt or confirm Plaintiff's disputed factual premises or legal conclusions. The Topic is also vague and ambiguous in its references to "status," "efforts," "compliance," and "internal analysis," none of which are tied to specific documents, time periods, regulatory communications, or product lines, making it impossible to identify the precise information Plaintiff seeks or to prepare a witness adequately. Additionally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as broad statewide licensing and regulatory-compliance questions concerning all Nexo activities across a multi-year period are not relevant to the individual claims and defenses at issue here. Certain information requested—

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

29

particularly regarding the content of any legal analyses or counsel-directed regulatory reviews—may also not be "known or reasonably available" to the organization in a non-privileged form.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC 5(22)**: Whether Nexo required borrowers to submit loan applications, and whether Plaintiff ever submitted a loan application to Nexo.

**Objections:** Nexo objects that the request is vague and ambiguous in its use of terms such as "required," "loan application," and "borrowers," which may have differing meanings depending on jurisdiction, product type, platform workflow, and regulatory context, and the Topic lacks sufficient specificity for Nexo to determine what information a witness would need to prepare. Additionally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1) because it seeks broad, policy-level testimony unrelated to any narrowly defined factual dispute.

**Response:** Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic.

**TOPIC 5(23)**: Whether Plaintiff ever transacted or did business with Nexo Financial LLC in connection with his loans from Nexo Capital Inc.

**Objections:** Nexo objects to this Topic because it is overly broad, vague, and not described with reasonable particularity as required by Rule 30(b)(6). The request improperly assumes facts not in evidence, including that Nexo Financial LLC played any role in Plaintiff's borrowing activity or that Plaintiff's loans involved multiple affiliated entities in the manner Plaintiff suggests; a corporate representative cannot be compelled to adopt Plaintiff's disputed factual premises or legal theories. The Topic is also vague and ambiguous in its references to "transacted" and "did business," which could encompass account openings, lending activity, collateral transfers, communications, settlement flows, or other operations, without specifying the type of interaction Plaintiff believes occurred or the systems he contends reflect such activity. Further, although determining the factual entity on the face of loan documentation may be straightforward, determining whether Plaintiff

"ever transacted" with an affiliate in a broader operational sense may not be "known or reasonably available" to the organization in the expansive form the Topic presumes.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC 5(24)**: The relationship between Nexo Capital Inc. and Nexo Financial LLC from 2020-2022.

**Objection:** Nexo objects to this Topic as not relevant to the claims and defenses at issue. Nexo will testify to the relationship with Nexo Financial LLC as it relates to Plaintiff but not to the relationship generally. Nexo further objects to this Topic because it is overly broad, vague, and not described with reasonable particularity as required by Rule 30(b)(6). The "relationship" between the two entities is not limited to any particularity.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC 5(25)**: Nexo's communications with California regulators regarding its status as a licensed finance lender, including the California Department of Business Oversight and the California Department of Financial Protection and Innovation.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning "Nexo's communications with California regulators regarding its status as a licensed finance lender," including communications with both the California Department of Business Oversight and the California Department of Financial Protection and Innovation, without narrowing the relevant time period, the specific regulatory inquiries or correspondence at issue, the subject matter of any such communications, or whether Plaintiff seeks testimony on formal submissions, informal outreach, or privileged attorney-directed interactions with these agencies. The Topic squarely intrudes upon attorney-client privilege and work-product protections, because any assessment of licensing obligations or engagement with

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
30(b)(6) DEPOSITION NOTICE**

31

California regulators—including the preparation, review, or evaluation of communications regarding Nexo's licensing status—necessarily involves legal analysis, counsel-directed strategy, and regulatory-compliance advice. The Topic also assumes facts not in evidence, including that Nexo's licensing status was the subject of regulatory communications relevant to Plaintiff's claims or that the company engaged in the communications Plaintiff presumes; a corporate representative cannot be required to adopt Plaintiff's disputed factual premises or legal theories. Moreover, sweeping testimony about all communications with California regulators—regardless of their relevance to Plaintiff—would require extensive review across multiple years and departments and may not be "known or reasonably available" to the organization in the form the Topic presumes. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), because broad inquiries into licensing and statewide regulatory matters concerning all California customers are not relevant to Plaintiff's individualized claims and defenses.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev is designated for this topic.

**TOPIC NO. 5(26)**: Nexo's efforts to determine Plaintiff's intended use of the loan proceeds and whether Nexo acquired a written statement of intended purposes signed by Plaintiff.

**Objections:** Nexo objects to this topic as unrelated to the claims or defenses. Plaintiff makes no allegations regarding Plaintiff's use of loan proceeds or Nexo's lack of diligence thereof.

**Response:** Notwithstanding the foregoing objections, Octavian Dinca is designated for this topic.

**TOPIC NO. 5(27)**: Nexo's use of any California finance lending license in connection with its https://nexo.io website.

**Response:** Antoni Trenchev will be designated on this topic.

**TOPIC NO. 5(28)**: Nexo's representations from 2020-2022 that Nexo Capital Inc. was a licensed finance lender in the State of California.

