May 22, 2026

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:    *John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH
       JOINT DISCOVERY LETTER REGARDING FIVE HOURS OF ADDITIONAL
       DEPOSITION TIME WITH PLAINTIFF JOHN CRESS

Dear Judge Hixson:

The parties submit this joint letter regarding a dispute concerning Nexo's request for five hours of additional deposition time with Plaintiff John Cress, to be conducted in San Francisco where Mr. Cress resides. The parties have met and conferred in good faith prior to filing this letter, including by exchange of emails.

### Attestation

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred in good faith to resolve the disputes set forth below.


Dated: May 22, 2026               TAYLOR-COPELAND LAW

                                    By: /s/ James Taylor-Copeland

                                    Attorneys for Plaintiff


Date: May 22, 2026                BAKER & MCKENZIE LLP

                                    By: /s/ Ian S. Shelton

                                    Attorneys for Defendant

**NEXO'S POSITION.** Nexo requests an additional five hours of deposition testimony with Cress, to be continued in San Francisco where Cress resides. Nexo needs additional time for the following reasons: (1) Nexo is entitled to question Cress regarding his belated responses to contention interrogatories regarding his new claims, and regarding documents he improperly withheld as privileged and only produced after his deposition; (2) Cress has asserted ten complex claims against Nexo, including RICO claims, and seven hours was an insufficient amount of time to question Cress on such complicated and wide-ranging matters; and (3) Cress's responses were dilatory and evasive. Additional time is also approximate given the asymetrical nature of discovery in this matter. Cress noticed and took Rule 30(b)(6) depositions encompassing forty-nine separate topics, with even more subparts, resulting in approximately 42 hours of percipient and corporate representative deposition testimony from five Nexo witnesses—7 hours from Kostadinov, 7 hours from Tonkov, 10 hours from Dinca (3 as a corporate rep), 8 hours from Hristov (1 as a corporate rep), and 10 hours from Trenchev (3 as a corporate rep). Simultanous with his effort to avoid any additional deposition testimony, Cress has filed two letter briefs seeking 2.5 more hours of 30(b)(6) deposition time from Nexo (beyond the 7 hours he already received) (Dkt. 112), and another 8 hours of cumulative testimony (4 hours each) from apex witness Kosta Kantchev and Yasen Damyanov (Dkt. 113). Nexo's request for 12 hours of total deposition time with Mr. Cress—the most important witness in the case—is both reasonable and justified on this record.

I.    **Nexo is Entitiled to Question Cress regarding his Responses to Contention Interrogatories and Documents that he Wrongfully Withheld as Privileged.**

When considering whether to grant additional deposition time, courts consider whether "the witness will be questioned about numerous or lengthy documents"; and whether "the examination reveals that documents have been requested but not produced." Fed. R. Civ. P. 30(d). Both factors weigh in favor of additional time here. Cress has not responded to critical contention interrogatories that bear directly on the new claims in his Second Amended Complaint—depriving Nexo of the ability to examine Cress on those positions during the deposition. Nexo served its Third Set of Interrogatories on February 13. Yet, despite having these requests for nearly two months, and despite Nexo's March 27 deficiency letter requesting a prompt response so the issues could be resolved in advance of the deposition, Cress only agreed to produce responses to Nexo's contention interrogatories 19, 20, 21, 23 and 24 by May 26— well after his deposition on April 10. These key interrogatories ask Cress to identify the facts supporting his claims for civil theft (Rog 19), RICO (Rog 20), RICO predicate acts (Rog 21), fraudulent omission (Rog 23), and breach of the Cryptocurrency Purchase Agreement (Rog 24). Nexo is entitled to question Cress regarding his verified responses to critical contention interrogatories, particularly when his responses were due a month before his April 10 deposition. Nexo's February 13 interrogatories are attached as **Exhibit A**, and Cress's agreement to respond to some but not all of those February 13 interrogatories on May 26 is attached as **Exhibit B**.

