June 1, 2026

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:    *John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH - JOINT DISCOVERY
         LETTER REGARDING PLAINTIFF'S MOTION TO QUASH SUBPOENA TO DIETER
         STENGER

Dear Judge Hixson:

The parties submit this joint letter setting forth each side's view as to whether the Court should quash the deposition subpoena Nexo has served on Plaintiff's personal accountant, Dieter Stenger, or in the alternative enter a protective order limiting the scope of that deposition. The parties have met and conferred in good faith prior to filing this letter, including by the exchange of letters and emails.

**Attestation**

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred telephonically and in good faith to resolve the disputes set forth below.

Dated: June 1, 2026                    TAYLOR-COPELAND LAW

                                                    By: /s/ James Taylor-Copeland

                                                    Attorneys for Plaintiff


Date: June 1, 2026                     BAKER & MCKENZIE LLP

                                                    By: /s/ Ian S. Shelton

                                                    Attorneys for Defendant

0

**PLAINTIFF'S POSITION.** Cress respectfully requests that the Court quash the deposition subpoena Nexo has served on Cress's accountant, Dieter Stenger, or in the alternative enter a protective order limiting the scope of that deposition. Fed. R. Civ. P. 26(c), 45(d)(3). The subpoena is a transparent attempt to circumvent this Court's October 31, 2025 Discovery Order denying Nexo's motion to compel production as to fourteen of fifteen RFPs regarding Cress' finances, which held that "[f]or the most part, Nexo's motion to compel seeks documents that have nothing to do with this case and is broadly invasive of Cress's privacy." Dkt. 89 at 1; Dkt. 77-1 (limiting relevant discoverable information about Cress's tax-related information to information "related to your tax treatment of your NEXO Token transactions in 2021"). Less than two months later, Nexo issued a Rule 45 subpoena to Stenger's firm, Homer, Stenger & Company, Inc., seeking deposition testimony and documents on precisely the same subjects. After Cress objected, Nexo withdrew that subpoena and reissued it to Stenger personally—removing the document requests but refusing to narrow the deposition topics. **Exhibit A**, M. Rawlinson Email (May 8, 2026) ("we will not agree in advance to limit the topics for the deposition. … We reserve all rights to ask Mr. Stenger questions regarding any documents produced in this case."). The Court should not permit Nexo to obtain orally, through Cress's accountant, what it was forbidden from obtaining through Cress.

**A. The Subpoena Targets the Same Information This Court Already Found Irrelevant and Invasive of Cress's Privacy.** A party has standing to move to quash a third-party subpoena based on a personal right or privilege with respect to the testimony or materials sought. *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 974 (C.D. Cal. 2010). Cress's privacy interest in the financial, tax, and advisory communications he shared with his personal accountant plainly qualifies. See *Valley Bank of Nev. v. Superior Court*, 15 Cal. 3d 652, 656 (1975) (recognizing constitutional privacy interest in financial records); *see also Zakinov v. Ripple Labs, Inc.,* No. 18-cv-06753-PJH (RMI), 2023 U.S. Dist. LEXIS 11472, at *7-8 (N.D. Cal. Jan. 23, 2023) ("the financial information  sought by Defendants is attended with weighty privacy rights"); *Schmulovich v. 1161 Rt. 9 LLC*, Civil Action No. 07-597 (FLW), 2007 U.S. Dist. LEXIS 59705, at *6 (D.N.J. Aug. 15, 2007) ("Personal rights claimed with respect to bank account records give a party sufficient standing to challenge a third party subpoena served upon financial institutions holding such information.").

Nexo's contention that it "does not seek a wholesale inquiry into every aspect of Cress's finances," cannot be squared with its refusal to limit its subpoena in any way—leaving the door open for Nexo to pry into sensitive financial information this Court has already found to be broadly invasive of Cress' privacy and completely irrelevant to this case. Dkt. 89 at 1; Dkt. 77-1.

