June 15, 2026

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:     *John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH
        JOINT DISCOVERY LETTER REGARDING NEXO'S MOTION TO QUASH PLAINTIFF'S
        SUBPOENA TO EVERSHEDS SUTHERLAND (US) LLP, OR IN THE ALTERNATIVE,
        MOTION SEEKING A PROTECTIVE ORDER

Dear Judge Hixson:

The parties submit this joint letter setting forth each side's view as to whether the Court should quash
the document request subpoena Cress has served on Nexo's former counsel, Eversheds Sutherland (US)
LLP, or in the alternative enter a protective order limiting the scope of the document requests. The parties
have met and conferred in good faith prior to filing this letter, including by the exchange of letters and
emails.

**Attestation**

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred telephonically
and in good faith to resolve the disputes set forth below.


Dated: June 15, 2026                    TAYLOR-COPELAND LAW

                                               By: /s/ James Taylor-Copeland

                                               Attorneys for Plaintiff


Date: June 15, 2026                     BAKER & MCKENZIE LLP

                                               By: /s/ Ian S. Shelton

                                               Attorneys for Defendant

**NEXO'S POSITION.** Cress has subpoenaed Nexo's former law firm, Eversheds Sutherland, for absolutely no reason. Cress has already taken seven hours of corporate representative testimony, with one of the topics specifically addressing Nexo's document preservation efforts.[1] When Cress moved for more time to depose Trenchev again on the same issue, the Court found that "Plaintiff has failed to show that Trenchev was insufficiently prepared to testify on this topic," indicating that Nexo has adequately addressed the document retention issues. Dkt. 120. The proof of the adequacy of Nexo's document preservation includes its production of **internal Slacks and emails for every OTC transaction with Cress** and totals over 60,000 documents spanning over 250,000 pages. When asked about Nexo's initial retention policies, Trenchev explained that "the default setting was that everything is pretty must kept indefinitely," which explains why Nexo was able to rely on those policies to preserve and produce data about every disputed Cress transaction. *See* Trenchev Dep. Tr. (Vol 1) at 34:5-23 (**Exhibit A**); *see also id.* at 57:5-14 (explaining in the context of government inquiries or subpoenas that "the vast majority of documents were kept at that time indefinitely, so I don't – I'm not sure whether it called for any specific preservation at all if that was the case."). Trenchev was also repeatedly asked about litigation holds in this case—the *raison d'etre* for the Eversheds subpoena—and Trenchev testified that "we have gone above and beyond a litigation hold notice by actually the team going out as soon as they became aware of the demand letter to collect all relevant communications and informations." *Id.* at 81:18-82:4. Trenchev explained that Nexo went beyond a mere hold "in securing all relevant communications, whether on Slack or elsewhere in order to be helpful to the proceedings." Id. *at* 116:3-117:4; *see also* 59:19-60:7 (describing "actual collection of relevant data and information"); 77:21-78:7 (describing how Nexo "already collected the data that would be relevant to the case"). Further, as Cress points out, he already asked Nexo to produce "[a]ll Documents showing litigation hold notices, preservation memoranda, or instructions regarding document retention issued to any of Your employees, agents, or contractors." Nexo responded: "Nexo has no documents to produce in response to this Request." Cress has beaten this issue to death, but now takes the extraordinary step of subpoenaing former trial counsel for privileged information. Nexo requests that the Court quash the subpoena, or enter a protective order eliminating any obligation for Eversheds or Baker to respond. Fed. R. Civ. P. 45(d)(3); 26(c).[2]

1.  **The Eversheds subpoena should be quashed as duplicative of party discovery.**

Ian Shelton, lead attorney in this matter, and Matt Rawlinson were formerly with Eversheds until January 2024. Counsel at Eversheds, including Mr. Shelton, represented Nexo in this lawsuit from its inception. After Mr. Shelton moved to Baker McKenzie, he continued to represent Nexo in this litigation. The remaining counsel at Eversheds withdrew from this case on January 27, 2025. *See* Dkt. Nos. 60-61. The file, including all communications with Nexo, was transferred to Baker McKenzie at that time.

