June 18, 2026

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:    *John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH
       JOINT DISCOVERY LETTER REGARDING PLAINTIFF'S CHALLENGES TO NEXO'S
       REVISED PRIVILEGE LOG

Dear Judge Hixson:

The parties submit this joint letter regarding a dispute concerning whether Nexo should be compelled to produce documents withheld on its revised privilege log on assertions of attorney-client privilege and work-product protection.

**Attestation**

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred in good faith to resolve the disputes set forth below.


Dated: June 18, 2026                    TAYLOR-COPELAND LAW

                                        By: /s/ James Taylor-Copeland

                                        Attorneys for Plaintiff


Date: June 18, 2026                     BAKER & MCKENZIE LLP

                                        By: /s/ Ian S. Shelton

                                        Attorneys for Defendant

0

**PLAINTIFF'S POSITION.** Plaintiff challenges 177 entries on Nexo's privilege log **(Ex. A** is attached in the original format. **Ex. B** is reformatted for ease of viewing). As the party asserting privilege, Nexo "bears the burden of proving each essential element," *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009), and the privilege is "strictly construed" because it "impedes full and free discovery of the truth." *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). Nexo's log must describe each withheld document in a manner that will "enable other parties to assess the claim," Fed. R. Civ. P. 26(b)(5)(A)(ii), including by identifying the attorney involved. *Dole v. Milonas*, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989). These designations fail for several independent reasons, each sufficient on its own to compel production: (A) Nexo misidentifies non-attorneys as "in-house counsel"; (B) 149 standalone documents identify no attorney (or even non-attorney "in-house counsel") and rest on vague, conclusory descriptions that the log's own "Author" and "All Custodian" metadata refute; (C) reflexively copying counsel on operational business email does not create privilege; (D) automated project-management notifications and broadly distributed Slack messages are business records, not confidential legal communications; and (E) the challenged attachments have no independent basis for protection. Nexo bears the burden as to each withheld document and cannot meet it on any ground.

**A. Nexo Misidentifies Non-Attorneys as "In-House Counsel."** Nexo protests that it never "conceded" these individuals are non-attorneys, but its own submissions make the concession for it: *First*, Nexo previously identified members of its purpoted "in-house conusel" as relevant custodians in this case. Dkt. 64 at 6 (Arguing Dobrev was a "custodian[] that Nexo has identified as having documents related to Cress"). Nexo now backtracks on its previous representations to this Court to argue that Dobrev's documents are privileged. *Second*, the Veleva Declaration identifies Kostov, Nedkova, Dimov, Yankova, and Dobrev as members not of Nexo's legal department but of NDS EOOD's—a separate Bulgarian company "to which Nexo outsources…legal services"—and Nexo defends them only on the ground that Bulgarian law "does not require" in-house counsel "to be registered attorneys-at-law admitted to a Bar Association." That defense fails on its own terms. The opinion letter reasons that because Bulgarian and EU law oblige lawyers to keep client communications confidential, privilege "shall also apply" to in-house jurists as a "logical conclusion." But an ethical duty of confidentiality is not an evidentiary privilege. Nexo's memo concedes that the EU's Akzo Nobel line excludes in-house counsel in EU investigations and the Declaration never states that any of the five holds even the "legal capacity" on which the theory depends—only that NDS's lawyers possess it "[a]s a rule."

The choice of law is not close. Courts in the Ninth Circuit apply the "touch base" analysis, deferring to the law of the country with the "predominant" or "the most direct and compelling interest" in whether the communications remain confidential. *Cadence Pharms., Inc. v. Fresenius Kabi USA, LLC*, 996 F. Supp. 2d 1015, 1019–20 (S.D. Cal. 2014). "American law typically applies to communications concerning 'legal proceedings in the United States' or 'advice regarding American law.'" *Id.* at 1020. The withheld documents concern an SEC settlement, California DFPI investigation, U.S. licensing and registration, and U.S. litigation. They do not merely touch base with the United States—they are centered on it. And under U.S. law, communications with an unlicensed person are not privileged: "American law . . . gives no protection to the communications of an unlicensed attorney." *Anwar v. Fairfield Greenwich Ltd.*, 982 F. Supp. 2d 260, 264–66 (S.D.N.Y. 2013) (citation omitted).

