June 24, 2026

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:    *John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH
       Joint Discovery Letter Regarding Plaintiff's Seventh Set of Requests for Production and
       Interrogatory No. 23

Dear Judge Hixson:

The parties submit this joint letter regarding a dispute concerning whether Nexo should be compelled
to search for and produce documents responsive to RFPs 296, 300–301, 303–310, 312–323, 325, 328–
330, 333, 338–345, and 350–380 and to answer Interrogatory No. 23.

**Attestation**

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred in good faith
to resolve the disputes set forth below.

Dated: June 24, 2026                 TAYLOR-COPELAND LAW

                                     By: /s/ James Taylor-Copeland

                                     Attorneys for Plaintiff


Date: June 24, 2026                  BAKER & MCKENZIE LLP

                                     By: /s/ Ian S. Shelton

                                     Attorneys for Defendant

0

**PLAINTIFF'S POSITION.** Cress seeks an Order compelling Nexo to search for and produce documents responsive to RFPs regarding his RICO claims and the CPA between him and Nexo (**Exhibit A**) and respond to Interrogatory No. 23 (**Exhibit B**) (Cress objects to "Defendant's Response" in Exhibit A containing additional argument beyond the 5 pages permitted, and in lieu of compromises). Nexo did not agree to produce a single additional document in response to any of Plaintiff's 85 Requests (Nos. 296–380): Nexo refused outright to produce any documents in response to 40 Requests, claimed that no responsive documents exist as to another 13, and for the remaining 32 pointed exclusively to documents it says it already produced—expressly limiting 14 of those responses to documents concerning Cress alone. Nexo's objections rest almost entirely on boilerplate coupled with two unilateral limitations the Rules do not permit: Nexo refuses all discovery framed around the pleaded "Nexo Enterprise," and it narrows numerous Requests to Cress alone. The party resisting discovery bears the burden of substantiating its objections. Nexo's boilerplate assertions do not satisfy that burden.

**A. The Enterprise and Its Operation Are Relevant.** Cress pleads a RICO enterprise—the "Nexo Enterprise"—comprising Nexo Capital, affiliated Nexo entities, NDS EOOD, Credissimo, and Antoni Trenchev and Kosta Kantchev. SAC ¶¶ 206–14. In denying Nexo's motion to dismiss this claim, the Court held that Cress plausibly alleged an enterprise distinct from Nexo Capital, with relationships among its members and longevity, a common purpose of maximizing profit by fraudulently concealing fees and commissions, and a pattern of wire-fraud predicate acts. Dkt. 98, at 27-36. Relevance is therefore not an open question. The enterprise is an element Plaintiff must prove. See *United States v. Turkette*, 452 U.S. 576, 583 (1981). Discovery into how the Nexo entities are owned, governed, and staffed—and how money and digital assets move among them—goes to proving this element. Indeed, Nexo itself propounded RFPs and Interrogatories 20–22 (**Ex. C**) demanding that Cress detail the membership, roles, and operation of the very same enterprise. Nexo may not treat the enterprise as a proper subject of the discovery it serves while declaring it irrelevant to the discovery it must answer. That most Nexo entities were dismissed for lack of personal jurisdiction is no answer: Plaintiff seeks Nexo Capital's own records, not discovery from non-parties, and Rule 26 relevance does not turn on a party's status—particularly where the Court sustained the enterprise allegations after those dismissals.

**B. Nexo's Limitation to "Plaintiff-Only" Documents Is Improper.** A pattern of racketeering activity generally cannot be proven from a single customer's account. Here, the predicate acts include both Nexo's representations to Cress and its other customers, such as Nexo using "emails and the Internet to communicate false statements to customers regarding fees, transmit false trade confirmations, and circulate internal documents that directed how to conceal the fees from customers." Dkt. 98, at 33–34. Documents concerning Nexo's treatment of other U.S. customers are thus not peripheral; they are the predicate acts evidencing a pattern of racketeering activity. The limitation is starkest for RFP 317, which seeks documents referencing Nexo's internal instruction "WE SHOULD NEVER, UNDER ANY CIRCUMSTANCES MENTION THERE IS A LIQUIDATION TAX"; that directive is company-wide by its terms and limiting it to material "as it relates to Plaintiff" is nonsensical. In addition, this Court has already ruled that documents relating to other customers can be relevant, e.g., communications regarding Nexo's VIP relationship Program, customer support availability, and reimbursement of customers in connection with liquidations. Dkt. 69 (RFPs 4, 7, 31).

