July 1, 2026

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:    *John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH
       JOINT DISCOVERY LETTER REGARDING PLAINTIFF'S MOTION TO COMPEL

Dear Judge Hixson:

The parties submit this dispute concerning whether Nexo should be compelled to answer Plaintiff's Sixth Set of Interrogatories (Nos. 24–25) and search for and produce documents responsive to Plaintiff's Eighth Set of Requests for Production (Nos. 381–382). Nexo's objections were served June 10, 2026. The discovery requests and responses at issue are attached as Exhibits A and B.

**Attestation**

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred in good faith to resolve the disputes set forth below.

Dated: July 1, 2026                     TAYLOR-COPELAND LAW

                                        By: /s/ James Taylor-Copeland

                                        Attorneys for Plaintiff


Date: July 1, 2026                      BAKER & MCKENZIE LLP

                                        By: /s/ Ian S. Shelton

                                        Attorneys for Defendant

0

**PLAINTIFF'S POSITION.** Plaintiff requests an order compelling complete answers to Interrogatory Nos. 24–25 (**Ex. A**) and production in response to RFP Nos. 381–382 (**Ex. B**). Nexo refused to provide any substantive response to all four requests, which seek information regarding the subject matter of documents targeted by Nexo's now-admitted, mid-litigation destruction of evidence. Nexo's refusals rest on boilerplate and on its own untestable say-so about documents it concedes it destroyed. Nexo's threshold contention—that it destroyed nothing relevant—is circular: it asks Plaintiff and the Court to accept on faith that deletions Nexo executed during active litigation, timed to Plaintiff's demands and this Court's deadlines, were innocent. The four requests at issue seek only to test that premise.

**Nexo's Admitted Destruction of Evidence.** There is no dispute that Nexo engaged in the targeted destruction of *all* emails to or from the corporate *and personal* email addresses of founders Antoni Trenchev and Kosta Kantchev across every mailbox in the organization; emails to or from the corporate address of Kalin Metodiev, a Nexo Director who oversaw Cress's OTC transactions and set OTC fees for customers in March 2021; specific emails by subject ("All OTC deals," "Deposit to Exchange alert for") and by unique RFC 822 message ID—which "requires someone to have identified that specific email in advance"; and Google Drive documents bearing the admin labels "LabelRet" and "rom." **Ex. C** ¶¶ 26–35, 38–39. Each rule purged live documents organization-wide and irreversibly. *Id.* ¶¶ 18–20, 41.

The timing tracked this litigation. Nine message-ID deletion rules were created five days after the November 10, 2021, conference of counsel on Plaintiff's demand letter; Slack channel deletions were implemented two days after the Complaint was filed; the founders' personal accounts were added ten days after the Complaint. Plaintiff served document requests on Nexo in July 2024. Nexo then purged documents labeled "LabelRet" in August 2024, ran subject-line and RFC 822 message-ID purges on September 2–3, 2024, and purged documents labeled "rom" on February 17, 2025—a day before the deadline this Court set for the parties to "file a joint letter brief that (1) sets forth each side's view as to who the 14 custodians should be." Dkt. 62; Ex. C ¶¶ 33–34, 40, 42. The following day, Nexo submitted briefing to this Court arguing against including Trenchev and Kantchev as custodians in this case. Dkt. 64. The Court rejected these arguments and ordered Nexo to include them as custodians. Nexo's letter now renews the very relevance objection this Court already overruled.

**The Four Discovery Requests Ask Only That Nexo Identify What it Destroyed with the "LabelRet" and "rom" labels.** Rog 24 asks Nexo to identify, for the labels its own audit log shows were used to target files for deletion during active litigation, when each label was created, by whom, for what purpose, under what criteria, and to which documents it was applied. Rog 25 asks Nexo to identify the emails destroyed by the log's retention rules. RFP 381 seeks the documents that bore the labels; RFP 382 seeks documents and communications concerning the labels' creation, application, modification, and removal.

This is paradigmatic spoliation discovery. Retention and deletion practices are discoverable—"relevant [and] proportional to the needs of the case even if only to show what does or does not remain available for production"—without any spoliation showing at all. *In re Uber Techs., Inc.*, No. 23-md-03084-CRB (LJC), 2025 U.S. Dist. LEXIS 92326, at *71 (N.D. Cal. May 14, 2025). And where a preliminary showing of spoliation has been made, courts in this District compel discovery into preservation conduct. *In re Cathode Ray Tube CRT Antitrust Litig.,* No. 07-cv-05944-JST, 2023 U.S. Dist. LEXIS 158575, at *58-59 (N.D. Cal. Jan. 27, 2023) (eight-month delay in issuing a hold alone sufficed). The showing here is far stronger: Nexo issued no hold at all and ran escalating, targeted purges throughout the case. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) (a party must "suspend any existing policies related to deleting or destroying files").

