# Exhibit C

# Exhibit C

**Expert Report of Michael Kunkel**
*Cress v. Nexo Capital, Inc.*
**April 20, 2026**

## Background and qualifications

1. I am the Director of Investigative Services of Setec Security Technologies, Inc. My job responsibilities entail providing litigation support to attorneys and project management of Setec's computer forensic and electronic discovery specialists who work in our business unit, Setec Investigations, which specializes in the discovery, collection, investigation, and production of electronic information for investigating and handling computer-related crimes and misuse.

2. In my role with Setec, I work with government entities, local, state, and federal law enforcement agencies, private attorneys, and corporations, and specialize specifically in managing computer forensic investigations and providing thorough litigation support solutions.

3. I have been involved in thousands of computer forensic investigations and electronic discovery engagements surrounding theft of intellectual property, trade secret misappropriation, financial fraud, email and Internet abuse, employee disputes, copyright infringement, industrial espionage, disputed dismissals, software code reviews, spoliation, and large data set management among other engagements.

4. I hold certifications as a Certified Information Security Systems Professional ($ISC^2$) as well as an EnCase Certified Examiner (OpenText). Previously, I was a Special Agent in the United States Air Force Office of Special Investigations where I investigated computer related crime and cyber counterintelligence for the Department of Defense. I have excelled in over 500 hours of classroom instruction on computer crime investigative techniques and I was a DoD certified Computer Crime Investigator and Computer Forensic Examiner from the Defense Cyber Investigations Training Academy. I was responsible for computer investigations covering the Western Coast of the United States as well as the entire US Air Force interest in the Asia/Pacific region. I also utilized my computer investigative expertise during the Global War on Terror in

1

Iraq to identify and neutralize terrorist threats to United States in a Joint Special Operations Task Force. My Curriculum Vitae is hereto attached as Exhibit 1.

5.      Setec has participated in and led countless computer forensic investigations and electronic discovery efforts to facilitate the discovery of electronic evidence in support of criminal and civil lawsuits. Setec is regularly designated as an expert and our team of computer forensic and electronic discovery specialists frequently provides expert witness testimony.

6.      I am being compensated at a rate of $295 per hour for my work in this matter. My compensation in this matter is not in any way contingent or based on the content of my opinions or the outcome of this or any other matter.

7.      My work on this matter is ongoing. I reserve the right to amend, refine, or supplement my analyses and opinions in the event that I become aware of additional information, evidence, arguments, or analyses that bear on my work in this matter.

**8.  Assignment**

9.      I was retained by Counsel for John Cress to analyze Nexo's internal data retention logs and spreadsheets to determine the technical nature and organization-wide impact of their data management policies.

10.     My assignment was to review the materials produced by Nexo as described in this report which include Nexo's data retention policies, settings, and practices, and to provide an opinion on the materials' technical nature, function, and organization-wide impact.

11.     In preparing this report, I reviewed the following:

   a.  NEXO-0369388: A spreadsheet of Slack Channel-level retention settings.

   b.  NEXO-0369389: A Google Vault Audit Log containing 12/4/22 Events.

   c.  NEXO-0369390: Slack communication from "Marc" to "Yasen".

   d.  NEXO-0369409: A Google Vault Audit Log.

   e.  NEXO-0369410: Slack communication from Rishi Malde to "Yasen"

   f.  Legal Correspondence: The January 30, 2026, letter from Nexo's counsel to Plaintiff's counsel.

2

g.  Portions of the transcript of the deposition of Antoni Trenchev, including 113:1-114:22; 137:1-18; 134:23-136:17, 162:13-17; 133:5-9.

h.  Plaintiff's February 27, 2023 Complaint.

i.  Plaintiff's October 26, 2021 demand letter.

j.  Communications between Plaintiff's counsel and Nexo's counsel regarding Plaintiff's October 26, 2021 demand letter and the filing of Plaintiff's Complaint in February 2023.

**<u>Slack Retention Settings</u>**

12.  My technical opinions in this report regarding the function and effect of Slack message and file retention settings are based on my professional experience, my review of the communications and Slack retention logs produced in this case, and on Slack's own published technical documentation.

13.  By default Slack retains "all messages for the lifetime of your workspace or Enterprise organization."[1] However, workspace owners "can adjust your retention settings to automatically delete data after a set amount of time."[2] "Deletions run once a day, so data may be deleted shortly after making a change to your retention settings."[3] "Retention settings will apply to all messages, files, canvases, and lists including those that are pinned or save."[4] "Data deleted according to your retention setting is permanent."[5]

14.  Slack allows Enterprise organizations to "place a legal hold on specific members to preserve their messages and files in Slack."[6] None of the materials I reviewed indicated that Nexo ever implemented Slack's legal hold feature, and I understand from counsel that Nexo has not produced any records identifying the implementation of a legal hold or similar feature.

---

[1] Slack Help Center, *Edit message retention settings for specific conversations,* https://slack.com/help/articles/115005393586-Edit-message-retention-settings-for-specific-conversations.
[2] Slack Help Center, *Customize data retention in Slack*, https://slack.com/help/articles/203457187-Customize-data-retention-in-Slack.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] Slack Help Center, *Create and manage legal holds*, https://slack.com/help/articles/4401830811795-Create-and-manage-legal-holds.

15.     Yasen's communications with Marc (Slack) in NEXO-0369390 describe that for Slack public and private channels, Nexo "had no retention policy set until '2023-03-01' when it was adjusted to **60 days**. It was then adjusted to **180 days** on 2024-01-23." Public channels are open to all workspace members, where any messages or files posted in public channels will show up in search results for other members of the public channel. Private channels are by invitation only. People in private channels can only be added by someone who's already a member of the channel. Messages or files posted in private channels will only show up in search results for people in the channel.[7] Nexo's public and private channel retention settings would purge all Slack messages and files in those channels immediately after the retention policy days lapsed.

