# Exhibit 11

# Exhibit 11

Claim No. CL-2022-000516

CL-2022-000516

IN THE HIGH COURT OF JUSTICE
BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES
KING'S BENCH DIVISION
COMMERCIAL COURT
BEFORE THE HONOURABLE MRS JUSTICE COCKERILL

D. GREETHAM
06.19.2026
**Exhibit 233**
Vanese Killingbeck

B E T W E E N:

(1) SHANE MORTON
(2) OWEN MORTON
(3) JASON MORTON

**Claimants**

and

(1) NEXO CAPITAL INC.
(a company incorporated in the Cayman Islands)

(2) NDS EOOD
(a company incorporated in Bulgaria)

**Defendants**

---

**ORDER**

---

**UPON** the Claimants' application dated 28 March 2024 (the "**Application**")

**AND UPON** the First Defendant having disclosed CSV and XLSX files described as "WD Button" and "AALL" logs relating to the Claimants' accounts on the First Defendant's cryptocurrency platform (the "**Activity Logs**")

**AND UPON** hearing leading counsel for the Claimants and for the Defendants

**IT IS ORDERED THAT**:

1.    The First Defendant shall re-conduct its disclosure exercise limited to Issues for Disclosure 4 and 6 only as set out in the Agreed Disclosure Review Document ("DRD")

1

dated 29 September 2023 and limited to the sources, search terms and date ranges set out in the First Defendant's DRD Section 2 Questionnaire dated 25 October 2023 ("SQ2"), in respect of the documents identified in Categories 1 and 2 in the Annex to this Order (the "**Reconducted Disclosure Exercise**") as follows:

1.1    The parties shall seek to agree the methodology to be used for the Reconducted Disclosure Exercise as soon as practicable and by no later than 16 August 2024.

1.2    Any further responsive documents identified as a result of the Reconducted Disclosure Exercise shall be disclosed and provided to the Claimants as soon as possible and in any event by 21 September 2024, unless otherwise agreed by the parties.

2.    By no later than 9 August 2024, the First Defendant is to provide the Claimants with confirmation as to when, how and by whom the "withdraw" buttons for the Claimants' accounts were disabled in respect of assets other than Nexo Tokens and whether any other relevant logs exist or have been created by this exercise (the "**New Files**"). The parties are to liaise and agree any further steps necessary in relation to such New Files.

3.    By no later than 6 September 2024, the First Defendant shall file and serve a witness statement by its solicitor or a director or other officer clarifying the steps taken to produce the Activity Logs and (if applicable) the New Files. Unless the Claimants are satisfied with the explanations set out in this witness statement, the parties and/or their representatives are to attend a meeting for the purposes of verifying whether the Activity Logs and any New Files are complete and accurate records (the "**Verification Meeting**").

3.1    The precise format of the Verification Meeting shall be agreed between the parties and may include, if practicable, a virtual inspection by the Claimants and/or their representatives of the relevant parts of systems used by Nexo to produce the Activity Logs and any New Files.

3.2    The parties shall seek to agree the methodology to be used for the Verification Meeting as soon as practicable and hold any such meeting by no later than 4 October 2024.

2

4.    As to personal mobile devices:

4.1    By no later than 7 August 2024, the First Defendant is to file and serve a witness statement by its solicitor or a director or other officer identifying which (if any) of its disclosure custodians used a personal mobile device for work purposes over the date range 2 February 2018 – 31 December 2021 and indicating the extent of any such usage.

4.2    As soon as practicable thereafter and by no later than 19 August the parties shall seek to agree a methodology to be used for the disclosure by the First Defendant of any documents within the First Defendant's control on such personal mobile devices.

5.    To the extent that the methodologies referred to in paragraphs [1.1], [3.2] and [4.2] above cannot be agreed, any issues are to be referred to the Court for determination on the papers to take place by no later than 14 October 2024.

6.    The Application is dismissed insofar as it relates to: (i) the request for further custodians to be added to the DRD; and (ii) further documents that fall under Category 3 (as defined in the Application) in addition to Mr Hristov's employment contract.

