# Exhibit 14

# Exhibit 14

James Taylor-Copeland (284743)
james@taylorcopelandlaw.com
Max Ambrose (320964)
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: 619-734-8770
Facsimilie: 619-566-4341

*Counsel for Plaintiff John Cress*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN CRESS,<br><br>                Plaintiff,<br><br>        v.<br><br>NEXO CAPITAL INC.<br><br>                Defendant. | Case No. 3:23-cv-00882-TSH<br><br>**PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** |

**TO DEFENDANT NEXO CAPITAL, INC.:**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Lead Plaintiff requests that Defendant Nexo Capital, Inc. ("Nexo" or "You(r)") produce and make available for inspection and copying all documents and communications requested below (the "Requests") in accordance with the definitions and instructions set forth below, at the office of  Taylor-Copeland Law, 501 W. Broadway, Suite 800, San Diego, CA 92101 within thirty (30) days of the date of these Requests, or at such other time and place as the parties mutually agree.

**I.    DEFINITIONS**

The definitions and rules of construction set forth in the Federal Rules of Civil Procedure are incorporated herein by reference.  The following definitions shall also apply to these Requests.

1.    "All" shall include the term "each," and vice versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

2.    "Board" refers to current and former members of Nexo's Board of Directors.

3.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), or attempt to transmit information, whether written, oral, electronic or by any other means.

4.    "Complaint" means Lead Plaintiff's First Amended Complaint, filed November 10, 2023, Dkt. No. 29.

5.    "Concerning" means relating to, referring to, describing, evidencing, or constituting.

6.    "Cryptocurrency Exchange" means any website, application or service that allows users to buy or trade digital assets, such as NEXO.  For the avoidance of doubt, Cryptocurrency Exchanges include You, Binance, which operates binance.com. Coinbase, Inc. ("Coinbase"), which operates coinbase.com and pro.coinbase.com, Payward, Inc., dba Kraken ("Kraken"), which operates kraken.com, Bitstamp Limited ("Bitstamp), which operates bitstamp.net, KuCoin which operates kucoin.com, and Huboi, which operates huoboi.com.

1

7. "Documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, all written, recorded, graphic or visual matter, or other electronic or paper data compilation of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted or executed, however denominated and by whomever prepared or to whomever addressed, and includes, but is not limited to, written communications, letters, correspondence, memoranda, minutes, notes, photographs, slides, videotapes, motion pictures, tapes or sound records, recordings of any type, email and deleted email (whether sent via standard email, e.g., Gmail, Yahoo, AOL, MSN, Hotmail; via internet conferencing, e.g., Skype, or via social networking sites such as Facebook, Linked-In, Twitter), computer records, electronic files, contracts, agreements, multimedia, spreadsheets, database files, applications, policies, performance reports, memoranda of telephone conversations or personal conversations, diaries, desk calendars, interoffice communications, reports, studies, drawings, other documents and material similar to any of the foregoing, or any data compilation from which information can be obtained or translated, to the extent necessary, through forensic analysis devices or techniques into reasonably usable forms.

8. "DOJ" refers to the United States Department of Justice.

9. "Hristov" means Nexo Relationship Manager Hristiyan Hristov.

10. "Including" means including without limitation.

11. "Liquidation Relief Program" means the Liquidation relief program referenced in the VIP Relationship Program attached hereto as **Exhibit A**, any earlier or later iterations of that program, or any other program run or advertised by you as providing liquidation relief or allowing customers to recover liquidated assets.

12. "LTV" means the loan to value ratio described on nexo.com and utilized by You on the Nexo Platform.

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

13.    "Meeting" means the contemporaneous presence, whether in person or through any means of communication, of any natural persons, whether or not such presence was by chance or prearranged and whether or not the meeting was formal, informal or occurred in connection with some other activity.

14.    "Nexo" and "You" and "Your" and refers to the party to whom the following requests are addressed and its agents, representatives, officers, directors, accountants, insurance companies, attorneys, investigators, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices and employees, including persons or entities outside the United States or anyone acting on your behalf.

15.    "Nexo Platform" refers to the nexo.io or nexo.com website and all services offered by You to any Person, including Plaintiff, through or in connection with the nexo.com website

16.    "NEXO" refers to the blockchain tokens sold by Nexo, including the tokens with Ethereum contract address: 0xb62132e35a6c13ee1ee0f84dc5d40bad8d815206.

17.    "NEXO Proceeds" refers to all funds raised directly and indirectly through the sale of NEXO.

18.    "NEXO Investors" means any Persons that purchased NEXO tokens during the Relevant Period.

