# Exhibit 21

# Exhibit 21



November 29, 2021

Via Email
Michael Bahar, Esq.
Eversheds Sutherland
700 6th Street N.W.
Washington, D.C. 20001

**Re: John Cress**

Dear Michael:

We write further to our October 26 letter and November 10 call to address certain issues that you and Mr. Shelton raised in response to Mr. Cress's demand.

*First*, Mr. Cress is entitled to his losses from Nexo's fraudulent inducement of his loans—namely, the value of his posted cryptoassets prior that he then lost from the borrowing. The question is whether "the misrepresentation is an immediate cause of [a plaintiff's] conduct, which alters his legal relations, and when, absent such representation, he would not in all reasonable probability, have entered into the contract or other transaction." *Naeyaert v. Kimberly-Clark Corp.*, No. EDCV1700950JAKJPRX, 2018 WL 6380749, at \*6 (C.D. Cal. Sept. 28, 2018). A "consumer's allegation that she would not have bought the product but for the misrepresentation . . . is sufficient to allege causation . . . [and] to allege economic injury." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965–66 (9th Cir. 2018); *see also Hawkins v. Kroger Co.*, 906 F.3d 763, 768 (9th Cir. 2018) (same).

Accordingly, Mr. Cress is entitled to the value of the cryptoassets that he deposited onto Nexo's platform prior to taking out the loans that Nexo fraudulently induced him to make and that caused his loss of those assets. Those cryptoassets were approximately 249.916738 BTC and 250 ETH. At the time of our October 26 letter, those assets were valued at approximately $17 million. As of today, they are valued at approximately $15.6 million ($58,097.83 per BTC for a total of $14,519,620.2 in BTC, and $4,421.42 per ETH for a total of $1,105,355 in ETH). Mr. Cress is entitled to these damages both as a matter of restitution (if he were not entitled to the cryptoassets themselves, as addressed just below) and lost profits.

In addition, Mr. Cress is entitled to the restitution of BTC and ETH as such. *See* Cal. Bus. & Prof. Code § 17203 ("The court may make such orders or judgments . . . to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."); *see, e.g.*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 840 (N.D. Cal. 2020) ("[R]estitution under the UCL must restore the status quo by returning to the plaintiff's funds taken from him or benefits in which the plaintiff has an ownership interest.") (quotations omitted). That is, "restitution is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003)); *see also Rave Wonderland, Inc. v. City Lingerie, Inc.*, No. CV 19-4546-RSWL-MRW, 2019 WL 6792808, at \*3 (C.D. Cal. Sept. 11, 2019) ("The object of restitution is to restore the status quo by returning to the plaintiff funds

CONFIDENTIAL                                                                 NEXO-0248181

Michael Bahar, Esq.
November 29, 2021
Page 2 of 3

in which he or she has an ownership interest."); *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, No. 2:17-CV-01515-KJM-AC, 2020 WL 3893395, at *6 (E.D. Cal. July 10, 2020) ("The California Supreme Court has held that restitution under the UCL is limited to either 'money or property that defendants took directly from plaintiff' or 'money or property in which [plaintiff] has a vested interest.'"). Indeed, the "most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty [in fixing the amount of damages] which his own wrong has created." *Buell-Wilson v. Ford Motor Co.*, 73 Cal. Rptr. 3d 277, 309–10 (Ct. App.), *as modified on denial of reh'g* (Apr. 10, 2008), *review granted and opinion superseded,* 187 P.3d 887 (Cal. 2008).

