# Exhibit 39

# Exhibit 39



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 27, 2023

**<u>BY ECF</u>**

Honorable Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

   Re:  *United States v. Samuel Bankman-Fried*, 22 Cr. 673 (LAK)

Dear Judge Kaplan:

   The Government writes to seek the modification of defendant Samuel Bankman-Fried's conditions of pretrial release to impose two new conditions relating to his contact with prospective witnesses in the case. Specifically, the Government respectfully requests that the Court impose the following conditions: (1) the defendant shall not contact or communicate with current or former employees of FTX or Alameda (other than immediate family members) except in the presence of counsel, unless the Government or Court exempts an individual from this no-contact rule; and (2) the defendant shall not use any encrypted or ephemeral call or messaging application, including but not limited to Signal. For purposes of this motion, "FTX" is defined to include FTX.com, FTX US, FTX Digital Markets Ltd., and all affiliated, subsidiary, and successor entities, and "Alameda" is defined to include Alameda Research and any affiliated, subsidiary, and successor entities. The imposition of these new conditions is justified in light of the nature of the case, as well as the defendant's recent attempts to contact prospective witnesses.

   On December 22, 2022, the defendant was released on a bond, which has subsequently been modified on two occasions. (ECF Nos. 13, 48). The bond does not presently impose limitations on the defendant's ability to contact any prospective witnesses in the case. It has recently come to the Government's attention that the defendant has been in direct communication with the current General Counsel of FTX US who may be a witness at trial ("Witness-1"), and who is represented by counsel. Specifically, on January 15, 2023, the defendant contacted Witness-1 over the encrypted messaging application Signal, as well as by email, and wrote, in part: "I would really love to reconnect and see if there's a way for us to have a constructive relationship, use each other as resources when possible, or at least vet things with each other." The defendant has also contacted other current and former FTX employees. Bankman-Fried's use of Signal here is consistent with a history of using the application for obstructive purposes, as discussed below.

The defendant's request to "vet things with each other" is suggestive of an effort to influence Witness-1's potential testimony, and the appeal for a "constructive relationship" likewise implies that Witness-1 should align with the defendant. This is particularly concerning given that the defendant is aware that Witness-1 has information that would tend to inculpate the defendant. The Government has interviewed Witness-1, who has firsthand knowledge of the defendant's conduct during the charged conspiracies, including during the collapse of FTX in November 2022. Witness-1 participated in Signal and Slack communications with the defendant and a small group of company insiders during the relevant events of November 2022. In those messages, among other things, the defendant gave instructions for liquidating Alameda's investments to satisfy FTX customer withdrawals, and indicated that he transferred approximately $45 million dollars of Alameda funds to FTX US to fill an apparent hole in FTX US's balance sheet. Since FTX's collapse and his arrest, the defendant has publicly touted that FTX US was fully solvent and claimed that it is "ridiculous that FTX US users haven't been made whole and gotten their funds back yet," without disclosing his transfer of Alameda funds to fill an apparent hole in FTX US's balance sheet.[1]

In any case, the defendant's recent contact with Witness-1 alone warrants the imposition of the proposed restrictions. The condition that a defendant "avoid all contact … with a potential witness who may testify concerning the offense" is a standard condition. 18 U.S.C. § 3142(c)(B)(v). Indeed, the no-contact condition is routinely imposed in cases in this district. "The no-contact condition set forth in the statute seeks to prevent a defendant from intimidating someone who, by nature of being a victim or a potential witness, is already in a difficult and delicate position." *United States v. Lillemoe*, No. 3:15 Cr. 25 (JCH), 2015 WL 9694385, at *3 (D. Conn. May 28, 2015) (citation and quotation marks omitted). Efforts by the defendant to improve his relationship with potential witnesses that may testify against him may itself constitute witness tampering. Were the defendant to "vet" his version of relevant events with potential witnesses, that might have the effect of discouraging witnesses from testifying in a manner contrary to the defendant's narrative. Even if the defendant has not directly attempted to tamper with witnesses, "[i]mproper contacts with prospective government witnesses inherently create a potential for overt threats or implied intimidation, the taint of which cannot easily be overcome." *United States v. Grisanti*, No. 91 Cr. 229A, 1992 WL 265932, at *6 (W.D.N.Y. Apr. 14, 1992). The defendant's contact with witnesses may intimidate them, making them less likely to come forward or be willing to testify.

