# Exhibit 41

# Exhibit 41

# Taylor-Copeland Law, P.C.

501 W. Broadway, Suite 800
San Diego, CA  92101
(619) 734-8770
www.taylorcopelandlaw.com

James Taylor-Copeland | 619 734 8770 | james@taylorcopelandlaw.com

**By Electronic Mail**

**September 9, 2025**
Ian Shelton
Ian.Shelton@bakermckenzie.com
Matthew Rawlinson
Matthew.Rawlinson@bakermckenzie.com
John Treat
John.Treat@bakermckenzie.com
Stephanie Brown
Stephanie.Brown@bakermckenzie.com
Baker Mckenzie
10250 Constellation Blvd.
Los Angeles, CA 90067

> Re: ***Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH (N.D. Cal.) – Meet and Confer Letter regarding Nexo's August 31, 2025 Production of Documents**

**Counsel,**

We write to address the significant deficiencies in Nexo's recent document production and to seek your immediate cooperation in remedying these issues. As you know Nexo promised to make rolling document productions throughout the summer and "substantially complete" its productions by August 31, 2025. However, it is apparent that Nexo's productions are far from complete. Critical categories of responsive documents remain missing or were only partially produced. As you know, Plaintiff served his Requests seeking these documents over a year ago. Nexo agreed to produce some of these documents shortly thereafter, and the Court ordered their production of many additional categories in April 2025. Nearly five months later, Nexo still has not complied.

We are concerned that Nexo continues to withhold court-ordered material, and that certain representations made to us and to the Court regarding the availability of discovery may have been inaccurate. We detail below the most glaring deficiencies in Nexo's production and request that Nexo promptly produce the missing documents or confirm, after a diligent search, that they do not exist (with an explanation of what efforts were made to locate them). Given the seriousness of these issues we would like to meet and confer with you as soon as possible.  If these issues are not fully resolved by **Friday, September 19, 2025**, Plaintiff will have no choice but to seek relief from the Court, including sanctions, for Nexo's failure to comply with its discovery obligations and the Court's Order. Our goal, however, is to resolve these matters without court intervention by obtaining complete responses and fully understanding Nexo's position on each issue.

**Outstanding Categories of Missing Documents and Communications:** We have identified numerous categories of documents that are plainly responsive and should have been produced, but are absent or incomplete in Nexo's production. These include, but are not limited to, the following:

1. **Communications with Regulators (RFP 17, 35, 45)**

Nexo has produced virtually no communications with the U.S. Securities and Exchange Commission (SEC) or with state or other regulators, even though our requests (and the Court's order) encompass these materials. All communications with the SEC, state securities agencies, and other regulatory or law enforcement bodies about the NEXO Token, the Earn Interest Product (EIP), or Nexo's lending platform are plainly relevant. For example, NEXO-0211144 indicates that Nexo was in direct communication with at least one state securities regulator (the Arkansas Securities Department) in 2021 regarding the NEXO Token, and that Nexo represented to that regulators that as early as 2020 the SEC had conducted a "formal investigation" of Nexo. Another document, NEXO-0215538, confirms Nexo was communicating with the SEC regarding its sale of the NEXO Token and its public representation that the token was "SEC compliant." These documents directly contradict Nexo's representation to the Court in our March 14, 2025 Joint Discovery Letter (Dkt. 66), that "the SEC and companion state investigations in the US related to the Earn Interest Product (EIP) [were] not at issue in this litigation."

It now appears that Nexo was, in fact, under extreme regulatory scrutiny regarding its token during 2020–2021. NEXO-0185918 (internal document describing that Nexo had been in communication with both state and federal regulators for years prior to 2022, including communications about the NEXO Token). However, Nexo has not produced its related communications or documents. This omission is extremely concerning. Please immediately produce all documents and communications relating to any SEC, state, or other regulatory inquiries or investigations involving Nexo, the NEXO Token, the EIP, or any related matter (including any subpoenas, agency correspondence, interview transcripts, and Nexo's responses and document productions). If Nexo contends that no further documents exist, explain how that conclusion was reached (including what sources were searched) and confirm whether Nexo is aware of such documents ever existing. If any responsive documents have been withheld or destroyed, we need to know that now.

