# Exhibit 47

# Exhibit 47

# Baker McKenzie.

**Baker & McKenzie LLP**

10250 Constellation Boulevard
Suite 1850
Los Angeles, California 90067

Tel: +1 310 299 8535
Fax: +1 310 201 4721
www.bakermckenzie.com

**Asia Pacific**
Bangkok
Beijing
Brisbane
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur*
Manila*
Melbourne
Seoul
Shanghai
Singapore
Sydney
Taipei
Tokyo
Yangon

**Europe, Middle East & Africa**
Abu Dhabi
Almaty
Amsterdam
Antwerp
Bahrain
Barcelona
Berlin
Brussels
Budapest
Cairo
Casablanca
Doha
Dubai
Dusseldorf
Frankfurt/Main
Geneva
Istanbul
Jeddah*
Johannesburg
Kyiv
London
Luxembourg
Madrid
Milan
Munich
Paris
Prague
Riyadh*
Rome
Stockholm
Vienna
Warsaw
Zurich

**The Americas**
Bogota
Brasilia**
Buenos Aires
Caracas
Chicago
Dallas
Guadalajara
Houston
Juarez
Lima
Los Angeles
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre**
Rio de Janeiro**
San Francisco
Santiago
Sao Paulo**
Tijuana
Toronto
Washington, DC

\* Associated Firm
\*\* In cooperation with
Trench, Rossi e Watanabe
Advogados

January 21, 2025

James Taylor-Copeland
james@taylorcopelandlaw.com
Max Ambrose
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: 619-734-8770
Facsimile: 619-566-4341

**Re:** *Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH (N.D. Cal.)

Dear Counsel,

I write regarding the Court's Discovery Order dated January 10, 2025 (Dkt. 55) ("Order"). On January 17, Nexo produced organizational charts for Nexo Capital Inc. and NDS EOOD ("NDS") so we can have a discussion about custodians. This letter seeks to implement the Court's request that the parties have a meaningful meet and confer concerning the identification of a reasonable number of custodians and noncustodial sources.

We view Nexo's search for relevant documents as implicating three related issues: (1) custodians, (2) search terms, and (3) the RFPs that are used to measure responsiveness against the search term hits. An excessive number of custodians or search terms, or overbroad terms, will needlessly inflate the number of hits that require a manual responsiveness review. Thus, as a first step, we need to confer to reasonably limit the number of custodians, and identify tailored search terms that will not yield an excessive number of false positive hits.

As to targeted requests for specific information, we do not believe that a custodial search with terms is appropriate. For example, if Plaintiff seeks production of a specific org chart, which the Court recently ordered Nexo to produce, Nexo can simply locate and produce it without running overbroad terms across all custodians.

## CUSTODIANS

As you were previously informed in our letter dated October 29, 2024, Nexo has identified 18 custodial accounts that it is willing to search for responsive documents. Nexo has reason to believe that these 18 custodians might have information relevant to



Mr. Cress. In our opinion, 18 custodians is arguably excessive in this case given the nature of the dispute. The accounts we agree to search are listed below:

| AGREED CUSTODIANS FOR NEXO'S DATA |
|---|
| • hristiyan@nexo.io; hristyan@nexo.com - Hristiyan Hristov <br> • edward@nexo.io - Edward Tonkov <br> • octavian@nexo.io; octavian@nexo.com - Octavian Dinca <br> • alexander.rakshiev@nexo.io - Alexander Rakshiev <br> • tsvetan@nexo.io - Tsvetan Videlov <br> • ognyan@nexo.io - Ognyan Pankov <br> • martin.pavlov@nexo.io - Martin Pavlov <br> • kaloyan@nexo.io - Kaloyan Stanev <br> • mustafa@nexo.io - Mustafa Aliev <br> • bozhidar.dobrev@nexo.io - Bozhidar Dobrev <br> • bizdev.replies@nexo.io <br> • payments@nexo.io <br> • kyc@nexo.io <br> • ops@nexo.io <br> • support@nexo.io; support@nexo.com <br> • otc@nexo.io <br> • salesvacationresponder@nexo.com <br> • salesforce.bcc@nexo.com |

As reflected in Nexo's letter dated October 29, 2024, you previously provided a list of 24 *additional* custodians and 11 "group custodians" that you claim may have responsive documents. In our experience, even for the largest lawsuits, 42 data custodians (18 that we offered + 24 more than you want) would be excessive and unreasonable. Furthermore, your 11 "group custodians" are described so broadly that they appear to cover every worker at the company.

