July 6, 2026

**VIA CM-ECF**

The Honorable Thomas Hixson
United States District Court for the Northern District of California
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94120

Re:     *John Cress v. Nexo Capital Inc.*, Case No. 3:23-cv-00882-TSH
        Joint Discovery Letter Regarding Nexo's Search for and Production of Records of Its Direct
        Sales of the NEXO Token to U.S. Customers (Requests for Production Nos. 33 and 65)

Dear Judge Hixson:

The parties submit this joint letter under the Court's Discovery Standing Order regarding a dispute over Defendant Nexo Capital Inc.'s response to Plaintiff's Requests for Production Nos. 33 and 65. The dispute is whether Nexo must (i) confirm whether its search for responsive documents included its own exchange and customer–account records of its direct sales of the NEXO Token to U.S. customers, and (ii) produce the responsive transactional sale records and accredited–investor records for those customers.

**Attestation**

Counsel for Plaintiff John Cress and Defendant Nexo Capital Inc. have met and conferred in good faith to resolve the disputes set forth below.

Dated: July 6, 2026                    TAYLOR-COPELAND LAW

                                       By: /s/ James Taylor-Copeland

                                       Attorneys for Plaintiff


Date: July 6, 2026                     BAKER & MCKENZIE LLP

                                       By: /s/ Ian S. Shelton

                                       Attorneys for Defendant

**PLAINTIFF'S POSITION.**  Plaintiff asks the Court to order Nexo to do what it already agreed and was ordered to do. In response to RFP Nos. 33 and 65, Nexo agreed to produce "documents or information sufficient to show direct sales of the NEXO Token in the United States" and to "produce accredited investor certificates for US customers who purchased the NEXO Token", and the Court's order resolving Plaintiff's requests for production required production on that scope. Dkt. 66-1, 69. Nexo, however, has produced only a spreadsheet of customer holdings—not the records of its direct sales—and it will not answer a straightforward question Plaintiff has repeatedly asked: did Nexo's search include its own exchange and customer–account records? Plaintiff requests an order compelling Nexo to (1) state under oath whether its search for documents responsive to RFP Nos. 33 and 65 included its exchange and customer–account (transactional) records of its direct sales of the NEXO Token to U.S. customers; and (2) produce the responsive transactional sale records—showing the date, quantity, consideration, counterparty, and source of each such sale for U.S. customers, including those identified in NEXO-0369842 (a spreadsheet produced by Nexo on June 22, 2026 with filename "US Nexo token holders at risk"). After Plaintiff pressed these requests, Nexo served amended responses to RFP Nos. 33 and 65 on July 6, 2026 asserting that it "conducted a reasonable search of its Nexo exchange records and no additional responsive documents exist," but its counsel simultaneously refused to describe that search, to confirm whether it reached the 1,047 U.S. accounts identified in NEXO-0369842, or even to say whether Nexo has exchange records for 2020, 2021, and 2022. That unsworn, undescribed assertion does not resolve this dispute; it confirms it. Nexo's Amended Responses to RFPs 33 and 65 are attached as **Exhibit A**.

**A.     Nexo agreed—and the Court ordered it—to produce records of its direct NEXO Token sales to U.S. customers.**  RFP No. 33 seeks documents "sufficient to identify each NEXO transaction [Nexo] entered into", including "the date and time of each transaction, the quantity, consideration received, counterparty, and place where the transaction was authorized", and RFP No. 65 seeks "[a]ll documents and communications regarding [Nexo's] direct sales of NEXO". Nexo's response to both was that it "will produce documents or information sufficient to show direct sales of the NEXO Token in the United States" and "will also produce accredited investor certificates for US customers who purchased the NEXO Token". These records go to the heart of Plaintiff's allegation that Nexo offered and sold the NEXO Token as an unregistered security. Cal. Corp. Code §§ 25110, 25503. Nexo's defense is that its sales were exempt because it sold the NEXO Token only to U.S. accredited investors—an exemption on which Nexo bears the burden of proof and for which it alone holds the records. Whether, when, to whom, and on what terms Nexo made those direct sales, and whether those purchasers were in fact accredited, can be shown only by Nexo's transactional and accredited-investor records.

**B.     Nexo produced a holdings list, not its sales records.** Nexo initially answered Interrogatory No. 3 in February 2025, which seeks similar information regarding its sales directly to U.S. persons by identifying 126 U.S. sales solely in 2021-2022. Nexo served a new list in May 2025 with only 121 sales. Then a new list in December 2025 with 131 sales—this time with five additional 2018 sales. Then a new list again in May 2026 with 132 sales. When Plaintiff's expert, Joel Seligman, identified additional U.S. sales not included in Nexo's May 2026 response to Rog. 3, Nexo amended its Response again and disclosed 33 additional sales for a total of 165 NEXO Token sales. Nexo also produced NEXO-0369842 on June 22, 2026, a spreadsheet with filename "US Nexo token holders at risk" listing 1,047 U.S. accounts that hold the NEXO Token—92 holding more than $100,000 and 955 holding less—with each account's balances and assets under management. That spreadsheet shows who holds the token; it does not show Nexo's sales. Nexo has produced none of the underlying transactional records for the vast majority of these customers, nor will Nexo reveal whether it did anything to search for those records.

