# Exhibit 18

Exhibit 18

**Schulte Roth & Zabel LLP**

919 Third Avenue
New York, NY 10022
212.756.2000
212.593.5955 fax

www.srz.com

Writer's Direct Number
212.756.2496

Writer's E-mail Address
Craig.Warkol@srz.com

September 20, 2021

**BY E-MAIL**

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

Stacey Bogert
Division of Enforcement
U.S. Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
bogerts@sec.gov

J. Campbell McLaurin III
Arkansas Securities Department
1 Commerce Way, Suite 420
Little Rock, AK 72202
campbell.mclaurin@arkansas.gov

Alondra Ahuatzi-Delgado
Kentucky Department of Financial Institutions
Division of Securities
Enforcement Branch
500 Mero Street, Suite 2SW19
Frankfort, KY 40601
aahuatzidelgao@ky.gov

Joe Rotunda
Texas State Securities Board
Enforcement Division
208 E. 10th Street, 5th Floor
Austin, TX 78701-2407
jrotunda@ssb.texas.gov

Janet So
Washington Department of Financial Institutions
Securities Division

P.O. Box 9033
Olympia, WA 98507-9033
janet.so@dfi.wa.gov

Dear All:

We write on behalf of our client, Nexo Financial LLC, which is incorporated in Delaware and is part of the Nexo Group ("Nexo" or the "Company"), which is comprised of several additional legal entities, including but not limited to Nexo Inc. (Cayman Islands), Nexo Capital Inc. (Cayman Islands), Nexo AG (Switzerland), Nexo Financial Services LTD (United Kingdom), Nexo Clearing and Custody LTD (United Kingdom), NPEM LTD (United Kingdom), Nexo Services OU (Estonia), Nexo Services UAB (Lithuania), and Nexo Finance Limited (Hong Kong) (together, the "Nexo Companies"). The purpose of this submission is to provide information regarding Nexo's operations to the staff of the United States Securities and Exchange Commission (the "SEC"), the Arkansas Securities Department, the Texas State Securities Board, the Kentucky Department of Financial Institutions, Division of Securities, and the Washington Department of Financial Institutions, Securities Division, in response to your respective requests for information.[1] This submission also provides Nexo's views with respect to the current regulatory environment as it relates to certain lending platforms.

Nexo is committed to being in compliance with all applicable laws and intends to cooperate fully with the information requests issued by the SEC and various states. In light of the present inquiries, as well as recent remarks from SEC Chair Gary Gensler, Nexo understands that U.S. regulators may have concerns with certain of Nexo's current suite of products, particularly its Earn Interest Product. Accordingly, Nexo intends to, in an orderly fashion, implement additional changes to its business whereby it will cease onboarding new U.S. customers until the legal ambiguities around Nexo's business lines are resolved. Nexo had already stopped offering its Earn Interest Product to customers that signed up after August 2, 2021 in Alabama, Arkansas, Kentucky, New Jersey, New York, Texas, and Washington State. Nexo will not undertake any action to freeze current U.S. client accounts, or in any way prevent U.S. clients from accessing their funds or digital assets.

***Background***

Nexo was founded and started operating in 2018.[2] Nexo has a physical presence in Bulgaria, the United Kingdom, and Estonia. The beneficial owner of Nexo is Kosta Kantchev, holding directly or indirectly, through Nexo Inc., the parent company of all Nexo Companies. Mr.

---

[1] These materials are not intended and shall not operate as an admission or waiver of any rights that Nexo may have pursuant to applicable state or federal rules. Additionally, by producing the enclosed documents, Nexo does not intend to waive any privilege, immunity, or protection from disclosure that it or any other party may have. In the event that Nexo inadvertently produces any material protected by the attorney-client, work product, or any other applicable privilege, immunity, or protection from disclosure, such production shall in no way prejudice or otherwise constitute a waiver of any claim of attorney-client, work product, or other privilege, immunity, or protection from disclosure.

