DocuSign Envelope ID: 68EBD26C-A870-42D2-A843-FB030FC6C01B

**IN THE HIGH COURT OF JUSTICE**

**BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES**

**COMMERCIAL COURT (KBD)**

Claim No.: CL-2022-000516

**BETWEEN:**

**(1) SHANE MORTON**
**(2) OWEN MORTON**
**(3) JASON MORTON**

**Claimants**

**- and –**

**NEXO CAPITAL INC.**

**Defendant**

---

### DEFENDANT'S RESPONSE TO PART 18 REQUEST FOR FURTHER INFORMATION DATED 15 DECEMBER 2022

---

The Claimants made a written request for further information or clarification pursuant to the Practice Direction to CPR Part 18 on 15 December 2022 (the "**Request**").

This is the Defendant's response to the Request (the "**Response**").

### *Under paragraph 26(i)*

*Of: "It is admitted that the "withdraw" button on the O and S Accounts was unavailable for a period of time on 23 March 2021".*

### *And under paragraph 38(ii)*

*Of: "It is denied that Nexo disabled the Claimants' ability to withdraw".*

### QUESTION 1

*Please can the Defendant confirm why the "withdraw" buttons on the O and S Accounts ("the **Buttons**") were unavailable for a period of time on 23 March 2021.*

CERTIFIED COPY

HIGH COURT
ROLLS BUILDING
OF JUSTICE

## RESPONSE 1

During a telephone call between the Claimants and the Defendant (via Mr Hristov) on 23 March 2021 at around 13.25 UTC, the Claimants discussed their desire to withdraw all NEXO Tokens and EURx held by them on the Platform. This request required agreement because (i) the NEXO Tokens held in the S and O Accounts were subject to the Defendant's daily withdrawal limits and general terms and conditions. The NEXO Tokens held in the J Account were still subject to an higher fixed interest rate agreement and could not be withdrawn until 2 April 2021; and (ii) the EURx held in the S, O and J Accounts were subject to an higher fixed interest rate agreement and could not be withdrawn until 13 October 2021. During the call, Mr Hristov confirmed to the Claimants that he would discuss the withdrawal request with the Defendant's management team with a view to working out how the Defendant could facilitate the Claimants' request in light of the market conditions. Upon reaching an agreement to sell all of their NEXO Token holdings, the Buttons for NEXO tokens were made unavailable. This is standard procedure to protect the assets in the accounts, which are the subject of an agreed transaction, whilst Nexo secured liquidity and potential purchasers.

## QUESTION 2

*Insofar as the Defendant's case is that it <u>intentionally</u> made the Buttons unavailable:*

    a. *Why were they made unavailable?*

    b. *Who made the decision to make them unavailable?*

    c. *When did they make that decision?*

    d. *Was that decision reversed? If so:*

        i. *Why was it reversed?*

        ii. *When was it reversed?*

    e. *Who took the technical steps necessary to make the Buttons unavailable?*

## RESPONSE 2a

As above, the Buttons for NEXO Tokens were made unavailable on 23 March 2021 upon the Claimants reaching an agreement with the Defendant regarding the sale of their holdings.

## RESPONSE 2b

The decision to disable the Buttons for NEXO Tokens was made in accordance with the standard practice of protecting the assets, as well as of securing liquidity and potential purchasers, until completion of the agreed transaction. This practice was established by the Defendant's management team.



**RESPONSE 2c**

The decision was made following the Claimants' confirmation that they each wished to proceed with the transaction at the proposed exchange rates at 17.01, 17.05 and 17.06 UTC on 23 March 2021.

**RESPONSE 2d**

The Buttons for NEXO Tokens were unavailable while the parties were making the necessary preparations to execute the agreed transaction.    Once the agreed transaction had been executed, and the Claimants' NEXO Token holdings had been sold, the Claimants' had no such assets with the Defendant which were capable of withdrawal.

**RESPONSE 2e**

The technical steps necessary to make the Buttons unavailable were taken by the payments team.

**QUESTION 3**

*Insofar as the Defendant's case is that it* <u>*unintentionally*</u> *made the Buttons unavailable:*

    a.   *What was the technical cause of the Buttons becoming unavailable?*

    b.   *How did the Defendant learn that the Buttons had become unavailable?*

    c.   *What steps did the Defendant take to make the Buttons available again?*

    d.   *How many other customers' "withdraw" buttons were unavailable over the same period that the Buttons were unavailable?*

**RESPONSE 3**

The Defendant did not unintentionally make the Buttons for NEXO Tokens unavailable.  As explained above, this action was taken following the agreement between the parties for the Claimants to sell their assets on 23 March 2021, and so as to execute that transaction.

**QUESTION 4**

*Please can the Defendant confirm the start and end time of the period during which (it says) the Buttons were unavailable?*

**RESPONSE 4**

The Buttons for NEXO Tokens were made unavailable to secure the completion of the agreed transaction as follows:

Shane Morton:  disabled 17:15 UTC 23 March 2021



Owen Morton:   disabled 17:15 UTC 23 March 2021

**Under paragraph 28(i)**

Of: "*Nexo has not so far been able to verify whether the "convert" button was unavailable for a period of time on 23 March 2021*"

**QUESTION 5**

*Please can the Defendant explain why it has so far been unable to verify this simple matter, particularly given that it has been able to verify the position in relation to the "withdraw" buttons.*

**RESPONSE 5**

The Defendant has been unable to verify whether the 'convert' buttons were unavailable for a period of time on 23 March 2021 because, at that time, there was no 'convert' button log available.  It may be the case that the 'convert' buttons for NEXO Tokens were unavailable for the same period of unavailability set out above, in accordance with the abovementioned standard practice of protecting the assets, securing liquidity and potential purchasers for agreed transactions.

20 January 2023

**Statement of truth**

I believe that the facts stated in this Response are true.  I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.  I am duly authorised to sign this statement on behalf of the Defendant.

Signed:     *Antoni Trenchev*
            ......B27A6532EB714D6...........................................

Name:       Antoni Trenchev

Position:   Director

Dated:      20 January 2023