# Exhibit 8

# Exhibit 8

# Deposition Transcript

Case Number: 3:23-cv-00882-TSH

Date: June 19, 2026

In the matter of:

# JOHN CRESS v NEXO CAPITAL INC.

# DAVID A. GREETHAM

Reported by:
Vanese Killingbeck



**CERTIFIED COPY**

Steno
Agency, Inc.

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(888) 707-8366
NV: Firm #108F

Okay.  I'm there.

Q.    Okay.  Is this the document you relied on to assert that Kunkel is wrong in --

(Simultaneous cross-talk.)

BY MR. TAYLOR-COPELAND:

Q.    -- paragraph 248?

A.    No.

Q.    It's not?

A.    No.  I don't think so.  This is a forward of the document.

Q.    Right.

A.    But I think this is the document.  It's a forward of the document.

Q.    Would you agree a forward of the document is not the same as the original document?

A.    No, it's not the same.  It can be more fulsome, in fact.  It can be in some ways better than the original document sometimes.

Q.    Right.

It can have different content than the original, correct?

A.    It can have additional content.

Q.    The person forwarding an e-mail could add attachments, right?

A.    They could add attachments.

When I'm talking about additional content, I mean, you learn from this, it was sent from Edward Tonkov on the date there and who he sent it to.  That's -- that's additional information.

Q.   Okay.  But the person forwarding the e-mail could delete content from the forwarded portions, correct?

A.   Yeah.  I have no reason to believe that's the case but --

(Simultaneous cross-talk.)

BY MR. TAYLOR-COPELAND:

Q.   Okay.

A.   -- I mean, technically, they could -- technically, they could, yeah.

Q.   And they could remove some of the attachments, right?

A.   Technically they could.

Q.   Or add attachments?

A.   Same answer, I think.

Q.   Or edit attachments?

A.   That would be a much more complex process. You would have to download the attachment, open it separately, make modifications, save the document, then reattach it.  And then of course the metadata in that document would reflect that it would be

modified on that date and time.

Q.   Okay.   Are you able to say whether this forwarded e-mail reflects the contents or the attachments of the original?

A.   I'm looking at a PDF.  So it -- it's very impossible to tell to be honest with you.

Q.   You can't tell, right?

A.   Not from the PDF, no.

Q.   So really Kunkel isn't wrong here, right?

A.   Yeah, I think he's wrong.  I think this e-mail is the e-mail that he claims was deleted, and somebody's located it, and they've forwarded it. And if you look at this in your review tool, yeah, I'm sure you'll see the attachments.

Q.   Okay.  So what Kunkel says is that Nexo deleted all OTC deals part 1, right?

A.   That's what he says.

Q.   And he says that they did that through a -- a retention rule targeting that particular subject line, correct?

A.   That's what he -- I'm going to refer to his report, if you don't mind.

Q.   Sure.

A.   He implies in Section 34 of his report that this e-mail was targeted for deletion, and it

criteria.

BY MR. TAYLOR-COPELAND:

Q.   What's your level of certainty that this retention rule in Row 291 targeting all OTC deals part 1 would have resulted in the deletion of Exhibit 238, NEXO-0248334?

A.   That's the one that's on the screen, right?  Yeah.

Q.   Yes.

A.   What's my level of certainty?

Well, of course I'd want to validate it. But based on experience, I've seen similar before, so unless the rule changed something or unless I'm misremembering, which I don't think I am, I'm pretty confident that's the case.

Q.   Okay.  But, again, Nexo hasn't produced this e-mail, all OTC deals part 1, correct?

MS. DOOLEY:  Objection.  Vague.  Calls for speculation.

A.   Outside of the exhibit that we're looking at right now, I honestly don't know.

But I have no reason to doubt what you're saying.

BY MR. TAYLOR-COPELAND:

Q.   Okay.  And I think we agreed that it is

that Nexo's put on their privileged log, right?

A.   Okay.

Q.   And presumably they put them on the privileged log because they're relevant, right?

A.   I couldn't -- yeah, I'm sure they think they're relevant.

Q.   Okay.  Yet, the original amending sales template document is not on the privileged log, correct?

A.   Or it is part of a response to it.

Q.   Because it has been deleted, correct?

A.   Because the original -- I don't know.

I would have -- I don't know if it's in the newly gathered data or the 4.9 terabytes or -- or the date range was specific to that very large chunk showed.  You know, I don't see an excerpt of a privileged log.  I -- I don't know if it was an original e-mail, if it wasn't replied to, it was present, deleted, or otherwise.

Q.   Okay.  So we've gone through three examples that you've provided of Mr. Kunkel being wrong because, you know, you claim the documents are still available.  And all three of them don't actually have the same subject line.  They have a slightly different subject line.

Does that lead you to consider the possibility that you may be wrong about this?

A.   No.   This is not uncommon.

If it's in delete in one place, sometimes it's available in another place.  You could take that thought process kind of globally across the whole dataset.  If some of these retention policies were effective and they delete from one of their retention or whatever they were, this data could be in another place.

And, you know, the fact that this has been produced makes me think that legal did a -- you know, collected some data as Mr. Trenchev said in his deposition.  And I can't say if it was a fulsome collection or they collected everything.  But from what you're showing me, it looks like that's probably where it came from.  And -- and it's privileged log.

Q.   And in both cases, though, the original document is missing, and there's either a forward or an Re that remains, right?

A.   I think the original document has been appended.  Maybe it -- unless you have some reason to suspect that this is not the original document as it was replied to and the attachments are not the

original attachments, which there's nothing to support that, let's say it was not uncommon.  If data is not available in one source, it's often available from others.

Q.    What sources do you think that this came from?

MS. DOOLEY:  Objection.  Vague.

A.    Yes.  In a mailbox?  I don't know.

MR. TAYLOR-COPELAND:  Okay.  Let's turn back to Exhibit 106.

BY MR. TAYLOR-COPELAND:

Q.    Okay.  Could you look at Row 193.

A.    Update retention rule begin.

I mean, it's really hard to read your screen, so I'm looking at it locally.

Q.    I'm sorry.

A.    It's okay.

It's dated 24-09-03 at 8:14 plus three hours.  I just want to make sure I'm looking at the document you want me to look at.

Q.    Yeah.  And so I'm looking at Row 193.  In Column H there's an entry that says, all data, mail, terms, at -- to: nikola@nexo.io, subject:NEXO token liquid ... slash [sic] @katerina@nexo.io client signed off t.