# EXHIBIT 7

# Greaves Tr.

CERTIFIED
COPY

Q Did you review any non-Cress-related documents supporting the statement that it's Nexo's standard practice to verify that Cress and its other U.S. customers were accredited investors?

A No.

Q We'll jump back to Exhibit 1. Let's look at Row 70.

Here is a purchaser, [redacted], who purchased on June 26, 2021, and he purchased about 1 -- let's look at the columns here. Column C, the third column, is Nexo in USD. He purchased approximately $1.5 million of Nexo Tokens.

A I see this line.

Q Do you know how Nexo missed this $1.5 million Nexo Token purchase in previous interrogatory responses?

MR. RAWLINSON: Objection. Argumentative. Calls for speculation. You're asking him what Nexo did and -- Nexo did, and he's here to testify individually. And finally, I would instruct the witness not to disclose information he obtained from counsel.

BY MR. AMBROSE:

Q Let me rephrase the question.

Do you know why [redacted] was left off

of Nexo's previous interrogatory responses?

MR. RAWLINSON: Objection. Calls for speculation. And same instruction, not to disclose information you obtained from counsel.

THE WITNESS: No, I do not.

BY MR. AMBROSE:

Q Do you know what Nexo did to search --

A No. I -- (audio disruption).

Q -- for the -- for the Token purchasers?

A Say it again, please --

MR. RAWLINSON: Objection --

THE WITNESS: -- because I interrupted you.

MR. RAWLINSON: -- calls for -- objection. Hold on. Objection. Calls for speculation. And please don't disclose information you obtained from counsel.

BY MR. AMBROSE:

Q Do you know what Nexo did to search for the Token purchasers in the Exhibit 1?

MR. RAWLINSON: Same objection.

THE WITNESS: No. I do not have granularity on their process.

BY MR. AMBROSE:

Q (Audio disruption) -- confident that Nexo's Exhibit 1 in Interrogatory 3 is currently a complete

list of Nexo Token sales to U.S. purchasers?

THE REPORTER: Excuse me one second. Sorry. The beginning of that question was just the word confident.

MR. AMBROSE: Are you 100 percent confident?

THE REPORTER: Thank you.

THE WITNESS: Your question was, am I 100 percent confident? Can you restate? Sorry. It's -- your microphone is cutting the first part of your sentence --

BY MR. AMBROSE:

Q Sure.

A So please restate.

Q Can you say with 100 percent confidence that the Exhibit 1 list in Interrogatory 3 is a complete list reflecting Nexo's direct sales of the Nexo Token to customers in the United States?

MR. RAWLINSON: Objection. Calls for speculation. Argumentative. I instruct you not to disclose communications that you had with counsel.

THE WITNESS: I can't speculate to the completeness of this list. I can believe it is reasonable and published reasonably with the work done in an effort to be complete. I can't

speculate to the completeness.

BY MR. AMBROSE:

Q What's the basis for your understanding that the work done is reasonably complete?

MR. RAWLINSON: Objection. I'll instruct you not to disclose communications that you had with counsel.

THE WITNESS: Thank you.

One, records were provided. And, two, records were updated as new information was made available.

BY MR. AMBROSE:

Q And what made that information available?

MR. RAWLINSON: Objection. Vague. And I'll instruct you not to disclose communications you had with counsel.

Also, I couldn't tell from the question whether you're asking what Nexo did or what he did. So it's -- it's not a proper -- this is not a corporate rep deposition.

BY MR. AMBROSE:

Q Okay. I'm asking about your specific testimony, which was that the information would become available. I'm asking how you know that.

MR. RAWLINSON: Objection. Misstates prior