# EXHIBIT 18

## PUBLIC VERSION PREVIOUSLY FILED UNDER SEAL AS DKT. 144-8

James Taylor-Copeland (284743)
james@taylorcopelandlaw.com
Max Ambrose (320964)
maxambrose@taylorcopelandlaw.com
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: 619-734-8770
Facsimilie: 619-566-4341

*Counsel for Plaintiff John Cress*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN CRESS,<br>Plaintiff,<br>v.<br>NEXO CAPITAL INC.<br>Defendant. | Case No. 3:23-cv-00882-TSH<br>**PLAINTIFF'S NINTH SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** |

**TO DEFENDANT NEXO CAPITAL, INC.:**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Lead Plaintiff requests that Defendant Nexo Capital, Inc. ("Nexo" or "You(r)") produce and make available for inspection and copying all documents and communications requested below (the "Requests") in accordance with the definitions and instructions set forth below, at the office of Taylor-Copeland Law, 501 W. Broadway, Suite 800, San Diego, CA 92101 within thirty (30) days of the date of these Requests, or at such other time and place as the parties mutually agree.

## I. DEFINITIONS

The definitions and rules of construction set forth in the Federal Rules of Civil Procedure are incorporated herein by reference. The following definitions shall also apply to these Requests.

1. "All" shall include the term "each," and vice versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

2. "Armanino" means Armanino LLP, Armanino CPA LLP, Armanino Advisory LLC, and each of their agents, representatives, officers, directors, accountants, insurance companies, attorneys, investigators, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices and employees, including persons or entities both inside or outside the United States or anyone acting on their behalf.

3. "Board" refers to current and former members of Nexo's Board of Directors.

4. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), or attempt to transmit information, whether written, oral, electronic or by any other means.

5. "Complaint" means Lead Plaintiff's First Amended Complaint, filed November 10, 2023, Dkt. No. 29.

6. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

7. "Cryptocurrency Exchange" means any website, application or service that allows users to buy, sell or trade digital assets, such as NEXO. For the avoidance of doubt, Cryptocurrency Exchanges includes but is not limited to You, Binance, which operates binance.com, Coinbase, Inc. ("Coinbase"), which operates coinbase.com and pro.coinbase.com, Payward, Inc., dba Kraken ("Kraken"), which operates kraken.com, Bitstamp Limited ("Bitstamp), which operates bitstamp.net, KuCoin which operates kucoin.com, and Huboi (or HTX), which operates huoboi.com, Binance.us, gate.io, MEXC, WhiteBIT, BTCC, Bybit, Hotbit, Mercatox, FTX, ChangeNOW, Bitrue, Probit, Changelly, Uniswap, Ether Delta, IDEX, Bancor, Dex-Trade, Binance DEX, PancakeSwap, or any other centralized, third-party, or decentralized website, application or service that allows users to buy, sell or trade digital assets.

8. "Documents" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including, without limitation, all written, recorded, graphic or visual matter, or other electronic or paper data compilation of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, signed or unsigned, and regardless of whether approved, signed, sent, received, redrafted or executed, however denominated and by whomever prepared or to whomever addressed, and includes, but is not limited to, written communications, letters, correspondence, memoranda, minutes, notes, photographs, slides, videotapes, motion pictures, tapes or sound records, recordings of any type, email and deleted email (whether sent via standard email, e.g., Gmail, Yahoo, AOL, MSN, Hotmail; via internet conferencing, e.g., Skype, or via social networking sites such as Facebook, Linked-In, Twitter), computer records, electronic files, contracts, agreements, multimedia, spreadsheets, database files, applications, policies, performance reports, memoranda of telephone conversations or personal conversations, diaries, desk calendars, interoffice communications, reports, studies, drawings, other documents and material similar to any of the foregoing, or any data compilation from which information can be obtained or translated, to the extent necessary, through forensic analysis devices or techniques into reasonably usable forms.

9. "DOJ" refers to the United States Department of Justice.

10. "Hristov" means Nexo Relationship Manager Hristiyan Hristov.

11. "Including" means including without limitation.

12. "Liquidation Relief Program" means the Liquidation relief program referenced in the VIP Brochure, any earlier or later iterations of that program, or any other program run or advertised by you as providing liquidation relief or allowing customers to recover liquidated assets.

13. "LTV" means the loan to value ratio described on nexo.com and utilized by You on the Nexo Platform.

14. "LRA" means "Liquidation Relief Agreement" e.g., NEXO-0002719 to NEXO-0003095.