**Objections:** Nexo objects to this Topic because it is overly broad, vague, and not described with reasonable particularity as required by Rule 30(b)(6). The Topic seeks testimony concerning "Nexo's representations from 2020–2022 that Nexo Capital Inc. was a licensed finance lender in

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
30(b)(6) DEPOSITION NOTICE**

32

the State of California," without identifying the specific statements, documents, communications, marketing materials, or customer interactions Plaintiff contends constituted such representations, or the contexts in which they were allegedly made. To the extent the Topic seeks testimony about the legal accuracy, interpretation, or drafting of any statements regarding licensure, it intrudes directly into attorney-client privileged communications and work-product-protected materials, as any such representations—if made—would necessarily have involved legal review, regulatory analysis, and counsel-directed guidance concerning state licensing requirements. The request is further vague and ambiguous in its use of the phrase "representations," which could encompass a broad and undefined range of marketing content, website language, customer-support communications, or regulatory filings, leaving Nexo unable to determine what information is sought or how to prepare a witness adequately. Moreover, sweeping testimony about all alleged licensing-related statements over a multi-year period is disproportionate to the needs of the case under Rule 26(b)(1), as broad questions concerning public-facing characterizations of licensing status are not relevant to the specific claims and defenses at issue. Certain information Plaintiff appears to seek—particularly any internal legal analysis concerning licensure obligations—is also not "known or reasonably available" to the organization in a non-privileged form.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC NO. 6(29)**: The relationship, shared management, flow of funds, commingling of funds, and shared employees between Nexo Capital Inc. and the Related Persons and entities listed in the Complaint (e.g., Nexo Services, NDS EOOD, Credissimo), specifically regarding the operation of the lending platform, the employment of Hristiyan Hristov, and the operation of the OTC Desk.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic improperly aggregates numerous separate and complex subjects—including the "relationship," "shared management," "flow of funds," "commingling of funds," and "shared

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

employees" among Nexo Capital Inc. and multiple "Related Persons" or affiliated entities referenced in the Complaint, such as Nexo Services, NDS EOOD, and Credissimo—without specifying which timeframes, functions, departments, or business operations Plaintiff intends to cover. The Topic further expands that already expansive scope by seeking testimony specifically about the operation of the lending platform, the employment of Hristiyan Hristov, and the operation of the OTC Desk, each of which involves discrete business units, systems, personnel, and corporate structures, and none of which are defined with reasonable particularity. The request assumes facts not in evidence, including that funds were "commingled," that management or employees were "shared" in the manner Plaintiff asserts, and that the operations of the lending platform or OTC Desk depended on the involvement of other entities, and a corporate representative cannot be compelled to adopt Plaintiff's disputed factual premises or legal theories. To the extent the Topic seeks testimony concerning inter-company relationships, entity-level responsibilities, or corporate structuring decisions, it intrudes upon attorney-client privilege and work-product protections because such matters inherently involve legal review, regulatory compliance analyses, counsel-directed decisions about entity formation, operational allocation, and risk management. The Topic is vague and ambiguous in its use of broad terms such as "relationship," "shared management," "flow of funds," and "operation," without identifying the specific transactions, personnel, or corporate functions at issue, making it impossible for Nexo to determine the scope of preparation required. Moreover, reconstructing alleged inter-entity funds flows, employment arrangements across separate legal entities, or corporate-level operational integration, particularly over a multi-year period, may not be "known or reasonably available" to the organization in the comprehensive form the Topic presumes. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks sweeping, multi-entity, multi-jurisdictional corporate structure and financial-operations testimony that bears no reasonable relationship to the discrete claims and defenses involving Plaintiff's individual account.

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

34

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated for this topic.

**TOPIC NO. 6(30)**: The policies and practices regarding the commingling of customer assets with Nexo's proprietary trading funds or the assets of other Nexo Related Persons and entities as described in paragraph 37 of Plaintiff's Second Amended Complaint.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning "policies and practices regarding the commingling of customer assets with Nexo's proprietary trading funds or the assets of other Nexo-related entities," as referenced in paragraph 37 of Plaintiff's Second Amended Complaint, but it does so without identifying the specific asset types, the systems or wallets at issue" or which alleged "commingling" practices Plaintiff believes occurred. The Topic impermissibly assumes facts not in evidence—namely, that commingling occurred, that such commingling involved proprietary funds or related-entity assets, and that such practices were governed by formal or informal policies—which a corporate representative cannot be compelled to concede or adopt as Nexo's position. The request also seeks testimony that intrudes upon attorney-client privilege and work-product protections, because any internal analyses, legal assessments, or compliance reviews concerning custody architecture, wallet segregation, asset-handling procedures, or inter-entity operational structures necessarily involve privileged counsel-directed advice. The Topic is vague and ambiguous in its use of broad and undefined terms such as "commingling," "customer assets," "proprietary trading funds," and "practices," each of which could refer to different operational scenarios, product offerings, or custody configurations, making it impossible to determine what information is sought or how to prepare a witness adequately. Furthermore, reconstructing alleged commingling practices across multiple entities, systems, and asset types—particularly where Plaintiff's claims relate only to his individual account—may not be "known or reasonably available" to the organization in the expansive form the Topic presumes. Finally, the Topic is disproportionate

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

35

to the needs of the case under Rule 26(b)(1), as broad testimony about multi-entity custodial structures or theoretical commingling practices bears no reasonable relationship to the discrete, individualized claims and defenses at issue.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated for this topic.

**TOPIC NO. 7(31)**: The authorship and circulation of the following documents, including all iterations: (documents (a)-(nnn).