Nexo is also entitled to question Cress regarding documents that he wrongfully withheld as privileged and did not produce until after his deposition. Cress first produced these documents on May 6, 2026— nearly a month after his deposition. These documents are not only probative, but also directly relevant to the core issues in dispute. In particular, Cress attributes his liquidation not to Nexo but to Elon Musk, asserting that tweets by the Tesla founder and CEO—specifically, his public statements about "breaking up with Bitcoin"—amounted to market manipulation that caused the cryptocurrency's precipitous decline. Cress states that "the tweets and price manipulation from Musk had a direct adverse effect on Nexo, which led to my liquidation sales. . . . while he's not liable for bitcoin price manipulation, he's culpable and potentially liable for Nexo." Such statements go to the heart of causation and undermine Cress's claims against Nexo. Additionally, Cress had improperly redacted key communications in which a friend cautioned, "Borrowing is very very dangerous … people get upside down fast," and expressed

frustration with Cress because "I told you not to do it ['bet everything']." These exchanges address Cress's reliance and whether he knowingly assumed the risk of liquidation.

## II.    Nexo Had Insufficient Time to Fairly Examine Cress regarding the Ten Complex Claims He Has Asserted Against Nexo, including a RICO Claim.

Under Rule 30(d)(1), additional deposition time is warranted "if needed to fairly examine the deponent." Courts grant additional time for depositions when an individual plaintiff brings numerous detailed and complex claims against a large corporation or agency. *See, e.g., Hanson v. Oregon*, No. 3:21-CV-780-SI, 2021 WL 8442625, at *2 (D. Or. Oct. 29, 2021) (enlarging individual plaintiff's deposition to 14 hours where the plaintiff had numerous claims for relief and the case was "somewhat complex and detailed."); *see also, e.g., Kleppinger v. Texas Dep't of Transp.*, 283 F.R.D. 330, 335 (S.D. Tex. 2012) (enlarging individual plaintiff's deposition where seven hours was insufficient to cover plaintiff's numerous claims); *Martinez v. Cornell Correction of Texas, Inc.*, 229 F.R.D. 194, 196 (D.N.M. 2005) (enlarging individual plaintiff's deposition where there "was a substantial amount of material to cover at the deposition."). This is exactly the situation here. Despite Nexo's best efforts, seven hours was simply insufficient to cover the ten complex—and factually varied—claims that populate his 264-paragraph, 47-page Second Amended Complaint (Dkt. 88).

## III.    Cress Was Dilatory and Evasive During His Deposition, Justifying Additional Time.

Under Rule 30(d)(1), additional deposition time is also warranted if "any other circumstance impledes or delays the examination." Nexo examined Cress for seven hours on April 10. Throughout, Cress was evasive, non-responsive, and used deliberately obstructive tactics that blocked testimony on core issues. A sampling of the dilatory and evasive deposition conduct is compiled in **Exhibit C**:

- Cress physically threw documents at Nexo's counsel during questioning, prompting his own counsel to intervene and implore, "John, please." (147:7–11).

- Cress repeatedly refused to read documents—many of which were exhibits introduced by his own counsel in earlier depositions—claiming he had forgotten his "readers," which he asserted were prescribed by a doctor and required to read small print. (321:13–18). The excuse consumed significant time and prevented questioning on documents relied upon by his own counsel and central to his own claims.

- Cress stonewalled basic factual questions. Asked whether an attorney—whose communications he has withheld as privileged—provided legal advice related to this dispute, Cress claimed he could not answer because he "do[esn't] know which one's a lie or the truth," fretted about "saying the wrong thing," and repeatedly looked to counsel before answering to factual inquiries. (137:16–25).

- At one point, Cress suggested that he was intentionally "use[ing] up some time" by being evasive (202:1–8) and Nexo's counsel was under the distinct impression that Cress was purposefully attempting to run out the clock.

Compounding these issues, Cress's counsel instructed Cress not to answer questions on purported "privacy" grounds and, additionally, on "privilege" grounds related to straightforward and foundational questions such as who represents Cress in this dispute, which do not implicate privilege. *See, e.g., Methode Elecs., Inc. v. Finisar Corp.*, 205 F.R.D. 552, 556 (N.D. Cal. 2001). Counsel eventually relented on some limited topics — but only after the damage was done, shutting down entire lines of inquiry and wasting time. These examples alone justify a finding of good cause to extend deposition time where, as here, a deponent's conduct and counsel's instructions impede a fair examination. *See Johnson v.*

*Couturier*, 261 F.R.D. 188, 190 (E.D. Cal. 2009) (granting further deposition where witness reading impairment interfered with examination); *see also Timeless Prod. FZ LLC v. Baker*, No. 4:25-CV-04459-YGR (KAW), 2026 WL 412671, at *2 (N.D. Cal. Feb. 13, 2026) (finding impropriety where counsel instructed witnesses how to answer or not answer at all).