The topics Nexo noticed for Stenger in the initial subpoena leave no doubt about what Nexo intends to ask about—Cress's entire financial history throughout all time: (1) "all services provided by You to John Cress, including but not limited to financial, accounting, consulting, advisory, recordkeeping, tax-related, or other professional services"; (2) Cress's "financial condition, assets, liabilities, income, expenses, and net worth"; (3) Cress's "purchase, sale, transfer, holding, or investment in cryptocurrency or digital assets"; (4) Cress's "status as an accredited investor"; and (5) "[a]ll Communications with John Cress." **Exhibit B**. Those topics track, nearly verbatim, the categories of discovery this Court already denied. Ex. B *Cf.* Dkt. 77-1. **Topics 1** and **5** are RFP 105—"communications [Mr. Cress] had with an investment advisor, accountant, or tax advisor regarding any and all cryptocurrency investments"— which the Court denied. **Topic 2** is RFP 142 (assets "as of September 10, 2021") and RFP 145 (cryptocurrency assets "held in 2021")—both denied. **Topic 3** is RFPs 119, 121, 133, 140, 144, and 145—Cress's transactions, holdings, profit-and-loss, and accounts on other crypto platforms (Gemini, Coinbase, KuCoin, MyEtherWallet)—all denied. The Court has already determined that this material is "broadly invasive of Cress's privacy" and "ha[s] nothing to do with this case." Dkt. 89 at 1; Dkt. 77-1.

Nothing about transferring the overly broad, invasive, and irrelevant questions from Cress to Strenger makes the information relevant or the inquiry permissible under Rule 26. Nexo's effort to recast Stenger as a "percipient witness" does not salvage the subpoena. The specific exchanges Nexo identifies—a January 2022 reconciliation of Cress's Nexo transactions, a March 2022 discussion of Cress's four Nexo loans, a June 2021 draft communication to Nexo, and the August 25, 2021 exchange in which Cress forwarded an agreement and Stenger replied that it "[l]ooks pretty standard"—are all communications about Nexo, the NEXO Token, or Cress's contemporaneous dealings with Nexo. Each subject falls squarely within Topic 1 of Cress's proposed limits ("Nexo and the NEXO Token"), and Cress does not object to Stenger being questioned about those communications. Nexo's reliance on these specific documents therefore confirms the workability of the compromise; it does not justify the roving inquiry into Cress' tax returns, net worth, and other holdings that Nexo demands.

**B. Cress Has Offered a Compromise Capturing All Legitimate Discovery; Nexo's Refusal Is Unjustified.** To avoid burdening the Court, Cress offered to forgo any objection to the Stenger deposition if Nexo would limit questioning to: (1) Nexo and the NEXO Token; and (2) Stenger's high-level understanding, if any, of Cress's available assets between March 1 and June 30, 2021—the only window in which Cress's outside-Nexo assets could conceivably bear on Nexo's mitigation defense. *Cf.* Dkt. 77 at 2 (Nexo arguing that "additional assets available for collateral or for repayment" are relevant to mitigation in the period leading up to the May–June 2021 liquidations). Cress also confirmed that he is *no longer pursuing tax damages* in this action, removing any conceivable basis to plumb Stenger's tax-preparation work—particularly for the post-liquidation years 2022 and onward. Ex. A.

Nexo's response was a categorical refusal: it "will not agree in advance to limit the topics for the deposition" and "reserve[s] all rights to ask Mr. Stenger questions regarding any documents produced in this case." Ex. A. Nexo's suggestion that Cress can simply "make any objections" at the deposition and "designate the transcript confidential," *id.*, is no substitute for the Federal Rules' relevance and proportionality limits. Speaking objections cannot recall testimony already given, and a confidentiality designation does not cure a relevance or burden problem. Such overly broad subpoenas rooted in categorical refusals to narrow are routinely quashed in their entirety. "[D]iscovery of financial or other private information must be 'narrowly circumscribed' and allow production 'only to the extent necessary for a fair resolution to the lawsuit.'" *Tattersalls Ltd. v. Wiener*, No. 17cv1125-BTM(KSC), 2019 U.S. Dist. LEXIS 244178 (S.D. Cal. Nov. 18, 2019) (granting motion to quash subpoena in its entirety because subpoenaing party refused to narrow scope of financial information sought).