On April 22, 2026, counsel for Cress requested that Nexo include on its privilege log "communications between Nexo and its counsel from February 27, 2023 through March 7, 2023," seemingly on the alleged basis that such communications were relevant to Nexo's implementation of retention/deletion policies. *See* **Exhibit B**. This request was inconsistent with the parties approach to privilege logging up to this point. Indeed, the latest entry on Cress's privilege log is October 26, 2021 – the date Cress sent his initial demand letter to Nexo, years before this litigation was filed – and neither party has logged communications with current counsel in this litigation. Accordingly, on May 19, 2026, counsel for Nexo

---

[1] *See* Dkt. 112-1, Defendant's Amended Objections and Responses to Plaintiff's 30(b)(6) Deposition Notice, Topic No. 8(34) regarding "Nexo's steps to preserve documents and ESI potentially relevant to this action, including when litigation was first anticipated, when litigation holds were issued or modified, and the custodians, data sources, and categories of information subject to preservation."

[2] Nexo has standing to move to quash this third-party subpoena based on a personal right or privilege with respect to the testimony or materials sought. *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 974 (C.D. Cal. 2010).

declined to supplement its privilege log with later communications with counsel as requested and otherwise reminded Cress that he also has not logged communications after October 26, 2021. *See id.*

Rather than meet and confer and go through the appropriate procedure for party disputes, Cress immediately served the Notice of the Subpoena to Eversheds, seeking in Subpoena Instruction No. 6 the same privilege log that Nexo and its current law firm refused to provide. This improper third-party subpoena and should be barred. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (court "must limit" discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive").[3] In connection with the move of counsel between firms, Eversheds transferred files in this action, including correspondence files, to Baker McKenzie. Thus, the information, if any, sought by Cress is in Nexo's counsel possession. Further, Nexo has already provided extensive 30(b)(6) testimony on the issue and otherwise responded to the discovery requests and confirmed that it has no responsive documents. Requiring third-party Eversheds to investigate the extent to which it may still have access to documents, much less review documents for privilege and prepare a privilege log, is unduly burdensome and harassing, particularly when the subpoena is duplicative of party discovery. Cress's transparent objective is to circumvent the discovery dispute with Nexo by compelling Nexo's former counsel to prepare a privilege log that Nexo's current counsel rightfully declined to provide. Nexo therefore seeks a motion to quash the Eversheds subpoena, or in the alternative, a protective order regarding the same.

   **2. Requiring Eversheds or Nexo to log presumptively privileged communications is a "pointless waste of time," is unduly burdensome and harassing, and seeks disclosure of the substance of privileged communications.**

While the Court need not address Nexo's substantive objections to adjudicate this matter, Nexo will address them in an abundance of caution. Cress's apparent objective is not the actual production of indisputably privileged documents, but instead to force Eversheds (or Baker) to generate a privilege log. A privilege log is not appropriate here because (1) the subpoenaed documents are facially privileged, and (2) matter seek to disclose the substance of privileged communications.

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter." Fed. R. Civ. P. 26(b)(1). "[C]ounsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log." *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 U.S. Dist. LEXIS 118337, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009) (denying motion to compel logging of post-litigation communications). In *Mon Cheri*, the court declined to order a party to log communications with outside counsel retained for litigation, regardless of whether the communications were before *or* after the filing of the complaint, because such communications "are so overwhelmingly likely to be privileged and work product that requiring [the party] to log them all is a pointless waste of time." *Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, No. 19-CV-01356-VC (TSH), 2021 U.S. Dist. LEXIS 65446, 2021 WL 1222492, at *3 (N.D. Cal. Apr. 1, 2021).

There is no doubt that the subpoena directly targets privileged communications.[4] The Subpoena seeks two categories of documents: 1. All Communications between You [*Eversheds*] and Nexo Concerning Cress or this Litigation from February 27, 2023 through March 7, 2023; and 2. All Documents or Communications provided to Nexo regarding its document retention preservation obligations related to Cress or this Litigation. *See* **Exhibit D**. The first request for all communications between Eversheds and

---

[3] Attached as **Exhibit C** are the objections to the Subpoena served by Eversheds. Nexo is seeking to quash the Eversheds subpoena in its own capacity. Nothing in this letter brief should be construed as a waiver of Evershed's right to raise its own objections and, if necessary, resolve those disputes in the proper forum.