Nexo's agency cases do not fill the gap. *Chen* addresses employees communicating *with counsel* at their superiors' direction, 99 F.3d 1495, 1502 (9th Cir. 1996), and *Sanmina* extends privilege only to third parties "engaged to assist the attorney," because where "the advice sought is not legal advice" from a lawyer, "the privilege does not exist." 968 F.3d 1107, 1116 (9th Cir. 2020). Veleva's blanket declaration that the five "work (worked) under [her] supervision" (Ex. C ¶ 10) cannot supply the missing entry-by-entry proof: blanket assertions are "extremely disfavored," *Clarke v. Am. Com. Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992), and Nexo's log never places Veleva on these communications—the only entry naming her as the source of advice (PRIV-0000066) is an email she neither sent nor received. *Infra* § C.

**B. Standalone Documents With No Identified Attorney.** The largest category—149 challenged entries—consists of standalone documents for which Nexo identifies no attorney involvement. Instead, Nexo applies generic labels across dozens of entries: fourteen entries (PRIV-0000142–155) say only "Draft statement re: SEC settlement," and twenty more say only "Document reflecting legal advice provided by in-house counsel." Descriptions like these identify no author, no attorney, no recipient, and no specific advice—and a vague claim that a document "'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged." *Dolby Lab's Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 866 (N.D. Cal. 2019); *see Clarke*, 974 F.2d at 129.

Nexo's claw back of "SEC Agenda for March" (PRIV-0000289) is illustrative. The document was found in Kantchev's files and Nexo does not identify any attorney involved in its creation. It nevertheless asserts that the document was "prepared by outside counsel in connection with an SEC investigation." But nowhere on Nexo's log is there any record of this memo being sent by outside counsel to Kantchev or anyone else at Nexo. And Nexo's complaint that Plaintiff's reliance on this entry is "improper" is baseless: Plaintiff has deleted the document and the challenge is based on Nexo's own log description.

Nexo's work-product designations fail for the same lack of foundation. Work product protects a document only if, under the "totality of the circumstances," it "would not have been created in substantially similar form but for the prospect of litigation." *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011). The All Custodian field shows these documents resided with non-attorney executives—Trenchev, Kantchev, and its Head of PR Hristova—and the compliance reports (e.g., PRIV-0000235), and NEXO Token memoranda among them are precisely the business records Nexo would create in the ordinary course with or without litigation. Draft public statements and press releases about the SEC settlement are public-relations documents, not litigation materials.

**C. Copying Counsel on Business Email Does Not Create Privilege.** Nexo claims privilege over ten emails authored by and addressed to non-attorney business personnel concerning operational matters: the NEXO Earn product, token utility conversion, liquidation relief processing, and client servicing. In one (PRIV-0000290), an email between Dinca and Kantchev, no attorney is involved (**Ex. C**). In eight, attorney Bianca Veleva or the legal@nexo.io distribution list appears only in the CC field, among as many as eight copied recipients (e.g., PRIV-0000010). In the tenth, PRIV-0000066, Nexo names Veleva as the source of legal advice—yet she appears nowhere in the From, To, or CC fields. Because in-house counsel "serve multiple functions," there is no presumption that communications involving them are privileged; Nexo must make a "clear showing" that each communication was made for the purpose of obtaining or providing legal advice. *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). A dual-purpose communication is privileged only if its primary purpose was legal advice, *In re Grand Jury*, 23 F.4th 1088, 1091–92 (9th Cir. 2022), and in a clear business setting the Court should sustain privilege only on "a clear evidentiary predicate" that each communication was made primarily for that purpose, *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238–39 (N.D. Cal. 1990). Nexo offers nothing but the reflexive copying of its legal department on operational email—a practice that does not transform business communications into privileged ones. *Valmarc*—Nexo's only authority—denied a senders-and-recipients challenge where the log identified the named attorneys whose advice each email reflected, together with each email's recipients, dates, and a "specific basis" for the claim. Nexo's entries supply the opposite: an attorney who appears on no email, a distribution-list CC, or no legal personnel at all. And privilege cannot lurk in "prior messages in the chain" that Nexo never identifies, logs, or ties to any attorney.