**C. Requests Nexo Refuses Outright (RFPs 306, 315, 329, 339–345, 351–354, 356–380). Enterprise structure, finances, and intercompany flows (339–345, 351–354, 356–380).** The SAC alleges—and Nexo's documents and corporate representatives confirmed at deposition—that the affiliated entities named in RFPs 356–378 share common ultimate ownership (Kantchev), common management (Kantchev and Trenchev as directors of multiple entities), commingled funds and assets, and operate the integrated "Nexo" brand without observing corporate formalities or arm's-length dealing among themselves. SAC ¶¶ 207–09; Trenchev Tr. 17:1–19:23 (**Ex. D**); Trenchev Tr. 306:18-307:10; Tonkov

Tr. 263:1-25 (**Ex. E**); *See also* CPA (**Ex. F)** between "Nexo (any holding companies, subsidiaries or related entities, all of which are hereinafter referred to as 'Nexo')" and Cress. Under the loan terms, any "holding company, subsidiary, or entity belonging to or under the Nexo brand" could take title to a customer's collateral, including Cress's. Trenchev Tr. 146:6–147:21. How fee and liquidation revenue moved among these entities, and to Trenchev and Kantchev (RFPs 379–380), is thus direct evidence of how the enterprise operated and where the proceeds of the alleged concealed-fee scheme went.

Nexo's "fishing expedition" objection inverts the analysis. Nexo relies on *PMC, Inc. v. Ferro Corp.*, 131 F.R.D. 184 (C.D. Cal. 1990), but *PMC* bars only discovery into transactions "unrelated to the allegations of the complaint," where the plaintiff "concede[d] that it has no basis" for alleging fraud beyond the single transaction at issue. *Id.* at 187–88. *PMC* expressly permits the discovery where the plaintiff makes "a threshold factual showing demonstrating that discovery into transactions . . . are reasonably calculated to lead to admissible evidence," or pleads fraud consistent with Rule 9(b). *Id.* Cress has done both: the Court has already found his enterprise and wire-fraud allegations adequately pleaded (Dkt. 98), and the entities and individuals at issue are the enterprise members he pleaded—not unrelated third parties.

Nexo's possession-and-control objection also fails. The payment Requests (RFPs 356–380) seek Nexo's own records of payments it sent or received. Those documents are within Nexo's files regardless of any affiliate's status. Plaintiff has offered to narrow these Requests to "documents sufficient to show" fund flows rather than complete account records. Nexo's categorical refusal across an entire category of Requests is improper.

**D. Rog. 23 (enterprise transfers).** These same fund flows are the subject of Rog 23 (**Ex. B**) which asks Nexo to identify transfers exceeding $5,000 between Nexo Capital and the enterprise members. Such records are "repeatedly permitted in RICO actions to assess the financial relationship among the defendants, the structure of the enterprise, measure the scope and extent of defendant's fraud, prove motive, … and to establish damages." *Brown v. Tax Ease Lien Servicing, LLC*, 2016 WL 10788070, at *10 (W.D. Ky. Oct. 11, 2016)). This is not the "unrelated" discovery *PMC* bars: the counterparties are the pleaded enterprise members, and the movement of funds among them is the conduct of the enterprise's affairs. *Jones v. Deutsche Bank AG*, No. C 04-5357 JW (RS) (N.D. Cal. Mar. 10, 2006) (distinguishing *PMC*; a plaintiff is entitled to "discovery to test the truth" of enterprise allegations, and a defendant may not "unilaterally" refuse production on its own view of the enterprise's scope).

**E. Roles, policies, drafts, and media (306, 315, 329).** RFP 306 (roles and responsibilities of each enterprise member) seeks the very information Nexo demands from Plaintiff in its Interrogatories 20–22, and bears directly on who operated the OTC Desk and set and concealed its fees. RFP 315 (policies and training on what to disclose or withhold about OTC fees and markups) is core scienter evidence; it pairs with the internal directives already in the record—the "liquidation tax" instruction (RFP 317) and the memo stating that Nexo tells customers it charges no commission "while in fact we do" (RFPs 315, 318). SAC ¶¶ 219–20. RFP 329 (Nexo's communications with media about its fee policies) is relevant to knowledge, falsity, and the wire-fraud predicate—whether some statements also appear online is no basis to withhold Nexo's own communications.