Nexo's premise that it destroyed nothing relevant and that Cress has had a "full opportunity to test the facts," ignores that Nexo itself cannot account for what was deleted. Its corporate representative claimed not to know the purpose for, or documents targeted by, "LabelRet" and "rom." Trenchev Tr. 137:1-18 (**Exhibit D**). Yasen Damyanov—the administrator who built and ran the rules—testified that he acted

on "a task given by the legal department" to purge "specific documents," yet did not know what documents were under "LabelRet" and "rom," who classified them, or who chose them. Damyanov Tr. 116:7-120:9 (**Exhibit E**). He confirmed that documents the rules deleted before a collection would not appear in Nexo's production. *Id.*[1] Nexo's expert is no better positioned: David Greetham had not "seen any e-mails deleted" and did not "know the relevance of any documents that were expired" by the retention rules, Greetham Tr. (**Exhibit F**) 102:13–103:2, and his "Morton" and "spam" explanations came secondhand from Nexo's counsel and from Damyanov—and were never independently verified. *Id.* 32:17-33:15.

Nexo's lead objection is that "LabelRet" and "rom" "were confirmed to be targeted Google Drive deletions associated with the Morton matter formerly pending in the United Kingdom," whose documents "were produced in the Morton action and thereafter deleted following entry of a confidential settlement agreement in that case." Ex. B (Resp. to RFP 381); Ex. A (Resp. to Rog. 24). That is a concession dressed as an objection: Nexo admits *targeted* deletions directed by management and legal in August 2024 and February 2025—during active discovery here. Cress may test that explanation.

But whatever the documents' connection to *Morton*, Nexo was obligated to preserve them if they were relevant or responsive *here*. The contemporaneous September 2024 purge batch destroyed OTC deal records, and relationship-manager and VIP-program communications—subjects at the heart of this case. Ex. C ¶ 34. Nor is *Morton* a shield. On Nexo's own sworn account, *Morton* concerned Nexo's Retail OTC dealing in NEXO Tokens in the first quarter of 2021—the same token, the same OTC desk operating under the same management-approved "Retail OTC Deal Flows" procedure, the same relationship manager (Hristov), and the same executives (Trenchev, Metodiev) at issue here: Nexo froze the Morton claimants' accounts "to support the market price of the Nexo Tokens" and closed the resulting coerced OTC sale on March 24, 2021—two days before Mr. Cress wired $5.4 million to the same desk. *Morton v. Nexo Capital Inc.*, Claim No. CL-2022-000516 (Comm. Ct.), Re-Re-Am. PoC ¶¶ 19–41; Updated Part 18 Resps. 1–2b. The UK Court, moreover, ordered Nexo to re-search and disclose precisely those custodians' files. On August 2, 2024, the Court ordered Nexo to re-conduct its disclosure and to produce "Documents held/generated by Mr. Antoni Trenchev [and] Mr. Kalin Metodiev" concerning the March 2021 "Exit Sale," "discussions and approvals of transactions and agreements," communications related to a CPA, and all Nexo communications that stemmed from communications with Trenchev—with further responsive documents due by September 21, 2024—and ordered Nexo to pay £125,000 in costs for its disclosure failures. Order of Cockerill J. ¶¶ 1, 7 & Annex (Category 2) (Aug. 2, 2024). Those are the same executives—and the same first-quarter 2021 OTC and NEXO transactions—at issue here. Nexo's September 2–3, 2024 subject-line and RFC 822 message-ID purges fell squarely within the window in which an English court had ordered Nexo to find and produce Trenchev's and Metodiev's documents, not destroy them. Deletion of documents relevant to *Morton* was therefore overwhelmingly likely to destroy documents relevant to Cress's claims—as the purged "All OTC deals" compilations confirm. Nexo's contrary assurance—that the surviving copies lacked "Cress-specific data"—rests, on its expert's own admission, "exclusively on [his] conversations with counsel," and he never reviewed the e-mails. Greetham Tr. 72:3–16. The public docket also refutes Nexo's