16.     Yasen's communications with Marc (Slack) in NEXO-0369390 also describe that for Slack Direct Messages, Nexo "had no retention policy set until '2022-12-04' when it was adjusted to **4 days**. It was then adjusted to **30 days** on 2022-12-07 and to **60 days** on 2023-02-09. Finally, it was adjusted to **180 days** on 2024-01-23." Slack direct messages are private conversations from one-to-one, or can include up to nine people.[8] Nexo's Direct Messages retention policy settings would purge all Slack Direct messages and files immediately after the retention policy days lapsed.

17.     NEXO-0369388 lists retention settings for Nexo's Slack channels. My understanding is that Nexo has not provided any information about who implemented these channel-by-channel implementation settings or when they were implemented. This document indicates different retention settings for different channels. Some channels, for example, "legal-cs-privileged-and-confidential", were set to hundreds or up to 1825 days.  This indicates Nexo had the technical ability to preserve Slack data for at least 1825 days and chose not to for almost all channels.

**<u>Google Vault/Gmail Retention Settings</u>**

---

[7] Slack Help Center, *What is a channel?*, https://slack.com/help/articles/360017938993-What-is-a-channel.
[8] Slack Help Center, *Understand direct messages*, https://slack.com/help/articles/212281468-Understand-direct-messages

18.     My technical opinions in this report regarding the function and effect of Google Vault retention rules, audit log entries, and settings are based on my professional experience, my review of the audit log data produced in this case, and on Google's own published technical documentation for Google Vault, including the following:

a.  Google's documentation titled "How retention works" states that: "You can schedule Vault to delete data after a duration of time. When the retention period expires, the data is removed from user accounts and purged from all Google systems."[9] "When a retention rule is applied to a message or file, the item is deleted from the service, even if the user has not marked it for deletion. For example, you create a default retention rule to retain Gmail messages for 365 days, and have no custom rules or holds. Vault deletes every message older than 1 year."[10]  Google notes that "Vault allows Gmail to immediately purge data that exceeds the retention period when you submit a new rule. The purged data can include data that users expect to keep."[11] This documentation confirms that retention rules actively purge live data—not merely data in a user's trash—and that purged data cannot be recovered.

b.  Google's documentation provides that when creating a custom retention rule for Gmail, an administrator may configure the rule to apply to an organizational unit and may set conditions including search terms (such as to: or from: a specific email address, or a specific subject line).[12] This confirms that the retention rules reflected in the Audit Log—which target specific email addresses and subject lines within designated organizational units—are a standard function of Google Vault's administrative tools.

c.  Google's documentation explains that when creating a custom Gmail retention rule, the administrator selects what happens when the retention period expires.  The first option purges "only messages that are already emptied from the users' Trash." The second

---

[9] Google Vault Help: How retention works, https://support.google.com/vault/answer/2990828.
[10] *Id.*
[11] Google Vault Help: Set a custom retention rule for Gmail, https://support.google.com/vault/answer/2535539.
[12] *Id.*

option purges "all messages for the selected organizational unit after [the specified number of] days, including drafts and messages that users haven't deleted."[13] Google warns that "[a]n improperly configured retention rule can allow Gmail to immediately and irreversibly purge messages." In the Audit Log (NEXO-0369409), the setting *apply_only_to_deleted_objects: false* corresponds to the second option—meaning the retention rules at issue purged active, live messages from users' mailboxes, not merely messages that users had already deleted.

d. Google allows organizations to create legal holds "in response to an investigation or legal issue."[14] "Holds preserve data indefinitely" and "take precedence over retention rules."[15] Where a retention period expires, Vault purges a message or file only if: "It is not subject to a hold. When the hold is removed, the retention rules take effect."[16] The addition of a Litigation Hold would be available through a Google Vault activity audit.[17] None of the materials I reviewed indicated that Nexo ever implemented Google's Litigation hold feature, and I understand from counsel that Nexo has not produced any activity audits identifying the implementation of a Litigation Hold or similar feature.

e. Google's documentation confirms that the application of a label to files in Google Drive would be saved and available through a Drive Audit activity events report.[18]

**December 4, 2022 Audit Log (NEXO-0369389)**

19.     Google Vault Audit log NEXO-0369389 shows the implementation of retention rules that took place on December 4, 2022, and it reveals that Nexo's retention rules used the setting "apply_only_to_deleted_objects: false". The significance of this is that while some IT policies often only clear the "Trash," Nexo's configuration affirmatively scanned and purged

---

[13] *Id.*
[14] https://support.google.com/vault/answer/2990828.
[15] *Id.*
[16] https://support.google.com/vault/answer/2990828.
[17] Vault Audit Activity Events, https://developers.google.com/workspace/admin/reports/v1/appendix/activity/vault.
[18] Drive Audit Activity Events,
https://developers.google.com/workspace/admin/reports/v1/appendix/activity/drive#label_added.

active, live emails from or to the following email addresses if they were over 30 days old and sent after October 1, 2017:

    a.  kosta@nexo.io

    b.  kosta@nexobank.com

    c.  antoni@nexo.io

    d.  antoni@nexobank.com

20.    The purge took place in all user mailboxes and would continue to purge emails going forward the moment they exceeded the 30 day retention window. These rules were applied to the entire organization (referenced as "Organization id: 3m3cd9h1adlni1"). In other words, when Nexo targeted the email addresses above, the system purged those emails from the mailboxes of every employee in the company who had communicated with them. Because the rules purged matching emails from every mailbox in the domain, not just the target sender's or recipient's own mailbox, the deleted data cannot be reconstructed by collecting from other custodians.

**Google Vault Audit Log (NEXO-0369409)**

21.    Nexo's Google Vault Audit Log NEXO-0369409 (the "Audit Log") shows the implementation of retention rules that took place from July 3, 2020, through February 4, 2026. There are several details relevant to understanding the significance of the entries in this log.

22.    First, Google Vault retention rules operate at the domain level, not at the individual mailbox level. This means a rule targeting "from:kosta@nexo.io" deletes matching emails from every mailbox in the organization—not just Kosta's own mailbox. This means every Nexo employee who received an email from Kosta would have that email purged. The same applies to "to:" rules, which purge matching emails from senders' mailboxes.

23.    The same would apply to rules targeting specific emails by subject line. All emails with those subject lines would be purged from every mailbox in the organization, without any further action (or in some cases even knowledge) of the employees involved in those email chains.