7.    On or before 23 August 2024, the Defendants must pay to the Claimants the Claimants' costs of the Application, summarily assessed on the standard basis at £125,000.

**DATED this 2ND day of August 2024.**



**Appendix A**

| Categories of disclosure sought, and the underlying 'missing documents' to which each category is directed |
| --- |
| **Category 1: Communications and other documents in relation to,** |

(a)  the sale/purchase of the Claimants' Nexo tokens on 23 March 2021;

(b)  the imposition of a lock on Messrs. Shane and Owen Morton's accounts on 23 March 2021;

(c)  the changes to the Claimants' withdraw and convert limits on 22 March 2021; and

(d)  the Claimants' withdrawals prior to 23 March 2021.

| No. | Description |
| --- | --- |
| 1. | Records of communications to or from, consideration by or approvals of any members of D1's management concerning the Exit Sale. |
| 2. | [Unused] |
| 3. | Documents relating to D1's procedures for approval of agreements. |
| 4. | Communications to or from, consideration by or approvals of the Compliance team concerning the Exit Sale. |
| 5. | Communications to or from, consideration by, approvals of or investigation by the Compliance team concerning the absence of a Cryptocurrency Purchase and Sale Agreement signed by Jason Morton. |
| 6. | Records of internal communication in respect of the Exit Sale, or of discussions or consideration of or replies to such communication. |
| 7. | Records of or communications, to from or within the Nexo OPS team in respect of the Exit Sale. |
| 8. | Records of or communications, to from or within the Nexo Payments team in respect of the Exit Sale. |
| 9. | Records of or communications, to from or within the Sales team in respect of the Exit Sale. |
| 10. | [Unused] |
| 11. | Communications or records concerning a request for, consideration of or the granting of approval for a lock on the Claimants' accounts on 23 March 2021. |
| 12. | Communications concerning the implementation of a lock on the Claimants' accounts on 23 March 2021, or any records of Ms Harizanova (or whoever dealt with Mr Hristov's request) concerning that lock. |
| 13. | Communications or other records relating to discussions on 22 and/or 23 March 2021 regarding the reputation of Mr Hristov in relation to the actions of the Claimants. |
| 14. | Documents relating to discussions to reduce the Claimants' withdrawal limits to $150,000 on 22 March 2021, including Mr Hristov's request to Mr Metodiev for that reduction and Mr Metodiev's responsive approval. |
| 15. | Documents relating to discussions of, requests for or approval of subsequent increases in Mr Owen Morton's withdrawal limits on 22 March 2021. |

| | Categories of disclosure sought, and the underlying 'missing documents' to which each category is directed |
|---|---|
| | **Category 2: Documents held/generated by Mr Antoni Trenchev, Mr Kalin Metodiev, and Mr Trayan Nikolov, to the extent responsive to [any of the Disclosure Issues] [Issues for Disclosure 4 and 6].** |
| 16. | As to Mr Trenchev:<br><br>(i)    communications involving anyone within Nexo that stemmed from communications with Mr Trenchev;<br><br>(ii)    discussions and approvals of transactions and agreements;<br><br>(iii)    discussions and approvals of the Exit Sale and the Disabling (both as defined at paragraph 19 of the Fifth Witness Statement of Justin Williams dated 28 March 2024); and<br><br>(iv)    communications relating to Term Earn Agreements and Cryptocurrency Purchase Agreements between D1 and the Claimants signed by Mr Trenchev on behalf of D1. |
| 17. | As to Mr Metodiev:<br><br>(i)    communications involving anyone within Nexo that stemmed from communications with Mr Trenchev; and<br><br>(ii)    communications to or from Mr Metodiev and any other records in respect of the Exit Sale or the lock on the Claimants' accounts on 23 March 2021 or the changes to the withdrawal limits on the Claimants' accounts. |
| 18. | [Relevant documents held by Mr Trayan Nikolov] |

5