19.    "Person" means any natural person, public or private corporation, whether or not organized for profit, governmental entity, partnership, association, cooperative, joint venture, sole proprietorship or other legal entity.  With respect to a business entity, the term "person" includes any natural person acting formally or informally as a director, trustee, officer, agent, attorney or other representative.

20.    "Plaintiff" means Plaintiff John Cress.

21.    "Referring" or "relating to" or "concerning" mean all documents that comprise, explicitly or implicitly refer to, were reviewed in conjunction with or were created, generated or maintained as a result of the subject matter of the request, including, without limitation, all documents

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

that reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

22.    "SEC" means the Unites States Securities and Exchange Commission.

23.    "Trenchev" means Antoni Trenchev.

24.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

25.    The use of the singular form of any word includes the plural and vice versa, and the masculine, feminine or neuter form of any words includes each of the other genders.

26.    The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

**INSTRUCTIONS**

1.    All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

2.    If a document was prepared in several copies, or if additional copies were subsequently made, and any such copies were not identical or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including, without limitation, handwritten notations on the front or back of the document, all such non-identical copies shall be produced.

3.    Documents shall be produced in such fashion as to identify the department, branch, or office in which they were located and, where applicable, the natural person in whose possession they were found, and the business address of each document's custodian(s).

4.    Documents attached to each other should not be separated.

5.    These requests relate to all documents which are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries,

4

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

divisions or affiliates, or their respective officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions.

6.   The documents to be produced pursuant to these requests specifically embrace, in addition to documents within your possession, custody or control, all documents within the possession, custody or control of any of your agents, accountants, representatives or attorneys.  Such documents also embrace originals and identical copies (whether different from the original because of notes made thereon or otherwise) of the documents described in these requests.

7.   The fact that a document has been or will be produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical in all respects.

8.   You shall produce the original of each document described below or, if the original is not in your custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

9.   If any documents fall within the scope of any request but are not being produced, or are being produced with portions redacted, pursuant to any claim of privilege or confidentiality, please provide a log containing the following information:

   a.   the nature of the privilege claimed (*i.e.*, attorney-client, work-product, etc.);

   b.   the name of the person or entity claiming privilege and the name of the attorney, if any, with respect to whom the privilege is claimed;

   c.   the facts upon which you rely as the basis for claiming any privilege as to the specific information or document;

   d.   the name of such document; identify the type of document (*i.e.*, letter, memo, etc.); set forth the subject matter thereof; identify the person who prepared it and each person (if any) who signed it; identify each person to whom it was directed, circulated or shown; and identify each person now in possession of the document.  If any document is

5

produced in redacted form, the word "REDACTED" is to be placed in the redacted section of the document; and

e. whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

10. In the event that any document called for by these requests has been destroyed or discarded, that document is to be identified by stating:

a. the nature of the document;

b. the names of any addressor or addressee;

c. if there are any indicated or blind copies;

d. the document's date, subject matter, number of pages, and attachments or appendices;

e. all persons to whom the document was distributed, shown or explained;

f. its date of destruction or discard, manner of destruction or discard; and

g. the persons authorizing or carrying out such destruction or discard.

11. With respect to any documents which you contend would be in some way "burdensome" or "oppressive" to produce, please state the specific reasons for that objection.

12. If you object to part of any request, please furnish documents responsive to the remainder of the request.

13. Each request refers to all documents that are either known by the Defendants to exist or that can be located or discovered by reasonably diligent efforts of the Defendants.

14. The documents produced in response to this request shall include all attachments and enclosures.

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

**PRODUCTION OF HARD COPY DOCUMENTS – FORMAT**

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**RELEVANT PERIOD**

All requests herein refer to the period of January 1, 2017, through the date of document production (the "Relevant Period"), unless otherwise specifically indicated, and shall include all documents that relate, in whole or in part, to such period even though dated, prepared, or received before or after that period. If a document from before or after this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier or subsequent document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the production request.

**DOCUMENTS REQUESTED FOR PRODUCTION**

REQUEST NO. 1:

All documents identified or referred to in Your answers to any interrogatories served by Plaintiff on Nexo, without regard to the date of the document.

7
PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

REQUEST NO. 2:

All organizational charts, working group lists and documents identifying officers and employees of Nexo, including contract employees.

REQUEST NO. 3:

All documents and communications regarding Plaintiff.

REQUEST NO. 4:

All documents and communications regarding Nexo's VIP Relationship Program, including any requirements to qualify for the VIP Relationship program and all benefits of the VIP Relationship Program.