*Second*, if Mr. Cress were not entitled to the entire value of those assets that he lost as a result of being induced to take out loans at all, he is entitled to what he lost as a direct result of Nexo's misrepresentations and omissions regarding the VIP program themselves. That is, "it is not necessary to allege and prove the plaintiff would not have entered the transaction but for the misrepresentation. Such but-for causation is only one of the 'innumerable' ways of establishing standing . . . . Economic injury sufficient to support UCL standing exists where the plaintiff surrender[ed] in a transaction more, or acquire[d] less than he or she otherwise would have." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1134 (N.D. Cal. 2014) (internal citation omitted) (alterations in original) (finding "a UCL claim is stated when the plaintiff, as a result of a defendant's misrepresentation, did not receive what he or she had bargained for"). Our October 26 letter outlines, for example, that due to Nexo's unresponsiveness Mr. Cress was unable to make decisions regarding how to protect his assets, such as whether he had to post additional collateral at a critical time prior to his liquidation. On May 23, 2021, for example, Mr. Cress emailed Mr. Hristov requesting to discuss how the liquidation relief program would operate to protect his assets in a "[f]lash crash scenario" and received no response. Nexo thus induced his forbearance from taking those protective actions and is liable for his losses. *See Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 174 (2003) ("California law has long recognized the principle that induced forbearance can be the basis for tort liability.").

*Third*, Nexo's citations to market factors are unavailing, because Nexo's acts were substantial factors in causing Mr. Cress's injury. "To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct. A plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision. A plaintiff may do so by simply proving that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 685 (N.D. Cal. 2021) (internal citation omitted). Plaintiffs "need not prove the misrepresentation or omission was the 'only,' 'sole,' 'predominant,' or 'decisive' cause of the injury-causing conduct. Rather, they may show that the misrepresentation or omission was a substantial factor in their decision-making process." *In re Big Heart Pet Brands Litig.*, 2019 WL 8266869, at *14 (N.D. Cal. Oct. 4, 2019); *see also Tran v. Sioux Honey Ass'n*, 2020 WL 905571, at *4 (C.D. Cal. Feb. 24, 2020) (under "the FAL, CLRA, and UCL, a Plaintiff need show only that a misrepresentation played a substantial part, and so had been a substantial factor, in influencing his [or her] decision"); *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1092–93 (N.D. Cal. 2019) (applying substantial factor test to UCL claim).

ROCHE FREEDMAN LLP

99 Park Avenue, Suite 1910, New York, NY 10016 | (t) (646) 350-0527 | www.rcfllp.com

CONFIDENTIAL                                                                                                          NEXO-0248182

Michael Bahar, Esq.
November 29, 2021
Page 3 of 3

*Fourth*, any loss Mr. Cress suffered due to market factors was also not an "intervening cause" relieving Nexo of liability for his injury. "To qualify as a superseding cause so as to relieve the defendant from liability for the plaintiff's injuries, both the intervening act and the results of that act must not be foreseeable." *Chanda v. Fed. Home Loans Corp.*, 215 Cal. App. 4th 746, 755–56 (2013); *see also Cooper v. Tokyo Elec. Power Co., Inc.*, 166 F. Supp. 3d 1103, 1119–20 (S.D. Cal. 2015), *aff'd,* 860 F.3d 1193 (9th Cir. 2017) (a "superseding cause must be something more than a subsequent act in a chain of causation: It must be an act that was not reasonably foreseeable at the time of the defendant's negligent conduct.").

In sum, Mr. Cress demands payment of the value of his BTC and ETH at the time of resolution (approximately $15.6 million presently), or preferably the return of his BTC and ETH. Please respond to this demand no later than December 17 or Mr. Cress will be forced to take all actions available to him to protect his rights. The foregoing is not intended to be a complete recitation of all applicable law and/or facts, and shall not be deemed to constitute a waiver or relinquishment of any of our client's rights or remedies, whether legal or equitable, all of which are hereby expressly reserved.

Sincerely,

ROCHE FREEDMAN LLP

*/s/ Edward Normand*
Kyle W. Roche
Edward Normand
Alex Potter
ROCHE FREEDMAN LLP
99 Park Avenue, 19th Floor
New York, NY 10016

ROCHE FREEDMAN LLP
99 Park Avenue, Suite 1910, New York, NY 10016 | (t) (646) 350-0527 | www.rcfllp.com

CONFIDENTIAL     NEXO-0248183