Here, given the likelihood that many FTX and Alameda current and former employees will be witnesses at trial, the proposed restriction on contact is appropriately tailored. The Government is seeking to limit the defendant's contact only with current and former FTX and Alameda employees, the very people who until recently were the defendant's underlings whom he supervised and financially compensated, and who are therefore most vulnerable to intimidation. The Government does not consider it administrable to identify a more limited subset of former and current employees whom the defendant may not contact—the Government has not completed its investigation and is still identifying individuals with information relevant to the charges who may be potential trial witnesses. The omission of any such individual from a defined list risks inviting the defendant to contact these individuals to foster a "constructive relationship" before any relevant

---

[1] *See, e.g.*, https://sambf.substack.com/p/ftx-pre-mortem-overview (last access January 27, 2023).

information is shared with the Government. To the extent the defendant continues to share a close personal relationship with particular former FTX and Alameda employees, the Government is amenable to exempting such individuals from the bail restriction.  Moreover, this proposed restriction would not impair the defendant's ability to participate in the preparation of his defense because he could still participate in interviews with prospective witnesses where his attorneys are present.

The second proposed condition, to restrict the defendant's use of Signal and other encrypted and ephemeral call and messaging applications, is also necessary to prevent obstruction of justice.  The Government's investigation has revealed that the defendant directed that FTX and Alameda business be conducted on Slack and Signal, two encrypted messaging applications that permit users to implement settings that cause messages to automatically delete on the devices of others with whom they are communicating. In or about 2021, the defendant directed that Slack and Signal communications between FTX and Alameda employees—including his own business communications—be set to autodelete after 30 days or less.  The Government has learned from Caroline Ellison—the former CEO of Alameda who has pleaded guilty to a cooperation agreement with the Government—that the defendant indicated, in substance and in part, that many legal cases turn on documentation and it is more difficult to build a legal case if information is not written down or preserved.  In fact, the autodeletion of FTX and Alameda's Slack and Signal communications has impeded the Government's investigation; potential witnesses have described relevant and incriminating conversations with the defendant that took place on Slack and Signal that have already been autodeleted because of settings implemented at the defendant's direction.

Because Signal and similar messaging platforms are encrypted and the messages may be set to autodelete after a short period of time, defendants can also use them to evade bail restrictions and pretrial oversight.  The proposed bail conditions in combination would more effectively prevent the defendant from obstructing justice.  The defendant contacted Witness-1 through Signal and by email.  Using Signal to contact potential witnesses increases the likelihood that detection of any attempt to obstruct justice by influencing a witness will itself be obstructed—particularly if the defendant applies Signal's autodelete function before a message recipient has the opportunity to preserve a message from the defendant.  This proposed restriction will not inhibit the defendant's ability to communicate with others as he could still use text message, email, and conventional telephone calls.

Page 4

Accordingly, the Government respectfully submits that the defendant's bond should be modified to add the conditions that he (1) not contact or communicate with current or former employees of FTX and Alameda (other than immediate family members) except in the presence of counsel, unless the Government or Court exempts an individual from this no-contact rule; and (2) not use any encrypted or ephemeral call or messaging application, including but not limited to Signal.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s/ Danielle R. Sassoon
Danielle R. Sassoon
Nicolas Roos
Samuel Raymond
Thane Rehn
Andrew Rohrbach
Assistant United States Attorneys
(212) 637-1115

Cc:    Defense Counsel (by ECF)