2. **Antoni Trenchev's Emails and Communications (RFP 70)**

Nexo's production contains virtually no emails or communications to or from Antoni Trenchev, Nexo's co-founder and Managing Partner. This is a glaring omission. As you know, the Court has ordered Trenchev to produce every document and communication concerning any statement Trenchev made regarding the NEXO Token or LRP. (RFP 70). This should encompass hundreds or thousands of communications. Nexo has not produced a single one. For example, we located a demand letter sent to Mr. Trenchev by a Nexo customer regarding an improper liquidation. NEXO-137559. However, the email communication transmitting that letter to Mr. Trenchev (and any internal follow-up) has not been produced. We have located early Nexo investor communications sent to Mr. Trenchev in Hristov's files that are missing from Trenchev's files. NEXO-0047899. Nexo has publicly stated that Mr. Trenchev messaged other customers directly regarding sales of NEXO tokens. NEXO-0098794. Trenchev discussed the NEXO Token in a "USA slack channel." NEXO-0103303. Trenchev has similarly spoken at length, for years, about Nexo and the NEXO token, to investors, at presentations, and in marketing materials. All of these communications are

missing from Nexo's production. The examples above are only a small set of Trenchev-related communications that are missing; it raises serious concerns that Nexo (a) failed to adequately search Mr. Trenchev's email accounts or other communication channels or (b) intentionally deleted responsive emails and documents.

In addition, we know that Mr. Trenchev used at least the email addresses antoni@nexo.io and legal@nexo.io (and perhaps other accounts) during the relevant period. You previously represented that "Nexo collected all emails associated with all email addresses he has used during the relevant period." Did Nexo collect and search these email accounts and all others used by Trenchev? Please confirm whether Nexo has collected and searched all of Mr. Trenchev's email accounts (and any messaging apps or other platforms he used for Nexo business). If such searches were done, explain why virtually no emails to/from Mr. Trenchev have been produced. If searches were not done or were limited (for example, if one of his email accounts was omitted), that needs to be remedied immediately. In short, either there are significant missing documents that must be produced, or Nexo must clarify that Mr. Trenchev's communications were not preserved and why.

### 3. <u>Kosta Kantchev's Emails and Communications</u>

Similarly, we have received almost no communications to or from Kosta Kantchev (another Nexo co-founder and court-ordered custodian). Mr. Kantchev was Nexo's primary Managing Partner and owner, and was NDS' primary manager in 2021; one would expect numerous responsive communications from his files on topics, including the NEXO Token sales, the VIP Program, the Liquidation Relief Program, and Nexo's OTC desk. Mr. Kantchev oversaw every department relevant to Mr. Cress's claims, yet his presence in the production is minimal. Nexo needs to confirm that Mr. Kantchev's email and electronic records were thoroughly searched. If they were, it is hard to believe that essentially nothing responsive was found from such a high-level custodian, particularly where Nexo represented it searched more than 100,000 documents from Mr. Kantchev's files yet produced only about 1,000. If Mr. Kantchev's communications truly yielded no responsive documents, please confirm that and describe the searches conducted. If, on the other hand, Nexo did not search certain of his data sources (or if his data was not preserved), that is a serious issue that must be disclosed and addressed immediately.

### 4. <u>Plaintiff's Communications with Nexo Support (RFP 3)</u>

Nexo has not produced all of Mr. Cress's communications with Nexo's customer support. This is a basic category of responsive documents – Mr. Cress's interactions with Nexo (such as support ticket emails or chats) are directly relevant to his claims. Yet Nexo has failed to produce any of Mr. Cress's communications via support ticket #432896. These communications are clearly referenced in Mr. Cress's production, e.g., CRESS-00000101, CRESS-00000104, CRESS-0000116, CRESS-00000162. Please produce all communications between Mr. Cress and Nexo's support team (including any internal support ticket records referencing Mr. Cress) or confirm that, after diligent search, Nexo was unable to locate all of Mr. Cress's support tickets (and explain why such records were not preserved or have been lost).

### 5. <u>Lack of Internal Communications (Email, Slack, Telegram, etc.)</u>

Across all custodians, Nexo's production contains *almost no internal communications* (whether by email or by internal messaging platforms such as Slack, Telegram, Riot/Matrix, or Confluence).