We suggest the parties agree to Nexo's above-listed 18 custodians in order to move forward with discovery. If you contend that additional custodians are relevant as documents are produced and the case proceeds, we can meet and confer about modifying the custodian list.

**<u>SEARCH TERMS</u>**

In addition to the number of custodians, we are concerned with the number of search terms you previously proposed. You represent one plaintiff—John Cress—and this case and discovery should be focused on his individual claims. Discovery cannot turn into

2



an over broad, unduly burdensome, and irrelevant fishing expedition into other customer accounts or a vast exploration of every document in Nexo's possession (i.e., your request for terms such as "audit," "profit," or similarly overly broad terms untethered to any issue in dispute in the case). Therefore, we agreed to the following search terms specific to Mr. Cress.

| AGREED SEARCH TERMS FOR NEXO'S DATA |
| --- |
| o   John Cress<br>o   Cress<br>o   JTC<br>o   432896<br>o   #432896<br>o   Джон Крес<br>o   Крес<br>o   603eec5faed77e2a0a166e27<br>o   johntcress@gmail.com<br>o   jtc88@hotmail.com<br>o   415-298-4366 |

These terms, combined with the suggested custodians, should gather every document associated with Mr. Cress and reflect everything he was told about Nexo's products and services. It is difficult to understand why you need additional documents unrelated to Mr. Cress when your claims are all tied to alleged misstatements or misrepresentations allegedly made to Mr. Cress. Clearly, Mr. Cress cannot claim to have relied on a statement made to other customers to support his causes of action.

Nevertheless, in an effort at compromise, Nexo proposes a search for the following supplemental terms across the above-listed 18 custodians. Nexo identified these supplemental search terms from Plaintiff's proposed list of terms. If these supplemental terms yield an unreasonably large number of hits, Nexo reserves the right to meet and confer with Plaintiff in an attempt to narrow the scope of the terms and reduce the hit count.

| SUPPLEMENTAL SEARCH TERMS |
| --- |
| Terms relating to VIP Relationship Program:<br><br>•   "VIP Relationship Program"<br>•   VIP w/5 (program* OR relationship OR brochure*)<br>•   "liquidation relief program"<br>•   Liquidate* w/10 (relief OR program OR Insurance OR recover*) |

3



> - "LRP"
>
> Terms relating to NEXO token:
>
> - "Cryptocurrency purchase agreement"
> - "Form D"
> - "506(c)"
> - Securit* w/5 (unregistered OR registered OR registration OR fraud*)
> - Accredited w/10 (investor* OR buyer* OR purchaser*)
> - Unaccredited w/10 (investor* OR buyer* OR purchaser*)
> - Exempt* w/5 (offer* OR security* or sale* or transact*)

Plaintiff previously proposed search terms in the following additional categories: (1) terms relating to Defendant, (2) terms relating to Nexo employees, (3) communications with law enforcement or regulators, and (4) terms relating to NEXO exchange listings. Plaintiff's proposed terms for those four categories were so broad that they were unworkable. For example, Plaintiff proposed the search terms "profit" and "revenue" without any limiters. To the extent Plaintiff is requesting a specific document or group of documents, Nexo is willing to meet and confer concerning a search for that targeted data without running overbroad terms across all custodians.

## **RFPs**

Finally, there is the issue of which RFPs are used to measure responsiveness against the search term hits. Nexo is willing to meet and confer regarding the parties' positions in Appendix 1 of the Joint Discovery Letter. As to narrow RFPs seeking targeted information, we should discuss whether we can forego custodians and terms and simply agree to locate and produce specific information. As to broad RFPs, agreeing on custodians and terms will be material to whether we can reach a further compromise beyond those that we proposed in Appendix 1.

***

We are available to meet and confer today at 11:30a, noon, or 12:30p PT. We are available to meet and confer tomorrow at 9 or 9:30a PT. Please let us know a good time for you.

Regards,

/s/ Ian S. Shelton

4