**C.     Nexo's contention that it "conducted a reasonable search of its Nexo exchange records and no additional responsive documents exist," is not credible.**  Nexo's belated amendments of its Rog. 3 responses and production of this list of U.S.-NEXO Token holders prompted Plaintiff to ask Nexo

1

whether it searched its own exchange and customer-account records to identify its direct U.S. sales. Nexo initially refused to answer, but after Plaintiff sought Court intervention amended its responses to state that it "conducted a reasonable search of its Nexo exchange records and no additional responsive documents exist." When asked about what Nexo did to search the exchange records, Nexo's counsel refused to provide *any* information regarding the search, whether it included the accounts of the 1,047 U.S. Token holders identified on NEXO-0369842, or even whether Nexo has any records from 2020, 2021, or 2022.

Nexo's response cannot be squared with its own internal records, which show that the NEXO Token was available to U.S. retail purchasers on its exchange until at least February 2, 2021 and again from January 27 to March 1, 2022. NEXO-0168743. Yet Nexo now asks Plaintiff and the Court to accept on faith that it has "conducted a reasonable search of its Nexo exchange records" and identified **zero transactions** on its retail exchange.  That claim is not credible on its face, and Nexo's steadfast refusal to describe— in any meaningful detail—the scope or methodology of the search it purportedly undertook only sharpens the inference: Nexo is hiding the ball.

The governing standard is settled. A party responding to a Rule 34 request is "under an affirmative duty to seek that information reasonably available to [it] from [its] employees, agents, or others subject to [its] control", and must make "a reasonable inquiry" that, "at a minimum", employs "a reasonable procedure to distribute discovery requests to all employees and agents … potentially possessing responsive information, and to account for the collection and subsequent production of the information". *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 554 (N.D. Cal. 1987); *accord Rogers v. Giurbino*, 288 F.R.D. 469, 480 (S.D. Cal. 2012); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189–90 (C.D. Cal. 2006). Where the adequacy of a search is challenged, the responding party "must do more than merely assert that the search was conducted with due diligence; rather, [it] must briefly describe the search to allow the Court to determine whether it was reasonable". *Rogers*, 288 F.R.D. at 485. And the Court may require a declaration—"similar to a Rule 26(g) verification"—"detailing the nature of [the] 'reasonable inquiry' to locate responsive documents … on a request-by-request basis". *Farber*, 234 F.R.D. at 190. Nexo has refused even that.

Nexo's July 6 amendment does not cure the problem; it illustrates it. Nexo added a single sentence stating that it "conducted a reasonable search of its Nexo exchange records and no additional responsive documents exist"—the very kind of conclusory assurance that *Rogers* held insufficient. There, the responding party "assert[ed] that she conducted a diligent search and confirmed that there are no documents responsive" to the requests; the court held she "must do more than merely assert that the search was conducted with due diligence," must "briefly describe the search to allow the Court to determine whether it was reasonable," and—because "responsive documents are likely to exist"—"must answer under oath." *Rogers*, 288 F.R.D. at 485. Nexo's amendment fails each test: it is signed by counsel, not verified by Nexo; it describes nothing about what was searched; and when Plaintiff asked counsel to describe the search, Nexo refused, responding that Plaintiff "continue[s] to seek information to which [he is] not entitled" and that Nexo's "response is in the RFPs." **Exhibit B**. More is needed.

**D.     Relief requested.**  Plaintiff respectfully requests that the Court order Nexo to: (1) provide a verified statement describing the search it conducted for documents responsive to RFP Nos. 33 and 65— including which records and systems it searched (its exchange records, its customer-account and transactional records, and the accounts identified in NEXO-0369842) and the time periods covered (including whether data for any period is missing); and (2) produce the responsive transactional sale records showing the date, quantity, consideration, counterparty, and source of each such sale to a U.S. person on its exchange, together with any accredited-investor certificates or verification records for the U.S. customers identified in NEXO-0369842, or state under oath, with the specificity *Rogers* and *Farber* require, that no such records exist.