[2] Nexo conducts business through a public website accessible at https://www.nexo.io/ and through the Nexo app.

Kantchev is a co-founder and Executive Chairman of Nexo and a director and manager of all Nexo Companies. Antoni Trenchev is a co-founder and Managing Partner of Nexo and director and manager of certain Nexo companies. Nexo currently employs close to 300 individuals.[3] Nexo has evolved substantially over the last several years and has always worked to comply with relevant regulatory frameworks. This has included a global effort to acquire numerous licenses, registrations, and authorizations as further detailed in the enclosed document bearing Bates numbers NEXO 000001 through NEXO 000005.

***Nexo's Earn Interest Product***

Nexo's Earn Interest Product, which we understand is the primary focus of your inquiries, allows Nexo's customers to lend certain digital assets ("Eligible Earn Assets")[4] in interest-yielding accounts (the "Earn Interest Product"). The interest rate is determined by, among other things, the duration of time the customer commits to maintain the asset with Nexo. The longer the time period, the higher the interest rate. The average annual interest rate is currently 6.97%.

Customers begin accruing interest 24 hours after lending Eligible Earn Assets, with interest calculated daily and compounded for interest earned in-kind or calculated as simple interest when earned in Nexo's native token. Interest accrued in connection with the Earn Interest Product is credited to customers' accounts at the expiration of the fixed term, if applicable, or otherwise daily.

Customers may withdraw all or part of the digital assets they have lent to Nexo, including the interest earned, to their personal digital wallet or by instructing Nexo to sell the relevant assets and then transferring the proceeds to a selected bank account. Withdrawals are generally processed within 24 hours. In the event that a withdrawal cannot be completed within 24 hours, Nexo uses its best efforts to process it no later than 72 hours after the request.

***Nexo's Borrow Product***

Nexo customers may borrow certain digital assets by transferring to their Nexo account digital assets accepted by Nexo as collateral ("Eligible Collateral Assets")[5] for a crypto credit line ("Crypto Credit") through the Nexo platform (the "Borrow Product"). Nexo extends Crypto Credit in digital assets based on the value of the collateral pledged by the customer. Loan-to-value ("LTV") ratios in connection with the Borrow Product are determined by proprietary models and depend, *inter alia*, on the amount of Eligible Collateral Assets posted as collateral as well as Nexo's assessment of historical volatility and market liquidity. The maximum loan amount is

---

[3] Nexo's employees are located in different countries, predominantly Bulgaria and Estonia, and none are located in the United States.

[4] Nexo currently accepts the following digital assets in connection with its Earn Product: USDT, USDC, PAX, TUSD, DAI, HUSD, NEXO, BTC, ETH, XRP, BCH, LTC, BNB, EOS, LINK, XLM, TRX, PAXG, DOT, ADA, DOGE, as well as Nexo's EURx, USDx, and GBPx.

[5] Nexo currently accepts the following digital assets as collateral in connection with its Borrow Product: NEXO, BTC, ETH, XRP, BCH, LTC, BNB, EOS, LINK, XLM, TRX, PAXG, DOT, ADA, USDT, USDC, PAX, TUSD, DAI, HUSD, and DOGE.

$2,000,000. Customers can repay the Crypto Credit in the same digital assets as the Crypto Credit, other digital assets accepted by Nexo, or a combination of the two.

Currently, the maximum annual interest rate of the Borrow Product is 13.9% and the weighted average actual effective interest rate is 9.67%. Customers may obtain a discounted rate through Nexo's Loyalty Program.[6] Interest is assessed only on the funds withdrawn from a customer's approved credit line with a standard maturity period of one year, renewing automatically unless terminated by either side.[7] Customers may pay back the credit line early with no penalty fees unless it is paid back in full within 30 days, in which case interest is generally charged for a full 30 days based on the 13.9% annual rate.

Enclosed bearing Bates numbers NEXO 000006 through NEXO 000012 is an illustration of the process by which clients can earn interest as well as how those funds are extended to borrowers in order to generate yield.