15. "Market Maker" or "market maker" means any Person, any individual, entity, platform, trading firm, or automated system that, whether formally or informally, directly or indirectly, and whether for profit, liquidity provision, strategic investment, or any other purpose, engages in the regular or occasional placement of either buy and sell orders for any cryptocurrency, digital asset, or token, on one or more trading venues, platforms, Cryptocurrency Exchanges (centralized or decentralized), or over-the-counter markets, regardless of whether such activity is continuous, algorithmic, or manually executed, and regardless of whether the entity is compensated for such activity, including without limitation, e.g., Wintermute, Galaxy Digital, Genesis Trading, GSR, and Three Arrows Capital. Market makers shall include, without limitation: Proprietary trading firms; Hedge funds or asset managers that provide liquidity; Centralized and decentralized exchanges engaging in proprietary trading or liquidity support; Bots, algorithms, or smart contracts that auto-execute trades to balance or support the market; Brokers, dealers, affiliates, strategic partners, or counterparties acting to stabilize or influence price or trading activity; Any party or instrumentality whose actions result in the narrowing of bid-ask spreads or the appearance of active trading for a digital asset.

16. "Meeting" means the contemporaneous presence, whether in person or through any means of communication, of any natural persons, whether or not such presence was by chance or prearranged and whether or not the meeting was formal, informal or occurred in connection with some other activity.

17. "Nexo" and "You" and "Your" and refers to the party to whom the following requests are addressed and its agents, representatives, officers, directors, accountants, insurance companies, attorneys, investigators, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices and employees, including persons or entities outside the United States or anyone acting on your behalf.

18. "Nexo Enterprise" means Nexo and the Related Persons defined by the SAC, including Nexo, Nexo Services, LLC, Nexo Inc., Nexo Financial LLC, Nexo Services UAB, Nexo Global Investments LLC, Nexo MENA Holding Ltd., Nexo Services S.r.l., Nexo Payments Limited, Nexo Clearing and Custody Ltd., Nexo Finance Limited, AFS Holding Ltd., AFS Advance Financial Solutions Ltd., Nexo Markets Ltd., Nexo Bank Inc., NPEM Ltd., Nexo AG, NDS EOOD, MIRASTAR EOOD, Nexo Financial Services LTD, Nexo Trading Inc., Nexo Financial Services Inc., Nexo Services Ltd, Nexo Payments, Inc., Antoni Trenchev, and Kosta Kantchev.

19. "Nexo Entity" means each of Nexo and the Related Persons defined by the SAC, including Nexo, Nexo Services, LLC, Nexo Inc., Nexo Financial LLC, Nexo Services UAB, Nexo Global Investments LLC, Nexo MENA Holding Ltd., Nexo Services S.r.l., Nexo Payments Limited, Nexo Clearing and Custody Ltd., Nexo Finance Limited, AFS Holding Ltd., AFS Advance Financial Solutions Ltd., Nexo Markets Ltd., Nexo Bank Inc., NPEM Ltd., Nexo AG, NDS EOOD, MIRASTAR EOOD, Nexo Financial Services LTD, Nexo Trading Inc., Nexo Financial Services Inc., Nexo Services Ltd, Nexo Payments, Inc., Antoni Trenchev, and Kosta Kantchev.

20. "Nexo Source Accounts" refers to all Documents and Communications of the custodians and non-custodial sources referenced in Dkts. 59, 59-1, 62, 64, 64-1, including:

a. Angelov, Rosen Anatoliev

b. Atanasova, Teodora Plamenova

c. bizdev.replies@nexo.io

d. Dinca, Octavian

e. Hristov, Hristiyan Yordanov

f. Hristova, Magdalena Damyanova

g. investors@nexo.io

h. Kantchev, Kosta

i. Kostadinov, Lyubcho Georgiev

j. kyc@nexo.io

k. ops@nexo.io

l. otc@nexo.io

m. payments@nexo.io

n. Rakshiev, Alexander Nikolaev

o. Salesforce.bcc@nexo.com

p. salesvacationresponder@nexo.com

q. Shanov, Yordan Ivaylov

r. Stanev, Kaloyan Mariyanov

s. Stanev, Tom Mariyanov

t. support@nexo.io

u. Tonkov, Edward Todorov

v. Trenchev, Antoni

w. Videlov, Tsvetan Dimitrov

21. "Nexo Platform" refers to the nexo.io or nexo.com website and all services offered by You to any Person, including Plaintiff, through or in connection with the nexo.com website

22. "NEXO" refers to the blockchain tokens sold by Nexo, including the tokens with Ethereum contract address: 0xb62132e35a6c13ee1ee0f84dc5d40bad8d815206.