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony regarding the "authorship and circulation" of documents "including all iterations." The Topic is therefore impermissibly open-ended and provides no meaningful guidance as to the scope of the information Plaintiff seeks or the preparation required. It further assumes facts not in evidence, including that the documents had multiple iterations, that they were circulated in a manner relevant to Plaintiff's claims, or that any particular individual or entity was responsible for their authorship, and a corporate representative cannot be compelled to adopt Plaintiff's disputed factual premises or legal theories. To the extent the Topic seeks testimony about the drafting of documents, internal review processes, distribution within or among Nexo entities, or the evolution of the documents over time, it intrudes upon attorney-client privilege and work-product protections because the creation and revision of company materials—especially those relating to legal, operational, or regulatory matters—necessarily involves privileged counsel-directed input, legal strategy, and internal deliberations. The request is also vague and ambiguous in its use of the terms "authorship," "circulation," and "iterations," which could encompass drafts, redlines, internal correspondence, external communications, publication decisions, or distribution through various departments, systems, or personnel, rendering it impossible for Nexo to determine what information is being sought. Moreover, reconstructing the full drafting history, revision process, and circulation pathway of multiple documents—none of

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

36

which are specified—may not be "known or reasonably available" to the organization in the form the Topic presumes. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as Plaintiff's request for testimony about all iterations and circulation histories of unspecified documents is vastly broader than any discrete factual issue relevant to his individual claims.

**Response:** The following individuals are designated to discuss each document:

a. NEXO-0145948 - Dinca

b. NEXO-0140611, NEXO-0142440 - Dinca

c. NEXO-0214393, NEXO-0219069 - Dinca

d. NEXO-0139872 - Privileged clawback (March 9, 2026 letter)

e. NEXO-0137019 - Hristov

f. NEXO-0017589 - Tonkov

g. NEXO-0216477 - Privileged clawback (March 9, 2026 letter)

h. NEXO-0211778 - Trenchev

i. NEXO-0150967 - Trenchev

j. NEXO-0211144 - Trenchev

k. NEXO-0017325 - Hristov

l. NEXO-0136995 - Privileged clawback (March 9, 2026 letter)

m. NEXO-0137255 - Hristov

n. NEXO-0137893 - Hristov

o. NEXO-0137920 - Hristov

p. NEXO-0138007, NEXO-0219321 -Hristov

q. NEXO-0138207 - Hristov

r. NEXO-0138672, NEXO-0139111 - Hristov

s. NEXO-0138743, NEXO-0140906 - Hristov

t. NEXO-0139009 - Dinca

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

37

u. NEXO-0141048, NEXO-0141050, NEXO-0219682 - Hristov

v. NEXO-0141364 - Trenchev

w. NEXO-0142401 -Dinca

x. NEXO-0144183 - Trenchev

y. NEXO-0145425 -Dinca

z. NEXO-0146247 - Dinca

aa. NEXO-0147325 - Trenchev

bb. NEXO-0149277 - Trenchev

cc. NEXO-0149410 - Trenchev

dd. NEXO-0149714 - Trenchev

ee. NEXO-0149792 - Trenchev

ff. NEXO-0158081 - Trenchev

gg. NEXO-0163173 - Trenchev

hh. NEXO-0168656 - Trenchev

ii. NEXO-0172850 - Dinca

jj. NEXO-0183586 - Trenchev

kk. NEXO-0184400 - Trenchev

ll. NEXO-0191899 - Trenchev

mm. NEXO-0198751 - Trenchev

nn. NEXO-0199060 - Trenchev

oo. NEXO-0199737 - Trenchev

pp. NEXO-0201588 - Trenchev

qq. NEXO-0205251 - Trenchev

rr. NEXO-0205396 - Trenchev

ss. NEXO-0209784 - Dinca

tt. NEXO-0211579 - Trenchev

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S
30(b)(6) DEPOSITION NOTICE**

38

uu. NEXO-0213465 - Trenchev

vv. NEXO-0214359 - Trenchev

ww. NEXO-0214701 - Trenchev

xx. NEXO-0214765 - Trenchev

yy. NEXO-0215538 - Trenchev

zz. NEXO-0216078 - Trenchev

aaa. NEXO-0216131 - Trenchev

bbb. NEXO-0217044 - Trenchev

ccc. NEXO-0217096 - Trenchev

ddd. NEXO-0217190 - Trenchev

eee. NEXO-0217236 - Dinca

fff. NEXO-0217316 - Trenchev

ggg. NEXO-0217704 - Trenchev

hhh. NEXO-0219825 - Trenchev

iii. NEXO-0219967 - Trenchev

jjj. NEXO-0221024 - Trenchev

kkk. NEXO-0225417 - Trenchev

lll. NEXO-0225988 - Trenchev

mmm. NEXO-0231222 – Hristov

nnn. NEXO-0231227 - Hristov

**TOPIC NO. 7(32)**: Nexo's use-of-language policies and procedures from 2018 to present.

**Objections:** Nexo objects in that this Topic assumes facts not in evidence, including that Nexo maintained formal "use-of-language" policies in the generalized manner Plaintiff implies, and a corporate representative cannot be compelled to adopt Plaintiff's disputed characterizations or legal theories. Moreover, reconstructing any alleged language policies over an eight-year period—across multiple business units, evolving product offerings, and shifting regulatory environments—may not

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

39

be "known or reasonably available" to the organization in the comprehensive form the Topic presumes. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as a broad inquiry into all language-use practices across nearly a decade is not relevant to the discrete claims and defenses involving Plaintiff's individual account.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC NO. 8(33)**: Nexo's business data retention policies, procedures, and practices.