## IV.   Nexo's Request is Proportional and Reasonable.

Nexo's request for five hours of additional deposition time is proportional to the needs of this case. *See, e.g.*, *Laryngeal Mask Co. Ltd. v. Ambu A/S*, No. 307CV01988DMSNLS, 2009 WL 10672436, at *4 (S.D. Cal. July 17, 2009) (granting additional deposition testimony in a complex case involving complicated factual and legal issues). Cress has asserted ten claims, including securities fraud and RICO claims. These claims have implicated wide-ranging conduct involving fees and OTC transactions, Nexo's U.S. sales and advertisements over time, and multiple categories of alleged misconduct. Nexo did not have sufficient time to complete questioning on numerous critical subjects. Other critical topics were underdeveloped, including mitigation of damages, Cress's available assets, his responses to interrogatories, regulatory issues raised by Cress, his RICO and civil theft claims, and the disposition of his Nexo Tokens.

**PLAINTIFF'S POSITION.** Nexo had its seven hours. On April 10, Nexo's counsel examined Cress for the full time Rule 30(d)(1) allows. He didn't ask for more time, say he could not finish, or reserve any open subject. He closed the deposition. Only after reviewing the transcript did Nexo decide seven hours had not been enough—and even then, it could not settle on how much more it needed. Nexo first demanded seven hours, then dropped to four, and now asks for five. The shifting demands are not tied to any identified topic Nexo was unable to cover; they reflect post-hoc bargaining—not need.

Nexo's "asymmetry" argument fares no better. Cress is one person; Nexo is a corporation that necessarily speaks through multiple custodians. That structural difference is not a basis to expand Rule 30(d)(1)'s seven-hour limit. *Johnson v. Oregon*, 2026 U.S. Dist. LEXIS 101259, at *5-6 (D. Or. May 7, 2026) (rejecting argument that plaintiff deposing "a greater number of witnesses" is a basis for extending plaintiff's deposition time). Nexo has also deposed two third parties and noticed two more depositions.

What Nexo shows is that its wishes it had allocated the seven hours differently in hindsight. That is not the standard. Nexo cannot identify a single topic it was unable to reach, its catalogue of "misconduct" misstates the record, and its own choices account for whatever it now claims it lacked.

**The Timeline Shows Nexo Manufactured Post-Hoc Discovery Disputes to Request More Time.** By the time Nexo noticed Cress's deposition on March 5, 2026 for April 10, it knew exactly what the discovery record looked like—and it raised none of the issues it now presses.

Plaintiff produced his privilege log on January 15, 2026, and supplied additional information after a brief meet-and-confer. Nexo raised no further issue with the log until weeks after Cress's deposition. Nexo served its Fourth RFPs on February 6, 2026; Plaintiff timely responded, producing no additional documents because the requests duplicated earlier RFPs. On a February 9, 2026 meet-and-confer call, Nexo proposed to depose Cress in March. Nexo raised the question of additional deposition time on that call. Plaintiff's counsel said they would evaluate any concrete request. Nexo never made one. On March 5, Nexo served a standard deposition notice that did not seek additional time and chose to proceed on April 10 without seeking to compel any of the discovery it now claims it needed.

On February 13, Nexo served Rogs 19-24. These are textbook premature contention interrogatories: Rogs 20-22 demand RICO representations, predicate acts, and enterprise facts, while Rogs 19, 22, 23, and 24 demand "all facts and circumstances" supporting four separate claims. Plaintiff timely objected. Depositions had not been taken, and Nexo had only recently produced more than 11,000 documents plus

metadata for over 63,000 more in early 2026. See Fed. R. Civ. P. 33(a)(2); *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985) (party seeking contention answers "before substantial documentary or testimonial discovery has been completed" bears the burden of justification). To the extent Cress had any of the underlying facts, they were already disclosed in other interrogatory responses. The rest concern Nexo's own internal conduct, such as the relationship between the RICO Enterprise's members, which is beyond Cress's personal knowledge.