Nexo's effort to expand the deposition beyond those two topics is unsupported by the claims and defenses actually at issue. First, the categories Nexo complains about in this JLB are within Plaintiff's proposed scope: the documents produced in this litigation about Nexo and the NEXO token, and Mr. Stenger's involvement in them. Second, Nexo's invocation of Cress's "sophistication," "accredited investor" status, and "familiarity with cryptocurrency markets and investing more broadly" does not open Stenger's file. Sophistication—if relevant—is tested through Cress's own testimony (which Nexo has taken) and through documents Cress has produced. Stenger is neither competent to opine on his client's investment acumen nor a proxy for Cress. A limitless pry into Cress's accredited-investor status during his entire life was one of the very categories the Court denied. Dkt. 77-1; Dkt. 89. Second, Nexo misunderstands or misrepresents the opinion of Cress' damages expert, which simply provides the value as of April 14, 2026 of the assets lost as a result of Nexo's misconduct. The endpoint of a damages calculation is not a passport to inquire about Cress's net worth or accountant work-product spanning the years before and after that window. Third, Cress's purported lack of employment does not transform the full scope of his finances into fair game. The Court has already held that Cress' financial condition has "nothing to do with this case" and is "broadly invasive of Cress's privacy." Dkt. 89 at 1. It is both irrelevant and beyond any reasonable scope to examine Mr. Stenger about what Cress might have done

2

with hypothetical assets five years after the events at issue. Fourth, Nexo's reference to entries on Cress's 2021 tax returns relating to the NEXO Token, and to the July 2021 NEXO Token sale and repurchase, does not justify opening broad tax-preparation discovery. Both subjects are encompassed by Topic 1 of Cress's compromise ("Nexo and the NEXO Token"), and the Court has already cabined any permissible tax inquiry to the "tax treatment of [Cress's] NEXO Token transactions in 2021." Dkt. 77-1.

The procedural posture confirms what is happening. Nexo first sought this information from Cress through party discovery; the Court denied it. Dkt. 89 at 1. Nexo then sought it from Stenger's accounting firm through a Rule 45 document subpoena; faced with Cress's objections, Nexo withdrew. Nexo has now reissued the subpoena to Stenger personally—eliminating the document request, but keeping the door wide open on the same testimony. That is a textbook attempt to use Rule 45 to evade a Rule 26 order. See Fed. R. Civ. P. 26(b)(2)(C)(i) (court "must limit" discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive"); Fed. R. Civ. P. 45(d)(3)(A)(iv) (subpoena that "subjects a person to undue burden" must be quashed). The relevance and proportionality limits the Court applied to Cress's own files apply with greater, if not at least equal force to Cress's accountant's testimony.

**C. Requested Relief.** Cress respectfully requests that the Court (1) quash the Stenger subpoena; or, in the alternative, (2) enter a protective order limiting Mr. Stenger's deposition to (a) Nexo and the NEXO Token, and (b) Mr. Stenger's high-level understanding, if any, of Cress's available assets between March 1, 2021 and June 30, 2021, and precluding any questioning concerning Cress' taxes, tax returns, tax reporting, or tax preparation.

**NEXO'S POSITION.** The Motion to quash should be denied. Nexo seeks to depose a percipient witness regarding relevant events in his individual capacity, yet Cress insists that Nexo be limited to specific deposition topics. Cress's proposed limitations are not a meaningful compromise because they would exclude directly relevant subjects while shifting to Nexo the burden to pre-clear, in advance, the precise contours of a third-party, percipient deposition. Stenger is not a corporate representative whose testimony should be limited to a few topics designated by Cress in advance. The issue is not whether Nexo may conduct a free-ranging inquiry into Cress's private finances. It is whether Nexo may take a targeted deposition of a third-party witness whose own communications, advice, and involvement bear directly on Cress's knowledge, conduct, sophistication, mitigation, and claimed damages. Nexo has already agreed to forgo document production based on Cress's demands—it should not also be forced to pre-limit the scope of oral inquiry at the deposition.