[4] Federal Rule of Civil Procedure 45(d)(2)(3)(A)(iii) requires the Court to quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies."

Nexo, "Concerning Cress or this Litigation," in the days after the lawsuit was filed on February 27, 2023, are clearly privileged communications. The second request for all documents or communications provided to Nexo regarding its document retention preservation obligations related to Cress or this Litigation has no date limitation,[5] and the identification of a particular subject matter ("document retention preservation obligations") is clearly designed to disclose the substance of attorney-client privileged communications and attorney work product. Like the privilege log in *Mon Cheri*, requiring Eversheds and/or Nexo to log the communications sought by these requests "is a pointless waste of time." Further, the request has already been answered by Nexo at the Trenchev deposition. There is no point to log communications or respond to the subpoena when the question has already been answered. Particularly given the Court's prior finding of adequate 30(b)(6) deposition testimony on document preservation, Cress has not made the showing that his own authority holds is necessary to invade the privilege. *Thomas v. Cricket Wireless, LLC*, 2020 WL 7344742, at *3 (N.D. Cal. Dec. 14, 2020).

### 3. Cress's attempted use of a privilege log for an evidentiary purpose beyond the substantiation of the privilege claim is improper.

Nexo understands that Cress wants the privilege log for use as *evidence* in connection with a threatened sanctions motion. This is an impermissible use of a privilege log beyond the scope of discovery permitted by Rule 26(b)(1). Federal Rule of Civil Procedure 26(b)(5)(A)(ii) requires a privilege log to provide sufficient descriptions "to allow the Court to determine whether the assertion of privilege is justified (which is the whole purpose of a privilege log, in the first place)." *See Jefferies Funding LLC v. Dasagroup Holdings Corp.*, No. 24-cv-05639-TLT (PHK), 2025 U.S. Dist. LEXIS 177297, at *9 (N.D. Cal. 2025); "At risk of repetition, the very purpose of a privilege log is to allow a fair way to test a claim of privilege." *Waymo LLC v. Uber Techs., Inc.*, 319 F.R.D. 284, 292 (N.D. Cal. 2017). To the extent Cress seeks to use a privilege log as an evidentiary tool, this is not a permissible use of a privilege log.

**CRESS'S POSITION.** This dispute arises from Nexo's refusal to supplement its privilege log to include nine days of attorney-client communications or to explain whether its search for document preservation notices included its counsels' files. This evidence is critical to Nexo's intent regarding its implementation of company-wide document destruction rules mere days after Plaintiff filed his Complaint. Indeed, it is this very destruction that necessitated Plaintiff's subpoena to Eversheds. Nexo has asserted that it does not have any litigation hold notices, but Nexo has deleted all emails sent to and from the individuals most likely to possess those notices—Antoni Trenchev and Kosta Kantchev.

Nexo's motion rests on one factual premise: that everything the Subpoena seeks is already "in Nexo's counsel['s] possession" because "Eversheds transferred files in this action, including correspondence files, to Baker & McKenzie." Cress is prepared to take Nexo at its word. In the days before this letter was filed, Cress repeatedly offered in writing to withdraw the Subpoena without prejudice if Nexo would simply confirm the premise of its own motion—that counsel of record possesses the two categories of documents the Subpoena seeks, and that Nexo searched those files before serving discovery responses denying that any such documents exist. **Exhibit E** (June 3-4, 2026 correspondence). Nexo refused each time. That refusal is the dispute.

The Subpoena seeks two narrow categories: (1) communications between Eversheds and Nexo concerning Cress or this Litigation during the lawsuit's first nine days (February 27 through March 7, 2023), and (2) documents Eversheds provided to Nexo regarding its document retention and preservation obligations. Cress sought these same materials from Nexo in party discovery.[6] RFP No. 269, for example,

---

[5] Cress's argument that he "seeks two narrow, dated categories" is false. The second request contains no date limitation.