**D. Project-Management Notifications and Slack Messages Are Not Privileged.** Nexo withholds seven automated Confluence/Jira notifications (PRIV-0000156–161, -0000163) concerning a "Governance Vote - Release Checklist" and "USA Licenses and Registrations." A product-management tracker is a business record. That some tracked tasks involve legal review does not convert an automated platform notification into a confidential attorney-client communication. (PRIV-0000163 also attributes

its "legal advice" to Marina Yankova, a non-attorney. *Supra* § A.). The Slack messages are worse. PRIV-0000001 is a message posted to a channel named "legal-retail-sales" and distributed to 45 recipients across Nexo's sales, marketing, and operations staff. A communication broadcast that widely is not "made in confidence" for the purpose of securing legal advice, *Ruehle*, 583 F.3d at 607, and Nexo has made no showing that the dozens of recipients sought, provided, or needed legal advice. PRIV-0000003's author—whom the log itself calls "in-house counsel"—is Kostov, a non-attorney. *Supra* § A.

**E. Attachments Lack Any Independent Basis for Privilege.** Finally, Nexo withholds five documents solely because they were "attached to" purportedly privileged emails (PRIV-0000020, -0000022, -0000031, -0000053, -0000117). A document does not become privileged by traveling with a privileged email; each attachment must independently satisfy the elements of privilege. *Dolby*, 402 F. Supp. 3d at 866. Nexo's own Author field shows that two of the five (PRIV-0000020, -0000022) were authored by non-attorney Viktor Dimov, and several of the parent emails are themselves challenged. *Supra* § C.

**F. Relief Requested. Exhibit A** (Column S) sets out the specific deficiency and demand for each of the 177 challenged entries. Plaintiff respectfully requests that the Court overrule Nexo's designations and order production of the challenged documents. In the alternative, Plaintiff requests that the Court conduct an in camera review of a representative sample of the challenged documents—a procedure committed to the Court's sound discretion. *In re Grand Jury Investigation*, 974 F.2d 1068, 1074–75 (9th Cir. 1992).

**NEXO'S POSITION.** After unsuccessfully attempting to subpoena privileged documents from Nexo's former outside counsel at Eversheds (Dkt. 128), Cress now seeks to compel production of voluminous privileged documents from Nexo's in-house legal department. In doing so, he dredges up a four-month-old dispute that ignores the parties' meet-and-confer efforts and the good-faith revisions Nexo already made to its privilege log. (**Exhibit D**, March 11, 2026 Meet and Confer Correspondence). Nexo has properly asserted its privilege claims.[1] The Court should reject Cress's unprecedented effort to eviscerate the long-standing privilege protections applicable to the communications and legal work product of in-house counsel. In the unlikely event the Court grants Cress's motion to compel, Nexo respectfully requests that the Court stay any production order pending resolution of Nexo's anticipated emergency petition to the Ninth Circuit. *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1491 (9th Cir. 1989) (recognizing availability of mandamus relief).

**A. Nexo's In-House Counsel Are Attorneys.** Cress's principal argument—that Nexo's Bulgarian in-house attorneys are not attorneys because they "do not appear in the Bulgarian Unified Register of Lawyers ('the Register')" is baseless. **Exhibit E**, Cress's Feb. 26, 2026 Meet and Confer Letter.

*First*, as Nexo's Legal & Regulatory Compliance Team explains in **Exhibit F**, all members of Nexo's in-house legal team are Bulgarian attorneys who have "legal capacity" to give privileged advice to Nexo under Bulgarian law. Neither registration in the Bulgarian Register nor admission to a Bulgarian Bar Association is required for corporate (in-house) legal counsel to possess legal capacity and claim privilege. While independent attorneys-at-law practicing as members of the Bar under the Bulgarian Bar Act also have legal capacity, **both** members of the Bar **and** in-house counsel in Bulgaria have legal capacity and are entitled to invoke the legal professional privilege. All challenged attorneys—Rosen Kostov, Olga Nedkova, Viktor Dimov, Marina Yankova, and Bozhidar Dobrev—are attorneys and properly qualified in-house legal counsel in Bulgaria. **Exhibits F, G**. Both Bianca Veleva and Alexander Sardanov are also members of Bulgarian Bar Associations. The Declaration of Bianca Veleva (**Exhibit**

---

[1] Plaintiff's privilege log underscores the point: *every* entry designated by Cress as "Attorney Work Product" uses the generic description "Attorney work-product created in anticipation of litigation and for legal purposes in the Nexo lawsuit." Likewise, nearly every entry marked as "Attorney-Client Privilege" uses the description "discussing legal advice with attorney . . . about the Nexo lawsuit." Notably, Cress's own privilege log contains numerous entries for documents that do not identify the author, recipient, or any attorneys involved and merely provide a generic description, such as "containing Attorney work product created in anticipation of litigation and for legal purposes."