**F. Requests Nexo Has Limited or Left Unconfirmed (296, 300–301, 303–305, 307–310, 312–314, 316–320, 322–323, 325, 328, 330, 333, 338, 350, 355).** Here, Nexo states only that it "previously produced" documents—often "as to Plaintiff"—without confirming whether additional responsive, non-Plaintiff documents are being withheld. Rule 34(b)(2)(C) requires Nexo to state whether it is withholding documents on the basis of its objections. The limitation is not a matter of burden: Nexo represents that it already searched platform-wide and produced its personnel's communications with other customers regarding fees, so confining the remainder to Cress is a choice, not a necessity. Nor are the documents Cress-specific. The pricing and disclosure Requests (RFPs 312–320) reach a practice that was not unique

2

to Plaintiff: Nexo's managing partners would provide customer-specific prices and fees for OTC transactions, Nexo's VIP relationship managers would facilitate the trades with the fee given by the managers, Nexo's trading and trading operations teams would record and verify prices and profits, and would be compiled by Nexo's finance department, and Kantchev was ultimately responsible for "confirm[ing] the deposit is received." Dinca Tr. 95:7-11, 221:14-22 (**Ex. G**); Tonkov Tr. 34:1–36:17 (**Ex. E**). Despite Nexo representing it had a #ZeroFees policy across a wide range of products and "no hidden fees," Hristov testified in 2021 "fees were charged for the majority of the products on the platform and the OTC desk." Hristov Tr. 37:8-13 (**Ex. H**). Where Nexo's customers' fees went is thus relevant.

Nexo's objections also contain specific deficiencies. RFP 296 seeks sufficient documents to show ownership, governance, and management of each enterprise member, yet Nexo points only to a single organizational chart (**Ex. I**), which shows none of those things. The "relationships among those associated with the enterprise" are an element of Plaintiff's claim, *Boyle v. United States*, 556 U.S. 938, 946 (2009), and Nexo demands the same information from Plaintiff. RFPs 322–323 concern Nexo's CPA obligations to confirm purchase orders within the ten-minute "Review Period" and to deliver assets "free and clear of any and all Liens"—the duties Plaintiff alleges Nexo breached—so Nexo's internal documents about those obligations bear on intent and must be confirmed complete.

**G. Plaintiff's Motion Is Timely.** Nexo's delay argument fails. Nexo served its objections on March 20, 2026 while the parties were in the midst of numerous international depositions. Plaintiff raised every dispute in a detailed May 12 meet-and-confer letter and Nexo responded on May 21—standing on all objections. Plaintiff provided his portion of this joint letter on June 5; Nexo then held it nearly two weeks, forcing Plaintiff to follow up four times while Nexo's counsel ignored Plaintiff's, returning its final response only on June 24 (**Ex. J**). "A motion to compel filed during the discovery period would rarely be considered untimely." *See Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999).

**NEXO'S POSITION.** Cress's latest motion to compel is an eleventh-hour attempt to force sweeping, irrelevant, and grossly disproportionate discovery that has no legitimate connection to the claims in this case. It is also an improper effort to revive, through discovery, claims and parties that were long ago dismissed for lack of personal jurisdiction. To this day, Cress has failed to plead how any alleged member of the enterprise beyond Nexo Capital and NDS EOOD ("NDS")[1] has any connection to the facts of this case. Although the Nexo entities are no longer part of this litigation, Cress now seeks to obtain expansive discovery about those entities through a backdoor "enterprise" theory untethered to the limited "undisclosed fee" allegations supporting the RICO claims.

On February 7, Cress served requests demanding, among other things, *every* financial document (e.g., RFPs 343, 344, 345), *every* corporate document (RFP 340), and *every* contract (e.g., RFP 342) for *every* purported member of the supposed "enterprise," as well as *every* payment to or from Antoni Trenchev and Kosta Kantchev (RFPs 379–80), all without any meaningful limitation. Nexo timely objected. Then, months later, on May 12, Cress sent a meet-and-confer letter challenging those objections, and Nexo timely responded (**Exhibit F**). Now, only one week before the fact discovery cutoff, Cress submits this letter brief seeking three extraordinary forms of relief: (1) an order compelling facially irrelevant and disproportionate "enterprise" discovery (including ROG 23 asking Nexo to list and explain every cash or crypto transfer between 23 corporate affiliates and 2 individuals over $5,000 without time or subject matter limitation); (2) a class-action style expansion of Nexo's document production obligation; and (3) narrative confirmations for dozens of requests where Nexo already stated either that its production was