---

[1] Nexo's premise that any loss is cured because copies "still exist" collapses under its own expert's testimony. The materials Nexo produced are forwards and replies—not the deleted originals—and Nexo's expert could not say they are complete or identical to what was destroyed. As to "All OTC deals Part 1," Greetham conceded the produced document (NEXO-0248334) is "a forward" that "is not the same" as "the original document," that it "can have additional content," and that he could not tell whether it "reflects the contents or the attachments of the original"; he did not dispute that the original itself was never produced. Greetham Tr. 207:2–209:8; 215:3–23 (**Exhibit F**). As to the "amending templates" e-mails, only a "response" or "Re" appears on Nexo's privilege log; asked whether the original survived, Greetham answered, "the original—I don't know." Greetham Tr. 220:7–19, 221:19-222:8. A forward or reply—which the sender can add to, alter, or strip of content and attachments—is not the destroyed original, and only the requested discovery can establish what Nexo actually purged. Kunkel Tr. 168:6-23, 173:4–13 (**Exhibit G**).

sequencing: *Morton* did not settle until June 6, 2025, so the "LabelRet" and "rom" purges ran while that case was live—during a court-ordered re-disclosure—and mid-production in this one.

*Second*, burden. No "retrospective forensic reconstruction" is required. Google Workspace maintains standard logs of label events that "would show when labels were applied to specific documents, who applied them, and which documents were affected," Ex. C ¶ 33, and Vault audit exports—similar to the one Nexo already produced—identify each rule, its date, its actor, and its target. Rog 25 asks Nexo to identify what it destroyed from the subjects, message IDs, and dates its own log records. These requests are narrow and tethered to Nexo's own records—two admin labels and the specific emails the audit log already identifies—not a roving inquiry into every retention decision Nexo has made. Indeed, Nexo's own expert confirmed that "Google Drive would have audit logs showing who applied the LabelRet and rom labels" and reflecting the data source and the folders or files targeted, Greetham Tr. 65:5–66:24. Nexo's administrator likewise confirmed that retention rules "set on the basis of [the] label[s]" purged the documents "associated with" those labels, Damyanov Tr. 119:3–10.

Finally, because Nexo's targeted destruction surfaced only through its own audit log and the expert analysis it prompted, Plaintiff's narrow follow-up is timely, not belated.

### C. Plaintiff's Final Proposed Compromise

On or before July 2, 2026: (1) *Rog. 24*: Nexo answers subparts (a)–(f) as to the labels "LabelRet" and "rom," drawing on its Google Workspace Admin Console and Drive audit records; (2) *Rog. 25*: Nexo answers from its Vault and Workspace audit data and metadata, or under Rule 33(d) produces the underlying audit exports; (3) *RFP 381*: Nexo produces all surviving copies of documents that bore either label; and (4) *RFP 382*: Nexo produces non-privileged documents and communications concerning the creation, application, modification, or removal of the labels, with a privilege log for anything withheld.

**NEXO'S POSITION.** Cress's spoliation allegations are false. The Court should deny the motion to compel ROGs 24-25 and RFPs 381-382 because Cress has made no showing beyond his own speculation that the discovery sought is relevant to this case. Cress's demand that Nexo forensically reconstruct all Google Drive labels associated with a different UK lawsuit (Rog 24), produce all communications related to those labels (RFP 382), and identify (Rog 25) and produce (RFP 381) *deleted* documents associated with those labels, is unduly burdensome and not proportional. The *Morton* case is not the *Cress* case, and Cress seeks to flip the burden by demanding that Nexo produce *irrelevant* documents to *disprove* his *speculative* spoliation allegations.

**Nexo *Did Not* Destroy Evidence.** This cannot be stated any more clearly—***Nexo did not destroy evidence***. Cress's entire argument, his discovery requests, and the JLB start from the faulty premise that Nexo destroyed documents relevant to Cress. Not so. Nexo produced every document relevant to Cress and his transactions, and there has been no allegation (much less proof) that it did not do so. Cress knows this—Nexo's interrogatory responses included a chart *mapping each of Cress's six OTC transactions in dispute to Cress-specific email and Slack messages*, including Nexo's internal emails and Slacks. Unable to identify one Cress document that is missing, Cress wildly speculates that documents related to a different lawsuit in a foreign country are "overwhelmingly likely" to be relevant to Cress.