24.    A retention period of "1 day" is functionally equivalent to immediate deletion. Google Vault will purge all matching data at its next processing cycle after the 1-day period expires.

25.    The "Organization id" field identifies a Google Workspace organizational unit (a grouping of accounts), not an individual user. The log shows numerous distinct organizational units, including: "nexo.io" (the primary domain), "MNG," and "MNGRET."  I understand that the identities of the MNG and MNGRET units have not been disclosed by Nexo and that Nexo claims not to know what they refer to.[19]

**Targeted Deletion of User Emails**

26.    The Audit Log identifies the same December 4, 2022 changes to emails involving Kosta Kantchev and Antoni Trenchev. It also reveals that Nexo's retention rules regarding email addresses for Kosta and Antoni were expanded on March 9, 2023.  The retention rules expanded to apply a 180-day retention setting to emails to or from antoni@trenchev.com and kosta.kk@gmail.com.  Once again this applied to all mailboxes in the organization.

27.    In one instance on March 9, 2023, a retention rule was set for emails from kosta.kk@gmail.com to have indefinite retention.  That rule was changed to 180-day retention 18 seconds later.  This is consistent with human interaction to toggle that setting.

28.    The Audit Log shows that on December 6, 2022, a 30-day auto-deletion rule covering all email in the MNGRET organizational unit (Organization id: 3ph8a2z108xcwk) with no user-specific filters was implemented. This purged every email in that organizational unit after 30 days.

29.    On November 6, 2023, a 180-day retention rule was applied to all emails to or from kalin@nexo.io and kalin@nexo.com. Once again, this applied to all mailboxes in the organization, meaning, all emails more than 180 days old to or from these email addresses would be automatically deleted in all organization mailboxes. On January 17, 2024 these retention rules

---

[19] Trenchev Tr. 133:5-9 ("Q. And do you know what MNGRET refers to? A. I do not."); ("Q. Do you know what MNG refers to? A. . . . no.").

were duplicated across additional organizational units (No GDrive and Nexo Users Special Drive Sharing Feature).

30.    On that same day, the retention rules for emails to or from kosta@nexo.io, kosta@nexo.com, antoni@nexo.io, and antoni@nexo.com were also duplicated across the same additional organizational units (No GDrive and Nexo Users Special Drive Sharing Feature). The systematic expansion of retention rules to additional organizational units during litigation suggests Nexo discovered its earlier rules had not captured all copies of the materials it sought to destroy and that it expanded those rules accordingly.

31.    On August 7, 2024, the retention rules for emails to or from kosta@nexo.io, antoni@nexo.io, and antoni@nexo.com were also duplicated across additional organizational units (MNG).

**Targeted Deletion of Specific Emails and Documents**

32.    NEXO-0369409 further shows between November 15, 2021 and February 4, 2026, a one day retention rule was set on 353 line items.  These include at least 150 specifically targeted emails and Google Drive labels.  For example, on November 15, 2023, a 1-day retention rule was set for any email with the subject line "The Founder of Nexo - the secret story of the h@cker".

33.    Likewise, from August 30-31, 2024, a one-day retention rule was set for items in Google Drive with the label "LabelRet", and on February 17, 2025, a one day retention rule was set for Google Drive items with the label "rom". I understand that Nexo has not disclosed what documents had either of these labels applied to them.[20] Google Workspace labels are an administrative feature—they are defined at the organization level by admins and then applied to files either manually or through automated rules. Google Workspace maintains audit logs of label application events in both the Admin Console and Drive audit logs. These logs would show when labels were applied to specific documents, who applied them, and which documents were affected.

---

[20] Trencehv Tr. 137:1-18.

34.     On September 2-3, 2024, Nexo created dozens of 1-day retention rules targeting specific emails referencing OTC deals, NEXO tokens, and lawyers, and documents targeting emails of hristiyan@nexo.io including:

    f.   subject:Deposit to Exchange alert for; to: hristiyan@nexo.io (rows 215-216)

    g.   subject:amending templates used by the sales team (rows 162-163)

    h.   subject:All OTC deals part 1(22.04.2021-19.01.2021) (rows 291-292)

    i.   subject:All OTC deals part 2 ( 21.01.2021- 30.10.2020) (rows 293-294)

    j.   subject:All OTC deals Part 3 ( 30.10. 2020-07.06.2020 ) - Last part from Edward's Inbox (rows 295-296)

    k.   subject:Lawyers' Email, 05112021 (rows 225-226)

    l.   subject:NEXO token liquid... - @katerina@nexo.io client signed off t... (rows 193-196)

    m.   subject:Akin Gump LLP – Letter to Nexo – 22 Sept 2021.docx (rows 166-167)

    n.   To: kiril@nexo.io OR from: kiril@nexo.io AND Urgently contacts (rows 154-155)

    o.   Numerous specific RFC 822 message IDs. These are a global unique identifier assigned to each email, which means that when a retention setting targets a specific RFC 822 message ID, it is targeting one particular email for deletion.

35.     Similarly, on November 15, 2021, Nexo implemented 1-day retention policies targeting a number of specific RFC 822 message IDs.

36.     The Audit log shows that 476 of the 512 rows of audit log items were input by yasen@nexo.com or yasen@nexo.io, and 36 rows input by stefan.danielov@nexo.com.  The 36 rows input by stefan.danielov@nexo.com were all on September 3, 2024.  This is indicative of centralized control in these retention changes.

**CONCLUSION**

37.     My opinions, based on my experience, are that Google Vault retention rules were purposefully set at Nexo in such a way as to delete targeted emails by way of email addresses, IDs, subject lines, and targeted Google Drive labels. The vast majority of these rules were set up by

Actor yasen@nexo.com (or yasen@nexo.io), with some also by Actor stefan.danielov@nexo.com. Nexo had the ability to implement a Litigation Hold through Google Vault to preserve documents and communications, but there is no evidence in the materials I reviewed that it did so.