REQUEST NO. 5:

All documents and communications regarding all representations made in the VIP Relationship Program brochure attached hereto as **Exhibit A,** including without limitation (1) Dedicated Relationship Manger, (2) OTC services with some of the best rates on the market, (3) Priority customer support, (4) Email SLA, (5) Direct phone number availability, (6) Purchase of large quantities of crypto – get institutional rates for amounts larger than $100,000, (7) Nexo Portfolio Booser, (8) Zero Cost Loan, (9) Liquidation relief program, and (10) Email SLA – get a response from the support team in 2 hours, 24/7.

REQUEST NO. 6:

All documents and communications regarding Nexo's Liquidation relief program, including all communications with customers regarding the Liquidation relief program or requests for reimbursement referencing or relating to the Liquidation relief program.

REQUEST NO. 7:

All documents and communications regarding any reimbursement or compensation You have provided to customers in connection with the liquidation of their digital assets.

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

REQUEST NO. 8:

All documents and communications regarding the compensation structure for Nexo Relationship Managers, including all bonuses or incentives tied to customer borrowing or lending activity.

REQUEST NO. 9:

All documents and communications regarding Hristov's employment and compensation between January 1, 2020, and the present, including any bonuses, incentives, or other payments to Hristov in connection with Plaintiff's activity on the Nexo Platform.

REQUEST NO. 10:

All public statements regarding the VIP Relationship Program or the Liquidation Relief Program.

REQUEST NO. 11:

All documents and communications regarding bonus compensation provided to any of Your executives.

REQUEST NO. 12:

All documents and communications regarding whether Nexo was operating in California as a finance lender or whether Nexo needed a license from the California Department of Business Oversight.

REQUEST NO. 13:

All documents and communications regarding why You provide more favorable interest rates to customers that hold the NEXO Token.

REQUEST NO. 14:

All documents and communications regarding whether customers holding the NEXO Token were more or less likely to be liquidated than customers who did not hold the NEXO Token.

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

REQUEST NO. 15:

All documents and communications regarding the volatility of the NEXO Token, including the volatility of the NEXO Token compared to Bitcoin.

REQUEST NO. 16:

All documents and communications regarding Hristov's calculation of Plaintiff's liquidation thresholds in his March 23, 2023 email to Plaintiff.

REQUEST NO. 17:

All documents and communications regarding Nexo registering NEXO with the SEC as a security.

REQUEST NO. 18:

All documents and communications regarding the March 24, 2021, Cryptocurrency Purchase Agreement between Plaintiff and Nexo.

REQUEST NO. 19:

All documents and communications regarding all purchase orders submitted by Plaintiff and all digital assets purchased by You on behalf of Plaintiff. For the avoidance of doubt, this Request includes records of all purchases of BTC, ETH, and NEXO made pursuant to the March 24, 2021, Cryptocurrency Purchase Agreement and/or Plaintiff's instructions.

REQUEST NO. 20:

All communications between Hristov and Nexo's "OTC team" regarding Plaintiff, Plaintiff's orders, and/or the acquisition of digital assets on behalf of Plaintiff.

REQUEST NO. 21:

All documents and communications regarding execution of any orders placed by Plaintiff, including the use of time weighted average purchases, or other execution strategies.

REQUEST NO. 22:

All documents and communications regarding Nexo's "OTC team" or "OTC desk."

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

REQUEST NO. 23:

All documents and communications regarding any notice provided to Plaintiff prior to liquidation or partial liquidation of his assets.

REQUEST NO. 24:

All documents and communications regarding which assets You liquidate first when a customer's LTV rises above a prescribed level.

REQUEST NO. 25:

All documents and communications regarding all revenue You received as a result of the liquidation of Plaintiff's assets.

REQUEST NO. 26:

All documents and communications regarding all revenue associated with Plaintiff, his account, his orders, or the liquidation of his assets.

REQUEST NO. 27:

All documents and communications regarding all expenses associated with Plaintiff, his account, his order, or the liquidation of his assets.

REQUEST NO. 28:

All documents and communications regarding all profit You realized associated with Plaintiff, his account, his order, or the liquidation of his assets.

REQUEST NO. 29:

All documents and communications regarding the profitability of Your collateralized lending, including whether liquidation of customer assets was profitable, and what percentage of your profits are derived from the liquidation of customer assets.

REQUEST NO. 30:

All documents and communications regarding setting the LTV threshold for liquidation of customer assets.

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

REQUEST NO. 31:

All documents and communications regarding the availability and response time of customer support, including whether VIP customers could receive a response "in 2 hours, 24/7", a "dedicated relationship manager," and "direct phone number availability."