It strains credulity that a fintech company of Nexo's size operated with so little written communication among its team. By all accounts (including Nexo's own public statements and the documents we *have* seen), Nexo employees and executives communicated frequently via Slack and other chat applications, as well as email. For example, Nexo's OTC trading desk and finance teams coordinated daily on large transactions and "Liquidation Relief Program" decisions via Slack or similar channels – yet Nexo has produced virtually none of those discussions. Nexo's production also suggests that Nexo used an internal Confluence page or similar collaboration tools to discuss the Liquidation Relief Program (see NEXO-0134880; NEXO-0135493), but the communications or content from those tools have not been produced. We also know Nexo employees, including its managers and marketers, communicated via Slack about the NEXO token and the LRP. NEXO-0103303.

Likewise, aside from a handful of scattered emails, there are almost no internal emails discussing significant events (e.g. the Nexo Token sale, decisions about U.S. customers, responses to regulatory inquiries, VIP and LRP program, etc.). This absence suggests either a failure to collect from critical data repositories or possibly an intentional omission. We request that you confirm what *non-email* sources have been collected and searched for each custodian (e.g., Slack accounts, Telegram chats, Confluence pages, personal devices, etc.). If such sources were not searched or preserved, please explain why not. All responsive internal communications – whether via Slack, Telegram, text message, or any other medium – must be produced. If Nexo maintains that no such communications exist, please confirm that a diligent search was conducted and clarify why those records have been lost or deleted (which raises spoliation concerns).

### 6. <u>Nexo's Analysis of the NEXO Token's Status</u>

Nexo has not produced any of its internal or external legal analyses regarding whether the NEXO Token is or was a "security" under U.S. law. Request No. 35 specifically seeks all documents and communications about whether NEXO is a security, and Nexo agreed to produce these documents. Yet we have seen nothing like a legal memo, opinion letter, or email discussion of this issue. Nexo's production indicates that it shared these memos with third parties on multiple occasions, but the memos themselves do not appear to be included in the production. *See, e.g.*, NEXO-0141364. If Nexo obtained legal advice or conducted analyses on the regulatory status of the NEXO Token, those documents are responsive and must be produced (unless withheld as privileged, in which case they needed to be logged). Please either produce these documents or confirm if Nexo is withholding them on privilege or other grounds (and if so, they should be included on a privilege log).

### 7. <u>Audit Reports, Attestations, and Financial Attestations</u>

We have not seen any audit reports, attestation letters, or similar financial/accounting documents in Nexo's production, despite Nexo's public representations and internal documents confirming that such audits or attestations exist. For instance, Nexo (and Mr. Trenchev) have repeatedly suggested in public forums that Nexo's finances and NEXO Token holdings were subjected to audits or third-party attestations for transparency. Nexo marketed these audits as being "the first and only crypto lender to pass a real-time reserves audit." NEXO-02000057. Nexo appears to have used these audits in representations made to state regulators about the NEXO token, including regulators from Kentucky. NEXO-0199060. Likewise, Nexo's own documents purport to attach token sale audits that appear to be missing from Nexo's production. NEXO-0198761. Finally,

Nexo's internal documents suggest that it has performed audits, as they are "a legal requirement for entities registered in Switzerland." NEXO-0202058.

Our RFPs (e.g., RFP 36 and others) covered these materials, and the Court ordered their production. Yet Nexo has produced no audit reports or certifications whatsoever (internal or external). This is very troubling. We need to know: has Nexo conducted any internal audits, external audits, or independent accountings relating to the NEXO Token, its sale, or the proceeds therefrom? If so, all documents relating to those audits (reports, working papers, communications) must be produced. If Nexo's position is that it has *no* audits or attestation documents, please confirm that in writing and explain what efforts were made to locate them (and how that squares with Nexo's public and private statements claiming to have such audits). In any event, please also explain what searches have been done for documents responsive to RFPs seeking audits, financial statements, or attestations (such as RFP 111, 116, 117, and Court-ordered RFP 36), and why those searches have yielded nothing.

### 8. Hristiyan Hristov's Emails (or Lack Thereof)

It is clear that critical emails to or from Hristiyan Hristov (Plaintiff's VIP Relationship Manager) are missing from the production. Hristov was a key Nexo employee who directly handled Plaintiff's account and other large clients, and he is among the court-ordered custodians. However, dozens of emails directly between Hristov and Plaintiff are not included in his files. In addition, Hristov should have received certain automated system notifications regarding Plaintiff. We also would expect to see emails where Mr. Hristov forwarded client issues or discussed them with other Nexo personnel (for example, any communications he had with the trading team or management about Plaintiff's account). We have identified nothing of the sort. This suggests that either Hristov's emails were not properly collected (or have been deleted).