**NEXO'S POSITION.** This is another letter brief that should not have been filed. Nexo has provided a verified response to Interrogatory No. 3 ("ROG 3") identifying Nexo's direct sales of the NEXO Token to US customers, which included (1) customer name, (2) transaction close date, (3) NEXO in USD, (4) NEXO quantity, and (5) NEXO Sell Price. ROG 3 did not exclude, and Nexo's response did not purport to exclude, direct sales of the NEXO Token on Nexo's exchange. Cress has not moved to compel a further response to ROG 3. Nexo has also produced all accredited investor documentation for each of those customers listed in ROG 3 that it has been able to locate after a reasonable and diligent search, and those records are identified by Bates number for each individual customer in a detailed schedule attached to Nexo's expert report prepared by Dr. Randall Valentine. Nexo's ROG 3 list coupled with the accredited investor documentation for the listed customers complied with Nexo's obligation to produce "documents or information **sufficient to show** direct sales of the NEXO Token in the United States" and "accredited investor certificates for US customers who purchased the NEXO Token" in response to both RFP 33 and 65.[1] Dkt. 66 (showing Cress's RFPs, Nexo's position, and Cress's proposed compromise); Dkt. 69 (this Court adopting Nexo's position as to RFPs 33 and 65). This is not enough for Cress.

*First*, Cress seeks an order compelling Nexo to provide an interrogatory-like "verified statement describing the search it conducted for documents responsive to RFP Nos. 33 and 65—including which records and systems it searched (its exchange records, its customer-account and transactional records, and the accounts identified in NEXO-0369842) and the time periods covered (including whether data for any period is missing)." This demand for a sworn statement goes far beyond Nexo's obligations under the discovery rules. Nexo has already verified its response to ROG 3. Furthermore, Cress has never provided a similar sworn statement with respect to any of his own RFP responses. Nevertheless, in an effort to avoid burdening the Court with another discovery letter brief, Nexo amended its RFP responses for Requests 33 and 65 to state that Nexo searched its Nexo exchange records for any direct sales of the NEXO Token to US customers, and no additional responsive documents exist. *See* Amended Responses to RFPs 33 and 65, **Exhibit A**. As for his more generic request that Nexo swear that it searched its "customer-account and transactional records," Nexo obviously had to do so to prepare its response to ROG 3 in the first place. Cress cannot reasonably demand anything more at this point.

*Second*, Cress demands that Nexo "produce the responsive transactional sale records showing the date, quantity, consideration, counterparty, and source of each such sale to a U.S. person on its exchange, together with any accredited-investor certificates or verification records for the U.S. customers identified in NEXO-0369842." As explained, Nexo has already amended its responses to RFPs 33 and 65 to state that it has no responsive documents reflecting any direct sales of the NEXO Token to U.S. customers on the NEXO exchange. There is nothing more to produce. To the extent Cress is moving to compel production of all documents "related to" the 165 transactions identified in Nexo's response to ROG 3, that request goes well beyond the Court's order of production "sufficient to show," which Nexo has discharged by providing the information in ROG 3 and the accredited investor documentation. The dispute is not about whether Nexo complied with the Court's order and its discovery obligations—it did. Rather, Cress seeks a second bite at the apple after being ordered to accept a narrowed scope of discovery. Nexo has produced responsive information identifying its direct sales, supplemented that information repeatedly in good faith as additional data was located, and produced accredited investor records consistent with the Court's order. Cress's motion should be denied because it seeks to expand, rather than enforce, the Court's prior order.

**Nexo complied with the discovery compromise adopted by the Court.** Cress's motion requests treating "documents or information sufficient to show direct sales of the NEXO Token in the United States" as though it required production of every underlying transaction record relating to those sales.

---

[1] RFP 33 requests "Documents sufficient to identify each NEXO transaction You entered into during the Relevant time period, including the date and time of each transaction, the quantity, consideration received, counterparty, and place where the transaction was authorized.; RFP 65 requests "All documents and communications regarding Your direct sales of NEXO."

That is not what the parties agreed to and not what the Court ordered. The Court adopted Nexo's position, which materially narrowed Cress's original requests and required production of information sufficient to show direct sales, not production of every document that might relate to those sales. Cress's requested relief would effectively delete the phrase "sufficient to show" from the operative discovery obligation and replace it with a requirement to produce "**all**" transaction-level data, account records, and related materials for every direct sale. This overbroad and burdensome request for "all" documents was already rejected by the Court and nothing in the parties' agreement or the Court's order imposed such an obligation.