***Nexo's Exchange Service***

In addition to its other offerings, Nexo's platform allows customers to swap their digital assets for other digital assets using the Nexo Exchange (the "Exchange Service"). Through the Exchange Service, certain digital assets, as supported by Nexo (collectively with their counter-assets, "Market Pairs"), may be exchanged for equivalent value denominated in the customer's selected Market Pair. All costs that a client incurs are within the spread, i.e., the difference between the buy and sell prices at which Nexo is able to execute the transaction. Before authorizing the transaction, clients see the exact amount that will be sent to their wallet for the digital asset they want to receive. Nexo places no upper limit on the number of Market Pair swaps a customer can make; however, Nexo restricts customers to $100,000 per transaction in order to help ensure the best possible execution, as larger orders may receive inferior pricing depending on the depth of the order book for the particular Market Pair. Nexo has been diligent regarding the digital assets it offers on its platform and has implemented changes in response to regulatory developments, including, for example, suspending Crypto Credit repayments from U.S. customers using Ripple Labs, Inc. ("XRP") and removing all XRP pairs from its Exchange Service for U.S. customers after the SEC brought an action against XRP.[8]

***Storage of Digital Assets***

Digital assets lent by customers to Nexo or transferred to serve as collateral are sent to multi-signature storage digital asset wallets held with third-party service providers, such as BitGo Trust Company ("BitGo"), Bakkt, Fireblocks, Fidelity Digital Assets, and Ledger Vault, certain of which already are or have applied to become "qualified custodians." These entities collectively

---

[6] The Crypto Credit has a fixed Annual Percentage Rate (APR), which starts at 6.9% when at least 10% of the value of the customer's portfolio balance (crypto, stablecoins, and fiat currency) is in NEXO Tokens. The APR when not utilizing NEXO Tokens is 13.9%.

[7] Unless terminated on the relevant maturity date, the Crypto Credit's term is automatically extended for another 12-month term. The number of extensions is unlimited.

[8] Nexo has never restricted XRP withdrawals for any customer.

provide Nexo up to $375 million in insurance protection. Nexo is one of the only crypto lenders to be a first loss payee on potential claims. The insurance also applies to funds in operational hot wallets that Nexo uses for, among other things, processing withdrawals.

***Nexo's Revenue***

Nexo has several unique revenue streams.

First, Nexo generates revenue based on the spread between the interest rates it pays out on funds borrowed from its customers – currently averaging 6.97% – and the interest rate the Company charges borrowers – currently averaging 9.67%.

Second, all of Nexo's Exchange Service transactions (e.g., BTC to ETH) generate fees of approximately 1% of the nominal amount of the transaction. Considering a significant number of Nexo's customers exchange the full amount of their portfolios, including the collateral, multiple times per year, this is a significant source of revenue to Nexo.

Third, when the agreed-upon LTV of a loan is breached, and a client has failed to either repay their loan or transfer sufficient collateral, the Company's algorithms initiate partial or full sales of the collateral, depending on the circumstances. A liquidation fee of 5.0% is applied in such cases and these fees represent a significant source of revenue to Nexo.[9] Clients that use collateral to repay their loans are subject to a 0.75% fee.

Fourth, Nexo has a dedicated over-the-counter trading desk providing bespoke trading solutions to certain of its clients. These transactions are complex and generate fees of up to 8% of the notional value of the underlying transactions.

Finally, Nexo engages in various algorithmic trading strategies that are profitable. One primary strategy involves buying BTC in the spot market and simultaneously selling long-dated BTC futures to capture the disparity between the two prices. This has been a particularly profitable strategy yielding returns between 10% and 30% annually.