23. "NEXO Proceeds" refers to all funds raised directly and indirectly through the sale of NEXO.

24. "NEXO Investors" means any Persons that purchased NEXO tokens during the Relevant Period.

25. "Person" means any natural person, public or private corporation, whether or not organized for profit, governmental entity, partnership, association, cooperative, joint venture, sole proprietorship or other legal entity. With respect to a business entity, the term "person" includes any natural person acting formally or informally as a director, trustee, officer, agent, attorney or other representative.

26. "Plaintiff" means Plaintiff John Cress.

27. "Referring" or "relating to" or "concerning" mean all documents that comprise, explicitly or implicitly refer to, were reviewed in conjunction with or were created, generated or maintained as a result of the subject matter of the request, including, without limitation, all documents that reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

28. "Retention Policy Changes" refers to the implementation of the document retention periods (including email, Slack, and Google Drive documents) referenced in Nexo's January 30, 2026 letter.

29. "SAC" means Plaintiff's Second Amended Complaint filed on October 30, 2025.

30. "SEC" means the Unites States Securities and Exchange Commission.

31. "Trenchev" means Antoni Trenchev.

32. ""VIP Brochure" means the VIP Relationship Program Brochure means the VIP Relationship Program Brochure found at CRESS-00000008 or NEXO-0002706, or any earlier or later iterations of that document.

33. "VIP Relationship Program" means the VIP Relationship Program referenced in the VIP Brochure.

34. "Galaxy Digital" means Galaxy Digital Capital Management LP, Galaxy Digital LP, Asset Management Arm, or First Coin Capital Corp., and each of their agents, representatives, officers, directors, accountants, insurance companies, attorneys, investigators, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices and employees, including persons or entities both inside or outside the United States or anyone acting on their behalf.

35. "Genesis Trading" means Genesis Global Trading, Inc., Genesis Global Capital, LLC, Genesis Asia Pacific PTE, LTD., and Genesis Globally Holdco, LLC and each of their agents, representatives, officers, directors, accountants, insurance companies, attorneys, investigators, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices and employees, including persons or entities both inside or outside the United States or anyone acting on their behalf.

36. "Wintermute" means Wintermute Trading Ltd, Wintermute Asia Pte., and each of their agents, representatives, officers, directors, accountants, insurance companies, attorneys, investigators, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices and employees, including persons or entities both inside or outside the United States or anyone acting on their behalf.

37. "Three Arrows Capital" means Three Arrows Capital Pte Ltd.., and each of their agents, representatives, officers, directors, accountants, insurance companies, attorneys, investigators, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices and employees, including persons or entities both inside or outside the United States or anyone acting on their behalf.

38. "GSR" means GSR Digital LLC, GSR Resources UK Limited, GSR Markets Pteo. Ltd., GSR Markets UK Limited and each of their agents, representatives, officers, directors, accountants, insurance companies, attorneys, investigators, affiliates, predecessors and successors in interest, parents, divisions, subsidiaries, area and regional offices and employees, including persons or entities both inside or outside the United States or anyone acting on their behalf.

39. Uniswap means the Cryptocurrency Exchange Uniswap and includes Uniswap V1, V2, V3, and V4 protocols.

40. "UNI-V Liquidity Token" means the liquidity tokens used on Uniswap that represent an interest in a Uniswap liquidity pool, and refers to any of UNI-V2, UNI-V3 or UNI-V4. "UNI-V Liquidity Token" does not mean the UNI governance token.

41. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

42. The use of the singular form of any word includes the plural and vice versa, and the masculine, feminine or neuter form of any words includes each of the other genders.

43. The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

**INSTRUCTIONS**

1. All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

2. If a document was prepared in several copies, or if additional copies were subsequently made, and any such copies were not identical or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including, without limitation, handwritten notations on the front or back of the document, all such non-identical copies shall be produced.

3. Documents shall be produced in such fashion as to identify the department, branch, or office in which they were located and, where applicable, the natural person in whose possession they were found, and the business address of each document's custodian(s).

4. Documents attached to each other should not be separated.

5. These requests relate to all documents which are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or their respective officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions.

6. The documents to be produced pursuant to these requests specifically embrace, in addition to documents within your possession, custody or control, all documents within the possession, custody or control of any of your agents, accountants, representatives or attorneys. Such documents also embrace originals and identical copies (whether different from the original because of notes made thereon or otherwise) of the documents described in these requests.

7. The fact that a document has been or will be produced by another party does not relieve you of the obligation to produce your copy of the same document, even if the two documents are identical in all respects.