**Objections:** Nexo t objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required by Rule 30(b)(6). The Topic seeks testimony concerning "Nexo's business data retention policies, procedures, and practices," without identifying which categories of data, which systems (e.g., email, Slack, Google Workspace, backups, databases, devices), which departments, which retention periods, or which changes over time Plaintiff intends to address. As drafted, the Topic improperly sweeps in every conceivable data-governance practice across the entire company, over an undefined period, and without specifying any connection to the claims or defenses in this case. The request also intrudes upon attorney-client privilege and work-product protections insofar as retention policies, preservation practices, and related decisions necessarily involve counsel-directed legal and regulatory analyses, litigation-hold implementation, and internal assessments of compliance requirements. The Topic is further vague and ambiguous because terms such as "business data," "policies," "procedures," and "practices" are undefined, potentially encompassing everything from formal written policies to engineering configurations, vendor settings, retention-tool capabilities, archival systems, and operational workflows, making it impossible to determine what information a witness must prepare to address. Additionally, reconstructing alleged business-wide retention practices across multiple years, systems, and departments may not be "known or reasonably available" to the organization in the comprehensive manner Plaintiff presumes. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as broad inquiries into all

data-retention policies company-wide are not relevant to the discrete claims and defenses concerning Plaintiff's individual account and transactions.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated on this topic.

**TOPIC NO. 8(34)**: Nexo's steps to preserve documents and ESI potentially relevant to this action, including when litigation was first anticipated, when litigation holds were issued or modified, and the custodians, data sources, and categories of information subject to preservation.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required by Rule 30(b)(6). The Topic seeks testimony concerning "Nexo's steps to preserve documents and ESI potentially relevant to this action," including when litigation was first anticipated, when litigation holds were issued or modified, and the custodians, data sources, and categories of information subject to preservation. As drafted, the Topic impermissibly sweeps in every aspect of Nexo's litigation-hold process, preservation strategy, ESI architecture, and internal communications regarding anticipated litigation, without any meaningful limitation. The Topic directly intrudes upon attorney-client privilege and work-product protections because decisions regarding when litigation is anticipated, what preservation actions are required, which custodians and systems should be placed on hold, and how holds are implemented or modified all necessarily involve counsel-directed legal advice, privileged communications, and internal litigation strategy.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated as a witness for this topic.

**TOPIC NO. 8(35)**: The manner in which Nexo implemented and enforced preservation obligations, including instructions provided to custodians, monitoring or follow-up to ensure compliance, and any adjustments to auto-deletion or auto archiving.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required by

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

Rule 30(b)(6). The Topic seeks testimony regarding the "manner in which Nexo implemented and enforced preservation obligations," including instructions provided to custodians, any monitoring or follow-up to ensure compliance, and adjustments to auto-deletion or auto-archiving settings— sweeping in every aspect of Nexo's litigation-hold administration, internal preservation processes, and ESI management across multiple departments and systems without specifying timeframes, custodians, data sources, or what conduct Plaintiff contends is relevant. The Topic directly intrudes upon attorney-client privilege and work-product protections because preservation obligations, custodian instructions, compliance monitoring, and auto-deletion changes are inherently tied to counsel-directed litigation strategy, legal analysis, and privileged communications determining what must be preserved and how. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as Plaintiff's sweeping inquiry into Nexo's preservation and hold-enforcement processes has minimal bearing on the merits of his individual claims and instead targets collateral litigation-administration issues that fall outside the scope of appropriate discovery.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated as a witness for this topic.

**TOPIC NO. 8(36)**: Any deletion, loss, overwriting, or unavailability of potentially responsive documents or ESI, including timing and circumstances.

**Objections:** Defendant objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning "any deletion, loss, overwriting, or unavailability of potentially responsive documents or ESI, including timing and circumstances," which is an extremely broad and open-ended request that encompasses every possible instance of data unavailability across all systems, devices, custodians, and time periods, without limitation, and without specifying which data sources, categories of information, custodians, or alleged events Plaintiff contends occurred. The Topic directly intrudes upon attorney-client privilege and work-product protections because any determinations or analyses regarding data deletion, loss,

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

overwriting, or unavailability—including when such events were identified, how they were assessed, and what remedial or preservation steps were taken—necessarily involve counsel-directed litigation strategy, privileged communications, and internal legal assessments. The Topic also assumes facts not in evidence, including that deletions or losses occurred, that such events were improper, or that they bear relevance to the claims or defenses, and a corporate representative cannot be compelled to adopt Plaintiff's disputed factual premises or insinuations. The request is vague and ambiguous insofar as it fails to define what constitutes "deletion," "loss," or "unavailability," which could refer to routine business-system overwrites, vendor-managed retention settings, inaccessible backups, password-protected data, or technical artifacts unrelated to litigation, making preparation impossible. Further, determining the existence, timing, and "circumstances" surrounding all potential instances of ESI loss across numerous systems may not be "known or reasonably available" to the organization in the sweeping form the Topic presumes. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks wide-ranging, privileged, and speculative testimony about hypothetical data-handling scenarios rather than any discrete, relevant factual issue.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated as a witness for this topic.

**TOPIC NO. 8(37)**: The collection and search of documents and ESI from senior executives and other custodians involved in the matters at issue.