What Nexo did not do is use what it already had. Plaintiff's verified interrogatory responses covered damages, all fourteen alleged misrepresentations, Nexo's promotional materials, the VIP brochure, Cress's assets in 2021, and every verbal communication Cress had with anyone at Nexo. Nexo introduced none of those responses as deposition exhibits and asked no questions tied to them.

Nexo's meet-and-confer timing seals the point. Nexo did not raise any deficiency with Cress' responses to Rogs 19-24 until March 27, then went silent for eight days when Cress offered to confer on March 31. The meet-and-confer finally occurred on April 8—two days before the deposition—and Nexo did not agree to narrow Rogs 19-24 until April 9, the day before. (**Exhibits D, E**). A party that defers a meet-and-confer to the eve of a deposition cannot bootstrap that delay into a basis for more deposition time. *Barajas v. Abbott Labs., Inc.*, 2018 U.S. Dist. LEXIS 202690, at \*14-15 (N.D. Cal. Nov. 29, 2018).

Nexo's contention that *five* additional hours of deposition is warranted because Cress agreed to remove redactions on 11 documents on May 6 is illustrative of its bad faith. Cress served his privilege log in January 2026, and Nexo raised no issue with any of the 11 documents until weeks after the April 10 deposition. The two documents Nexo spotlights prove it had all the information it needed at Cress' deposition. The language Nexo says it could not see in the first was never redacted. Nexo had the text at the deposition and chose not to ask about it. The second is worse: Nexo had a nearly identical, fully unredacted conversation since January 2025 (CRESS-00000706 at 707-8: "I'm interested in any tips on suing Elon Musk…The tweets and price manipulation from Musk had a direct adverse effect on Nexo…") and never once questioned Cress about it. (**Exhibit F**) Nexo cannot convert its own tardy and misleading challenges into a basis for more deposition time.[1]

**Nexo Used Its Seven Hours Exploring Irrelevant Information and Harassing Cress.** Rule 30(d)(1) presumes that seven hours, used reasonably, will suffice. Nexo's "need" for more time is a product of its mismanagement of the time it had. Nexo's counsel spent the first hour on Cress' education, sales jobs, and unrelated finances before saying "let's switch gears, then, and talk about Nexo." Cress Tr. (**Exhibit G**) 13:21-47:24. He then spent significant time on post-2021 financial activities the Court has already held have "nothing to do with this case and is broadly invasive of Cress' privacy." *See* Dkt. 89 at 5. Plaintiff's counsel reminded Nexo of the order but allowed the answers. No "lines of inquiry" were "shut down," and Nexo identifies no improper instruction not to answer. Tr. 116:19-119:18.

Toward the end of the day, counsel spent nearly an hour walking Cress through ten Nexo emails Cress was not on and could not authenticate. Tr. 313:13-331:18. He also returned repeatedly to telling Cress, on the record, that he had "fucked" himself. Tr. 49:16-50:6; 203:24-204:6; 360:8-361:14. That is not examination; it is theater—and not a basis for awarding more time.

**Nexo Cannot Identify a Single Topic It Was Unable to Cover.** All of Cress's claims arise from the same set of facts—his loans, OTC transactions, and liquidations. Nexo examined Cress at length on each: Nexo's misrepresentations regarding fees, the VIP Brochure, the NEXO Token, the Cryptocurrency Purchase Agreement and terms of service, his loan and OTC transactions, his communications with

---

[1]Even if Nexo's belated objections could somehow justify additional deposition time—and they cannot—any such time would necessarily be limited to questioning on the **two** documents at issue, not the five open-ended hours Nexo demands.