First, Stenger is a percipient witness to relevant events, not merely a tax preparer or repository of financial records. The produced communications show that he was copied on, and at times responded to, exchanges concerning Cress's Nexo transactions, losses, and efforts to address the events at issue. For example, in January 2022, Cress copied Stenger on communications regarding reconciliation of Nexo transactions and explained that certain Nexo purchases had to be sold through an OTC desk due to lack of liquidity and manually entered from transaction records. In March 2022, Cress communicated with Stenger about transactions, loans, and losses, including Cress's description of his four Nexo loans between March and May 2021. And in June 2021, Cress circulated to Stenger draft communications to Nexo stating, "I've been trying very hard to reach someone at Nexo for help protecting my assets," after which Mr. Stenger responded with an article excerpt discussing crypto wash-sale treatment. Those are not generalized inquiries into wealth, but rather contemporaneous communications relevant to this dispute that are discoverable under Rules 26 and 45. Stenger's oral testimony relates to Nexo, but it also relates to Cress' broader relationship with cryptocurrency at the time.

Notably in August 25, 2021—after the time limit proposed by Cress— Cress forwarded agreements to Stenger with the comment "[a]ll these lawyers are saying I should've reviewed the agreements from Nexo before I signed the agreements" and that there were "many things in the Nexo agreement that would've stood out like sore thumbs," to which Stenger responded, "Looks pretty standard to me." That exchange, together with the June 2021, January 2022, and March 2022 communications, is highly probative of Cress's contemporaneous understanding, the advice he was receiving, his sophistication, the reasonableness of his alleged reliance, and the steps he did or did not take in response to the events at issue. These documents are probative, and a deposition is the appropriate means to test their meaning, context, and significance.

Second, Cress's proposed limitations are too narrow because they would artificially confine the deposition to a small set of categories and dates while excluding subjects that bear directly on the claims and defenses. Cress offers to permit questions only about "Nexo and the NEXO Token" and Stenger's "high-level understanding" of available assets during a short March-to-June 2021 window. But the communications already produced show why that is not enough. They bear on Cress's understanding of the relevant agreements, the advice he received, how he described his own conduct after the liquidations, and the financial circumstances in which he made the decisions he now places at issue. That includes Cress's role as an accredited investor and the surrounding facts that inform sophistication, reliance, and decision-making.

Furthermore, Cress testified at deposition that he does not have a job, and has not been employed since January 2020. Cress's sole source of income appears to be from investing in cryptocurrency and other assets. Yet, Cress's damages expert has measured Cress's alleged damages as of April 14, 2026 as if Cress would have held his pre-Nexo crypto to this date. In that context, inquiry into personal net worth and available assets is probative of how Cress financed his activity, what alternatives were available to him, what steps he could have taken, and how his claimed losses and mitigation theories should be evaluated. Cress cannot place his own financial conduct, investment status, and claimed harms at issue while insisting that the only permissible inquiry be the two narrow topics proposed by him.

Third, Rules 26 and 45 do not require Nexo to accept Cress's burden-shifting approach. It is Cress who seeks the extraordinary remedy of quashing a third-party deposition or imposing rigid prospective limits, so it is Cress's burden to show undue burden, overbreadth, or irrelevance—not Nexo's burden to preview every question and obtain advance approval topic-by-topic. Nexo has already taken substantial steps to reduce burden by withdrawing document demands and limiting the deposition to three hours. That is already reasonable and proportional. Cress's demand that Nexo agree beforehand to a list of permitted subjects would improperly convert a fact deposition into a pre-cleared interrogatory and would prevent reasonable follow-up regarding documents produced in discovery, and factual issues in dispute.