[6] The first category, communications between Eversheds and Nexo concerning Cress or this Litigation from February 27 through March 7, are responsive under Plaintiff's previous RFPs. Nexo agreed to produce, or was ordered to produce or log

requested "[a]ll Documents showing litigation hold notices, preservation memoranda, or instructions regarding document retention issued to any of Your employees, agents, or contractors." On March 13, 2026, Nexo served amended responses to RFP Nos. 269, 270, 272, 273, 283, 290, and 291, each stating: "Nexo has no documents to produce in response to this Request." **Exhibit F** (Amended Responses to Sixth Set of RFPs).

Nexo now tells the Court the opposite—that "Nexo's counsel has the communications at dispute." Both positions cannot be true. Documents held by a party's counsel are within the party's "possession, custody, or control" under Rule 34. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (responding party "is under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control"); *see also Ivy Hotel San Diego, LLC v. Houston Cas. Co.*, No. 10-cv-2183-L (BGS), 2011 U.S. Dist. LEXIS 119746 (S.D. Cal. Oct. 17, 2011) (documents in the files of the party's former outside counsel were within the party's Rule 34 control because the former client "is entitled to inspect and copy the materials"); Cal. R. Prof. Conduct 1.16(e)(1) (counsel must, on the client's request, release all client materials and property). So either Nexo served its amended responses—certified under Rule 26(g)—without searching files concededly within its control, or no responsive documents exist anywhere, including in the transferred Eversheds files. When Cress asked which, counsel answered only that "[w]e are in possession of the Eversheds file," refused to confirm what that file contains or that anyone searched it, and dismissed the RFPs as "a separate discovery dispute." Ex. E. They are not separate. They are the test of the sole ground of Nexo's motion: Rule 26(b)(2)(C)(i) limits discovery only where it "can be obtained from some other source." Nexo's certified responses say it cannot be. A subpoena is not "duplicative" of party discovery that the responding party represents is simultaneously complete and empty. And it is Nexo, not Cress, that seeks to use this motion to insulate contradictory discovery responses from scrutiny.

**The subpoenaed categories are directed at facts of central relevance—notice, preservation, and intent.** Cress filed this action on February 27, 2023, and his counsel transmitted the Complaint to Nexo's counsel—Ian Shelton and Michael Bahar, then of Eversheds—the following day. **Exhibit G**. On March 1, 2023, the day after Nexo's counsel received the Complaint, Nexo implemented a deletion policy targeting all of its Slack public and private channels. And on March 9, 2023—ten days after the Complaint was filed—Nexo implemented destruction rules targeting emails sent to or from Kosta Kantchev's personal Gmail account and Antoni Trenchev's personal domain. A routine corporate retention policy does not hunt down the personal email accounts of the two most critical witnesses in a case within days of its filing. Whether and when Nexo was on notice of Cress's claims—as this sequence heavily implies—and what its counsel told it about its preservation obligations bear directly on notice, the reasonableness of Nexo's preservation conduct, and intent under Rule 37(e), in connection with the motion Nexo itself anticipates (see above). The Subpoena's two categories—counsel communications in the lawsuit's first nine days, and preservation advice provided to Nexo—are aimed at precisely those facts. The burden of identifying what is likely to be a handful of documents is minimal.

**Against that record, Nexo's privilege objections prove too much.** The fact that a party received notice of litigation, and the existence, timing, and recipients of any litigation hold, are not privileged. *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 710 F. Supp. 3d 794, 802 (N.D. Cal. 2024) (compelling disclosure of hold recipients and dates; plaintiffs are "entitled to information to evaluate whether [a defendant] has met its preservation obligations"). And on a preliminary showing of spoliation—which the timeline above supplies—even presumptively privileged litigation-hold materials

---

these communications, *see*, e.g., RFP 3 ("Nexo will produce all non-privileged documents and communications in its possession, custody or control concerning Plaintiff."); RFPs 4, 18, 31, 69 (court-ordered documents regarding Plaintiff's claims against Nexo, Dkt. 69; 66-1). However, Nexo refuses to produce or log them. Plaintiff respectfully seeks an order compelling Nexo to do so.