**G**), Nexo's Chief Legal and Regulatory Officer, affirms that the challenged attorneys are qualified and that their communications are "protected from disclosure by the legal professional privilege under Bulgarian and European (EU) law." (*Id.* ¶ 8). Nexo also provides a Legal Opinion Letter issued by Georgiev & Petrov Law Firm affirming that in-house attorneys have legal capacity and are entitled to invoke the privilege under Bulgarian law **(Exhibit G-1)**. Cress provides no evidence to the contrary.[2]

*Second*, beyond the legal status of Nexo's in-house attorneys, there is no dispute that Ms. Veleva is a registered attorney-at-law and admitted to the Sofia Bar Association.[3] As confirmed by her declaration, all the challenged attorneys were working under her supervision and at her direction (**Exhibit G.**) The Ninth Circuit recognizes that attorney-client privilege extends beyond attorneys to include communications involving employees or agents who act at the direction of counsel or facilitate the provision of legal advice. *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) ("The attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice"). Courts protect communications with non-lawyer personnel, *e.g.*, legal staff, compliance professionals, paralegals, and other agents, where those communications are part of the process of rendering legal advice. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) ("The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice.").

Finally, even under Plaintiff's "touch base" theory, the result is the same. The communications at issue concern regulatory enforcement, licensing, and litigation strategy—quintessentially legal matters—and were generated within Nexo's legal function and under Ms. Veleva's purview (**Exhibit G.**) To the extent any matters involved U.S. law, they implicated foreign entities who employed in-house attorneys duly authorized to practice law and exercise the privilege in their jurisdiction. Cress's attempt to eviscerate the privilege by imposing U.S. licensing formalities on Bulgarian attorneys is contrary to law.

### B. The "Standalone Documents" Are Privileged Because They Reflect or Facilitate Legal Advice.[4]

Plaintiff challenges "standalone" documents because "no attorney is identifiable from the Author, Email From, Email To, or Email CC fields." *See* generally, **Exhibit A,** Column S. This argument rests on a flawed premise: that a document must identify an attorney on its face to be privileged. That is not the law. A document is privileged if it is created to obtain, provide, or memorialize legal advice, or if it is prepared at the direction of counsel in anticipation of litigation. *Chen*, 99 F.3d at 1502. Nothing requires that an attorney be listed as the document's "author" for privilege to attach.

These challenged materials include, as Cress acknowledged in his initial meet-and-confer letter, "draft statements, memos, reports, and cease-and-desist responses." *See*, *e.g.*, Cress's Feb. 26, 2026 Meet and Confer Letter, **Exhibit E**, at 1. They contain filenames such as "[California Department of Financial Protection and Innovation] Proposed Resolution" (PRIV-0000116); "Legal Comments" (PRIV-0000128); "Action Plan for Separation of Nexo-s U.S. Business," (PRIV-0000239); and "STRICTLY CONFIDENTIAL AND LEGALLY PRIVILEGED" (PRIV-0000277). In other words, they are facially legal documents. It is therefore unsurprising that these materials were prepared by attorneys, as explained above, or at the direction of counsel in anticipation of litigation and/or reflect legal advice. The fact that

---

[2]  Nexo observes that the members of Nexo's in-house legal department are formally employed by the Nexo affiliate NDS EOOD (a Bulgarian entity) rather than Nexo Capital Inc. (a Cayman Islands entity). Nexo uses a Bulgarian entity to employ its Bulgarian employees. This fact is irrelevant because in-house privilege extends to communications among interrelated corporate affiliates that are closely affiliated or share an identity of legal interests. *Am. Fed'n of Musicians v. 212 Prods. LLC*, No. 20-cv-07255-JAK-KS, 2021 U.S. Dist. LEXIS 252718, at *24 (C.D. Cal. Sep. 27, 2021) (citing *Music Sales Corp. v. Morris*, 1999 U.S. Dist. LEXIS 16433, at *21-22 (S.D.N.Y. Oct. 22, 1999)).