---

[1] When denying Nexo's motion to dismiss, the Court held that Cress plausibly alleged a RICO enterprise by analogizing NDS to an outside law firm. Dkt. 98 at 32. In fact, NDS was a Bulgarian corporate affiliate of Nexo Capital (with common corporate parent and ultimate beneficial ownership) that employed Nexo's Bulgarian employees consistent with Bulgarian law. Cress has already obtained substantial discovery about NDS and its communications with Nexo customers, including Cress.

complete or that no responsive documents exist. The Court should reject this effort for what it is: a last-minute fishing expedition seeking irrelevant, overbroad, unduly burdensome, and non-proportional discovery.

**Cress Is Not Entitled to Irrelevant, Far Reaching RICO Discovery.** Cress's RICO allegations are limited to his "undislcosed fee" theory: that "Nexo [Capital] contracts with NDS EOOD to provide employees from its operation. NDS EOOD provides these employees, including Hristov and other employees that are responsible for relaying the fraudulent statements alleged herein to Nexo's customers, including Plaintiff." SAC ¶ 212. As far as predicate acts, Cress alleges that Nexo concealed fees and commissions. SAC ¶¶ 217-234. As it relates to a pattern of racketeering activity, Cress alleges that "[a]dditionally, using the Internet, telephone, and facsimile transmissions to fraudulently communicate false information about these fees to Plaintiff and other customers, to pursue and achieve their fraudulent scheme, the Nexo Enterprise engaged in repeated acts of wire fraud in violation of Title 18 United States Code section 1343." SAC ¶ 227. Cress's enterprise allegations end there. There are no allegations related to how any enterprise member (besides NDS employees) were involved in the scheme to conceal fees. Nor are there allegations that an alleged failure to disclose fees would render all agreements, all financial transactions, and all intercompany balances relevant. Nor does Cress's mischaracterization of deposition testimony bridge that gap. Trenchev's testimony, at most, reflects that Kantchev has financial connections to various Nexo entities, including Nexo Capital. Tonkov's tesitmony does not state that Kantchev sold his personal assets to Nexo customers. But even assuming these allegations are true, it would not support unfettered discovery into every corporate document, every financial document, and every contract for every alleged member of the enterprise—particularly when the SAC does not plead how any alleged enterprise members (other than Nexo Capital and NDS) are connected to the "undisclosed fee" allegations supporting the RICO claims. Cress's authority is distinguishable because those cases had specific allegations connecting the alleged enterprise members to the alleged fraud, and the discovery was tailored to those allegations.

This limited record cannot open the door to the vast discovery Plaintiff seeks. "The need to reasonably limit the scope of discovery is acute for claims brought under the RICO statute." *PMC, Inc. v. Ferro Corp.*, 131 F.R.D. 184, 187 (C.D. Cal. 1990). ("Unfortunately, the *Northwestern Bell* requirement is now being used by RICO plaintiffs to expand the scope of discovery far beyond anything in dispute between the parties. RICO plaintiffs now claim license for broad discovery of documents and transactions having nothing whatsoever to do with the parties and the transaction underlying the RICO claim.") (limiting discovery to where there are specific allegations of fraud by the entity that complies with Rule 9(b)). Cress's specific allegations of wire fraud, at best, only extend to Nexo Capital and NDS. Nexo has already complied with its broad obligations, which has been closely supervised by this Court for years. Nexo named numerous NDS employees as custodians (among the 23 custodians and non-custodial sources ordered by the Court), made productions from those custodians exceeding over 60,000 documents and 250,000 pages, and produced five NDS witnesses for depositions. Cress identifies no specific deficiencies in Nexo's production that are tied to the actual allegations of the case. This motion to compel seeks to re-open, radically expand, and re-do the broad discovery that Nexo has already done.