Nexo's preservation obligations are based on the facts of *this* case. Nexo received Cress's demand letter in October 2021. **Exhibit H**. The demand letter made allegations specific to Cress's OTC transactions and liquidations. *Id.* It contained **no** request for the preservation of documents and identified no potential custodians. *Id.* It did **not** mention Kantchev, Trenchev, or Metodiev. *Id.* It did **not** mention the NEXO Token. *Id.* Nevertheless, as was its practice, Nexo took steps to preserve all Cress-related material, including emails and Slacks for every Cress OTC transaction and the emails of his relationship manager. *See* **Ex. I**, Trenchev Depo., 42:17-45:4, 115:19-116:19; *see also* **Ex. J**, Greetham Expert Report at 9, 14-15. After receiving Cress's demand letter, Nexo *preserved the relevant information*—through its default

retention policies that retained all relevant information (including all transaction histories, CRM records, emails, and chats), and through active collection, including Slacks. Cress then waited another 1.5 years (until February 2023) before actually filing his complaint in this case. What started as a customer dispute in 2021 might have metastasized into a RICO lawsuit by late 2025, but Cress's new RICO allegations do not retroactively define the scope of Nexo's document preservation obligations in 2021 or 2023.

Once discovery began, Nexo complied with its obligations. Nexo produced all Cress-specific documents. Nexo also undertook a substantial discovery effort. It (i) collected 4.9 terabytes of data; (ii) applied more than 100 agreed search terms; (iii) manually reviewed and culled approximately 250,000 potentially responsive documents; and (iv) produced over 60,000 documents (247,500 pages). Nexo preserved and produced (1) all Cress transaction documents; (2) all correspondence and chats between Cress and Nexo; and (3) all internal communications regarding Cress's transactions. This level of preservation and production is incompatible with Cress's claim that Nexo suppressed relevant evidence.

Unable to point to any Cress-related information that was not preserved or deleted, Cress's spoliation allegations rely on pure speculation and conjecture. Apex executives Trenchev and Kantchev have no connection to Cress and were not mentioned in his 2021 demand letter; the retention policies on their emails were changed months **before** Cress filed this lawsuit in February 2023. Metodiev had no communications with Cress and isn't even a designated custodian. Trenchev and Kantchev's **personal** emails are irrelevant to Cress. The "[n]ine message-ID deletion rules" created after Cress's demand letter targeted spam email that presented security threats. As for the allegedly deleted emails referenced by Cress – "All OTC deals" and "Deposit to Exchange alert for" – they were **not** permanently deleted, and Nexo produced them—not because they are relevant, but to disprove Cress's ridiculous spoliation allegations. As for "LabelRet" and "rom," those Google Drive labels were related to the *Morton* case and had nothing to do with Cress. Unlike the *Morton* case, there is no allegation here that Nexo "froze" Cress's account or "coerced" an OTC sale. This case started as a liquidation dispute. Nexo was entitled to change its retention policies or delete documents, provided they were not relevant to *this* lawsuit. Slack messages relevant to Cress were preserved and produced. Tellingly, Cress's smoke-and-mirrors letter brief fails to identify one Cress document that was not preserved.

**Nexo's Retention Practices Reflect Ordinary, Legitimate Information Governance.** Cress has seized on Nexo's general document retention practices to claim the need for "spoliation discovery." Notably, Cress has already: (i) deposed multiple key witnesses (including senior executives Antoni Trenchev (individually and as the corporate representative) and Kosta Kantchev, and the IT administrator at issue, Yasen Damyanov); (ii) retained and proffered an alleged spoliation expert; (iii) deposed Nexo's rebuttal Information Governance expert, David Greetham, and (iv) obtained extensive document discovery, including Nexo's Google Vault Audit Logs and other associated information. Cress's additional requests are disproportionate and burdensome in light of this already extensive discovery. Further, each change to the retention policies has a legitimate business reason.

Yes, Nexo changed the retention settings for its two top executives, but Nexo's senior-most executives explained Nexo's retention policies and the reasons behind them. At the deposition of Antoni Trenchev, Trenchev stated that he and Kantchev's role within Nexo were not customer facing and that they "would have little to no relevant documents and communications" in relation to complaints or demands, and certainly nothing related to Cress. **Ex. I**, at 101:13-102:1. Trenchev also explained that in December 2022, "there was a lot of hacking attacks at the time. Various black hacking groups that were becoming even more targeted in their attempts towards crypto companies, and I think the thinking was around de-risking us with [Kan[t]chev], as custodians of--custodians of especially sensitive data which might or might not obviously in our opinion not have had to be retained going forward." *Id.*, at 91:17-91:24.