38.    Several aspects of the retention rules documented above are, in my opinion, inconsistent with routine IT administration. Routine data retention policies are typically applied uniformly across an organization or service—for example, a blanket policy retaining all email for a set period. The rules implemented at Nexo, by contrast, selectively targeted the email addresses of three specific individuals (Kosta Kantchev, Antoni Trenchev, and Kalin Metodiev), including the personal email addresses of Kantchev (kosta.kk@gmail.com) and Trenchev (antoni@trenchev.com) that would have no connection to routine domain administration.[21]  The rules further targeted specific emails by subject line (referencing OTC deals, deposit alerts, and lawyers' correspondence), by individual RFC 822 message IDs, and by Google Drive labels.  This level of granularity is not characteristic of an ordinary IT retention policy.

39.    The targeting of specific RFC 822 message IDs is particularly significant.  An RFC 822 message ID is a globally unique identifier assigned to each individual email at the time it is sent.  It is not visible in the ordinary course of reading or managing email; locating a specific message ID requires either searching the email headers or using administrative tools to identify the exact message.  A retention rule targeting a specific RFC 822 message ID is therefore not a broad policy—it is a deliberate decision to delete one particular email, which requires someone to have identified that specific email in advance.

40.    The timing of these retention rules correlates with key events in this litigation.  I understand that Plaintiff's counsel sent Nexo a demand letter on October 26, 2021, and that Plaintiff's counsel had a teleconference with Nexo's counsel to discuss Plaintiff's demands on November 10, 2021.  The earliest targeted rules in the Audit Log—nine rules targeting individual RFC 822 message IDs—were created five days later on November 15, 2021.  The December 4,

---

[21] Deposition Transcript of Antoni Trenchev, 134:23-136:17, 162:13-17.

11

2022 rules targeted the email addresses of Kosta Kantchev and Antoni Trenchev with 30-day auto-deletion.  I understand that Plaintiff filed his Complaint on February 27, 2023.[22]  Ten days later, on March 9, 2023, the retention rules were expanded to personal email addresses (kosta.kk@gmail.com, antoni@trenchev.com) and the existing rules were updated from 30-day to 180-day retention.[23]  On November 6, 2023—during active litigation—180-day rules targeting Kalin Metodiev's email addresses were added.  On January 17, 2024 and August 7, 2024, rules relating to Kantchev, Trenchev, and Metodiev's emails were replicated across additional organizational units.  On September 2–3, 2024, dozens of 1-day retention rules targeting specific emails referencing OTC deals, deposit alerts, and lawyers' correspondence were created.  This pattern of escalation—from broad rules to increasingly targeted deletion of specific communications—continued throughout the pendency of this litigation.

41.     Finally, Google's own documentation confirms that data purged by retention rules is permanently unrecoverable. Because the retention rules at Nexo were applied at the organizational-unit level with apply_only_to_deleted_objects set to false, the rules purged matching active emails and documents from every user account within the affected organizational units.  The destruction cannot be remedied by searching other custodians' accounts, because the rules operated across all accounts simultaneously.

42.     Nexo's workspace-wide Slack retention settings also purged its public and private channel messages and files, and private messages and files. While Nexo had the ability to set retention settings in Slack to at least 1825 days, it frequently chose not to preserve its message and file data. Again, the timing of these retention rules correlates with key events in this litigation. In particular, Nexo implemented the 60-day retention policy for its Slack public and private channels on March 1, 2023—two days after Plaintiff filed this lawsuit. Nexo is also unable to provide any business justification for implementation of its Slack retention policies.[24]

---

[22] Dkt. 1, COMPLAINT filed on February 27, 2023.
[23] *Id*.
[24] Trencehv Tr. 113:1-114:22.

Dated: April 20, 2026

_____

Michael Kunkel

**<u>Exhibit 1 – Curriculum Vitae – Michael Kunkel  (Attached Below)</u>**



# Curriculum Vitae

**Michael Kunkel**
Director of Investigative Services

(800) 748-5440
mkunkel@SetecInvestigations.com
www.SetecInvestigations.com

Mr. Michael Kunkel is Setec Investigations' Director of Investigative Services.  Mr. Kunkel possesses an extensive technical background, which is combined with a thorough education, time served in the United States Air Force, and numerous certifications, including an EnCase Certified Examiner (EnCE) by OpenText and as a Certified Information Security Systems Professional by $ISC^2$.  Mr. Kunkel's expertise in computer forensics and investigative techniques allows him to successfully provide corporations, law firms, and law enforcement agencies with electronic evidence critical to the resolution of civil and criminal litigations and lead these investigations in a professional manner.

Mr. Kunkel continuously supports public and private corporations, along with government entities through litigation support and expert witness services, leveraging his technical expertise, understanding of the legal system, and real-world experience to produce cost-effective strategies for the discovery, collection, and investigation of electronic evidence.  In addition, Mr. Kunkel participates in Setec Investigations' Computer Incident Response Team (CIRT) and applies his real-world experience by performing corporate computer fraud and cybercrime investigations.

Mr. Kunkel has acted as a computer forensic investigator for private attorneys, law enforcement agencies, corporations, insurance companies, and private individuals.  Mr. Kunkel's involvement in diverse investigations and litigations has spanned numerous areas, including:

- Fraud
- Theft of Intellectual Property
- Trade Secret Misappropriation
- Email & Internet Abuse
- Employee Disputes
- Patent Infringement
- Copyright Infringement

- Divorce & Family Law
- Asset Recovery
- Defamation
- Industrial Espionage
- Disputed Dismissals
- Software Code Review
- Breach of Contract

**PROFESSIONAL EXPERIENCE:**

*Director of Investigative Services, Setec Security Technologies, Inc. (September 2011 to Present)*

- Leads and participates on computer forensic investigations and electronic discovery activities as a skilled high-tech investigator and project manager, regularly focusing on corporate computer fraud and cybercrime investigations.

- Provides litigation support advisory assistance to attorneys to advance computer forensic and electronic discovery efforts, satisfy discovery requests, and compel inspections.

- Acts as a computer forensic investigator for private attorneys, law enforcement agencies, corporations, insurance companies, and private individuals involved in diverse investigations and litigations spanning numerous areas, including, but not limited to: fraud, theft of intellectual property, trade secret misappropriation, email and internet abuse, employee disputes, sexual harassment, and breach of contract.