REQUEST NO. 32:

All documents and communications regarding whether customer collateral earned or did not earn interest.

REQUEST NO. 33:

Documents sufficient to identify each NEXO transaction You entered into during the Relevant time period, including the date and time of each transaction, the quantity, consideration received, counterparty, and place where the transaction was authorized.

REQUEST NO. 34:

All documents and communications concerning the listing of NEXO on any Cryptocurrency Exchange, including any consideration You offered or provided to any Cryptocurrency Exchange and any legal memoranda, letter, or opinion regarding whether NEXO is a security You provided to any Cryptocurrency Exchange.

REQUEST NO. 35:

All documents and communications regarding whether NEXO is or was a security under state or federal law.

REQUEST NO. 36:

All documents and communications concerning business plans, development costs, financial projections, budgets, balance sheets, audits, inventories, internal investigations or complaints, and due diligence or pricing of NEXO, including, but not limited to, presentations, whitepapers, memos, reports, notes and analyses.

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

REQUEST NO. 37:

All marketing or investor communications, presentations, videos (including videos posted to youtube.com), scripts, talking points, blog posts and itineraries.  This Request includes (but is not limited to) such documents that were initially used for some other purpose but later were used or edited for purposes of marketing NEXO or equity in Nexo to potential investors or otherwise for the purpose of being displayed on the Nexo.com website.

REQUEST NO. 38:

All Board and committee minutes, handouts, agendas, presentations, and other documents provided to Nexo directors in connection with Board or committee meetings.

REQUEST NO. 39:

All archived, saved or printed webpages from the Nexo.com or Nexo.io websites and any other websites You own, control, or operate.

REQUEST NO. 40:

All analytics and statistics for the Nexo.com or Nexo.io websites and any other websites you own, control, or operate, including all information collected regarding visitors and clicks.

REQUEST NO. 41:

All communications between you and Cryptocurrency Exchanges regarding NEXO.

REQUEST NO. 42:

Any invoice, transaction history, or other document evidencing proof of payment, order, and receipt, as well as the date of payment, order, and receipt, concerning any NEXO sales.

REQUEST NO. 43:

Documents sufficient to identify all Persons holding any equity interest in Nexo during the Relevant Period.

REQUEST NO. 44:

All documents and communications concerning NEXO.

13
PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

REQUEST NO. 45:

All documents and communications with law enforcement or regulatory agencies regarding the sale of NEXO, the Earn Interest Product, or collateralized lending including the DOJ, SEC, Finra, FinCEN, the New York Department of Financial Services, or the California Division of Corporations. For the avoidance of doubt this request includes all subpoenas received from law enforcement or regulatory agencies, including the DOJ and SEC, as well as any and all documents produced in response to those subpoenas and transcripts or notes memorializing any interviews provided to law enforcement or regulatory agencies.

REQUEST NO. 46:

All documents and communications concerning the Form Ds filed by You in 2018, and all NEXO sales referenced in those Form Ds.

REQUEST NO. 47:

All documents and communications concerning contracts or agreements entered into by You concerning NEXO.

REQUEST NO. 48:

Documents sufficient to identify all Ethereum addresses that You own, control, or control the private key to.

REQUEST NO. 49:

Documents sufficient to identify all ETH, BTC, and NEXO addresses that You own, control, or control the private key to.

REQUEST NO. 50:

All documents reflecting your document destruction or retention policy during the Relevant Period, including with respect to e-mail, text messages or other electronic media storage or devices.

REQUEST NO. 51:

All documents and communications concerning the creation or genesis of NEXO.

14
PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

REQUEST NO. 52:

All documents and communications concerning the allocation and ownership of NEXO upon the launch or initial distribution of the NEXO Token

REQUEST NO. 53:

All documents and communications concerning how Nexo funds its operations.

REQUEST NO. 54:

All documents and communications concerning the ownership structure of Nexo, including any capitalization tables.

REQUEST NO. 55:

All documents and communications concerning the purchase or sale of any ownership interest in Nexo.

REQUEST NO. 56:

All documents and communications concerning planned uses for the NEXO Proceeds at or before the time of the first sale of NEXO.

REQUEST NO. 57:

All documents and communications concerning the use of the NEXO Proceeds, including all documents and communications evidencing any and all payments made with the NEXO Proceeds.

REQUEST NO. 58:

All documents and communications concerning the sale, exchange or conversion of the NEXO Proceeds into other digital currency, fiat currency, stocks, bonds, precious metals, venture capital, or other investments.