Compounding the concern, we discovered that some of Plaintiff's litigation documents from 2024 (i.e. documents generated in this lawsuit) somehow ended up in Mr. Hristov's custodial files. For example, NEXO-0136995 is a document from this litigation (dated 2024 or later) that appears in Hristov's data. This makes little sense because Mr. Hristov left Nexo in 2023 and presumably would not possess documents created after his departure, let alone litigation materials. The presence of that document in his files calls into question the integrity of Nexo's collection process and suggests that data from different sources or custodians may have been commingled or mis-designated.

We are also aware that account managers, such as Hristov, were issued company MacBooks. NEXO-0137920. Can you please confirm that Nexo imaged and searched Hristov's MacBook(s) and any other company-issued devices he used?

We request a thorough explanation: Were Mr. Hristov's email accounts and devices fully collected? If so, how is it possible that many relevant emails, including emails directly to, from, or regarding Plaintiff are missing? Also, how did a 2024 litigation document end up in his files?

### 9. Minimal Production of Slack/Chat Communications

As noted above, Nexo has produced very few Slack messages or other chat logs, and even fewer still from the 2021 period (ten total Slack communications from 2021). This is unacceptable given that Slack was used daily by Nexo's teams for vital operations relating to all VIP services and the

NEXO token. To be specific, Nexo's OTC trading teams, risk management personnel, account managers, marketers, and managers all used Slack (and likely Telegram, Confluence, SalesForce, and similar apps) to coordinate large trades, discuss LRP decisions and VIP customers, and discuss the NEXO token. For example:

- Nexo used Slack and SalesForce as a critical part of its Account Management (e.g., VIP Relationship Manager) workflow. NEXO-0145425. Nexo would discuss escalations from the "payments department for notable client behavior (withdrawals, deposits, repayments, exchanges). NEXO-0145425. All of these communications are relevant and responsive.
- Nexo tracked OTC, portfolio booster, and liquidation relief executions in Slack. NEXO-0141989.
- Nexo would elevate VIP service inquiries, such as OTC NEXO token purchases, and Liquidation Relief requests, to Slack channels. NEXO-0046405; NEXO-0048839; NEXO-0068703.
- Documents NEXO-0015277 suggest Nexo communicated frequently on Slack regarding the Liquidation Relief Program. Notably, in April 2021, Alexander Rakshiev mentions that "the March Liquidation Relief file has become too big," and he proceeded to Archive that file and create a new one. Nexo should have no issues accessing those files or archives in its custodians files, but has not produced any of them. Another document, e.g., NEXO-0015280, shows Nexo using Slack to discuss a customer's Liquidation Relief program on the same day Mr. Cress was liquidated by Nexo.
- Nexo confirms it has a dedicated Slack channel for OTC Processes (a relevant VIP service provided to Cress. NEXO-0139580. Other documents, e.g., NEXO-0134880 and NEXO-0135493, appear to be references to internal discussions (possibly on Confluence or Slack) about liquidation relief for customers. We have not seen the actual content of those discussions.
- Nexo represented that it used Slack channels and email communication "to communicate policies and procedures to all staff." NEXO-0093900. However, we have not seen a single communication to this effect.
- Nexo's internal documents even suggest they communicated with customers via Slack. NEXO-0137929. We have not seen these communications either.
- Nexo used Slack to discuss NEXO token related marketing campaigns. NEXO-0141634. These communications are missing from Nexo's production.

We are also aware Nexo employees, including custodians Trenchev and Hristova, discussed NEXO token sales to US investors through a "USA slack channel." NEXO-0103303. Every communication from this entire "USA slack channel" is responsive and has been ordered by the Court to be produced. (RFP 60, All communications by Nexo regarding NEXO or the LRP on Slack; RFP 70, All documents and communications concerning any statement made by Trenchev regarding the NEXO Token or the LRP). None of these plainly responsive communications from this Slack channel (or any communications from Trenchev) have been produced.