Cress asserts that NEXO-0369842, a spreadsheet reflecting U.S. *holders* of the NEXO Token on the Nexo platform, cannot satisfy Nexo's discovery obligations with respect to identifying direct *sales* to U.S. purchasers. However, Nexo did not produce, and is not relying on, that document for that purpose. When responding to ROG 3, Nexo created a different spreadsheet reflecting its direct sales of the NEXO Token to U.S. purchasers. NEXO-0369842 is a document in Nexo's production that was produced as it was maintained in the normal course of business. Nexo did not create it for purposes of this litigation or to respond to RFPs 33 and 65. Nexo has no duty to supplement that original document with additional information forensically tracking the source of the NEXO Tokens held by every U.S. customer. Nor is the document particularly relevant to RFPs 33 and 65 or Rog 3 because *holders* of the NEXO Token are a much larger group that direct *purchasers* from Nexo. Nexo customers who were mere holders of the NEXO Token could have purchased them from third parties other than Nexo and transferred them to the platform. The vast majority did. ROG 3 already identifies Nexo's direct sales of the NEXO Token to US customers. Nexo is under no obligation to produce additional information regarding every U.S. holder of the NEXO Token who was not a direct purchaser. That request is strikingly similar to the original text in RFP 33 and goes far beyond enforcing the Court's prior order.

**Cress has not established any basis for discovery into Nexo's search and collection efforts.** Cress alternatively seeks a detailed, sworn statement "describing the search it conducted" in response RFPs 33 and 65. That unprecedented request should be denied. After Nexo amended its RFP responses to clearly state that no responsive documents exist in its Nexo exchange records, Cress wants an ever-increasing level of detailed explanation. A party is not required to verify RFP responses, and the level of granularity sought by Cress—including which specific "records and systems" Nexo searched, whether 1,047 accounts identified in a particular document were searched, the time periods covered by various sources, and whether any data is allegedly "missing"—implicate document review processes protected by the attorney-client privilege and work product doctrine. Nexo has responded to Cress's inquiries in good faith and responded to discovery in good faith. *See* Meet and Confer Email Correspondence, **Exhibit B**.

Cress's cited authorities do not support the relief sought here. In *Rogers v. Giurbino*, the defendant asserted that no responsive documents existed. 288 F.R.D. 469, 485 (S.D. Cal. 2012). The Court, finding that responsive documents are likely to exist, held that "[w]hen a party responds to a document request with an answer as opposed to production or an objection, the party must answer under oath." In *A. Farber & Partners, Inc. v. Garber*, the Court found that the production of 666 pages of documents in "response to almost 200 document requests is astounding!" 234 F.R.D. 186, 189 (C.D. Cal. 2006). The "paltry" production, and failure to produce any documents in response to numerous requests justified an accounting into whether the responding party actually made a reasonable inquiry. *Id.* Likewise, in *Nat'l Ass'n of Radiation Survivors v. Turnage*, the defendant "falsely asserted that data available in the SIRS and PIF [database] systems was only obtainable through a manual review of the virtually millions of individual claim files." 115 F.R.D. 543, 555 (N.D. Cal. 1987). Later, the defendant "retracted [its representations] as false . . . after it finally acknowledged the capabilities of the [] database." *Id.* None of those cases are similar to the dispute here, where the Court ordered a party to produce documents "sufficient to show," and Nexo did so. Nexo has amended its RFP responses to state that no responsive

documents exist reflecting direct sales of the NEXO Token to US customers on its exchange. On this record, no authority supports compelled sworn statements regarding RFP responses.

**Cress has not established non-compliance.** Cress argues that Nexo should be compelled to prepare the equivalent of an interrogatory response describing the details of its document collection and interrogatory preparation process because he claims a document in Nexo's production suggests that the NEXO Token "was available" to U.S. customers during certain time periods. Obviously this is true— Nexo's response to Rog 3 identifies 165 sales where Nexo directly sold the NEXO Token to accredited U.S. customers. On its face, this spreadsheet shows no sales of the NEXO Token to any US customer through the Nexo exchange. Cress mischaracterizes the document by stating "the NEXO Token was available to U.S. retail purchasers on its exchange" and referring to "retail exchange" because the document does not use the term "retail exchange" or identify any Nexo exchange sales at all. It simply uses the term "retail" without further explanation. Nor does the document contradict deposition testimony that Nexo's longstanding policy was to only sell NEXO Tokens to U.S. accredited investors. Cress is entitled to no further explanation beyond the amended RFP responses that Nexo provided: "While Nexo does not believe an additional response is necessary, Nexo states that it has conducted a reasonable search of its Nexo exchange records and no additional responsive documents exist." Cress's request for transaction-level production and granular, sworn search attestations is not supported by any testimony establishing noncompliance.

**Cress's requested relief should be denied.** Cress has not shown that Nexo violated the Court's order or failed to meet its discovery obligations. Because Nexo has produced information sufficient to show direct sales of the NEXO Token to US customers, supplemented that information in good faith, and produced accredited investor records consistent with the agreed scope, the Court should deny the motion to compel. Nexo should not be compelled to produce all documents "related to" the direct sales listed in ROG 3, which goes beyond the scope of the Court's prior order. Nexo certainly should not be compelled to produce all documents "related to" the source of every NEXO Token *held* by any US customer, which is irrelevant, overbroad, unduly burdensome, and not proportional to the needs of the case.