Enclosed bearing Bates number NEXO 000013 are approximate revenue numbers for the above-described activities during the period from January 2021 through May 2021.[10]

***Audits***

In an effort to provide additional transparency to its clients, potential investors, and regulators, Nexo is one of the only crypto lenders to provide a real-time proof-of-reserves audit by an independent third-party auditor. The proof-of-reserves audit was conducted by Armanino LLP, a PCAOB-level accounting firm and one of the 25 largest public accounting and business

---

[9] This also guarantees that the customers on the other side of the loan book, namely those earning interest, are protected at all times, regardless of the price of the collateral.
[10] The chart does not include certain of Nexo's revenues such as basis trading, institutional lending, or DeFi farming and staking.

consulting firms in the United States, and shows that the Company's assets have, at all times, exceeded its liabilities. A copy of Aramanino LLP's final report, dated September 10, 2021, is enclosed bearing Bates numbers NEXO 000014 through NEXO 000019.

***Nexo's AML and KYC Requirements***

Nexo screens its customers in compliance with "know your customer" ("KYC") verification requirements and places geographical restrictions on customers' access to Nexo's products and services. Nexo's services have not been available to citizens or residents of several countries.[11]

Five Nexo employees are ACAMS-certified anti-money laundering specialists, including both of its founders. Nexo also partners with Jumio to implement certain of its KYC processes and to help comply with AML standards. Jumio's screening process employs ComplyAdvantage, a dynamic real-time database of people and companies that may pose financial risk. Nexo screens potential and existing clients at onboarding, and on an ongoing basis, against politically exposed persons (PEP), adverse media, sanctions, and regulatory warnings watch lists.

Nexo also monitors incoming crypto transactions using Coinfirm and Chainalysis, which provide real-time data and analytics to support its compliance efforts and inform the Company of potential illicit activities. Destination addresses are also monitored prior to the facilitation of any withdrawal to prevent the transfer of digital assets to known or suspected criminals. Nexo works closely with reputable service providers in this field such as Coinfirm, Notabene, Netki, and Shyft to evaluate whether any additional enhancements are warranted. The Company is also prepared to commence Internal Revenue Service reporting as required by applicable law.

Enclosed bearing Bates numbers NEXO 000020 through NEXO 000088 is documentation detailing Nexo's AML compliance program.

***Prior Regulatory Inquiries***

Nexo's previous inquiries from U.S. regulators include an inquiry in 2020 from the California Department of Business Oversight (now the Department of Financial Protection and Innovation), at the conclusion of which Nexo received the California Finance Lender's license. Nexo Capital Inc., a Cayman Islands company, also received an inquiry from the SEC Division of Enforcement relating to its Regulation D token offering, which was resolved by a letter dated April 7, 2020 and is enclosed bearing Bates number NEXO 000089.

***Securities Law Analysis***

---

[11] These countries include Afghanistan, Bulgaria, Burma (Myanmar), the Central African Republic, Cote d'Ivoire, Cuba, the Democratic Republic of Congo, Eritrea, Estonia, Iran, Iraq, Lebanon, Libya, North Korea, the Republic of the Congo, Sierra Leone, Somalia, South Sudan, Sudan, Syria, Yemen, and Zimbabwe. Nexo services are also not available to citizens or residents of a sanctioned country according to the up-to-date lists of the U.S. Office of Foreign Assets Control (OFAC), the United Nations, the European Union, any European Union Member State, and the U.K. Treasury. Nexo's Exchange Service is not available to citizens or residents of Australia or New York.

The definitions of a "security" under both the Securities Act of 1933 and Securities Exchange Act of 1934 are similar and include any instrument that is an "investment contract." It has been more than 75 years since the U.S. Supreme Court established the *Howey* test, which defined an investment contract as an investment of money in a common enterprise with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.[12] More than thirty years ago, the U.S. Supreme Court established the *Reves* test, which states that an instrument labeled a "note" is presumed to be a security, but that presumption can be rebutted by "showing that the note bears a strong [family] resemblance" to certain enumerated categories of non-securities.[13] We understand the SEC may be assessing crypto lending platforms using both tests.[14]

While these tests have been discussed numerous times for many decades, there is no meaningful guidance in terms of their application to certain new technologies. Like Coinbase Global, Inc. and several other lending platforms with competing products, Nexo never considered that the SEC would view digital asset lending platforms as investment contracts under *Howey* or as notes under *Reves*.