8. You shall produce the original of each document described below or, if the original is not in your custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

9. If any documents fall within the scope of any request but are not being produced, or are being produced with portions redacted, pursuant to any claim of privilege or confidentiality, please provide a log containing the following information:

a. the nature of the privilege claimed (*i.e.*, attorney-client, work-product, etc.);

b. the name of the person or entity claiming privilege and the name of the attorney, if any, with respect to whom the privilege is claimed;

c. the facts upon which you rely as the basis for claiming any privilege as to the specific information or document;

d. the name of such document; identify the type of document (*i.e.*, letter, memo, etc.); set forth the subject matter thereof; identify the person who prepared it and each person (if

any) who signed it; identify each person to whom it was directed, circulated or shown; and identify each person now in possession of the document. If any document is produced in redacted form, the word "REDACTED" is to be placed in the redacted section of the document; and

e. whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

10. In the event that any document called for by these requests has been destroyed or discarded, that document is to be identified by stating:

a. the nature of the document;

b. the names of any addressor or addressee;

c. if there are any indicated or blind copies;

d. the document's date, subject matter, number of pages, and attachments or appendices;

e. all persons to whom the document was distributed, shown or explained;

f. its date of destruction or discard, manner of destruction or discard; and

g. the persons authorizing or carrying out such destruction or discard.

11. With respect to any documents which you contend would be in some way "burdensome" or "oppressive" to produce, please state the specific reasons for that objection.

12. If you object to part of any request, please furnish documents responsive to the remainder of the request.

13. Each request refers to all documents that are either known by the Defendants to exist or that can be located or discovered by reasonably diligent efforts of the Defendants.

14. The documents produced in response to this request shall include all attachments and enclosures.

**PRODUCTION OF HARD COPY DOCUMENTS – FORMAT**

Hard copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**RELEVANT PERIOD**

All requests herein refer to the period of January 1, 2017, through the date of document production (the "Relevant Period"), unless otherwise specifically indicated, and shall include all documents that relate, in whole or in part, to such period even though dated, prepared, or received before or after that period. If a document from before or after this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier or subsequent document as well. If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the production request.

**DOCUMENTS REQUESTED FOR PRODUCTION**

**REQUEST NO. 383:**

All OTC transaction internal confirmations for OTC transactions facilitated by Hristiyan Hristov or Octavian Dinca between March 2021 and July 2021. For the avoidance of doubt, examples of these emails can be found for Cress and other U.S. customers at, e.g., NEXO-0248465, NEXO-0248348, NEXO-0248354, NEXO-0248361.

**REQUEST NO. 384:**

The document referenced as "Deposit to Exchange alert for; to: hristiyan@nexo.io" referenced in rows 215-216 of NEXO-0369409, including all attachments thereto.

**REQUEST NO. 385:**

The document with subject: "All OTC deals part - 1 ( 22.04.2021-19.01.2021)" referenced in rows 291-292 of NEXO-0369409, including all attachments thereto.

**REQUEST NO. 386:**

The document with subject: "All OTC deals part 2 ( 21.01.2021- 30.10.2020)" referenced in rows 293-294 of NEXO-0369409, including all attachments thereto.

**REQUEST NO. 387:**

The document with subject: "All OTC deals Part 3 ( 30.10. 2020-07.06.2020 ) - Last part from Edward's Inbox" referenced in rows 295-296 of NEXO-0369409, including all attachments thereto.

**REQUEST NO. 388:**

The document with subject: "Lawyers' Email, 05112021" referenced in rows 225-226 of NEXO-0369409, including all attachments thereto.

**REQUEST NO. 389:**

The document with subject: "NEXO token liquid... - @katerina@nexo.io client signed off t..." referenced in rows 193-196 of NEXO-0369409, including all attachments thereto.

**REQUEST NO. 390:**

The document with subject: "Akin Gump LLP – Letter to Nexo – 22 Sept 2021.docx" referenced in rows 166-167 of NEXO-0369409, including all attachments thereto.

**REQUEST NO. 391:**

The document referenced as "To: kiril@nexo.io OR from: kiril@nexo.io AND Urgently" contacts of NEXO-0369409, including all attachments thereto.

DATED: May 29, 2026

Respectfully submitted,

*/s/James Taylor-Copeland*

James Q. Taylor-Copeland
TAYLOR-COPELAND LAW
501 W. Broadway, Suite 800
San Diego, CA 92101
Telephone: (619) 400-4944
Facsimile: (619) 566-4341

*Counsel for Plaintiff John Cress*