**Objections:** Defendant objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning "the collection and search of documents and ESI from senior executives and other custodians involved in the matters at issue," but it does not identify which executives or custodians are implicated, which systems or data sources are at issue, what types of "collection" or "search" processes Plaintiff seeks to probe, or how this broad inquiry relates to any specific claim or defense. The Topic directly intrudes upon attorney-client privilege

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

43

and work-product protections because the identification of custodians, selection of search terms and data sources, the design of collection strategies, and decisions regarding the scope and timing of ESI searches are core components of counsel-directed litigation strategy and privileged internal communications. Additionally, much of the information Plaintiff seeks—particularly the rationale behind custodian selection, search methodology, and ESI workflow decisions—is not "known or reasonably available" to the organization in a non-privileged form because it reflects legal judgment and litigation strategy. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks broad, collateral discovery into litigation-response processes rather than information relevant to the substantive claims and defenses.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated as a witness for this topic.

**TOPIC NO. 8(38)**: The data sources and systems identified as reasonably likely to contain responsive information, including email systems, messaging platforms (e.g. Slack, Telegram, Signal, WhatsApp), CRM and operational systems, cloud repositories, and company-issued devices.

**Objections:** Defendant objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning "the data sources and systems identified as reasonably likely to contain responsive information," including an expansive list of potential repositories such as email systems, various messaging applications (e.g., Slack, Telegram, Signal, WhatsApp), CRM and operational systems, cloud repositories, and company-issued devices. As drafted, the Topic encompasses every category of electronic data storage used by the company without identifying which systems Plaintiff contends were actually used by any relevant custodians, which sources were searched, which were not, which are alleged to contain responsive information, or how any such sources relate to the claims and defenses in this case. The request directly intrudes upon attorney-client privilege and work-product protections because counsel necessarily determines which data sources are reasonably likely to contain responsive information in the course of directing

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

litigation holds, designing search protocols, and conducting collection efforts. The Topic also assumes facts not in evidence, including that additional, unspecified data sources contain responsive information or that certain systems were improperly excluded, and a corporate representative cannot be compelled to adopt Plaintiff's disputed factual premises or insinuations. The Topic is further vague and ambiguous in its references to "data sources" and "systems," which could include everything from operational databases, third-party platforms, encrypted messaging applications, and enterprise cloud tools to personal devices or archival systems, leaving Nexo unable to discern the scope of preparation required. Additionally, much of the information sought—particularly the rationale for identifying or excluding sources, the design of search methodologies, or the evaluation of custodian-specific systems—is not "known or reasonably available" to the organization in a non-privileged form because such determinations reflect attorney-driven litigation strategy. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks sweeping discovery into the entire architecture of Nexo's information systems rather than targeted, relevant facts concerning Plaintiff's individual claims.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated as a witness for this topic.

**TOPIC NO. 8(39)** The data sources and systems actually searched for responsive documents and ESI, and any sources not searched or only partially searched, including reasons why.

**Objections:** Defendant objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning "the data sources and systems actually searched for responsive documents and ESI, and any sources not searched or only partially searched, including reasons why," which encompasses every aspect of Nexo's litigation-response process, ESI strategy, custodian selection, data-source identification, and internal decision-making concerning the scope of document searches. Such matters inherently involve attorney-client privileged communications and work-product-protected materials, as counsel directs the

identification of custodians, determines which systems are reasonably likely to contain responsive information, designs the search protocol, selects sources for collection, and evaluates which repositories are out of scope or not reasonably accessible. The Topic also assumes facts not in evidence, including that certain sources were not searched or were only partially searched, and a corporate representative cannot be required to adopt Plaintiff's disputed factual premises or insinuations. The request is vague and ambiguous as to which "data sources," "systems," "searches," or "partial searches" Plaintiff intends to explore, and it provides no limiting principle regarding which custodians or timeframes are implicated, making it impossible for Nexo to determine the scope of preparation. Moreover, much of the information sought—particularly counsel's rationale for including or excluding certain systems, the strategic basis for the design of search criteria, and the evaluation of the responsiveness or accessibility of repositories—is not "known or reasonably available" to the organization in any non-privileged form under Rule 30(b)(6). Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks sweeping discovery into litigation-administration processes rather than narrowly focused, relevant facts concerning Plaintiff's individual claims and defenses.

**Response:** Notwithstanding the foregoing objections, Antoni Trenchev will be designated as a witness for this topic.

**TOPIC 8(40)**: The methods and tools used to search for, export, and produce responsive documents and ESI, including search terms, filters, date ranges, custodial versus non-custodial searches, and the role of counsel or vendors.

**Objections**: objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required by Rule 30(b)(6). The Topic seeks testimony concerning "the methods and tools used to search for, export, and produce responsive documents and ESI," including search terms, filters, date ranges, custodial versus non-custodial searches, and the role of counsel or vendors—sweeping in every aspect of Nexo's litigation-response processes, discovery strategy, and ESI workflow. These matters

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

inherently involve attorney-client privileged communications and work-product-protected information, as counsel necessarily directs the design and execution of searches, the selection and application of search terms and filters, determinations regarding scope and date ranges, the allocation between custodial and non-custodial sources, and the coordination with vendors for collection and processing. The Topic also assumes facts not in evidence, including that specific tools or methods were inadequate or that additional, undisclosed systems or search parameters existed, and a corporate representative cannot be compelled to adopt Plaintiff's disputed premises or insinuations. The request is vague and ambiguous in its references to "methods," "tools," "searches," "filters," and "roles," each of which could encompass numerous privileged decisions, technical processes, or counsel-directed steps, and the Topic provides no limiting principle as to which systems, custodians, or time periods are implicated. Much of the information sought—particularly the rationale for selecting particular search terms, filtering methods, or processing workflows—is not "known or reasonably available" to the organization in a non-privileged form because such determinations reflect legal strategy and attorney mental impressions. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks sweeping discovery into the mechanics of Nexo's litigation-response infrastructure rather than facts relevant to Plaintiff's substantive claims and defenses.