Hristov and other account managers, the liquidations, his communications with friends and acquaintances, and the RICO elements. *See* Tr. Word Index (**Exhibit H**). Nexo's vague reference to topics that were "underdeveloped" is not a basis for additional time; it is a confession that Nexo misallocated its time. *In re Google RTB Consumer Priv. Litig.*, 2024 U.S. Dist. LEXIS 244500, at *10 (N.D. Cal. Dec. 30, 2024) (denying motion to extend deposition where party could not identify "which topics they were unable to pursue, why they are relevant, and why they were unable to pursue them during their seven allotted hours."); *Barajas v. Abbott Labs., Inc.*, 2018 U.S. Dist. LEXIS 202690, at *13-14 (N.D. Cal. Nov. 29, 2018) (denying additional deposition time where defendant "does not identify any subject matter that it did not have the opportunity to cover").

**The "Misconduct" Nexo Catalogues Misstates the Record.** *First*, Nexo claims Cress "threw documents" at its counsel. Not so. Nexo's counsel asked Cress to confirm that an eight-page contract said nothing about his loan transactions; when Cress asked, "to read the document," Nexo's counsel demanded "let's go off the record, and you can read the document." Tr. 146:13-147:10. Cress—believing the deposition had moved off the record—flipped the document back, and Nexo's counsel threw it back at him. *Id*. The exchange would have been avoided had Nexo sent copies in advance, as the Rules advise. Instead, Nexo frequently sought to trick Cress by refusing to let him read documents. Tr. 315:24-316:22 ("Let me read the email, please." Counsel: "No. I don't have time for that."); *see also* Tr. 330:7-331:18. Nevertheless, Nexo identifies no instance of Cress taking inordinate time to read a document.

*Second*, Nexo complains that Cress could not read two of the 48 exhibits Nexo presented because the print was too small (approximately 5 point font). Plaintiff's counsel immediately offered to "go off the record, and…pull it up on my computer and make it bigger for him." Tr. 320:10-20. Nexo's counsel rejected the accommodation: "No. We'll just keep rolling." *Id.*

*Third*, Nexo's questioning about Cress's attorneys is a textbook attempt to manufacture a privilege dispute and another example of its unwise and harassing use of deposition time. Cress confirmed at the outset that he had retained attorney Blum under an engagement agreement. Tr. 135:8-25. Nexo's counsel then asked whether Blum was "your attorney in this matter"—a question that conflated retention with formal appearance. After a brief recess proposed by Plaintiff's counsel, Cress confirmed Blum was retained in connection with the Nexo dispute. *Id.* A one-minute clarifying break is not stonewalling.

*Fourth*, the "use up some time" remark was a complaint about repetition, not an admission of obstruction. Nexo's counsel asked a question, did not like the answer, and asked it again—something he did at least fifteen times, drawing as many "asked and answered" objections. When Cress asked, "Do you want me to go through that all again?" Counsel insisted. Tr. 201:15-16. Cress answered: "I don't want to. But, I mean, we can use up some time on this. That's fine." Tr. 202:1-2. The pace data confirms Cress was not dilatory: Cress produced 363 pages of testimony in seven hours—51.8 per hour, faster than any of Nexo's five witnesses. *See* Tonkov (45.0); Kostadinov (44.1); Dinca (41.7); Trenchev (36.3); Hristov (35.9).

**Each of Nexo's authorities is materially distinguishable.** *Hanson* enlarged a deposition where the plaintiff "asser[ted] 21 distinct claims for relief"—more than double the number Cress asserts—and where the Plaintiff's testimony was the only deposition sought by defendants. 2021 WL 8442625, at *2. Here, by contrast, Nexo has taken third-party depositions. *Kleppinger* enlarged a deposition where a plaintiff sued eleven defendants alleging facts "relating to many incidents that occurred during [the] four-year employment." 283 F.R.D. at 333–35. *Martinez* similarly involved five defendants with conflicting interests, each of whom received only one additional hour. 229 F.R.D. at 196. Cress, by contrast, sues a single defendant over personal events spanning roughly three months. *See Stevens v. City of Red Bluff,* 2007 U.S. Dist. LEXIS 100970, at *4-5 (E.D. Cal. Jan. 19, 2007) ("Seven hours is more than adequate to depose the plaintiff" in a case with "only one defendant (and one plaintiff)" asserting claims "which arise out of the same core of operative facts" during a six-year period).