Cress's proposed topic limits are also vague and ambiguous, and unworkable as a practical matter. What exactly is the meaning and scope of his topic "Nexo and the NEXO Token"? How broad is that? What does "high-level understanding" mean? How can the Court preclude "any questioning concerning Cress' taxes, tax returns, tax reporting, or tax preparation" when Stenger was presumably retained to provide tax advice, and when Cress's 2021 tax returns contain entries for purported gains and losses on the NEXO Token, which is directly relevant to damages on Cress's securities claims. How does prohibiting questions about "taxes" interact with permitting questions about "Nexo and the NEXO Token," considering the fact that Cress's sale and immediate re-purchase of the NEXO Token in July 2021 appears driven by tax considerations? Why can Nexo only ask about "available assets between March 1, 2021 and June 30, 2021" when this entire lawsuit implicates Cress's sophistication as an investor and familiarity with cryptocurrency markets and investing more broadly. These purported limitations are vague and ambiguous, overly narrow, contradictory, and unworkable. Far from simplifying the Stenger

4

deposition, it will needlessly complicate matters and invite hotly disputed "scope" objections, and perhaps instructions not to answer, that could necessitate further judicial intervention and perhaps a second deposition. The Court should simply allow Nexo to take a three hour, percipient deposition of Stenger. The fact that Nexo dropped all document requests directed to Stenger fully addresses Cress's concerns. Nexo's questioning will be targeted and based on documents that Cress produced in this litigation that relate to Stenger and his knowledge of relevant matters in dispute.

Finally, this position does not conflict with the Court's earlier order. Nexo does not seek a wholesale inquiry into every aspect of Cress's finances, and it does not contend that previously rejected document requests can simply be repackaged through Rule 45. But the prior order did not hold that every question touching Cress's finances, sophistication, or dealings with his accountant is off limits regardless of context. Here, context matters. A third-party accountant who participated in communications about the transactions at issue, responded to Cress's descriptions of those transactions, and appears in documents bearing on Cress's understanding and conduct, has relevant testimony. To the extent particular questions implicate genuine privacy concerns, those concerns can be addressed through tailored objections and reasonable limits tied to the claims and defenses actually in dispute. Cress can also designate the deposition "confidential" under the protective order. What is not warranted is a categorical order that would bar Nexo from exploring relevant first-hand testimony simply because some portion of the subject matter overlaps with financial issues.

Cress's argument is based on the Court's October 31, 2025 Discovery Order, which denied Nexo's motion to compel responses to certain **document requests** served on Cress. Dkt. 89 at 1. There are a few problems with this argument. First, document requests and deposition testimony are different forms of discovery with different relevance and burden considerations. During the meet and confer process, Nexo dropped all document requests served on Mr. Stenger. Thus, Mr. Stenger is not subject to any burden associated with searching for and producing documents, and Nexo will only question him regarding admittedly relevant and responsive documents already produced by Cress—including communications with Mr. Stenger and documents prepared by Mr. Stenger that are relevant to this lawsuit. The fact that the Court declined to compel responses to specific document requests that implicated Cress's privacy cannot be construed to mean that broad categories of inquiry are categorically off-limits in all depositions, including general topics like sophistication, accredited investor status, damages calculation, and mitigation of damages. The Court's order addressed the relevance, burden, and proportionality of specific document requests; because those documents were not produced, Nexo is not in a position to invade Cress's privacy by asking about those documents. Second, the three-hour limit imposed on the deposition, again to limit the burden on the witness, already provides protection against inquiry into tangential or irrelevant topics. Nexo has no incentive or time to question Mr. Stenger about matters not pertinent to the issues in dispute. Third, the Court's Order specifically granted Nexo's motion to compel RFP 132, which sought "All documents related to your tax treatment of your NEXO Token transactions in 2021." Dkt. 77-1 at 6. Cress noted in response to this request that "Plaintiff has already produced his 2021 tax returns," and that 2021 return includes information regarding the NEXO Token transactions at the heart of this dispute. Thus, Cress's demand that the Court "preclud[e] any questioning concerning Cress' taxes, tax returns, tax reporting, or tax preparation" does not make sense. The Court already found that information relevant, and Mr. Stenger was hired by Mr. Cress to address tax issues. Finally, Cress did not seek to topically limit the scope of his own deposition in this manner to protect his privacy, showing that there is no need or justification to impose such limitations on the deposition of Mr. Stenger, who is privy to much less of Cress's personal information than Cress himself.

Nexo respectfully requests that the Court deny this motion to quash, or alternative motion for protective order, and allow the three-hour deposition of Stenger to proceed.