are discoverable. *Thomas v. Cricket Wireless, LLC*, 2020 WL 7344742, at \*3 (N.D. Cal. Dec. 14, 2020) ("basic details" about litigation holds are "fair game," including "when and to whom the litigation hold notices were given"); *Thomas*, 2021 WL 1017114 (N.D. Cal. Mar. 16, 2021) (ordering production of the hold letters themselves after admitted destruction and evasive 30(b)(6) testimony); *Major Tours, Inc. v. Colorel*, 2009 WL 2413631, at \*1–2 (D.N.J. Aug. 4, 2009) (adopting "prevailing view" that "when spoliation occurs the letters are discoverable"). *Mon Cheri* and *Ryan Investment* hold only that a party need not categorically log its communications with litigation counsel; neither excuses Nexo from stating whether responsive documents exist and whether any are being withheld, Fed. R. Civ. P. 34(b)(2)(C), 26(e), and neither immunizes the basic facts of notice and preservation from discovery where the record already shows post-complaint deletion. Cress does not seek wholesale logging of Nexo's communications with counsel. He seeks two narrow, dated categories that will establish Nexo knew, what it was told, and what it deleted anyway.

**Nexo's invocation of the Trenchev deposition is a red herring.** It is offered to distract from the dispositive defect described above: certified discovery responses stating that no preservation documents exist, alongside a motion premised on counsel possessing the very files at issue. The Subpoena seeks documents—what counsel actually advised Nexo about preservation, and counsel's communications with Nexo in the lawsuit's first nine days—not a witness's after-the-fact recollections. And Dkt. 120 resolved a request for additional deposition time; the finding that Cress had not shown Trenchev "insufficiently prepared" to testify is not a finding that Nexo adequately preserved documents, much less a ruling that preservation materials are beyond discovery on a record of post-Complaint deletion. Adequate preparation is not adequate preservation.

In any event, Trenchev's testimony proves Cress's point: Nexo's designee on "document preservation, litigation holds, [and] ESI collection," **Exhibit H**, Trenchev Dep. Tr. (Vol. 1) at 12:24–13:4, testified that he knew nothing about what Nexo actually did. Asked whether Nexo issued a litigation hold, he answered: "Can you define litigation hold for me?" *Id.* at 42:17–19. Each "above and beyond" assurance Nexo quotes is Trenchev recounting what "the legal team at the time had told me." *Id.* at 40:6–13; *see also* 59:10–18, 78:3–7, 116:22–117:4. In the lines immediately following the passage Nexo cites, Trenchev admitted: "Q. But you don't know exactly which communications and documents were collected, do you? A. I don't have specific memory what was collected then, no." *Id.* at 82:5–8. He also could not say whether Nexo consulted counsel before implementing the Slack retention-policy changes. *Id.* at 118:7–24 ("I do not remember."). And the "kept indefinitely" default describes 2018, *Id.* at 34:5–11—the very default Nexo replaced with targeted deletion rules days after the Complaint. Nexo's half of this letter is similarly silent: it identifies not one concrete preservation step—no hold notice, no suspended deletion rule, no custodian instructed, no date.

**Cress's final proposed compromise.** The Court should deny the motion. But this dispute can be resolved without reaching it, on terms Nexo's own representations supply: (1) within seven days, Nexo searches the files transferred from Eversheds and Nexo's corporate files for documents within the two Subpoena categories; (2) Nexo produces all non-privileged responsive documents and serves supplemental responses to RFP Nos. 269–273, 283, 290, and 291 under Rule 26(e), stating pursuant to Rule 34(b)(2)(C) whether any responsive documents are being withheld (including identifying documents withheld on the basis of privilege on a log); (3) the Subpoena is held in abeyance pending compliance and is withdrawn without prejudice upon it; and (4) only if Nexo fails to comply must Eversheds respond, subject to its own objections. Cress proposed this resolution before this letter was filed; Nexo refused. Ex. E. If, as Nexo represents to the Court, its counsel already "has the communications at dispute," this compromise costs Nexo nothing—unless its March 13 responses cannot survive the search.