[3]  *See*, *e.g.*, Registers of the Bulgarian Bar Association, Registration of Bianca Veleva at https://public.bar-register.bg/attorney/1300622110; *see also* **Exhibit E** (admitting that "with the exception of Bianca Veleva, we have been unable to find any evidence that any of these individuals are licensed attorneys."); *see also* Registration of Alexander Sardanov, at https://public.barregister.bg/attorney/1000153540.

[4] At least 15 of these challenged documents have a Nexo attorney identified on its face.

such documents reside in business custodians' files or are stored as Google Docs reflects modern corporate workflows and does not destroy privilege. Nexo's log provides sufficient context to support its privilege claims over these documents, including the "All Custodian" field for each of these documents, which shows the Nexo personnel who had copies of these files in their Google Workspaces; the bases for withholding or redacting; and an adequate description of the contents and subject matter. While the majority of these files are not emails so certain metadata simply does not exists, where applicable, Nexo also provides the "Email From" and "Email To" fields.[5]

Cases rejecting privilege for documents that merely "reflect" legal advice involve records lacking any indication that they were prepared for or at the direction of counsel—unlike here, where Nexo's log identifies the legal function, context, and purpose of each document. Cress's illustrations, rather than bolstering his argument, undermine his claims. For example, PRIV-0000289, which Nexo clawed back,[6] has the subject "SEC Agenda for March," and Nexo's privilege log description explains that this "agenda" was "a document that was prepared by outside counsel in connection with an SEC investigation and a planned call with the SEC." Documents described as drafts of responses to regulators or agendas for SEC-related meetings are inherently legal in nature. Many of these materials also qualify as work product because they were prepared in response to regulatory scrutiny and anticipated enforcement risk.

**C. The Absence of Attorneys in the From, To Fields Does Not Defeat Privilege.** Plaintiff's focus on whether an attorney appears on the face of an email is misplaced. Email metadata fields capture only the outermost layer of a communication. They do not reflect prior messages in the chain or embedded legal advice. Courts therefore reject attempts to deny privilege based solely on whether counsel appears in the "To," "From," or "CC" fields. *See, e.g.*, *Valmarc Corp. v. Nike, Inc.*, No. 3:21-CV-1556-IM, 2024 WL 166101, at *2 (D. Or. Jan. 16, 2024) (finding that the challengers' "senders or recipients" argument was unsupported where the privilege log entries show the recipients of the emails, when those emails were sent, and a specific basis for the attorney-client privilege). That is the case here. Nexo's privilege log descriptions make clear that the challenged communications seek, convey, or discuss legal advice from Nexo's legal team and/or reflect attorney guidance provided in underlying communications. Moreover, several of the challenged emails do, in fact, involve in-house legal personnel directly (*e.g.*, four of these ten documents are to or from Nexo's in-house counsel Viktor Dimov, and two others copy Nexo's CLO Ms. Veleva). All reflect internal discussions implementing or relaying legal advice, and are protected.

**D. Project-Management Notifications and Slack Messages That Reflect Legal Analysis Privileged.** Cress again errs in dismissing project-management tools and internal messaging platforms as categorically "business" communications. Communications on platforms such as Slack, Jira, or Confluence are privileged when they request, convey, or reflect legal advice. The challenged materials here do exactly that. They track legal review, ongoing regulatory compliance tasks, and the implementation of attorney guidance.

**E. The Challenged Attachments Are Independently Privileged.** Nexo does not contend that attachments are privileged merely because they were transmitted with privileged emails. Rather, each challenged document is privileged in its own right because it (i) reflects legal advice, (ii) was prepared at the direction of counsel, or (iii) was created in anticipation of litigation or regulatory action. The authorship of these documents—whether by legal personnel or those acting at counsel's direction— further confirms their privileged character (two of which are authored by Nexo's in-house counsel Viktor Dimov; others have filenames and descriptions identifying them as legal agreements and consent orders. Accordingly, the challenged attachments have an independent and sufficient basis for protection.

---

[5] *E.g.*, PRIV-0000055, -56, -62, -64, and -65 from Nexo in-house legal counsel "Rosen Kostov (Google Docs) <comments - noreply@docs.google.com>".

[6] Nexo is seriously concerned by Cress's reliance on a document that Nexo clawed back and whether Cress deleted the document from his database, notwithstanding his ethical obligation to do so. His reliance on the document is improper.