Cress now proposes that it could limit his enterprise discovery to documents "sufficient to show" and that would cure the issue. But since there are no specific allegations about the Nexo affiliates other than NDS, discovery about those entities would not be relevant or proportional to the needs of the case. For example, Request 342 seeks "all contracts, agreements, memoranda of understanding, side letters, and term sheets between or among any Nexo Entities." How would a document sufficient to show there was a contract between Nexo affiliates advance Cress's claims? The same reasoning applies for each of Nexo's far-reaching enterprise discovery requests. Cress's proposed compromise positions are still irrelevant, overbroad, unduly burdensome, and not proportional.

4

Cress contends that without these documents, he cannot answer Interrogatories 20-22 served by Nexo, which seek his RICO contentions related to the Nexo enterprise and pattern of racketeering activity (ROGs 20-22). The Court should reject this "allegations first, evidence later" approach. Cress's sweeping discovery demands are a last-ditch fishing expedition to support allegations he never had a factual basis to assert, and still cannot substantiate after Nexo's document production and depositions.

Furthermore, most members of the alleged enterprise were previously dismissed from this litigation for lack of personal jurisdiction, and Cress has not subpoenaed any other entity. *See* DE 37 (dismissing Nexo Financial LLC, Nexo Financial Services Ltd., Nexo AG, and Antoni Trenchev for lack of personal jurisdiction). Cress cannot use discovery directed to Nexo Capital to demand discovery from every Nexo affiliate. The fact that Cress still does not plead how these previously dismissed Nexo affiliates have any factual connection to his claims is good reason to deny this motion to compel, rather than allow the fishing expedition discovery Cress seeks.

**Nexo's Limited Plaintiff Only Objections Are Proper and Consistent with the Court's Prior Rulings.** In DE 89, the Court stated that it was "concerned that Plaintiff's motion to compel is seeking class action discovery far beyond what is needed to adjudicate his claims." He is doing the same thing again. For example, Cress seeks "[a]ll liquidation confirmations sent by You to Plaintiff *or any other U.S. customer,* including all internal drafts, templates, and instructions for preparing liquidation confirmations." (RFP 304). Nexo has produced all liquidation confirmations for Cress and for many other U.S. customers. This production includes NDS employees' communications with other customers regarding OTC transactions and fees, consistent with the Parties' agreed search protocol. Many of these documents served as the basis for the deposition testimony cited by Cress in Exhibits A-D.

**Nexo Completed Its Production (296, 300–301, 303–305, 306, 307–310, 312–320, 322–323, 325, 328–330, 333, 338, 350, 355).** For forty requests, Nexo responded that it has previously produced all responsive documents either in the ordinary course, by identifying documents by Bates, or that there were no responsive documents. Cress has no basis to suggest otherwise, other than his own speculation, yet seeks to impose an extremely high burden on Nexo that is not at all supported by law. Absent any showing that Nexo acted in bad faith or withheld responsive documents, Nexo should not be required to recite in narrative the custodians and search methodology for requests.

**Cress Waited Far Too Long to Seek This Relief, and the Motion Can Be Denied on That Basis Alone.** Putting the merits aside, Plaintiff's request is untimely. Cress chose to plead these enterprise allegations in October 2025. Yet he did not serve the discovery requests at issue until February 7, 2026. Nexo then served its objections in March 2026. If Cress believed those objections were improper, he was required to raise the dispute diligently—not sit on it for months and then seek court intervention at the eleventh hour, with discovery nearly closed. That is exactly the type of delay courts reject. *See Gault v. Nabisco Biscuit Co.,* 184 F.R.D. 620, 622 (D. Nev. 1999) (denying motion to compel as untimely where party delayed in seeking relief); *Wyles v. Sussman*, 445 F. Supp. 3d 751, 758 (C.D. Cal. 2020) (denying motion to compel where moving party waited too long and emphasizing that untimeliness alone is a sufficient basis to deny discovery relief); *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1045 (S.D. Iowa 2010) (rejecting last-minute discovery tactics and explaining that a live discovery period does not permit "deadline brinksmanship"). Plaintiff had every opportunity to pursue this issue months ago. He did not. The Court should not reward that delay now by forcing Nexo to undertake sweeping new discovery on the eve of the discovery cutoff.

**Exhibit A** contains Nexo's specific responses to Cress's proposed compromises for 1 ROG and 67 RFPs. The chart shows that Cress's discovery demands are hyper-aggressive, patently unreasonable, and violate the Court's prior prohibition on class-action-type discovery. The Court should deny this motion and reject Cress's proposed compromises, which are not compromises at all.