Nexo also deleted specific emails. As explained in the Greetham Expert Report, and testified to by both Greetham and Damyanov, these deletions generally related to potential spam or malicious emails or related to a separate litigation, the *Morton* case. *See*, *e.g.*, **Ex. J**, at 20, 21, and 23. There can be no complaint regarding Nexo's deletion of potentially harmful emails on its system. And, as to the *Morton* case, there is simply no connection between that case and Cress beyond the fact that both claimants used the OTC desk and had the same relationship manager.[2] That tenuous "connection" cannot be the standard for document preservation or spoliation claims. Finally, Cress claims that specific emails like "All OTC deals-Part 1" were deleted, but a forward of that email (with **all** attachments) was produced to Cress.[3]

Nexo's expert explained that data retention policies—including targeted deletion—are a normal component of Information Governance. Organizations modify retention policies for legitimate reasons, including managing data volume, reducing security risk, and protecting sensitive information. **Ex. J** at 13, 16-17, 19, 20-21, 22, and 26. No company retains all data indefinitely. The practices Cress challenges have undisputed, legitimate explanations: (1) **targeted Google Vault deletions**: used to remove spam, phishing, malware, or materials tied to separate and resolved litigation; (2) **Slack retention periods**: typical industry practice (30–180 days), driven by volume, cost, and security concerns; and (3) **apex executive email retention policies** implemented in response to heightened cybersecurity threats in the crypto industry. Courts consistently refuse to infer bad faith from ordinary discovery or retention conduct. *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013).

**The Requested Discovery is not Relevant or Proportionate.** Cress's proposed compromises for Interrogatories 24-25, and RFPs 381-382, are still irrelevant, overbroad, harassing, and not proportional. Asking Nexo to audit and forensically reconstruct voluminous metadata, "purpose," and "process" information about its "LabelRet" and "rom" labels (Rog 24), identify *all* emails deleted by *any* retention rules (Rog 25), produce all documents bearing the *Morton* labels (RFP 381), and produce all documents concerning the creation of labels for a separate foreign lawsuit (RFP 382), is oppressive and harassing. Rog 25 is impossible to comply with because any deleted documents no longer exist. Cress has made no predicate showing that the *Morton* labels, all emails deleted pursuant to standard retention rules, or all documents associated with the *Morton* labels have any relevance to this litigation. Nexo has already searched for and produced all responsive documents relevant to Cress. Nexo has no obligation to produce *irrelevant* documents to *disprove* spoliation allegations premised on *speculation* that documents related to a different UK litigation might be relevant to this one. A false and factually unsupported claim of spoliation does not satisfy a "preliminary showing of spoliation." Nexo should not be compelled to produce irrelevant and burdensome discovery to disprove false spoliation allegations. "Mere speculation that other deleted documents may exist that might be helpful to a party's case is also an insufficient basis for a finding of spoliation." *Reinsdorf*, 296 F.R.D. at 631; *Oracle Am., Inc.,* 328 F.R.D. at 552.

Further, Courts do not permit expansive, speculative "spoliation discovery" where the moving party has already had a full opportunity to test the facts. *See*, *e.g.*, *Reinsdorf*, 296 F.R.D. at 611–12. Nor is Cress entitled to transform ordinary discovery into an open-ended forensic inquiry into every retention decision Nexo has ever made until the very last minute of the discovery cut-off (*i.e.*, June 29th—yesterday). "A non-expired discovery cutoff does not grant the parties carte blanche rights to demand sizeable discovery requests up to the last possible minute. Discovery is meant to be a balanced and, hopefully, front-loaded process, not one involving deadline brinksmanship." *See V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 363 (D. Nev. 2019) (internal quotation marks and citations omitted) (cleaned up).

---

[2] The facts of *Morton* are not remotely similar to the facts of this case. *See Crypto Lender Nexo Sued for Allegedly Blocking $126M Withdrawals in 2020-21: Report*, Yahoo Finance (November 21, 2022), available at: https://tinyurl.com/msy3duch. Nexo's preservation obligations are based on the allegations in *this* lawsuit, not some other lawsuit in a foreign country involving different parties, different facts, and a different discovery regime.

[3] Plaintiff's spoliation expert report identified a list of allegedly deleted emails. **Ex. J**, at ¶ 34. Nexo responded to Cress's RFPs on June 29 and produced these documents (despite their lack of relevance).