*Digital Forensic Examiner, Stroz Friedberg L.L.C., San Francisco (August 2009 to September 2011)*

- Conducted digital forensic acquisitions and analyses of laptops, desktops, and servers in civil litigations, criminal matters, and internal investigations.

- Developed and programed customized utilities for use in the processing of electronic data, increasing the efficiency of electronic discovery processes.

- Performed large-scale electronic discovery involving the preservation, processing, and production of electronic data from a variety of digital sources.

*United States Air Force, Chief of Cyber Investigations & Operations, Office of Special Investigations (AFOSI), Yokota Air Base, Japan (August 2006 to August 2009)*

- Supervised, planned, coordinated, and implemented all cyber counterintelligence operations and network intrusion investigations conducted by the Air Force, from the Horn of Africa to the International Date Line.

- Led a team of Special Agents providing cyber investigative and computer forensic support to a multitude of criminal and counterintelligence cases covering 8 locations and providing consultations to over one hundred field agents.

- Provided specialized briefings to other government agencies and Air Force leadership concerning the threats to the U.S. network infrastructure from foreign intelligence services.

- Conducted extensive liaison with high-level Japanese, Korean, and U.S. military and law enforcement counterparts regarding threats to their networks.

THE POWER OF ELECTRONIC EVIDENCE

*United States Air Force, Global War on Terrorism, Operation Iraqi Freedom, Iraq, (September 2008 to March 2009)*

- Deployed to Iraq as part of a Joint Special Operations Task Force working alongside members of each service and civilians to counter the Iraqi insurgency and establish stability in the region.

*United States Air Force, Computer Crime Investigator, Travis Air Force Base, California (December 2005 to August 2006)*

- Planned, coordinated, and implemented cyber counterintelligence operations in the western United States.

- Served as the primary investigator on network intrusion investigations involving US Air Force assets.

- Provided cyber investigative consultation and computer forensic analysis to 17 other Air Force field investigative units.

- Testified in multiple court martial proceedings.

*United States Air Force, Criminal Investigator, Travis Air Force Base, California, (June 2004 to December 2005)*

- Acted as primary investigator for felony-level crimes including: murder, rape, child molestation, drugs, blackmail, and fraud.

- Assisted in the apprehension and subsequent incarceration of multiple Air Force criminals.

- Wrote reports and provided testimony in multiple court-martial proceedings.

## PROFESSIONAL CERTIFICATIONS

- EnCase Certified Examiner, 2010.
- Certified Information Security Systems Professional, 2009.
- DoD-Certified Computer Crime Investigator, 2006.
- DoD-Certified Computer Forensic Examiner, 2005.

## SELECTION OF PROFESSIONAL TRAINING

- STROZ FRIEDBERG, Internal Training Program - Attended weekly in-house training presentations on digital forensics, cybercrime response, computer security, desktop and network forensics tools, and relevant legal topics.

- DEFENSE CYBER INVESTIGATIONS TRAINING ACADEMY  - Excelled in 500 hours of formal cyber investigative training in Networks and Computer Hardware, Incident Response, Windows Forensic Examinations, Forensics and Intrusions in Windows and Linux Environments, Network Monitoring, Online Undercover Techniques, and Malicious Code Analysis.

- ▪ UNITED STATES AIR FORCE SPECIAL INVESTIGATIONS ACADEMY - Credentialed as a Special Agent of the United States Government.

- ▪ FEDERAL LAW ENFORCEMENT TRAINING CENTER  - Criminal Investigator's Training Program.

## EDUCATION
- ▪ 2008, UNIVERSITY OF TEXAS AT DALLAS, M.B.A., Business
- ▪ 2004, UNITED STATES NAVAL ACADEMY, B.S., Systems Engineering

## LIVE TESTIMONY EXPERIENCE

1. United States v Mirabal, United States Air Force Court Martial, Nellis Air Force Base, Nevada, April 2006.

2. United States v Turner, United States Air Force Court Martial, Travis Air Force Base, California, January 2007.

3. United States v Chapman, United States Air Force Court Martial, Travis Air Force Base, California, January 2007.

4. United States v Cann, United States Air Force Court Martial, Elmendorf Air Force Base, Alaska, January 2007.

5. United States v Ruddy, United States Air Force Court Martial, Travis Air Force Base, California, June 2007.

6. Denise Winters v County of Solano, Case No: FCS035144, Superior Court of California, Solano County, California, October 2011.

7. Bruce W. Ballai v Kiewitt, Case No: 10CV09827, District Court of Johnson County Kansas, Johnson County, Kansas, February 2012.

8. Hummer Construction, Inc. v Aidlin General Trust, et al., Case No: BC449181, Superior Court of California, Los Angeles County, California, May 2012.

9. Bergstein, et al. v Tregub, et al., Case No: BC434558, Superior Court of California, Los Angeles County, California, September 2012.

10. SMH Capital Advisors, Inc. v Jimmy Day, FINRA Case No: 12-03291, FINRA Arbitration, Dallas, Texas, October 2012

11. *Id.,* March 2013.

12. Videotech Services, Inc. v Edward Abdalla, David Santos, Timothy Rodriquez, Timothy Woolsey, H.F. Woolsey Corporation d/b/a The Crew Source, Case No. SC105947, Superior Court of California, Los Angeles County, California, January 2013

13. *Id.,* July 2014.

Michael Kunkel - Curriculum Vitae          – 4 –

14.  RPMx Construction, LLC, v Brian Colin and Earth Basics Contracting Corporation, Case No. 417-02459-2013, District Court, 417 Judicial District, Collin County, Texas, July 2013.

15.  Pavez Insurance Agency, Inc. DBA CPI Financial & Insurance Services v Sandra M. Best and Does 1 to 10, Inclusive, Case No. CIVSS 818321, Superior Court of California, San Bernardino County, California, September 2013

16.  *Id.,* October 2013.

17.  Slaymaker v Armstrong Financial Group, Case No. 37-2012-00054141-CU-OE-NC, Superior Court of California, San Diego County, California, April 2014.