REQUEST NO. 59:

All documents and communications concerning NEXO, the Earn Interest Product, or collateralized lending shared with journalists or disseminated to other third parties. For the avoidance of doubt, this request includes all advertising regarding NEXO, the Earn Interest Product, or collateralized lending.

15

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

REQUEST NO. 60:

All social media and chat room posts and communications by Nexo regarding NEXO or the Liquidation Relief Program including without limitation posts and communications on Twitter, Reddit, Riot.im, slack.com, telegram.org, and discordapp.com.

REQUEST NO. 61:

All documents and communications regarding any payments to third parties in exchange for, or associated with, statements made by that third party on social media, in chat rooms, elsewhere on the internet, or through traditional media concerning NEXO, Nexo, or the Liquidation Relief Program.

REQUEST NO. 62:

All documents and communications regarding Your use of click farms, bots, or any other means of artificially increasing exposure of any online or social media messaging or posting.

REQUEST NO. 63:

All agreements between You and any Person which impose or purport to impose restrictions upon the sale or resale of NEXO.

REQUEST NO. 64:

All documents and communications regarding Your sales of NEXO on Cryptocurrency Exchanges.

REQUEST NO. 65:

All documents and communications regarding Your direct sales of NEXO.

REQUEST NO. 66:

Calendars, journals, notes and other documents concerning the performance of official duties concerning any allegations in the Complaint or any defense or response thereto by any Nexo employee, officer, director or agent.

REQUEST NO. 67:

All joint defense or common interest agreements relating to this Action.

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

REQUEST NO. 68:

All recordings or transcripts of public statements made by You or on Your behalf in connection with or regarding the offer or sale of NEXO.

REQUEST NO. 69:

All documents memorializing, evidencing or concerning any non-public statements You made to any purchaser or potential purchaser of NEXO regarding the offer or sale of NEXO, including whether NEXO was registered with the SEC.

REQUEST NO. 70:

All documents and communications concerning any statement made by Trenchev regarding the NEXO Token or the Liquidation Relief Program.

REQUEST NO. 71:

All documents not falling within the above demands that You intend to rely on, introduce as evidence or otherwise use at summary judgment or trial of this case.

REQUEST NO. 72:

All documents and communications concerning removal of the Liquidation Relief Program from the VIP client brochure and email solicitations.

REQUEST NO. 73:

All communications made by Teodora Atanasova about the Liquidation Relief Program.

REQUEST NO. 74:

All communications made by Your Support Manager rosen@nexo.io and rosen@nexo.com about the Liquidation Relief Program.

REQUEST NO. 75:

All communications concerning information about Your customer's liquidation prices.

REQUEST NO. 76:

All documents and communications regarding any utility provided by the NEXO Token.

17

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

REQUEST NO. 80:

All documents and communications concerning Your use of market makers in connection with NEXO.

REQUEST NO. 81:

All documents concerning Your NEXO holdings during the Relevant Period, including in blockchain wallets and on Cryptocurrency Exchanges.

DATED:  July 25, 2024                    Respectfully submitted,

*/s/James Taylor-Copeland*
James Q. Taylor-Copeland
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4944
Facsimile: (619) 566-4341

*Counsel for Plaintiff John Cress*

PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS - 3:23-cv-00882-TSH

# Exhibit A

# Exhibit A



# VIP Relationship Program

nexo.io

Case 3:23-cv-00882-TSH   Document 135-16   Filed 07/06/26   Page 22 of 34

## You receive access to:



**Dedicated**
Relationship Manager.

**OTC services** with some of
the best rates on the market.

**Priority** customer
support.





**Dedicated Relationship Manager** – a person to help in your successful utilization of the platform.



**Email SLA** - during business hours, you can expect a reply from the Relationship manager in a matter of hours, no more than 24h, weekends excluded.



**Direct phone number availability:** 8AM – 5PM UTC. Out of business hours calls – schedule in advance.

**Quarterly meetings** – regular checkups and a channel to share feedback and requests.



Sneak peek at **new platform features**.



Access to **exclusive OTC services**.



OTC
Services list



**Fiat-to-stablecoin conversion** – get institutional rates for amounts larger than $100,000.



**Purchases of large quantities of crypto** –
get institutional rates for amounts larger
than $100,000.



**Nexo Portfolio Booster** – grow your crypto holdings by leveraging part of your portfolio.





**Liquidation relief program** – use the service in the event of a market crash to recover your liquidated assets.



# Priority
## support



Reach out **support for any technical questions** - change credentials, lost 2FA.



**Priority support** - the support will be reviewing all emails sent to support@nexo.io with priority.

**Email SLA** - get a response from the support team in 2 hours, **24/7**.