Additionally, Nexo's employees would have discussed Plaintiff's purchases and subsequent liquidations internally via Slack or other chats (in addition to email). For example, Nexo's internal documents discuss one customer who transacted millions of NEXO Tokens and hundreds of BTC in 2022 at levels similar to Mr. Cress. Concerningly, Nexo admits his main point of contact, Hristov, "conducted several OTC conversations that are not on record within the CRM system."

NEXO-0139009. Nexo discussed that these sales were apparent in the #nexo-movements channel in Slack, which closely monitors live clients who perform consecutive large sell orders of NEXO or move/initiate large TWAP orders through Nexo Pro. *Id*. However, we have seen almost no internal communications about Mr. Cress's transactions at all—in any system or communication channel used by Nexo.

We remind you that our RFPs (including RFP 60 and others) explicitly cover internal chat communications and social media posts. Nexo was ordered by the Court to search all non-custodial sources reasonably likely to contain responsive info, which would include enterprise chat platforms like Slack. Please confirm whether Nexo has collected data from Slack, Telegram, WhatsApp, Riot/Matrix, Confluence, or any other messaging/collaboration platform used by the 14 custodians (or other key employees) during the relevant period. If not, this is a serious oversight that needs immediate correction. We expect Nexo to conduct a comprehensive search of these sources and produce all responsive communications without further delay. If Nexo's position is that it no longer has these chat logs (for instance, if Slack messages were not retained or were deleted), that raises grave concerns about potential spoliation. If that is the case, please detail Nexo's retention policies for chat data and explain why these communications are unavailable. Simply put, the near-total absence of informal internal communications in the production is not credible; it needs to be addressed either by producing the documents or confirming (understanding the seriousness of such a representation) that none exist or could be recovered.

### 10. Limited Documentation of 2018–2020 NEXO Token Sales

Nexo's production is also deficient with respect to documents about the genesis of the NEXO Token and its early token sales. We requested, and the Court ordered, production of all documents concerning the offer and sale of NEXO Tokens, including communications with purchasers and marketing or promotional materials (RFPs 36, 37, 51, 52, 58, 69, etc.). Yet, we have received very few documents regarding Nexo's 2018 initial token sale and subsequent 2019–2020 sales of NEXO Tokens. For example, many documents, communications or agreements with investors who bought NEXO in 2018 (during the ICO/initial offering) have not been produced. NEXO-0215397 (NEXO purchase agreement with US investor without any communications regarding the sale); NEXO-0033173 (March 2018 ICO investor missing documents reflecting his token purchases or earlier communications about those purchases); NEXO-0028388 (lack of pre-2020 communications between NEXO ICO investor and Nexo); NEXO-0214733 (Nexo spreadsheet showing NEXO purchasers, e.g., US investors Russell Dargento and Dariush Askaripour, for whom there are no purchase contracts or communications); NEXO-0219542 (communications or agreements with advisors who were paid in NEXO tokes or purchased NEXO tokens for cash).

Documents reflecting **OTC sales of NEXO Tokens in 2019–2020** (aside from Plaintiff's) are almost non-existent. We know that Nexo continued to sell NEXO Tokens to various investors (including U.S. persons) after the initial ICO period; those transactions are highly relevant, yet documentation of them is largely missing. Likewise, internal discussions of marketing and marketing materials are largely absent. This is a major gap. By way of illustration, Nexo's response to Interrogatory No. 3 (asking for details of NEXO Token sales to U.S. persons) failed to mention any sales in 2020, presumably suggesting none occurred. However, we have located documents, e.g., NEXO-0214728, NEXO-0028242, NEXO-0026663, which show that Nexo did make NEXO Token sales to U.S. investors in 2018 and 2020. These sales were not disclosed in the interrogatory response. This discrepancy indicates that either Nexo's interrogatory response was incomplete or

Nexo has not produced the documents underlying those sales (or both). In addition, Nexo must supplement its Interrogatory responses to correct any inaccuracies (such as the omission of the 2018 and 2020 U.S. token sales, and any other token sales).

We also seek an explanation: if Nexo contends that no further documents exist for these token sales, please confirm that a diligent search was conducted and clarify what happened to such records. Given Nexo's business, it is hard to imagine that substantial sales of its flagship token would leave virtually no paper trail; if the trail has been lost or destroyed, that is a serious matter that needs to be explained.