Nexo has been transparent that it lends digital assets at a higher interest rate than it pays to its customers using the Earn Interest Product. As described above, Nexo has several revenue streams, and its assets exceed its liabilities, as attested by an independent third-party auditor. Nexo does not promote the Earn Interest Product as an investment and the interest rates that its customers earn are not determined based on the yield that Nexo is able to generate. Rather, per Nexo's detailed disclosures, it pays customers a fixed interest rate. There is no secondary market for Nexo's Earn Interest Product nor any person or group whose efforts play a significant role in any effort that could affect the value of customers' interest payments. Moreover, Nexo's loan portfolio is over-collateralized by a factor of 200% to 500%, and borrowers' assets are liquidated if their LTV ratios exceed certain disclosed thresholds. The Earn Interest Product does not present the types of risks that the securities laws are intended to protect against. Notably, Nexo's customers – the vast majority of whom believe that digital assets are different from existing categories of securities – would not reasonably expect the U.S. securities laws to apply to Nexo's products.

Nonetheless, while we respectfully disagree with certain recent comments by SEC staff about the applicability of *Howey* and *Reves* to lending platforms and digital asset exchanges,[15]

---

[12] SEC v. W. J. Howey Co., 328 U.S. 293, 298–99 (1946).

[13] Reves v. Ernst & Young, 494 U.S. 56, 64–67 (1990) (establishing four factors that courts should consider in determining whether a note bears a "strong family resemblance" to the enumerated note exception: (1) the motivations of the seller and buyer; (2) the plan of distribution of the instrument; (3) the reasonable expectations of the investing public; and (4) the presence of an alternative regulatory regime(s)).

[14] *See* Paul Grewal, *The SEC Has Told Us It Wants to Sue Us Over Lend. We Don't Know Why*, COINBASE BLOG (Sept. 7, 2021), https://blog.coinbase.com/the-sec-has-told-us-it-wants-to-sue-us-over-lend-we-have-no-idea-why-a3a1b6507009.

[15] Similarly, SEC Commissioner Hester M. Peirce recently remarked that "the existing securities laws don't work well for certain aspects of crypto [and] people's freedom to interact using new technology has produced the innovation at the core of our prosperity." *See* Hester Peirce (@HesterPeirce), TWITTER (Aug. 3, 2021, 2:49 PM). U.S. Senate Banking Committee Ranking Member Pat Toomey also recently announced that he was soliciting proposals to ensure federal law supports crypto technologies, noting that they "have the potential to build wealth and financial

these remarks suggest that virtually any product offering interest on digital assets would, in the SEC's present view, require registration under the federal securities laws.

As such, Nexo is preparing to implement changes, in an orderly fashion, whereby it will no longer onboard new U.S. customers. Nexo will continue to pay interest on current holdings and allow all U.S. customers to redeem their holdings while Nexo works through the regulatory issues with the SEC and various state regulators. Nexo is committed to being fully compliant with all applicable laws and regulations, and has been determined to do so since inception. Nexo has been working for nearly two years on a partnership with a state-chartered bank and, more recently, has been exploring how that partnership could help to support its Earn Interest Product. Nexo has also recently taken steps, including the engagement of an M&A consultant, toward the acquisition of an SEC-registered broker-dealer.

SEC Chair Gensler has specifically acknowledged the opacity of current definitions and regulations as applied to digital assets.[16] He has also noted that the SEC staff is committed to working with market participants, including various crypto exchanges, to sort through "some of our laws written in bricks and mortar time."[17] Nexo is hopeful that these comments are sincere and should be interpreted to mean that U.S. regulators are open to working with Nexo and its peers to identify solutions that will enable technological innovation while ensuring fair and orderly markets. While crypto may represent a new way of doing things, we hope that the focus will be on protecting investors rather than preserving the status quo.