**Response:** Nexo will not produce a witness for this topic.

**TOPIC 8(41)**: Any limitations placed on searches, including by time period, platform, file type, or language.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning "any limitations placed on searches, including by time period, platform, file type, or language," which encompasses every aspect of Nexo's discovery strategy, ESI protocol, and counsel-directed decisions regarding scope, boundaries, and search methodology. Determining which limitations were applied, why they were applied, and how they

relate to particular custodians or systems necessarily intrudes upon attorney-client privilege and work-product protections, as these decisions are inherent components of legal analysis, litigation planning, and counsel-driven determinations about proportionality, burden, and responsiveness. The Topic also assumes facts not in evidence, including that limitations were imposed improperly or in a manner relevant to Plaintiff's claims, and a corporate representative cannot be compelled to adopt Plaintiff's disputed factual premises or insinuations. The request is vague and ambiguous because it does not identify which searches, which custodians, which data sources, which file types, or which languages Plaintiff believes are at issue, and it fails to articulate any connection to a specific claim or defense, leaving Nexo unable to determine the scope of preparation required. Moreover, much of the information sought—particularly counsel's rationale for time-period limitations, platform inclusion or exclusion, or file-type filtering—is not "known or reasonably available" to the organization in a non-privileged form, as such determinations reflect attorney mental impressions and strategic decisions. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as a sweeping inquiry into all possible limitations applied across the entire discovery process reaches far beyond any properly focused factual issue and instead seeks collateral litigation-administration details not relevant to the merits.

**Response:** Nexo will not produce a witness for this topic.

**TOPIC 8(42)**: The procedures and tools used to collect documents and ESI from custodians and systems, including whether collections were full, targeted, or incremental.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning "the procedures and tools used to collect documents and ESI from custodians and systems, including whether collections were full, targeted, or incremental," which sweeps in every aspect of Nexo's discovery collection strategy, internal ESI protocols, forensic processes, and counsel-directed decisions regarding the scope and method of collection. These issues inherently involve attorney-client privileged communications and

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

48

work-product-protected information, as the determination of whether to conduct full, targeted, or incremental collections; the selection and configuration of tools; the timing and sequencing of collections; and the identification of custodial and non-custodial sources are all directed by counsel as part of litigation strategy. The Topic also assumes facts not in evidence, including that certain forms of collection were used or not used, or that such decisions bear relevance to Plaintiff's claims, and a corporate representative cannot be compelled to adopt Plaintiff's disputed premises or insinuations. The request is further vague and ambiguous because it does not identify which custodians, which systems, which tools, or which time periods are implicated, leaving Nexo without the ability to determine what information is being sought or how to adequately prepare a witness. Moreover, much of the information Plaintiff seeks—particularly the rationale behind selecting specific tools, workflows, or collection methodologies—is not "known or reasonably available" to the organization in a non-privileged form because such decisions reflect legal judgment and attorney mental impressions. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks to explore collateral litigation-administration details unrelated to any substantive claim or defense.

**Response:** Nexo will not produce a witness for this topic.

**TOPIC 8(43)**: The processing steps applied to collected data prior to production, including deduplication, filtering, and other culling methods.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning "the processing steps applied to collected data prior to production, including deduplication, filtering, and other culling methods," which necessarily encompasses every aspect of Nexo's discovery processing workflow, including technical decisions made by counsel and vendors regarding how collected data is normalized, indexed, culled, prioritized, or prepared for review. These matters intrude directly upon attorney-client privilege and work-product protections, as deduplication, filtering, date-range culling, threading, and other

processing decisions reflect counsel's litigation strategy, mental impressions, and judgments about proportionality, responsiveness, and relevance. The Topic also assumes facts not in evidence, including that certain processing steps were improperly applied or that processing decisions are relevant to the claims or defenses, and a corporate representative cannot be compelled to adopt Plaintiff's disputed premises or insinuations. The request is vague and ambiguous in that it does not identify which datasets, custodians, systems, or productions Plaintiff intends to cover, nor does it specify which "processing steps" or "culling methods" are at issue, leaving Nexo unable to determine the scope of preparation required. Much of the information sought—particularly the rationale behind selecting particular deduplication rules, threading logic, filter sets, or culling methodologies—is not "known or reasonably available" to the organization in a non-privileged form, because such decisions are made by counsel and reflect protected attorney mental impressions. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks collateral discovery into the mechanics of Nexo's litigation-response processes rather than focused, relevant facts related to Plaintiff's substantive claims.

**Response:** Nexo will not produce a witness for this topic.

**TOPIC 8(44):** The criteria used to determine whether documents and ESI were produced, withheld, or deemed non-responsive.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning "the criteria used to determine whether documents and ESI were produced, withheld, or deemed non-responsive," which directly targets counsel-directed discovery strategy, legal judgments regarding responsiveness, privilege determinations, and internal decision-making about the scope of production. Such determinations necessarily involve attorney-client privileged communications and work-product-protected material, including counsel's mental impressions, legal analysis, and strategic assessments concerning proportionality, burden, relevance, and privilege. The Topic also assumes facts not in

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

evidence, including that documents were improperly withheld or deemed non-responsive, and a corporate representative cannot be required to adopt Plaintiff's disputed factual premises or insinuations. The request is vague and ambiguous because it does not identify which productions, custodians, document sets, privilege grounds, or responsiveness standards Plaintiff intends to examine, and the terms "criteria," "withheld," and "non-responsive" are themselves broad and context-dependent, rendering it impossible for Nexo to determine the scope of preparation required. Moreover, much of the information sought—particularly the rationale underlying responsiveness determinations and privilege calls—is not "known or reasonably available" to the organization in a non-privileged form, as it reflects legal strategy and attorney mental impressions. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks sweeping, collateral discovery into the mechanics of Nexo's litigation-response and review processes rather than focused, relevant facts concerning Plaintiff's individual claims and defenses.