18.  Dupree, Sulatycky, O'Brien, Giron, and Morales v Sajahtera, Inc., Case No. BC463162, Superior Court of California, Los Angeles County, California, July 2014.

19.  Rebecca Lewis v Alexandria Gramercy, LLC; Urban Brokerage, Inc., Case No. BC497235, Superior Court of California, Los Angeles County, California, August 2014.

20.  Compak Securities, Inc., v Olandj, McDonald, and Orama, JAMS Reference No. 1200047466, JAMS Arbitration, Los Angeles, California, August 2014.

21.  Stephen Welsh v Ryder Truck Rental, INC., and Navistar International Corporation; Case No. 37-2012-00085385-CU-PO-CTL, Superior Court of California, San Diego County, California, September 2014.

22.  Archie Roundtree v Los Angeles Unified School District, Gerardo Loera, Ari Bennett, Adriana Maldonado-Gomez and Does 1-30, Case No. BC 499893, Superior Court of California, Los Angeles County, California, November 2014.

23.  InfoSpan, Inc. v Emirates NBD Bank PJSC, Case No. 8:11-CV01062 JVS (ANx), United States District Court, Central District of California, Southern Division, January 2015.

24.  Luminant Generation Company, LLC., vs Jennifer Morrison, T. Jeff Stone, and T. Jeff Stone & Associates, LLC., Cause No. 416-03151-2013, District Court of Collin County, Texas, 416th Judicial District, February 2015.

25.  Procaps S.A. v Patheon Inc., Case No. 1:12-cv-24356-JG, United States District Court, Southern District of Florida, Miami Division, June 2015.

26.  Central Medical Diagnostic Laboratory, Inc., v Brian Patchett, Michael Lumkin, California Laboratory Sciences LLC, Case No. 30-2013-00628124, Superior Court of California, County of Orange – Central Justice Center, California, February 2015

27.  *Id.,* September 2015.

28.  Cat 3, LLC, SXH, LLC, and Suchman, LLC, v Black Lineage, Inc., and Vahe Estepanian a/k/a Fletch Estepanian, Case N. 14-cv-5511 (AT), U.S. District Court, Southern District of New York, California, October 2015

29.  *Id.,* New York, December 2015.

30.    Charles M. Natcher, Jr., v JPH Consulting, INC., Case No. 56-2013-0446158-CU-WT-VTA, Superior Court of the State of California, Ventura County – Hall of Justice, Arbitration, California, January 2016.

31.    American Lighting Inc, Neo-Neon Led USA Holdings Ltd and Tivoli LLC, v Targetti Sankey, S p A, et al., Case No. 14-01285-DOC, U.S. District Court, Central District of California, Southern Division, California, February 2016.

32.    Bombardier Inc. v Fabio Rebello, Case No. 2014-CA-001878-O, Circuit Court of the Ninth Judicial Circuit In And For Orange County, Florida, Texas, February 2016.

33.    CoreLogic, Inc. v First American Financial Corporation, Case No. A213700, Judicate West Arbitration, California, April 2016.

34.    Integrated Instrument Services, Inc. v Aziz Rahim and Pippets Pro, LLC, Cause No. 201613511, 165th Judicial District, District Court of Harris County, Texas, May 2016.

35.    Chaowen Zhong v Eaton Escrow, Inc, Case No. 37-2015-00006141-CU-PN-CTL, Superior Court of the State of California, San Diego County, California, May 2016.

36.    Building Materials Corporation of America dba GAF Materials Corporation v Paramount Petroleum Corporation, Case No. BC 481673, Superior Court of the State of California, Los Angeles County, California, July 2016.

37.    The Regents of the University of California v Paul S. Aisen, et. al., Case No. 3:15-cv-01766-BEN-JLB, U.S. District Court, Southern District of California, California, December 2016.

38.    Alessandro Camara v C.G. Motor Sports, Inc., Case No. CIVDS1517958, Superior Court of the State of California, County of San Bernardino, California, January 2017.

39.    Fiber Systems International, Inc. v Michael Dabrowski, Case No. 417-05506-2016, District Court of Collin County, Texas, 417th District Court, McKinney, Texas, February 2017.

40.    FaxLogic, LLC v Matthew Thornton, Cause No. DC-15-07964, District Court of Dallas, Texas, 193rd Judicial District, Dallas, Texas, October 2016

41.    *Id.,* May 2017.

42.    Aerovironment, Inc. v Torres, McAllister, McBride, Micasense Inc., Case No. 56-2015-00465460-CU-BC-VTA, Superior Court of the State of California, Ventura County, California, June 2017.

43.    CP Kelco U.S., Inc. v Chienkuo Yuan, Case No. 37-2015-00022453-CU-BT-CTL, Superior Court of the State of California, County of San Diego, California, March 2017

44.    *Id.,* August 2017.

45.    Tracey Downey-Racen v Healthy Gourmet, LLC, Case No. 30-2012-00619381-CU-BC-CJC, Superior Court of the State of California, County of Orange, California, October 2017.

46. The New Home Company v Jay Bartell and Ginger Marin, Case No. BC607130, Superior Court of the State of California, County of Los Angeles, California, October 2017.

47. Jeffer Mangels Butler & Mitchell LLP v Gregory J. Lorber, Case No. 14-65050GAG, ADR Services, Inc., California, June 2018

48. *Id.,* July 2018.

49. Professional Reprographics Services, Inc. v Hudson Shuffleboards, Inc., Case No. 30-2018-00992602-CU-UD-CJC, Superior Court of the State of California, County of Orange, July 2018.

50. Oren Cohen v Avraham Hassid, Case No. BC618549, Superior Court of the State of California, County of Los Angeles, California, September 2018.

51. Savills Studley, Inc. v Ashley Elkin, Case No. 1:18-cv-02887-CMA-NRN, U.S.District Court, District of Colorado, Colorado, November 2018.

52. Taryn Dudley v Allan M. Acton, D.D.S., P.A a/k/a Cary Family Dental, LLC, Case No. 5:18-cv-00146-D, U.S. District Court, Eastern District of North Carolina, Western Division, April 2019.

53. Absolute Pediatric Services, Inc. v LaDonna Humphrey, Case No. 04CV-18-961, Circuit Court of Benton County, Arkansas, May 2019.