11. **Missing Documents and Communications Regarding NEXO Token Due Diligence and Analysis, and Liquidation Relief Agreements**

Dozens of Nexo's responsive documents—if not more—are missing attachments and related communications. In one week of review, we have already identified more than sixty documents that are missing attachments and related communications (i.e., communications with missing attachments, or attachments with missing communications). These include liquidation relief agreements, documents and communications regarding Nexo's NEXO token due diligence/analysis, and attachments to responsive documents and communications generally.

Many LRAs are missing from Nexo's production, e.g., NEXO-0057304, NEXO-0062531.

Many other documents are missing related attachments or communications. For example, NEXO-0217044 is a "Coinbase ICO Questionnaire" that Nexo apparently filled out (likely as part of a listing or due diligence process with Coinbase). However, we have not seen the correspondence that presumably went along with this questionnaire – such as emails to or from Coinbase representatives, follow-up questions, or the outcome of that process. Nexo's documents and communications regarding due diligence of NEXO have been ordered by the Court (RFP 36). These due diligence communications that go along with the due diligence documents produced by Nexo should also be produced.

Likewise, another document, NEXO-0179739, appears related to communications with an exchange regarding the due diligence of the NEXO token. And NEXO-0133323 contains information about NEXO Token sales or distribution that appears to reference content not present in our production. These gaps suggest that Nexo has not produced complete communications with exchanges like Coinbase (or others such as Binance, Bitstamp, etc.) regarding due diligence and analyses of the NEXO Token. Such communications are responsive to, inter alia, RFP 36 (due diligence and analysis), RFP 58 (token sale exchanges) and RFP 69 (statements to purchasers or potential purchasers). Please produce all documents and communications between Nexo (or its agents) concerning these categories of the NEXO Token – including listing applications, due diligence questionnaires (with responses), emails or messages with exchange officials regarding Nexo's efforts to sell NEXO tokens, and any agreements or understandings reached. If Nexo believes it has already produced all such communications, we must disagree based on the clear references to missing material; we request that you double-check those sources and confirm whether additional documents exist. If certain communications are being withheld (for example, due to confidentiality or privilege, though privilege is unlikely here), let us know that as well.

12. **Social Media**

Nexo's production is missing many social media or online community communications. Nexo was active on platforms like Twitter/X, Facebook, Instagram, Telegram, YouTube, and many others. Nexo has produced almost no documents or communications from its Telegram and YouTube channels. Nexo was active on these channels for years, making public statements about the NEXO Token, the platform, and programs like the Liquidation Relief Program (LRP). RFP 60 specifically covers all such social media and chat room posts and communications by Nexo regarding the NEXO Token or the LRP, including on Twitter, Reddit, Riot.im/Matrix, Slack, Telegram, YouTube and Discord. To date, many of Nexo's posts and communications appear missing from Nexo's collection, and some of these platforms have not been searched at all.

This is particularly disturbing as Nexo appears to have deleted many responsive social media posts. For example, NEXO-0037650, is an email from Hristov regarding how the SEC's inquiry into XRP affects the NEXO Token, which includes a twitter link. That tweet has not been produced by Nexo and appears to have been deleted. Can you please clarify what Nexo has done to search these social media platforms? And please clarify why Nexo has not searched through and produced documents and communications from all its social media platforms? And should Nexo have any discussions or communications about deleting relevant and responsive materials from its social media, it should produce those documents and communications as well.

### 13. **Google Documents and Online Repositories**

Nexo's team utilized Google Docs or other cloud-based document services to collaborate on important documents, including documents regarding the LRP, e.g., NEXO-0023459, NEXO-0024190, NEXO-0025496, NEXO-0044908.  However, we have been unable to locate any Google Docs (or Sheets, etc.) or other similar collaborative documents. If you have produced any such documents can you please identify them by bates number? We request that Nexo confirm whether it has searched for documents stored in Google Drive, Office 365 online, Confluence pages, or other cloud repositories used by the custodians. Documents from those sources should be collected in their native format and produced so that all changes to the document can be reviewed. If Nexo did not search those repositories, that must be done now.