As Nexo prepares to implement the interim changes to its business as identified above, it looks forward to productive regulatory dialogue and hopes to play a meaningful role in bringing much-needed regulatory clarity to this space.[18]

---

independence for individuals" and that "[o]ur laws and regulations must adapt to these developments." *See* Press Release, Sen. Pat Toomey, U.S. Senate Comm. on Banking, Hous. & Urb. Affs., Toomey Requests Feedback on Clarifying Laws Around Cryptocurrency and Blockchain Technologies (Aug. 26, 2021), https://www.banking.senate.gov/newsroom/minority/toomey-requests-feedback-on-clarifying-laws-around-cryptocurrency-and-blockchain-technologies.

[16] *See CNBC Exclusive: CNBC Transcript: SEC Chair Gary Gensler Speaks with CNBC's "Squawk on the Street" Today*, CNBC (Sept. 15, 2021, 12:36 PM), https://www.cnbc.com/2021/09/15/cnbc-exclusive-cnbc-transcript-sec-chair-gary-gensler-speaks-with-cnbcs-squawk-on-the-street-today.html.

[17] *Id.*

[18] The documents and information contained herein have been provided by Nexo. While Nexo has made diligent efforts to provide the information and documentation responsive to the Requests, this response is made to the best of the Nexo's present knowledge, information, and belief, is based upon information in Nexo's present possession, custody, control, or otherwise currently available, and is subject to elaboration, revision, and supplementation. Nexo reserves the right to amend or supplement its response to the extent that it discovers, or is provided with, additional information.

**FOIA Confidential Treatment Requested By Nexo**
**Under 17 C.F.R. § 200.83**

Nexo hereby claims that all materials provided during the course of your investigations, including this letter and any attachments, are entitled to confidential treatment. This request for confidentiality shall continue indefinitely unless Nexo advises you otherwise. Because such documents constitute investigatory records obtained in connection with a potential law enforcement proceeding, they are subject to exemption from mandatory disclosure under Exemption 7(A) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(A) (2020). *See, e.g.*, *National Labor Relations Board v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978); *Chilivis v. Securities & Exchange Commission*, 673 F.2d 1205 (11th Cir. 1982). In addition, Nexo believes that Exemptions 4, 6, 7(B), and 7(C) of the Freedom of Information Act, 5 U.S.C. §§ 552(b)(4), (b)(6), and (b)(7)(C) are also applicable to the documents, as well as the protections available under the Privacy Act of 1974, 6 U.S.C. § 552a.

Accordingly, Nexo expects that all documents and copies of documents produced in connection with your investigations, including this letter and any attachments, will be kept in a non-public file and that access to these documents by any third party will be denied. you receive any request for these documents, either pursuant to the Freedom of Information Act or otherwise, Nexo expects that it will be notified immediately and given an opportunity to object to such disclosure. Furthermore, should you be inclined to disclose these documents to any third party, it is the Nexo's expectation that, in accordance with normal practice, Nexo will be given ten (10) business days advance notice of any such decision to enable Nexo to pursue any remedies that may be available. *See, e.g.*, *Chrysler Corp. v. Brown*, 441 U.S. 281 (1979). In such event, Nexo requests that you telephone the undersigned rather than rely on the United States mail for such notice to Nexo. Nexo additionally requests that you also provide a written copy of such notice to Nexo, addressed as follows:

Craig Warkol
Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022.

Nexo further requests that these materials be returned to Nexo once you have concluded your investigations. If you have any questions, please feel free to contact me at 212-756-2496.

Sincerely,

Craig Warkol
Schulte Roth & Zabel LLP

Enclosures

cc: Ray McInerney (via e-mail to Rule83CTRs@sec.gov)
Office of FOIA and Privacy Act Operations
Securities & Exchange Commission
100 F Street NE
Mail Stop 2736
Washington, DC 20549