**Response:** Nexo will not produce a witness for this topic.

**TOPIC 8(45)**: The handling of documents referenced in produced materials but not themselves produced, including missing attachments, exhibits, or linked files.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning "the handling of documents referenced in produced materials but not themselves produced, including missing attachments, exhibits, or linked files," which encompasses every stage of Nexo's document-collection, processing, and production workflows, and would require the company to investigate and reconstruct document-by-document chains of custody, metadata histories, and technical processing results across multiple custodians and systems. These areas inherently implicate attorney-client privilege and work-product protections, as determinations about whether attachments exist, whether linked files are responsive, how technical issues are addressed, and how productions are quality-controlled all involve counsel-directed discovery strategy and legal analysis. The Topic also assumes facts not in evidence,

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

51

including that attachments or linked files are "missing," were improperly withheld, or were handled inconsistently with discovery obligations; a corporate representative cannot be required to adopt Plaintiff's disputed factual premises or insinuations. The request is vague and ambiguous because it does not identify which produced documents contain such references, which attachments or links Plaintiff contends were not produced, or what specific "handling" issues are at issue, making it impossible for Nexo to understand the scope of the information sought or to prepare a witness adequately. Additionally, much of the information sought—particularly the internal rationale for determining responsiveness, privilege, or technical limitations—is not "known or reasonably available" to the organization in a non-privileged form, as it reflects attorney mental impressions and vendor-assisted processing decisions. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it attempts to convert collateral, technical production issues into broad deposition topics untethered to any discrete factual dispute relevant to Plaintiff's claims.

**Response:** Nexo will not produce a witness for this topic.

**TOPIC 8(46)**: The preservation and production of metadata and native files, including whether metadata was altered during collection or processing and the reasons for any such alteration.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required under Rule 30(b)(6). The Topic seeks testimony concerning "the preservation and production of metadata and native files, including whether metadata was altered during collection or processing and the reasons for any such alteration," which sweeps in every aspect of Nexo's ESI infrastructure, preservation processes, collection methods, processing workflows, and production mechanics, without identifying any specific documents, custodians, systems, or productions Plaintiff believes are at issue. The Topic directly intrudes upon attorney-client privilege and work-product-protected information because determinations regarding which metadata fields to preserve, how native files are handled, how processing tools normalize or transform metadata, and whether any changes occur during ingestion, deduplication, or export are all counsel-directed decisions reflecting litigation

strategy, legal analysis, and technical vendor collaboration. The request is vague and ambiguous because it does not specify which metadata fields, which native files, which processing steps, which productions, or which alleged instances of alteration Plaintiff intends to examine, making it impossible for Nexo to determine the scope of preparation required. Additionally, much of the information sought—particularly the rationale for how metadata is handled, preserved, or normalized during standard processing—may not be "known or reasonably available" to the organization in a non-privileged form, as such processes rely on vendor-specific tools and counsel-directed configurations. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks sweeping, collateral discovery into technical aspects of litigation-response workflows rather than focused, relevant facts concerning Plaintiff's substantive claims.

**Response:** Nexo will not produce a witness for this topic.

**TOPIC 8(47)**: Nexo's steps to comply with the Court's discovery orders, including supplemental searches or productions and any remedial actions taken in response to identified gaps or deficiencies.

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, and fails to describe the matters for examination with reasonable particularity as required by Rule 30(b)(6). The Topic seeks testimony concerning Nexo's compliance with the Court's discovery orders, including supplemental searches, productions, and alleged "remedial actions," without identifying any specific order, ruling, deficiency, or purported gap at issue. As drafted, the Topic impermissibly sweeps in every aspect of Nexo's discovery-compliance efforts and litigation conduct over the course of this action.

The Topic further intrudes directly into attorney-client privileged communications and attorney work product. Decisions regarding compliance with discovery orders, whether supplemental searches or productions are required, how any alleged deficiencies are assessed, and what responsive actions are taken are quintessential counsel-directed litigation strategy and legal analysis. A Rule 30(b)(6) deposition may not be used to probe counsel's mental impressions, legal judgments, or

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

53

discovery strategy, nor to obtain testimony concerning how a party and its counsel interpreted or implemented court orders.

The Topic also assumes facts not in evidence, including that "gaps or deficiencies" existed or that remedial measures were necessary, and improperly seeks testimony that would require Nexo to adopt Plaintiff's disputed characterizations of the discovery record. To the extent Plaintiff seeks information regarding discovery disputes or compliance, such matters are properly addressed through motion practice, not corporate representative testimony.

Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks collateral discovery into litigation-administration issues rather than facts relevant to the merits of Plaintiff's claims or Nexo's defenses.

**Response:** Nexo will not produce a witness for this topic.

**TOPIC 8(48)**. The authenticity, creation, and interpretation of the trade confirmations, transaction history logs, and internal emails (including those quoted in the Complaint) concerning Plaintiff's account.