54. Citcon USA, LLC. v RiverPay Inc., et al., Case No. 5:18-cv-02585-NC, U.S. District Court, Northern District of California, California, September 2019.

55. Zeno Semiconductor Inc. v Silicon Storage Technology Inc., et al., Case No. 17CV306507, Superior Court of Santa Clara, November 2019.

56. Zitan Technologies, LLC, and Ginko, LLC, v Liang Yu, Case No. 3:18-cv-00395-MMD-WGC, United States District Court District of Nevada, March 2020.

57. EMR (USA Holdings) Inc., v Richard Goldberg, et al., Case No. DC-17-14064, 116th Judicial District, Dallas County, October 2020.

58. SPS Technologies, LLC d/b/a PB Fasteners, v Briles Aerospace, Inc, Mike Briles and Robert Briles., Case No. 2:18-cv-09536-MWF-AS, U.S. District Court, Central District of California, November 2020.

59. Karma Automotive, LLC, v Lordstown Motor Corp., Case No. 8:20-cv-02104-JVS-DFM, U.S. District Court, Central District of California, February 2021.

60. Timothy Allen, v Vaksman Law Office, P.C., Case No. 2:19-cv-30-TBM-MTP, U.S. District Court, Southern District of Mississippi, February 2021.

61. Brown & Brown Insurance of Arizona, Inc., v Mark New, Lorna New, Zachary Hope, and Jenna Hope, Case N. CV2019-014651, Superior Court of the State of Arizona in and for the County of Maricopa, May 2021.

62. Steven Jensen v Kristen Kerr, Case N. BC592726, Superior Court of California, County of Los Angeles, May 2021.

Michael Kunkel - Curriculum Vitae – 7 –

63. Stephen Courtney v Kelly Liebbe, Cause No. 296-03470-2016, District Court of the 296th Judicial District, Collin County, June 2021.

64. Wisk Aero LLC v Archer Aviation Inc., Case No. 3:21-cv-02450-WHO, United States District Court, Northern District of California, San Francisco Division, June 2021.

65. Vickers Holding and Finance Inc. v Jossiv Kim and Angelina Kim, Case No. BC 674584, Superior Court of the State of California for the County of Los Angeles – Central District, Los Angeles, June 2021.

66. Hwa Ja Park v Samho Tour, Inc, Case No. 20STCV08182, Superior Court of the State of California for the County of Los Angeles – Central District, Los Angeles, August 2021.

67. Securities and Exchange Commission v Bradley C. Davis, Case No. 1:20-cv-01534-MKV, United States District Court – Southern District of New York, September 2021.

68. Maris Luz Zucchella v Olympusat, Inc, Case No. 2:19-cv-07335-DSF-PLA, United States District Court – Central District of California Western Division, October 2021.

69. Alfredo Herrera v Hilbert Property Management, Inc, Case No. 19STCV27252, Superior Court of the State of California for the County of Los Angeles – Central District, Los Angeles, October 2021.

70. RG Abrams Insurance and Robin Goltsman v The Law Office of C.R. Abrams, Case No. 2:21-cv-00194-FLA-MAA, United States District Court, Central District of California, October 2021.

71. Shahin Adib v Sun West Mortgage Company, JAMS Ref No.: 1200057272, Judicial Arbitration and Mediation Services, October 2021.

72. *Above Referenced Hwa Ja Park v Samho Tour, Inc (Matter 66),* November 2021.

73. BC Tatum Ventures, Inc. v Nancy Brown and Holly Hefele, Case No. 18CV-0201, Superior Court of the State of California for the County of San Luis Obisbo, January 2022.

74. Slim Chillers Inc. v Laura Selecky, Case No. A-20-819562-B, District Court, Clark County, NV, February 2022.

75. Spencer Graff v Crosstown Holdings LLC, Arbitrator Shawn Aiken, February 2022.

76. Hupel v Robles, Guitierrez, and Hesselbein Tire Southwest, Inc, Cause No. 2019CI12311, District Court, Bexar County, March 2022.

77. Paul Ortiz v Lumbee Tribe Enterprises, LLC, Case No. CL21-015, Circuit Court, Stafford County, Virginia, April 2022.

78. Aurora Cazares v Anaheim Terrace Care Center, LLC et al., Case No. 30-2019-01062296, Superior Court of the State of California for the County of Orange – North Justice Center, Orange County, California, April 2022.

79. Impact Images Inc. v Aaron Wolfe, et al., Case No. RIC1903448, Superior Court of the State of California for the County of Riverside, Riverside County, California, May 2022.

80. Zoom Imaging Solutions, Inc. v Jon Crossen, et al., Case No. 2:19-CV-01544-WBS-KJN, United States District Court, Eastern District of California, May 2022.

81. Jonathan Pantani v Instapage, Inc., Case No. CGC-21-589593, Superior Court of the State of California in and for the County of San Francisco, San Francisco County, California, June 2022.

82. Harley Marine Services, Inc. v Matthew Gullickson and Sven Christensen, Case No. 19-2-26516-7 SEA, Superior Court of Washington for King County, Washington, June 2022.

83. Sarah Perata v City and County of San Francisco, Case No. 3:21-cv-02819, United States District Court, Northern District of California, June 2022.

84. *Above Referenced SEC v Bradley Davis (Matter 67),* June 2022.

85. WnG Construction JV, Inc. v AAA Solar Electric, et al., Case No. VC065473, California Superior Court, Los Angeles County, Southeast District, Norwalk Courthouse, July 2022.

86. *Above Referenced Karma Automotive, LLC, v Lordstown Motor Corp. (Matter 59),* August 2022.

87. *Above Referenced Impact Images Inc. v Aaron Wolfe, et al (Matter 79),* September 2022.

88. Blumberg v Stroma Medical Corp., Case No. 30-2020-01172565-CU-BC-CJC, California Superior Court, Orange County, Central Justice Center, California, February 2023.

89. Megan Ekstrom and Robert Ekstrom v Felix; Silverstein; Ekstrom Properties Limited; Stanley Ekstrom Foundation Inc., No. 01-22-00003203, American Arbitration Association, California, February 2023.