### 14. **Documents and Communications Regarding Plaintiff's Transactions**

Another significant gap is the lack of internal communications about Plaintiff's OTC purchases and related transactions worth millions of dollars. Mr. Cress's dealings with Nexo were not in a vacuum; internally, multiple people at Nexo would have coordinated to execute his large purchase orders, manage the liquidity for that, and later handle the liquidation of his collateral. We expected to see emails or chat communications such as: instructions from Hristov to Nexo's trading desk to buy certain amounts of BTC/ETH/NEXO for Plaintiff's account, confirmations or reports from traders about the execution (including whether a Time-Weighted Average Price (TWAP) strategy or other method was used), and discussions about how to handle Plaintiff's account as it became distressed in June 2021. Instead, we have essentially nothing of this sort. No emails among Nexo's "OTC team" discussing Plaintiff's orders, no chat threads coordinating the timing of buys, and no internal debate about extending liquidation relief to Plaintiff. This is implausible. For example, NEXO-0145418 appears to be an internal file or reference related to a retail OTC trade, presumably documenting something about the execution, but we have not seen the actual communications around it.

RFPs 19, 20, 21, and 23 (among others) all seek these types of documents, and Nexo agreed to produce them. Nexo must produce any and all internal communications or records concerning: (a) the execution of Plaintiff's purchase orders (including trade tickets, communications with exchanges or liquidity providers, etc.), (b) any special accommodations or strategies used (such as TWAP or splitting the orders), (c) internal discussions about Plaintiff as a customer (e.g., any concerns raised about his size or U.S. status), and (d) deliberations or decisions about liquidating his collateral (including any consideration of giving him notice or relief). We have also been unable to locate critical documents concerning Nexo's liquidation of Plaintiff, including basic records reflecting any trade executions. If Nexo's position is that none of these records exist, it must provided a detailed explanation for why. For instance, is Nexo claiming that all coordination was done verbally and nothing was ever written down? Or that such records once existed but have been deleted? We need clarity and transparency on this point.

### 15. <u>Suspiciously Low Number of Emails or Communications From Custodians</u>

As you know, Nexo was ordered to search the files of fourteen custodians. Many of these custodians (including Trenchev, Kantchev, Hristova, Rosen, Shanov, Tom Stanev, Videlov, Tonkov, and Kostadinov) have nearly no email communications or any communications through any other company channels. Trenchev and Kantchev's lack of communications are discussed above. But the issue runs prevalently through nearly all Nexo's production.

Nexo has produced no more than 50 emails from Hristova, who has worked at Nexo for years, and ran point on many Nexo campaigns, including working on Nexo's investor relations campaigns, 2021 marketing, and its campaign regarding Nexo's SEC and state regulatory actions. For example, Hristova has worked directly with Mr. Trenchev and other Nexo employees on "Changes to Terms for NEXO Tokens in the U.S." NEXO-0103303. These internal communications have been ordered by the Court. (RFP 36, 59). Hristova has even commented directly on Mr. Cress's case in the media. NEXO-0017385. We have barely seen any internal communications to or from Ms. Hristova.

Rosen Angelov was Nexo's Community manager while Mr. Cress was a customer at Nexo. He communicated with NEXO token investors in the community and dividends paid to U.S. investors, such as Mr. Cress. CRESS-00000638. Rosen was directly involved with Mr. Cress's Nexo account and was requested to provide details of the liquidation relief program to Mr. Cress in June 2021. CRESS-00002106. We have barely seen any internal communications to or from Mr. Angelov.

Similar to those described above, Nexo has also failed to produce emails and communications to or from most of the other court-ordered custodians, including Shanov (direct marketing specialist), Tom Stanev (head of trading), Videlov (sales trader), Tonkov (trading operations manager), and Kostadinov (head of marketing). These are custodians that were involved in marketing the NEXO Token, marketing the VIP relationship program, and executing VIP services such as OTC transactions, LRPs, and Portfolio Boosters—yet we have almost no communications from any of these custodians.

We have not seen more than one hundred communications (and usually far fewer) from any of the above custodians, despite Nexo representing it would be searching through tens of thousands (if not hundreds of thousands) of each of their custodial files for responsive documents. Please explain

what you have done to search through these custodian's files, and why barely any communications exist from the custodians mentioned above.

### 16. <u>Inadequate Search of Nexo's Non-Custodial Sources</u>

Nexo's search of its non-custodial sources appears to be incomplete. After repeatedly representing that Nexo was required to search through millions of non-custodial source documents, Nexo has barely produced any.