**Objections:** Nexo objects to this topic as overbroad and unduly burdensome because it seeks testimony concerning an undefined and unlimited universe of documents, including "trade confirmations," "transaction history logs," and "internal emails," without reasonable temporal, subject-matter, or custodial limitations. Nexo further objects that the topic is vague and ambiguous, including with respect to the terms "authenticity," "creation," "interpretation," "transaction history logs," and "internal emails," which are not defined and are susceptible to multiple meanings. Nexo objects to this topic to the extent it seeks testimony regarding legal conclusions, including opinions as to the authenticity, legal effect, or interpretation of documents, or otherwise calls for legal analysis or expert opinion. Nexo also objects to this topic to the extent it calls for speculation or testimony beyond the personal knowledge of any witness, including testimony regarding the intent, understanding, or interpretation of documents by third parties.

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

54

Nexo further objects to this topic to the extent it seeks testimony regarding the interpretation, characterization, or meaning of documents that speak for themselves. Nexo objects to the extent the topic seeks information protected by the attorney–client privilege, the work-product doctrine, or any other applicable privilege or immunity, including internal legal communications or materials prepared in anticipation of litigation. Nexo also objects to this topic to the extent it seeks disclosure of confidential, proprietary, or sensitive business information, including internal systems, processes, or controls, absent appropriate protections.

Nexo further objects that this topic is disproportionate to the needs of the case given its breadth, the burden involved, and the availability of the requested information from other, more appropriate sources. Nexo objects to the extent the topic assumes facts not established, including that the internal emails quoted in the Complaint are authentic, complete, or accurately reflect the full context in which they were created. Nexo also objects to this topic to the extent it seeks testimony that is duplicative of document discovery that has already been produced or made available for inspection.

**Response:** Notwithstanding the foregoing objections, Octavian Dinca will be designated on this topic.

**TOPIC 8(49)**: Nexo's responses and objections to Plaintiff's Interrogatories, including but not limited to:

    a. the factual bases for each response and objection;

    b. the identity of all persons who provided information, input, or approval for each response;

    c. the documents, data sources, information systems, and custodians relied upon in preparing each response;

    d. the steps taken by Nexo to investigate, verify, and ensure the completeness and accuracy of its responses;

    e. any limitations, assumptions, qualifications, or reservations underlying the responses;

**Objections:** Nexo objects to this Topic because it is overly broad, unduly burdensome, vague, and fails to describe the matters for examination with reasonable particularity as required by

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

Rule 30(b)(6). The Topic seeks testimony concerning "Nexo's responses and objections to Plaintiff's Interrogatories," including the factual bases for each response and objection; the identity of all persons who provided information, input, or approval; the documents, data sources, information systems, and custodians relied upon; the steps taken to investigate, verify, and ensure completeness and accuracy; and any limitations, assumptions, qualifications, or reservations underlying the responses. This Topic impermissibly targets every aspect of the interrogatory-response process and demands a comprehensive examination of Nexo's internal discovery strategy, legal analysis, and counsel-directed decision-making. The preparation of interrogatory responses—including determining factual bases, identifying individuals with knowledge, selecting documents or data sources to review, and crafting objections—necessarily involves attorney-client privileged communications and work-product-protected materials, including counsel's mental impressions, legal reasoning, and strategic judgments. The Topic also assumes facts not in evidence, including that limitations or reservations existed or that Nexo's responses were incomplete or deficient, and a corporate representative cannot be compelled to adopt Plaintiff's disputed factual premises or insinuations. The request is vague and ambiguous in its references to "steps taken," "factual bases," "input," "approval," and "limitations," none of which are tied to specific interrogatories or subject matter, and which are inherently intertwined with privileged legal guidance. Moreover, much of the information sought—particularly counsel's internal verification processes, selection of sources, and evaluation of completeness—is not "known or reasonably available" to the organization in a non-privileged form under Rule 30(b)(6), as these determinations reflect protected litigation strategy. Finally, the Topic is disproportionate to the needs of the case under Rule 26(b)(1), as it seeks sweeping, collateral discovery into litigation-response processes rather than information relevant to the substantive claims and defenses.

**Response:** Nexo will not produce a witness for subparts (b)-(e) of the request. Antoni Trenchev is designated to address subpart (a) but only to the extent of the factual basis for topics and to the

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

extent that the interrogatories were not addressed by other 30(b)(6) topics. He will not testify as to the objections.

### OBJECTION TO ADVANCED DELIVERY OF DOCUMENTS

Nexo objects to Plaintiff's demand, at least seven business days before the deposition, for production of all document reviewed, referred to or relied on by Nexo's 30b6 designees to prepare for the noticed deposition, as that information, including the selection and compilation of the documents used to prepare a 30b6 designee, is protected by the attorney-client privilege and the attorney work product doctrine. Nexo will not produce or log such documents.

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

DATED:  March 24, 2026

By /s/ Ian S. Shelton

Ian S. Shelton

Attorneys for Defendant
Nexo Capital, Inc.

**PROOF OF SERVICE**

On March 24, 2026, I served true copies of the following document(s) described as DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE on the interested parties in this action as follows:

James Taylor-Copeland
james@taylorcopelandlaw.com
Max Ambrose
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: 619-734-8770
Facsimile: 619-566-4341

**E-MAIL.**  I caused to be served the above-referenced document by electronic mail.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

DATED:  March 24, 2026

By /s/ Ian S. Shelton
    Ian S. Shelton

    Attorneys for Defendant
    Nexo Capital, Inc.

**DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

59