90. Renee Dawn Capri v David Scott Crawford, Case No. 19FAM02249, California Superior Court, San Mateo County, March 2023.

91. John Wavell v Robert Zwerling, Case No. 1200055354, Judicial Arbitration & Mediation Services, Orange County, California, March 2023.

92. Dalle-Homme v Homme, Case No. 19STFL13699, California Superior Court, Los Angeles County, California, March 2023.

93. Gamie, LLC dba C3 Risk & Insurance Services v The Liberty Company Insurance Brokers, McIntosh and Callahan, Case No. 01-21-000-3812, American Arbitration Association, May 2023.

94. Apple Inc. v Rivos Inc. Case No. 5:22-CV-2637-EJD, United States District Court, Northern District of California - San Jose Division, June 2023.

95. Interior Electric Inc. v TWC Construction Inc. Case No. 2:18-CV-01118, United States District Court, District of Nevada, June 2023.

96. Bakemark USA, LLC v Javier Navarro et. al. Case No. 2:21-cv-02499 JAK-AGR, United States District Court, Central District of California, August 2023.

97. *Above Referenced John Wavell v Robert Zwerling (Matter 91),* August 2023.

98. Glen Kelley v Fundomate, Inc. Case No. 2:22-cv-05814-FLA-AS, United States District Court, Central District of California, November 2023.

99. Carolyn Griffen v Bloom Energy Corporation. JAMS Case No. 5110000174, JAMS Arbitration, Silicon Valley, California, November 2023.

100. Fine Consulting Services, Inc. v Manley's Boiler LLC. Case No. 30-2019-01091016-CU-BC-NJC, California Superior Court, County of Orange – Central Justice Center, December 2023.

101. Lockton Companies, LLC – Pacific Series, et al. v Eric Kaufman. Case No. 4:22-cv-00462-SRB, United States District Court, Western District of Missouri, January 2024.

102. Dina Abdurahman v Prospect CCMC, LLC, and Dorian Jacobs, M.D. Civil Action No. 2:20-cv-03609-CFK, United States District Court, Eastern District of Pennsylvania, February 2024.

103. Netlogic Solutions Inc. v ZoleyTech, Inc. No. 01-23-00001172, American Arbitration Association, February 2024.

104. *Id.,* March 2024.

105. Altor BioScience, LLC; NantCell, Inc. v Hing C. Wong and HCW Biologics, Inc. No. 5220002288, JAMS Arbitration, May 2024.

106. Sagewater, LLC v David Hossfeld, et al., Case No. 1:23-CV-00770, United States District Court, Eastern District of Virginia, June 2024.

107. Netlogic Solutions, Inc. v Anil Dhondi, Case No. 2022-017192, Circuit Court for Fairfax County, Virginia, July 2024.

108. Rahul Patil v Ragle Inc. and Select Maintenance, LLC. No. 01-23-0002-4283, American Arbitration Association, July 2024.

109. TK Elevator Corp. v Chiteka Jackson, Case No. 1:22-CV-04999-SCJ. United States District Court, Northern District of Georgia, August 2024.

110. Jacob Blalock & Benjamin Novak v Halt Gold Group, LLC, Case No. 19STCV35566. California Superior Court, County of Los Angeles, September 2024.

111. Sandra Holl v Barry Polidor, Esq., Docket No. 223-CV-00435. Vermont Superior Court, Civil Division, Windsor Unit, September 2024.

112. Hayes Medical Staffing, LLC v Eichelberg, et al., Case No. 0:23-cv-60748-DSL. United States District Court, Southern District of Florida, Ft. Lauderdale, October 2024.

113. J&J Freight Solutions, LLC, vs. Jianhua Li, Case No. 19GDCV01347. California Superior Court, Los Angeles County, California, November 2024.

114. Giti Mayton, et al. vs. Matthew J. Romeo, et al., Case No. 22CV008943. Court of Common Pleas, Franklin County, Ohio, December 2024.

115. *Above Referenced J&J Freight Solutions, LLC, vs. Jianhua Li (Matter 113),* December 2024.

116. Control Technology & Solutions, LLC v. Omni Energy Partners, LLC, Case No. 4:21-cv-00686-MTS. United States District Court, Eastern District of Missouri, February 2025.

117. Lupin Atlantis Holdings SA v. Xian-Ming Zeng, Transpire Bio, INC, Axel Perlwitz, and William Schachtner, Case No. 0:23-CV-61621-MD. United States District Court, Southern District of Florida, Fort Lauderdale Division, February 2025.

118. Ann Michelle Salan v. M.S. Aerospace, Case No. YZNPB, Signature Resolution, Arbitration, April 2025.

119. Coherent Logix, Inc, Case No. 24-11515-smr, US Bankruptcy Court, Western District of Texas, August 2025.

120. Alysson Mills v. The UPS Store, Inc., Case No. 3:19-cv-00364. United States District Court, Southern District of Mississippi, Northern Division, August 2025.

**<u>Exhibit 2 – Case Materials Referenced</u>**

NEXO-0369388: A spreadsheet of Slack Channel-level retention settings.

NEXO-0369389: A Google Vault Audit Log containing 12/4/22 Events.

NEXO-0369390: Slack communication from "Marc" to "Yasen".

NEXO-0369409: A Google Vault Audit Log.

NEXO-0369410: Slack communication from Rishi Malde to "Yasen"

Legal Correspondence: The January 30, 2026, letter from Nexo's counsel to Plaintiff's counsel.

Deposition Transcript of Antoni Trenchev, Vols. I (April 1, 2026), II (April 2, 2026), including 113:1-114:22; 137:1-18; 134:23-136:17, 162:13-17; 133:5-9.

Plaintiff's February 27, 2023 Complaint, Dkt. 1.

NEXO-0248488 (Plaintiff's October 26, 2021 demand letter).

NEXO-0248181 (Plaintiff's November 29, 2021 demand letter).

Communications between Plaintiff's counsel and Nexo's counsel regarding Plaintiff's October 26, 2021 demand letter and the filing of Plaintiff's Complaint in February 2023.