For example, Nexo has identified 305,693 documents from its OPS source, and 5,998 documents from its OTC source however, has only produced two documents from these files. Many of these documents would refer to Nexo's OTC, LRP and Portfolio Booster services that it provides to its VIP customers. For example, Nexo's LRA notices were to be sent to "ops@nexo.io." Thus, Nexo's OPS source clearly contains relevant documents and communications. Nexo's production of just two out of 305,693 ops documents is completely inadequate. <u>Ops@nexo.io</u> was frequently involved in providing OTC transactions and liquidation relief for its customers, e.g., NEXO-0108900.

This example of Nexo's failure to search its non-custodial sources (along with Nexo's other glaring deficiencies in performing an adequate search of many of its custodians) puts the integrity of Nexo's other searches of non-custodial sources in question. More bluntly put, Nexo spent the better part of a year complaining that a search of its non-custodial sources (which it identified) would be extremely burdensome. However, it appears that at least for some of these sources, Nexo has hardly searched them at all. Please clarify what you have done to search these non-custodial sources, and please explain why Nexo has not produced documents from these sources.

### 17. <u>Document Metadata Issues</u>

Nearly ten thousand documents that Nexo has produced so far appear to have had its metadata altered around the same time – specifically, many files show a "Last Modified" timestamp of from March 2025 (e.g., 03/10/2025, 3/11/2025, 3/12/2025, 3/26/2025). This is true even for documents that were clearly created years earlier. Such uniform metadata suggests that the documents may have been mass-copied or exported on that date (perhaps in preparation for production), which overwrote the original metadata (creation dates, modification dates, author fields, etc.). Because of this, we currently cannot discern when many documents were actually created or last edited, which impairs our analysis and investigation into the authenticity of the production. This is a serious concern. We need Nexo to explain why the metadata for produced documents is showing modified dates. Has Nexo produced original files with intact metadata? If not, will Nexo agree to provide the original metadata for these documents (for example, in load files or metadata reports)?

### <u>Conclusion</u>

As the above list demonstrates, Nexo's production deficiencies are extensive and cut across every category of information relevant to this case. This is particularly troubling given that the Court's April 2025 Order compelled many of these materials. The current state of production is not defensible. We are also troubled by the possibility that some evidence may have been lost or destroyed. Through this letter we are giving Nexo one final opportunity to cure these issues without court intervention. We also seek to crystallize Nexo's position on each of these points – if Nexo

maintains that certain documents do not exist or cannot be found, we want that clearly stated in writing.

In light of the foregoing, we request that Nexo do the following:

1. Promptly produce all documents and communications responsive to the above-referenced categories and RFPs that have not yet been produced. We expect a supplemental production well before the September 19, 2025 deadline noted below, given the urgency.

2. For each category identified above, provide a written confirmation of whether Nexo has (a) produced all responsive documents after a diligent search, (b) is in the process of obtaining additional documents (with a timeline for production), or (c) asserts that no responsive documents exist. If responsive documents once existed but no longer exist (e.g., were deleted or lost), please state that and explain the circumstances surrounding their deletion.

3. Confirm the data sources and custodians searched. If any relevant source (such as Slack, company devices, personal devices, shared drives, etc.) was not searched or collected from, identify those and explain why. We may need to ask the Court for relief if key sources were left out of the collection.

We request that you provide the above information and produce all outstanding documents no later than Friday, September 19, 2025. If you need to confer about specific items or have questions about what we're looking for, we remain available to discuss – but given the history, we believe these categories are self-evidently within the scope of the case and the Court's order.

Our sincere hope is that Nexo will take this opportunity to cure the deficiencies and avoid the need for court intervention. However, please be advised that if Nexo does not substantially complete its production and provide the confirmations requested by the September 19 deadline, Plaintiff will proceed to seek all appropriate relief from the Court. This may include relief under Rule 37(b) for failure to obey the court's discovery order, as well as any further remedies the Court deems just (including evidentiary sanctions or even default if warranted). We would also seek remedies for any spoliation of evidence if it becomes apparent that relevant materials were destroyed or withheld. We genuinely prefer not to take that path, and would much rather receive the documents than spend time on sanctions motions. But we will not hesitate to protect Plaintiff's rights and ensure a fair process.

We ask that you respond in writing to each of the points above and confirm what additional production will be made, and when. Thank you for your prompt attention to these matters – we look forward to your response by the above date and to receiving the long overdue documents.

Best regards,


*/s/James Taylor-Copeland*
James Taylor-Copeland
james@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101